# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC., a Delaware Corporation, and ) 
NICE SYSTEMS, LTD., an Israeli Corporation, )
                                                    )

                       Plaintiffs,      )

            v.                  )     Civil Action No. 06-311-JJF

                                             )

WITNESS SYSTEMS, INC, a Delaware Corporation, )

                                           )

                    Defendant.     )

## PLAINTIFFS' ANSWERING BRIEF
## IN OPPOSITION TO DEFENDANT'S MOTION FOR TRANSFER

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (No. 1088)
Melanie K. Sharp (No. 2501)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6672
jingersoll@ycst.com
msharp@ycst.com
kkeller@ycst.com

*Attorneys for Plaintiffs Nice Systems, Inc. and
Nice Systems, Ltd.*

*Of Counsel:*

KAYE SCHOLER LLP
Scott G. Lindvall, Esquire
Daniel P. DiNapoli, Esquire
Joseph M. Drayton, Esquire
425 Park Avenue
New York, NY 10022
(212)836-8000

Dated: July 28, 2006

                                                        

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ................................................ 2

SUMMARY OF THE ARGUMENT ...................................................................... 6

STATEMENT OF FACTS ...................................................................................... 8

    I. The Technologies Involved in the Various Cases ........................................ 8
        A.    The NICE Infringement Cases Against Witness ....................................... 8
        B.    The Witness Infringement Cases Against NICE ...................................... 9

    II. The Product Features Involved in the NICE Cases.................................... 10

ARGUMENT.......................................................................................................11

    I. NICE's Choice Of Delaware As The Forum Is Entitled To "Paramount Consideration"
    That Should Not Be Disturbed Unless The Jumara Factors Strongly Favor Transfer...... 11
        A.    The Applicable Law.................................................................. 11
        B.    NICE Has Legitimate Reasons To Litigate In Delaware And
        Therefore Witness Must Prove That The Jumara Factors Strongly Favor
        Transfer To Georgia................................................................... 12

    II. The Jumara Factors Strongly Favor Transfer............................................ 14
        A.    The Private Interests Identified in Jumara Do Not Strongly Favor
        Transfer To Georgia................................................................... 14
            1. Convenience of the Parties does not favor transfer. ........................... 14
           2.    The convenience of the witnesses does not strongly favor
           transfer. ................................................................................ 16
           3.    The location of books and records does not strongly favor
           transfer. ................................................................................ 18
         B.    The Public Interests Identified in Jumara Do Not Strongly Favor
        Transfer To Georgia................................................................... 19
        C. Local Interest Does Not Strongly Favor Transfer........................................... 22

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Apple Computer, Inc. v. Unova, Inc.,*
No. Civ. A. 03-101-JJF, 2003 WL 22928034 (D. Del. Nov. 25, 2003)....................................15

*C.R. Bard Inc. v. Guidant Corp.,*
997 F. Supp. 556 (D. Del. 1998) ......................................................................................13, 16

*Critikon v. Becton,*
821 F Supp. 962 (D. Del. 1993) ......................................................................................14, 18

*J-Squared Technologies, Inc. v. Motorola, Inc.,*
No. Civ. A. 04-960-SLR, 2005 WL 388599 (D. Del. Feb. 4, 2005)..................................14, 15

*Jones Pharma, Inc. v. KV Pharmaceuticals Co.,*
No. Civ. A. 03-786 JFF, 2004 WL 323109 (D. Del. Feb. 17, 2004) ............... 13-15, 17, 18, 22

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995).........................................................................................6, 12, 18

*Motorola Inc. v. PC-TEL, Inc.,*
58 F. Supp. 2d 349 (D. Del. 1999) ........................................................................................16

*Padcom, Inc. v. Netmotion Wireless, Inc.,*
No. Civ. A. 03-983-SLR, 2004 WL 1192641 (D. Del. May 24, 2004) ....................................16

*Praxair, Inc. v. ATMI, Inc.,*
No. Civ. A. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004) .............................19, 21

*Shutte v. Armco Steel Corp.,*
431 F.2d 22 (3d Cir. 1970).................................................................................................6, 12

*Stratos Lightwave, Inc. v. E20 Communications, Inc.,*
No. Civ. A. 01-309-JJF, 2002 WL 500920 (D. Del. Mar. 26, 2002).......................................22

*Textron Innovations Inc. v. The Toro Co.,*
No. Civ. A. 05-486 GMS, 2005 WL 2620196 (D. Del. Oct. 14, 2005)....................................13

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,*
No. Civ. A. 04-360 JFF, 2005 WL 441077 (D. Del. Feb. 15, 2005) ............................6, 12, 18

*Truth Hardware Corp. v. Ashland Products, Inc.,*
No. C.A. 02-1541-GMS, 2003 WL 118005 (D. Del. Jan. 13, 2003)............................19, 20, 22

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993)..................................................................................................16

*Willemijn Houdstermaatschaapij BV v. Appollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989)..............................................................................................15

## STATUTES

28 U.S.C. § 1404(a) ......................................................................................................6, 11

Plaintiffs NICE Systems, Inc. ("NICE") and NICE Systems Ltd. ("Nice Ltd.") submit this brief in opposition to Defendant Witness Systems, Inc.'s ("Witness") motion to transfer this case to the United States District Court for the Northern District of Georgia.

