**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NICE SYSTEMS, INC., and                                  :

NICE SYSTEMS LTD.,                                       :

                          Plaintiffs,        :    Civil Action No. 063-11-JJF

               v.                                   :

WITNESS SYSTEMS, INC.,                                  :

                        Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF JASON P. FRANK IN SUPPORT OF PLAINTIFFS**
**NICE SYSTEMS, INC. AND NICE SYSTEMS LTD.'S**
**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**

I, Jason P. Frank, declare:

1.     I am an attorney with the law firm Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022. Kaye Scholer represents plaintiffs NICE Systems, Inc. ("NICE") and NICE Systems Ltd. ("NICE Ltd.") in this action.

2.     NICE is a Delaware Corporation with its principal place of business located in Rutherford, New Jersey.

3.     Attached hereto as Exhibit A is a true and correct copy of the decision by United States District Court Judge Richard W. Story, dated December 5, 2005, denying the motion of defendant Witness Systems, Inc. ("Witness") to consolidate *STS Software Systems, Ltd. v. Witness Systems, Inc.*, 04-cv-2111 ("NICE I") and *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*, 04-cv-2531 ("WITNESS I").

4.     Attached hereto as Exhibit B is a true and correct copy of a printout of Witness's "Company Profile" taken from their Internet website www.witness.com.

5.    In 2005, NICE acquired from Dictaphone Corporation all of the rights and liabilities associated with the ten patents at issue in this action.

6.    Attached hereto as Exhibit C is a true and correct copy of the Stipulation and Order of Dismissal, dated February 24, 2006, dismissing with prejudice all claims pertaining to U.S. Patent No. 6,122,665 from consideration in NICE I.

7.    Attached hereto as Exhibit D is a true and correct copy of the Plaintiff's Amended Initial Disclosures, dated May 10, 2005, which was filed by Witness in WITNESS I.

8.    Attached hereto as Exhibit E is a true and correct copy of the Initial Disclosures of NICE Systems, Ltd. and Initial Disclosures and Supplemental Initial Disclosures of NICE Systems, Inc., dated May 10, 2005, which was filed by NICE in WITNESS I.

9.    To date, discovery in WITNESS I has progressed in accordance with the Federal Rules of Civil Procedure and the local rules for the Northern District of Georgia. All parties have filed Initial Disclosures, Witness has noticed 12 depositions and taken 4 of them, NICE and NICE Ltd. have noticed 3 depositions and taken 1 of them, and all parties have filed and responded to document requests and interrogatories.

10.    By letter dated October 12, 2005, Witness disclosed Dr. James Foley as an expert in WITNESS I.

11.    On October 26, 2005, NICE and NICE Ltd. filed their LPR 6.2 Proposed Claim Construction in WITNESS I, which disclosed Dr. Aaron Bobick as an expert.

12.    Attached hereto as Exhibit F is a true and correct copy of the decision by United States District Court Judge John G. Koeltl, dated November 11, 2004, granting Witness's motion to transfer *STS Software Systems, Ltd. v. Witness Systems, Inc.*, 04-cv-5615 (JGK) to Georgia.

13.     Attached hereto as Exhibit G is a true and correct copy of Plaintiff's Initial Disclosures, dated October 20, 2004, which was filed by Witness in NICE I.

14.     Attached hereto as Exhibit H is a true and correct copy of STS Software's Systems, Ltd.'s Initial Disclosures, dated October 22, 2004, which was filed by STS Software's Systems, Ltd. in NICE I.

15.     To date, discovery in NICE I has progressed in accordance with the Federal Rules of Civil Procedure and the local rules for the Northern District of Georgia.  Both Witness and STS Software's Systems, Ltd. have filed Initial Disclosures, Witness has noticed 14 depositions and taken 8 of them, STS Software's Systems, Ltd. has noticed 4 depositions and taken 1 of them and both parties have filed and responded to document requests and interrogatories.

16.     On February 27, 2006, Witness filed its LPR 6.2 Preliminary Proposed Claim Construction in NICE I, which disclosed Christopher D. Blair, Ph.D. as an expert.

17.     By letter dated November 4, 2005, STS Software's Systems, Ltd. disclosed Dr. Kevin Jeffay as an expert in NICE I.

18.     Attached hereto as Exhibit I is a true and correct copy of the Joint Preliminary Report and Discovery Plan in *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*, 06-cv-0126 ("WITNESS II"), dated March 23, 2006.

19.     Attached hereto as Exhibit J is a true and correct copy of Plaintiff's Initial Disclosures, dated April 5, 2006, which was filed by Witness in WITNESS II.

20.     Attached hereto as Exhibit K is a true and correct copy of the Initial Disclosures of NICE and NICE Ltd., dated April 5, 2006, which was filed by NICE and NICE Ltd. in WITNESS II.

21.     To date, discovery in WITNESS II has progressed in accordance with the Federal Rules of Civil Procedure and the local rules for the Northern District of Georgia. All parties have filed Initial Disclosures, Witness has noticed 1 deposition but not taken it at this point, NICE and NICE Ltd. have not noticed any depositions thus far. Additionally, both parties have filed and responded to interrogatories, have served documents and have begun claim construction by exchanging disputed claim terms.

22.     By letter dated July 5, 2005, Witness disclosed Dr. Richard M. Stern as an expert in WITNESS II.

23.     Attached hereto as Exhibit L is a true and correct copy of *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,* No. Civ. A. 04-3660-JJF, 2005 WL 44107 (D. Del. Feb. 15, 2005).

24.     Attached hereto as Exhibit M is a true and correct copy of a brochure for Contactstore for Communication Manager, branded as Impact 360 Compliance Recording/Package, which discuss the "search and replay" feature.

25.     Attached hereto as Exhibit N is a true and correct copy of a brochure for Contactstore IP, branded as IP Office Contactstore which discusses the "search and replay" feature.

26.     Attached hereto as Exhibit O is a true and correct copy of page G7 of the glossary from the Enterprise Manager Installation and Configuration Guide for Contactstore IP, which defines "follow-the-call" technology.

27.     Attached hereto as Exhibit P is true and correct copy of a brochure distributed by Avaya pertaining to Witness Quality for Communication Manager, which discusses "agent-initiated monitoring" on pages 2-3.

28.    Attached hereto as Exhibit Q is a true and correct copy of a brochure distributed by Avaya pertaining to Contactstore for Communication Manager, branded as Impact 360 Compliance Recording/Package, which discusses "agent-initiated monitoring" on page 2.

29.    Attached hereto as Exhibit R is a true and correct copy of a brochure relating to Contactstore for Communication Manager, branded as Impact 360 Compliance Recording/Package, which discusses "conference recording mode."

30.    Attached hereto as Exhibit S is a true and correct copy of *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786-JJF, 2004 WL 323109 (D. Del. Feb. 17, 2004)..

31.    Attached hereto as Exhibit T is a true and correct copy of *Textron Innovations Inc. v. The Toro Co.,* No. Civ. A. 05-486-GMS, 2005 WL 2620196 (D. Del. Oct. 14, 2005).

32.    Attached hereto as Exhibit U is a true and correct copy of *J-Squared Techs., Inc. v. Motorola, Inc.,* No. Civ. A. 04-960-SLR, 2005 WL 388599 (D. Del. Feb. 4, 2005).

33.    Upon information and belief, HSBC Finance Corporation (Formerly Household Finance Corporation) is a customer of Witness.  HSBC Finance Corporation has a call center located in New Castle, Delaware in which it uses Witness's products.

34.    Upon information and belief, J.P. Morgan Chase is a customer of Witness. J.P. Morgan Chase has a call center located in Newark, Delaware in which it uses Witness's products.

35.    Attached hereto as Exhibit V is a true and correct copy of *Apple Computer, Inc. v. UNOVA, Inc..* No. Civ. A. 03-101-JJF, 2003 WL 22928034 (D. Del. Nov. 25, 2003).

36.    Attached hereto as Exhibit W is a true and correct copy of *Padcom, Inc. v. Netmotion Wireless, Inc.,* No. Civ. A. 03-983-SLR, 2004 WL 1192641 (D. Del. May 24, 2004).

37.    Attached hereto as Exhibit X is a true and correct copy of Plaintiff Witness Systems, Inc.'s Responses to NICE Systems Inc. and NICE Systems Ltd.'s First Set of Interrogatories, dated September 12, 2005, which was filed by Witness in NICE I.

38.    Attached hereto as Exhibit Y is a true and correct copy of *Praxair, Inc. v. ATMI, Inc.,* No. Civ. A. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004).

39.    Attached hereto as Exhibit Z is a true and correct copy of *Truth Hardware Corp. v. Ashland Products, Inc.,* No. Civ. A. 02-1541, 2003 WL 118005 (D. Del. Jan. 13, 2003).

40.    Attached hereto as Exhibit AA is a true and correct copy of *Stratos Lightwave, Inc. v. E20 Comms., Inc.,* No. Civ. A. 01-309-JJF, 2002 WL 500920 (D. Del. Mar. 26, 2002).

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. Sec. 1746.

Executed on July 28, 2006

Jason P. Frank

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on July 28, 2006, I caused to be electronically filed a true and correct copy of the foregoing document, Declaration of Jason P. Frank in Support of Plaintiffs Nice Systems, Inc. and Nice Systems Ltd.'s  Opposition to Defendant's Motion for Transfer, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Kyle Wagner Compton, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE  19899-1114

I further certify that on July 28, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
> Noah C. Graubart, Esquire
> Nagendra Setty, Esquire
> John Hamann, Esquire
> Daniel A. Kent, Esquire
> Christopher O. Green, Esquire
> 1230 Peachtree, NE
> 19th Floor
> Atlanta, GA  30309

Karen E. Keller (No. 4489)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| STS SOFTWARE SYSTEMS, LTD., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 1:04-CV-2111-RWS |
| WITNESS SYSTEMS, INC., | : | |
| Defendant. | : | |
| WITNESS SYSTEMS, INC., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 1:04-cv-2531-CAP |
| NICE SYSTEMS, INC, and NICE SYSTEMS, LTD., | : | |
| Defendants. | : | |

## ORDER

Now before the Court is the Motion to Consolidate of Witness Systems,

Inc. [122-1].    After considering the entire record, the Court enters the following

Order.

## Background

Witness Systems seeks consolidation of two cases currently pending in

the Northern District of Georgia: <u>STS Software Systems, Ltd. v. Witness</u>

<u>Systems, Inc.</u>, No. 1:04-cv-2111-RWS (N.D. Ga. filed July 20, 2004), and

<u>Witness Systems, Inc. v. NICE Systems, Inc.</u>, No. 1:04-cv-2531-CAP (filed

Aug. 30, 2004).

**I.  The STS Case (STS Software Systems, Ltd. v. Witness Systems, Inc.)**

STS Software Systems, Ltd. ("STS") is the assignee of all interest in

U.S. Patent No. 6,122,665 ("the '665 patent") and the wholly owned subsidiary

of NICE Systems, Ltd.  On July 20, 2004, Witness Systems filed a complaint in

the Northern District of Georgia seeking a declaratory judgment that it does not

infringe any valid claim of the '665 patent.  On the same day, STS filed a

complaint in the Southern District of New York alleging infringement of the '665

patent.  Witness Systems later counterclaimed in that suit seeking declaratory

judgments of non-infringement and invalidity.  The New York action was

subsequently transferred to this district and, by Orders of this Court entered

2

January 14, 2005 [46] and February 9, 2005 [49] respectively, the two cases were consolidated under the caption STS Software Systems, Ltd. v. Witness Systems, Inc., No. 1:04-cv-2111-RWS.

After the cases were consolidated, three additional patents were issued and assigned to STS. These patents, U.S. Patent Nos. 6,865,604 ("the '604 patent"), 6,880,004 ("the '004 patent"), and 6,871,229 ("the '229 patent"), are directly related to the application which issued as the '665 patent. STS sought, and was granted, leave to file a supplemental complaint which Witness Systems did not oppose. On July 7, 2005, STS filed its supplemental complaint asserting claims for infringement of these three additional patents; Witness Systems has counterclaimed seeking declarations of non-infringement and invalidity as to these patents as well.[1]

## II. The NICE Case (Witness Systems, Inc. v. NICE Systems, Inc. & NICE Systems, Ltd.)

On August 30, 2004, Witness Systems filed suit against NICE Systems,

---

[1] Although the case presently involves allegations of infringement and corresponding counterclaims of non-infringement and invalidity related to the four STS patents (the '665, '604, '004, and '229 patents), STS has moved to dismiss all claims related to the '665 patent. The Court has not yet addressed the merits of the STS motion, but notes that its resolution is not relevant to the Motion to Consolidate because the same analysis would apply to the remaining three STS patents.

AO 72A
(Rev.8/82)

Inc. alleging infringement of U.S. Patent Nos. 5,790,798 ("the '798 patent") and

6,510,220 ("the '220 patent").  Approximately six months later, on February 24,

2005, Witness Systems filed suit against NICE Systems, Ltd., the parent

company of NICE Systems, Inc.  These actions were consolidated into a single

action, Witness Systems, Inc. v. NICE Systems, Inc., No. 1:04-cv-2531-CAP,

which is currently pending in this district before the Honorable Charles A.

Pannell, Jr.

### Discussion

Pursuant to Federal Rule of Civil Procedure 42(a), Witness Systems

seeks consolidation of two cases pending in this district.  Rule 42 provides:

> (a) Consolidation. When actions involving a common question of law
> or fact are pending before the court, it may order a joint hearing or
> trial of any or all the matters in issue in the actions; it may order all the
> actions consolidated; and it may make such orders concerning
> proceedings therein as may tend to avoid unnecessary costs or delay.

This Rule "codifies a district court's inherent managerial power to control the

disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." Young v. City of Augusta, 59 F.3d 1160,

1168 (11th Cir. 1995) (internal quotations omitted).  Although the decision to

consolidate cases is committed to the sound discretion of the trial court, id.

4

(Rule 42(a) "is permissive and vests a purely discretionary power in the district court.") (quotations omitted); Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985) ("A district court's decision under Rule 42(a) is purely discretionary."), that discretion is not without limits. As the text of Rule 42(a) makes clear, a trial court may consolidate cases only when (1) the actions involve a common question of law or fact and (2) they are pending before the same court. FED. R. CIV. P. 42(a); see Hargett v. Valley Fed. Sav. Bank, 60 F.3d 754, 765 (11th Cir. 1995); In re Consol. Parlodel Lit., 182 F.R.D. 441, 444 (D.N.J. 1998) ("A common question of law or fact shared by all of the cases is a prerequisite for consolidation.").

Where the common question of law or fact requirement has been satisfied, trial courts in the Eleventh Circuit are "encouraged . . . to 'make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion.' " Hendrix, 776 F.2d at 1495 (quoting Dupont v. S. Pac. Co., 366 F.2d 193, 195 (5th Cir. 1966)). But, "the mere existence of common issues, although a prerequisite to consolidation, does not mandate a joint trial." Cedar-Sinai Med. Ctr. v. Revlon, Inc., 111 F.R.D. 24, 32 (D. Del.

5

1986).  Rather, in determining whether consolidation is appropriate, the court

must assess

> whether the specific risks of prejudice and possible confusion [are]
> overborne by the risk of inconsistent adjudications of common factual
> and legal issues, the burden on parties, witnesses and available judicial
> resources posed by multiple lawsuits, the length of time required to
> conclude multiple suits as against a single one, and the relative
> expense to all concerned of the single-trial, multiple-trial alternatives.

Hendrix, 776 F.2d at 1495 (quoting Arnold v. E. Air Lines, Inc., 681 F.2d 186,

193 (4th Cir. 1982)).  Thus, even though "consolidation may enhance judicial

efficiency, '[c]onsiderations of convenience and economy must yield to a

paramount concern for a fair and impartial trial.' " In re Repetitive Stress Injury

Litig., 11 F.3d 368, 373 (2d Cir. 1993) (quoting Johnson v. Celotex Corp., 899

F.2d 1281, 1285 (2d Cir. 1990)). The party seeking consolidation bears the

burden of establishing that consolidation under Rule 42(a) is appropriate.  In re

Repetitive Stress Injury Litig., 11 F.3d at 373; Servants of Paraclete, Inc. v.

Great Am. Ins. Co., 866 F. Supp. 1560, 1572 (D.N.M. 1994); Powell v. Nat.

Football League, 764 F. Supp. 1351, 1359 (D. Minn. 1991).

Applying this standard, the Court concludes that consolidation is not

appropriate here.  Without question, there are factors present in this case which

6

would militate in favor of consolidation. For example, the patents at issue involve related technologies. As Witness Systems points out, "[t]he patents in both suits and the technologies behind them relate to systems and methods used in call center environments for monitoring, recording and playing back a conversation between two persons over a computer network." (Mem. in Supp. of Mot. to Consol. [122-1] at 16.) It is also true that STS is the wholly-owned subsidiary of NICE, Ltd., that it has taken inactive corporate status, and that it currently has no employees, all of which tends to suggest that the same parties will be impacted by the Court's decisions. Furthermore, the parties in both actions are represented by the same counsel, and both actions are proceeding on similar schedules. Finally, it appears that some of the same witnesses may be called on to offer testimony in both actions. Thus, in light of these similarities, it would appear, at first glance, that consolidation may serve the interests of judicial economy.

But, any benefits in terms of efficiency, judicial economy and lessening the burdens on the parties will be realized primarily, if not entirely, in the

AO 72A
(Rev.8/82)

discovery phase of the litigation.[2]  It is far less clear that any such gains will be realized during either claim construction or trial.  In an action for patent infringement, "[t]he central focus . . . remains on the claim language, as illuminated by the written description and the prosecution history."  See KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1355 (Fed. Cir. 2000).  As such, questions of infringement and validity in each action will turn, not on the mechanics of the underlying technology, but on what is claimed and whether that claimed material is embodied in the allegedly infringing products.  Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001) ("An infringement analysis requires . . . a comparison of the properly construed claims with the allegedly infringing device or method to determine whether the device or method embodies every limitation of the claims.").[3]

---

[2]  The Court notes that Witness Systems has not sought any form of limited consolidation to facilitate discovery in these cases.  Rather, Witness Systems apparently seeks the complete consolidation of both actions for purposes of both discovery and trial.

[3]  As the pleadings in the cases make clear, this is a far more narrow inquiry than whether both relate to the same overall technology.  For example, Witness Systems responds to allegations of infringement with respect to the '665 patent by stating that its products do not infringe because they do not "monitor a computer network to detect data packets that are part of a communication session as the terms in that phrase should be construed in the context of the '665 patent. . . ." (Answer to Supp. Compl. [95] ¶ 9 (emphasis supplied).)

8

Viewing the two cases and their respective patent claims in their totality, the Court is unconvinced that the degree of overlap between the patents at issue warrants consolidation. The four STS patents relate to specific methods for identifying, analyzing, monitoring, storing, organizing, and recalling data transmitted over a computer network during a Voice over IP ("VoIP") communication session.[4] In contrast, the Witness Systems patents relate to specific methods for detecting changes on a computer screen and synchronizing those changes with recorded telephone conversations such that they may be

---

[4] For example, the abstract of the '665 patent describes the claimed invention as follows:

> A system and a method for monitoring a computer network to detect data packets including audio or video data, such packets being part of a communication session, for storing these packets and for reconstructing the communication session upon request.

(Supp. Compl. Ex. A [83-2] at 1.) The '604 patent is directed at the "[m]onitoring of data packets transmitted across a computer network to extract a computer network-based telephone session. . . ." (Supp. Compl. Ex. B [83-3] at 1.) The '229 patent is directed at a method for storing "at least a portion of a computer network based session such as a telephone session being performed on a computer network" (Supp. Compl. Ex. C [83-4] at 1.) Finally, the '004 patent is directed at "[r]estoring at least a portion of a telephone communication session" and displaying the "portion of the telephone communication session [on a] display unit." (Supp. Compl. Ex. D [83-4] at 1.)

9

replayed in substantially the same manner in which they occurred.[5]  It is true that

the same general technological concepts and vocabulary may be involved in

both cases.  It is also true that both sets of patents involve the recording and

playback of telephone conversations.  But, at the end of the day, the fact

remains that the two cases involve different patents with different claims and

require separate trials.

   In this regard, the Court finds the cases relied upon by Witness Systems

to be unpersuasive.  Several of the cases involved the consolidation of actions

involving either the same patent or patents, see Ovadia v. Top Ten Jewelry

---

[5] The abstract of the '798 patent describes the claimed invention as follows:

> The present invention relates to simultaneous computer screen and voice
> monitoring from a remote location, and particularly relates to synchronized
> telephone and screen monitoring of a computer workstation from a remote
> location. Such monitoring is useful for providing training and assistance to
> those using such workstations, especially in connection with telephone use,
> can also be useful for providing an audit trial of significant on-screen events,
> or can be used as a trigger to initiate other separate events. In one
> embodiment, graphics primitives are used to determine localized screen
> changes which are periodically copied from the monitored workstation
> desktop and sent over a network to a remote, monitoring, workstation. In
> another embodiment, localized screen changes are determined by full screen
> comparison, and sent over a network to a remote, monitoring, workstation.

(Mem. in Supp. of Mot. to Consol. Ex. 5 [122-7] at 1.)  The description of the
invention described in the '220 patent is identical.  (Mem. in Opp'n to Mot. to
Consol. Ex. M [143-20] at 30.)

10

Corp., 2005 WL 1337792, at *1 (S.D.N.Y. June 6, 2005) ("[E]ach case involves

the same five patents, which were purportedly violated at the same place and the

same time.  Further, should either case go to trial, plaintiff's proof of

infringement will be the same. . . ."), or groups of patents related to the same

invention, with similar claim language, and where the validity of all patents would

depend on a single ruling by the court.  See Rohm & Haas Co. v Mobile Oil

Corp., 525 F. Supp. 1298, 1301, 1309-10  (D. Del. 1981) (finding consolidation

proper where, based on "the similar product chemistry . . . , the patents

underlying these [products] are said to stand in a classic blocking situation in

which neither [party] can sell its product without infringing the other's patent"

and "[a]ll six patents underlying the two suits are directed toward different . . .

compounds [embodied in the allegedly infringing Rohm & Haas product] and

several of the claims overlap.  Moreover, Mobile's patents can all be traced to a

common disclosure . . . and the validity of these patents depends in large part

on the Court's ruling as to the adequacy of that [disclosure].").

Although it is true that the court in Hooker Chems. & Plastics Corp. v.

Diamond Shamrock Corp., 96 F.R.D. 46 (W.D.N.Y. 1982) found consolidation

appropriate where the cases involved patents directed at different, but related

11

technologies, that case is clearly distinguishable from the instant matter. In

Hooker Chemicals, the court allowed consolidation of cases involving

infringement of numerous patents directed at both membrane and non-

membrane electrolyis on the grounds that "the same basic technology, the same

parties, and the same alleged infringing activities are presented by both of the

actions." Id. at 49. But there, the initial complaint stated claims of infringement

directed at both technologies. See Hooker Chems. & Plastics Corp. v.

Diamond Shamrock Corp., 87 F.R.D. 398, 399-400 (W.D.N.Y. 1980) ("The

original complaint of Hooker Chemicals & Plastics Corporation ("Hooker")

sought a declaratory judgment that six Diamond Shamrock Corporation

("Diamond") patents are void. Two of the patents, '163 and '405, concern

membrane cell technology; the other four, '483, '676, '454, and '166, concern

non-membrane, largely diaphragm-related, cell technology.") Thus, unlike in this

case, the motion to consolidate involved claims of infringement for a new patent

which was related to a patent and technology already at issue in the case.

Finally, only in W. States. Mach. Co. v. S.S. Hepworth Co., 37 F. Supp. 377

(E.D.N.Y. 1941), did the court apparently find consolidation of cases involving

wholly different patents appropriate based solely on the relatedness of the

12

technology. The Court notes that this decision has been questioned, see 9

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2384

(2d ed) (noting that "the existence of a common question of law and fact was

somewhat doubtful"), and finds this 1941 decision to be unpersuasive.

Furthermore, even assuming that a determination of infringement or

invalidity with respect to the patents at issue in the two cases would involve

common questions of law or fact, the Court is not inclined to consolidate these

actions. All parties have requested that their cases be tried to a jury. "Juries in

patent cases are frequently called upon to weigh extraordinary volumes of

complex material. In such situations, it may not be reasonable to expect a jury

to screen out, in its deliberations regarding one defendant, evidence it has been

instructed to consider with respect to another defendant." Clopay Corp. v.

Newell Co., 527 F. Supp. 733, 735 (D. Del. 1981).

The Court has considered the allegations, defenses, and evidence that will

likely be relevant in each case. After doing so, the Court concludes that, in light

of the highly technical and complex evidence which must be presented to the

jury, the risk of prejudice and confusion of the issues outweighs any benefits to

be gained. Similarly, the Court does not believe that the risks of prejudice and

13

confusion can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the parties' claims are submitted to the jury for deliberation.

As discussed above, the parties' claims of infringement will rise or fall based on the claims of the patents and a determination by the finder of fact that the alleged infringing products either do, or do not, embody each and every limitation of the claims. Schoell, 247 F.3d at 1207. Therefore, the evidence of infringement or invalidity which is relevant to one action may be largely, if not entirely, irrelevant to a determination of infringement or invalidity in the other. Consolidation is improper when the introduction of evidence, relevant to one of the consolidated actions, but irrelevant to the other, would impair the conduct of trial or create a likelihood of prejudice by confusing the issues. See Hasman v. Searle & Co., 106 F.R.D. 459, 461 (E.D. Mich. 1985); Flintkote Co. v. Allis-Chalmers Corp., 73 F.R.D. 463 (S.D.N.Y. 1977). As such, the Court declines to consolidate the above-captioned actions.

### Conclusion

Based on the foregoing, the Motion to Consolidate filed by Witness Systems [122-1] is hereby **DENIED**.

14

**SO ORDERED** this __5th__ day of December, 2005.


/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

15

# EXHIBIT B

Witness Systems



Worldwide ▼    🔍 Search [              ] ⊕    it's your goal.  it's our philosophy.  improve everything.

ABOUT US | SOLUTIONS | SERVICES | NEWS & EVENTS | CUSTOMER SUCCESS | PARTNERS | INVESTORS | SUPPORT

Home > About Us > Company Profile

► Company Profile

► Executive & Senior Management

► Board of Directors

► Careers

► Contact Us

► Locations

## Company Profile

Witness Systems (NASDAQ: WITS) is a leading global provider of workforce optimization software and services that provide enterprises with unprecedented visibility into customer service processes, workforce performance, and customer intelligence. The company's solutions play a strategic role in the customer interaction centers of Global 2000, small- and medium-sized businesses worldwide, as well as in IP Telephony and back office environments, and throughout the extended enterprise, including branch offices.

Through its Impact 360™ workforce optimization solution, Witness Systems brings together workforce management, quality monitoring/full-time recording, eLearning, and performance management under a flexible, scalable framework that provides a single user interface and centralized access to data and reports. By maximizing enterprise information flow and customer service effectiveness while minimizing the complexity of system administration, Witness Systems' solutions enable organizations to optimize their people, processes and technology. Through an integrated business consulting, implementation and training methodology, Witness Systems supports a rapid deployment of its solutions, enabling the company's customers to drive revenue, reduce operational costs, and achieve greater customer retention and loyalty.

### Corporate Headquarters
Witness Systems' corporate and Americas head office are located in suburban Atlanta, Georgia:

**Address:** 300 Colonial Center Parkway, Roswell, Georgia 30076, U.S.A.

**Telephone:** +1-888-3-WITNESS within North America or +1-770-754-1900 outside North America

**Facsimile:** +1-770-754-1873

**Email:** info@witness.com

**Web:** www.witness.com

Witness Systems' EMEA regional head office is in Leatherhead, United Kingdom, with remote offices in Germany and the Netherlands. Its Asia Pacific regional head office is located in Hong Kong with remote offices in Australia, China, India, Japan , Malaysia and Singapore. The company has several regional offices in the United States, as well as locations in Brazil, Canada and Mexico.

### Ownership
The company's common stock is traded on the NASDAQ stock market under the ticker symbol WITS.

### Revenue
$185.4 million for the year ended December 31, 2005

### Customers
Witness Systems provides its software to an extensive base of Global 2000 companies with multiple contact centers and leading small- to medium-sized businesses (SMBs) worldwide. Customers include such organizations as Accor Group, Alliant Energy, American Airlines, AOL/7Online Services, AT&T, AXA Belgium, Banco Inbursa, Banking 365 (Bank of Ireland), Best Buy, Blue Cross & Blue Shield, BOC Gases, Cable & Wireless, Carphone Warehouse, Charter Communications, Churchill Insurance, Columbia House, Continental Airlines, Co-operative Bank, Hertz, Lloyds TSB Asset Finance Division, Medco Health Solutions,

Press Cor

The Ameri
Candace F
770.754.1:
cflynn@wi

Europe
Tina Good
+44 (0) 13
tgoodwin@

Asia Pacifi
Alba Oni
+61 2 890
aoni@witn

More Info
Contact Us:

Telephone:
1-888-3-W
770-754-1

Facsimile:
770-754-1

MetLife, NTT Solco, Pitney Bowes, RadioShack, Royal & SunAlliance, Saab Cars USA, STAR CONTACT Ltd., Starwood Hotels & Resorts Worldwide, Target Corporation, Telstra Service Advantage, Tenet Healthcare Corporation, Verizon Wireless, VISA, Vodafone Ireland, Volkswagen Financial Services (UK) Ltd, Wells Fargo and Wipro Spectramind.

Home    Partner Login    Support Login    Sitemap    Contact/Request Information    International Sites

All Rights reserved. Copyright © 2006 Witness Systems, Inc. Legal Notices

# EXHIBIT C

FILED IN CHAMBERS
RICHARD W. STORY
U.S.D.C. Atlanta

FEB 2 4 2006

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

```
- - - - - - - - - - - - - - - - - - - - - -  x
STS SOFTWARE SYSTEMS, LTD.         :

                 Plaintiff,        :

        v.                         :        Civil Action No. 1:04-CV-2111-RWS

WITNESS SYSTEMS, INC.              :

                 Defendant.        :

- - - - - - - - - - - - - - - - - - - - - -  x
```

## STIPULATION AND ORDER OF DISMISSAL

On February 2, 2006, Plaintiff STS Software Systems, Ltd. ("STS") provided Defendant Witness Systems, Inc. ("Witness") with a covenant not to sue for infringement of U.S. Patent No. 6,122,665 ("the '665 patent"), a copy of which covenant is attached. Based on that covenant, and pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, STS and Witness hereby stipulate to the dismissal with prejudice of (a) Count I of STS's First Supplemental Complaint (For Patent Infringement of the '665 patent); and (b) Count I of Witness's Counterclaims (For Declaratory Judgment of Invalidity and Non-Infringement of the '665 Patent).

Dated: February 24, 2006

FISH & RICHARDSON, P.C.

s/ Nagendra Setty

Nagendra Setty
Georgia Bar No. 636205
Daniel A. Kent
Georgia Bar No. 037617
Christopher O. Green
Georgia Bar No. 415110
1230 Peachtree St., NE
19th Floor
Atlanta, GA  30309-3053
Telephone:  (404) 892-5005
Facsimile:  (404) 892-5002

Attorneys for Defendant
*Witness Systems, Inc.*

ASHE, RAFUSE & HILL, LLP

s/ Angela S. Blackwell

Angela S. Blackwell
        Georgia Bar No. 647555
William B. Hill, Jr.
        Georgia Bar No. 354725
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia  30309-3232
Tel:  (404) 253-6000
Fax:  (404) 253-6060

KAYE SCHOLER LLP
Scott G. Lindvall
        (admitted *pro hac vice*)
Patricia J. Clarke
        (admitted *pro hac vice*)
Robert R. Laurenzi
        (admitted *pro hac vice*)
425 Park Avenue
New York, NY  10022-3598
Tel:  (212) 836-8700
Fax:  (212) 836-8689

Attorneys for Plaintiff
*STS Software Systems, Ltd.*

SO ORDERED:

Hon. Richard W. Story

2

**STS SOFTWARE SYSTEMS, LTD.'S**
**COVENANT NOT TO SUE WITNESS SYSTEMS, INC.**
**FOR INFRINGEMENT OF U.S. PATENT NO. 6,122,665**

Plaintiff STS Software Systems, Ltd. ("STS"), for itself, its parents, subsidiaries, successors, heirs, beneficiaries, assigns, affiliated companies and agents, hereby releases and covenants not to assert any claim of patent infringement under 35 U.S.C. § 271 (including but not limited to direct infringement, contributory infringement, and inducing infringement) against Witness Systems, Inc. ("Witness"), together with its directors, officers, parents, subsidiaries, customers, resellers, partners, affiliated companies and joint ventures, as well as Witness's heirs, permitted assigns, and successors, for U.S. Patent No. 6,122,665 ("the '665 Patent"). This release and covenant applies to any and all claims, demands, liabilities, actions or causes of action of any kind which STS has had or has now or may in the future have, and operates with respect to any and all versions of any and all Witness's products, including but not limited to Contact Store for IP, Contact Store Business Edition, Contract Store Enterprise Edition, Witness Contact Store for Communication Manager, Witness Quality for Communication Manager, Impact 360, Nortel Contact Recording, the Nortel Quality Monitoring Suite and the Witness eQuality Suite, which includes eQuality Contact Store for IP, eQuality Contact Store Express, and eQuality Contact Store.

This release and covenant applies to the '665 Patent, to any patent resulting from the reexamination or reissue of the '665 Patent that contains claims substantively identical to the original '665 Patent claims and to any continuation, continuation-in-part or divisional of the '665 Patent that contains claims substantively identical to the '665 Patent claims. This covenant does not apply to U.S. Patent Nos. 6,865,604; 6,880,004; or 6,871,229.

Dated: February 2, 2006.

STS SOFTWARE SYSTEMS, LTD.          NICE SYSTEMS, LTD.

By:_____          By:_____

Print Name:____Ron OZ____          Print Name:_SHLOMO SHAMIR_

Title:_____CFO_____          Title:_____President_____

                                     NICE SYSTEMS, INC.

                                     By:_____

                                     Print Name:___Eran Porat___

                                     Title:____VP Finance____

2

APPROVED BY:

*Angela Blackwell*

Angela S. Blackwell
  Ga. Bar No. 647555
William B. Hill, Jr.
  Georgia Bar No. 354725

ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309-3232
Tel: (404) 253-6000
Fax: (404) 253-6060

Scott G. Lindvall
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Tel: (212) 836-8700
Fax: (212) 836-8689

Attorneys for STS Software Systems,
Ltd., NICE Systems, Ltd., and
NICE Systems, Inc.

