# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**BY ELECTRONIC FILING AND HAND DELIVERY**

Telephone
302 652-5070

August 11, 2006

Facsimile
302 652-0607

Web Site
www.fr.com

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 North King Street
Wilmington, DE 19801



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:     NICE Systems, Inc. and NICE Systems Ltd. v. Witness Systems, Inc.
        Civil Action No. 06-311

Dear Judge Farnan:

I have enclosed an amended copy of Defendant Witness Systems, Inc.'s Opening Brief in Support of Its Motion For Transfer, D.I. No. 15, filed June 29, 2006.  In preparing Witness' Reply Brief in Support of Its Motion For Transfer, we discovered that eight bullet points on pages 18 and 19 of D.I. No. 15 were converted to question marks.  This was a result of an encoding error that occurred when the original Word format document was converted to PDF format for filing.  The amended Brief is identical in every way to D.I. No. 15, save for the restoration of the bullet points on pages 18 and 19.

I regret the late discovery of this encoding error, and apologize for any inconvenience that correction of this encoding error may cause the court.

Respectfully yours,

*/s/ Kyle Wagner Compton*

Kyle Wagner Compton

cc:  Josy W. Ingersoll, Esq. (via email)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD.,

    *Plaintiffs*,

    v.

WITNESS SYSTEMS, INC.,

    *Defendant*.

C.A. No. 06-311-JJF

**DEFENDANT WITNESS SYSTEMS, INC.'S
BRIEF IN SUPPORT OF ITS MOTION FOR TRANSFER**

DATED:  June 29, 2006

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070

Nagendra Setty (GA Bar #636205)
(*Pro Hac Vice* Pending)
Daniel A. Kent (GA Bar #415110)
(*Pro Hac Vice* Pending)
John D. Hamann (GA Bar #320109)
(*Pro Hac Vice* Pending)

1230 Peachtree Street, NE, 19th Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Attorneys for Defendant
Witness Systems, Inc.

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

II.   SUMMARY OF ARGUMENT ..........................................................................2

III.  STATEMENT OF FACTS ...............................................................................3

      A.    Witness and NICE.................................................................................3

      B.    Overview of the Technology at Issue In All Cases..................................5

      C.    Pending Litigation Between Witness and NICE.......................................6

            1.    *NICE I - STS Software Systems Ltd. v. Witness
                  Systems, Inc.* ...............................................................................6

            2.    *NICE II - Witness Systems, Inc. v. NICE Systems,
                  Inc. and NICE Systems Ltd.* ........................................................7

            3.    *NICE III - Witness Systems, Inc. v. NICE
                  Systems, Inc. and NICE Systems Ltd.*............................................8

            4.    *NICE IV - NICE Systems, Inc. and NICE Systems
                  Ltd. v. Witness Systems, Inc.* ......................................................9

      D.    *NICE IV* Involves the Exact Same Issues .............................................11

            1.    Products At Issue .......................................................................11

            2.    All Sixteen Patents Cover Similar Subject
                  Matter.........................................................................................12

            3.    *NICE IV* Shares a Largely Common Pool of Prior
                  Art with *NICE I-III*. ..................................................................12

      E.    Key Documents and Non-Party Witnesses Are Not In Delaware. ..........13

IV.   ARGUMENT AND CITATIONS OF AUTHORITIES....................................15

      A.    Legal Standard and Application to the Facts .........................................15

      B.    This Action Could Have Been Brought In NDGa. .................................16

      C.    The Facts Weigh Strongly In Favor of Transfer....................................17

            1.    The Interests of Justice and Relevant Public
                  Interests Strongly Favor Transfer. ..............................................17

                  a.    Interests of Justice, Judicial Economy,
                        and Practical Considerations............................................18

b.      Georgia Has Local Interest In This
        Controversy..................................................................19

2.      Relevant Private Interests Strongly Favor
        Transfer..........................................................................20

        a.      Convenience of the Parties.............................20

        b.      Convenience of the Witnesses .......................21

V.      CONCLUSION.................................................................................22

12003287.doc

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Affymetrix, Inc. v. Synteni, Inc.,*
        28 F. Supp. 2d 192 (D. Del. 1998).........................................................17, 20, 21

*Altera Corp. v. Xilinx, Inc.,*
        No. 95-242-JJF (D. Del. Mar. 29, 1996).................................................2, 15, 19

*American Bio Medica Corp. v. Peninsula Analysis Co., Inc.,*
        No. 99-218, 1999 WL 615175 (D. Del. Aug. 3, 1999)...............................18, 19

*Bayer AG v. Biovail Corp.,*
        Civ. No. 00-466-JJF (D. Del. July 17, 2000)..................................................18

*Bayer Bioscience N.V. v. Monsanto Co.,*
        No. 03-203, 2003 WL 1565864 (D. Del. Mar. 25, 2003).................................17

*Brunswick Corp. v. Precor Inc.,*
        No. 00-691, 2000 WL 1876477 (D. Del. Dec. 12, 2000)................................16

*Continental Casualty Co. v. American Home Assurance Co.,*
        61 F. Supp. 2d 128 (D. Del. 1999)..................................................................20

*Erbamont Inc. v. Cetus Corp.,*
        720 F. Supp. 387 (D. Del. 1989).....................................................................18

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
        318 F. Supp. 1116 (S.D.N.Y. 1970).........................................................11, 12

*Green Isle Partners, Ltd., S.E., v. The Ritz Carlton Hotel Co., L.L.C.,*
        No. 01-202-JJF (D. Del. Nov. 2 2001) ....................................................3, 4, 21

*Hoffman v. Blaski,*
        363 U.S. 335 (1960).......................................................................................16

*Jumara v. State Farm Insurance Co.,*
        55 F.3d 873 (3d Cir. 1995)........................................................................17, 20

*Nilssen v. Osram Sylvania, Inc.,*
        No. 00-695-JJFm 2001 WL 34368395 (D. Del. May 1, 2001).........................21