## PRELIMINARY STATEMENT

Reading Witness's brief one would conclude that three patent infringement cases, closely related to this one, are pending before one judge in the Northern District of Georgia and that this case should be transferred there so that it can be handled by that same judge. In fact, though, the three Northern District of Georgia cases upon which Witness's motion is predicated are proceeding independently of one another before **three different judges**. Only one of those cases involves claims as in this case that Witness products infringe NICE patents, and the NICE patents at issue in that case are not at issue in this case. Moreover, the NICE patents at issue in that one Georgia case and the NICE patents at issue in this case cover different aspects of Witness's products. In addition, the Georgia case in which NICE is claiming patent infringement began in July 2004. As a result, contrary to Witness's arguments, transfer of this case would not promote judicial economy in any way. In fact, the Georgia court has even denied a motion by Witness to consolidate two of the Georgia cases stating that "the Court [was] unconvinced that the degree of overlap between the patents at issue warrant[ed] consolidation." (Declaration of Jason P. Frank, dated July 28, 2006 ("Frank Decl."), Ex. A at p. 9.) Plaintiffs' decision to bring this case in Delaware, where NICE and Witness are incorporated, should, therefore, be respected, and Witness's motion should be denied.

1

## NATURE AND STAGE OF THE PROCEEDINGS

**The Delaware Case**

On May 10, 2006, Plaintiffs NICE and NICE Ltd. filed this action against defendant Witness alleging infringement of various U.S. patents (hereinafter referred to as the "NICE Patents").[1]  NICE is a Delaware corporation that provides products and services to its customers throughout the United States.  NICE Ltd. is the parent company of NICE and is located in Israel.  Witness is also a Delaware corporation and purports to be a "global provider" of products and services to "Global 2000, small- and medium-sized businesses worldwide...." (Declaration of John Henits, dated July 27, 2006 ("Henits Decl."), ¶5.)  Eight of the ten NICE Patents in suit in this case, which NICE acquired in 2005 from the Dictaphone Corporation, concern technology developed by that company in Connecticut.  (Frank Decl., ¶5.)  On June 30, 2006, Witness filed its answer denying infringement and asserting several affirmative defenses.  The parties have requested a jury trial.  A Rule 16 Scheduling Conference is set for September 7, 2006.

**The Georgia Cases**

Two years ago, on July 20, 2004, STS Software Systems Ltd. ("STS"), a wholly owned subsidiary of NICE Ltd., sued Witness alleging infringement of United States Patent No. 6,122,665 (the "'665 patent") in the Southern District of New York (referred to as "NICE I").  In NICE I, STS is seeking injunctive relief only -- no damages.  On the same day, Witness sued

---

[1] The patents at issue in the instant case are U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; 6,959,079; and 7,010,109.

STS[2] for declaratory judgment of non-infringement and invalidity of the '665 patent in the Northern District of Georgia.[3]

On August 30, 2004, Witness filed another action against NICE and NICE Ltd. in the Northern District of Georgia alleging infringement of United States Patent Nos. 5,790,798 and 6,510,220, *Witness Systems v. NICE Systems Inc. and NICE Systems Ltd.*, No. 1:04-CV-2531-CAP (referred to as "WITNESS I").[4]    WITNESS I is pending before Judge Charles A. Pannell, Jr.    The parties have exchanged Rule 26 Initial Disclosure statements (Frank Decl., Exs. D and E) and have commenced discovery by exchanging documents, serving and answering interrogatories and taking depositions.    (Frank Decl., ¶9.)    The parties have also retained technical experts -- Dr. James Foley for Witness (Frank Decl., ¶10) and Dr. Aaron Bobick for NICE.    (Frank Decl., ¶11)    A *Markman* hearing has been scheduled for September 7, 2006.

In September 2004, Witness moved to transfer NICE I from New York to Georgia.    On November 20, 2004, the New York court transferred the case to Georgia because "New York ha[d] no connection" to the parties or the underlying facts of the action and because

---

[2]    For the purposes of this motion, STS and NICE will be treated as the same entity, and thus, STS will be referred hereinafter as NICE.

[3]    On July 7, 2005, STS was granted leave to file a Supplemental Complaint asserting that Witness is infringing three newly issued patents, 6,865,604 ("the '604 patent"); 6,871,229 ("the '229 patent"); and 6,880,004 ("the '004 patent"), which are all related to the '665 patent and pertain to the identical technology -- the receiving, storing, organizing and playing back of communication sessions over a computer network.    On August 22, 2005, STS moved to voluntarily dismiss the '665 patent from the STS case.    On February 24, 2006, STS and Witness submitted to the court a signed Stipulation and Order of Dismissal regarding the '665 patent, which the Court So Ordered.    Frank Decl., Ex. C.

[4]    Six months later, asserting the same patents, Witness filed a separate infringement case against NICE Ltd. in the Northern District of Georgia as a related case.    On April 1, 2005, the parties jointly filed a proposed order to consolidate the two cases, which was entered by the Court on April 5, 2005.

Witness convinced the New York court that transfer of the case to Georgia where WITNESS I was pending would allow consolidation of NICE I and WITNESS I and thereby promote judicial efficiency. The New York Court reasoned:

> Given that Witness filed a declaratory judgment action against STS in the Northern District of Georgia, and given that Witness and STS will be litigating another patent dispute [Witness I discussed above] in the Northern District of Georgia, transfer of this motion would promote judicial efficiency by allowing the claims to be consolidated if appropriate and discovery to be consolidated.