3

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

WITNESS SYSTEMS, INC.,

    *Plaintiff,*

    v.

NICE SYSTEMS, INC., and
NICE SYSTEMS, LTD.,

    *Defendants.*

Civil Action File No.

1:04-CV-2531-CAP

---

## PLAINTIFF'S AMENDED INITIAL DISCLOSURES

Pursuant to Local Rule 26.1 of the District Court for the Northern District of Georgia, Plaintiff Witness Systems, Inc. ("Witness Systems") responds to the Court's mandatory disclosures as follows:

**1.     State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.**

**ANSWER:**

This is an action for patent infringement of United States Patent Nos. 5,790,798 ("the '798 patent") and 6,510,220 ("the '220 patent").

The '798 and '220 patents are directed to computer-based systems, software and related methods for computer screen monitoring, including both screen monitoring of a computer workstation from a remote location and simultaneous synchronized monitoring of computer screen and voice interactions from a remote location. The claimed inventions are particularly useful in call center and contact center environments in which such monitoring may be used for quality control purposes, for training customer service representatives and to create an audit trail of customer service representative ("CSR") activities. Plaintiff Witness Systems and Defendants NICE Systems, Inc. and NICE Systems, Ltd. (collectively, "NICE"), compete within the United States in making, using, offering for sale, and selling products that can be used to monitor such telephone and/or computer interactions, including products for use within customer service and contact center environments.

Witness Systems seeks relief on the grounds that NICE has infringed, and continues to infringe, both directly and indirectly by way of inducement of others and contributory infringement, one or more claims of each of the '798 and '220 patents.

ATI-2163446v1                                2

**2.    Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.**

**ANSWER:**

Applicable Statues:

35 U.S.C. §§ 100, *et seq.*

Illustrative Case Law:

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.,*
      887 F.2d 1070 (Fed. Cir. 1989);

*Beckman Instruments, Inc. v. LKB Produker AB,*
      892 F.2d 1547 (Fed. Cir. 1989);

*Catalina Marketing Int'l v. Coolsavings.com, Inc.,*
      289 F.3d 801 (Fed. Cir. 2002);

*Chiuminatta Concrete Concepts v. Cardinal Indus., Inc.,*
      143 F.2d 1303, 46 U.S.P.Q. 2d 1752 (Fed. Cir. 1998);

*Cole v. Kimberly Clark Corp.,*
      102 F.3d 524 (Fed. Cir. 1996);

*Dolly, Inc v. Spalding & Evenflo Companies, Inc,*
      16 F.3d 394 (Fed. Cir. 1994);

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki,*
      535 U.S. 722 (2002);

*Good Year Tire & Rubber Co. v. Hercules Tire Rubber Co.,*
      162 F.3d 1113 (Fed. Cir. 1998);

*Gorham Co. v. White,*
      81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871);

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
     339 U.S. 605 (1950);

*Greenwood v. Hattori Seiko, Co., Ltd.,*
     900 F.2d 238 (Fed. Cir. 1990);

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.,*
     62 F.3d 1512 (Fed. Cir. 1995) (en banc),
     *rev'd on other grounds,* 520 U.S. 17 (1997);

*Johnson & Johnston Assocs., Inc. v. R.E. Service Co., Inc.,*
     285 F.3d 1046 (Fed. Cir. 2002);

*Kemco Sales, Inc. v. Control Papers Co. Inc.,*
     208 F.3d 1352 (Fed. Cir. 2000);

*Kewanee Oil Co. v. Bicron Corp.,*
     416 U.S. 470 (1974);

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.,* Nos. 01-
     1357, 01-1376, 02-1221, 02-1256, 2004 WL 2049342 (Fed. Cir. Sept.
     13, 2004) (en banc).

*Markman v. Westview Instruments Inc.,*
     116 S. Ct. 1384 (1996);

*Pennwalt Corp. v. Durand-Wayland, Inc.,*
     833 F.2d 931 (Fed. Cir. 1987) (en banc),
     *cert. denied,* 485 U.S. 961 (1988) ;

*Perkin Elmer Corp. V. Westinghouse Elec. Corp.,*
     822 F.2d 1528 (Fed. Cir. 1987);

*Phillips v. AWH Corporation,*
     Nos. 03-1269, -1286 (July 21, 2004) (sua sponte en banc order).

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,*
     781 F.2d 198 (Fed. Cir. 1986);

*Schering Corp. v. Geneva Pharmaceuticals, Inc.,*
     Case Nos. 02-1540, *et seq.* (Fed. Cir. August 1, 2003);

*Stickle v. Heublein, Inc.,*
    716 F.2d 1550 (Fed. Cir. 1983);

*TWM Mfg. Co. v. Dura Corp.,*
    789 F.2d 895 (Fed. Cir.), *cert. denied,* 479 U.S. 852 (1986);

*Uni Dynamics Corp. v. Automatic Prods. Int'l, Ltd.,*
    157 F.3d 1311 (Fed. Cir. 1998);

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed.Cir. 1996);

*WMS Gaming Inc. v. International Game Technology,*
    184 F.3d 1339 (Fed. Cir. 1999);

    **3.**    **Provide the name, and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information.  (Attach witness list to Initial Disclosures as Attachment A.)**

    **ANSWER:**

    See Attachment A for witness list.  Witness Systems has not completed its

investigation of the facts of this case and additional witnesses may be identified as

discovery proceeds.

    **4.**    **Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.  For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.  (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B).**

**ANSWER:**

Witness Systems has not yet identified anyone who may be called as an

expert witness, but reserves the right to supplement its response to this disclosure

as discovery proceeds and in conformity with the Court's scheduling order(s), the

Federal Rules of Civil Procedure and the Local Rules of this Court.

**5.      Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

**ANSWER:**

See Attachment C for a description of documents. Witness Systems has not

completed its investigations of the facts of this case and additional relevant

documents may be identified as discovery proceeds.

**6.      In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed. R. Civ. P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

**ANSWER:**

Witness Systems has not yet calculated its damages in this case, and reserves

the right to supplement this response pursuant to the Federal Rules of Civil

Procedure and the Local Rules of this Court. Pursuant to 35 U.S.C. §§ 284-285,

Witness Systems seeks damages adequate to compensate for NICE's infringement

of the '798 and '220 patents, but in no event less than a reasonable royalty, plus

increased damages up to three times the amount found, plus interest and costs as

fixed by the Court, and attorneys fees to the extent the Court finds this is an

exceptional case. Witness Systems anticipates offering expert testimony in support

of its damages case.

**7.     Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

   **ANSWER:**

   Witness Systems is not presently aware of any such agreement.

**8.     Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff's cause of action and state the basis and extent of such interest.**

**ANSWER:**

Witness Systems is not presently aware of any such person or entity.

Respectfully submitted this 10th day of May, 2005.

/s/ Nagendra Setty
Georgia Bar No. 626205
DANIEL A. KENT
Georgia Bar No. 415110
CHRISTOPHER O. GREEN
Georgia Bar No. 037617
JOSE A. DUTHIL
Georgia Bar No. 232605
nsetty@jonesday.com

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
Ph: 404-521-3939
Fx: 404-581-8330

COUNSEL FOR PLAINTIFF
WITNESS SYSTEMS, INC.

## ATTACHMENT A

## PLAINTIFF'S LIST OF WITNESSES
## LIKELY TO HAVE DISCOVERABLE INFORMATION

The following individuals are employed or affiliated with Witness Systems,

Inc., located at 300 Colonial Center Parkway, Roswell, Georgia 30076, and can be

contacted only through Witness Systems' counsel at Jones Day:

| Name | Subjects |
|---|---|
| Kevin Hegebarth | Marketing, design, and development of the Witness Systems screen capture features and functionality ("Screen Capture") |
| Nancy Treaster | Marketing of Screen Capture and of NICE Systems' competitive screen capture products, features and functionalities |
| Daniel Spohrer | Technical aspects of Screen Capture |
| Kathy Miller | Sales of Screen Capture |
| William Evans | Witness's general financial performance and the financial performance of Screen Capture |

The following are not current employees of Witness Systems:

| Name | Subjects |
| --- | --- |
| Stephen Marshall Beckett, II (address unknown) | Inventions claimed or disclosed in the '798 and '220 patents, their conception and reduction to practice and diligence associated therewith. |
| Donald Andrew House (address unknown) | Inventions claimed or disclosed in the '798 and '220 patents, their conception and reduction to practice and diligence associated therewith. |
| Rebecca L. McDougal (address unknown) | Inventions claimed or disclosed in the '798 and '220 patents, their conception and reduction to practice and diligence associated therewith. |
| DonGriffin (address unknown) | Technical and development information concerning products manufactured, developed or offered for sale to NICE that contain or include accused screen capture features and functionality which are incorporated in and/or integrated with NICE products, including the NICE Universe®, NiceAdvantage®, and NICE Perform™ products. |
| Steve Weinrich (address unknown) | Technical and development information concerning products manufactured, developed or offered for sale to NICE that contain or include accused screen capture features and functionality which are incorporated in and/or integrated with NICE products, including the NICE Universe®, NiceAdvantage®, and NICE Perform™ products. |
| David Rico (address unknown) | Technical and development information concerning products manufactured, developed or offered for sale to NICE that contain or include accused screen capture features and functionality which are incorporated in and/or integrated with NICE products, including the NICE Universe®, NiceAdvantage®, and NICE Perform™ products. |
| Santino J. Lamberti, Jr. (address unknown) | Inventions claimed or disclosed in the '798 and '220 patents, their conception and reduction to practice and |

| Name | Subjects |
|------|----------|
| | diligence associated therewith. |
| Unknown individuals NICE Systems, Inc. 301 Route 17 North 10th Floor Rutherford, NJ 07070 | Technical, financial, marketing and product management information concerning NICE products that contain or include accused screen capture features and functionality, including the NICE Universe®, NiceAdvantage®, and NICE Perform™ products. |
| Unknown individuals NICE Systems, Ltd. 8 Hapnina Drive, Ra'anana 43107 Israel | Technical, financial, marketing and product management information concerning NICE products that contain or include accused screen capture features and functionality, including the NICE Universe®, NiceAdvantage®, and NICE Perform™ products. |
| Unknown individuals Netopia, Inc. Marketplace Tower 6001 Shellmound Street 4th Floor Emeryville, CA 94608 | Technical and development information concerning products manufactured, developed or offered for sale to NICE that contain or include accused screen capture features and functionality which are incorporated in and/or integrated with NICE products, including the NICE Universe®, NiceAdvantage®, and NICE Perform™ products. |

# ATTACHMENT C

## <u>DOCUMENTS</u>

Witness Systems has in its possession, custody or control the following categories of documents that it may use to support its claims or defenses, which documents are located either at Witness Systems' facility in Roswell, Georgia, or at the offices of Witness Systems' litigation counsel, and which will be made available for inspection and copying by NICE's counsel at a time and place mutually agreed by counsel for the parties, subject to NICE making the same categories of documents available in the United States, and subject to the entry of an appropriate protective order, particularly as it pertains to the most sensitive technical and commercial information identified below.

1.     Copies of the '798 and '220 patents, their file histories and assignment documents.

2.     Documents evidencing the conception, reduction to practice, design and development of the inventions claimed in the '798 and '220 patents, to the extent such documents exist and can be found.

3.     Documents concerning NICE's accused Customer Experience Management Products, including NICE Universe®, NiceAdvantage®, and NICE Perform™ products, and the screen capture feature of these products.

4.    NICE's financial disclosures, annual reports, public filings, and Internet web pages.

5.    Marketing and sales materials, financial materials, licenses and agreements with customers, and other Witness Systems documents concerning the financial performance of Witness Systems and its screen capture products, features and functionalities.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WITNESS SYSTEMS, INC.,

    *Plaintiff,*

    v.

NICE SYSTEMS, INC., and
NICE SYSTEMS, LTD.,

    *Defendants.*

Civil Action File No.

1:04-CV-2531-CAP

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have electronically filed "Plaintiff Witness Systems Inc.'s Answer to Counterclaims with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing(s) to the following attorneys of record:

Angela S. Blackwell
ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia  30309-3232

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

ATI-2163446v1

1

Scott G. Lindvall
Lee A. Goldberg
Robert R. Laurenzi
DARBY & DARBY P.C.
805 Third Avenue
New York, New York  10022

This 10th day of May, 2005.

/s/ Nagendra Setty
Georgia Bar No. 626205
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
nsetty@jonesday.com

ATTORNEYS FOR PLAINTIFF
WITNESS SYSTEMS, INC.

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| Witness Systems, Inc., | Civil Action No. 1 :04-CV-2531 - CAP |
| Plaintiff, |  |
| v. |  |
| NICE Systems, Inc. and NICE Systems, Ltd., |  |
| Defendants. |  |

## INITIAL DISCLOSURES OF NICE SYSTEMS, LTD. AND SUPPLEMENTAL INITIAL DISCLOSURES OF NICE SYSTEMS, INC.

(1)    If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.

NICE Systems, Inc. ("NICE Inc.") was properly identified in the complaint.

NICE Systems, Ltd. ("NICE Ltd.") was properly identified in the complaint.[1]

(2)    Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff. If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention.

---

[1]    NICE Inc. and NICE Ltd. are referred to together herein as "NICE."

None.

(3)    Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading.

NICE asserts in its Answer and Counterclaims that it does not infringe either of U.S. Patent Nos. 5,790,798 and 6,510,220 (collectively, "the patents-in-suit") and further asserts that the claims of the patents-in-suit are invalid for failure to satisfy one or more of the statutory conditions for patentability.

NICE Ltd. is not able to provide a further detailed factual basis for these defenses and Counterclaims as the plaintiff, Witness Systems, Inc. ("Witness Systems"), has not yet identified the claims of the patents-in-suit it believes are infringed by NICE Ltd. and, once identified, NICE Ltd.'s defenses may be further dependent upon the Court's construction of such claims.

The bases for NICE Inc.'s defenses and related Counterclaims that the patents-in-suit are invalid for failure to satisfy one or more of the statutory conditions for patentability are disclosed in its Local Patent Rule 4.3 Disclosure, dated January 4, 2004, which NICE Inc. incorporates by reference herein. NICE's study of prior art and other invalidity defenses is on-going. It is expected that additional evidence concerning the invalidity of the patents-in-suit will be found in the course of discovery.

The bases for NICE Inc.'s defenses and related Counterclaims that it does not infringe the patents-in-suit are set forth in its Local Patent Rule 4.2 Response to

Witness' Disclosure of Preliminary Infringement Contentions, dated January 4, 2004, which NICE, Inc. incorporates by reference herein.

NICE's study of these issues continues and NICE expects to produce documents and witnesses to support these defenses and related counterclaims. NICE reserves the right to supplement or modify any and all of the above responses in accordance with the Local Patent Rules and the Federal Rules of Civil Procedure.

NICE also asserts in its Answer that Witness Systems' allegations of infringement are estopped by virtue of the proceedings in the U.S. Patent and Trademark Office during the prosecution of the applications that matured into the patents-in-suit. NICE's investigation of this issue continues. NICE believes that the official copy of the file histories of the patents-in-suit obtained from the U.S. Patent and Trademark Office forms the factual basis for this defense. NICE expects, however, that further evidentiary support for this defense will be found in documents produced and depositions taken by the parties during the course of discovery.

NICE asserts in its Answer that Witness Systems' allegations concerning U.S. Patent No. 5,790,798 ("the '798 patent") are barred under the doctrine of laches. NICE's study of this issue continues. NICE notes that the '798 patent issued on August 4, 1998, more than six years before the filing of the present suit. NICE expects that further factual support for this defense will be found in

3

additional documents produced and depositions taken by the parties during the course of discovery.

NICE asserts in its Answer that plaintiff's claim of willful infringement of the patents-in-suit is not pleaded with sufficient specificity or factual support to put NICE on notice as to the claim beings made and also, therefore, fails to state a claim on which relief can be granted. NICE is unable to provide a specific factual basis for this defense because Witness Systems' allegation of willfulness is not presently understood. If at such time, Witness' allegation is understood, NICE expects that documents may be produced and deposition testimony elicited from witnesses that will support NICE's defense.

NICE asserts in its Counterclaims that, on information and belief, Witness Systems has pursued the present action aware that NICE has not infringed the patents in suit. This issue is under investigation by NICE. The detailed factual basis for this Counterclaim will be further provided during discovery through documents produced and testimony elicited in deposition by the parties.

(4)     Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which defendant contends are applicable to this action.

This action will involve at least 28 U.S.C. §§ 2201, *et seq.* and 35 U.S.C. § 101 *et seq.* and related case law concerning patent claim construction, invalidity, unenforceability, non-infringement, and damages.

4

(5)    Provide the name, and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information.  (Attach witness list to Initial Disclosures as Attachment A.)

A list of individuals likely to have discoverable information is provided in Attachment A. NICE has not completed its investigation of the facts of this case and additional witnesses may be named as discovery proceeds.

(6)    Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.  For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.  (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)

NICE has not yet identified anyone who will be called as an expert witness, but reserves the right to supplement its response to this disclosure as discovery proceeds and in conformity with the Court's scheduling order, the Federal Rules of Civil Procedure and the Local Rules of this Court.

(7)    Provide a copy of, or description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.  (Attach document list and descriptions to Initial Disclosures as Attachment C.)

Documents concerning the accused product as well as documents possibly relating to prior art of the patents-in-suit are located at NICE Systems, Inc., 301 Rt. 17 North 10th Floor, Rutherford, New Jersey 07070.

Documents concerning the accused product as well as documents possibly relating to prior art of the patents-in-suit are also located at NICE Systems, Ltd., 8 Hapnina Street, P.O. Box 69043 107, Ra'anana ISRAEL.

Documents regarding financial and marketing information concerning the accused product are located at NICE Systems, Inc., 301 Route 17 North, 10th Floor Rutherford, New Jersey 07070 and at NICE Systems, Ltd., 8 Hapnina Street, P.O. Box 69043 107, Ra'anana ISRAEL.

Documents concerning the accused product as well as documents possibly concerning prior art of the patents-in-suit are in the possession of Netopia, Inc., Marketplace Tower, 6001 Shellmound Street, 4th Floor Emeryville, CA 94608. These documents are not in the possession, custody or control of NICE Systems.

NICE has not completed its investigation of the facts of this case and additional relevant documents will likely become available as discovery proceeds.

(8)    In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

NICE seeks damages in the form of attorneys' fees and costs.

(9)    If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.

6

NICE believes that Netopia, Inc., Marketplace Tower 6001 Shellmound Street, 4th Floor Emeryville, CA 94608, may be, in whole or in part, liable to the NICE Ltd. in this matter. NICE Ltd. believes this liability to be based on a contractual indemnification obligation owed to NICE Ltd. by Netopia, Inc.

(10)   Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)

NICE is not aware of any applicable insurance agreement(s).

May 10, 2005                              Respectfully submitted,

                                    By:   /s Angela S. Blackwell
                                          Angela S. Blackwell
                                            Georgia Bar No. 647555
                                          William B. Hill, Jr.
                                            Georgia Bar No. 354725
                                          ASHE, RAFUSE & HILL, LLP
                                          1355 Peachtree Street, N.E.,
                                          Suite 500
                                          Atlanta, Georgia  30309-3232
                                          Tel:  (404) 253-6000
                                          Fax:  (404)253-6060

                                          Scott G. Lindvall
                                            (admitted *pro hac vice*)
                                          KAYE SCHOLER LLP
                                          425 Park Avenue
                                          New York, New York  10022-3598
                                          (212) 836-8000
                                          (212) 836-8689
                                          *Attorneys for Defendants*
                                          *NICE Systems, Inc. and NICE*
                                          *Systems, Ltd.*

7

**Attachment A**

## List Of Individuals Likely To Have Discoverable Information

1.  Gregory T. Gronholm, Esq. (U.S.P.T.O. Reg. No. 32,415), Alston & Bird LLP One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424, 404-881-7968 - drafted and prosecuted the patents-in-suit.

2.  Jennifer Pearson Wright, Esq. (U.S.P.T.O. Reg. No. 41,385), present address unknown - prosecuted U.S. Patent 6,510,220 ("the '220 patent").

3.  Gregory J. Kirsch, Esq. (U.S.P.T.O. Reg. No. 35,572), Needle & Rosenberg PC, Suite 1000, 999 Peachtree Street, Atlanta, GA 30309-3915, 678-420-9300 - prosecuted the '220 patent.

4.  Stephen Marshall Beckett, II, present address unknown - named inventor of the patents-in-suit; conception, reduction to practice, and development of the disclosed and claimed inventions.

5.  Donald Andrew House, present address unknown - named inventor of the patents-in-suit; conception, reduction to practice, and development of the disclosed and claimed inventions.

6.  Rebecca L. McDougal, present address unknown - named inventor of the patents-in-suit; conception, reduction to practice, and development of the disclosed and claimed inventions.

7.  Santino J. Lamberti, present address unknown - named inventor of the patents-in-suit; conception, reduction to practice, and development of the disclosed and claimed inventions.

8.  Shai Shefer, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused products.

9.  Ilan Yosef, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused products.

10.  Eran Halbraich, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused products.

11.  Barak Eilam, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused products.

12.     Aviad Abiri, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to sales, distribution and marketing).

13.     Bar Veinstein, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to marketing.

14.     Eyal Danon, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to marketing.

15.     Ian Ehrenberg, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to sales, distribution and marketing.

16.     Jacob Fox, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to sales, distribution and marketing.

17.     Yochai Rozenblat, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to sales, distribution and marketing.

18.     Shachar Feldman, c/o NICE  Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to customization and installation.

19.     Oded Kovar, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to accused product, customization and installation.

20.     David Mosier, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to sales.

21.     Matthew Rosner, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to sales.

22.     James Park, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL -  information relating to accused product.

23.     Jacob Fox, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to sales.

24.    Eitan Bar, address unknown - information relating to the accused product.

25.    Zvi Baum, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product, marketing and sales.

26.    Amir Dekel, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to the accused product.

27.    Shlomo Shamir, c/o NICE Systems Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to sales.

28.    Chezki Gil, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to sales.

29.    Itay Grushka, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product.

30.    Ran Oz, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to sales.

31.    Aviv Bachar, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product.

32.    Eran Porat, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to sales.

33.    Dennis Walsh, c/o NICE Systems, Inc., 301 Rt. 17 North, 10th Floor, Rutherford, New Jersey 07070 - information relating to the accused product.

34.    Moty Cory, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product.

35.    Shay Weiss, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product.

36.    Eyal Rudnik, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product.

37.    David Rico, c/o Netopia, Inc., Marketplace Tower 6001 Shellmound Street, 4th Floor, Emeryville, CA 94608 - information relating to the accused product.

3

38.    Don Griffin, c/o Netopia, Inc., Marketplace Tower 6001 Shellmound Street, 4th Floor, Emeryville, CA 94608 - information relating to the accused product.

39.    Steve Weinrich, c/o Netopia, Inc., Marketplace Tower 600 1 Shellmound Street, 4th Floor, Emeryville, CA 94608 - information relating to the accused product.

40.    Loren Wimpfheimer, Esq., c/o Witness Systems, Inc., 300 Colonial Center Parkway, Roswell, Georgia 30076 - information relating to the prosecution of the patents-in-suit and information relating to the assertion of the '798 patent against a Racal Recorders Limited and CallCenter Technology, Inc.

41.    Bryan G. Harrison, Esq., Morris, Manning & Martin, LLP, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE Atlanta, GA, 404-504-7619 - information relating to the assertion of the '798 patent against Racal Recorders Limited and CallCenter Technology, Inc.

42.    Presently unknown individuals employed now or in the past by Netopia, Inc., Marketplace Tower 6001 Shellmound Street, 4th Floor Emeryville, CA 94608 - information relating to the accused product.

43.    Presently unknown individuals employed now or in the past by Witness Systems, Inc. - information relating to the technology at issue, prior art to the patents-in-suit and damages alleged by Witness Systems, Inc.

Certificate of Service

I, Angela S. Blackwell, hereby certify that I have caused the foregoing Initial Disclosures of NICE Systems, Ltd. and Supplemental Initial Disclosures of NICE Systems, Inc. to be served on counsel for Plaintiff by efiling:

Nagendra Setty
Daniel A. Kent
Christopher O. Green
Heather P. Walcott
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309-3053
Email: nsetty@jonesday.com
Email: cogreen@jonesday.com
Email: dakent@jonesday.com
Email: hwalcott@jonesday.com

Kenneth R. Adamo
JONES DAY
North Point
90 1 Lakeside Avenue
Cleveland, Ohio 44114-1190
Email: kradamo@jonesday.com

Dated: May 10, 2005

/s Angela S. Blackwell

5

# EXHIBIT F

12/15/2004 16:05 FAX  212 805 7912                                    ☎002/014

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____          │
│ DATE FILED: 12/16/04            │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STS SOFTWARE SYSTEM LTD.,

                    Plaintiff,                    04 Civ. 5615 (JGK)

          - against -                             ORDER

WITNESS SYSTEMS, INC.,

                    Defendant.

JOHN G. KOELTL, District Judge:

    This is an action for patent infringement arising under 35
U.S.C. § 101 et seq., including 35 U.S.C. §§ 271 and 281-285. The
plaintiff, STS Software Systems Ltd. ("STS") alleges that the
defendant, Witness Systems, Inc. ("Witness") has been and
continues to make, use, and sell products that infringe on U.S.
Patent No. 6,122,665 ("the '665 Patent"), of which STS claims
ownership by assignment of all right, title, and interest.
(Compl. ¶¶ 6-10.) Witness has filed a motion to transfer this
matter to the Northern District of Georgia under 28 U.S.C. §
1404(a). Witness alleges that the operative facts bear a close
nexus with the Northern District of Georgia, that the Northern
District of Georgia is more convenient for parties and witnesses,
and that the action has no relationship with the Southern District
of New York. For the reasons set forth below, the motion is
granted.

                              - 1 -

I.

STS is a corporation organized under the laws of Israel
with its principal place of business in Ra'anana, Israel.
(Complaint ("Compl.") ¶ 2).  STS conceded at the argument of the
pending motion that it is a corporation in form only; it exists
only to hold the '665 Patent and has no active business.  STS is a
wholly owned subsidiary of NICE Systems Ltd., an Israeli
corporation.  (Declaration of Shlomo Shamir, dated Sept. 28, 2004
("Shamir Decl.") ¶ 3.)  NICE Systems, Inc., which is also wholly
owned by NICE Systems Ltd., is a Delaware corporation with its
principal place of business located in New Jersey.  Neither NICE
Systems, Ltd. nor NICE Systems, Inc. is a party to this suit.
(See Compl.)

Witness is a Delaware corporation with its headquarters and
principal place of business in Roswell, Georgia. (Declaration of
Kevin Hegebarth, dated Sept. 8, 2004 ("Hegebarth Decl.") ¶ 4.)  In
addition, Witness has employees in Boston and the United Kingdom
and an office in upstate New York outside the Southern District of
New York.  (Second Declaration of Kevin Hegebarth, dated Oct. 13,
2004 ("Second Hegebarth Decl.") ¶¶ 11-17; Reply Memorandum in
Support of Motion for Transfer, at 3-5.)

- 2 -

STS brought suit in the Southern District of New York on July
20, 2004 alleging that Witness has been and continues to make,
use, and sell products that infringe on the '665 Patent.  (Compl.
¶¶ 1, 6-10.)  The '665 Patent describes a system and method for
monitoring a computer network to detect data packets containing
audio or video data that is part of a communication session.
(Compl. ¶¶ 6-10.)  Witness denies that the '665 patent is valid
and enforceable, and does not concede that STS is the owner of the
'665 patent.  (Witness Systems, Inc.'s Answer, Affirmative
Defenses and Counterclaim ("Def. Ans.") ¶ 6.)

In addition, Witness filed a counterclaim for declaratory
relief in response to the Complaint, and filed a complaint for
declaratory relief in the Northern District of Georgia on July 20,
2004, shortly after STS filed its Complaint in the Southern
District of New York.  (Declaration of John J. Lauter, dated Sept.
8, 2004 ("Lauter Decl."), Ex. 1.)  STS has filed a motion to
dismiss Witness's complaint in the Northern District of Georgia
for lack of personal jurisdiction and insufficient service and, in
the alternative, to transfer the action to this Court.
(Declaration of Edward V. Di Lello, Ex. F.)  That motion is
pending.

Witness has filed a patent infringement action against NICE
Systems, Inc. in the Northern District of Georgia.  That lawsuit

- 3 -

involves a patent different from the one at issue in this case.
(Lauter Decl. at 2, Ex. 4.)

Witness has moved to transfer STS's action to the Northern
District of Georgia pursuant to 28 U.S.C. § 1404(a).  Witness does
not dispute that it is subject to personal jurisdiction in the
Southern District of New York and that venue is proper in the
Southern District of New York pursuant to 28 U.S.C. §§ 1391 and
1400.  (Def. Ans. ¶ 5.)


## II.

## A.

Section 1404(a) provides: "For the convenience of parties and
witnesses, in the interest of justice, a district court may
transfer any civil action to any other district or division where
it might have been brought."  28 U.S.C. § 1404(a).  In ruling on a
motion to transfer, the Court should consider both the interest of
the litigants and the public interest.   See Gulf Oil Corp. v.
Gilbert, 330 U.S. 501, 508 (1947); Jasol Carpet, Inc. v. Patcraft
Commercial Carpet, Inc., No. 96-3064, 1997 WL 97831, at *3
(S.D.N.Y. Mar. 6, 1997); see also Aindbinder v. Potter, 282
F.Supp.2d 180, 191 (S.D.N.Y. 2003); Pergo, Inc. v. Alloc, Inc.,
262 F.Supp.2d 122, 129 (S.D.N.Y. 2003).

- 4 -

The interest of the litigants includes the plaintiff's initial choice of forum; the convenience of the parties and the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for the attendance of witnesses; the location of relevant documents and other tangible evidence; questions as to the enforceability of a judgment if one is obtained; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." See Gulf Oil, 330 U.S. at 508; Ainbinder, 282 F.Supp.2d at 191; Pergo, 262 F.Supp. at 129; Jasol Carpet, 1997 WL 97831, at *3; Elite Parfums, Ltd. v. Rivera, 872, F.Supp. 1269, 1271 (S.D.N.Y. 1995); Arrow Elecs.; Inc. v. Ducommun Inc., 724 F.Supp. 264, 265 (S.D.N.Y. 1989).

The public interest includes administrative difficulties that follow from court congestion and a local interest in having localized controversies decided at home. See Gulf Oil, 330 U.S. at 508-09; see also Ainbinder, 282 F.Supp.2d at 191; Pergo, 262 F.Supp. at 129.

The burden of establishing the propriety of a change of forum under Section 1404(a) rests on the moving party. Factors, Etc., Inc., v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978); Elite Parfums, 872 F.Supp. at 1271; see also Ainbinder, 282 F.Supp.2d at 191; Pergo, 262 F.Supp. at 129. In determining whether to transfer venue, the Court has "broad discretion" to consider

- 5 -

12/15/2004 16:06 FAX  212 805 7912                                    @007/014

"notions of convenience and fairness on a case-by-case basis."
Publicker Indus. Inc. v. United States (In re Cuyahoga Equip.
Corp.), 980 F.2d 110, 117 (2d Cir. 1992). The plaintiff's choice
of forum, however, should not be disturbed unless the balance of
these factors tips decidedly in favor of a transfer. Jasol
Carpet, 1997 WL 97831, at *3.; see also Ainbinder, 282 F.Supp.2d
at 191; Pergo, 262 F.Supp. at 129.

Here, the plaintiff could have brought this action in the
Northern District of Georgia and the balance of the aforementioned
factors tips decidedly in favor of a transfer to the Northern
District of Georgia, given the balance of convenience for the
parties, the fact that the majority of relevant witnesses and
documents are located in Atlanta or in a place from which travel
to Atlanta or New York would be equally convenient, and the lack
of connection between the action and the Southern District of New
York.

## B.

An action "could have been brought" in a forum under §
1404(a) if, at the time the action was commenced, the defendant
would have been amenable to personal jurisdiction in the
transferee forum and venue would have been proper in the
transferee forum. See Hoffman v. Blaski, 363 U.S. 335, 343-44

- 6 -

(1960); <u>Invivo Research, Inc. v. Magnetic Resonance Equipment
Corp.</u>, 119 F.Supp.2d 433, 436-37 (S.D.N.Y. 2000).

    Witness is clearly subject to personal jurisdiction in the
forum of its headquarters and principal place of business, and
venue would have been proper under either 28 U.S.C. § 1400(b) or
§1391(b). STS did not dispute in its papers that this action
could have been brought in the Northern District of Georgia and
thus that Court is an available alternative forum to which this
action can be transferred.

                              C.

    Both the interests of the litigants and the public interest
weigh in favor of transferring this action to the Northern
District of Georgia.

    While the plaintiff's choice of forum is normally entitled to
great weight, this weight is reduced where, as in this action, the
chosen forum has little or no material connection with the action.
<u>Lighting World, Inc. v. Birchwood Lighting, Inc.</u>, No. 01-4751,
2001 WL 1242277, at *4 (S.D.N.Y. Oct. 16, 2001); <u>Aspex Eyewear,
Inc. v. Miracle Optics, Inc.</u>, No. 01-2671, 2001 WL 1464732, at *3
(S.D.N.Y. Nov. 19, 2001); <u>Coker v. Bank of America</u>, 984 F.Supp.
757, 766 (S.D.N.Y. 1997). The weight accorded to the plaintiff's
choice of forum is reduced substantially where the chosen forum is

                            - 7 -

neither the plaintiff's residence nor the place where the underlying events or transactions of the action occurred. Pergo, 262 F.Supp. at 130; Lighting World, 2001 WL 1242277, at *4; Coker, 984 F.Supp. at 766; Eskofot v. E.I. Du Pont De Nemours & Company, 872 F.Supp. 81, 96 (S.D.N.Y. 1995). Here, the plaintiff, an Israeli corporation, has no connection to the Southern District of New York. Indeed it is a corporation that exists in Israel solely to hold the '665 Patent. Moreover, the defendant has made a reasonable showing that the underlying events and transactions bear no material connection to New York; while sales of the allegedly infringing product have taken place in this district as well as others, the defendant's technical and financial work and research and development of its products take place in Atlanta, and to some extent in the United Kingdom. (Hegebarth Decl. ¶ 4; Second Hegebarth Decl. ¶¶ 12-19.)