*Pall Corp. v. Bentley Laboratories, Inc.,*
        523 F. Supp. 450 (D. Del. 1981).....................................................................17

*Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.,*
        575 F.2d 1152 (6th Cir. 1978) ........................................................................11

*Pennwalt Corp. v. Purex Industries, Inc.,*
    659 F. Supp. 287 (D. Del. 1986)...................................................................................16

*Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.,*
    820 F. Supp. 150 (D. Del. 1992)..................................................................................16

*Shutte v. Armco Steel Corp.,*
    431 F.2d 22 (3d Cir. 1970).........................................................................................16

*Smithkline Corp. v. Sterling Drug, Inc.,*
    406 F. Supp. 52 (D. Del. 1975)...................................................................................18

*Stewart Organization, Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988).....................................................................................................15

*Textron Innovations, Inc. v. The Toro Co.,*
    No. 05-486, 2005 WL 2620196 (D. Del. Oct. 14, 2005)..............................................19

*Waste Distillation Tech., Inc. v. Pan America Resources, Inc.,*
    775 F. Supp. 759 (D. Del. 1991).......................................................................15, 16, 17

## DOCKETED CASES

*STS Software System Ltd. v. Witness System, Inc.,*
    No. 04 Civ. 5615 (S.D.N.Y. Dec. 16, 2004)...............................................................4, 5

*STS Software System Ltd. v. Witness System, Inc.,*
    No. 1:04-CV-2111-RWS ("*NICE I*")..............................................................................1

*Witness System, Inc. v. NICE System Inc. and NICE System Ltd.,*
    No. 1:04-CV-2531-CAP ("*NICE II*")..............................................................................1

*Witness System, Inc. v. NICE System, Inc. and NICE System Ltd.,*
    No. 1:06-CV-0126-TCB. ("*NICE III*")...........................................................................1

*Yodlee, Inc. v. Block Finance Corp.,*
    No. 03-600-JJF (D. Del. Aug. 27, 2003) .......................................................................2

## FEDERAL STATUTES

28 U.S.C. § 1391(c) ..........................................................................................................17

28 U.S.C. § 1400(b) ..........................................................................................................17

28 U.S.C. § 1404(a) .......................................................................................1, 6, 7, 15, 22

FED. R. CIV. P. 45(c)(3)(A)(ii) ...........................................................................................21

**MISCELLANEOUS**

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper
*Federal Practice and Procedure: Jurisdiction and Related Matters*
§ 3581, at 415 (2d ed. 1986) ............................................................................ 22

**DEFENDANT WITNESS SYSTEMS, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER**

Defendant Witness Systems, Inc. ("Witness") respectfully requests that this Court

transfer this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a),

where the parties already are involved in ongoing patent litigation involving the same

technologies and many of the same products. Such a transfer would serve the interests of

justice and promote judicial economy. As shown below, the Northern District of Georgia

is the more appropriate forum.

## I. NATURE AND STAGE OF THE PROCEEDINGS

This case is the *fourth* in a series of patent infringement suits between Witness

and NICE.[1] The three earlier cases already are pending in the Northern District of

Georgia (Atlanta division) ("NDGa"). The first two cases[2] are still in the midst of

discovery, having both been referred to the same Special Master for discovery disputes

and claim construction. The third case[3] was filed on January 19, 2006 and is in the early

stages of discovery. These three earlier cases collectively involve the majority of

Witness' and NICE's products for capturing, recording, monitoring, and/or analyzing

customer interactions with call center representatives. This fourth case involves these

---

[1] NICE Systems Ltd., based in Israel, wholly owns (1) STS Software Systems Ltd. (an inactive shell company) and (2) NICE Systems, Inc., its U.S. subsidiary. These entities are collectively referred to as "NICE" herein.

[2] *STS Software Sys. Ltd. v. Witness Sys., Inc.*, No. 1:04-CV-2111-RWS ("*NICE I*"); and *Witness Sys., Inc. v. NICE Sys., Inc. and NICE Sys. Ltd.*, No. 1:04-CV-2531-CAP ("*NICE II*").

[3] *Witness Sys., Inc. v. NICE Sys., Inc. and NICE Sys. Ltd.*, No. 1:06-CV-0126-TCB. ("*NICE III*").

same technologies and many of these same products, including all of the Witness products already at issue in the NDGa.

NICE could have asserted the Delaware claims as counterclaims in *NICE III*, the most recent Georgia action, but did not. Instead, NICE brought this fourth suit in Delaware – far from Atlanta, where the parties are litigating these disputes and where Witness developed many of the accused products. Witness has nothing in Delaware, nor does NICE. Further, NICE brought this fourth suit in Delaware knowing that the NDGa already has invested significant judicial resources in these disputes.

Transferring this case would best allocate judicial resources because nothing substantive has yet occurred in Delaware – Witness' responsive pleading being due on June 30, 2006. For the following reasons, the NDGa is the more appropriate forum in which to proceed, and this Court should therefore transfer this case.

## II.    SUMMARY OF ARGUMENT

1.    Transferring this case to the NDGa will serve the interests of justice and judicial economy because *NICE I-III* are already pending there and concern the same technologies and many of the same products at issue here. *See Yodlee, Inc. v. Block Fin. Corp.,* No. 03-600-JJF, at 8:16-9:15 (transcript of August 27, 2003 Telephone Conference; Order of Aug. 28, 2003) (Ex. 1);[4] *Altera Corp. v. Xilinx, Inc.*, No. 95-242-JJF, at 4 (D. Del. Mar. 29, 1996) (Ex. 2) (transferring patent case to a district with two other actions between the parties and which was familiar with the complex technologies,

---

[4] Exhibit citations herein refer to Exhibits to the Declaration of Kyle Wagner Compton in Support of Witness Systems, Inc.'s Motion for Transfer, filed concurrently.