(Frank Decl., Ex. F, pp. 12-13.)

In Georgia, NICE I was assigned to Judge Richard W. Story, and Witness moved to consolidate the NICE I and WITNESS I cases in Georgia. However, Judge Story denied consolidation, stating "Viewing the two cases and their respective patent claims in their totality, the Court is unconvinced that the degree of overlap between the patents at issue warrants consolidation." (Frank Decl., Ex. A at p. 9.) Judge Story distinguished the patents in the two cases and reasoned that at the "end of the day" the "two cases involve different patents with different claims":

> The four STS patents relate to specific methods for identifying, analyzing, monitoring, storing, organizing, and recalling data transmitted over a computer network during a Voice over IP ("VoIP") communication session. In contrast, the Witness Systems patents relate to specific methods for detecting changes on a computer screen and synchronizing those changes with recorded telephone conversations such that they may be replayed in substantially the same manner in which they occurred. It is true that the same general technological concepts and vocabulary may be involved in both cases. It is also true that both sets of patents involve the recording and playback of telephone conversations. But, at the end of the day, the fact remains that the two cases involve different patents with different claims and require separate trials.

(*Id.* at 9-10.)

4

In denying Witness's motion for consolidation, the court noted that "any benefits in terms of efficiency, judicial economy and lessening the burdens on the parties will be realized primarily, if not entirely, in the discovery phase of the litigation." (*Id.* at 7-8.)  As the Court noted, however, "Witness [had] not sought any form of limited consolidation to facilitate discovery in these cases." (*Id.*)  Witness never sought any consolidation of discovery in the cases in Georgia.

The NICE I case is thus pending before Judge Story.[5]   The parties have exchanged Rule 26 Initial Disclosure statements (Frank Decl., Exs. G and H) and have commenced discovery by exchanging documents, serving and answering interrogatories and taking depositions. (Frank Decl., ¶15.)  The parties have also retained technical experts -- Christopher D. Blair, Ph.D. for Witness (Frank Decl. ¶16) and Dr. Kevin Jeffay for NICE. (Frank Decl. ¶17.) A *Markman* hearing was conducted on July 27, 2006.  No trial date has been set.

On January 19, 2006, Witness again sued NICE and NICE Ltd. in the Northern District of Georgia alleging infringement of United States Patent No. 6,404,857, *Witness Systems Inc. v. NICE Systems Inc. and NICE Systems Ltd.*, No. 1:06-CV-0126-TCB (referred to as "WITNESS II").  WITNESS II is pending before a third judge, Hon. Timothy C. Batten.  The parties have requested a jury trial.  On March 23, 2006, the parties filed a Joint Preliminary Report and Discovery Plan (Frank Decl., Ex. I.) in which both Witness and NICE told the Georgia Court that there were no pending related cases.  (*Id.*, p.3; showing "Pending Related Cases as "None".)  Witness has not moved to consolidate the WITNESS II case with either

---

[5]        *STS Software Systems Ltd. v. Witness Systems*, No. 1:04-CV-2111-RWS.

NICE I or WITNESS I for the purposes of coordinating discovery or otherwise.[6] In WITNESS II, the parties have exchanged Rule 26 Initial Disclosure statements (Frank Decl., Exs. J and K), produced documents, served and answered interrogatories and begun claim construction through the exchange of disputed claim terms. (Frank Decl., ¶ 21.) Witness has identified Dr. Richard M. Stern as its expert (Frank Decl., ¶ 22), and NICE will identify its expert shortly.

### SUMMARY OF THE ARGUMENT

1.    Witness's motion, pursuant to 28 U.S.C. § 1404(a), should be denied because Plaintiffs' choice of forum is entitled to "paramount consideration," and Witness has not met its heavy burden of showing that private and public interests "strongly favor" transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 (1971); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

2.    Plaintiffs chose to litigate this case in Delaware for sound reasons. Indeed, NICE is a Delaware corporation.[7] *See Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360 JFF, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (Farnan, J.) ("[T]he Court will give 'paramount consideration' to [plaintiff's (a Delaware corporation)] decision to file the instant action in Delaware" because "a corporations decision to incorporate in a state is a rational and legitimate reason to file an action in that state") (Frank Decl., Ex. L). In addition,

---

[6]    In its brief, Witness argues that "NICE could have asserted the Delaware claims as counterclaims in [WITNESS II], the most recent Georgia action, but did not." In WITNESS II, however, a Witness patent is asserted against NICE products, whereas in the instant case, NICE and NICE Ltd. assert patents against Witness products. As Judge Story stated in denying Witness's motion to consolidate WITNESS I and NICE I, "evidence of infringement or validity which is relevant to one action may be largely, if not entirely, irrelevant to a determination of infringement or invalidity in the other." (Frank Decl., Ex. A, pp. 12-13.) In the words of Judge Story, asserting the claims in this case as counterclaims in the WITNESS II case may have "impair[ed] the conduct of trial or create a likelihood of prejudice by confusing the issues." (*Id.*)

[7]    Nice Ltd. is an Israeli corporation with its principal place of business in Israel.

065251.1001

NICE has its principal place of business near Delaware in New Jersey. Witness is also a Delaware corporation, and the accused products are used in Delaware.