The convenience of the parties and the witnesses also supports a transfer to the Northern District of Georgia. STS has not alleged it has any party witnesses that reside in the Southern District of New York. Indeed it has not identified any employees. Witness has pointed to several specific party witnesses that are located in Atlanta Georgia (Second Hegebath Decl. ¶¶ 12-16), and has alleged that all of its United States technical, financial, research, development, and marketing employees, and all United

- 8 -

States executive employees are located in Atlanta.  The possible
exception to this is Witness's Senior Vice President of
Engineering, who spends weekends in Boston but conducts his work
for Witness in Atlanta and, moreover, commenced employment at
Witness after the development of the allegedly infringing product.
(Second Hegebarth Decl. ¶¶ 15-16.)  International employees, such
as Witness employees located in the United Kingdom and STS
employees located in Israel, would not be substantially more
inconvenienced by traveling to Georgia rather than New York even
if flights are longer.  See, e.g., Everest Capital Ltd. v. Everest
Funds Mgmt., LLC, 178 F.Supp.2d 459, 465 (S.D.N.Y. 2002)
(transferring action to Nebraska even though there were no direct
flights to accommodate plaintiff's witness traveling from abroad);
Bionx Implants, Inc. v. Biomet, Inc., No. 99-740, 1999 WL 342306,
at *3 (S.D.N.Y. May 27, 1999) (rejecting argument that European
plaintiffs would be more inconvenienced by longer flights to
Indiana than New York); Coker, 984 F.Supp. at 765 (finding
Nigerian plaintiffs not more inconvenienced by extra flight
between New York and New Mexico); Cento Group S.P.A. v.
OroAmerica, Inc., 822 F.Supp. 1058, 1061-62 (S.D.N.Y. 1993)
(finding that, while California is farther from Italy than New
York, factor "only slightly increases the [p]laintiff's
inconvenience").

- 9 -

STS has failed to identify any non-party witnesses residing
within this district or subject to the subpoena power of this
district who have been involved in the development or purchase of
the allegedly infringing product, or who otherwise have testimony
relevant to this action.  STS claims that Avaya, Inc. ("Avaya"), a
corporation located in New Jersey is involved in the development
and marketing of Witness's products.  (Shamir Decl. ¶ 8-9.)  While
STS makes no showing of Avaya's involvement in the specific
product in question, Witness has made a reasonable showing that
Avaya was not involved in the development or resale of the
allegedly infringing product, and in fact resells a completely
different product.  (Second Hegebarth Decl. ¶¶ 23-26.)

    STS argues that Avaya has jointly developed a product with
Witness that will be at issue in this lawsuit.  But there is no
question that the product is not specifically identified in the
complaint and STS chose not to sue Avaya in this action.  Whether
that product will eventually be the subject of this action and
whether Avaya witnesses will be significant witnesses in this case
are matters subject to speculation and insufficient to tilt the
balance of factors in any material way.

    Similarly, while STS argues that employees of IPC Information
Systems, Inc. ("IPC"), a corporation headquartered in New York
City, have information about Witness's technology and sales

- 10 -

activities, STS fails to identify how these witnesses have
information material to the infringement claim.  (STS Software
Systems, Ltd.'s Memorandum of Law in Opposition to Defedant
Witness Systems, Inc.'s Motion for Transfer ("Opp. Mem.") at 4,
10.)  Moreover, Witness has made a reasonable showing that it has
no business relationship with IPC, and that any information IPC
employees might have regarding Witness products pertains to a
different product and is irrelevant to this action.  (Second
Hegebarth Decl. at ¶¶ 27-30.)  Finally, to the extent that STS
identifies employees of Nice Systems, Inc., its sister company, as
non-party witnesses, it makes no showing of the relevance of the
testimony of such witnesses.

It also appears that no documents or sources of proof
relevant to this action are located in this district. To the
extent that documents exist in the United States, most, if not
all, are located in the Northern District of Georgia.  (Hegebarth
Decl. ¶ 6.)  Other documents may be located in Israel or the
United Kingdom; to the extent that these documents must be
transported to the United States, it is no more inconvenient to
transport them to Georgia than to New York.  See Cento Group
S.P.A. v. CroAmerica, Inc., 822 F.Supp. at 1061-62.

The remaining factors to be considered in the interests of
the litigants are either insubstantial or support a transfer to

the Northern District of Georgia.  STS has not raised any question
as to the enforceability of a judgment against Witness in Georgia
and such a judgment, if obtained, is just as likely to be enforced
in the state where the corporation's headquarters and employees
are located than in this district.  All other practical problems
that affect the efficiency of an action would likely be reduced by
transferring the action to the Northern District of Georgia, given
its proximity to the defendant, witnesses, relevant documents, and
the fact that it is the location of the operative facts underlying
the action.  See Aspex Eyewear, 2001 WL 1464732, at *4; see also
Wechsler v. Macke Int'l Trade, Inc., No. 99-5725, 1999 WL 1261251,
at *10 (S.D.N.Y. Dec. 27, 1999.)

     The relevant public interests to be considered in deciding a
motion for transfer also support transferring this case to the
Northern District of Georgia.  Georgia has a much stronger public
interest in adjudicating this dispute than New York because
Witness is located in Georgia and the operative facts of the
alleged infringement occurred in Georgia, whereas New York has no
connection to either the parties or the facts underlying the
action.  See Bionx Implants, 1999 WL 342306, at *5.  Given that
Witness filed a declaratory judgment action against STS in the
Northern District of Georgia, and given that Witness and STS will
be litigating another patent dispute in the Northern District of

- 12 -

Georgia, transfer of this motion would promote judicial efficiency by allowing the claims to be consolidated if appropriate and discovery to be consolidated. Moreover, because this action has commenced only recently, little judicial effort will be wasted in transferring it to a new forum. See Bionx Implants, 1999 WL 342306, at *5.

## CONCLUSION

For the reasons state above, the motion to transfer this action to the Northern District of Georgia is **granted**. The Clerk is directed to transfer this action and to close the action on the docket of this Court.

SO ORDERED.

Dated:    New York, New York
          November 20, 2004

                                    John G. Koeltl
                                    United States District Judge

- 13 -

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WITNESS SYSTEMS, INC.,

    *Plaintiff,*

    v.

STS SOFTWARE SYSTEMS, LTD.,

    *Defendant.*

Civil Action No. 1:04-CV-2111-RWS

Judge Richard W. Story

## PLAINTIFF'S INITIAL DISCLOSURES

Pursuant to Local Rule 26.1 of the District Court for the Northern District of

Georgia, Plaintiff Witness Systems, Inc. ("Witness Systems") responds to the

Court's mandatory disclosures as follows:

**1.     State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.**

**ANSWER:**

This is an action for declaratory judgment of noninfringement of United

States Patent No. 6,122,665 (the "'665 patent").

The '665 patent is directed to specific systems and methods for monitoring a computer network to detect and store data packets containing audio or video data comprising a telephone communication session. Plaintiff Witness Systems and the alter ego of defendant STS Software Systems, Ltd. ("STS"), NICE Systems, Inc., compete within the United States in making, using, offering for sale, and selling monitoring and recording information, including products for use within customer service and call center environments. STS has asserted its alleged patent rights against Witness in the Southern District of New York, by filing an action alleging patent infringement. That filing, and other STS actions, have created an actual case or controversy between it and Witness Systems as to noninfringement of the '665 patent.

Witness Systems seeks relief on the grounds that Witness Systems does not infringe one or more claims of the '665 patent because Witness Systems does not make, use, sell, offer for sale, or import products that meet all the limitations of one or more claims of these patents.

2.    Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.

ANSWER:

Applicable Statues:

35 U.S.C. §§ 100, *et seq.*; 28 U.S.C. §§ 2201, *et seq.*

Illustrative Case Law:

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.,*
887 F.2d 1070 (Fed. Cir. 1989);

*Beckman Instruments, Inc. v. LKB Produker AB,*
892 F.2d 1547 (Fed. Cir. 1989);

*Catalina Marketing Int'l v. Coolsavings.com, Inc.,*
289 F.3d 801 (Fed. Cir. 2002);

*Chiuminatta Concrete Concepts v. Cardinal Indus., Inc.,*
143 F.2d 1303, 46 U.S.P.Q. 2d 1752 (Fed. Cir. 1998);

*Cole v. Kimberly Clark Corp.,*
102 F.3d 524 (Fed. Cir. 1996);

*Dolly, Inc v. Spalding & Evenflo Companies, Inc,*
16 F.3d 394 (Fed. Cir. 1994);

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki,*
535 U.S. 722 (2002);

*Good Year Tire & Rubber Co. v. Hercules Tire Rubber Co.,*
162 F.3d 1113 (Fed. Cir. 1998);

*Gorham Co. v. White,*
81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871);

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
   339 U.S. 605 (1950);

*Greenwood v. Hattori Seiko, Co., Ltd.*,
   900 F.2d 238 (Fed. Cir. 1990);

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
   62 F.3d 1512 (Fed. Cir. 1995) (en banc),
   *rev'd on other grounds*, 520 U.S. 17 (1997);

*Johnson & Johnston Assocs., Inc. v. R.E. Service Co., Inc.*,
   285 F.3d 1046 (Fed. Cir. 2002);

*Kemco Sales, Inc. v. Control Papers Co. Inc.*,
   208 F.3d 1352 (Fed. Cir. 2000);

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974);

*Markman v. Westview Instruments Inc.*,
   116 S. Ct. 1384 (1996);

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
   833 F.2d 931 (Fed. Cir. 1987) (en banc),
   *cert. denied*, 485 U.S. 961 (1988) ;

*Perkin Elmer Corp. V. Westinghouse Elec. Corp.*,
   822 F.2d 1528 (Fed. Cir. 1987);

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
   781 F.2d 198 (Fed. Cir. 1986);

*Schering Corp. v. Geneva Pharmaceuticals, Inc.*,
   Case Nos. 02-1540, *et seq.* (Fed. Cir. August 1, 2003);

*Stickle v. Heublein, Inc.*,
   716 F.2d 1550 (Fed. Cir. 1983);

*TWM Mfg. Co. v. Dura Corp.*,
   789 F.2d 895 (Fed. Cir.), *cert. denied*, 479 U.S. 852 (1986);

*Uni Dynamics Corp. v. Automatic Prods. Int'l, Ltd.,*
    157 F.3d 1311 (Fed. Cir. 1998);

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed.Cir. 1996);

*WMS Gaming Inc. v. International Game Technology,*
    184 F.3d 1339 (Fed. Cir. 1999);

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.,* Nos. 01-1357,
    01-1376, 02-1221, 02-1256, 2004 WL 2049342 (Fed. Cir. Sept. 13, 2004)
    (en banc).

3.    **Provide the name, and, if known, the address and telephone
number of each individual likely to have discoverable information that you
may use to support your claims or defenses, unless solely for impeachment,
identifying the subjects of the information. (Attach witness list to Initial
Disclosures as Attachment A.)**

**ANSWER:**

See Attachment A for witness list.  Witness Systems has not completed its

investigation of the facts of this case and additional witnesses may be named as

discovery proceeds.

4.    **Provide the name of any person who may be used at trial to
present evidence under Rules 702, 703, or 705 of the Federal Rules of
Evidence.  For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a
separate written report satisfying the provisions of that rule. (Attach expert
witness list and written reports to Responses to Initial Disclosures as
Attachment B).**

**ANSWER:**

Witness Systems has not yet identified anyone who may be called as an

expert witness, but reserves the right to supplement its response to this disclosure as

discovery proceeds and in conformity with the Court's scheduling order(s), the

Federal Rules of Civil Procedure and the Local Rules of this Court.

**5.     Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.  (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

**ANSWER:**

See Attachment C for a description of documents.  Witness Systems has not

completed its investigations of the facts of this case and additional relevant

documents will likely become available as discovery proceeds.

**6.     In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed. R. Civ. P. 34.  (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

**ANSWER:**

Witness Systems currently seeks only declaratory relief in this action, but reserves the right to amend this disclosure to assert claims for damages, costs and/or attorneys fees as may be warranted by further discovery.

7.    **Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

**ANSWER:**

Witness Systems is not presently aware of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action, or to indemnify or reimburse Witness Systems for payments made to satisfy the judgment as described in this section.

8.    **Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff's cause of action and state the basis and extent of such interest.**

7

**ANSWER:**

Witness Systems is not presently aware of any person with a subrogation interest in the cause of action set forth in Plaintiff's complaint.

Respectfully submitted this _20TH_ day of October, 2004.

_[signature]_
NAGENDRA SETTY
Georgia Bar No. 626205
DANIEL A. KENT
Georgia Bar No. 415110
CHRISTOPHER O. GREEN
Georgia Bar No. 037617

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
Ph: 404-521-3939
Fx: 404-581-8330

**COUNSEL FOR PLAINTIFF
WITNESS SYSTEMS, INC.**

# ATTACHMENT A

## PLAINTIFF'S LIST OF WITNESSES
## LIKELY TO HAVE DISCOVERABLE INFORMATION

The following individuals are employed or affiliated with Witness Systems, Inc., located at 300 Colonial Center Parkway, Roswell, Georgia 30076, and can be contacted only through Witness Systems' counsel at Jones Day:

| Name | Subjects |
| --- | --- |
| Kevin Hegebarth | Marketing, design, and development of the ContactStore for IP product ("CSIP") |
| Ainsley Pereira | Design, implementation, and development of certain release versions of CSIP |
| Chris Blair | Design, implementation, and development of certain release versions of CSIP |
| Daniel Spohrer | Design, implementation, and development of certain release versions of CSIP |
| Duane Wright | Design and development of certain release versions of CSIP |
| Nathan George | Marketing, design, and development of CSIP |
| John Bourne | Marketing and sales of CSIP |
| Kathy Miller | Sales of CSIP |
| William Evans | Witness's general financial performance and the financial performance of CSIP |

The following are not employees of Witness Systems:

| Name | Subjects |
|------|----------|
| Eitan Bar<br>(address unknown) | Purported inventions claimed or disclosed in U.S. Patent No. 6,122,665 ("the '665 patent"), their purported conception and reduction to practice and any alleged diligence associated therewith;<br><br>Preparation and/or prosecution of the application resulting in the '665 patent;<br><br>Preparation and/or prosecution of any foreign counterparts to the '665 patent. |
| Mordechai Nisani<br>(address unknown) | Purported inventions claimed or disclosed in U.S. Patent No. 6,122,665 ("the '665 patent"), their purported conception and reduction to practice and any alleged diligence associated therewith;<br><br>Preparation and/or prosecution of the application resulting in the '665 patent;<br><br>Preparation and/or prosecution of any foreign counterparts to the '665 patent. |
| Unknown individuals<br>STS Software Systems, Ltd.<br>8 Hapnina Drive,<br>Ra'anana 43107 Israel | Information related to the technology that is the subject of the '665 patent, products embodying the technology claimed in the patent, preparation and/or prosecution of the '665 patent, and financial information related to the same |
| Unknown individuals<br>NICE Systems, Ltd.<br>8 Hapnina Drive,<br>Ra'anana 43107 Israel | Information related to the technology that is the subject of the '665 patent, products embodying technology claimed in the patent, preparation and/or prosecution of the '665 patent, and financial information related to the same |

| Name | Subjects |
|------|----------|
| Mark Friedman<br>Bill Polkinghorn<br>Discovery Dispatch<br>9003 Florin Way<br>Upper Marlboro, MD<br>20772 | Information related to the preparation and/or prosecution of the application that issued as the '665 patent. |

# ATTACHMENT C

## <u>DOCUMENTS</u>

Witness Systems has in its possession, custody or control the following categories of documents that it may use to support its claims or defenses, which documents are located either at Witness Systems' facility in Roswell, Georgia, or at the offices of Witness Systems' litigation counsel, and which will be made available for inspection and copying by STS's counsel at a time and place mutually agreed by counsel for the parties, subject to STS making the same categories of documents available in the U.S., and subject to the entry of an appropriate protective order, particularly as it pertains to the most sensitive technical and commercial information identified below.

1.      Documents and tangible things tending to prove that the '665 patent, and each claim thereof, is not infringed, including:

a.      copies of the '665 patent and its file history;

b.      specimen of Witness Systems' CSIP product;

c.      prior art printed publications;

d.      prior art foreign and/or domestic patents, published applications, and/or file histories;

e.    Witness Systems' product documentation;

f.    Witness Systems' product research, design, and development

documents;

g.    Witness Systems' product marketing documents; and

Witness Systems' product source code.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing **"Plaintiff's Initial Disclosures"**

has been served on all counsel of record in this action as follows:

| | |
|---|---|
| ☐ By Hand | Angela S. Blackwell, Esq. |
| ☐ By Facsimile (w/o Exhibits) | William B. Hill, Jr. |
| ☒ By US Postal Service (1ˢᵗ Class) | ASHE, RAFUSE & HILL, LLP |
| ☐ By Overnight Delivery | 1355 Peachtree Street, N.E., Suite 500 |
| ☒ By Email | Atlanta, Georgia 30309-3232 |
| | Fax: (404) 253-6060 |

| | |
|---|---|
| ☐ By Hand | Scott G. Lindvall, Esq. |
| ☐ By Facsimile (w/o Exhibits) | Lee A. Goldberg, Esq. |
| ☒ By US Postal Service (1ˢᵗ Class) | Edward V. Di Lello |
| ☐ By Overnight Delivery | Chanah Brenenson |
| ☒ By Email | DARBY & DARBY P.C. |
| | 805 Third Avenue |
| | New York, NY 10022-7513 |
| | Fax: (212) 753-6237 |

This _20ᵀᴴ_ day of October, 2004.


_____
Nagendra Setty

PLAINTIFF'S INITIAL DISCLOSURES

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Witness Systems, Inc.,
  Plaintiff,

    v.

STS Software Systems, Ltd.,
  Defendant.

Civil Action No. 1:04-CV-2111-RWS

## STS SOFTWARE'S INITIAL DISCLOSURES

(1) If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.

STS Software Systems, Ltd. ("STS Software") was properly identified on the complaint.

(2) Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff. If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention.

None.

(3) Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading.

STS Software has not filed an answer and/or counterclaims because of STS Software's pending motion to dismiss for lack of personal jurisdiction. STS Software will supplement this disclosure, if and when it files an answer and/or counterclaims.

(4)    Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which defendant contends are applicable to this action.

This action will at least involve 35 U.S.C. §101 et seq. and the case law regarding patent validity, enforceability, infringement, and damages. Because STS Software has not filed an answer and/or counterclaims, it is premature to describe all the law applicable to this action. STS Software will supplement this disclosure, if and when it files an answer and/or counterclaim.

(5)    Provide the name, and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information.    (Attach witness list to Initial Disclosures as Attachment A.)

List of individuals likely to have discoverable information is provided in Attachment A. STS Software has not completed its investigation of the facts of this case and additional witnesses may be named as discovery proceeds.

(6)    Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report

2

satisfying the provisions of that rule.   (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)

STS Software has not yet identified anyone who may be called as an expert witness, but reserves the right to supplement its response to this disclosure as discovery proceeds and in conformity with the Court's scheduling order, the Federal Rules of Civil Procedure and the Local Rules of this Court.

(7)    Provide a copy of, or description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.  (Attach document list and descriptions to Initial Disclosures as Attachment C.)

Documents regarding technology and the patent in suit are located at STS Software, 8 Hapnina Street, Ra'anana 43107 Israel.

Documents regarding financial and marketing information are located at NICE Systems, Inc., 301 Route 17 North, 10th Floor Rutherford, New Jersey 07070.

STS Software has not completed its investigation of the facts of this case and additional relevant documents will likely become available as discovery proceeds.

(8)    In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials

3

bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

STS Software has not filed an answer and/or counterclaims because of

STS Software's pending motion to dismiss for lack of personal jurisdiction.   STS

Software will supplement this disclosure, if and when it files an answer and/or

counterclaims.

(9)   If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.

STS Software does not contend that some other person or legal entity

is, in whole or in part, liable to the plaintiff or defendant in this matter.

(10)   Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)

STS Software is not aware of any applicable insurance agreement(s).

October 22, 2004

Respectfully submitted,

By:   <u>/s Angela S. Blackwell</u>
Angela S. Blackwell
   Georgia Bar No. 647555
William B. Hill, Jr.
   Georgia Bar No. 354725
ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E.,
Suite 500
Atlanta, Georgia 30309-3232
Tel: (404) 253-6000
Fax: (404)253-6060

Scott G. Lindvall
   (pro hac vice pending)
Lee A. Goldberg
   (pro hac vice pending)
Chanah Brenenson
   (pro hac vice pending)
Robert Laurenzi
   (pro hac vice pending)
Edward V. Di Lello
   (pro hac vice pending)
DARBY & DARBY P.C.
New York, NY 10022-7513
Tel: (212) 527-7700
Fax: (212) 753-6237

*Attorneys for Defendant*
*STS Software Systems Ltd.*

5

## List Of Individuals Likely To Have Discoverable Information

1.     Eitan Bar, 27 Harakafot Street, Even Yehuda 40500, ISRAEL (inventor of the patent in suit; conception, reduction to practice, and development of the disclosed and claimed inventions).   STS Software's counsel represents Mr. Bar; therefore he should only be contacted through STS Software's counsel.

2.     Mordechai Nisani, NICE Systems, Ltd., 8 Hapnina Street, Ra'anana 43107 ISRAEL (inventor of the patent in suit; conception, reduction to practice, and development of the disclosed and claimed inventions).   STS Software's counsel represents Mr. Nisani; therefore he should only be contacted through STS Software's counsel.

3.     Mark M. Friedman, Moshe Aviv Tower, 54th Floor, 7 Jabotinsky Street, 52520 Ramat Gan, ISRAEL (information relating to the patent in suit).   STS Software's counsel represents Mr. Friedman; therefore he should only be contacted through STS Software's counsel.

3.     Scott Mckechnie, Avaya, Inc., 211 Mt. Airy Road, Basking Ridge, New Jersey 07920 (information relating to the accused products).

4.     David Raanan, Avaya, Inc., 211 Mt. Airy Road, Basking Ridge, New Jersey 07920 (information relating to the accused products).

STS Software's Initial Disclosure
Attachment A

5.    Mike Thurk, Avaya, Inc., 300 Baker Avenue, Concord, Massachusetts 01742 (information relating to the accused products).

6.    Shlomo Shamir, NICE Systems, Inc., 301 Route 17 North, 10th Floor Rutherford, New Jersey 07070 (communications between IPC Communications and Witness Systems).  STS Software's counsel represents Mr. Shamir; therefore he should only be contacted through STS Software's counsel.

7.    Bruce Bolcer, IPC Communications, Inc., 777 Commerce Drive, Fairfield, CT 06432 (information relating to the accused products and communications between IPC and Witness Systems).

8.    Leo Papadopoulos, IPC Communications, Inc., 777 Commerce Drive, Fairfield, CT 06432 (information relating to the accused products and communications between IPC and Witness Systems).

9.    Israel Hirsh, IPC Communications, Inc., 777 Commerce Drive, Fairfield, CT 06432 (information relating to the accused products and communications between IPC and Witness Systems).

10.    Doug Costa, IPC Communications, Inc., 777 Commerce Drive, Fairfield, CT 06432 (information relating to the accused products and communications    between    IPC    and    Witness    Systems).

ii

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing STS SOFTWARE'S INITIAL DISCLOSURES upon counsel of record by electronically filing using the CM/ECF system and by the means indicated:

*Via Federal Express*

Christopher Owen Green
Daniel Arthur Kent
Nagendra Setty
Jones Day
1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309-3053
Email: cogreen@jonesday.com

Via U.S. Mail

Kenneth R. Adamo
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, Ohio 44114-1190

Dated: October 22, 2004

/s Angela S. Blackwell

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Witness Systems, Inc.,

    *Plaintiff*,

v.

NICE Systems, Inc., and
NICE Systems Ltd.

    *Defendants*.

Civil Action No. 1:06-CV-0126-RLV

## JOINT PRELIMINARY REPORT
## AND DISCOVERY PLAN

WITNESS SYSTEMS, INC. ("Witness Systems"), Plaintiff in the above-captioned matter, and NICE SYSTEMS, LTD. ("NICE, Ltd.") and NICE SYSTEMS, INC. ("NICE, Inc.") (collectively, "NICE"), Defendants in the above-captioned matter, by and through their undersigned counsel and in accordance with Local Rule 16.2, file the following Joint Preliminary Report And Discovery Plan.

1.   **Description of Case:**

    (a)   **Describe briefly the nature of this action.**

This is an action for patent infringement under the U.S. Patent Laws, Title 35 U.S.C. § 100 *et seq.* This action also involves counterclaims for declarations of patent invalidity and noninfringement under the U.S. Patent Laws, Title 35 U.S.C. § 100 *et seq.*

I2000605.DOC

(b)    **Summarize, in the space provided below, the facts of this case.
The summary should not be argumentative nor recite evidence.**

Plaintiff Witness Systems is a Delaware corporation headquartered in

Roswell, Georgia.  Witness Systems is engaged in the business of, among other

things, researching, developing, producing, marketing, and selling computer-based

systems, software, and related methods that allow one to monitor telephone

interactions and/or computer interactions on one or more workstations.

The patent at issue in this action is U.S. Patent Nos. 6,404,857 ("the `857

Patent").  Witness Systems commenced this action in January 2006, seeking a

judgment of infringement with respect to the `857 Patent.

Defendants NICE filed an Answer and Counterclaims on March 6, 2006.

NICE is seeking declarations that the `857 Patent is not infringed and is invalid and

unenforceable.

(c)    **The legal issues to be tried are as follows:**

(i)    The scope of the claims of the `857 Patent;

(ii)    Whether the `857 Patent is infringed;

(iii)    Whether Witness Systems may recover damages;

(iv)    The scope of injunctive relief;

(v)    Whether the alleged infringement is willful;

(vi)    Whether the `875 Patent is valid.

12000605.DOC

-2-

(d)     **The cases listed below (include both style and action number) are:**

     (i)     **Pending Related Cases:**

None.

     (ii)     **Previously Adjudicated Related Cases:**

None.

2.     **This case is complex because it possesses one (1) or more of the features listed below (please check):**

|  | | |
|---|---|---|
| ____ | (1) | Unusually large number of parties |
| ____ | (2) | Unusually large number of claims or defenses |
| ____ | (3) | Factual issues are exceptionally complex |
| ____ | (4) | Greater than normal volume of evidence |
| ____ | (5) | Extended discovery period is needed |
| ____ | (6) | Problems locating or preserving evidence |
| ____ | (7) | Pending parallel investigations or action by government |
| _X_ | (8) | Multiple use of experts |
| _X_ | (9) | Need for discovery outside United States boundaries |
| _X_ | (10) | Existence of highly technical issues and proof |

3.     **Counsel:**

The following individually-named attorneys are hereby designated as lead

counsel for the parties:

Plaintiff:              Nagendra Setty
                        Fish & Richardson
                        Atlanta, Georgia

Defendant:          Scott G. Lindvall
                        Kaye Scholer, LLP
                        New York, New York

12000605.DOC

4.    **Jurisdiction:**

**Is there any question regarding this Court's jurisdiction?**

<u>X</u>  Yes            ____  No

**If "yes," please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

**Defendants' Statement Regarding Jurisdiction:** To the best of our knowledge, information and belief, no products of NICE that are alleged to infringe the `857 Patent have been sold or offered for sale in this District. NICE is conducting further investigation to confirm that no such sale or offer for sale has been made. If those facts are confirmed, NICE intends to move to dismiss the complaint for lack of personal jurisdiction.

Plaintiff does not believe any questions exist regarding the Court's jurisdiction.

5.    **Parties To This Action:**

(a)    **The following persons are necessary parties who have not been joined:**

12000605.DOC

NICE knows of no other necessary parties at this time, but reserves the right

to move to join other parties if during discovery, it determines that another party

has a right, title or interest in the `875 Patent.

    (b)    **The following persons are improperly joined as parties:**

None.

    (c)    **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

None.

    (d)    **The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

6.    **Amendments To The Pleadings:**

    **Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.**

    (a)    **List separately any amendments to the pleadings which the parties anticipate will be necessary:**

NICE anticipates the possible need to amend its Answer and Counterclaims

to assert that the `857 is unenforceable.

    (b)    **Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the preliminary planning report is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

12000605.DOC

-5-

7.    **Filing Times For Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed **WITHIN THIRTY (30) DAYS** after the preliminary planning report is filed or should have been filed, unless the filing party has obtained prior permission of the Court to file later. Local Rule 7.1A(2).

(a)    *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rules 37.1.

(b)    *Summary Judgment Motions*: within twenty (20) days after the close of discovery, unless otherwise permitted by Court order. Local Rule 56.1.

(c)    *Other Limited Motions*: refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)    *Motions Objecting To Expert Testimony*: <u>Daubert</u> motions with regard to expert testimony no later than the date the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

8.    **Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.

9.    **Request For Scheduling Conference:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

12000605.DOC

Witness Systems requests a scheduling conference to review issues concerning Patent L.R. disclosures, foreign discovery and the potential for appointment of a Special Master to address claim construction and discovery issues.

NICE does not believe that a scheduling conference is necessary at this time.

10.   **Discovery Period:**

**The discovery period commences thirty (30) days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

**Cases in this Court are assigned to one of the following three (3) discovery tracks: (a) zero (0)-months discovery period, (b) four (4)-months discovery period, and (c) eight (8)-months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

**Please state below the subjects on which discovery may be needed:**

The following is a non-exhaustive list of the issues on which the parties anticipate that discovery will be needed:

(i)     the proper construction of the relevant claims of the `857 Patent;

(ii)    the identification and method of operation of the Nice products accused of infringement;

(iii)   facts related to the alleged infringement of the `857 Patent.

(iv)    facts related to the computation of damages

I2000605.DOC

-7-

(v)     facts related to the validity of the `857 Patent; and

(vi)     facts related to the enforceability of the `857 Patent.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery, or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

Witness Systems anticipates that additional time beyond that allowed by the

assigned discovery track may be needed to accommodate the need for foreign

discovery proceedings related to the design, development and operation of the

NICE products accused of infringement.

11.     **Discovery Limitation:**

**What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed.**

None.

12.     **Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

Pursuant to Patent Local Rule 2.2, Plaintiff believes a stipulated protective

order governing the production in this case of commercially or technologically

sensitive information, including computer software source code, ought to be

negotiated and entered.

12000605.DOC

13.    **Settlement Potential:**

(a)    **Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on March 9, 2006, and that they participated in settlement discussions.  Other persons who participated in the settlement discussions are listed according to party.**

For plaintiff:                                Lead counsel (signature):


                                              s/Nagendra Setty
                                              Nagendra Setty

Other participants:                           Daniel A. Kent, Christopher O. Green


For defendant:                                Lead counsel (signature):


                                              s/Scott G. Lindvall
                                              Scott G. Lindvall

Other participants:                           None

(b)    **All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(   )    A possibility of settlement before discovery.
( X  )   A possibility of settlement after discovery.
(   )    A possibility of settlement, but a conference with the judge is needed.
(   )    No possibility of settlement.

(c)    **Counsel (   ) do or (   ) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.  The proposed date of the next settlement conference is _____.**

    (d)    **The following specific problems have created a hindrance to settlement of this case.**

None.

14.    **Trial By Magistrate Judge:**

**Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

    (a)    The parties (_____) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the Clerk of Court this _____ day of _____, 2006.

    (b)    The parties (__X__) do not consent to having this case tried before a magistrate judge of this Court.

12000605.DOC

-10-

Dated:        March 23, 2006


___s/Nagendra Setty_____        ___s/Scott G. Lindvall_____
Nagendra Setty                        William B. Hill, Jr.
    Georgia Bar No. 636205                Georgia Bar No. 354725
Daniel A. Kent                        Angela S. Blackwell
    Georgia Bar No. 415110                Georgia Bar No. 647555
Christopher O. Green
    Georgia Bar No. 037617            ASHE, RAFUSE & HILL, LLP
Noah C. Graubart                      1355 Peachtree Street, N.E., Suite 500
    Georgia Bar No. 141862            Atlanta, Georgia 30309-3232
                                      Phone:  (404) 253-6000
                                      Fax:  (404) 253-6060

FISH & RICHARDSON P.C.
1230 Peachtree Street, N.E., 19th Floor   Scott G. Lindvall, Esq.
Atlanta, Georgia 30309-3053                   (admitted *pro hac vice*)
Telephone:  (404) 892-5005            Patricia J. Clarke, Esq.
Facsimile:  (404) 892-5002                (admitted *pro hac vice*)
                                      Robert R. Laurenzi, Esq.
                                          (admitted *pro hac vice*)


COUNSEL FOR PLAINTIFFS                 KAYE SCHOLER LLP
WITNESS SYSTEMS, INC.                  425 Park Avenue
                                      New York, NY 10022
                                      Phone:  (212) 836-8000
                                      Fax:  (212) 836-6369

                                      COUNSEL FOR DEFENDANTS
                                      NICE SYSTEMS, INC., AND
                                      NICE SYSTEMS LTD.


12000605.DOC
                                    -11-

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 27 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Witness Systems, Inc.,

    Plaintiff,

v.

NICE Systems, Inc., and
NICE SYSTEMS LTD.

    Defendants.

Civil Action No. 1:06-CV-0126

## SCHEDULING ORDER

    Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

_____

_____

IT IS SO ORDERED, this 27ᵗʰ day of _____MARCH_____, 2006.

_____
Robert L. Vining, Jr.
UNITED STATES DISTRICT JUDGE

J2000605.DOC

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WITNESS SYSTEMS, INC.,

   *Plaintiff,*

  v.

NICE SYSTEMS, INC., and
NICE SYSTEMS LTD.,

   *Defendants.*

Civil Action No. 1:06-CV-00126-TCB

## PLAINTIFF S INITIAL DISCLOSURES

Pursuant to Local Rule 26.1 of the District Court for the Northern District of

Georgia, Plaintiff Witness Systems, Inc. ( Witness Systems ) responds to the

Court s mandatory disclosures as follows:

**1. State precisely the classification of the cause of action being filed, a
brief factual outline of the case including plaintiff s contentions as to what
defendant did or failed to do, and a succinct statement of the legal issues in the
case.**

**ANSWER:**

This is an action for patent infringement of United States Patent No.

6,404,857 ( the  857 Patent ).