12003287.doc

product structures, and prior art).  The NDGa could then coordinate appropriate aspects of this case with *NICE I-III* to best utilize judicial resources.

2.    Transferring this case to the NDGa will also serve the convenience of the parties and the witnesses.  Delaware is not convenient for any of the parties.  NICE is headquartered in Israel, with its U.S. sales office in New Jersey.  Witness is headquartered in suburban Atlanta, where many witnesses and documents are located. No documents or witnesses are located in Delaware, and all likely third party trial witnesses are beyond the *subpoena* power of the Court.  Thus, the NDGa is more convenient for Witness and at least as convenient for NICE.  *See, e.g., Green Isle Partners, Ltd., S.E., v. The Ritz Carlton Hotel Co., L.L.C.,* No. 01-202-JJF, at 6 (D. Del. Nov. 2, 2001) (Ex. 3); *Nilssen v. Osram Sylvania, Inc.*, No. 00-695-JJF, 2001 WL 34368395, at *2 (D. Del. May 1, 2001) (Ex. 4).   Additionally, transferring this case would allow for the more efficient coordination of depositions of witnesses with knowledge of accused products in multiple *NICE* cases.

## III.    STATEMENT OF FACTS

Witness has provided below (a) an overview of the parties, (b) an overview of the technology at issue, (c) a summary of the pending litigations, *NICE I-IV*, (d) a description of the significant overlap in products, patents, and prior art, and (e) an overview of the locations of key evidence, including documents and non-party witnesses.

### A.    <u>Witness and NICE</u>

Anyone who has heard the now-familiar phrase, "[t]his call may be recorded for quality assurance purposes," might well have encountered NICE or Witness products. Witness is a leading provider of software and systems that allow companies to capture,

record, monitor, and analyze their customer service processes, including customer

interactions.  (Declaration of Kevin Hegebarth ¶ 8.)[5]  Witness acquired Eyretel, plc, a

British company headquartered in the United Kingdom, in 2003.  (*Id.* at ¶ 9.)[6]  Witness'

products have been well received in the market, and Witness recorded approximately

$185 million in revenues in 2005.  (*Id.* at ¶ 11.)  Witness' corporate headquarters are

located in suburban Atlanta, where it employs approximately 350 people, including over

75 people who have been involved with the research and development of the accused

products and over 45 people involved in the sales of these products.  (*Id.* at ¶ 12.)

Witness has no presence in Delaware – no offices, no employees, no known former

employees, and no documents.[7]  (*Id.* at ¶ 4.)

      NICE Systems Ltd. is an Israeli corporation based in suburban Tel Aviv.  (D.I. 1,

Compl. ¶ 3.)  It wholly owns STS Software Systems Ltd. (an inactive shell company) and

NICE Systems, Inc., its U.S. sales arm (again, collectively referred to herein as "NICE").

(Ex. 5, *STS Software Sys. Ltd. v. Witness Sys., Inc.*, No. 04 Civ. 5615, at 2 (S.D.N.Y. Dec.

16, 2004) (order granting motion to transfer).)  NICE describes itself on its website as

"the market leader in providing fast and efficient solutions for the capture, storage,

retrieval and analysis of customer interactions for the enterprise sector, including contact

centers, financial trading floors and facilities organization. . . .  NICE's solutions serve

---

[5] References in this brief to "Hegebarth Decl." refer to the Declaration of Kevin
Hegebarth in Support of Witness Systems, Inc.'s Motion for Transfer.  (Ex. 39.)

[6] Since then, Witness has integrated or rebranded some of Witness' and Eyretel's
products.  (*Id.* at ¶ 10.)

[7] Witness and NICE Systems, Inc. are Delaware corporations.  However, this does not
make Delaware more convenient nor will staying in Delaware promote judicial economy.
*See, e.g.*, *Green Isle Partners, Ltd*, No. 01-202-JJF, at 6 (Ex. 3).

over 23,000 customers worldwide, including over 75 of the Fortune 100 companies," and, in 2005, NICE recorded over $311 million in gross revenue.  (Ex. 6, NICE "Corporate Overview".)  Perhaps most telling is that NICE has not identified *any* facilities, offices or employees in Delaware.  (*See id.*; *see also* Exs.7-9, NICE's Initial Disclosures for *NICE I*, *NICE II*, and *NICE III*, identifying no Delaware witnesses and identifying numerous witnesses located in Israel.)

**B.**    **Overview of the Technology at Issue In All Cases**

The concept of recording a telephone call for later replay seems simple and straightforward, but a great deal of technology is involved in recording the voice and computer interactions surrounding such a call in a call center.  Particularly in larger call centers, which employ upwards of 3,000 to 4,000 agents, the technologies are often highly sophisticated.

Both Witness and NICE market products that allow call centers to monitor, record, analyze, and playback conversations between telephone agents and customers.  In essence, Witness' and NICE's products allow call center managers to precisely recreate their employees' interactions with customers for later review.  Witness and NICE both offer products for use with traditional digitized audio data and for packetized data utilizing Voice-over Internet Protocol ("VoIP").

Traditionally, common systems for capturing, recording, monitoring, and/or analyzing telephone calls included certain core components.  Typically, these components included:  (1) telephony equipment, such as a switch, that could interface the public telephone network with the call center and perform other functions; (2) a computer-based controller to facilitate the functions and operations of the system; (3) a

- 5 -

recording unit to record calls and accompanying data; and (4) a replay component so that a recorded call could be reviewed by call center supervisors and managers.  These systems historically used media such as digital audio tapes to store the audio data, which is now done most frequently on hard disks.  These systems have been improved to meet the market demands and often are the subject of patent protection.

Currently, six patents directed to such technologies, and Witness and NICE products purportedly embodying such technologies, are being litigated in the NDGa in *NICE I-III*.  As the Court is by now well aware, *NICE IV* involves ten more patents in precisely the same technical niche.