      3.    The private interests identified in *Jumara* do not strongly favor transfer. First, the convenience of the parties does not favor transfer. NICE is a Delaware corporation with its home office in close proximity to Delaware. Witness is a Delaware corporation with a global presence. Witness's customers use its products in Delaware and throughout the world. Second, the convenience of the witnesses does not favor transfer. Witness's employees are presumed available to testify at trial, and the former employees identified by Witness as being located in Georgia are not "key" witnesses to the Delaware case as Witness claims. Moreover, the majority of inventors of the NICE Patents are located in Connecticut, and none of them are located in Georgia. Lastly, the location of the parties' books and records does not favor transfer since they can be readily produced for trial in Delaware.

      4.    The public interests identified in *Jumara* also do not strongly favor transfer. As demonstrated below, there is no basis to conclude that the interests of justice or judicial economy would in any way be served by a transfer of the Delaware case. First, the patents and corresponding technologies in the Delaware case are different than the patents and technologies at issue in NICE I, WITNESS I and WITNESS II. Second, the three Georgia cases are proceeding independently of one another before three different judges. Third, two of the cases in Georgia, including NICE I where Witness's products are accused of infringement, are two years old and well into the pre-trial process. Even Witness II is significantly ahead of this case. Thus, if this case is transferred to Georgia, it likely would not be consolidated with any of the Georgia cases for purposes of discovery or trial.

                         

## STATEMENT OF FACTS

I.    **The Technologies Involved in the Various Cases**

    A.    **The NICE Infringement Cases Against Witness**

The NICE Patents which are asserted in this case relate generally to technology that is used, for example, in a call center, *i.e.*, a centralized office used to receive and process large numbers of telephone calls. The NICE Patents relate to five distinct technological advances:

(1) U.S. Patents 5,274,738; 5,819,005; 6,775,372; and 6,870,920 generally disclose a voice processing and recording system that is made up of connected modules and can be easily expanded and used over a computer network ("Modular and Networked Systems"),

(2) U.S. Patent 5,396,371 generally discloses a system that can simultaneously record data and retrieve stored data associated with a communication such as a telephone call ("Simultaneous Recording and Retrieval"),

(3) U.S. Patents 6,249,570; 6,728,345; and 6,785,370 generally disclose a system that can record and reconstruct all "segments" of a telephone call. A call is in "segments" if, for example, the call is answered by an operator (segment I), who then transfers the call to a customer service staffer (segment II), who ultimately passes the call on to a supervisor (segment III). The system records, stores and can reconstruct for playback the entirety of the call ("Lifetime Call Recording"),

(4) U.S. Patent 6,959,079 generally discloses a telephone monitoring system useful for recording data generated during a telephone call between, for example, a customer and an employee who is entering data on a computer screen based on information from the customer. In response to the information entered into the computer,

8

the system records the audio data and the screen data entered on the employee's computer. The claimed system may also facilitate the design of evaluation forms and generate automated evaluation forms relating to the calls ("Selective Call Recording and Evaluating"), and

(5) U.S. Patent 7,010,109 generally discloses a specific method of recording an internet protocol (IP) data session among participants, such as a conference call placed over the internet, where a recording device is connected to the call in the same manner as participants in the session ("Conference Call Recording").[8]

By contrast, the technology that is the subject of the NICE patents asserted in the NICE I case in Georgia relates to different aspects of the systems which may be used in call centers. (See Appendix A, a chart listing key facts regarding each case.) The patents at issue in NICE I -- the '604 patent, the '229 patent and the '004 patent -- generally describe a system and method for receiving, analyzing and storing audio and/or video data from a computer network. This technology is generally related to the implementation and use of Voice over Internet Protocol ("VoIP"), which is a means of transmitting speech over the Internet or other IP computer network.

B.        **The Witness Infringement Cases Against NICE**

The Witness patents in suit in the WITNESS I and II litigations relate to different technology. According to Witness, the patents asserted in WITNESS I -- the '798 patent and the '220 patent -- disclose "computer-based systems, software and related methods that allow one to

---

[8]        None of the NICE Patents are in the same patent family, *e.g.* a related continuation, continuation-in-part or a divisional application, as the patents asserted in the three Georgia cases. Additionally, there is no overlap between the inventors of the NICE patents and the inventors of the patents at issue in the Georgia cases.

record both an agent's voice and her computer interactions while on a call and replay both interactions in tight syncronization." (Wit. Br. p. 8.)

The patent asserted in WITNESS II -- the '857 patent -- according to Witness, discloses "software and computer-based systems that allow one to monitor and analyze communications to detect the presence of at least one predetermined parameter, such as an angry voice or a particular phrase like 'cancel my subscription.'" (Wit. Br. p. 8.)

## II.     The Product Features Involved in the NICE Cases

For the purposes of this motion only, NICE accepts as true Witness's claim that only five Witness products are at issue in the instant case although these products are marketed under several different names. (Witness Declaration of Kyle Wagner Compton, Ex. 39 ¶13.) In both this case and NICE I, NICE alleges that four Witness products -- Contactstore, Contactstore for Communication Manager and Quality for Communication Manager and Contactstore for IP -- infringe the patents in suits. These products also contain unique source code, the computer programming underlying each product application.