12001172.DOC

The 857 patent is directed to computer-based systems, software and related methods that allow one to monitor telephone interactions and/or computer interactions on one or more workstations. The claimed inventions are particularly useful in contact center environments in which such monitoring may be used for quality control purposes, for regulatory compliance, for training customer service representatives and to create an audit trail of customer service representative ( CSR ) activities. Plaintiff Witness Systems and defendant NICE Systems, Inc., compete within the United States in making, using, offering for sale, and selling products that can be used to monitor telephone and/or computer interactions, including products for use within customer service and contact center environments.

Witness Systems seeks relief on the grounds that NICE Systems has infringed, and continues to infringe, both directly and indirectly by way of inducement of others and contributory infringement, one or more claims of the 857 patent.

**2.     Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.**

**ANSWER:**

Applicable Statutes:

35 U.S.C. §§ 100, *et seq.*; 28 U.S.C. §§ 2201, *et seq.*

Illustrative Case Law:

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.,*
        887 F.2d 1070 (Fed. Cir. 1989);

*Beckman Instruments, Inc. v. LKB Produker AB,*
        892 F.2d 1547 (Fed. Cir. 1989);

*Catalina Marketing Int l v. Coolsavings.com, Inc.,*
        289 F.3d 801 (Fed. Cir. 2002);

*Chiuminatta Concrete Concepts v. Cardinal Indus., Inc.,*
        143 F.2d 1303, 46 U.S.P.Q. 2d 1752 (Fed. Cir. 1998);

*Cole v. Kimberly Clark Corp.,*
        102 F.3d 524 (Fed. Cir. 1996);

*Dolly, Inc v. Spalding & Evenflo Companies, Inc,*
        16 F.3d 394 (Fed. Cir. 1994);

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki,*
        535 U.S. 722 (2002);

*Good Year Tire & Rubber Co. v. Hercules Tire Rubber Co.,*
        162 F.3d 1113 (Fed. Cir. 1998);

*Gorham Co. v. White,*
        81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871);

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950);

*Greenwood v. Hattori Seiko, Co., Ltd.*,
    900 F.2d 238 (Fed. Cir. 1990);

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
    62 F.3d 1512 (Fed. Cir. 1995) (en banc),
    *rev d on other grounds*, 520 U.S. 17 (1997);

*Johnson & Johnston Assocs., Inc. v. R.E. Service Co., Inc.*,
    285 F.3d 1046 (Fed. Cir. 2002);

*Kemco Sales, Inc. v. Control Papers Co. Inc.*,
    208 F.3d 1352 (Fed. Cir. 2000);

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974);

*Markman v. Westview Instruments Inc.*,
    116 S. Ct. 1384 (1996);

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
    833 F.2d 931 (Fed. Cir. 1987) (en banc),
    *cert. denied,* 485 U.S. 961 (1988) ;

*Perkin Elmer Corp. V. Westinghouse Elec. Corp.*,
    822 F.2d 1528 (Fed. Cir. 1987);

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
    781 F.2d 198 (Fed. Cir. 1986);

*Schering Corp. v. Geneva Pharmaceuticals, Inc.*,
    Case Nos. 02-1540, *et seq.* (Fed. Cir. August 1, 2003);

*Stickle v. Heublein, Inc.*,
    716 F.2d 1550 (Fed. Cir. 1983);

*TWM Mfg. Co. v. Dura Corp.*,
    789 F.2d 895 (Fed. Cir.), *cert. denied*, 479 U.S. 852 (1986);

*Uni Dynamics Corp. v. Automatic Prods. Int l, Ltd.,*
        157 F.3d 1311 (Fed. Cir. 1998);

*Vitronics Corp. v. Conceptronic, Inc.,*
        90 F.3d 1576 (Fed.Cir. 1996);

*WMS Gaming Inc. v. International Game Technology,*
        184 F.3d 1339 (Fed. Cir. 1999);

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, Nos. 01-1357,
        01-1376, 02-1221, 02-1256, 2004 WL 2049342 (Fed. Cir. Sept. 13, 2004)
        (en banc); and

*Phillips v. AWH Corp.,*

        415 F.3d 1303 (Fed. Cir. 2005).

        **3.    Provide the name, and, if known, the address and telephone
number of each individual likely to have discoverable information that you
may use to support your claims or defenses, unless solely for impeachment,
identifying the subjects of the information. (Attach witness list to Initial
Disclosures as Attachment A.)**

        **ANSWER:**

        See Attachment A for witness list.  Witness Systems has not completed its

investigation of the facts of this case and additional witnesses may be named as

discovery proceeds.

        **4.    Provide the name of any person who may be used at trial to
present evidence under Rules 702, 703, or 705 of the Federal Rules of
Evidence.  For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a
separate written report satisfying the provisions of that rule. (Attach expert
witness list and written reports to Responses to Initial Disclosures as
Attachment B).**

12001172.DOC                                5

**ANSWER:**

Witness Systems has not yet identified anyone who may be called as an

expert witness, but reserves the right to supplement its response to this disclosure as

discovery proceeds and in conformity with the Court s scheduling order(s), the

Federal Rules of Civil Procedure and the Local Rules of this Court.

**5.      Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.   (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

**ANSWER:**

See Attachment C for a description of documents.  Witness Systems has not

completed its investigations of the facts of this case and additional relevant

documents will likely become available as discovery proceeds.

**6.      In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed. R. Civ. P. 34.  (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

**ANSWER:**

Witness Systems currently seeks preliminary and permanent injunctive relief,

and all damages allowed by law for NICE Systems infringement of the '857 patent.

In terms of damages, Witness Systems seeks its lost profits, a reasonable royalty, or

both, depending on the facts as they develop in discovery.

**7.    Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

**ANSWER:**

Witness Systems is not presently aware of any insurance agreement under

which any person carrying on an insurance business may be liable to satisfy part or

all of a judgment which may be entered in the action, or to indemnify or reimburse

Witness Systems for payments made to satisfy the judgment as described in this

section.

8.    Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff s cause of action and state the basis and extent of such interest.

ANSWER:

Witness Systems is not presently aware of any person with a subrogation interest in the cause of action set forth in Plaintiff s complaint.

Respectfully submitted this 5th day of April 2006.

s/Christopher O. Green
Nagendra Setty
  Georgia Bar No. 636205
Daniel A. Kent
  Georgia Bar No. 415110
Christopher O. Green
  Georgia Bar No. 037617
FISH & RICHARDSON P.C.
1230 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
Telephone:  (404) 892-5005
Facsimile:  (404) 892-5002

ATTORNEYS FOR PLAINTIFF
WITNESS SYSTEMS, INC.

## ATTACHMENT A

### PLAINTIFF S LIST OF WITNESSES
### LIKELY TO HAVE DISCOVERABLE INFORMATION

The following individuals are employed or affiliated with Witness Systems,

Inc., located at 300 Colonial Center Parkway, Roswell, Georgia 30076, and can be

contacted only through Witness Systems  counsel at Fish & Richardson:

| Name | Subjects |
|------|----------|
| Kevin Hegebarth | Marketing, design, and development of the Witness Systems communication signal analysis features and functionalities ( Communication Signal Analysis ) |
| Nancy Treaster | Marketing of Communication Signal Analysis |
| Christopher Blair | Technical aspects of Communication Signal Analysis, and the inventions claimed or disclosed in U.S. Patent No. 6,404,857 ( the '857 patent ), their conception and reduction to practice and diligence associated therewith. |
| Kathy Miller | Sales of Communication Signal Analysis |
| William Evans | Witness s general financial performance and the financial performance of Communication Signal Analysis |

The following are not current employees of Witness Systems:

| Name | Subjects |
|---|---|
| Roger Keenan<br><br>(address unknown) | Inventions claimed or disclosed in U.S. Patent No. 6,404,857 ("the '857 patent"), their conception and reduction to practice and diligence associated therewith. |
| Unknown individuals<br>NICE Systems, Inc.<br>301 Route 17 North<br>10th Floor<br>Rutherford, NJ 07070 | Technical, financial, marketing and product management information concerning NICE products that contain or include accused Communication Signal Analysis features and functionalities, including the NICE Performfi products. |
| Unknown individuals<br>NICE Systems, Ltd.<br>8 Hapnina Drive,<br>Ra'anana 43107 Israel | Technical, financial, marketing and product management information concerning NICE products that contain or include accused Communication Signal Analysis features and functionalities, including the NICE Performfi products. |

## ATTACHMENT C

## <u>DOCUMENTS</u>

Witness Systems has in its possession, custody or control the following categories of documents that it may use to support its claims or defenses, which documents are located either at Witness Systems' facility in Roswell, Georgia, or at the offices of Witness Systems' litigation counsel, and which will be made available for inspection and copying by NICE's counsel at a time and place mutually agreed by counsel for the parties, subject to NICE making the same categories of documents available in the U.S., and subject to the entry of an appropriate protective order, particularly as it pertains to the most sensitive technical and commercial information identified below.

1.    Copies of the '857 patent, its file history and assignment documents.

2.    Documents evidencing the conception, reduction to practice, design and development of the inventions claimed in the '857 patent, to the extent such documents exist and can be found.

3.    Documents concerning NICE Systems' accused NICE Perform products and the communication signal analysis features of that product.

4.    NICE Systems' financial disclosures, annual reports, public filings, and Internet web pages.

5.  Marketing and sales materials, financial materials, licenses and agreements with customers, and other Witness Systems documents concerning the financial performance of Witness Systems and its communication signal analysis products.

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed "INITIAL DISCLOSURES"

with the Clerk of Court using the CM/ECF Systems which will automatically send

e-mail notification of such filing to the following attorneys of record:

Scott G. Lindvall, Esq.
Patricia J. Clarke, Esq.
Robert R. Laurenzi, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Fax: (212) 836-6369
slindvall@kayescholer.com
pclarke@kayescholer.com
rlaurenzi@kayescholer.com

Angela S. Blackwell, Esq.
William B. Hill, Jr., Esq.
ASHE, RAFUSE & HILL, LLP
1335 Peachtree Street, NE,
Suite 500
Atlanta, GA 30309
Fax: (404) 253-6060
angela.blackwell@asherafuse.com
william.hill@asherafuse.com

Dated:  April 5, 2006.

s/Christopher O. Green
Nagendra Setty
   Georgia Bar No. 636205
Daniel A. Kent
   Georgia Bar No. 415110
Christopher O. Green
   Georgia Bar No. 037617

FISH & RICHARDSON P.C.
1230 Peachtree Street, N.E., 19th Floor
Atlanta, Georgia 30309-3053
Telephone:  (404) 892-5005
Facsimile:  (404) 892-5002

ATTORNEYS FOR PLAINTIFF
WITNESS SYSTEMS, INC

12001172.DOC

# EXHIBIT K

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - -   x
Witness Systems, Inc.,                          :

                        Plaintiff,             :

              v.                                :        Civil Action No. 1:06-cv-00126-TCB

                                                :
NICE Systems, Inc. and
NICE Systems, Ltd.                              :