### C.    Pending Litigation Between Witness and NICE

#### 1.    *NICE I - STS Software Systems Ltd. v. Witness Systems, Inc.*

On July 20, 2004, Witness filed suit against NICE in the NDGa seeking a declaratory judgment that Witness does not infringe NICE's U.S. Patent No. 6,122,665 ("the '665 patent") (Ex. 10).  (*See* Ex. 40, *NICE I* Compl. ¶ 4.)  That same day, NICE sued Witness in the Southern District of New York claiming infringement of the '665 patent.  Judge Koeltl (SDNY) transferred that action to the NDGa under 28 U.S.C. § 1404(a), upon Witness' motion.  (Ex. 5 at 13.)  The SDNY found (1) that "Georgia has a much stronger public interest in adjudicating [the] dispute than New York because Witness is located in Georgia and the operative facts of the alleged infringement occurred in Georgia . . . ."; (2) that transfer "would promote judicial efficiency by allowing the claims to be consolidated if appropriate and discovery to be consolidated"; and (3) that "because this action has commenced only recently, little judicial effort will be wasted in

12003287.doc

transferring it to a new forum."  (*Id.* at 12-13 (citation omitted).)  **All of these findings also apply to Witness' motion to transfer NICE IV.**

After the SDNY transferred *NICE I*, the NDGa consolidated the two STS actions on January 14, 2005.  NICE later amended its complaint to drop the initial patent-in-suit and to add three children patents:  U.S. Patent Nos. 6,865,604; 6,871,229; and 6,880,004. (Ex. 11, *NICE I* First Am. Compl; Exs. 36-38, patents-in-suit in *NICE I*.)  In *NICE I*, NICE asserted that all four of these patents "describe[] a system and method for receiving, storing, and playing back a telephone communication session performed on a computer network."  (*Id.* at ¶¶ 16, 24, 32.)  Based on that alleged scope, NICE accused the following Witness products:  eQuality ContactStore for IP, ContactStore for IP, Witness ContactStore for Communication Manager, Witness Quality for Communication Manager, Witness ContactStore Business Edition, and Witness ContactStore Enterprise Edition.  (*Id.* at ¶¶ 17, 25, 33.)  These six, seemingly distinct, product names actually identify only four distinct Witness products:  (1) ContactStore; (2) ContactStore for IP; (3) ContactStore for Communications Manager; and (4) Quality for Communications Manager.  (Hegebarth Decl. ¶ 13.)  The other product names are largely attributable to re-branding and product integration.  (*Id.*)

### 2. *NICE II - Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*

On August 30, 2004, Witness filed suit in the NDGa against NICE alleging infringement of U.S. Patent Nos. 5,790,798 ("the '798 patent") (Ex. 12) and 6,510,220 ("the '220 patent") (Ex. 13).  (*See* Ex. 14 , *NICE II* Compl. ¶¶ 14, 18.)[8]

---

[8]  Witness initially sued only NICE Systems, Inc., and later sued NICE Systems Ltd. Judge Pannell (NDGa) consolidated the actions with NICE's consent.

12003287.doc

The '798 and '220 patents disclose computer-based systems, software and related methods that allow one to record both an agent's voice and her computer interactions while on a call and replay both interactions in tight synchronization.  (Exs. 12-13.) NICE's Customer Experience Management Products, including NICEUniverse, NICE Central Logging System, NICE Logger and NICE Screen Logger, are among the products at issue in *NICE II*.  (Ex. 14 ¶¶ 15, 19.)

Both *NICE I* and *NICE II* have been referred to Special Master McKelvie for discovery and claim construction.   (Exs. 15-16, Orders entered March 14, 2006 in *NICE I* and *NICE II*.)  These cases remain in the early stages of discovery – many important depositions have not yet occurred and the parties are in the midst of submitting claim construction briefs and preparing for *Markman* hearings, now scheduled for July and September, 2006.

### 3.    *NICE III - Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*

On January 19, 2006, Witness filed suit in the NDGa against NICE alleging infringement of U.S. Patent No. 6,404,857 ("the '857 patent") (Ex. 17).  (Ex. 18, *NICE III* Compl. ¶ 11.)  The '857 patent discloses software and computer-based systems that allow one to monitor and analyze communications to detect the presence of at least one predetermined parameter, such as an angry voice or a particular phrase like "cancel my subscription."  (Ex. 17.)  Witness has accused the NICE Perform suite of products, including NICE Perform software and systems, NICE Central Logging System, NICE Logger, etc.  (Ex. 18.  ¶¶ 10-11.)  *NICE III* is early in discovery and claim construction, with the parties having exchanged only one round of written discovery and claim terms to be construed.

- 8 -

4.    *NICE IV - NICE Systems, Inc. and NICE Systems Ltd. v. Witness Systems, Inc.*

On May 10, 2006, NICE filed this case alleging that Witness' products used to capture, record, monitor, and/or analyze calls infringe the following ten NICE patents:

i.    U.S. Patent No. 5,274,738 (Ex. 19) which NICE asserts "discloses and claims a digital modular voice processing system" (D.I. 1, Compl. ¶ 9);

ii.    U.S. Patent No. 5,396,371 (Ex. 20) which NICE asserts "discloses and claims methods, systems and a device for processing, storing and retrieving audio in connection with audio loggers" (D.I. 1, Compl. ¶ 17);

iii.    U.S. Patent No. 5,819,005 (Ex. 21) which NICE asserts "discloses and claims, among other things, modular digital recording loggers" (D.I. 1, Compl. ¶ 25);

iv.    U.S. Patent No. 6,249,570 (Ex. 22) which NICE asserts "discloses and claims methods and systems for recording information regarding telephone calls" (D.I. 1, Compl. ¶ 33);

v.    U.S. Patent No. 6,728,345 (Ex. 23) which NICE asserts "discloses and claims systems and methods for recording information regarding telephone calls" (D.I. 1, Compl. ¶ 41);