In NICE I, the parties and their experts must evaluate whether the Witness products receive, analyze and store audio and/or video data from a computer network as claimed by NICE's patents. In this case, the parties will be examining specific features associated with the Witness products, as opposed to the method Witness uses to receive, analyze and store audio and/or video data in a computer network. These features include (1) the "search and replay" feature (and related software and hardware) which allows a call center agent to listen to a recording of a telephone call while on the still on the call[9], (2) the "follow the call" feature which

---

[9]     This feature is used, for example, in the following products: Contactstore for Communication Manager, branded as Impact 360 Compliance Recording Package, and Contactstore IP, branded as IP Office Contactstore. Frank Decl., Exs. M and N.

allows the recording of an entire caller's experience regardless of how many times the caller is

transferred to different agents during a call[10], (3) the "agent-initiated monitoring" feature which

allows "agents [to] trigger recordings on-demand and in real-time"[11]; and (4) the "conference

recording mode" feature which records call from start to finish.[12]  In addition to these features, in

that case NICE will also be examining the modularity of Witness's products and the network

design that allows those products to be used remotely.  Thus, the relevant aspects of Witness's

products at issue in NICE I and in the instant case are entirely different.

**ARGUMENT**

I.    **NICE's Choice Of Delaware As The Forum Is Entitled To "Paramount Consideration" That Should Not Be Disturbed Unless The Jumara Factors Strongly Favor Transfer.**

A.    **The Applicable Law.**

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." The Third Circuit has held that in determining whether

transfer is warranted courts should consider all "variants of the private and public interest

protected by the language of § 1404(a)." *Jumara*, 55 F.3d at 879.  The private interests include:

> plaintiff's forum preference as manifested in the original choice,
> the defendant's preference, whether the claim arose elsewhere, the
> convenience of the parties . . ., the convenience of the witnesses —
> but only to the extent that the witnesses may actually be

---

10    This feature is used, for example, in Contactstore IP. Frank Decl., Ex. O.

11    This feature is used, for example, in the following product:  Quality for Communication Manager and Contactstore for Communication Manager, branded as Impact 360 Compliance Recording/Package.  Frank Decl., Exs. P and Q.

12    This feature is used, for example, in Contactstore for Communication Manager, branded as Impact 360 Compliance Recording/Package.  Frank Decl., Ex. R.

11

> unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests include:

> the enforceability of the judgement, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest . . ., [and] the public policies of the fora.

*Id.*

As the Third Circuit has emphasized, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice [] 'should not be lightly disturbed.'" *Shutte,* 431 F.2d at 25. As a result, "'unless the balance of convenience of the parties is **strongly** in favor of the defendant, the plaintiff's choice of forum should prevail.'" *Id.* (citing *Owatonna Mfg. Co. v. Melroe Co.,* 301 F. Supp. 1296, 1307 (D. Minn. 1969) (emphasis added).

**B.     NICE Has Legitimate Reasons To Litigate In Delaware And Therefore Witness Must Prove That The Jumara Factors Strongly Favor Transfer To Georgia.**

Under the standards set forth above, this Court should give "paramount consideration" to NICE's choice of forum because NICE has legitimate reasons to litigate in Delaware.

First, NICE is a Delaware Corporation with its principal place of business located in Rutherford, New Jersey. (Frank Decl., 2.) *Trilegiant Loyalty Solutions, Inc.,* 2005 WL 41077 at *2 ("[T]he Court will give 'paramount consideration' to [plaintiff's (a Delaware corporation) decision to file the instant action in Delaware" because "a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum."); *Jones Pharma, Inc. v. KV Pharmaceuticals Co.,* No. Civ. A. 03-786 JFF, 2004 WL 323109, at *2 (D. Del. Feb. 17,

12

2004) (Farnan, J.) ("Both [plaintiff] Jones and [defendant] KV are Delaware corporations. And, as the Court observed in *Stratos*, a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum") (Frank Decl, Ex. S).

Second, 14 of the 21 inventors named on the NICE Patents asserted in the Delaware case are non-party witnesses who live in Connecticut. (Henits Decl., ¶4.)  *C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998) (McKelvie, J.) (denying motion to transfer and finding "legitimate and valid reasons" where plaintiff chose "Delaware as a forum because it is much closer to [plaintiff's] headquarters in New Jersey than California, and thus closer to its own witnesses and documents").   Delaware is a convenient forum for these witnesses to travel for trial since Wilmington, Delaware is reachable from Connecticut by train or car.

Third, Witness is a Delaware corporation.  *Textron Innovations Inc. v. The Toro Co.*, No. Civ. A. 05-486 GMS, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005) (Sleet, J.) (denying motion to transfer because "the fact that [defendant] is incorporated in Delaware is a rational and legitimate reason for [plaintiff] choosing to sue it in Delaware") (Frank Decl., Ex. T).

Fourth, the District of Delaware has expertise in expeditiously handling complicated patent cases.  The Delaware courts typically move cases along the process to trial quickly.  In contrast, NICE I and WITNESS I, pending in Georgia, have progressed slowly.  In NICE I, the complaint was filed on July 20, 2004, and the Markman hearing occurred on July 27, 2006.  In WITNESS I, the complaint was filed on August 30, 2004 and the Markman hearing is presently scheduled for September 7, 2006.

13

Accordingly, NICE's choice of Delaware is entitled to "paramount consideration." As a result, Witness must satisfy a heavy burden to show that the *Jumara* factors strongly favor transfer. As discussed below, Witness has failed to meet this heavy burden.