                        Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - -   x
```

## INITIAL DISCLOSURES OF NICE
## SYSTEMS, INC. AND NICE SYSTEMS, LTD.

(1)     If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.

NICE Systems, Inc. ("NICE Inc.") was properly identified in the complaint.

NICE Systems, Ltd. ("NICE Ltd.") was properly identified in the complaint.[1]

(2)     Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff.  If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention.

None.

(3)     Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading.

---

[1]     NICE Inc. and NICE Ltd. are referred to together herein as "NICE."

NICE asserts in its Answer and Counterclaims that it does not infringe U.S. Patent No. 6,404,857 ("the patent-in-suit") and further asserts that the claims of the patents-in-suit are invalid for failure to satisfy one or more of the statutory conditions for patentability.

NICE's study of prior art and other invalidity defenses is on-going.  It is expected that additional evidence concerning the invalidity of the patents-in-suit will be found in the course of discovery.

NICE's study of these issues continues and NICE expects to produce documents and witnesses to support these defenses and related counterclaims. NICE reserves the right to supplement or modify any and all of the above responses in accordance with the Local Patent Rules and the Federal Rules of Civil Procedure.

NICE also asserts in its Answer that Witness Systems Inc.'s ("Witness Systems") allegations of infringement are estopped by virtue of the proceedings in the U.S. Patent and Trademark Office during the prosecution of the applications that matured into the patents-in-suit.  NICE's investigation of this issue continues. NICE believes that the official copy of the file histories of the patents-in-suit obtained from the U.S. Patent and Trademark Office forms the factual basis for this defense.  NICE expects, however, that further evidentiary support for this defense will be found in documents produced and depositions taken by the parties during the course of discovery.

2

NICE asserts in its Answer that Witness Systems' allegations concerning U.S. Patent No. 6,404,857 ("the `857 patent") are barred under the doctrine of laches. NICE's study of this issue continues. NICE notes that the `857 patent issued on June 11, 2002, more than three years before the filing of the present suit. NICE expects that further factual support for this defense will be found in additional documents produced and depositions taken by the parties during the course of discovery.

NICE asserts in its Answer that plaintiff's claim of willful infringement of the patents-in-suit is not pleaded with sufficient specificity or factual support to put NICE on notice as to the claim beings made and also, therefore, fails to state a claim on which relief can be granted. NICE is unable to provide a specific factual basis for this defense because Witness Systems' allegation of willfulness is not presently understood. If at such time, Witness' allegation is understood, NICE expects that documents may be produced and deposition testimony elicited from witnesses that will support NICE's defense.

NICE asserts in its Counterclaims that, on information and belief, Witness Systems has pursued the present action aware that NICE has not infringed the patents in suit. This issue is under investigation by NICE. The detailed factual basis for this Counterclaim will be further provided during discovery through documents produced and testimony elicited in deposition by the parties.

(4)    Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which defendant contends are applicable to this action.

3

This action will involve at least 28 U.S.C. §§ 2201, *et seq.* and 35 U.S.C. § 101 *et seq.* and related case law concerning patent claim construction, invalidity, unenforceability, non-infringement, and damages.

(5)    Provide the name, and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)

A list of individuals likely to have discoverable information is provided in Attachment A. NICE has not completed its investigation of the facts of this case and additional witnesses may be named as discovery proceeds.

(6)    Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)

NICE has not yet identified anyone who will be called as an expert witness, but reserves the right to supplement its response to this disclosure as discovery proceeds and in conformity with the Court's scheduling order, the Federal Rules of Civil Procedure and the Local Rules of this Court.

(7)    Provide a copy of, or description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)

Documents concerning the accused product as well as documents possibly relating to prior art of the patents-in-suit are located at NICE Systems, Inc., 301 Rt. 17 North 10th Floor, Rutherford, New Jersey 07070.

Documents concerning the accused product as well as documents possibly relating to prior art of the patents-in-suit are also located at NICE Systems, Ltd., 8 Hapnina Street, P.O. Box 69043 107, Ra'anana ISRAEL.

Documents regarding financial and marketing information concerning the accused product are located at NICE Systems, Inc., 301 Route 17 North, 10th Floor Rutherford, New Jersey 07070 and at NICE Systems, Ltd., 8 Hapnina Street, P.O. Box 69043 107, Ra'anana ISRAEL.

Documents concerning the accused product as well as documents possibly concerning prior art of the patents-in-suit are in the possession of third parties. These documents are not in the possession, custody or control of NICE Systems.

NICE has not completed its investigation of the facts of this case and additional relevant documents will likely become available as discovery proceeds.

(8)   In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

NICE seeks damages in the form of attorneys' fees and costs.

(9)   If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.

NICE is not presently aware of any third party which is liable to Witness or NICE in this matter.

5

(10)   Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment.  (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)

NICE is not aware of any applicable insurance agreement(s).

Dated:  April 5, 2006                    Respectfully submitted,

                                         /s Angela S. Blackwell
                                         Angela S. Blackwell
                                              Georgia Bar No. 647555
                                         William B. Hill, Jr.
                                              Georgia Bar No. 354725
                                         ASHE, RAFUSE & HILL, LLP
                                         1355 Peachtree Street, N.E., Suite 500
                                         Atlanta, Georgia  30309-3232
                                         Tel:  (404) 253-6000
                                         Fax:  (404) 253-6060

                                         Scott G. Lindvall
                                              (admitted *pro hac vice*)
                                         KAYE SCHOLER
                                         New York, NY  10022-3598
                                         Tel:  (212) 836-8700
                                         Fax:  (212) 836-8689

                                         Attorneys for Defendants
                                         *NICE Systems, Inc.*
                                         *& NICE Systems, Ltd.*

6

## Attachment A

### List Of Individuals Likely To Have Discoverable Information

1.    Gregory J. Kirsch, Esq. (U.S.P.T.O. Reg. No. 35,572), Young & Thompson, Suite 1000, 999 Peachtree Street, Atlanta, GA 30309-3915, 678- 420-9300 - prosecuted U.S. Patent No. 6,404,857.

2.    Christopher Douglas Blair, present address unknown - named inventor of the patent-in-suit; conception, reduction to practice, and development of the disclosed and claimed inventions.

3.    Roger Louis Keenan, present address unknown - named inventor of the patent-in-suit; conception, reduction to practice, and development of the disclosed and claimed inventions.

4.    Ilan Yosef, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused products.

5.    Ran Oz, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to sales.

6.    Eran Porat, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to sales.

7.    Moshe Wasserblat, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product.

8.    Françoise Nale, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to sales.

9.    Oren Pereg, c/o NICE Systems, Ltd., 8 Hapnina Street, Ra'anana ISRAEL - information relating to the accused product.

10.    Loren Wimpfheimer, Esq., c/o Witness Systems, Inc., 300 Colonial Center Parkway, Roswell, Georgia 30076 - information relating to the prosecution of the patent-in-suit.

11.    Presently unknown individuals employed now or in the past by Witness Systems, Inc. and/or Eyretel, Ltd. - information relating to the technology at issue, prior art to the patents-in-suit and damages alleged by Witness Systems, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2006, I caused a true and complete copy of the foregoing INITIAL DISCLOSURES OF NICE SYSTEMS, INC. AND NICE SYSTEMS, LTD. to be served upon the parties to this action as shown on the attached Service List.

Dated: April 5, 2006                                    Angela S. Blackwell

**SERVICE LIST**
*WITNESS SYSTEMS, INC V. NICE
SYSTEMS, INC. AND NICE SYSTEMS, LTD.*
**Case No. 1:06-cv-00126-TCB**

Attorneys for Plaintiff *Witness Systems, Inc.*
Nagendra Setty
        Georgia Bar No. 636205
Daniel A. Kent
        Georgia Bar No. 415110
Christopher O. Green
        Georgia Bar No. 037617
Noah Graubart
        Georgia Bar No. 141862
FISH & RICHARDSON, P.C.
1230 Peachtree Street, N.E.
19th Floor
Atlanta, Georgia 30309-3053
Telephone:  (404) 892-2752
Facsimile:   (404) 892-5002

☐  Via Facsimile
☐  Via First Class Mail
☐  Via Federal Express
☒  Via Email/Efiling

Counsel for Plaintiff
*Witness Systems, Inc.*

# EXHIBIT L

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)
(Cite as: 2005 WL 441077 (D.Del.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**TRILEGIANT LOYALTY SOLUTIONS, INC.**
**Plaintiff,**
v.
**MARITZ, INC., Defendant.**
No. Civ.A. 04-360 JJF.

Feb. 15, 2005.

Jack B. Blumenfeld, and Rodger D. Smith II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Steven Lieberman, Sharon L. Davis, and R. Elizabeth Brenner, of Rothwell, Figg, Ernst & Manbeck, P.C., Washington, D.C., for Plaintiff, of counsel.

Rudolf E. Hutz, and Patricia Smink Rogowski, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, J. Bennett Clark, Jennifer E. Hoekel, and Marc W. Vander Tuig, of Senniger Powers, St. Louis, Missouri, for Defendant, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is the Motion To Transfer Under 28 U.S .C. § 1404(a) (D.I.13) filed by Defendant Maritz, Inc. ("Maritz"). For the reasons discussed, Maritz's Motion To Transfer will be denied.

BACKGROUND

Plaintiff Trilegiant Loyalty Solutions, Inc. ("Trilegiant") initiated this lawsuit in this Court alleging patent infringement arising from Defendant Maritz's development and operation of online incentive programs. Trilegiant is incorporated in Delaware, and has its principal place of business in Richmond, Virginia. Maritz is a Missouri corporation with its principal place of business in Fenton, Missouri.

PARTIES' CONTENTIONS

By its motion, Maritz contends that a transfer to the Eastern District of Missouri is appropriate in this case pursuant to the factors identified in *Jumara v.*

*State Farm Insurance Co.*, 55 F.3d 873 (3d Cir.1995). Maritz contends that both the private and public interests favor a transfer to Missouri. With regard to the private interests, Maritz contends that none of the parties has a presence in Delaware, and that transfer to the Eastern District of Missouri would not significantly change the burden Trilegiant already bears by virtue of choosing Delaware. Maritz further contends that party witnesses and potential non-party witnesses appear to be located far from Delaware. Maritz also contends that accused activities likely took place in Missouri and that relevant documents are not likely to be located in Delaware. With regard to the public interests, Maritz contends that none of the interests involved in this lawsuit are unique to Delaware and that Missouri is the more practical venue for this lawsuit. Maritz did not address the following factors: 1) likelihood of an enforcement problem; 2) administrative difficulty in the two fora resulting from court congestion, and 3) familiarity with applicable state law.

In response, Trilegiant claims that its choice to bring suit in Delaware is entitled to substantial deference because Trilegiant chose to litigate in Delaware for several rational and legitimate reasons. Trilegiant contends that it sought the benefits of Delaware law by incorporation in this state. Trilegiant further contends that Magistrate Thyne mediated a previous case that involved two of the three patents in this suit. With regard to the convenience of the parties and witnesses, Trilegiant contends that Delaware is more convenient than Missouri for it and the inventor, Mr. Storey. Trilegiant stresses the Delaware Court has subpoena power over potential third-party Delaware corporations that would make access to documents easier in Delaware than in Missouri.

DISCUSSION

I. Legal Standard

Maritz moves for a transfer to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). Section 1404(a) is the general transfer statute that provides, "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." Courts in the Third Circuit apply the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 441077, *1 (D.Del.))

public and private interest factors outlined in *Jumara v. State Farm Insurance Co.,* 55 F.3d 873 (3d Cir.1995), to decide if they should order a transfer. The private interests outlined in *Jumara* include: (1) Plaintiff's forum preference; (2) Defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records--but only to the extent that the documents may be unavailable for trial in one of the fora. *Id.* at 879 (citations omitted).

*2 The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." *Id.*

Maritz bears the burden of establishing the need for transfer. *Id.*

II. Analysis

A. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"

Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.,* C.A. No. 01-309 JJF, 2002 WL 500920 at *2 (D.Del. March 26, 2002).

Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Trilegiant's decision to file the instant action in Delaware. Trilegiant is a Delaware corporation. As the Court observed in *Stratos,* a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that

forum. 2002 WL 500920 at *2. Therefore, to prevail on its Motion, Maritz must demonstrate that the *Jumara* factors strongly favor a transfer to Missouri.

B. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and Maritz has its principal place of business in Missouri, I conclude that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a transfer to Missouri.

First, I conclude that the convenience of the parties does not favor venue in Missouri over Delaware. Neither party would be unduly burdened by litigating this action in Delaware. *See Pennwalt Corp. v. Purex Inds., Inc.,* 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). Maritz's annual sales approximate $1.4 billion (D.I. 16 App. D) and Trilgiant chose to litigate in Delaware. Therefore, I conclude that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt,* 659 F.Supp. at 290.

Next, although Maritz contends that the books and records necessary to litigate this action are in Missouri, Maritz does not contend that they could not be produced or would be unavailable in Delaware. Therefore, I do not consider the location of the books and records as weighing in favor of a transfer to Missouri. *See Jumara,* 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum").

*3 Further, party witnesses or witnesses who are employed by Maritz or Trilegiant carry no weight in the "balance of convenience" analysis since each party is able to procure the attendance of its own employees. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 203 (D.Del.1998). With respect to Mr. Storey, the inventor of the patents-in-suit and a non-party witness, Maritz does not contend that he would be unavailable for trial in Delaware, and Maritz has provided the Court with no evidence that Mr. Storey, would be unwilling to testify on its behalf. Accordingly, I give little weight to Mr.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 441077, *3 (D.Del.))

Storey's status as a non-party witness and residence outside of Delaware.

Finally, although I appreciate the additional expense that Maritz may incur as a result of litigating in Delaware, I find that this hardship is substantially outweighed by the private interest considerations.

**C. Whether The Public Interests Strongly Favor Transfer**

I also conclude that the public interests do not weigh strongly in favor of a transfer to Missouri. Maritz did not argue that the congestion of the Delaware courts strongly favors a transfer. Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos,* rights relating to patents are not local or state matters. *Stratos,* 2002 WL 500920 at *2. Therefore, patent rights do not alone give rise to a local controversy or implicate local interests. *Id.* Accordingly, I conclude that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

In addition, I find that the *Jumara* factor that requires examining the difficulty in enforcing a judgment, were Trilegiant to prevail in the Delaware litigation, does not weigh in favor or against a transfer because there has been no dispute in either state over in personam jurisdiction.

**CONCLUSION**

Based upon Trilegiant's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to Missouri, I conclude that the *Jumara* factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, I will deny Maritz's Motion.

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 15th day of February 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that the Motion To Transfer (D.I.13) filed by Defendant is *DENIED*.

Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 2006 WL 1435848T2 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's Motion to Amend Complaint and Dismiss Defendant's Counterclaims (Apr. 5, 2006)Original Image of this Document (PDF)

. 2006 WL 1204459T2 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's First Motion to Compel Production of Documents (Mar. 17, 2006)Original Image of this Document with Appendix (PDF)

. 2006 WL 1182436T2 (Trial Motion, Memorandum and Affidavit) Maritz' Combined Reply in Support of Motion to Dismiss and Response to Plaintiff's Motion to Join Assignee as Co-Plaintiff (Mar. 3, 2006)Original Image of this Document with Appendix (PDF)

. 2006 WL 809100T2 (Trial Motion, Memorandum and Affidavit) Plaintiff's Second Motion to Compel Production of Documents (Feb. 21, 2006)Original Image of this Document (PDF)

. 2005 WL 2867933T2 (Trial Motion, Memorandum and Affidavit) Reply to Amended Counterclaim (Sep. 29, 2005)Original Image of this Document (PDF)

. 2005 WL 3987288T2 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's Second Motion to Compel Production of Documents (Mar. 17, 2005)Original Image of this Document with Appendix (PDF)

. 1:04cv00360 (Docket) (Jun. 8, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT M





# Compliance Recording:
## Reinvented

It's your goal. It's our philosophy. **Improve everything.**

WITNESS SYSTEMS

# APPLY A PROACTIVE APPROACH TO COMPLIANCE RECORDING

Today's business climate of government and industry regulations, liability issues, and risk management practices has prompted many organizations to proactively record and archive the interactions between their customers/callers and their staff. But capturing contacts is only one part of the compliance challenge. Maintaining, storing, and retrieving the information — for verification, data mining, and business intelligence — is equally important.

Witness Systems has the solution. We offer **Impact 360™ Compliance Recording**, a proven, reliable system for capturing, indexing, and retrieving customer/caller interactions in traditional, IP, and mixed telephony environments. With Impact 360, you can capture 100 percent of interactions and then easily search and replay them, regardless of where they were recorded in your enterprise. What's more, you can share these interactions throughout your business, providing insight into customer and staff behaviors to help drive decision making.

## NOW YOU CAN:

- Implement a flexible solution for full-time compliance and sales verification recording — with the convenience and lower total cost of ownership of non-proprietary, open standards hardware.
- Capture 100 percent of customer/caller interactions in traditional, IP, and mixed telephony environments.
- Protect enterprise investments with the ability to migrate your recorder infrastructure from traditional TDM to IP.
- Ensure calls are being captured through multiple recording triggers, such as D-Channel, VOX, and CTI.
- Record contacts in their entirety, automatically, or on demand.
- Establish and quickly change contact recording parameters to reflect the evolving needs of your business.
- Tag interactions with valuable data for quick identification and reference.
- Identify trends and patterns within your recorded contacts to drive change.
- Use business rules to group calls to archive for different periods of time.
- Manage and configure recorders easily through a centralized Web interface.

### IMPACT 360 COMPLIANCE RECORDING PROVIDES A WIDE RANGE OF FUNCTIONALITY:
• Centralized Archiving • Contact Tagging • Contact Visualization
• Speech Analytics • VoIP and TDM Voice Recording/Search and Replay

# USE CAPTURED DATA TO IMPROVE YOUR OPERATIONS

Impact 360 Compliance Recording scales from a single seat to a distributed, multi-site enterprise system and regardless of system size, provides a centralized view into all contacts as well as a single point of administration. Because the recording platform supports multiple sites centrally, you avoid the complexity, expense, and administrative challenges of maintaining multiple systems.



Impact 360 Compliance Recording enables you to search, retrieve, and replay captured contacts from anywhere within your enterprise.

Impact 360 Compliance Recording functionality includes:

**Voice Recording** – Impact 360 Compliance Recording runs on commercially available, non-proprietary components which lower your cost of ownership by requiring less hardware than competitive offerings. It also allows you to source and support the components yourself, instead of relying on single-source, proprietary systems providers.

Impact 360 Compliance Recording provides sophisticated, real-time control over recording and call indexing through computer telephony integration (CTI). In the event CTI is not available to control call recording, the solution also supports VOX and D-channel recording, ensuring that your calls are reliably captured and stored. Impact 360 can be configured to run in either of these modes or as a fall-back to CTI, based on your business requirements.

The Impact 360 Compliance Recording solution captures 100 percent of customer/caller interactions across traditional, IP, or mixed TDM/IP telephony environments. This means it fits easily into your current organizational infrastructure, offering you a higher return on investment.

**IP Telephony Environments** – Impact 360 in an IP telephony environment operates on and leverages the same common architecture as the enterprise recording solution for traditional telephony. If your company has not yet migrated to IP-based solutions, the open systems architecture enables you to use today's TDM hardware investment to support your IP recording in the future. As you evolve your telephony infrastructure, Impact 360 Compliance Recording is equipped to support both TDM and IP recording through the seamless coexistence of both. This system flexibility simplifies your transition from traditional TDM recording to IP-based recording.

In IP telephony environments, Impact 360 Compliance Recording brings the benefits of contact recording, review, and analysis to potentially everyone who uses a telephone at their place of work. You can capture all interactions automatically from any extension. And with integration to IP phones, Impact 360 provides a recording user interface directly on the phone display, so you can simply press a button at any point during the call to capture and retain the contact from start to finish.

**Interaction Tagging, Search, and Replay** – Impact 360 Compliance Recording enables you to assign attributes, or "tags," to captured contacts for quick identification and retrieval. For example, you can add business information, such as account names, numbers, and product IDs. With this business information, authorized users across the enterprise can quickly and easily retrieve recorded interactions when they need them.

Impact 360 Compliance Recording gives you quick, easy access to captured contacts via the browser-based search and replay interface. It also gives you the option to replay over a telephone handset or multimedia desktop PC. If your PC is networked, different users on the network can share the replay drive, providing a convenient, economical way to review and share contacts throughout your business.

**Data Storage and Retrieval** – Voice recordings and call detail records are stored together in a single, unified database. A true RAID-5 disk storage option provides high-capacity, high-speed storage with instant access and an exceptionally high level of resilience. Dual power supplies and a hot-swappable hard disk minimize system downtime, while preventing a loss of recording in the event of disk failure.

If government regulations require that you store your interactions for a longer period of time — 6 months, 2 years, or 7 years for example — the browser-based central archive manager will ensure you meet those requirements. You'll gain quick, easy access to those vital calls that have been moved to long-term storage based on criteria you've established. This provides additional reassurance that the most important calls are stored and protected in the event of liability exposure.

**Contact Visualization** – Impact 360 depicts volumes of captured interactions graphically, allowing you to quickly identify patterns and trends within your recorded contacts. A color-coding classification tags every contact, enabling you to search through, pinpoint, retrieve, and view contacts easily.

**Speech Analytics** – Impact 360 leverages leading-edge speech analytics, data-mining, and trend-mining capabilities for analyzing your customer interaction content. With these robust capabilities, you can extract key information from recorded calls by analyzing interactions for specific words and phrases, storing relevant details for in-depth analysis, and flagging interesting or unusual contacts for further assessment. Your management can gain much-needed insight from detailed analysis on opportunity and improvement areas, emerging trends and patterns, and the root causes that drive call volume.

Impact 360 Compliance Recording is part of the Impact 360 workforce optimization solution from Witness Systems. Only Impact 360 brings together workforce management, quality monitoring/full-time recording, e-learning, and performance management under a flexible, scalable framework that provides a single user interface and centralized administration. By unifying these components under one architecture, Impact 360 maximizes the information flow within your enterprise, while minimizing the complexity of system administration.

# RECEIVE GUIDANCE FROM WORLD-CLASS CONSULTANTS



W TNESS SERVICES NETWORK

Witness Systems offers business consulting services that can help you get the most from your investment. These services are delivered by our seasoned consultants, who have years of experience with organizations of all sizes, types, and industries from around the globe. Our goal is to partner with you to provide world-class services that offer measurable results and a rapid return on investment. From implementation to consulting to technical support and training services, you can be confident that Witness Systems services are delivered by professionals who understand business practices and operations — and care about your success.



| Corporate & Americas Headquarters | Americas West Coast Office | European Headquarters | Asia Pacific Headquarters |
|---|---|---|---|
| 300 Colonial Center Parkway | 3979 Freedom Circle | Kings Court, Kingston Road | Room 1809-1818, 18/F |
| Roswell, GA 30076 | Suite 500 | Leatherhead | Shui On Centre |
| USA | Santa Clara, CA 95054 | Surrey KT22 7SL | 6-8 Harbour Road |
| | USA | United Kingdom | Wan Chai, Hong Kong |
| Tel: + 1 770-754-1900 | Tel: + 1 408-830-5400 | Tel: +44 (0) 1372 869 000 | Tel: +852 3198 6000 |
| 1-888-3-WITNESS | | Fax: +44 (0) 1372 869 005 | Fax: +852 3198 6100 |
| 1-877-257-6756 | | | |
| Fax: + 1 770-754-1873 | Fax: + 1 408-830-5411 | | |



W TNESS SYSTEMS

Witness Systems also has offices in the following countries. Addresses, phone and fax numbers are listed on **www.witness.com**.

Australia    Brazil    Canada    Germany    India    Japan    Mexico    The Netherlands    Vietnam

© 2006 Witness Systems, Inc. All rights reserved, worldwide. All materials (regardless of form, and including, without limitation, software applications, documentation, and any other information relating to Witness Systems, its products or services) are the exclusive property of Witness Systems, Inc. One or more of the Witness Systems, Inc. products described in these materials may be covered by U.S., European or other international patents or pending patents. All materials found herein are provided "AS IS" and without warranty of any kind. Witness Systems, the Witness logo, Impact 360, the Impact 360 logo, and Improve Everything are each trademarks (registered or otherwise) of Witness Systems, Inc. Other brand and product names may be registered trademarks or trademarks of their respective holders.                                                                 1500 CRS 1/06

# AVAYA



IP Telephony
Contact Centers
Mobility
Services

OVERVIEW

# Impact 360™ Compliance Package from Witness Systems – Powered by Avaya

## The Promise of Call Recording in IP and Mixed Telephony Environments



Now enormous amounts of valuable customer information can easily be captured and accessed by the right people in your organization, helping you to improve the service you offer to your customers while improving operational efficiency and business effectiveness

## The Problem

Today's businesses collect and manage vast amounts of information from customers, including suppliers or other third parties, at every touch point. Many of these interactions occur through the contact center or in a pure business environment. These interactions include enormous amounts of valuable information and insight that, if made easily available to the right people in your business, may dramatically improve the service that you offer to your customers.

The convergence of voice and data infrastructure is changing the landscape of today's telecommunications infrastructure, including how calls are recorded. Voice over Internet Protocol (VoIP) is enabling smaller businesses to access application functionality previously afforded only by large organizations – resulting in improved operational efficiency and improved business effectiveness.

## The Solution

Analyzing communications is more important than ever as you seek to make more insightful decisions and gain a competitive advantage through a better understanding of your customers and your interactions with them. As part of the robust Avaya Operational Effectiveness portfolio in the Customer Interaction Suite, Avaya offers the **Compliance Package** (formerly called Witness ContactStore for Communication Manager) to bring the benefits of contact recording and analysis to potentially everyone who uses a telephone at their place of work. It allows you to acquire more value from telephone contacts by immediately recording, and storing calls. The right people throughout your company can then review and act upon this pool of captured customer intelligence to help serve customers more thoroughly.

As a next generation recording solution for converged environments, the Compliance Package is jointly-developed by

avaya.com

Avaya and Witness Systems and leverages the power of Avaya Communication Manager via the Avaya development interface – Communication Manager API (CMAPI). The result is an open and flexible call recording application with standard and advanced features for contact centers and businesses.

The Compliance Package's software-based recording solution can cost-effectively scale across a broad range of requirements, from minimal/occasional recording to meet the needs of a small group of executives or smaller businesses, up to meet the demanding full-time requirements of single site and multi-site contact centers. In today's complex, distributed organizations your customer contacts may be spread across multiple sites or you may need additional functionality like tagging customer data, storing recordings on network storage devices, or doing more sophisticated search and replay.

The Compliance Package seamlessly integrates call-recording activities regardless of where and when the customer contact occurred and whether the environment is single or multi-site and provides the functionality and customization potential for more sophisticated recording environments.

The Compliance Package opens up new opportunities for improving business performance. For example, you can replay calls to quickly resolve disputes or unclear instructions. Or your logistics organization can improve the productivity and accuracy of service delivery by reviewing important customer instructions passed on from the sales team. Or the sales team can follow up on an opportunity highlighted from the service desk. In addition, you can use the Compliance Package to help your staff become more effective by recording the perfect sales call for training or other development purposes.

## Robust Functionality

With the Compliance Package, you can capture customer interactions automatically, or you can simply press a button or key sequence on the phone to record selected calls. With rich integration to Avaya Communication Manager, the Compliance Package makes recording easy because it can be used to record calls either on IP or traditional phones (using the same recording system). The captured phone conversations can then be searched and retrieved using a variety of selection criteria, and this information can help you to ensure that you maximize sales in the future by identifying, for instance, up sell opportunities.

Authorized users across the enterprise can use the intuitive browser-based application to retrieve and replay particular calls using powerful search criteria. You can graphically "see" into the call and rapidly identify points of interest to review, such as a prolonged silence, or higher volume or raised voice portions of conversations, in which the system points to opportunities to improve call handling or productivity.

## Six recording modes are available in the Compliance Package:

### Station Bulk Recording
Calls to and from a station are recorded automatically from start to finish.

### Conference Recording
As an alternative to station bulk recording, conference recording uses the Single Step Conferencing (SSC) feature of Avaya Communication Manager along with AEServices or Avaya CT for targeted recording of specific customer interactions, and records those interactions from start to finish.

### Station Executive Recording
A user can decide to record a call at any point in the call, press a few buttons on the phone and have the entire call kept for them.



COMMUNICATIONS
AT THE HEART OF BUSINESS

**On Demand Recording**

Anyone using Avaya Communication Manager can decide to begin recording a call from a certain point in the call, e.g. by pressing the AUDIX record button or a button configured to dial a pool of recording extensions.

**Meeting Recording**

Any phone using Avaya Communication Manager can be used to record a meeting e.g. in a conference room and the recording can be 'assigned' to specific users for access later.

**Event Driven**

Records calls based on external triggers.

## Additional Capabilities

Optional capabilities include:

*   **Centralized Archiving** provides a local or enterprise-wide solution that enables the Compliance Package recordings to be archived efficiently and securely on external industry standard storage devices such as Storage Area Networks (SAN) and Network Attached Storage (NAS). This ensures that users can leverage and maximize their return on investment in existing storage systems. Centralized Archiving is rules-driven to give the flexibility in what, when, where, and for how long contacts are archived.

*   **Playing back calls through the Handset** gives users who normally wear a headset or do not have a soundcard in their PC an alternative mode to listen to a replayed call. This feature automatically dials a pre-defined telephone extension associated with the person reviewing the call or alternatively the listener can elect to dial into a number designated by the system.

## The Results

From fast and efficient sharing of recorded interactions, customers benefit from prompt, accurate service, which helps boost customer satisfaction and revenue generation; employees across the organization can improve their productivity based on access to "front-line" information; and your competitive edge is enhanced by optimizing your interactions with customers and suppliers.



With the Compliance Package, Avaya delivers the levels of sophistication and robustness that have long been accepted as standard in telephony recording to the new world of converged voice and data networks.

## Unmatched Benefits

*   Software-based IP call recording solution that records both IP and traditional end-points in a pure or mixed environment

*   Integration with the Avaya Communication Manager via the Avaya development interface – Communication Manager API

*   Cost effective, scalable Web-based solution

*   Single view of all customer contacts across an enterprise

*   Simplifies Moves, Adds, and Changes by performing them through software configuration versus cabling changes to maximize flexibility and minimize costs

*   Runs on standard PC servers and operating systems

*   External CTI servers are not required but can optionally use CTI for enhanced recording control and tagging



## Avaya Professional Services and Learning More

Impact 360™ solutions take full advantage of Avaya's recognized strength in voice heritage, application development, global services and leadership position in the industry. Avaya Global Services provides a suite of services designed to give you maximum flexibility in choosing the services needed to best support the unique needs of your contact center and your business.

Find your solution. To learn more about the Avaya Customer Interaction Suite and Impact 360™ solutions, visit http://www.avaya.com, or contact your Avaya Client Executive or Avaya Authorized BusinessPartner today or call 866.GO.AVAYA.

### About Avaya

Avaya enables businesses to achieve superior results by designing, building and managing their communications infrastructure and solutions. For over one million businesses worldwide, including more than 90 percent of the FORTUNE 500®, Avaya's embedded solutions help businesses enhance value, improve productivity and create competitive advantage by allowing people to be more productive and create more intelligent processes that satisfy customers,

For businesses large and small, Avaya is a world leader in secure, reliable IP telephony systems, communications applications and full life-cycle services. Driving the convergence of embedded voice and data communications with business applications, Avaya is distinguished by its combination of comprehensive, world-class products and services. Avaya helps customers across the globe leverage existing and new networks to achieve superior business results.



© 2006 Avaya Inc.
All Rights Reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ®, SM or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc., with the exception of FORTUNE 500 which is a registered trademark of Time Inc. Witness and Impact 360 are each trademarks (registered or otherwise) of Witness Systems, Inc. All other trademarks are the property of their respective owners.
01/06 • GCC3039

# EXHIBIT N



**IP Office Fact Sheet**



# IP Office ContactStore™

## Call Recording Search and Replay

## Overview

Many businesses record interactions with customers, suppliers and other third parties. These interactions include enormous amounts of valuable information and insight that, if made easily available to the right people in your business, can help you improve the service you offer to your customers while improving operational efficiency and business effectiveness. IP Office ContactStore, available through VoiceMail Pro Call Recording, provides the ability to search and replay your valuable recorded interactions.

## Capabilities

**Search**—Authorized users can use this browser-based application to retrieve calls based on search filters including start date/time, duration of call, name of the party calling, and the target or dialed number.

**Replay**—To replay recordings, simply click on the buttons next to the calls listed on your PC screen and listen through your PC soundcard. You can graphically "see" into the call using the Energy Envelope feature and rapidly identify points of interest to review, such as a prolonged silence, or raised voice portions of conversations, in which the application points to opportunities to improve call handling or productivity.

**Export**—With IP Office ContactStore and the proper security, you can quickly export recordings to non-system users. The system saves recorded calls as industry standard .wav files that can be distributed to anyone who can replay the file on a workstation with a Web browser and a media player. For example, a call from one of your top sales executives that illustrates the perfect up-selling call can be sent to the rest of your sales team for training purposes.

## Benefits

- Reduce operational coast
- Increase revenue
- Improve customer service and satisfaction
- Reduce risk
- Make more informed decisions
- Better understand customers and employees
- Improve employee training and coaching

**Avaya Advantage**

**Try + Buy License**
A limited-time license of IP Office ContactStore is included with every shipment of VoiceMail Pro R3.0. For 45 days you can search and replay recorded calls from your browser-based workstation and gain more value from your recorded interactions.

IP Telephony    Contact Centers    Unified Communication    Services

# ContactStore™ Options

## IP Office ContactStore — Call Recording Search and Replay

| | |
|---|---|
| **Format** | • Licensed module of VoiceMail Pro |
| | • Software-only design; no proprietary hardware is required |
| **System Requirements** | • Any IP Office system running the VoiceMail Pro application |
| | • VoiceMail Pro requires an Ethernet attached PC running Microsoft Windows 2000/2003/XP Professional with Pentium 4, 2.8GHz or higher with 256 MB of RAM minimum |
| | • When ContactStore is used on the same server as VoiceMail Pro, an additional 256MB of memory should be added to the above specifications |
| | • When operating on its own server, ContactStore requirements are a Pentium 4, 2.8GHz or higher with 256 MB of RAM minimum |
| | • A minimum of 20GB disk space is recommended to allow for at least 10GB of recordings (1000+ hours of audio) to be held online |
| **User Requirements** | • Any telephone |
| | • Internet Explorer v5.0 and higher |
| **Capacities** | • Unlimited with proper storage and/or automatic disk space management—oldest recordings automatically deleted as needed |
| **Feature Detail** | • Search and replay recorded calls via a PC and PC soundcard |
| | • Visually "see" and listen to calls using the Energy Envelope |
| | • Search Filters to find calls include: start date/time, duration of call, name of the party (through ANI, CLI, DNIS) at the time of the call, or the target or dialed number (DID) |
| | • Intuitive, browser-based GUI for users and administrators |
| | • Export recorded calls via email in .wav format to non-system users |
| | • Call compression at a ratio of 4:1 (using G.726 16kpbs ADPCM compression standard) for efficient storage |
| | • Optional archive management—recordings can be automatically written to a DVD+RW drive |

© 2004 Avaya Inc.
All Rights Reserved. Avaya and the Avaya logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions.
All trademarks identified by ®, SM and TM are registered trademarks, service marks or trademarks respectively.
All other trademarks are properties of their respective owners.
Printed in the U.S.A. 10/04 • EF-BI'2576 Correct at time of publishing.

# EXHIBIT O

# Enterprise Manager

# Installation and Configuration Guide



WITNESS SYSTEMS

© 2004 Witness Systems, Inc. All rights reserved.
www.witness.com

© 2004 Witness Systems, Inc. All rights reserved.

The information contained in this document is the exclusive property of Witness Systems, Inc. This work is protected under United States copyright law and the copyright laws of given countries of origin and international laws, treaties and/or conventions. No part of this document may be reproduced or transmitted in any means, electronic or mechanical including photocopying or by any information storage or retrieval system, unless as expressly permitted in writing by Witness Systems, Inc.

This edition is considered current and effective until otherwise indicated by new document revisions. Witness Systems has the right to modify all or part of this document without notice.

eQuality® is a registered product name of Witness Systems, Inc. Other brand and product names may be registered trademarks or trademarks of their respective holders.

# Table of Contents

**Chapter 1**

Welcome to the Enterprise Manager........................................1-1
Introduction................................................................................1-1
About This Guide........................................................................1-2
  Audience...................................................................................1-2
  What This Guide Covers .........................................................1-2
  Printing This Guide .................................................................1-2
Chapter Overview.......................................................................1-3
Other Resources.........................................................................1-5
  Product Documentation Resources.......................................1-5
  Troubleshooting .....................................................................1-5
  We Want Your Feedback.........................................................1-5

**Chapter 2**

System Overview ......................................................................2-1
Introduction................................................................................2-1
System Components ...................................................................2-2
  Site Manager............................................................................2-2
  Network Manager....................................................................2-2
  User Interface Component......................................................2-2
  Component Relationships.......................................................2-3
  Important Notes.......................................................................2-3
System Requirements................................................................2-5
  Minimum Requirements .........................................................2-5
  Installation Prerequisites.......................................................2-5

**Chapter 3**

Installing the Network Manager ...........................................3-1
Introduction................................................................................3-1
Installing the Network Manager...............................................3-2
  What you need to know before installing ..............................3-2
  How to install the Network Manager ......................................3-2
    Launching the Installation...................................................3-2
    Running the Enterprise Manager Installation Wizard..........3-2

**Chapter 4**

Installing the User Interface Component.............................4-1
Introduction................................................................................4-1
Installing the User Interface Component...................................4-2
  What you need to know before installing ..............................4-2
  How to install the User Interface Component..........................4-2
    Launching the Installation...................................................4-2
    Running the Enterprise Manager Installation Wizard..........4-3



WITNESS SYSTEMS

© 2004 Witness Systems, Inc. All rights reserved.

**Chapter 5**    **Installing the Site Manager** .................................................... **5-1**
Introduction ................................................................. 5-1
Installing the Site Manager ........................................... 5-2
  What you need to know before installing .................. 5-2
  How to install the Site Manager ................................ 5-2
    Launching the Installation.................................... 5-2
    Running the Enterprise Manager Installation Wizard.......... 5-3