vi.    U.S. Patent No. 6,775,372 (Ex. 24) which NICE asserts "discloses and claims multi-stage data logging systems as well as methods related to, and a data logger used in, such systems" (D.I. 1, Compl. ¶ 50);

vii.    U.S. Patent No. 6,785,370 (Ex. 25) which NICE asserts "discloses and claims methods, computer programs and articles of manufacturing for

constructing and maintaining data representations of lifetimes of telephone calls" (D.I. 1, Compl. ¶ 58);

viii.    U.S. Patent No. 6,870,920 (Ex. 26) which NICE asserts "discloses and claims methods for accessing information in a digital loggers and related systems" (D.I. 1, Compl. ¶ 67);

ix.    U.S. Patent No. 6,959,079 (Ex. 27) which NICE asserts "discloses and claims systems for monitoring, based on a predefined condition, the telephonic interactions, including both monitoring and recording screen and audio data, between an agent and a customer" (D.I. 1, Compl. ¶ 76); and

x.    U.S. Patent No. 7,010,109 (Ex. 28) which NICE asserts "discloses and claims systems for recording and monitoring IP multimedia sessions" (D.I. 1, Compl. ¶ 85).

These patents are directed toward the same technologies at issue in *NICE I-III* and based on that alleged scope, NICE accused the following eleven Witness products of infringing:  Eyretel's ContactStore, Eyretel's MediaStore, Eyretel's Contact 7000, eQuality ContactStore, ContactStore, Witness ContactStore for Communication Manager, Witness Quality for Communication Manager, Impact 360, eQuality Balance, eQuality ContactStore for IP, and Witness ContactStore.  (*See* D.I. 1, Compl. ¶¶ 10, 18, 34, 43, 51.)  Similar to *NICE I*, these eleven, seemingly distinct, product names actually identify only five Witness products:  (1) ContactStore; (2) ContactStore for IP; (3) ContactStore for Communications Manager; (4) Quality for Communications Manager; and (5) eQuality Balance.  (Hegebarth Decl. ¶ 14.)

12003287.doc

### D.    *NICE IV* Involves the Exact Same Issues

*NICE IV* involves (1) the same products, (2) patents with similar subject matter and claim scope, and (3) a largely common pool of prior art with respect to *NICE I-III*.

### 1.    Products At Issue

This case involves every accused product already at issue in *NICE I*.[9]  The five products at issue are also relevant in *NICE II* and *III*, even though Witness is the patentee alleging infringement in those two cases.  Specifically, the Witness products accused in *NICE IV* may also be relevant to damages calculations for *NICE II* and *NICE III*.  *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) (finding that a patentee must establish demand for the patented product and capability to exploit that demand with own product to recover lost profits); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-22 (S.D.N.Y. 1970) (finding that whether a patentee produces products covered by the patent may affect the calculation of a reasonable royalty).  Likewise, the accused NICE products in *NICE II* and *NICE III* may be relevant in *NICE I* and *NICE IV* for evaluating commercial success, measuring damages and/or assessing the appropriateness of injunctive relief.  Accordingly, the technical operation of the parties' products will likely be relevant to all four *NICE* cases.

---

[9] In other words, (1) ContactStore, (2) ContactStore for IP, (3) ContactStore for Communications Manager, and (4) Quality for Communications Manager are at issue in both *NICE I* and *NICE IV*.  NICE has also accused another Witness product in *NICE IV*, eQuality Balance.  (D.I. 1, Compl. ¶ 34.)

### 2.    All Sixteen Patents Cover Similar Subject Matter.

The ten *NICE IV* patents overlap the subject matter of the patents in *NICE I-III*. For example, in *NICE I*, NICE described its patents-in-suit as systems for "receiving, storing, and playing back a telephone communication . . . ." (Ex. 11 at ¶¶ 16, 24, 32.) In this case, NICE describes four of the patents-in-suit as claiming, in part, systems for (*i*) "processing, storing and retrieving audio" (D.I. 1, Compl. ¶ 17); (*ii*) "recording information regarding telephone calls" (*Id.* ¶ 33); (*iii*) "recording information regarding telephone calls" (*Id.* ¶ 41); and (*iv*) "accessing information in a digital loggers" (*Id.* ¶ 67). Thus, NICE's own description of the these patents establishes overlapping subject matter and claim scope between patents at issue in *NICE I* and *NICE IV*.

Similarly, NICE's own description of its patents also establishes overlapping subject matter and claim scope between the patents-in-suit in *NICE IV* and *NICE II-III*. (*Compare id.*, *NICE IV* Compl. ¶ 76 ("systems for monitoring . . . the telephonic interactions . . . between an agent and a customer") *with* Ex. 14, *NICE II* Compl. ¶ 8 (systems for "monitor[ing] telephone interactions") and Ex. 18, *NICE III* Compl. ¶ 8 (systems to "monitor and analyze communications").) The strong overlap in the subject matter of all sixteen patents at issue in *NICE I-IV* cannot seriously be denied.

### 3.    *NICE IV* Shares a Largely Common Pool of Prior Art with *NICE I-III*.

Because of the subject matter overlap, the patents at issue in *NICE I-IV* share a largely common pool of prior art. For example, NICE's '079 patent (at issue in *NICE IV*) and Witness' '857 patent (at issue in *NICE III*) both cite, as material prior art, U.S. Patent No. 5,946,375 ("the '375 patent"). Understanding the '375 patent's teachings and disclosure will therefore be relevant to adjudicating both *NICE III* and *IV*. Similarly,

- 12 -

NICE's '109 patent (at issue in *NICE IV*) and NICE's '004 patent (at issue in *NICE I*) both cite, as material prior art, U.S. Patent No. 5,101,402. Again, transfer would mean that the insights and knowledge gained in *NICE I-III* would translate to a more efficient resolution of *NICE IV*.