## II.   The Jumara Factors Strongly Favor Transfer.

### A.   The Private Interests Identified in Jumara Do Not Strongly Favor Transfer To Georgia.

#### 1.   Convenience of the Parties does not favor transfer.

The convenience of the parties does not favor transfer of the case for several reasons. <u>First</u>, Witness is a Delaware corporation. This Court has repeatedly stated that a company that chose to receive the benefits of Delaware law by incorporating here should not succeed in arguing that it is inconvenient for it to litigate in Delaware. *Jones Pharma, Inc.*, at *2 ("[A]s [defendant] KV chose to avail itself of the laws of Delaware, it may not now complain because Jones decided to sue in this state.") (citing *SAS of Peurto Rico, Inc. v. Puerto Rico Tel. Co.*, 833 F. Supp. 450, 453 (D.Del. 1993)); *Critikon v. Becton*, 821 F Supp. 962, 965 (D. Del. 1993) (Farnan, J.) ("By incorporating in Delaware, it can be assumed that [defendant] desired the benefits it believed Delaware provides to chartered corporations. [Defendant] chose Delaware as its legal home and should not now complain that another corporation has decided to sue [defendant] in Delaware.") *J-Squared Technologies, Inc. v. Motorola, Inc.*, No. Civ. A. 04-960-SLR, 2005 WL 388599, at *3 (D. Del. Feb. 4, 2005) (Robinson, J.) (denying motion to transfer where "[d]efendant's complaints about litigating here are outweighed by the fact that [defendant] has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction") (Frank Decl., Ex. U).

Second, Witness's products accused of infringement are used in Delaware. For example, HSBC Finance Corporation and J.P. Morgan Chase are customers of Witness using its products in the state of Delaware. (Frank Decl., ¶¶ 33-34.) *Willemijn Houdstermaatschaapij BV v. Appollo Computer Inc.*, 707 F. Supp. 1429, 1436 (D. Del. 1989) (Roth, J.) (denying motion to transfer where "[a]ccording to plaintiff, at least four or five of the allegedly infringing acts committed by defendant occurred in Delaware, when defendants' employees installed computer equipment at the offices of its customers in this state").

Third, Witness is a large company with substantial assets and claims to be a "global provider" of products and services. Witness had revenues of about $185 million in 2005. (Witness Br. p. 4.) *Jones Pharma, Inc.*, at *2 ("[Defendant's] annual sales approximate $240 million," and "[t]herefore, the Court concludes that litigating this action in Delaware will not 'place a significant and onerous burden' on either party.") *J-Squared Technologies, Inc.*, 2005 WL 388599, at *3 (denying motion to transfer where a "Delaware defendant conducting world-wide business" will not be overly burdened by "travel expenses and inconveniences incurred" during discovery); *Apple Computer, Inc. v. Unova, Inc.*, No. Civ. A. 03-101-JJF, 2003 WL 22928034, at *5 (D. Del. Nov. 25, 2003) (Farnan, J.) (denying motion to transfer where although the "parties are predominately located closer" to the transferee forum, "the parties as a whole are not located close" to the transferee forum and "all of the parties are sophisticated and substantial enough to litigate in Delaware") (Frank Decl., Ex. V). As a result, Witness cannot show that litigating in Delaware would impose any undue financial burden.

Fourth, Technological advances have reduced the burden of litigating outside of the state of a party's headquarters or principal place of business. *Motorola Inc. v. PC-TEL, Inc.*, 58 F. Supp. 2d 349, 358 n.12 (D. Del. 1999) (Sleet, J.) (denying motion to transfer and

explaining that "in this age of vastly improved communications and transportation capabilities, the costs of litigating in a distant forum are greatly reduced"); *C.R. Bard Inc.*, 997 F. Supp. at 562 (denying motion to transfer because "[t]he current state of technology makes it more difficult for defendants to argue that litigating in Delaware is inconvenient for the parties and witnesses"). Furthermore, electronic discovery eliminates any geographic burden associated with document discovery and trial preparation. *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) (McKelvie, J.) ("A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum. Computers, modems, scanning machines, photocopiers, facsimile machines, video tapes, video discs, CD ROMs and express mail services have changed dramatically how we store, produce and exchange information").

Fifth, NICE's offices are in Rutherford, New Jersey which is only approximately 120 miles from the state of Delaware. *Padcom, Inc. v. Netmotion Wireless, Inc.*, No. Civ. A. 03-983-SLR, 2004 WL 1192641, at *8 (D. Del. May 24, 2004) (Robinson, J.) (denying motion to transfer where one defendant, conducting business on a nationwide basis, is located in Seattle, Washington, "plaintiff and defendant [] are located within close proximity to this [Delaware] court, in Pennsylvania and New Jersey, respectively") (Frank Decl., Ex. W).

### 2. The convenience of the witnesses does not strongly favor transfer.

The availability of witnesses does not favor litigating the case in one forum over another. Witness's argument that many of its employees reside in the Atlanta metropolitan area, (Wit. Br. p. 21.), is of no consequence. As this Court has held, employee witness are presumed to be willing to testify. *Jones Pharma, Inc.*, at *2. The only relevant inquiry under *Jumara* is the

16

extent to which witnesses would be unavailable to testify in Delaware. Since employee witnesses are presumed to be available to testify, employee witness convenience is irrelevant.[13]

Witness's conclusory argument that "[k]ey former Witness employees (such as former Vice Presidents of Engineering) who were integrally involved in development of the accused products are in the Atlanta area," (Wit. Br. p. 21), is without merit. Witness sheds no light on what supposedly makes these former employees "key" witnesses. In fact, Witness asserts that the instant case "involves every accused product already at issue in *NICE I*." (Wit. Br. p. 11.) Yet, in NICE I, Witness's Rule 26 Initial Disclosure statement, that provided the names and addresses of people "likely to have discoverable information," did not identify any of the individuals that Witness now says are "key former employee witnesses." (Frank Decl., Ex. G, pp. 1-4.)