**Chapter 6**    **Installing All Enterprise Manager Components** .................. **6-1**
Introduction ................................................................. 6-1
Installing the Enterprise Manager ................................ 6-2
  What you need to know before installing .................. 6-2
  How to install the Enterprise Manager ..................... 6-2
    Launching the Installation.................................... 6-2
    Running the Enterprise Manager Installation Wizard.......... 6-3

**Chapter 7**    **Configuring the Enterprise Manager** ..................................... **7-1**
Introduction ................................................................. 7-1
Configuring the Enterprise Manager............................ 7-2
  What you need to know before configuring ............. 7-2
  How to configure the Enterprise Manager ............... 7-2
    Adding Sites......................................................... 7-2
    Adding Users........................................................ 7-3

**Chapter 8**    **Verification and Troubleshooting** ......................................... **8-1**
Introduction ................................................................. 8-1
Verification .................................................................. 8-2
  Verifying the Local Site Manager ............................. 8-2
  Verifying Local Site Locations.................................. 8-2
  Verifying Viewer User Name and Password ............. 8-2
  Verifying the Enterprise Manager Client Keystore Reference... 8-3
Troubleshooting Questions and Answers ...................... 8-4
  Should I clear the Application Server cache?............ 8-4
  Why am I being prompted for my ID and password? ............... 8-4
  Where do I find CSV/XML formatting information? ............... 8-4

**Glossary**    ................................................................................. **G-1**

© 2004 Witness Systems, Inc. All rights reserved.

# Other Resources

The Enterprise Manager is used in conjunction with other Witness Systems products. You may find the documents in the following table useful in the complete management of your enterprise.

**Product Documentation Resources**

| Document No. | Document Title |
|---|---|
| JI005830A002 | Viewer Installation Guide v.7.2 |
| JS005739J002 | ContactStore IP Installation Guide v.7.2.1 |
| JI005739J002 | ContactStore IP System Administration Guide v.7.2.1 |

**Table 1-1:** Related Documents for the Enterprise Manager

Witness Systems offers a variety of additional information resources for our customers, including:

- Online Help
- http://www.witness.com
- Customer Interaction Center 1-800-4WITNESS
- support@witness.com

**Troubleshooting**

Contact **1-800-4WITNESS** to get access to troubleshooting information and frequently asked questions (FAQ) via the witness.com web site. Troubleshooting information is continually updated and can provide quick answers to issues you may encounter.

**We Want Your Feedback**

The best resource for information that will continually improve this guide is you. We want to know how this guide works for you. We want to hear your suggestions for making it your best resource for administrative concepts, definitions, and procedures. Please email your comments to userguides@witness.com.

© 2004 Witness Systems, Inc. All rights reserved.

| | |
|---|---|
| **Extension** | A Phone Extension, e.g., for an agent.<br>When you configure your eQuality server infrastructure with System Administration tools, you will add ranges of extensions to the system and designate them as Assigned, Ignored, or Blocked. |
| **Feedback** | Send email to userguides@witness.com with your comments on this and all product documentation. We want to hear your suggestions for improving this guide. |
| **Follow-the-call** | eQuality can record a complete customer interaction because the telephone call, for example, continues being monitored and recorded as it is transferred from agent to agent to supervisor, etc. This is called Follow-the-call technology. |
| **Form Generation** | Form Generation is the component of the eQuality Evaluations application you use to create forms and customize them to the specific needs of your customer interaction center. You can determine the scope of each form, as well as the look, layout, and content. |
| **Free-seating Environment** | eQuality is flexible enough to follow agents throughout a customer interaction center (CIC), provided the agent logs into the system from any workspace with the appropriate Login ID and Password. Thus, agents can work from varying locations and still be identified with their eQuality Login ID. |
| **Group** | In eQuality, a group is a collection of people who have been set up as Users in the User List (or Hierarchy). A group can represent all the users of a department, or users from different places in the organization. Groups are set up in the eQuality Interactions application.<br><br>See *Members, Shared Members,* and *Group Administrator.* |
| **Group Administrator** | Users with this role can view the group and modify its properties. |
| **Group Evaluation Performance Report** | Accessible from the eQuality Reporting application.<br>Allows you to analyze the performance of agents under a certain supervisor or in a given Group as a whole. The performance Evaluation is based on supervisor or Group totals collected from questions, section total or form totals on a given Evaluation form.<br><br>See the *eQuality Evaluating & Reporting Guide* for more information. |
| **Hunt group** | See Pilot Group. |

© 2004 Witness Systems, Inc. All rights reserved.

# EXHIBIT P



# AVAYA

# Witness Quality for Communication Manager

### Reduced Costs Through Performance Improvement

**Witness Quality provides business-driven recording capabilities, which allow companies to record essential customer interactions based on user-defined business rules such as DNIS, ANI and/or Hunt Group.**

**Use Witness Quality to record and evaluate the interactions critical to your operating performance.**

How do you help your contact center associates improve their performance and consistently maximize results? You can get these results by providing superior service, recording, evaluating, and analyzing customer interactions to help ensure quality performance. Help your agents to provide unmatched service — one customer interaction at a time — with the Witness Quality solution from Avaya.

As part of the robust Avaya Operational Effectiveness portfolio in the Customer Interaction Suite, Avaya offers Witness Quality for Communication Manager to enable businesses to realize the benefits of quality monitoring throughout your enterprise. With Witness Quality, you can accurately gauge your contact center's performance, identify trends and opportunities, and streamline processes where needed. In other words, you can enhance the quality of the service you deliver to your customers through continuous performance improvement.

Witness Quality records your associates' voice interactions with your customers, as well as their corresponding computer desktop activities, such as data entry, screen navigation and data retrieval. By capturing both voice and desktop activity and synchronizing them during replay, you can achieve thorough and objective customer interaction recording.

### Robust, "intelligent" monitoring

"Intelligent" recording lets you trigger your recordings through rich CTI integration to your automatic call distributor (ACD) or predictive dialer.



You can customize the events that initiate recording by integrating with third party applications. Our leading-edge CTI capabilities facilitate random monitoring and monitoring in free-seating environments. It all adds up to "intelligent" monitoring for your call center:

- Random agent and event monitoring lets you automatically monitor a percentage, or sample size, of contacts and record them for future playback.

- Agent data linking supports recording in free seating environments by monitoring agents regardless of where they are sitting.

- Selective call recording based on business needs, campaigns, products, high-value customers and more

Witness Quality for Communication Manager

*powered by* 

IP Telephony     Contact Centers     Unified Communication     Services



You define the type of calls the system records as calls come through the ACD or predictive dialer. The result? No missed or partially recorded calls. No need to track agent schedules in minute detail. And newfound gains in productivity!

## After-call monitoring boosts productivity

Witness Quality can continue to monitor your agent's screen actions after the customer hangs up, giving supervisors valuable insight into agent productivity. After-call work recording leverages the strong data capture component of the Witness Quality solution. By identifying all areas of the call in which agents need help, including wrap-up, your contact centers can significantly enhance their efficiency.

The system lets your agents trigger recordings on-demand and in real-time. In situations such as a serious complaint, or customer feedback about a new product or service, agent-initiated monitoring is as simple as clicking a button (a helpful self-development tool for your agents). If your organization prefers you can even allow your agents to disable monitoring for a particular call (a useful feature when a customer requests it for legal purposes). Plus, you can trigger recordings using external applications by configuring the system to begin recording when an agent fills in a specific field within your desktop application.

Contact centers today are being asked to provide feedback to other areas of the business, such as marketing. With Witness Quality, you can send a captured call, including evaluation results, via e-mail to another person who does not have the Witness Quality application.

## Patented data capture technique

Data recording is crucial because in addition to understanding how well your workers are verbally interacting with your customers, you want to know how well they're using your contact center or productivity tools, responding to e-mail inquiries, or "chatting" with customers on the Web. By capturing screen activity you can train associates to navigate screens more efficiently and provide superb customer interactions regardless of medium.

Witness Quality features a patented data capture technique that saves only changed areas of the screen to minimize your network utilization, as opposed to other capture methods that tax network resources and may slow down other production applications.



## Meet your needs with selective recording capabilities:

Witness Quality offers a powerful selective mode that provides business-driven recording capabilities that enable you to capture and evaluate those interactions that drive your business. For example, your company may choose to record all of your collection interactions, 75% of customer escalations, but only 5% of service contacts for training purposes.

Your contact center responds to thousands of customer requests — some you need to record and store for later use in compliance or sales verification situations — others you may want to use to evaluate the quality and effectiveness of your organization. Witness Quality works in conjunction with Witness ContactStore in full-time recording mode to capture and store those sales verification or compliance calls as well as those calls that will be used for training or business process optimization purposes.

## Professional Services

The Avaya Professional Services implementation offer for both Witness Quality and Witness ContactStore for Communication Manager provides customers with complete and accurate installation, configuration and deployment of the entire solution in the customer's production environment. When paired with a Network Readiness Assessment from Avaya Network Consulting, you will know that your network is prepared to support the technology you choose to support your contact center.

## Learn More

To learn more, talk to an Avaya Client Executive or Authorized BusinessPartner. Also, visit www.avaya.com/contactcenter. For more information about Avaya and other award-winning solutions, visit avaya.com.

### Witness Quality customer interaction recording capabilities:

- Trigger recordings based on your user-defined business rules for business process optimization
- Evaluate and analyze performance using a customizable evaluation form
- Record randomly for quality sampling
- Record interactions leveraging Avaya contact center tools such as Avaya Communication Manager software, Avaya Computer Telephony, Avaya Predictive Dialer (PDS), or third party desktop applications
- Allow workers to initiate real-time recording

- Organize recorded interactions according to user-defined categories
- Share recordings throughout the enterprise for a comprehensive view of customer interactions
- Agent initiated monitoring enables the agent to begin recording at the click of a mouse
- Live monitoring enables a supervisor or manager to monitor an interaction in real-time with both voice and agent screen activity

a higher plane
of communication

**About Avaya**

Avaya enables businesses to achieve superior results by designing, building and managing their communications networks. Over one million businesses worldwide, including more than 90 percent of the FORTUNE 500®, rely on Avaya solutions and services to enhance value, improve productivity and gain competitive advantage.

Focused on enterprises large to small, Avaya is a world leader in secure and reliable IP telephony systems, communications software applications and full life-cycle services. Driving the convergence of voice and data communications with business applications – and distinguished by comprehensive worldwide services – Avaya helps customers leverage existing and new networks to unlock value and enhance business performance.

reach

# AVAYA

a higher plane
of communication

| IP Telephony | Contact Centers | Unified Communication | Services |

© 2004 Avaya Inc.
All Rights Reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. or Avaya ECS Ltd., a wholly owned subsidiary of Avaya Inc. and may be registered in the U.S. and other jurisdictions. All trademarks identified by ® and ™ are registered trademarks or trademarks, respectively, of Avaya Inc. All other registered trademarks or trademarks are property of their respective owners.
Printed in the U.S.A.
05/04 • EF-LB2420

avaya.com

# EXHIBIT Q



IP Telephony
Contact Centers
Mobility
Services

OVERVIEW

# Impact 360™ Quality Monitoring Package from Witness Systems Powered by Avaya



## Reduce Costs through Performance Improvement

How do you help your contact center associates improve their performance and consistently maximize results? In order to provide superior service, recording, evaluating, analyzing and using customer interactions for best practices training to ensure quality performance is now mission critical. Help your agents to provide unmatched service - one customer interaction at a time – with the Impact 360 Quality Monitoring solution.

As part of the robust Avaya Operational Effectiveness portfolio in the Customer Interaction Suite, Avaya offers the Impact 360™ Quality Monitoring Package to enable businesses to realize the benefits of quality monitoring and e-learning throughout your enterprise. With Quality Monitoring you can accurately gauge your contact center's performance, identify trends and opportunities, and streamline processes where needed. In other words, you can enhance the quality of the service you deliver to your customers through continuous performance improvement. The "out of box" integration with Avaya Communication Manager provides a software-based solution that allows customers to make their own hardware decisions and leverage their existing IT infrastructure, making it easier to install and maintain and reducing your total cost of ownership.

The Quality Monitoring Package records your associates' voice interactions with your customers, as well as their

corresponding computer desktop activities, such as data entry, screen navigation and data retrieval. By capturing both voice and desktop activity and synchronizing them



*The Impact 360™ Quality Monitoring Package provides business-driven recording capa-bilities, which allow companies to record essential customer interac-tions based on user-defined busi-ness rules such as DNIS, ANI and/or Hunt Group.*

*Use quality moni-toring to record and evaluate the interactions critical to your operating performance.*

during replay, you can achieve thorough and objective customer interaction recording.

### Robust, "intelligent" monitoring

"Intelligent" recording lets you trigger your recordings through rich CTI integration to your automated call distributor (ACD) or predictive dialer. You can customize the events that initiate recording by integrating with third party applications. Our leading-edge CTI capabilities facilitate random monitoring and monitoring in free-seating environments. It all adds up to "intelligent" monitoring for your call center:

- Random agent and event monitoring lets you monitor automatically a percentage, or sample size, of contacts and record them for future playback.

- Agent data linking supports recording in free seating environments by monitoring agents regardless of where they are sitting.

- Selective call recording based on business needs, campaigns, products, high-value customers and more.

You define the type of calls the system records as calls come through the ACD or predictive dialer. The result? No missed or partially recorded calls and newfound gains in productivity.

### Monitoring boosts productivity

The system lets your agents trigger recordings on-demand and in real-time. In situations such as a serious complaint, or customer feedback about a new product or service, agent-initiated monitoring is as simple as



clicking a button (a helpful self-development tool for your agents). If your organization prefers, you can even allow your agents to disable monitoring for a particular call (a useful feature when a customer requests it for legal purposes). Plus, you can trigger recordings using external applications by configuring the system to begin recording when an agent fills in a specific field within your desktop application.

Contact centers today are being asked to provide feedback to other areas of the business, such as marketing. With the Quality Monitoring Package, you can send a captured call, including evaluation results, via e-mail to another person who does not have the same Quality Monitoring application.

### Patented data capture technique

Data recording is crucial because in addition to understanding how well your workers are verbally interacting with your customers, you want to know how well they're using your contact center or productivity tools, responding to e-mail inquiries, or "chatting" with customers on the Web. By capturing screen activity you can train associates to navigate screens more efficiently and provide superb customer interactions regardless of medium.

The Quality Monitoring Package features a patented data capture technique that saves only changed areas of the screen to minimize your network utilization, as opposed to other capture methods that tax network resources and may slow down other production applications.

| The Impact 360™ Quality Monitoring Package provides: |
| --- |
| • Random, scheduled, selective and full time contact recording (utilizing the Witness ContactStore) |
| • Synchronized data capture |
| • Contact management and retrieval |
| • Evaluation forms and reports |
| • Contact editing |

### Meet your needs with customizable recording capabilities: Up to Full Time

Your contact center responds to thousands of customer requests – some you need to record and store for later use in compliance or sales verification situations –

others you may want to use to evaluate the quality and effectiveness of your organization. The Quality Monitoring Package allows you to define the recording conditions that meet your business needs including random, scheduled, selective or full time. The Quality Monitoring Package works in conjunction with Witness ContactStore in full-time recording mode to capture and store those sales verification or compliance calls as well as those calls that will be used for training or business process optimization purposes.

The solution offers a powerful selective mode that provides business-driven recording capabilities that enable you to capture and evaluate those interactions that drive your business. For example, your company may choose to record all of your collection interactions, 75% of customer escalations, but only 5% of service contacts for training purposes.

### Quickly Create e-Learning Clips Based on Real-Life Scenarios and Your Best Practices

Keeping agent skills sharp is an ongoing challenge in any contact center, and many centers just don't have the budget for expensive training courses. But with our contact editing feature, you can use captured customer contacts to create a library of best practices for training of agents. Using these real interactions, you can develop e-learning content specific to your organization. And you don't need to be a programmer or professional training developer. You can create a customized piece



Within a few minutes you can create a customized piece of learning based on recorded calls that are specific to your business. Within a couple of hours, you can create a high quality, interactive learning session that can become part of your e-learning resource kit.

of learning in just a few minutes and a high-quality, interactive learning clip in only a few hours. In fact, creating e-learning clips is so easy that you can readily develop content for products and services, campaigns and programs, or policies with a limited shelf life—something that's just not practical with traditional course development software. What's more, you can distribute the content quickly using email, or via a hyperlink to your Intranet or website. e-learning clips can include assessments to help track and measure agent performance, skill acquisition, and knowledge retention.

### Quality Monitoring Package customer interaction recording capabilities:

- Trigger recordings based on your user-defined business rules for business process optimization
- Evaluate and analyze performance using a customizable evaluation form
- Record randomly for quality sampling or full time for compliance or sales verification (utilizing the Witness ContactStore)
- Record interactions leveraging Avaya contact center tools such as Avaya Communication Manager software, Avaya Computer Telephony, Avaya Predictive Dialer (PDS), or third party desktop applications
- Allow workers to initiate real-time recording at the click of a mouse
- Organize recorded interactions according to user-defined categories
- Share recordings throughout the enterprise for a comprehensive view of customer interactions
- Enable a supervisor or manager to monitor an interaction in real-time showing both voice and agent screen activity
- Produce high quality, interactive e-learning sessions that can become part of your e-learning resource kit

## Avaya Professional Services and Learning More

Impact 360™ solutions take full advantage of Avaya's recognized strength in voice heritage, application development, global services and leadership position in the industry. Avaya Global Services provides a suite of services designed to give you maximum flexibility in choosing the services needed to best support the unique needs of your contact center and your business.

Find your solution. To learn more about the Avaya Customer Interaction Suite and Impact 360™ solutions, visit avaya.com, or contact your Avaya Client Executive or Avaya Authorized BusinessPartner today or call **866.GO.AVAYA**

### About Avaya

Avaya enables businesses to achieve superior results by designing, building and managing their communications infrastructure and solutions. For over one million businesses worldwide, including more than 90 percent of the FORTUNE 500®, Avaya's embedded solutions help businesses enhance value, improve productivity and create competitive advantage by allowing people to be more productive and create more intelligent processes that satisfy customers.

For businesses large and small, Avaya is a world leader in secure, reliable IP telephony systems, communications applications and full life-cycle services. Driving the convergence of embedded voice and data communications with business applications, Avaya is distinguished by its combination of comprehensive, world-class products and services. Avaya helps customers across the globe leverage existing and new networks to achieve superior business results.



© 2006 Avaya Inc.
All Rights Reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ®, SM or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc., with the exception of FORTUNE 500 which is a registered trademark of Time Inc. All other trademarks are the property of their respective owners. Witness and Impact 360 are each trademarks (registered or otherwise) of Witness Systems, Inc.
01/06 • GCC3046

# EXHIBIT R



# AVAYA

IP Telephony
Contact Centers
Mobility
Services

OVERVIEW

# Impact 360™ Compliance Package from Witness Systems – Powered by Avaya

### The Promise of Call Recording in IP and Mixed Telephony Environments



Now enormous amounts of valuable customer information can easily be captured and accessed by the right people in your organization, helping you to improve the service you offer to your customers while improving operational efficiency and business effectiveness

### The Problem

Today's businesses collect and manage vast amounts of information from customers, including suppliers or other third parties, at every touch point. Many of these interactions occur through the contact center or in a pure business environment. These interactions include enormous amounts of valuable information and insight that, if made easily available to the right people in your business, may dramatically improve the service that you offer to your customers.

The convergence of voice and data infrastructure is changing the landscape of today's telecommunications infrastructure, including how calls are recorded. Voice over Internet Protocol (VoIP) is enabling smaller businesses to access application functionality previously afforded only by large organizations – resulting in improved operational efficiency and improved business effectiveness.

### The Solution

Analyzing communications is more important than ever as you seek to make more insightful decisions and gain a competitive advantage through a better understanding of your customers and your interactions with them. As part of the robust Avaya Operational Effectiveness portfolio in the Customer Interaction Suite, Avaya offers the **Compliance Package** (formerly called Witness ContactStore for Communication Manager) to bring the benefits of contact recording and analysis to potentially everyone who uses a telephone at their place of work. It allows you to acquire more value from telephone contacts by immediately recording, and storing calls. The right people throughout your company can then review and act upon this pool of captured customer intelligence to help serve customers more thoroughly.

As a next generation recording solution for converged environments, the Compliance Package is jointly-developed by

avaya.com

Avaya and Witness Systems and leverages the power of Avaya Communication Manager via the Avaya development interface – Communication Manager API (CMAPI). The result is an open and flexible call recording application with standard and advanced features for contact centers and businesses.

The Compliance Package's software-based recording solution can cost-effectively scale across a broad range of requirements, from minimal/occasional recording to meet the needs of a small group of executives or smaller businesses, up to meet the demanding full-time require- ments of single site and multi-site contact centers. In today's complex, distributed organizations your customer contacts may be spread across multiple sites or you may need additional functionality like tagging customer data, storing recordings on network storage devices, or doing more sophisticated search and replay.

The Compliance Package seamlessly integrates call-record- ing activities regardless of where and when the customer contact occurred and whether the environment is single or multi-site and provides the functionality and customization potential for more sophisticated recording environments.

The Compliance Package opens up new opportunities for improving business performance. For example, you can replay calls to quickly resolve disputes or unclear instructions. Or your logistics organization can improve the productivity and accuracy of service delivery by reviewing important customer instructions passed on from the sales team. Or the sales team can follow up on an opportunity highlighted from the service desk. In addition, you can use the Compliance Package to help your staff become more effective by recording the perfect sales call for training or other development purposes.

## Robust Functionality

With the Compliance Package, you can capture customer interactions automatically, or you can simply press a button or key sequence on the phone to record selected calls. With rich integration to Avaya Communication Manager, the Compliance Package makes recording easy because it can be used to record calls either on IP or traditional phones (using the same recording system). The captured phone conversations can then be searched and retrieved using a variety of selection criteria, and this information can help you to ensure that you maximize sales in the future by identifying, for instance, up sell opportunities.

Authorized users across the enterprise can use the intuitive browser-based application to retrieve and replay particular calls using powerful search criteria. You can graphically "see" into the call and rapidly identify points of interest to review, such as a prolonged silence, or higher volume or raised voice portions of conversations, in which the system points to opportunities to improve call handling or productivity.

## Six recording modes are available in the Compliance Package:

### Station Bulk Recording
Calls to and from a station are recorded automatically from start to finish.

### Conference Recording
As an alternative to station bulk recording, conference recording uses the Single Step Conferencing (SSC) feature of Avaya Communication Manager along with AEServices or Avaya CT for targeted recording of specific customer interac- tions, and records those interactions from start to finish.

### Station Executive Recording
A user can decide to record a call at any point in the call, press a few buttons on the phone and have the entire call kept for them.

**On Demand Recording**

Anyone using Avaya Communication Manager can decide to begin recording a call from a certain point in the call, e.g. by pressing the AUDIX record button or a button configured to dial a pool of recording extensions.

**Meeting Recording**

Any phone using Avaya Communication Manager can be used to record a meeting e.g. in a conference room and the recording can be 'assigned' to specific users for access later.

**Event Driven**

Records calls based on external triggers.

### Additional Capabilities

Optional capabilities include:

- **Centralized Archiving** provides a local or enterprise-wide solution that enables the Compliance Package recordings to be archived efficiently and securely on external industry standard storage devices such as Storage Area Networks (SAN) and Network Attached Storage (NAS). This ensures that users can leverage and maximize their return on investment in existing storage systems. Centralized Archiving is rules-driven to give the flexibility in what, when, where, and for how long contacts are archived.

- **Playing back calls through the Handset** gives users who normally wear a headset or do not have a soundcard in their PC an alternative mode to listen to a replayed call. This feature automatically dials a pre-defined telephone extension associated with the person reviewing the call or alternatively the listener can elect to dial into a number designated by the system.

### The Results

From fast and efficient sharing of recorded interactions, customers benefit from prompt, accurate service, which helps boost customer satisfaction and revenue generation; employees across the organization can improve their productivity based on access to "front-line" information; and your competitive edge is enhanced by optimizing your interactions with customers and suppliers.



With the Compliance Package, Avaya delivers the levels of sophistication and robustness that have long been accepted as standard in telephony recording to the new world of converged voice and data networks.

### Unmatched Benefits

- Software-based IP call recording solution that records both IP and traditional end-points in a pure or mixed environment

- Integration with the Avaya Communication Manager via the Avaya development interface – Communication Manager API

- Cost effective, scalable Web-based solution

- Single view of all customer contacts across an enterprise

- Simplifies Moves, Adds, and Changes by performing them through software configuration versus cabling changes to maximize flexibility and minimize costs

- Runs on standard PC servers and operating systems

- External CTI servers are not required but can optionally use CTI for enhanced recording control and tagging



## Avaya Professional Services and Learning More

Impact 360™ solutions take full advantage of Avaya's recognized strength in voice heritage, application development, global services and leadership position in the industry. Avaya Global Services provides a suite of services designed to give you maximum flexibility in choosing the services needed to best support the unique needs of your contact center and your business.

Find your solution. To learn more about the Avaya Customer Interaction Suite and Impact 360™ solutions, visit http://www.avaya.com, or contact your Avaya Client Executive or Avaya Authorized BusinessPartner today or call **866.GO.AVAYA.**

### About Avaya

Avaya enables businesses to achieve superior results by designing, building and managing their communications infrastructure and solutions. For over one million businesses worldwide, including more than 90 percent of the FORTUNE 500®, Avaya's embedded solutions help businesses enhance value, improve productivity and create competitive advantage by allowing people to be more productive and create more intelligent processes that satisfy customers.

For businesses large and small, Avaya is a world leader in secure, reliable IP telephony systems, communications applications and full life-cycle services. Driving the convergence of embedded voice and data communications with business applications, Avaya is distinguished by its combination of comprehensive, world-class products and services. Avaya helps customers across the globe leverage existing and new networks to achieve superior business results.



© 2006 Avaya Inc.
All Rights Reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ®, SM or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc., with the exception of FORTUNE 500 which is a registered trademark of Time Inc. Witness and Impact 360 are each trademarks (registered or otherwise) of Witness Systems, Inc. All other trademarks are the property of their respective owners.
01/06 • GCC3039

# EXHIBIT S

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 323109 (D.Del.)
(Cite as: 2004 WL 323109 (D.Del.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**JONES PHARMA, INC. and King
Pharmaceuticals, Inc., Plaintiffs,
v.
KV PHARMACEUTICAL CO., Defendant.**
No. Civ.A. 03-786 JJF.

Feb. 17, 2004.

Paul E. Crawford, and Patricia S. Rogowski, of
Connolly Bove Lodge & Hutz LLP, Wilmington,
Delaware, F. Dominic Cerrito, Daniel L. Malone,
and John C. Martin, of Pennie & Edmonds LLP,
New York, New York, for Plaintiffs Jones Pharma,
Inc., and King Pharmaceuticals, Inc., of counsel.

Josy W. Ingersoll, and Christian Douglas Wright,
of Young Conaway Stargatt & Taylor, LLP,
Wilmington, Delaware, for Defendant KV
Pharmaceutical Co.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is Defendant KV
Pharmaceutical Co.'s ("KV") Motion To Transfer
To Eastern District Of Missouri Pursuant To 28
U.S.C. § 1404(a). (D.I.8.) For the reasons set forth
below, the Court will deny KV's Motion.

BACKGROUND
This case is a Hatch-Waxman patent infringement
action under 35 U .S.C. § 271(e)(2) arising from an
Abbreviated New Drug Application KV submitted
for approval in order to sell a generic version of
Jones Pharma, Inc.'s ("Jones") drug Levoxyl. By its
Motion, KV seeks a transfer of the instant action to
the Eastern District of Missouri.

I. Parties' Contentions

KV contends that the instant action could have been
brought in Missouri. Further, KV contends that
Jones did not file the instant action on its "home
turf," and therefore, Jones's decision to file in
Delaware is not entitled to the deference ordinarily

accorded to a plaintiff's choice of forum. KV also
contends that the private and public interests favor
transfer to Missouri.

In response, Jones contends that although its
principal place of business is not in Delaware, both
KV and it are Delaware corporations. Therefore,
Jones contends that the Court should give strong
deference to its decision to file the instant action in
Delaware. Further, Jones contends that the private
and public interests do not strongly favor transfer to
Missouri.

DISCUSSION
28 U.S.C. § 1404(a) provides the standard for a
convenience transfer to another jurisdiction. Section
1404(a) states, "For the convenience of parties and
witnesses, in the interest of justice, a district court
may transfer any civil action to any other district or
division where it might have been brought." The
Third Circuit has not limited itself to the factors
listed in Section 1404(a), instead requiring courts to
consider the private and public interests protected by
Section 1404. The private interests include:
  plaintiff's forum preference as manifested in the
  original choice, the defendant's preference,
  whether the claim arose elsewhere, the
  convenience of the parties ..., the convenience of
  the witnesses--but only to the extent that the
  witnesses may actually be unavailable for trial in
  one of the fora, and the location of books and
  records (similarly limited to the extent that the
  files could not be produced in the alternative
  forum).
*Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879
(3d Cir.1995) (citations omitted).

The public interests include "the enforceability of
the judgment, practical considerations that could
make the trial easy, expeditious, or inexpensive, the
relative administrative difficulty in the two fora
resulting from court congestion, the local interest
..., [and] the public policies of the fora." *Id.*
(citations omitted). "The burden of establishing the
need for transfer ... rests with the movant." *Id.*
Unless the movant demonstrates that the balance of
conveniences strongly favors transfer, plaintiff's
forum choice should prevail. *Shutte v. Armco Steel
Corp.,* 431 F.2d 22, 25 (3d Cir.1970).

I. Whether Plaintiffs' Choice Of Forum Is Entitled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

To "Paramount Consideration"

*2 Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, C.A. No. 01-309 JJF, 2002 WL 500920 at *2 (D.Del. March 26, 2002). Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Jones's decision to file the instant action in Delaware.

Both Jones and KV are Delaware corporations. And, as the Court observed in *Stratos*, a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920, at *2. Therefore, to prevail on its Motion, KV must demonstrate that the *Jumara* factors strongly favor a transfer to Missouri.

## II. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and the parties have their principal places of business in Missouri, the Court concludes that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a transfer to Missouri. First, the Court concludes that the convenience of the parties does not favor venue in one jurisdiction over the other. Neither party would be unduly burdened by litigating this action in Delaware or Missouri. *See Pennwalt Corp. v. Purex Inds., Inc.*, 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). KV's annual sales approximate $240 million (D.I. 12; Ex. 1) and Jones's annual sales approximate $245 million. (D.I. 14; Ex. D.) Therefore, the Court concludes that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt*, 659

F.Supp. at 290. Further, although both parties have their principal places of business in Missouri, both parties are incorporated in Delaware. And, as KV chose to avail itself of the laws of Delaware, it may not now complain because Jones decided to sue it in this state. *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 833 F.Supp. 450, 453 (D.Del.1993).

Next, although KV contends that the books and records necessary to litigate this action are in Missouri, KV does not contend that they could not be produced or would be unavailable in Delaware. Therefore, the Court does not consider the location of the books and records as weighing in favor of a transfer to Missouri. *See Jumara*, 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum."). Further, all of the witnesses relating to the formulation and development of its generic drug that KV intends to call at trial, save Mr. Franz, are current KV employees. (D.I.10.) These employee witnesses are party witnesses and are presumed willing to testify at trial. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 203 (D.Del.1998) ("Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial."). With respect to Mr. Franz, the Court is not persuaded by KV's contention that Mr. Franz's retirement from KV and residence in Missouri strongly favors a transfer of the instant action. As noted above, the movant bears the burden in motions to transfer, *Jumara*, 55 F.3d at 879, and KV has provided the Court with no evidence that Mr. Franz, KV's former CEO, would be unwilling to testify on its behalf. Accordingly, the Court gives little weight to Mr. Franz's status as a non-party witness and residence in Missouri.

## III. Whether The Public Interests Strongly Favor Transfer

*3 The Court also concludes that the public interests do not weigh strongly in favor of a transfer to Missouri. First, the Court is unpersuaded by KV's contention that the congestion of the Delaware courts strongly favors a transfer. *See Affymetrix*, 28 F.Supp.2d at 206 (noting that the congestion of a court's docket is a legitimate factor to be considered in a motion to transfer). The median time for

Not Reported in F.Supp.2d
(Cite as: 2004 WL 323109, *3 (D.Del.))

completion of non-jury trials in the District of Delaware is twenty-seven months, compared to twenty-three months in the Eastern District of Missouri. (D.I. 9; Ex. B.) The Court considers this four-month difference as, at most, only minimally favoring a transfer.

Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos,* rights relating to patents are not local or state matters. 2002 WL 500920 at *2. Therefore, patent rights cannot give rise to a local controversy or implicate local interests. *Id.* Accordingly, the Court concludes that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

## CONCLUSION

Based upon Jones's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to Missouri, the Court concludes that the *Jumara* factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, the Court will deny KV's Motion.

An appropriate Order will be entered.

## ORDER

At Wilmington, this 17th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that KV Pharmaceutical Co.'s Motion To Transfer To Eastern District Of Missouri Pursuant To 28 U.S.C. § 1404(a) (D.I.8) is *DENIED.*

Not Reported in F.Supp.2d, 2004 WL 323109 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 2003 WL 23698873T1 (Trial Pleading) Plaintiffs' Reply to Defendant's Counterclaim (Sep. 17, 2003)

. 2003 WL 23698872T1 (Trial Pleading) Answer and Counterclaim (Aug. 28, 2003)

. 2003 WL 23675686T1 (Trial Pleading) Complaint (Aug. 07, 2003)

. 1:03cv00786 (Docket) (Aug. 07, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT T

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
(Cite as: 2005 WL 2620196 (D.Del.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**TEXTRON INNOVATIONS INC., Plaintiff,**
v.
**THE TORO COMPANY, Defendants.**
**No. Civ.A. 05-486 GMS.**

Oct. 14, 2005.

Edmond D. Johnson, The Bayard Firm, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE, for Plaintiff.

Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

**\*1** On July 12, 2005, the plaintiff, Textron Innovations Incorporated ("TII") filed the above-captioned action against The Toro Company ("Toro"), alleging infringement of United States Patent Nos. 6,047,530, 6,336,311, and 6,336,312, which are directed to a gang type rotary mower. Presently before the court is Toro's motion to transfer this action to the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). For the following reasons the court will deny the motion.

II. BACKGROUND

On July 12, 2005, TII filed the present patent infringement action involving technology related to the rotary mower used to cut golf course roughs. TII is the subsidiary of Textron Inc., and the assignee of the three patents in suit. (*See* D.I. 6, at 1 n. 1; D.I. 19, at 2.) TII is incorporated in Delaware and maintains its headquarters in Providence, Rhode Island. (D.I. 1 ¶ 3.) Toro is a Delaware corporation that maintains its headquarters in Bloomington, Minnesota. (*Id.* ¶ 4.) Toro's allegedly infringing products are manufactured in Tomah, Wisconsin. (D.I. 6, at 3.)

On August 15, 2005, Toro filed a separate action in Minnesota against Textron, Inc. and Jacobsen, a division of Textron, Inc., alleging that their products infringe two Toro patents relating to hydraulic drive system technology for riding mowers. The following day, Toro filed this motion to transfer venue to the District of Minnesota.

III. DISCUSSION

Pursuant to Section 1404(a), the court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice, ... to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Truth Hardware corp. v. Ashland Prods., Inc.,* No. C.A. 02-1541 GMS, 2003 WL 118005, at \*1 (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)). In other words, "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970).

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara,* 55 F.3d at 879. This inquiry requires "a multi-factor balancing test," embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the location of books and records, to the extent that they could not be produced in the alternative forum. [FN1] *Id* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN1. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

*2 Upon consideration of the relevant factors, the court finds that Toro has not met its burden of demonstrating that transfer is appropriate. First, the court concludes that convenience of parties factor weighs in favor of maintaining the action in Delaware. The court will afford less deference to TII's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). However, it is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 187 (D.Del.1996). In the present case, the fact that Toro is incorporated in Delaware is a rational and legitimate reason for TII choosing to sue it in Delaware. *See Stratos Lightwave, Inc. v. E20 Communications, Inc.,* No. Civ. A. 01-309-JJF, 2002 WL 500920, at *2 (D.Del. Mar.26, 2002). Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here. *See id.* Indeed, it is difficult for the court to find any inconvenience to Toro when it has previously chosen this forum in order to litigate its own patent infringement claims against Textron. *See Toro Company v. Textron, Inc.,* 499 F.Supp. 241 (D.Del.1980). Thus, the convenience of the parties weighs in favor of maintaining this action in Delaware.

The court also finds that the location of books and records weighs against granting Toro's motion to transfer. Toro contends that its books and records necessary for litigation are in Minnesota. A court should consider the location of books and records in its analysis. However, it must only do so to the extent that the files could not be produced in the alternative forum. *Jumara,* 55 F.3d at 879. Here, Toro does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer.

Toro also contends that non-party witness

convenience weighs in favor of a transfer. According to the briefs, Toro plans to rely on testimony from two original inventors of the patents in-suit, three retired employees, and an employee of a local golf course. The two inventors do not reside within the subpoena power of Delaware or Minnesota. However, they have both stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial. (D.I. 19, at 3.) Thus, any inconvenience to the inventors weighs in favor of maintaining the action in Delaware.

As for the other witnesses, Toro has elected to rely upon retired and, therefore, "third-party" employees that do not reside within the subpoena power of Delaware. In support of its motion, Toro insists that due to personal circumstances, travel to Delaware is extremely inconvenient for its third-party witnesses. (D.I. 6, at 4-6.) The court is not persuaded by this argument, and finds Toro's reliance on former employees, rather than its current employees, questionable. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.,* No C.A. 02-1541 GMS, 2003 WL 118005, at *2 (D. Del. Jan 13, 2003). Moreover, Toro has not asserted that the identified witnesses are the only individuals capable of testifying as to the technology of the accused products. Nevertheless, if necessary, TII has agreed to take witness depositions in Minnesota. (*See* D.I. 19, at 23.) For these reasons, the court concludes the convenience of the witnesses does not favor transfer in this case.