Further, many prior art versions of the parties' products accused in one *NICE* case will be relevant to the validity of patents in other *NICE* cases. These prior art products will potentially limit the scope of the claims in all four *NICE* cases. This highlights yet another significant redundancy across *NICE I-IV*.

### E.      Key Documents and Non-Party Witnesses Are Not In Delaware.

NICE is located primarily in Israel. (D.I. 1, Compl. ¶ 3.) Its U.S. subsidiary is in Rutherford, New Jersey. (*Id.* at ¶ 2.) NICE has not identified any witness located in Delaware. Based on NICE's initial disclosures in *NICE I-III,* Witness expects that most of NICE's witnesses having information about NICE's products are located in Israel. (Exs. 7-9.) Thus, significant foreign travel will be required no matter which forum hears this case. In addition, many of NICE's inventors and other witnesses are ex-employees located in Israel, and it makes little sense to go through separate Hague Convention processes to obtain testimony from the same witnesses for overlapping issues in separate cases. For example, to obtain testimony from Mr. Daniel Shporer, an ex-employee of NICE in Israel and inventor for *NICE I* and *NICE IV*, Witness has been working through the U.S. and Israeli courts since March 2006, and the first Israeli hearing will take place on July 17, 2006, with any depositions to follow thereafter. (*See* Ex. 29, Request for Int'l Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on Taking of

Evidence Abroad in Civil or Commercial Matters, (Mar. 6, 2006) (requesting assistance in compelling the deposition of Mr. Daniel Shporer in Israel for *NICE I*).)

Witness is headquartered in suburban Atlanta. (Hegebarth Decl. ¶ 2.) Many of its employees, including many of its former employees, reside in metropolitan Atlanta. (*Id.* at ¶ 6.) For example, Messrs. John May (former Senior Vice President of Engineering), Chris Straut (former Vice President of Engineering), Doug Gisby (former Chief Technology Officer), and Chris Jeffs (former Senior Product Manager) are former Witness employees who were integrally involved in development of many of the accused products and/or sales and remain in the Atlanta area. (*Id.* at ¶ 7.) The District of Delaware cannot compel these witnesses to appear at trial. In fact, it is likely that no witness will be within the *subpoena* power of this Court, but many witnesses, including former Witness employees, are within the trial *subpoena* power of the NDGa.

Further, transfer will allow for the coordination of the depositions of fact witnesses. *NICE I-III* are proceeding in accordance with the sequencing and timing set forth by the NDGa Patent Local Rules. (Ex. 30, N.D. Ga. Patent Local Rules.) These rules allow (and sometimes necessitate) the parties to take depositions early in discovery. Depositions likely would not occur in Delaware until after document production is complete, in accordance with this District's common practice. This disparate sequencing and timing of discovery between the NDGa and Delaware would likely require that many fact witnesses be deposed twice or more. Again, the same products are largely at issue and no depositions as to such products have occurred yet.

Lastly, neither party has documents located in Delaware. NICE will be required to provide many documents from Israel. (Ex. 7-9, *NICE I- III* Initial Disclosures.) Most

of Witness' documents are located in Atlanta, where Witness developed many of the accused products.[10]  (Hegebarth Decl. ¶ 5.)

Based on the foregoing facts, this Court should transfer this case under 28 U.S.C. § 1404(a) to the NDGa in the interest of justice and for the convenience of the parties and witnesses.

## IV.    ARGUMENT AND CITATIONS OF AUTHORITIES

### A.    <u>Legal Standard and Application to the Facts</u>

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  This section provides the Court with broad discretion to transfer.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." (citations omitted)); *Altera Corp.*, No. 95-242-JJF, at 3 (Ex. 2) ("Section 1404(a) vests district courts with broad discretion in deciding whether to transfer a case to another district.")  The facts surrounding this case establish a compelling basis for transferring to the NDGa.

Although Witness bears the burden of overcoming NICE's choice of forum and showing that this Court should transfer, *see*, *e.g.*, *Waste Distillation Tech., Inc. v. Pan*

---

[10] Certain pre-2003 Eyretel products were developed largely in the United Kingdom.  The vast majority of such documents, however, have now been transferred to Witness' world headquarters in suburban Atlanta.

*Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991), Witness has easily satisfied this burden based on the facts set forth above and the analysis below.[11]

As shown below, this Court *can* transfer this case to the NDGa and should, in fact, do so. *See, e.g., id.* (transfer analysis involves two steps:  determining (1) whether the case could have been brought in the transferee forum, and (2) which forum would best serve the administration of justice).

> **B.**   **This Action Could Have Been Brought In NDGa.**

An action "might have been brought" in a forum if the defendant would have been subject to personal jurisdiction in that forum at the time the action commenced and if venue would have been proper there.  *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *Waste Distillation Tech., Inc.*, 775 F. Supp. at 761.  Both requirements are satisfied here.

Witness has had its headquarters and principal place of business in metropolitan Atlanta since long before this suit.  (Hegebarth Decl. ¶ 3.)  Thus, Witness was subject to personal jurisdiction and venue in the NDGa at the time this suit commenced.  *See, e.g.*, *Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 152 (D. Del.

---

[11] *See Altera Corp.*, Civ. No. 95-242-JJF, at 3 (Ex. 2) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)) ("While a plaintiff's choice of a proper forum is a paramount consideration in determining a transfer request, where the convenience of the parties or the interests of justice is strongly in favor of the defendant, the plaintiff's choice will not prevail."); *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986) ("[W]here a plaintiff chooses to litigate away from its principal place of business, 'the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer necessarily will be less than in the case where plaintiff's choice of forum is highly convenient to plaintiff.'"); *Brunswick Corp. v. Precor Inc.*, No. 00-691, 2000 WL 1876477, at *2 (D. Del. Dec. 12, 2000) (Ex. 31) (finding that a plaintiff's preference for Delaware should be given less deference because most of the events at issue, including the design and manufacture of the accused product, occurred outside of Delaware).