In addition, in NICE I, NICE served an interrogatory asking Witness to "identify the five persons most knowledgeable on, or possessing the most information concerning, the manufacture, sale, offer for sale and development of the Accused Products." (Frank Decl., Ex. X, p. 2.) Witness responded without identifying any of the supposedly "key" witnesses to which Witness now points. (*Id.*, at 3.)

Given that Witness bears the heavy burden to make a showing under *Jumara* but has provided no evidence that the former employees located in Georgia are, in fact, key or would not appear voluntarily in Delaware. Witness's claims that "key" witnesses would not be available in Delaware deserves little weight. *Jones Pharma, Inc.*, at *2 (The "Court gives little

---

[13]    To the extent Witness relies on convenience of such witnesses, as noted above, many of the inventors of the NICE Patents in this case are non-party witnesses located in Connecticut which is much closer to Delaware than to Georgia. Delaware is a more convenient forum for them than is Georgia.

17

weight to Mr. Franz's status as a non-party witness and residence in Missouri" because "the movant bears the burden in motions to transfer," (citing *Jumara*) and "[defendant] KV has provided the Court with no evidence that Mr. Franz, KV's former CEO, would be unwilling to testify on its behalf."); *Trilegiant Loyalty Solutions, Inc.*, at *3 ("With respect to Mr. Storey, the inventor of the patents-in-suit and a non-party witness, [defendant] Maritz does not contend that he would be unavailable for trial in Delaware, and Maritz has provided the Court with no evidence that Mr. Storey, would be unwilling to testify on its behalf. Accordingly, I give little weight to Mr. Storey's status as a non-party witness and residence outside of Delaware."); *Critikon, Inc.*, 821 F. Supp. at 967 ("[Defendant] has not represented to the Court that Dr. Ring would be unwilling to testify at trial voluntarily. Because Dr. Ring is a retired employee of [defendant] the Court must assume that he would be unwilling to testify absent a subpoena.").

   **3.    The location of books and records does not strongly favor transfer.**

        Witness asserts that the location of its documents in Georgia adds to Witness's convenience for litigating in Georgia and thereby favors transfer. This argument lacks merit because the *Jumara* court expressly held that the location of documents is only relevant in the transfer analysis "to the extent that the files could not be produced in the alternative forum." *Jumara*, at 879. As a result, this Court should give the location of Witness's documents in Georgia no weight. *Jones Pharma, Inc.*, at *2 ("[Defendant] KV does not contend that [books and records necessary to litigate this action] could not be produced or would be unavailable in Delaware. Therefore, the Court does not consider the location of books and records as weighing in favor of transfer.").

**B.      The Public Interests Identified in Jumara Do Not Strongly Favor Transfer To Georgia.**

Witness's argument that the interests of justice and judicial economy strongly favor transfer to Georgia because the same technologies and products are being litigated in NICE I and WITNESS I-II is unsupported. In fact, Witness makes no showing that the transfer is in the interest of justice or judicial economy.

The three Georgia cases and this case all relate to different patents. There is no overlap. Thus, the infringement and invalidity issues in this case are unique. See Appendix A, a chart listing key facts regarding each case. The fact that the cases all relate broadly to the same types of technology does not warrant transfer. *See, Praxair, Inc. v. ATMI, Inc.*, No. Civ. A. 03-1158-SLR, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004) (Robinson, J.) (denying transfer in part because "[w]hile the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities") (Frank Decl., Ex. Y). In fact, the mere fact that there is potentially some overlap amongst this case and the Georgia cases does not mean that judicial economy is served by transferring the case. This Court is "amply qualified" to "familiarize itself" with the technology. *Truth Hardware Corp. v. Ashland Products, Inc.*, No. C.A. 02-1541-GMS, 2003 WL 118005, at *1 (D. Del. Jan. 13, 2003) (Sleet, J.) (rejecting defendant's claim of judicial economy because although the transferee court "may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself") (Frank Decl., Ex. Z).

Moreover, and equally significant, the three Georgia cases are pending before **three different judges**. Therefore, the supposed economies of moving a fourth case involving ten more patents to Georgia are illusory. Furthermore, the Delaware case is the only case in which damages are at issue in connection with sales of Witness products. None of the three

19

judges in Georgia has that issue before them.  Given the number of patents and products in the Delaware case, the damages portion of the case will involve significant discovery unique to the Delaware case and will present several complex legal issues.

Witness itself recognized that WITNESS II was not related to NICE I and WITNESS I cases.  Upon commencing WITNESS II, Witness represented in its filings that there were no pending cases in Georgia related to WITNESS II.  (Joint Preliminary Report and Discovery Plan (Frank Decl., Ex. I.)