*3 Finally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Minnesota. First, Toro's pending litigation in Minnesota was filed after TII initiated this lawsuit, and involves different patents. Thus, the court believes that this is not a relevant consideration in favor of transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505, 513 (D.Del.1999) (refusing to give "any weight whatsoever" to a mirror image action filed by the defendant). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer. Finally, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 2620196, *3 (D.Del.))

2004 WL 323109, at * 3 (D.Del. Feb.17, 2004). The court, therefore, finds no strong local interest in litigating in the transferee forum. Accordingly, the court concludes that public interest factors do not favor transfer in the instant case.

*ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Transfer the Case to the United States District Court for the District of Minnesota (D.I.5) is DENIED.

Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 2005 WL 3242158T2 (Trial Pleading) Defendant's Amended Answer and Counterclaims (Nov. 9, 2005)Original Image of this Document (PDF)

. 2005 WL 2603883T2 (Trial Motion, Memorandum and Affidavit) Plaintiff Textron Innovations Inc.'s Brief in Opposition to Motion to Transfer Venue (Aug. 30, 2005)Original Image of this Document (PDF)

. 2005 WL 2603569T2 (Trial Pleading) Answer (Aug. 29, 2005)Original Image of this Document (PDF)

. 2005 WL 2603700T2 (Trial Motion, Memorandum and Affidavit) Toro's Reply to Textron's Brief in Opposition to Motion to Transfer Venue (Aug. 19, 2005)Original Image of this Document (PDF)

. 2005 WL 2603699T2 (Trial Motion, Memorandum and Affidavit) Opening Brief Supporting Defendant Toro's 28 U.S.C. § 1404 (a) Motion to Transfer Venue to Minnesota (Aug. 16, 2005)Original Image of this Document (PDF)

. 2005 WL 2385695T2 (Trial Pleading) Complaint (Jul. 12, 2005)Original Image of this Document (PDF)

. 2005 WL 2912858T2 (Trial Pleading) Complaint (Jul. 12, 2005)Original Image of this Document (PDF)

. 1:05cv00486 (Docket) (Jul. 12, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT U

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 388599 (D.Del.)
(Cite as: 2005 WL 388599 (D.Del.))

Page 4

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**J-SQUARED TECHNOLOGIES, INC, and J-
Squared Technologies (Oregon) Inc.,
Plaintiffs,
v.
MOTOROLA, INC., Defendant.
No. Civ.04-960-SLR.**

Feb. 4, 2005.
David Allan Felice, Cozen & O'Connor Chase
Manhattan Centre, Wilmington, DE, for Plaintiff.

William W. Bowser, Young, Conaway, Stargatt &
Taylor The Brandywine, Wilmington, DE, for
Defendant.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 4th day of February, 2005,
having considered defendants' motion to transfer and
the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer
[FN1] (D.I.10) is denied, for the reasons that
follow:

> FN1. By this motion, defendant also moved to
> dismiss. This memorandum order addresses only
> the transfer motion.

1. Introduction. On August 20, 2004, plaintiffs J-
Squared Technologies, Inc. ("JST") and J-Squared
Technologies (Oregon), Inc. ("JSO") sued defendant
Motorola, Inc. ("Motorola") alleging: (1) breach of
contract; (2) promissory estoppel; (3) negligent
misrepresentation; (4) breach of duty of good faith
and fair dealing; and (5) violation of Arizona's
Consumer Fraud Act. (D.I.1) Plaintiffs seek
compensatory and punitive damages. On September
23, 2004, Motorola moved to transfer the case to the
District of Arizona or, alternatively, to dismiss
pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).
(D.I.10) Plaintiffs oppose the motion (D.I.13) and
defendant has filed its reply. (D.I.15)

2. Background. Plaintiffs are commissioned sales
agents who sell products for various computer
manufacturers. JST is a Canadian corporation
maintaining its principal place of business in Kanata,
Ontario. (D.I.1) JSO is an Oregon corporation with
its principal place of business in Portland, Oregon.

3. Defendant is a Delaware corporation with its
headquarters in Schaumburg, Illinois. (D.I.11)
Motorola Computer Group ("MCG"), is business
unit of Motorola. [FN2] (Id. at A1) MCG
manufactures computer boards and other products
for use in embedded computing applications. MCG's
headquarters is in Tempe, Arizona and most of its
employees reside in the state. (Id.)

> FN2. MCG recently changed its name to
> "Embedded Communications Computing Group."
> (D.I.11, A1)

4. According to Motorola, [FN3] MCG negotiated
a Manufacturer's Representative Agreement
("MRA") with JST in October 2002. (Id. at A1)
MCG employees were involved in the negotiations
with JST. No negotiations occurred in Delaware. In
March 2003, MCG negotiated a MRA with JSO.
MCG employees negotiated the MRA, with nothing
occurring in Delaware. (Id.) Both contracts were
monitored from Arizona and commissions were
tabulated there as well. Two former employees
involved in the negotiations still reside in Arizona. (
Id.)

> FN3. Affidavit provided by Julie Blair, a financial
> analyst for MCG. (D.I.11, A1)

5. Plaintiffs indicate that they never traveled to
Arizona to negotiate with MCG. [FN4] (D.I.13, Ex.
A) All negotiations leading to the MRAs occurred
over email and telephone. The MRAs involved the
sale of Motorola products in Washington, Oregon,
Idaho and Canada. (Id.) After the contracts were
executed, Motorola sent its representatives to
Canada and Oregon to assist with the work. These
Motorola sales management representatives were
from San Jose, California and Boston,
Massachusetts. The attorneys who represented JST
and JSO during contract negotiations reside in
Canada, but have indicated that they are willing to
testify in Delaware at trial. Commission payments to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 388599, *1 (D.Del.))

JST and JSO were made from Motorola. (*Id.*)

> FN4. Affidavit of Jeffrey Gibson, chief financial officer for JST and JSO. (D.I.13, Ex. A)

6. In September, Motorola representatives from Boston and the United Kingdom decided not to renew the MRAs during a meeting with JST and JSO. This meeting occurred in Boston. Motorola contends that the decision to terminate the contracts was made in Arizona.

*2 7. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 208 (D.Del.1998).

8. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin*, 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.*, 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte*, 431 F.2d at 25.

9. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on

the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F.Supp. 973, 976 (D.Del.1993).

10. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.*, the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

*3 11. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

12. Discussion. Defendant contends that transfer is warranted because Delaware has no connection to this litigation. (D.I.11, 15) Specifically, defendant argues that all negotiations and meetings occurred outside the district; the contracts at issue are governed by Arizona law; and the Arizona forum is more convenient for the parties and witnesses.

13. Plaintiffs contend their choice of forum should be afforded deference and that litigating in Delaware is as convenient as litigating in Arizona, given the nature of the transaction and the various locales involved in the transaction. (D.I.13) Further, plaintiffs assert that defendant's motion to transfer is merely a strategy meant to undermine the litigation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 388599, *3 (D.Del.))

14. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted advantages of moving the case to the District of Arizona are insufficient to warrant a transfer. Defendant's complaints about litigating here are outweighed by the fact that Motorola has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction. Moreover, two potential witnesses no longer employed by Motorola have not refused to travel to Delaware for trial. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose, by a Delaware defendant conducting world-wide business, is not overly burdensome.

15. Conclusion. For the reasons stated, defendant's motion to transfer (D.I.10) is denied.

Not Reported in F.Supp.2d, 2005 WL 388599 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

.  2006 WL 1813945T2  (Trial Motion, Memorandum and Affidavit) Motorola's Motion to Strike (May 22, 2006)Original Image of this Document (PDF)

.  2006 WL 1813946T2  (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Further Support of their Motion for a Protective Order (May 22, 2006)Original Image of this Document with Appendix (PDF)

.  2006 WL 1813947T2  (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Further Support of their Motion to Consolidate (May 22, 2006)Original Image of this Document with Appendix (PDF)

.  2006 WL 1813948T2  (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Further Support of their Motion to Amend (May 22, 2006)Original Image of this Document (PDF)

.  2006 WL 1814061T2  (Trial Motion,

Memorandum and Affidavit) Plaintiff's Reply Memorandum in Further Support of their Motion to Consolidate (May 22, 2006)Original Image of this Document with Appendix (PDF)

.  2006 WL 1813942T2  (Trial Motion, Memorandum and Affidavit) Motorola's Response to Plaintiffs' Motion for Protective Order (May 11, 2006)Original Image of this Document (PDF)

.  2006 WL 1813943T2  (Trial Motion, Memorandum and Affidavit) Motorola's Response to Plaintiffs' Motion to Consolidate (May 11, 2006)Original Image of this Document (PDF)

.  2006 WL 1813944T2  (Trial Motion, Memorandum and Affidavit) Motorola's Response to Plaintiffs' Motion to Amend (May 11, 2006)Original Image of this Document (PDF)

.  2006 WL 1813941T2  (Trial Motion, Memorandum and Affidavit) Motorola's Opening Brief in Support of its Motion for Summary Judgment (May 1, 2006)Original Image of this Document (PDF)

.  2006 WL 1435855T2  (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for A Protective Order (Apr. 25, 2006)Original Image of this Document (PDF)

.  2006 WL 1435854T2  (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Consolidate (Apr. 24, 2006)Original Image of this Document (PDF)

.  2006 WL 1204470T2  (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Further Support of their Motion to Compel (Mar. 23, 2006)Original Image of this Document (PDF)

.  2006 WL 1204469T2  (Trial Motion, Memorandum and Affidavit) Motorola's Response to Plaintiffs' Motion to Compel (Mar. 13, 2006)Original Image of this Document (PDF)

.  2006 WL 1388631T2  (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Consolidate (2006)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2005 WL 388599, *3 (D.Del.))

Page 7

. 1:04CV00960 (Docket) (Aug. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT V

Not Reported in F.Supp.2d                                                                Page 8
Not Reported in F.Supp.2d, 2003 WL 22928034 (D.Del.)
(Cite as: 2003 WL 22928034 (D.Del.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**APPLE COMPUTER, INC., Plaintiff,**
**v.**
**UNOVA, INC. Intermec Technologies**
**Corporation, Cincinnati Machine of Unova,**
**Inc., and Unova Industrial Automation Systems,**
**Inc. Defendants.**
**No. Civ.A. 03-101-JJF.**

Nov. 25, 2003.

Josy W. Ingersoll, and John W. Shaw, of Young
Conaway Stargatt & Taylor, LLP, Wilmington,
Delaware. Robert G. Krupka, Alexander F.
MacKinnon, and Shannon M. Hansen, of Kirkland
& Ellis, Los Angeles, California, for Plaintiff Apple
Computer, Inc., of counsel.

Jack B. Blumenfeld, and Sean T. O'Kelly, of
Morris, Nichols, Arsht & Tunnell, Wilmington,
Delaware. Frederick A. Lorig, and David M.
Kleiman, of Bright & Lorig, Los Angeles,
California, for Defendants Unova, Inc. and Intermec
Technologies Corporation, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court are the Motion to
Strike Plaintiff's Amended and Supplemental
Complaint (33-1), Motion to Transfer (D.I.12-1),
and Motion to Dismiss (14-1) filed by Defendants
UNOVA, Inc. ("Unova") and Intermec
Technologies Corporation ("Intermec"). For the
reasons discussed, Defendants' motions will be
denied.

BACKGROUND

Apple Computer, Inc., ("Apple") filed suit against
the Defendants alleging infringement of several
Apple patents. Unova and Intermec responded by
filing the instant Motion to Dismiss and Motion to
Transfer. Apple then filed an amended complaint
that added supplemental allegations and claims of
patent infringement against Cincinnati Machine of
Unova, Inc. ("CMU"), and Unova Industrial

Automation Systems, Inc. ("UIAS"). Unova and
Intermec filed a motion to strike the amended
complaint. Unova is currently involved in a patent
infringement lawsuit against Apple in the Central
District of California.

Apple is a California corporation with its principal
place of business in northern California. Intermec,
CMU, and UIAS are subsidiaries of Unova. Unova
is a Delaware corporation, has its principal place of
business in California, and is in the process of
moving its headquarters to Seattle. Intermec is a
Washington corporation with its principal place of
business in Washington. CMU and UIAS are
Delaware corporations with their principal places of
business in Ohio and Michigan respectively.

DISCUSSION
I. The Legal Standards

A. *Motion to Strike*

Federal Rule of Civil Procedure 12(f), in relevant
part, states that "[a] court may order stricken ... any
redundant, immaterial, impertinent, or scandalous
matter." However, such motions are generally
disfavored unless the matter is clearly irrelevant to
the litigation or will prejudice the adverse party. *See
Rechsteiner v. Madison Fund, Inc.,* 75 F.R.D. 499,
505 (D.Del.1977).

B. *Motion to Transfer*

"For the convenience of parties and witnesses, in
the interest of justice, a district court may transfer
any civil action to any other district or division
where it might have been brought." 28 U.S.C. §
1404(a). In the Third Circuit, decisions on motions
to transfer are guided by the private and public
factors announced in *Jumara v. State Farm Ins. Co.*
55 F.3d 873, 879 (3d Cir.1995). When determining
whether transfer is warranted, district courts must
balance all of the relevant factors and respect that a
plaintiff's choice of forum is entitled to substantial
deference and should not be lightly disturbed when it
is due to legitimate, rational concerns. *Id.* at 883.
The burden is upon the movant to establish that the
balance of the interests strongly weighs in favor of
transfer, and a transfer will be denied if the factors
are evenly balanced or weigh only slightly in favor
of the transfer. *See Continental Cas. Co. v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999).

### C. *Motion to Dismiss*

**\*2** Federal Rule of Civil Procedure 12(b)(6) allows a claim to be dismissed for "failure to state a claim upon which relief can be granted." The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Conley v.. Gibson,* 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Strum v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987), 835 F.2d at 1011. A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

### II. Assertions of the Parties

#### A. *Motion to Strike*

Intermec and Unova assert that the claims against Cincinnati Machine, and UIAS were only added in an attempt to maintain forum in Delaware. Intermec and Unova assert that Apple's complaint could not be amended without leave of court and that such leave was not granted.

Apple contends that under Federal Rule of Civil Procedure 15(a) ("Rule 15(a)") it had the right, without leave of court, to add UIAS and CMU and to amend its allegations based on facts in existence before the filing of the original complaint. As to its other amendments, Apple requests leave under Federal Rule of Civil Procedure 15(d) ("Rule 15(d) ") to the extent leave is required. Apple makes this request in its briefs and has not filed a motion seeking leave. Apple contends that allowing its amendments will not unfairly prejudice the defendants.

#### B. *Motion to Transfer*

Unova and Intermec assert that the parties in the instant case have no substantial connection to Delaware and that the case should be moved to the Central District of California, a forum more convenient for the parties and more related to the action. Unova and Intermec contend that because Delaware is not the forum closest to Apple's residence or principal place of business, Apple will be less inconvenienced by a transfer and assert that Apple only chose the current forum for tactical reasons. Defendants allege that the case will be more quickly resolved in the Central District of California and that, because the parties already have litigation between them pending in the Central District of California, the case will be more efficiently heard in that District. Unova and Intermec contend that CMU and UIAS were not properly joined to this case and should not be considered in determining whether to transfer the case.

Unova and Intermec assert forum is appropriate in California and have asserted facts indicating that all parties are subject to personal jurisdiction in California. Unova and Intermec assert that the Central District of California is closer to the headquarters of Unova, Apple, and Intermec.

**\*3** Unova and Intermec assert that the Central District of California will provide greater access to witnesses. Unova and Intermec contend that the patents involved have inventors most of whom are in California and none of whom are in Delaware. According to Unova and Intermec, no witness with knowledge of Apple's use of the inventions or licensing of the patents is in Delaware. Apple and Unova contend that unless a court has personal jurisdiction over a witness, that witness's presence at trial cannot be ensured. Apple and Unova contend that the presence of more witnesses can be ensured by moving the case to California.

Unova and Intermec assert that nothing concerning Apple's inventions is located in Delaware. Unova and Intermec contend that more sales of the allegedly infringing products have occurred in California than in Delaware and that the products are manufactured far from Delaware. Unova and Intermec contend that no documents on the design, manufacture, use, or sale of the products accused to violate the patents are located in or near Delaware.

Apple asserts that, as the plaintiff, it is entitled to deference on its choice of forum and that it has chosen an appropriate forum. Apple asserts that,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22928034, *3 (D.Del.))

with the exception of Intermec, three of the four defendants are Delaware corporations and are properly sued in Delaware even if not conducting business in the state. Apple asserts that Unova will be headquartered in Washington and not California by the time this case reaches trial.

Apple asserts that no location will be ideal for the convenience of the witnesses who are dispersed throughout the United States and France. Apple contends that Defendants have not provided evidence establishing that any witness critical to its case will be unavailable for trial in Delaware. Apple contends that the key witnesses on infringement are in Washington, Michigan, and Iowa, and not in California.

Apple contends that this case is unrelated to the one pending in the Central District of California and that moving the case would not produce improvements in judicial economy. Apple contends that the disposition of this case would occur at essentially the same time in Delaware as in California.

Apple asserts that there is not sufficient reason to justify moving this case. Apple asserts that patent law does not implicate local interests and that local interest should not be a factor in deciding whether to move this case. Apple asserts that Delaware's expertise and experience in patent law also point to keeping the case in Delaware. Apple asserts that Defendants are large corporations with substantial resources who will not be substantially burdened by travel to Delaware.

### C. *Motion to Dismiss*

Unova contends that all of Apple's claims against it should be dismissed; Intermec contends that Apple's claims against it alleging indirect infringement should be dismissed. Unova asserts that it is a holding company that does not make, use, sell, or import any of the accused products and that has not contributed to or induced infringement. Unova asserts that Apple has neither alleged that Unova sold infringing products nor alleged that Unova should be held liable for Intermec's sale of allegedly infringing products.

*4 Unova and Intermec contend that Apple has not and can not set forth a basis for its allegations of induced infringement. Unova and Intermec contend

they were unaware of the patents at issue in the case before the lawsuit was filed and have introduced an affidavit in support of this contention.

Apple asserts that its amended complaint has cured any defects in the original complaint and made the motion to dismiss moot. Apple asserts that the motion to dismiss targets the non-operative former complaint and that a ruling on this complaint would be, in effect, an advisory opinion. Apple asserts that it has sufficiently pled its causes of action.

Apple asserts that no discovery has occurred in this case and that neither dismissal nor summary judgment (should the Court choose to convert the motion to dismiss) is appropriate. Apple asserts that Unova's website and public declarations indicate that Unova makes and sells products. Apple asserts that Intermec also makes and sells products. Apple asserts that Unova and Intermec both have products infringing on at least one claim of each patent at issue in this action and have been actively and intentionally inducing their customers and, in the case of Unova, subsidiaries, to use the infringing products. Apple asserts that all of the facts relevant to infringement are in Unova and Intermec's possession and that it is entitled to discovery as to its claims. Apple contends that there are material issues of fact that preclude summary judgement.

### III. Analysis

#### A. *Motion to Strike*

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]" Fed. R. Civ. P. 15(A). "Neither a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Federal Rule of Civil Procedure 15(a)." *Centifanti v. Nix,* 865 F.2d 1422, 1431 n. 9 (3d Cir.1989). Apple's amended complaint was filed before Defendants made a responsive pleading and therefore the Court concludes that Apple was generally entitled to amend its complaint.

Even if a responsive pleading has not been filed, Court approval is required for "supplemental pleading[s] setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(D). "[A] supplemental pleading adds to the

original some matter occurring after the beginning of the action or after a responsive pleading has been filed." *Klee v. Pittsburgh & W.V. Ry. Co.,* 22 F.R.D. 252, 254 (W.D.Pa.1958). Apple's claims alleging knowledge based on information conveyed in the original complaint are clearly supplemental pleadings.

Additionally, Federal Rule of Civil Procedure 21 ("Rule 21"), in relevant part, holds that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 15(A). Some courts have held that Rule 21 supersedes Rule 15 and requires court permission before parties are added. *See, e.g., Renard v. Dillman,* 1998 U.S.App. LEXIS 38626 (2nd Cir.1998). Other courts, including courts in this District, have indicated that, before a responsive pleading has been issued, parties may be added even without leave to amend. *See e.g., Standard Chlorine of Del., Inc. v. Sinibaldi,* 821 F.Supp. 232, 259 (D.Del.1992). The Court has not considered on the issue and need not do so today.

*5 Apple has requested leave to amend to the extent its pleading requires such leave. "[I]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive[ ], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment," leave to amend is to be given freely and is entrusted to the discretion of the court. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Court finds that Defendants will not suffer unfair prejudice from granting leave to amend. While Apple should have made its request more formally, the Court will grant Apple leave to amend to the extent such leave is now required.

B. *Motion to Transfer*

*Jumara v. State Farm Ins. Co.* dictates that the Court examine the private and public interest in determining whether a transfer is warranted. 55 F.3d 873, 879 (3d Cir.1995).

The Court finds that the asserted public advantages of moving the case to the Central District of California are insufficient. The parties are already involved in a dispute in the Central District of California; however, the California action is unrelated to the claims of the instant action and involves multiple parties not joined in this case. Also, on comparing the jurisdictional statistics for the Central District of California and the District of Delaware, the Court finds that moving the case to the Central District of California will produce little advantage in expediency and in the allocation of judicial resources. Neither California nor Delaware has a local interest in the decision of this case.

The Court also finds that the private factors do not favor transfer. While more witnesses can be subpoenaed in California, a particular need to subpoena these witnesses has not been demonstrated. The parties are predominantly located closer to California and neither the parties nor the case have strong ties to Delaware. However, the parties as a whole are not located close to the Central District of California and all of the parties are sophisticated and substantial enough to litigate in Delaware. Apple is entitled to deference on its choice of forum and therefore the Court concludes that Unova and Intermec's Motion to Transfer must be denied.

C. *Motion to Dismiss*

Initially the Court observes that Apple's amended complaint has made parts of Unova and Intermec's motion to dismiss moot. In its Amended Complaint, Apple has alleged that, since the initial pleading, Intermec and Unova were aware of Apple's patents. In this regard Apple has plead a claim for inducement of infringement and contributory infringement.

Unova contends that it does not make, use, sell, or offer for sale any of the accused products and is entitled to the dismissal of Apple's claims. Apple has pled the opposite and has stated a claim for infringement. The parties have not yet engaged in discovery, and, at this early stage, factual determinations are not appropriate. If Unova is correct in its contentions about itself and about Apple's motives in filing suit, summary judgment and sanctions may later be appropriate. At present, however, the Court will deny Unova and Intermec's motion to dismiss.

CONCLUSION

*6 For the reasons discussed, the Court has denied the Motion to Strike Plaintiff's Amended and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22928034, *6 (D.Del.))

Supplemental Complaint (33-1), Motion to Transfer (D.I.12-1), and Motion to Dismiss (14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation. An Order consistent with this Memorandum Opinion will be entered.

### ORDER

At Wilmington, this 25th day of November, 2003, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) The Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED*.

2) The Motion to Transfer (D.I.12-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED*.

3) The Motion to Dismiss (D.I.14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED*.

**Motions, Pleadings and Filings (Back to top)**

. 1:03CV00101 (Docket) (Jan. 21, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT W

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**PADCOM, INC., Plaintiff,**
**v.**
**NETMOTION WIRELESS, INC. and Database**
**Solutions, Inc., Defendants.**
**No. Civ. 03-983-SLR.**

May 24, 2004.
Josy W. Ingersoll, John W. Shaw, and Adam W.
Poff, of Young Conaway Stargatt & Taylor, LLP,
Wilmington, Delaware, Neil F. Greenblum, Van C.
Ernest, and Jill M. Browning, of Greenblum &
Bernstein, P.L.C., Reston, Virginia, of counsel.

Mary B. Graham, and James W. Parrett, Jr. of
Morris, Nichols, Arsht & Tunnell, Wilmington,
Delaware, John Allcock, M. Elizabeth Day,
William G. Goldman, and Michael G. Schwartz, of
Gray, Cary Ware & Freidenrich, LLP, Palo Alto,
California, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

**I. INTRODUCTION**

*1 On October 26, 2003, plaintiff Padcom Inc.
("Padcom") filed this patent action alleging
infringement of its United States Patent Nos.
6,418,324 ("the '324 patent") and 6,198,920 ("the
'920 patent") by defendants NetMotion Wireless,
Inc. ("NetMotion") and Database Solutions, Inc.
("DSI"). (D.I.1) Padcom also contends that
NetMotion intentionally and wrongfully interfered
with contractual and business relations with potential
customers.

NetMotion has moved to dismiss based on lack of
personal jurisdiction pursuant to Fed.R.Civ.P.
12(b)(2) and improper venue under Fed. R.
12(b)(3). (D.I.9) DSI moved to transfer the
remaining portion of the litigation to the Northern
District of California pursuant to 28 U.S.C. §
1404(a). [FN1] Alternatively, if the court dismisses
NetMotion and declines to transfer the case against

DSI, defendants move to stay this action pending
resolution of the California case. Padcom opposes
the motion (D.I.23, 24) and defendants' have filed
their reply. (D.I.27, 28)

> FN1. On November 7, 2003, NetMotion and DSI
> filed a declaratory action in the Northern District
> of California mirroring the issues raised in this
> action. By order and stipulation dated December
> 10, 2003, the California action was stayed pending
> resolution of this first-filed action. *NetMotion
> Wireless, Inc. v. Padcom, Inc.,*
> 03-cv-04963-MMC, (N.D.Ca.2003) (D.I.12). A
> case management conference is scheduled for June
> 18, 2004. (*Id.,* D.I. 19)

**II. BACKGROUND**

**A. The parties**

Padcom is a Pennsylvania corporation with its
principal place of business in Bethlehem,
Pennsylvania. Founded in 1989, Padcom is in the
business of developing, making, licensing, selling
and servicing software and hardware products that
enhance connectivity for wireless network uses.
(D.I.1) The patent-in-suit relate to wireless
communications and data transfers between remote
devises and host systems. (D.I.10)

NetMotion is a corporation organized under the
laws of Washington with a principal place of
business in Seattle, Washington. (D.I.11) NetMotion
is in the business of designing, developing and
selling mobility software. Mobility software is
client/server based software that extends the
enterprise network to the mobile environment and
allows mobile users on both wide area and local area
networks secure access to the enterprise application
and information. (D.I.10) NetMotion's corporate
office, research and development facility, and
engineering, sales, marketing and manufacturing
facilities are all located in Seattle. Of NetMotion's
53 employees, 46 reside in Washington. The other
seven employees reside in Ohio, Pennsylvania,
Florida, Georgia, Texas, California and Illinois.
(D.I.11) NetMotion maintains and supports a web
site in Washington. The web site provides: 1)
company and product information; 2) partner
information; and 3) download information. None of
NetMotion's products are available for purchase
through its website; however, free trial versions of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1192641, *1 (D.Del.))

NetMotion's software are available for download from the web site. (D.I.12)

On February 2, 2001, a predecessor of NetMotion, WRQ, Inc., entered into a Value Added Reseller ("VAR") agreement with DSI. (D .I. 11, Ex. A) DSI is a Delaware corporation with its principal place of business in Cherry Hill, New Jersey. (D.I.13) DSI does not have an office in Delaware. DSI is in the business of providing integrated enterprise applications, databases and network solutions. DSI is a reseller of NetMotion products, however, DSI has never used, manufactured, sold or offered for sale any NetMotion product in Delaware or elsewhere. D.I. 13 ¶ 6) Pursuant to the VAR agreement, NetMotion has agreed to indemnify DSI.

## III. STANDARD OF REVIEW

*2 Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Intern. Ltd. v. Rudolph Wolff & Co.,* 484 U.S. 97, 104 (1987). The principle pronounced above is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. [FN2] *LaNuova D & B S.p.A. v. Bowe Co. Inc.,* 513 A.2d 764, 768 (Del.1986).

> FN2. According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer,

the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995). The Court has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed.Cir.1998). The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

However, since the Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998); *see generally, Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945).

Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred with between the forum state and defendant to support jurisdiction. [FN3] *Provident National Bank v. California Federal Savings & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir.1987). To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state. In contrast, general jurisdiction does not require that the defendant's connections be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *American Bio Medica Corp. v. Penisula Drug Analysis Co, Inc .,* Civ. No. 99-218-SLR, 1999 WL 615175 (D.Del.1999).

> FN3. The record reflects that the parties have engaged in limited jurisdictional discovery. (D.I.24, Ex. A, Ex. B)

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1192641, *2 (D.Del.))

who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

*3 (3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997).

IV. DISCUSSION

NetMotion argues that its contacts with Delaware are too attenuated to establish either specific or general jurisdiction under Delaware's long-arm statute. (D.I.10)

Padcom asserts that NetMotion is subject to jurisdiction under three sections of the Delaware long-arm statute: § 3104(c)(1), (c)(4) and (c)(3). Padcom argues that § 3104(c)(1) and (c)(4), confer jurisdiction because NetMotion has repeatedly transacted and solicited business in Delaware. Specifically: (1) NetMotion shipped an infringing product to the Wilmington Police Department to enable them to evaluate the product in anticipation of a sale; (2) NetMotion has contacted Delaware residents by mail, email and telemarketing, either cold calling or in response to inquiries about the product; and (3) NetMotion operates a national interactive web site.

In opposition, NetMotion presents the affidavit of its CFO, Bob Colliton. (D.I.12, 28) Colliton avers:

NetMotion maintains and supports a web site in the state of Washington, but none of NetMotion's products are available for purchase through NetMotion's web site. NetMotion's web site offers free trial downloads of its software, as well as white papers that outline the capabilities of NetMotion's software products.

NetMotion has not contacted or otherwise engaged any company in Delaware to download a free trial version of NetMotion's software. NetMotion is aware of one trial download of its software from an entity in Delaware--the Wilmington Police Department. This download was not the result of any targeted or direct marketing on the part of NetMotion. Instead, the Wilmington Police Department was directed to NetMotion's web site through an offer that Hewlett-Packard included in the purchase of certain models of their iPAQ products. In particular, Hewlett-Packard included marketing information on a number of third party products on the installation CD for the iPAC. NetMotion was one of the wireless companies that Hewlett-Packard chose to include product information about, with a link to NetMotion's web site for a free trial version of the software. At no time prior to or after this download has any employee contacted the Wilmington Police Department. NetMotion's advertising strategy is national in nature. It is not directed to any particular region, state or company. On occasion, NetMotion has utilized the services of a third party tele-marketing organization to obtain information regarding potential customers. Prospective customers in Delaware may have been contacted by this third party organization.

*4 (D.I.12) He states further that NetMotion has never used, sold, manufactured or offered for sale an accused product in Delaware. In his reply declaration, however, Colliton does acknowledge that in January 2004, NetMotion electronically transmitted its Mobility Connection Newsletter nationwide. Over 12,000 received this material, including 23 entities in Delaware. Nonetheless, Colliton indicates that no revenue was received from the 23 emails. Padcom responds that it is unnecessary to consummate a sale for jurisdictional purposes. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* Civ. No. 99-218-SLR, 1999 WL 615175 (D.Del.1999). Padcom maintains that NetMotion's activities are part of a general business plan to solicit business in Delaware.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1192641, *4 (D.Del.))

The Delaware Supreme Court has interpreted § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d at 768. Section 3104(c)(4) is a general jurisdiction provision that allows the defendants contacts with the forum state to be unrelated to the cause of action. The Federal Circuit has found that when a defendant has "purposefully shipped the accused [product] into [the forum state] through an established distribution channel [n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994).

The record reflects that NetMotion made trial versions of products available on its web site for downloading by consumers located anywhere. There is no evidence of any restrictions on location of the download. NetMotion likewise placed its products into the stream of commerce by allowing Hewlett-Packard to include marketing information about NetMotion with a link to a free trial version of its software and a link NetMotion couches the relationship with Hewlett-Packward as one-sided, i.e., "Hewlett-Packard chose to include product information", the court interprets this as a mutually beneficial agreement.

The Third Circuit Court of Appeals recently explored the contacts necessary for a court to have specific jurisdiction over a defendant based on the operation of a web site. *Toys "R" Us, Inc., v. Step Two, S.A.,* 318 F.3d 446 (3d Cir.2003). In so doing, the Court acknowledged the traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet.
  Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." Beyond this basic nexus, for a finding of specific personal jurisdiction, the Due Process Clause of the Fifth Amendment requires (1) that the "defendant ha[ve] constitutionally sufficient minimum contacts with the forum," and (2) that "subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice,"

*5 *Id.* at 451 (citations omitted); *see also, Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119

(W.D.Pa.1997) (sliding scale analysis for personal jurisdictional issues in web site cases).

The Third Circuit's test is whether the defendant "intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site." *Toys "R" Us,* 318 F.3d at 453. There, the Court considered a trademark infringement and unfair competition action filed pursuant to the Lanham Act, 15 U.S.C. § 1501 *et seq.,* and New Jersey state law. The defendant was a Spanish corporation that owns or franchises toy stores in Spain and nine other countries but none in the United States. The defendant lacked any offices, bank accounts or employees in the United States. Further, the defendant did not direct any advertising or marketing efforts in the United States. The record did reflect that some merchandise for defendant's stores was purchased in the United States. From defendant's Internet web site, consumers could make online purchases; however, the site clearly was intended for users outside of the United States. For example, the price of items was noted in Spanish pesetas and Buros and goods ordered from the site could only be shipped within Spain. The electronic newsletter could be received by anyone with the only requirement being name and email address. In reversing and remanding to the district court on the issue of jurisdictional discovery, [FN4] the Third Circuit recognized that the record was too limited to provide an "occasion to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction [,instead,] [t]hat determination should be made on a case-by-case basis by assessing the 'nature and quality of the contacts.' ' *Id.* at 453; (quoting *Zippo,* 952 F.Supp. at 1127). Non-Internet factors that a district court should consider are: business trips to the forum state; telephone and fax communications directed to the forum state; purchase contracts with forum state residents; contracts that apply the law of the forum state; and advertisements in local newspapers. *Toys "R" Us,* 318 F.3d at 453- 454. Other relevant evidence that might support the exercise of personal jurisdiction is that the defendant purposely and knowingly conducted business in the forum state by directly targeting its web site to the state. *Id.* at 454.

    FN4. The district court denied plaintiff the opportunity to conduct jurisdictional discovery to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1192641, *5 (D.Del.))

Page 5

address the defendant's motion attacking jurisdiction.

In light of this authority, the court finds that NetMotion knowingly conducted business with Delaware residents. Discovery has revealed that the Wilmington Police Department at least tried to use the free trial download of NetMotion's mobility software. (D.I.24, Ex. G) The emails between the Wilmington Police Department reflect correspondence directed to correct problems associated with the use of the trial program in order to persuade the user to purchase the alleged infringing product. (Id.)

*6 Using a third party telemarketer, NetMotion contacted Delaware businesses to solicit business and purchases. NetMotion selected seven Delaware entities [FN5] for contact by a third party telemarketer in the summer of 2003. (D.I.24, Ex. A, pgs.61-64) Additionally, NetMotion specifically targeted Delaware health care facilities. [FN6] NetMotion also mailed promotional materials to a targeted market of public safety organizations. [FN7] The documents were mailed to provide information about the products to encourage purchase. (D.I.24, Ex. A, pgs.44-45) If NetMotion did not intend to have Delaware residents as clients, it could have specifically excluded them from tele-marketers and their direct calling list. The fact that the marketing program did not generate sales belie the fact that attempts were made in Delaware, with knowledge and purpose, to do business.

FN5. The entities were: Dover Police Department, Industrial Affairs Division, Laurel Volunteer Fire Department, New Castle County Police Department, Newark Police-Traffic Division, Delaware State Police, Wilmington Police Department. (D.I. 24, Ex. A p. 61, Ex. K)

FN6. Alfred I. Dupont Hospital, Bayhealth Medical Center at Kent, Beebe Medical Center, Christiana Hospital, Delaware Hospital-Chronically Ill, Delaware Psychiatric Center, Milford Memorial Hospital, Nanticoke Memorial Hospital, Riverside Health Care Center, Saint Francis Hospital, Stockley Center, and the Wilmington VA Medical Center. (D.I.24, Ex. A, p. 89, Ex. M)

FN7. These agencies were identified as: Delaware State Police (Dover), Kent County Emergency

Communications, Sussex County Emergency Medical Services, New Castle County Police Department, Wilmington Public Safety, Wilmington Police Department, Delaware State Police (Odessa), Delaware State Police (Wilmington), Newark Police Department. (D.I.24, Ex. A)

Having found jurisdiction proper under the Delaware long-arm statute, the analysis becomes whether the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. See Int'l Shoe Co. v. Washington, 326 U.S. at 310. Due process mandates that the defendant have certain minimum contacts with the forum state to ensure that the lawsuit does not offend "traditional notions of fair play and substantial justice." Id. at 316. In Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), the Supreme Court added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." Id. at 475 n. 18. Further, the Court has directed that courts consider: 1) whether the defendant reasonably could have anticipated being haled into the forum state's court, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-293 (1980); 2) the burden imposed on the defendant by litigating in that forum, Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987); and 3) plaintiff's interest in the forum state, id.; see also, Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d at 437 (Third Circuit held that plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction).

As discussed above, the record reflects NetMotion's web site and the marketing promotion by Hewlett-Packard enabled users to download the accused products anywhere, but importantly in Delaware. By targeting businesses in the state, NetMotion knew that its conduct and connections with Delaware were such that they reasonably should have anticipated being brought to this forum.

V. MOTION TO TRANSFER

DSI has moved to transfer venue from this district to the United States District Court for the Northern

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1192641, *6 (D.Del.))

District of California pursuant to 28 U.S.C. § 1404(a), [FN8] arguing that the declaratory judgment action there provides a more convenient forum for the litigation. Padcom counters that a plaintiff's choice of forum is the paramount consideration in determining a transfer request. *Wesley-Jessen Corp. v. Pilkington Visioncare Inc.,* 157 F.R.D. 215 (D.Del.1993). NetMotion [FN9] argues that the court should transfer the case to the United States District Court for the District of Washington.

> FN8. Title 28, Section § 1404(a) provides:
>
> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

> FN9. NetMotion filed a third action in the Superior Court of the State of Washington, King County, alleging that Padcom has tortiously interfered with NetMotion's contracts and business expectancies. *NetMotion Wireless Inc. v. Padcom, Inc.,* 04-cv-622-JCC (W.D. Wa 2004). Padcom removed the matter to the United States District Court for the Western District of Washington on March 24, 2004. (*Id.,* D.I. 1) On April 27, 2004, Padcom moved to transfer to the case to the United States District Court for the District of Delaware or to stay pending resolution of the instant case. ( *Id.,* D.I. 8) NetMotion has filed opposition to the transfer motion, to which Padcom has filed a reply. (*Id.,* D.I. 11, 12) On May 4, 2004, Padcom, in the instant action, moved to enjoin prosecution of the subsequently filed action in the Western District of Washington and has requested that the court schedule a Rule 16 Conference. (D.I.33)

**\*7** Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998). The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910 (1971)). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE*

*Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998) ; *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* Civ. No. 01-199-SLR, 2001 WL 1617186 (D.Del.2001). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

**\*8** The court is unpersuaded that the private or public interests warrant a transfer. Both plaintiff and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant DSI are located within close proximity to this court, in Pennsylvania and New Jersey, respectively. Although defendant NetMotion is located in Seattle, Washington, it is a company trying to conduct business on a nationwide basis, including Delaware. Therefore, consistent with the deference afforded a plaintiff's choice of forum as well as the record established on the jurisdictional discovery issue, the court is satisfied that this litigation can be maintained without undue burden to the parties.

VI. CONCLUSION

For the reasons stated, defendants' motion to dismiss and to transfer (D.I.9) is denied. An order consistent with this memorandum opinion shall issue.

Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 2006 WL 1813926T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Response to Plaintiff's Opening Brief in Support of its Motion for Permanent Injunction (May 3, 2006)Original Image of this Document (PDF)

. 2006 WL 1388568T2 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opening Brief in Support of its Motion for Permanent Injunction (Apr. 26, 2006)Original Image of this Document with Appendix (PDF)

. 2006 WL 1388567T2 (Trial Motion, Memorandum and Affidavit) Plaintiff Padcom, Inc.'s Opposition to Netmotion Wireless, Inc.'s Motion for Judgment as a Matter of Law at the Close of Evidence (Apr. 7, 2006)Original Image of this Document (PDF)

. 2006 WL 1182399T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Request for Judgment as A Matter of Law at the Close of the Evidence (Mar. 24, 2006)Original Image of this Document (PDF)

. 2006 WL 1182400T2 (Trial Motion, Memorandum and Affidavit) Padcom's Jury

Instruction Objections (Mar. 24, 2006)Original Image of this Document (PDF)

. 2006 WL 1182401T2 (Trial Motion, Memorandum and Affidavit) Plaintiff Padcom, Inc.'s Request for Judgment as A Matter of Law at the Close of Evidence (Mar. 24, 2006)Original Image of this Document (PDF)

. 2006 WL 1182398T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Reply in Support of its Motion for A Protective Order Pursuant to Federal Rule of Civil Procedure 26 (Mar. 8, 2006)Original Image of this Document (PDF)

. 2006 WL 1182397T2 (Trial Motion, Memorandum and Affidavit) Plaintiff Padcom's Opposition to Defendant Netmotion's Motion for a Protective Order Pursuant to Federal Rule of Civil Procedure 26 (Mar. 6, 2006)Original Image of this Document (PDF)