1992); 28 U.S.C. § 1400(b); 28 U.S.C. § 1391(c).  *NICE IV*, therefore, could have been brought in the NDGa.

   C.     **The Facts Weigh Strongly In Favor of Transfer.**

   The Court should consider "the interest of justice," "the convenience of parties and witnesses," and additional public and private interests the Third Circuit has identified.  *See Bayer Bioscience N.V. v. Monsanto Co.*, No. 03-203, 2003 WL 1565864, at *2 (D. Del. Mar. 25, 2003) (Ex. 32) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 875, 879 (3d Cir. 1995)) (finding that the transfer inquiry "requires a 'multi-factor balancing test' embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests."); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 196-97 (D. Del. 1998) (noting that the Court should evaluate "all relevant factors to determine whether, on balance, the litigation would more conveniently proceed and the interest of justice [would] be better served by a transfer to a different forum." (citation omitted)). Here, the Court should transfer because all of the relevant factors – including the statutory, public, and private interests – strongly favor transfer.

   1.     **The Interests of Justice and Relevant Public Interests Strongly Favor Transfer.**

   The interest of justice and the relevant public interests, consisting of (a) "practical considerations that could make the trial easy, expeditious, or inexpensive" and (b) "the local interest in deciding local controversies at home," strongly favor transfer.  *Jumara*, 55 F.3d at 879; *see also Pall Corp. v. Bentley Labs., Inc.*, 523 F. Supp. 450, 453 (D. Del. 1981) ("One of the most significant criteria in determining the advisability of transfer is

the 'interest of justice.'") (citing *Glickenaus v. Lytton Fin. Corp.*, 205 F. Supp. 102, 105 (D. Del. 1962)).[12]

### a.     Interests of Justice, Judicial Economy, and Practical Considerations

The interests of justice and judicial economy[13] strongly favor transfer to the NDGa, where the same technologies and products are being litigated in *NICE I-III.  See Bayer AG v. Biovail Corp.,* Civ. No. 00-466-JJF, at 2 (D. Del. July 17, 2000) (transferring a case to the NDGa because of prior similar and complex litigation between the parties) (Ex. 33); *Am. Bio Medica Corp. v. Peninsula Analysis Co., Inc.*, No. Civ. A. 99-218, 1999 WL 615175, at *5 (D. Del. Aug. 3, 1999)  (transferring because of a related case elsewhere that is the more appropriate vehicle to resolve dispute) (Ex. 34).  Here, the relevant facts include:

- The same parties are involved in *NICE I- IV.*

- All four cases involve the parties' technologies for capturing, recording, monitoring, and/or analyzing calls.

- *NICE IV* implicates all products at issue in *NICE I*, plus one other, eQuality Balance.

- *NICE I-IV* all involve similar subject matter and claim scope.

- *NICE I-IV* all share a largely common pool of prior art.

---

[12]  Other public interests the Third Circuit has provided are not applicable here or are neutral to the question of transfer.

[13]   *See Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 397 n.23 (D. Del. 1989) (noting that a prime component of the "interest of justice" factor is conservation of judicial resources); *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52, 55-56 (D. Del. 1975).

12003287.doc

- The NDGa can coordinate common aspects of *NICE I-IV*, including the parties' Patent Local Rules exchanges of claim construction and prior art disclosures.

- The NDGa has already begun coordinating discovery and claim construction in *NICE I* and *II* and tasked Special Master McKelvie accordingly.

- Fact discovery in *NICE I* and *II* is still ongoing, and NICE has not deposed a single fact witness, thereby allowing depositions directed at the overlapping products and technical issues to be coordinated with ease.

On these facts, the interests of justice, judicial economy, and practical considerations all strongly favor transfer.[14]

### b.    Georgia Has Local Interest In This Controversy.

NICE's claims in this case do not stem from a local controversy or activities specific to Delaware.  *See Textron Innovations, Inc. v. The Toro Co.*, No. Civ. A. 05-486, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) (finding that patent disputes brought

---

[14] *See* Ex. 1 at 8:16-9:15 (*Yodlee, Inc.*, No. 03-600-JJF, transcript of Aug. 27, 2003 Telephone Conference) (transferring a case to where another case was pending based on finding:  (1) the same parties were involved; (2) "related, similar technology, although not identical"; (3) a "largely common field of prior art"; (4) the convenience of the parties was unaffected by a change in forum; and (5) that "justice weighs heavily on the side of a transfer" in "that there are, as in any patent case, complex legal issues which, although not precisely overlapping, are affected and related between the two cases . . . , and that these issues should be decided in a consistent manner, particularly where the same parties are involved in related or closely related technology."); *Brunswick Corp.*, No. 00-691-GMS, 2000 WL 1876477, at *2-*3 (Ex. 31) (finding it in the interests of justice to transfer to a district where the same parties were litigating another patent matter involving the same type of accused product); *Altera Corp.*, No. 95-242-JJF, at 4 (Ex. 2) (transferring a case to a district that had two other lawsuits between the parties and which was familiar with the complex technologies, product structures, and prior art).

- 19 -

under federal statutes are not local controversies specific to any federal district court) (Ex. 35). However, Georgia has significant interest in this litigation – Witness Systems is headquartered in suburban Atlanta, conducts research and product development in suburban Atlanta, including research and development work underlying the accused products, and employs over 350 people in Georgia. (*See* Hegebarth Decl. ¶ 12; *see also* Ex. 5 at 12, SDNY Order (finding that "Georgia has a much stronger public interest in adjudicating [the] dispute than New York because Witness is located in Georgia and the operative facts of the alleged infringement occurred in Georgia.").) Thus, this public interest also strongly favors transfer.