Witness has not moved to consolidate WITNESS II with either NICE I or WITNESS I for the purposes of coordinating discovery, or otherwise.  Nor have NICE I and WITNESS I been consolidated for the purposes of discovery.[14]

Notwithstanding Witness's success in convincing the New York Court to transfer NICE I to Georgia so that NICE I and WITNESS I could be consolidated, Judge Story denied Witness's motion to consolidate  NICE I with WITNESS I.  He reasoned that "at the end of the day" the "two cases involve different patents with different claims." (Frank Decl., Ex. A, p. 10.) As a result, there is little reason to believe that if this case is transferred to Georgia it will be consolidated with any of the three pending Georgia cases.

---

[14] Witness argues that the parties agreement to have former Judge Roderick McKelvie serve as a Special Master to supervise discovery and preside over Markman hearings in NICE I and WITNESS I supports transfer to Georgia.  This argument is without merit.  Former Judge McKelvie will not have gained knowledge from his work on NICE I and WITNESS I that justifies transfer of the instant action because the instant action turns on a different set of material facts than NICE I and WITNESS I. In any event, regardless of the headstart former Judge McKelvie may have, this Court is amply qualified to learn the technology and the issues presented by this case. *Truth Hardware Corp.,* 2003 WL 118005, at *1. As shown above, the patents, the prior art and the features of Witness' products at issue are all different. Moreover, the patents in all of the cases are different, as a result, the issues raised by claim construct will differ. Additionally, damages discovery in the instant action is unique since NICE is not seeking damages in NICE I. Finally, if the Court desired, it could appoint Judge McKelvie, if available, to serve as its Special Master just as the judges in NICE I and Witness I decided to do.

20

The prior art cited on the face of the patents at issue in NICE I, WITNESS I and WITNESS II is vastly different from the cited prior art in the patents at issue in the instant action. The patents asserted here cite 469 prior art references.[15] Of these 469 prior art references, NONE are cited on the patents in WITNESS I as prior art; only TWO are cited on the patents in NICE I as prior art; and only TWO are cited on the patents in WITNESS II as prior art. Moreover, none of the five overlapping pieces of prior art were the basis of a rejection by the Patent and Trademark Office during the prosecution of the NICE patents.

The marked differences among the prior art publications cited on the face of the patents in suit in the four NICE-WITNESS cases underscores that, as set forth above, the patents at issue in the four cases relate to different technologies. *See Praxair, Inc.*, 2004 WL 883395, at *2 (rejecting defendant's claim that "transfer would reduce litigation" because "[w]hile the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and different set of alleged infringing activities"). Moreover, Witness and NICE's selection of three different technical experts in the NICE I, WITNESS I and WITNESS II cases clearly demonstrates that each case involves distinct technologies.

Finally, it is also significant that the cases are at very different stages. NICE I and WITNESS I are about two years old. *Markman* hearings in both cases will be completed by early September 2006. Attempting to coordinate trial or discovery with those cases would needlessly delay those cases. WITNESS II was filed over seven months before the Delaware case. Coordinating discovery between these two cases, however, makes no sense. In WITNESS

---

[15]    Given that some of the NICE patents are in the same patent family, several prior references are cited in one or more patents. 118 prior art reference are cited in one or more of the NICE patents.

II, Witness accused NICE's products of infringing Witness's patent. As a result, discovery in that case will center around NICE's products and Witness's patents. In contrast, in the instant case, discovery will focus on Witness's products and NICE's patents.

###### C.    Local Interest Does Not Strongly Favor Transfer

Witness's insistence that Georgia has a local interest in this case is also baseless. This Court has repeatedly held that patent actions are national matters that do not implicate state or local interests. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, No. Civ. A. 01-309-JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002) (Farnan, J.) (denying motion to transfer and reasoning that "[p]atent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy") (Frank Decl., Ex. AA); *Jones Pharma, Inc.*, at *3 ("there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos*, rights relating to patents are not local or state matters. Therefore, patent rights cannot give rise to a local controversy or implicate local interests."); *Truth Hardware Corp.*, 2003 WL 118005, at *1 (Denying motion to transfer because "the patent dispute and technology at issue is not 'local' in nature or otherwise unique to the [transferee forum]"). Witness's argument that Delaware has less of an interest in this patent infringement case than does Georgia is nonsense.

22

## CONCLUSION

For the reasons stated above, the Court should deny Witness's motion to transfer this case.

Dated: July 28, 2006

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Of Counsel:_
KAYE SCHOLER LLP
Scott G. Lindvall, Esquire
Daniel P. DiNapoli, Esquire
Joseph M. Drayton, Esquire
425 Park Avenue
New York, NY 10022
(212)836-8000

Josy W. Ingersoll (No. 1088)
Melanie K. Sharp (No. 2501)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6672
jingersoll@ycst.com
msharp@ycst.com
kkeller@ycst.com

_Attorneys for Plaintiffs Nice Systems, Inc. and Nice Systems, Ltd._

23

065251.1001

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on July 28, 2006, I caused to be electronically filed a true and correct copy of the foregoing document, Plaintiff's Answering Brief in Opposition to Defendant's Motion for Transfer, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Kyle Wagner Compton, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE  19899-1114

I further certify that on July 28, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
> Noah C. Graubart, Esquire
> Nagendra Setty, Esquire
> John Hamann, Esquire
> Daniel A. Kent, Esquire
> Christopher O. Green, Esquire
> 1230 Peachtree, NE
> 19th Floor
> Atlanta, GA  30309

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302)571-6600
kkeller@ycst.com