. 2006 WL 1182396T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Motion for a Protective Order Pursuant to Federal Rule of Civil Procedure 26 (Mar. 3, 2006)Original Image of this Document (PDF)

. 2005 WL 3666775T2 (Trial Motion, Memorandum and Affidavit) Padcom Inc.'s Reply Memorandum in Further Support of its Motion for Summary Judgment of No Invalidity under ¢y35 U.S.C. §§ 102¢y¢ r;00001;;LQ;35USCAS102;1000546;¢r, ¢y103¢y¢ r;00002;;LQ;35USCAS103;1000546;¢r (Oct. 21, 2005)Original Image of this Document (PDF)

.. 2005 WL 3666776T2 (Trial Motion, Memorandum and Affidavit) Padcom, Inc.'s Reply to Netmotion Wireless, Inc.'s Answering Brief to Padcom's Motion for Partial Summary Judgment of No Invalidity under ¢y35 U.S.C. § 112¢y¢ r;00001;;LQ;35USCAS112;1000546;¢r (Oct. 21, 2005)Original Image of this Document (PDF)

. 2005 WL 3666777T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Reply Brief in Support of its Motion for Summary Judgment of Invalidity of U.S. Patent Nos. 6, 418, 324, 6, 198, 920 and 6, 826,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

405 under ¢y35 U.S.C. § 102¢y¢ r;00001;;LQ;35USCAS102;1000546;¢r (Oct. 21, 2005)Original Image of this Document (PDF)

. 2005 WL 3666778T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Reply Brief in Support of its Motion for Summary Judgment of Invalidity of U.S Patent No. 6, 826, 405 under ¢y35 U.S.C. § 112¢y¢ r;00001;;LQ;35USCAS112;1000546;¢r (Oct. 21, 2005)Original Image of this Document (PDF)

. 2005 WL 3666771T2 (Trial Motion, Memorandum and Affidavit) Padcom, Inc.'s Answering Brief in Opposition to Defendant's Motion for Summary Judgment of Invalidity of U.S. Patient No. 6, 826, 405 under ¢y35 U.S.C. § 112¢y ¢r;00001;;LQ;35USCAS112;1000546;¢r (Oct. 14, 2005)Original Image of this Document (PDF)

. 2005 WL 3666772T2 (Trial Motion, Memorandum and Affidavit) Padcom Inc.'s Answering Brief in Opposition to Netmotion Wireless Inc.'s Motion for Summary Judgment of Invalidity under ¢y35 U.S.C. § 102¢y¢ r;00001;;LQ;35USCAS102;1000546;¢r (Oct. 14, 2005)Original Image of this Document (PDF)

. 2005 WL 3666773T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Answering Brief to Plaintiff Padcom's Motion for Partial Summary Judgment of No Invalidity under ¢y35 U.S.C. § 112¢y¢ r;00001;;LQ;35USCAS112;1000546;¢r (Oct. 14, 2005)Original Image of this Document (PDF)

. 2005 WL 3666774T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Answering Brief to Plaintiff Padcom's Motion for Partial Summary Judgment of No Invalidity under ¢y35 U.S.C. §§ 102¢y¢ r;00001;;LQ;35USCAS102;1000546;¢r and ¢y103¢y ¢r;00002;;LQ;35USCAS103;1000546;¢r (Oct. 14, 2005)Original Image of this Document (PDF)

. 2005 WL 3666769T2 (Trial Motion, Memorandum and Affidavit) Padcom Inc.'s Answering Brief to Netmotion Wireless Evc.'s Markman Brief (Oct. 13, 2005)Original Image of this Document (PDF)

. 2005 WL 3666770T2 (Trial Pleading) Defendant

Netmotion Wireless, Inc.'s Answering Claim Construction Brief (Oct. 13, 2005)Original Image of this Document (PDF)

. 2005 WL 2867888T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Opening Brief in Support of its Motion for Summary Judgment of Invalidity of U.S. Patent Nos. 6,418,324, 6,198,920, and 6,826,405 under 35 U.S.C. § 102 (Sep. 29, 2005)Original Image of this Document (PDF)

. 2005 WL 2867889T2 (Trial Motion, Memorandum and Affidavit) Defendant Netmotion Wireless, Inc.'s Opening Brief in Support of its Motion for Summary Judgment of Non-Infringement (Sep. 29, 2005)Original Image of this Document (PDF)

. 2005 WL 2867891T2 (Trial Motion, Memorandum and Affidavit) Padcom Inc.'s Opening Brief in Support of Motion for Summary Judgment of No Invalidity Under 35 U.S.C. §§ 102,103 (Sep. 29, 2005)Original Image of this Document (PDF)

. 2005 WL 2867892T2 (Trial Motion, Memorandum and Affidavit) Padcom, Inc.'s Opening Brief in Support of Motion for Partial Summary Judgment of No Invalidity under 35 U.S.C. 8 112 (Sep. 29, 2005)Original Image of this Document (PDF)

. 2005 WL 2867893T2 (Trial Motion, Memorandum and Affidavit) Netmotion Wireless, Inc.'s Opposition to Padcom's Motion to Exclude Portions of the Expert and Rebuttal, and Respective Supplemental, Reports of David B. Johnson, Ph.D. (Sep. 29, 2005)Original Image of this Document (PDF)

. 2005 WL 2867886T2 (Trial Motion, Memorandum and Affidavit) Plaintiff Padcom Inc.'s Opening Brief in Support of its Proposed Claim Construction (Sep. 15, 2005)Original Image of this Document (PDF)

. 2005 WL 2867887T2 (Trial Motion, Memorandum and Affidavit) Netmotion Wireless, Inc's Markman Brief (Sep. 15, 2005)Original Image of this Document (PDF)

. 2005 WL 2603615T2 (Trial Motion,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1192641, *8 (D.Del.))

Page 9

Memorandum and Affidavit) Netmotion Wireless, Inc.'s Reply Brief in Further Support of Its Motion to Amend its Answer to Second Amended Complaint and Counterclaim (Aug. 24, 2005)Original Image of this Document (PDF)

.   2005  WL  2603612T2    (Trial Motion, Memorandum and Affidavit) Objections to the Notice of Deposition and Subpoena Served on James Bach (Aug. 18, 2005)Original Image of this Document (PDF)

.   2005  WL  2603614T2    (Trial Motion, Memorandum and Affidavit) Objections to the Notice of Deposition and Subpoena Served on Edward W. Knightly, PH.D. (Aug. 18, 2005)Original Image of this Document (PDF)

.   2005  WL  2603610T2    (Trial Motion,

Memorandum and Affidavit) Objections to the Notice of Deposition and Subpoena Served on David A. Haas (Aug. 16, 2005)Original Image of this Document (PDF)

.   2005  WL  2603607T2    (Trial Motion, Memorandum and Affidavit) Objections to Padcom, Inc.'s Subpoena of David Johnson (Aug. 15, 2005)Original Image of this Document (PDF)

.   2005  WL  2603750T2    (Trial Motion, Memorandum and Affidavit) Objections to Padcom, Inc.'s Subpoena of Matthew R. Lynde (Aug. 15, 2005)Original Image of this Document (PDF)

. 1:03cv00983 (Docket) (Oct. 27, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT X

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WITNESS SYSTEMS, INC.,

    *Plaintiff,*

    v.

NICE SYSTEMS, INC., and
NICE SYSTEMS, LTD.

    *Defendants.*

Civil Action No. 1:04-CV-2531-CAP

## PLAINTIFF WITNESS SYSTEMS, INC.'S RESPONSES TO DEFENDANTS NICE SYSTEMS, INC. AND NICE SYSTEMS, LTD.'S FIRST SET OF INTERROGATORIES

Plaintiff Witness Systems, Inc. ("Witness Systems") responds as follows to Defendants NICE Systems, Inc. and NICE Systems, Ltd.'s (respectively, "NICE, Inc." and "NICE, Ltd."; collectively, "NICE") First Set of Interrogatories pursuant to Federal Rules of Civil Procedure 26 and 33 and Local Rules of the Northern District of Georgia.

### GENERAL OBJECTIONS

1.    Witness Systems objects based on the attorney-client privilege to each Interrogatory to the extent it seeks information constituting or reflecting attorney-client communications. Inadvertent disclosure of any privileged information shall

not constitute a waiver of privilege or of any other basis for objecting to discovery with respect to such information.

2.      Witness Systems objects based on the doctrine of work product immunity to each Interrogatory to the extent it seeks information constituting or reflecting attorney work product, including without limitation the thought processes or mental impressions of Witness Systems' attorneys concerning the preparation, prosecution or defense of any claim by or against Witness Systems. Inadvertent disclosure of any information protected by work product immunity shall not constitute a waiver of the immunity or of any other basis for objecting to discovery with respect to such information.

3.      Witness Systems objects to identifying any privileged or work product documents or information written, prepared or developed on or after August 30, 2004, the date this action was filed. Witness Systems will withhold all privileged and work product documents and information created, prepared or developed by any of its employees, attorneys, agents, or representatives on or after that date. Witness Systems believes that the categorical identification of such withheld documents and/or information satisfies any identification requirements predicate to a proper assertion of the applicable privilege or immunity.

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

4.    Witness Systems objects to each Interrogatory to the extent it seeks information not relevant to any claim or defense in this action or reasonably calculated to lead to the discovery of information relevant to any claim or defense.

5.    Witness Systems objects to each Interrogatory to the extent that it:

a.    seeks information that is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

b.    requires responsive efforts that are unduly burdensome, expensive, annoying, or oppressive; or

c.    seeks information as easily ascertainable by NICE as by Witness Systems or is otherwise readily available from public sources.

6.    Witness Systems' responses to these Interrogatories do not constitute an admission or acknowledgment that the information sought is within the proper scope of discovery.

7.    Witness Systems' responses to these Interrogatories are made without in any way waiving:

a.    objections based on competency, relevance, materiality or admissibility as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action; or

- 3 -

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

b.    the right to object on any grounds to other discovery requests

involving or relating to the subject matter of these Interrogatories.

8.    Witness Systems objects to the Interrogatories, and the definitions and

instructions therein, to the extent they seek to enlarge upon or are otherwise

inconsistent with the duties imposed by the Federal Rules of Civil Procedure, the

Local Rules of this Court and/or any scheduling, discovery or other order entered

by the Court in this case. Witness Systems will respond to the Interrogatories as

required by law, giving all terms their ordinary and common sense meaning.

9.    Witness Systems objects to each Interrogatory to the extent it seeks

disclosure of Witness Systems' trade secrets, competitively sensitive information

or other confidential information. Witness Systems will only produce such

documents and information subject to the Agreed Protective Order entered by the

Court in this case.

10.    Witness Systems objects to each Interrogatory to the extent it seeks

disclosure of non-party trade secrets, competitively sensitive information or other

confidential information that Witness Systems is obligated to maintain in

confidence.

11.    Witness Systems' answers are based on its present knowledge,

information, belief and ongoing investigations. Witness Systems reserves the right

- 4 -

to supplement its responses to these Interrogatories as required by law upon discovery of additional documents and things.

12.    Witness Systems objects to each Interrogatory to the extent it seeks discovery of documents and things prior to, and/or in an order different from the times set forth in the discovery schedule entered by the Court in this case.

13.    In responding to these Interrogatories, Witness Systems states that it has conducted a diligent search, reasonable in scope, of those files and records in its possession or control believed to be the most likely to contain documents and information responsive to these Interrogatories and has solicited relevant documents and information from those individuals employed or otherwise affiliated with Witness Systems believed to be the most likely to have responsive documents and information. Witness Systems has not, however, undertaken to search or review all of the files and records in its possession, custody or control, nor has Witness Systems solicited documents from every individual employed by or otherwise affiliated with Witness Systems, because to do so would be unduly burdensome and expensive. In the event, therefore, that further documents, records or information responsive to any of the Interrogatories are identified or brought to Witness Systems' attention, Witness Systems reserves the right to amend or supplement these responses within a reasonable time thereafter.

- 5 -

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

# INTERROGATORIES

## INTERROGATORY NO. 1:

*Identify the dates of conception and reduction to practice of each of the alleged invention(s) claimed in U. S. Patent No. 5,790,798 ("the '798 patent"), and the evidence (e.g., witness testimony, documents) corroborating those dates of conception and reduction to practice.*

**ANSWER:**    Subject to and without waiving its objections or its right to raise additional objections in the future pursuant to Federal Rule of Civil Procedure 33(d), Witness Systems states that it conceived of and reduced to practice the invention(s) claimed in the '798 patent at least as early as May 31, 1996. Witness Systems refers NICE to WSNICE 000001 – WSNICE 000437, from which information concerning the dates of conception and reduction to practice may be ascertained and/or corroborated. Witness Systems continues to investigate the subject matter of this Interrogatory. Witness Systems will supplement and/or correct its response to this Interrogatory as it discovers more information.

## INTERROGATORY NO. 2:

*Identify the dates of conception and reduction to practice of each of the alleged invention(s) claimed in U.S. Patent No. 6,510,220 ("the '220 patent"), and the evidence (e.g., witness testimony, documents) corroborating those dates of conception and reduction to practice.*

**ANSWER:**    Subject to and without waiving its objections or its right to raise additional objections in the future pursuant to Federal Rule of Civil Procedure

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

ATI-2179706v1

33(d), Witness Systems states that it conceived of and reduced to practice the

invention(s) claimed in the '220 patent at least as early as March 12, 1998.

Witness Systems refers NICE to WSNICE 000001 – WSNICE 000437, from

which information concerning the dates of conception and reduction to practice

may be ascertained and/or corroborated. Witness Systems continues to investigate

the subject matter of this Interrogatory. Witness Systems will supplement and/or

correct its response to this Interrogatory as it discovers more information.

## INTERROGATORY NO. 3:

*Identify all patent applications which claim priority from or otherwise relate to the patents-in-suit.*

**ANSWER:**    Witness Systems objects to this Interrogatory on the ground that it

is overly broad, unduly burdensome, and not reasonably calculated to lead to the

discovery of admissible evidence. Subject to and without waiving its objections or

its right to raise additional objections in the future pursuant to Federal Rule of

Civil Procedure 33(d), Witness Systems states that U.S. Patent Application Nos.

10/118,848 and 11/166,630 are currently pending before the U.S. Patent and

Trademark Office and claim priority to the patents-in-suit.

## INTERROGATORY NO. 4:

*State each and every fact that support or tends to support Witness's contention that NICE has willfully infringed the patents-in-suit.*

- 7 -

ATI-2179706v1

**ANSWER:**    Witness Systems continues to investigate the subject matter of this

Interrogatory. Witness Systems will supplement and/or correct its response to this

Interrogatory as it discovers more information. Witness Systems responds that at

least as early as November 2004, Witness Systems marked its eQuality Balance

products with the '798 and '220 patent numbers.

## INTERROGATORY NO. 5:

*Identify all damages Witness contends it has incurred from NICE's alleged infringement of the patents-in-suit, including the amount of damages and the legal and factual basis for measuring or calculating such damages.*

**ANSWER:**    Witness Systems objects to this Interrogatory on the ground that it

is overly broad and unduly burdensome. Subject to and without waiving its

objections or its right to raise additional objections in the future pursuant to Federal

Rule of Civil Procedure 33(d), Witness Systems states that discovery is on-going

and it continues to investigate the subject matter of this Interrogatory. Witness

Systems will supplement and/or correct its response to this Interrogatory as it

discovers more information.

## INTERROGATORY NO. 6:

*If Witness's calculation of damages is based upon a reasonable royalty, identify how each of the following so-called Georgia-Pacific factors support Witness's calculation of a reasonable royalty:*

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

ATI-2179706v1

*(a)*     *Royalties received by Witness for the licensing of the patents-in-suit, proving or tending to prove an established royalty.*

*(b)*     *The rates paid by licensees in the industry for the use of other patents comparable to the patents-in-suit.*

*(c)*     *The nature and scope of the licenses, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.*

*(d)*     *Witness's established policy and marketing program with respect to the patents-in-suit and whether it imposes any kinds of restrictions on use on its licensees.*

*(e)*     *The commercial relationship between Witness and NICE.*

*(f)*     *The effect of the patented inventions in promoting sales of other of Witness's products; that existing value of the invention to Witness as a generator of sales of its non-patented products; and the extent of such derivative or convoyed sales.*

*(g)*     *The duration of the patents-in-suit and the likely duration of a license term under the patents-in-suit.*

*(h)*     *The established profitability of Witness's products made under the patents-in-suit; their commercial success; and their current popularity.*

*(i)*     *The utility and advantages of Witness's patents-in-suit over the old modes or devices, if any, that had been used for working out similar results.*

*(j)*     *The nature of the inventions claimed in the patents-in-suit; the character of the commercial embodiments produced by Witness; and the benefits to those who have used the inventions.*

WITNESS' RESPONSES TO 1ST SET OF INTERROGATORIES

(k)     *The extent to which NICE has allegedly made use of Witness's claimed inventions; and any evidence probative of the value of that use.*

(l)     *The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of Witness's claimed inventions or analogous inventions.*

(m)     *The portion of the realizable profit that should be credited to Witness's claimed invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements in NICE's alleged infringing products.*

(n)     *The opinion testimony of qualified experts.*

(o)     *The amount that a licensor (such as Witness) and a licensee (such as NICE) would have agreed upon (at the time the alleged infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licenses--who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount have been acceptable by a prudent patentee who was willing to grant a license.*

*See Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).*

**ANSWER:**     Witness Systems objects to this Interrogatory on the ground that it is compound, overly broad, and unduly burdensome. Witness Systems objects further on the ground that it is premature to the extent it seeks information about expert testimony. Subject to and without waiving its objections or its right to raise

- 10 -

additional objections in the future pursuant to Federal Rule of Civil Procedure

33(d), Witness Systems states that discovery is on-going and it continues to

investigate the subject matter of this Interrogatory.  Witness Systems will

supplement and/or correct its response to this Interrogatory as it discovers more

information.

## INTERROGATORY NO. 7:

*If Witness is seeking lost profits, identify the facts, if any, upon which*
*Witness will rely to show the market demand for products used to practice the*
*claimed methods of the patents-in-suit, the absence of acceptable non-*
*infringing substitutes for such products, Witness's manufacturing and*
*marketing capacity to exploit the demand for such products, the amount of*
*sales that Witness would have made in the absence of NICE's alleged*
*infringing sales and the amount of profit witness would have made on such*
*sales.  See Panduit Corp v. Stahlin Bros. Fibre Works Inc., 575 F.2d 1152 (6th*
*Cir. 1978); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573 (Fed. Cir.*
*1989), cert. denied, 493 U.S. 1022 (1990); BIC Leisure Prods., Inc. v.*
*Windsurfing Int'l, Inc, 1 F.3d 1214 (Fed. Cir. 1993).*

**ANSWER:**      Witness Systems objects to this Interrogatory on the grounds that it

is compound and seeks information that is not in Witness Systems' possession,

custody, or control.  Subject to and without waiving its objections or its right to

raise additional objections in the future pursuant to Federal Rule of Civil Procedure

33(d), Witness Systems states that discovery is on-going and it continues to

investigate the subject matter of this Interrogatory.  Witness Systems will

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

supplement and/or correct its response to this Interrogatory as it discovers more information.

### INTERROGATORY NO. 8:

*If Witness contends that screen capture products sold by Funk Software, Inc. are not acceptable non-infringing substitutes for the patents-in-suit, identify the factual and legal basis underlying such contention.*

**ANSWER:**    Witness Systems objects to this Interrogatory on the ground that it is vague and ambiguous as to the phrase "acceptable non-infringing substitutes." Subject to and without waiving its objections or its right to raise additional objections in the future pursuant to Federal Rule of Civil Procedure 33(d), Witness Systems states that discovery is on-going and it continues to investigate the subject matter of this Interrogatory. Witness Systems will supplement and/or correct its response to this Interrogatory as it discovers more information.

### INTERROGATORY NO. 9:

*If Witness is seeking damages based on lost profits from convoyed or collateral sales of non-patented products, identify each non-patented product, the amount of such damages and the legal and factual basis for measuring or calculating such damages.*

**ANSWER:**    Witness Systems objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Witness Systems objects further that this Interrogatory is compound. Subject to and without waiving its objections or its

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

ATI-2179706v1

right to raise additional objections in the future pursuant to Federal Rule of Civil

Procedure 33(d), Witness Systems states that discovery is on-going and it

continues to investigate the subject matter of this Interrogatory. Witness Systems

will supplement and/or correct its response to this Interrogatory as it discovers

more information.

## INTERROGATORY NO. 10:

*Identify each communication, with the exception of communications in this litigation, wherein Witness accused any third party of infringing the patents-in-suit and/or related patents.*

**ANSWER:**    Witness Systems objects to this Interrogatory on the ground that it

seeks information protected by the attorney-client privilege and/or the work

product doctrine. Witness Systems objects further that this Interrogatory seeks

discovery that is not reasonably calculated to lead to the discovery of admissible

evidence. Subject to and without waiving its objections or its right to raise

additional objections in the future pursuant to Federal Rule of Civil Procedure

33(d), Witness Systems responds that it has not filed suit accusing any third-party

other than NICE of infringement of the '798 or '220 patents.

## INTERROGATORY NO. 11:

*Identify the three persons within Witness Systems, Inc. or any of its subsidiary and/or affiliated companies, who are most knowledgeable with respect to the subject matter of each of Interrogatory Nos. 1-10.*

ATI-2179706v1

**ANSWER:**    Witness Systems objects to this Interrogatory on the ground that it

is compound.  Subject to and without waiving its objections or its right to raise

additional objections in the future pursuant to Federal Rule of Civil Procedure

33(d), Witness Systems states that it will designate appropriate individuals

pursuant to any Rule 30(b)(6) notice Witness Systems receives.

## INTERROGATORY NO. 12:

*Provide the name, law firm affiliation (if any), and address of any attorney or parent agent who has, or is likely to have, within his/or her possession, custody or control, any files relating to the prosecution of the patents-in-suit and/or any related patents.*

**ANSWER:**    Witness Systems objects to this Interrogatory on the ground that it

is seeks information protected by attorney-client privilege and/or work product

doctrine.  Witness Systems objects further that this Interrogatory is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence.  Subject to and without waiving its objections or its right to

raise additional objections in the future pursuant to Federal Rule of Civil Procedure

33(d), Witness Systems states that the following law firm is likely to have within

its possession, custody, or control, any files relating to the prosecution of the

patents-in-suit and/or any related patents: Jones Day, 1420 Peachtree Street, N.E.,

Suite 800, Atlanta, Georgia  30309.

- 14 -

DATED:  September 12, 2005

JONES DAY

By: /s José A. Duthil
    NAGENDRA SETTY
      Georgia Bar No. 636205
    CHRISTOPHER O. GREEN
      Georgia Bar No. 037617
    JOSÉ A. DUTHIL
      Georgia Bar No. 232605
    JONES DAY
    1420 Peachtree Street, N.E.
    Suite 800
    Atlanta, Georgia 30309-3053
    Telephone:  (404) 521-3939
    Facsimile:  (404) 581-8330
    nsetty@jonesday.com

Of Counsel:

Kenneth R. Adamo
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

**COUNSEL FOR PLAINTIFFS**
**WITNESS SYSTEMS, INC.**

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

ATI-2179706v1

## VERIFICATION

I, Kevin G. Hegebarth, state that the facts set forth in the within and foregoing Plaintiff Witness Systems, Inc.'s Responses to Defendants Nice Systems, Inc. and Nice Systems, Ltd.'s First Set of Interrogatories are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of September, 2005.

Signature

Kevin G. Hegebarth
Printed Name

Director, Strategic Analysis
Title

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

WITNESS SYSTEMS, INC,

     *Plaintiff,*

v.

NICE SYSTEMS, INC. and

NICE SYSTEMS, LTD.

     *Defendants.*

Case No. 1:02-CV-2531-CAP

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served an electronic copy of PLAINTIFF

WITNESS SYSTEMS, INC.'S RESPONSES TO DEFENDANTS NICE

SYSTEMS, INC. AND NICE SYSTEMS, LTD'S FIRST SET OF

INTERROGATORIES by e-mail to the following attorneys of record:

Angela S. Blackwell, Esq.
angelablackwell@asherafuse.com
William B. Hill, Jr., Esq.
williamhill@asherafuse.com
ASHE, RAFUSE & HILL, LLP
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309-3232

- 17 -

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

ATI-2179706v1

Scott G. Lindvall, Esq.
slindvall@kayescholer.com
Patricia J. Clarke
pclarke@kayescholer.com
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022

This 12th day of September, 2005.

JONES DAY

By: <u>José A. Duthil</u>
   NAGENDRA SETTY
     Georgia Bar No. 636205
   CHRISTOPHER O. GREEN
     Georgia Bar No. 037617
   JOSÉ A. DUTHIL
     Georgia Bar No. 232605

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
nsetty@jonesday.com

**COUNSEL FOR PLAINTIFFS
WITNESS SYSTEMS, INC.**

Of Counsel:

Kenneth R. Adamo
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

- 18 -

WITNESS' RESPONSES TO 1ST
SET OF INTERROGATORIES

ATI-2179706v1

# EXHIBIT Y

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
(Cite as: 2004 WL 883395 (D.Del.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PRAXAIR, INC. and Praxair Technology, Inc.,
Plaintiffs,
v.
ATMI, INC. and Advanced Technology
Materials, Inc., Defendants.
No. Civ. 03-1158-SLR.

April 20, 2004.
Jack B. Blumenfeld, Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for Plaintiffs.

Robert H. Richards, III, Richards, Layton &
Finger, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

\*1 At Wilmington, this 20th day of April, 2004,
having reviewed the motion of defendants to transfer
(D.I.12), and the memoranda submitted therewith;

IT IS ORDERED that the motion to transfer
(D.I.12) is denied for the reasons that follow:

1. On January 9, 2004, plaintiffs filed the present
action asserting that defendants infringe U.S. Patent
Nos. 5,937,895, 6,007,609, and 6,045,115
(collectively the "Praxair patents"). (D.I.1) On
March 8, 2004, defendants filed their answer,
denying plaintiffs' claims of infringement and
counterclaiming for declaratory judgment of
invalidity and noninfringement of the Praxair
patents. (D.I.10) A scheduling conference was held
on April 8, 2004.

2. Plaintiffs and defendants are Delaware
corporations and all parties are headquartered in
Danbury, Connecticut. (D.I.1) The Praxair patents
relate to a fluid storage and gas dispensing system
for fabricating semiconductor devices. Prior to
plaintiffs filing the present action, defendants
brought suit in the Southern District of New York
on defendants' patents, U.S. Patent Nos. 6,101,816
and 6,3543,476 BI (collectively the "ATMI

patents"). That suit, filed on July 11, 2003, has
subsequently been amended to include state law
claims relating to false advertising and unfair
competition. Discovery began in the New York
litigation in February 2004.

3. Defendants move the court to transfer this matter
pursuant to 28 U.S.C. § 1404(a) to the United States
District Court for the Southern District of New
York. Section 1404(a) provides: "For the
convenience of the parties and witnesses, in the
interests of justice, a district court may transfer any
civil action to any other district or division where it
might have been brought." 28 U.S.C. § 1404(a)
(2003). A plaintiff's choice of forum is to be
accorded substantial weight and courts should only
transfer venue if the defendant is truly regional in
character. *See Bergman v. Brainin,* 512 F.Supp.
972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel
Corp.,* 431 F.2d 22, 25 (3d Cir.1970)). A defendant
has the burden of establishing that "the balance of
convenience of the parties and witnesses strongly
favors" transfer. *Id.* Accordingly, "[d]efendants
brought into suit in Delaware must prove that
litigating in Delaware would pose a 'unique or
unusual burden' on their operations" for a Delaware
court to transfer venue. *See Wesley-Jessen Corp. V.
Pilkington Visioncare, Inc.,* 997 F.Supp. 556, 562
(D.Del.1993). A motion to transfer venue may also
be granted if there is a related case which has been
first filed or otherwise is the more appropriate
vehicle to litigate the issues between the parties. *See
American Bio Medica Corp. v. Peninsula Drug
Analysis Co., Inc.,* 1999 U.S. Dist. LEXIS 12455,
\*18 (D.Del.1999).

4. In reviewing a motion to transfer venue, courts
have not limited their consideration to the three
enumerated factors in § 1404(a). Rather, courts will
consider "all relevant factors to determine whether
on balance the litigation would more conveniently
proceed and the interests of justice be better served
by transfer to a different forum." *Jumara v. State
Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)
(internal quotations and citations omitted). In
*Jumara,* the Third Circuit provided a list of factors
to assist district courts in determining "whether, on
balance, the litigation would more conveniently
proceed and the interests of justice [would] be better
served by a transfer to a different forum." *Id.* These
factors entail six private and five public interests.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 883395, *1 (D.Del.))

Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

*2 5. In considering the private interest factors under *Jumara*, the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as this is the situs of incorporation for all the parties. By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware. Consequently, as a matter of law and contrary to defendants' assertions, Delaware is both parties' "home turf." (D.I. 13 at 2, 22)

6. The court is wholly unimpressed by defendants' contentions that Delaware is an inconvenient forum for the parties. First, defendants' contention that proximity to defendants' headquarters should be a factor for this court to consider is disingenuous at best. While the Southern District of New York is certainly closer to the parties' respective headquarters in Danbury, Connecticut, the court takes notice of the fact that there are four district courthouses in Connecticut, all of which are geographically closer to Danbury than the courthouse in Manhattan. If commuting time to court for the parties's employees were an issue, defendants' own choice of forum is not reflective of that concern. Second, the court is unpersuaded by defendants' myopic assertions that Wilmington would be a difficult place for defendants to litigate their case. The fact that New York City has three airports and a subway system are not compelling

factors in the consideration of a motion to transfer venue. (D.I. 13 at 7-8, 22; D.I. 24 at 14-15,) Third, defendants' contentions regarding convenience of the witnesses is similarly unpersuasive. [FN1] The convenience of the witnesses is only relevant to the extent that they might be unavailable for trial, something which defendants have not shown to be the case here.

> FN1. Defendants' assert that certain witnesses located in Florida and Texas, "travel to Wilmington would be less convenient than to New York City, as they would first have to fly into Philadelphia." (D.I. 13 at 22) Apparently, defendants' New York counsel is unfamiliar with the Philadelphia International Airport. Besides offering full international jet travel and operating as a hub for several large airlines, it is located a mere 23 miles from Wilmington. Unlike in Manhattan, travel time to the airport may be done in under a half hour from downtown Wilmington. The court also notes that the courthouse is located a few blocks from the Amtrak station. While not as glamorous as Manhattan, Wilmington also offers a variety of reasonably priced hotels within short walking distance of the court.

7. In considering the public interest factors under *Jumara*, the court is similarly unpersuaded by defendants' arguments. First, defendants suggest that transfer would reduce duplicative litigation; this assertion does not bear scrutiny. While the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities. As a consequence, a finding of validity or infringement in the New York litigation is not relevant to the case before this court. Moreover, the fact that defendants filed their complaint related to the ATMI patents first has no bearing on the propriety of plaintiffs' decision to bring suit for infringement of the Praxair patents in this court.

8. Finally, the court does not find that New York state has a special interest in the outcome of the litigation. Patent cases are explicitly federal issues and the rights determined thereunder are national in scope. While the location of infringing activity provides a basis for venue under § 1400, the residency of defendants is no less compelling. 28 U.S.C. § 1400. Consequently, defendants have failed to demonstrate that any of the public interest

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 883395, *2 (D.Del.))

factors under *Jumara* weigh strongly toward transfer.

*3 9. Therefore, the court concludes that defendants have failed to demonstrate that litigating the present case in Delaware presents a unique or undue burden and their motion is denied. (D.I 12)

Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 2006 WL 1813931T2 (Trial Motion, Memorandum and Affidavit) Praxair's Motion for a Permanent Injunction (May 9, 2006)Original Image of this Document with Appendix (PDF)

. 2006 WL 1182413T2 (Trial Motion, Memorandum and Affidavit) ATMI's Reply Brief in Support of its Inequitable Conduct Case (Mar. 17, 2006)Original Image of this Document (PDF)

. 2006 WL 1182414T2 (Trial Motion, Memorandum and Affidavit) ATMI's Reply Brief in Support of its Renewed Motion for Judgment as A Matter of Law (Mar. 17, 2006)Original Image of this Document (PDF)

. 2006 WL 1182415T2 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Atmi's Motion for A New Trial (Mar. 17, 2006)Original Image of this Document (PDF)

. 2006 WL 1182410T2 (Trial Motion, Memorandum and Affidavit) Praxair's Answering Brief in Opposition to ATMP's Motion for Judgment as a Matter of Law (Mar. 2, 2006)Original Image of this Document (PDF)

. 2006 WL 1182411T2 (Trial Motion, Memorandum and Affidavit) Praxair's Answering Brief in Opposition to Atmps Post-Trial Motion Concerning Inequitable Conduct (Mar. 2, 2006)Original Image of this Document (PDF)

. 2006 WL 1182412T2 (Trial Motion, Memorandum and Affidavit) Praxair's Answering Brief in Opposition to ATMI's Motion for a New Trial (Mar. 2, 2006)Original Image of this Document (PDF)

. 2006 WL 809089T2 (Trial Motion, Memorandum and Affidavit) Atmi's Reply Brief in Support of its Motion to Compel Production of Documents from Praxair and Uop Based on Waiver of Attorney-Client Privilege and Work Product Immunity (Feb. 3, 2006)Original Image of this Document (PDF)

. 2006 WL 809088T2 (Trial Motion, Memorandum and Affidavit) Atmi's Amended Opening Brief in Support of its Renewed Motion for Judgment as A Matter of Law (Feb. 1, 2006)Original Image of this Document (PDF)

. 2006 WL 819615T2 (Trial Motion, Memorandum and Affidavit) Atmi's Amended Opening Brief in Support of its Inequitable Conduct Case (Feb. 1, 2006)Original Image of this Document (PDF)

. 2006 WL 819620T2 (Trial Motion, Memorandum and Affidavit) Amended Opening Brief in Support of Atmi's Motion for A New Trial (Feb. 1, 2006)Original Image of this Document (PDF)

. 2005 WL 3667341T2 (Trial Motion, Memorandum and Affidavit) Praxair's Discovery Designations, Atmi's Counter Designations and Objections to Praxair's Discovery Designations and Praxair's Objections to Atmi's Counter Designations (Nov. 4, 2005)Original Image of this Document (PDF)

. 2005 WL 3666787T2 (Trial Motion, Memorandum and Affidavit) Praxair's Motion to Strike Another New Witness and more New Documents Identified by Atmi and to Preclude Atmi from Relying on them at Trial (Oct. 31, 2005)Original Image of this Document (PDF)

. 2005 WL 2867905T2 (Trial Motion, Memorandum and Affidavit) Praxair's Reply Brief in Support of its Motion to Strike the Declarations of Philip Chen and Christopher Jones (Sep. 19, 2005)Original Image of this Document (PDF)

. 2003 WL 24229530T2 (Trial Pleading) Complaint for Patent Infringement (Dec. 22, 2003)Original Image of this Document (PDF)

. 1:03CV01158 (Docket) (Dec. 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT Z

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)
(Cite as: 2003 WL 118005 (D.Del.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**TRUTH HARDWARE CORPORATION,**
**Plaintiff,**
v.
**ASHLAND PRODUCTS, INC., Defendant.**
**No. C.A. 02-1541 GMS.**

Jan. 13, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On October 15, 2002, the plaintiff, Truth Hardware Corporation ("Truth") filed the instant action alleging patent infringement of its "Advent" window operator. The defendant, Ashland Products, Inc. ("Ashland") now moves to transfer this case to the United States District Court for the Northern District of Illinois, Eastern Division, because litigation concerning a related patent is currently pending between the parties in that venue. For the following reasons, the court will deny Ashland's motion.

II. DISCUSSION

Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." [FN1] 28 U.S.C. § 1404(a). It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

> FN1. The parties do not dispute that this action could have been filed in the Northern District of Illinois.

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Id.* This inquiry requires "a multi-factor balancing test" embracing certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. [FN2] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN2. The first three of these private interests collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that Ashland has not met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others. First, Truth and Ashland are Delaware corporations and should reasonably expect to litigate in the forum. Additionally, the patent dispute and technology at issue is not "local" in nature or otherwise unique to the Northern District of Illinois.

Moreover, while it is true that litigation concerning a related patent is currently pending in the Northern District of Illinois, the court concludes that this is not as significant as Ashland suggests. Of critical importance in this regard is the fact that the Illinois action is several years old, has already proceeded through the dispositive motion phase, and is now set to begin trial on March 3, 2003. Thus, the advanced procedural posture of the Illinois action militates against a transfer.

Ashland further argues that, because the presiding judge in Illinois is familiar with the parties and the technology, judicial economy would be served by a transfer. While the court does not doubt that the

Not Reported in F.Supp.2d
(Cite as: 2003 WL 118005, *1 (D.Del.))

Illinois court may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself. To the extent collateral estoppel issues may arise from the Illinois litigation, such issues will ultimately have to be decided by a court, regardless of whether that court sits in Illinois or Delaware. Thus, Ashton's arguments on this point are of little avail.

*2 Finally, Ashton contends that non-party witness convenience weighs in favor of a transfer. The court must again disagree. In support of its contention, Ashton has identified three "critical" non-party witnesses that it claims would be inconvenienced by a trial in Delaware. Truth points out in its answer brief, hoever, that none of these witnesses resides in Illinois either, although it is unclear where they do reside. Nevertheless, it appears that these witnesses will have to travel regardless of where this action proceeds. Furthermore, the court does not find the possibility of a three-hour flight to be an onerous task warranting transfer.

III. CONCLUSION

For these reasons, IT IS HEREBY ORDERED that:

    1. Ashton's motion to transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division, (D.I.9) is DENIED.

Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 1:02CV01541 (Docket) (Oct. 15, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT AA

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 500920 (D.Del.)
(Cite as: 2002 WL 500920 (D.Del.))

Page 18

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
**STRATOS LIGHTWAVE, INC., Plaintiff/
Counterclaim Defendant,**
v.
**E20 COMMUNICATIONS, INC., Defendant/
Counterclaim Plaintiff.**
**No. CIV.A. 01-309-JJF.**

March 26, 2002.
Donald F. Parsons, Jr., Mona A. Lee, Morris, Nichols, Arsht & Tunnell, Wilmington, for Stratos Lightwave, Inc., plaintiff.

William J. Wade, Richards, Layton & Finger, Wilmington, for E20 Communications, Inc., defendant.

MEMORANDUM ORDER

FARNAN, District J.

**\*1** Presently before the court is a Motion To Transfer Venue To The Central District of California (D.I.11) filed by Defendant E20 Communications, Inc. ("E20"). For the reasons discussed, the motion will be denied.

BACKGROUND

Stratos Lightwave, Inc. ("Stratos") and E20 both manufacture and sell optoelectronic transciever modules which are used in computer networks. (D.I. 8 at 1). Stratos is a Delaware corporation with its headquarters in Chicago, Illinois and facilities in California. (D.I. 17 at 1). E20 is also incorporated in Delaware, but maintains its headquarters in Calabasas, California. (D.I. 8 at 2). The design and development of E20's accused products is conducted in California, where the majority of E20's domestic employees are located. (D.I. 8 at 2). The accused products are manufactured internationally, in Asia. (D.I. 8 at 2).

On May 5, 2001, Stratos filed this action against E20 alleging infringement of U.S. Patent Nos. 5,717,533, 5,734,558, 5,864,468, 5,879,173, Re. 36,820, 6,201,704B1, and 6,320,878BI. (D.I.1). E20 subsequently filed the instant motion to transfer.

DISCUSSION

By its motion, E20 contends that Delaware is an inconvenient forum because its corporate offices, where all the relevant documents and knowledgeable fact witnesses are located, are in California. (D.I. 8 at 7). E20 contends that litigation in Delaware would be not only expensive, but disruptive to the corporation. (D.I. 8 at 7). E20 further contends that Delaware is an inconvenient forum for the witnesses, none of whom reside in Delaware, and further that several non-party witnesses exist who would be beyond the Court's subpoena power. (D.I. 8 at 8). Additionally, E20 contends that the Central District of California is more convenient because the median time to trial is faster. (D.I. 8 at 11). Finally, E20 contends that California, not Delaware, has a local interest in deciding this controversy because the majority of the allegedly infringing activity took place in California. (D.I. 8 at 11). [FN1]

> FN1. E20 continuously argues that Stratos' contacts with Delaware are "de minimis, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

In opposition, Stratos contends that its choice of forum is entitled to substantial deference. (D.I. 17 at 4). Stratos contends that although Delaware is not its home turf, it chose to sue E20 in Delaware because E20 is incorporated in this state. (D.I. 17 at 5). Stratos further contends that E20, a successful international company, is capable of financing litigation in Delaware, and transferring this action to California would merely shift the burden of expense to Stratos. (D.I. 17 at 7). By E20's failure to identify non-party witnesses beyond subpoena power, Stratos contends that the convenience of the witnesses does not weigh in favor of transfer. (D.I. 17 at 11-10). Stratos further contends that adjudication of this action, pursuant to the Court's Scheduling Order (D.I.15), will be faster than in California, where a new scheduling order would be put in place. (D.I. 17 at 12).

Transfer of a civil action is governed by 28 U.S.C. § 1404(a) which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal citations omitted). Because it is undisputed that Stratos could have brought the instant action in the Central District of California, the Court's only task is to determine whether the factors enumerated in § 1404(a) and by the United States Court of Appeals for the Third Circuit, warrant a transfer.

*2 The Third Circuit has instructed that when reviewing a motion to transfer under 28 U.S.C. § 1404(a) district courts must consider, among other things, private [FN2] and public [FN3] interests. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir.1995). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id.* at 883; *see also Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1920). The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *See Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999).

> FN2. The private interests are:
> (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.
> *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 883 (3d Cir.1995).

> FN3. The public interests are:
> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in

diversity cases.
*Id.*

I. Private Interests

After a consideration of the relevant private interests, the Court concludes that the balance of these factors does not weigh strongly in favor of transfer. As stated previously, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Shutte,* 431 F.2d at 25. In the instant case, Stratos' preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf. *See Continental,* 61 F.Supp.2d at 131 (stating that "the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred"). However, it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. *See Joint Stock Society v. Heublein, Inc.,* 936 F.Supp 177, 187 (D.Del.1996). And the fact that E20 has incorporated in Delaware is a rational and legitimate reason for choosing to sue E20 in Delaware. In fact, E20, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F.Supp. 962, 965 (D.Del.1993). Therefore, Stratos' forum preference, as well as E20's Delaware incorporation, weigh in favor of maintaining this action in Delaware.

The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. No witness, reluctant to testify, beyond the subpoena power of the Court, has been identified. The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, the private interests weigh in favor of maintaining this action in Delaware.

II. Public Interests

In the Court's view, none of the public interests weigh in favor of transfer. Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2002 WL 500920, *2 (D.Del.))

Page 20

application of state law is not applicable. Further, in light of the Scheduling Order already in place, the Court is not persuaded that this case would be adjudicated faster in the Central District of California. Finally, as discussed above, the Court concludes that Delaware is not an unduly inconvenient forum for E20 to litigate this action in. Accordingly, the motion to transfer will be denied. [FN4]

> FN4. The Court is aware of *Methode Electronics & Stratos Lightwave, Inc. v. Finisar,* Civil Action No.00-20985 (N.D.Ca.) (the "Methode Case"), and its resolution. It is the Court's view that the Methode Case is irrelevant to the instant case, and the presence or absence of that action is not material to the Court's decision to retain jurisdiction over the instant case.

*3 NOW THEREFORE IT IS HEREBY ORDERED this 26 day of March 2002 that E20's Motion To Transfer Venue To The Central District Of California (D.I.11) is *DENIED.*

Not Reported in F.Supp.2d, 2002 WL 500920 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 1:01CV00309 (Docket) (May. 11, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.