### 2.    Relevant Private Interests Strongly Favor Transfer.

In addition to the statutory factors, the Third Circuit also has held that the Court should consider private interests in evaluating a motion to transfer. *Jumara*, 55 F.3d at 879. The only enumerated private interest relevant here is the "convenience of the witnesses (to the extent that the witnesses may actually be unavailable for trial)."[15]

### a.    Convenience of the Parties

Delaware is not convenient for any party. As detailed above, no party has any physical presence whatsoever in Delaware, while the NDGa has myriad connections to the controversy, including witnesses, documents, and a local interest in an issue that

---

[15]  The first three private factors the Third Circuit has identified are subsumed by other factors and the setting of the burden. *See, e.g., Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131 n.7 (D. Del. 1999) (Farnan, J.) ("The Court will not separately consider the first three factors enumerated by the Third Circuit, namely, the Plaintiff's choice of forum, the Defendants' preferred forum, and whether the claim arose elsewhere, as the Court concludes that consideration of such is subsumed in a review of the remaining factors."); *Affymetrix*, 28 F. Supp. 2d at 199, 201. The remaining private factors are either inapplicable or neutral to the question of transfer.

affects a Georgia technology company. The NDGa is, therefore, more convenient for Witness and at least as convenient for NICE. *See, e.g., Green Isle Partners, Ltd.,* No. 01-202-JJF, at 6 (recognizing, although technology has reduced the burdens of litigating in distant fora, that it is more convenient to litigate where sources of proof are located) (Ex. 3). Thus, the convenience of the parties strongly favors transfer.[16]

### b.    Convenience of the Witnesses

The NDGa is more convenient for the witnesses. Many of Witness' employees (and former employees) reside in metropolitan Atlanta. (Hegebarth Decl. ¶ 6.) Key former Witness employees (such as former Vice Presidents of Engineering) who were integrally involved in development of the accused products are in the Atlanta area. (*Id.* at ¶ 7.) The burden placed on these witnesses would be less if this case was in NDGa.

Importantly, this Court cannot compel such witnesses to be present at trial. *See* FED. R. CIV. P. 45(c)(3)(A)(ii). Thus, the convenience of the witnesses, including the private interest, strongly favors transfer.[17] *See, e.g., Nilssen*, No. Civ.A. 00-695-JJF, 2001 WL 34368395, at *2 ("The convenience of the witnesses is the most important factor in venue transfer analysis.") (citation omitted) (Ex. 4); *Green Isle Partners, Ltd.*, No. 01-202-JJF at 7 (Ex. 3); *Affymetrix, Inc.*, 28 F. Supp. 2d at 203 (location of non-party

---

[16] Transferring this case to the Northern District of Georgia also would be more convenient for the parties in that the number of attorneys could be reduced because Delaware local counsel would no longer be needed. *See Affymetrix, Inc.*, 28 F. Supp. 2d at 209 (finding eliminating the need for local counsel as a factor favoring transfer).

[17] Additionally, transferring this case to the Northern District of Georgia would allow for the efficient coordination of depositions. Witnesses who have knowledge of the accused products in multiple *NICE* cases could be deposed once for all purposes, if this case is transferred.

12003287.doc

witnesses "has weighed heavily in the 'balance of convenience' analysis") (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3581, at 415 (2d ed. 1986)).  The convenience of witnesses strongly favors transfer.

## V.      CONCLUSION

This case should be transferred to the NDGa based on the interests of justice, to promote judicial economy, and for the convenience of the parties and witnesses.  The interests of justice weigh heavily in favor of transfer – *NICE IV* involves the same parties, technologies, products, and pool of prior art as *NICE I- III*.  The inability to compel key witnesses to appear at trial in this Court, and the complete absence of relevant evidence in the District, should also weigh heavily in the Court's calculus.  Witness, therefore, respectfully requests that this Court grant this motion to transfer this case to the NDGa, pursuant to 28 U.S.C. § 1404(a).

Dated:  June 29, 2006                          FISH & RICHARDSON P.C.

By:  */s/ William J. Marsden, Jr.*
     William J. Marsden, Jr. (#2247)
     Kyle Wagner Compton (#4693)
     919 N. Market Street, Suite 1100
     P. O. Box 1114
     Wilmington, Delaware  19899-1114
     Telephone:  (302) 652-5070

Nagendra Setty (GA Bar #636205)
(*Pro Hac Vice* Pending)
Daniel A. Kent (GA Bar #415110)
(*Pro Hac Vice* Pending)
John D. Hamann (GA Bar #320109)
(*Pro Hac Vice* Pending)

1230 Peachtree Street, NE, 19th Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Attorneys for Defendant
Witness Systems, Inc.

- 23 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD.,

     *Plaintiffs*,

     v.

WITNESS SYSTEMS, INC.,

     *Defendant*.

C.A. No. 06-311-JJF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of June, 2006, I electronically filed with the

Clerk of Court the attached DEFENDANT WITNESS SYSTEMS, INC.'S BRIEF IN

SUPPORT OF ITS MOTION FOR TRANSFER using CM/ECF which will send

electronic notification of such filing(s) to the following attorneys of record.  In addition,

the filing will also be sent at the following addresses in the manner indicated below:

**VIA HAND DELIVERY**

Josy W. Ingersoll (#1088)
Karen L. Pascale (#2903)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
Tel: (302) 571-6672

12003287.doc

**VIA ELECTRONIC MAIL**

Scott G. Lindvall (Admitted *pro hac vice*)
Daniel DiNapoli (Admitted *pro hac vice*)
Joseph M. Drayton (Admitted *pro hac vice*)
Robert R. Laurenzi (Admitted *pro hac vice*)
Jason Frank (Admitted *pro hac vice*)
Steven Chin (Admitted *pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Fax: (212) 836-8000
ATTORNEYS FOR PLAINTIFFS
NICE SYSTEMS LTD. AND
NICE SYSTEMS, INC.


*/s/ Kyle Wagner Compton*
Kyle Wagner Compton

- 2 -

12003287.doc