**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD.,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>WITNESS SYSTEMS, INC.,<br><br>  *Defendant*. | C.A. No. 06-311-JJF |

**DEFENDANT WITNESS SYSTEMS, INC.'S
<u>REPLY BRIEF IN SUPPORT OF ITS MOTION FOR TRANSFER</u>**

DATED: August 11, 2006

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Nagendra Setty
Daniel A. Kent
John D. Hamann
1230 Peachtree Street, NE, 19th Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Attorneys for Defendant
Witness Systems, Inc.

**TABLE OF CONTENTS**

I. THE GEORGIA CASES ................................................................................................1

    A. *NICE I-III* Are Still In Early Stages..............................................................1

        1. *NICE I – STS Software Systems Ltd. v. Witness Systems, Inc.*......................................................................................2

        2. *NICE II – Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*..........................................6

        3. *NICE III – Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*..........................................8

    B. The NDGa Already Has Coordinated Common Aspects of *NICE I* and *NICE II* ..................................................................................................9

II. THERE IS SIGNIFICANT OVERLAP AMONG ALL FOUR CASES. ....................................................................................................................10

III. JUDICIAL ECONOMY AND THE INTEREST OF JUSTICE STRONGLY FAVOR TRANSFER .......................................................................10

IV. THE CONVENIENCE OF THE WITNESSES STRONGLY FAVORS TRANSFER. .............................................................................................12

V. CONCLUSION.............................................................................................................14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Affymetrix, Inc. v. Synteni, Inc.*
    28 F. Supp. 2d 192 (D. Del. 1998).................................................................................14

*Altera Cor. v. Xilinx, Inc.,*
    No. 95-242-JJF (D. Del. March 29, 1996)......................................................................12

*American Bio Medica Corp. v. Peninsula Analysis Co., Inc.,*
    No. 99-218, 1999 WL 615175 (D. Del. Aug. 3, 1999).....................................................11

*Bayer AG v. Biovail Corp.,*
    No. 00-466-JJF (D. Del. July 17, 2000)..........................................................................10

*Brunswick Corp. v. Precor Inc.,*
    No. 00-691-GMS, 2000 WL 1876477 (D. Del. Mar. 25, 2003) .......................................12

*Cashedge, Inc. v. Yodlee, Inc.*
    No. 06-170-JJF (D. Del. July 19, 2006)..........................................................................12

*Green Isle Partners, Ltd., S.E. v. The Ritz-Carlton Hotel Co., L.L.C.,*
    No. 01-202-JJF (D. Del. Nov. 2, 2001) ............................................................................2

*Jumara v. State Farm Insurance Co.,*
    55 F.3d 873 (3d Cir. 1995)..............................................................................................12

*Mentor Graphics Corp. v. Quickturn Design System, Inc.,*
    77 F. Supp. 2d 505 (D. Del. 1999)..................................................................................13

*Nillsen v. Osram Sylvania, Inc.,*
    No. 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001)....................................13, 14

*Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.,*
    575 F.2d 1152 (6th Cir. 1978) ..........................................................................................7

*Super Sack Manufacturing Corp. v. Chase Packaging Corp.,*
    57 F.3d 1054 (Fed. Cir. 1995)..........................................................................................3

### FEDERAL STATUTES

28 U.S.C. § 1404(a) ..................................................................................................................14

Fed. R. Civ. P. 45(c)(3)(A)(ii) ...................................................................................................14

**DEFENDANT WITNESS SYSTEMS, INC.'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER**

Witness Systems, Inc. ("Witness") submits the following reply in support of its motion to transfer this case to the Northern District of Georgia ("NDGa").[1]  Through its response, NICE has attempted to obfuscate the underlying material facts, including: (1) mischaracterizing the procedural posture of the three Georgia cases, *NICE I-III*,[2] by, for example, wrongly suggesting that discovery and claim construction are not being coordinated in any way; (2) ignoring the obvious overlap in the technologies, products, and patents at issue in *NICE I-III*; and (3) pointing to witnesses that are *outside* this Court's trial *subpoena* power to create some misguided sense of greater convenience from litigating in Delaware because of potential witnesses in Connecticut.

Simply put, NICE has failed to show that this case should remain here. In contrast, the material facts themselves establish a persuasive case for transfer, including promoting judicial economy and serving the convenience of the parties and witnesses.

**I.    THE GEORGIA CASES**

**A.    *NICE I-III* Are Still In Early Stages**

*NICE I-III* are in their early stages – claim construction is underway in *NICE I* and *II* and very little fact discovery has been conducted. Notwithstanding NICE's attempts to recast and spin, NICE cannot avoid the fact that the potential for coordinated

---

[1] Witness limits its reply to correcting NICE's most notable mischaracterizations and relies on its opening brief to support its motion to transfer, in accordance with L.R. 7.1.3(c)(2).

[2]  *STS Software Sys. Ltd. v. Witness Sys., Inc.*, No. 1:04-CV-2111-RWS ("*NICE I*"); *Witness Sys., Inc. v. NICE Sys., Inc. and NICE Sys. Ltd.*, No. 1:04-CV-2531-CAP ("*NICE II*"); and *Witness Sys., Inc. v. NICE Sys., Inc. and NICE Sys. Ltd.*, No. 1:06-CV-0126-TCB ("*NICE III*").

discovery and associated efficiencies is significant if this Court transfers this case to the NDGa.

For example, NICE has deposed *zero* fact witnesses in any of *NICE I-III*. As such, Witness employees knowledgeable about Witness' products would need to be deposed for Delaware and Georgia discovery, and those depositions certainly can be coordinated. This should be obvious to NICE because the same products are at issue, but it seemingly has overlooked this fact in its response briefing.

Turning to NICE witnesses, NICE cannot reasonably disagree with the fact that NICE's own technical witnesses in Israel, its sales and marketing witnesses, and its financial witnesses could be deposed in coordinated depositions. Further, none of the parties' experts (other than as to claim construction opinions) have been deposed in *NICE I-III*.

Completely ignoring these facts, NICE argues that progress in NDGa has been slow. If wholly true, this might be relevant to the Court's calculus. But, as shown below, NICE's conscious choices, tactics, and gamesmanship have delayed *NICE I-III,* not the pace of patent litigation under the NDGa Patent Local Rules.[3]

### 1.    *NICE I – STS Software Systems Ltd. v. Witness Systems, Inc.*

Since July 20, 2004, when Witness sued NICE in the NDGa and NICE sued Witness in the SDNY, NICE has pushed a rambling agenda apparently designed to keep

---

[3] According to the Administrative Office of the U.S. Courts, since 2002, civil cases have typically taken longer to reach trial in Delaware than in NDGa. *See* http://www.uscourts.gov/caseload2005/ tables/C05mar05.pdf; http://www.uscourts.gov/ caseload2004/tables/C05Mar04.pdf; http://www.uscourts.gov/caseload2003/tables /C05Mar03.pdf; http://www.uscourts.gov/caseload2002/tables/c05mar02.pdf; *see also Green Isle Partners, Ltd., S.E. v. The Ritz-Carlton Hotel Co.*, No. 01-202-JJF, at 8 (D. Del. Nov. 2, 2001) (Ex. 3).

the court from reaching the merits. This allowed NICE to learn more about Witness' products and attempt to acquire arguably better claims from the USPTO in its pending applications. Witness has prepared the following timeline to set these events in perspective.

From July 2004 to January 2005, nothing substantive transpired in *NICE I* because of the pending motion for transfer from SDNY. After Judge Koeltl transferred the case and Judge Story set a schedule in 2005, the parties began to litigate the '665 patent, including exchanging infringement, non-infringement, and invalidity contentions under the NDGa's Patent Local Rules. This process proceeded slowly, with many, many extensions. One might think this odd behavior for a patentee, but NICE's pending patent applications claiming priority to the '665 patent began to issue, thus clarifying NICE's rationale for its foot dragging.

By preventing the '665 patent case from moving to the merits, NICE was able to acquire U.S. Patent Nos. 6,865,604; 6,871,229; and 6,880,004 and have them added to *NICE I*. Of course, as soon as those patents issued, NICE lacked a reason to keep alive the '665 patent – the patent the parties were litigating for the first year *NICE I* was pending. To extricate the '665 patent, NICE needed to covenant not to sue Witness in a way that would "forever estop" NICE from asserting the '665 patent. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995).

NICE refused to provide a proper covenant and proceeded to motion practice. After four months of litigating that issue, on January 6, 2006, Judge Story denied NICE's motion to dismiss the '665 patent based on the insufficient covenant – Witness previously attempted, without success, to discuss this insufficiency with NICE. (Ex. 41

- 3 -

at 21, *NICE I* Order of Jan. 6, 2006 denying NICE's Motion to Dismiss.)[4]  Months after Witness' initial offer to negotiate an appropriate dismissal, NICE finally agreed to negotiate the terms of a proper covenant, leading to the dismissal of the '665 patent on February 24, 2006.  It was not until then that the parties knew what patents were in or out of *NICE I*.

NICE's shifting sands approach to litigation necessarily slowed the claim construction process – the list of asserted NICE patent claims solidified only after the February dismissal, and the parties briefed claim construction and conducted the *Markman* hearing before former District Judge McKelvie on July 27, 2006.

NICE has resisted in every way possible any discovery of its foreign employees and former employees.[5]  For instance, NICE has permitted the depositions of only two employee-witnesses in *NICE I*.  In September 2005, NICE produced Mr. Mordechai Nisani in London for testimony in his individual capacity as an inventor and as a Rule

---

[4] Citations herein to Exhibits 1-40 refer to the exhibits attached to the Declaration of Kyle Wagner Compton in Support of Defendant Witness Systems, Inc.'s Motion for Transfer, filed concurrently with Witness' Motion for Transfer.  *See* D.I. 18.  Citations to Exhibits 41-50 refer to the Exhibits attached to the Second Declaration of Kyle Wagner Compton in Support of Defendant Witness Systems, Inc.'s Motion for Transfer, filed concurrently herewith.

[5] At the same time that NICE has been slowing down the cases, NICE's executives have been trumpeting the pursuit of the cases in its sales efforts against Witness, and recently, even in attempting to set Wall Street's expectations about the parties' performance. (Ex. 49, Final Transcript, NICE - Q2 2006 NICE Systems Earnings Conference Call, Event Date/Time: Aug. 02. 2006 / 8:30AM ET at 10 ("Paul Coster - JP Morgan – Analyst, 'How important is the pending litigation on VoIP technology, I think late this summer?' Haim Shani - NICE Systems – CEO, '***We have a very significant weapon***, as I said.  And since we believe that these weapons are enforceable, we have initiated this litigation to make sure that our rights are protected.  So, of course, if this will be approved by the court, it means that we have -- that our rights will be protected.  ***And it's very important***.").)

- 4 -

30(b)(6) designee for certain topics. During the deposition, NICE de-designated some topics for which Mr. Nisani had been previously designated. Also, in March 2006, Judge McKelvie ordered NICE to produce Mr. Nisani for two (2) additional hours of testimony as to NICE's products, and that too has been ignored despite Witness' numerous written requests.

The second deposition, of NICE inventor Mr. Eytan Bar, was delayed for almost a year. NICE explained that it could not produce Mr. Bar in the U.S., London (an agreed-upon neutral site for foreign witnesses), or Israel because he was not under NICE's control. After twelve months, two petitions under the Hague Convention and numerous trips to the Israeli courts, Witness obtained an English-language deposition in Tel Aviv in April 2006,[6] at which Witness learned that NICE had been working with Mr. Bar all along on patent prosecution and other matters. (Ex. 42, Bar Inventor Declarations signed by Mr. Bar in October, 2004.)

Similarly, NICE has not scratched the surface of its affirmative case. NICE has taken **no** depositions of any fact witnesses in *NICE I*. Such witnesses likely possess information regarding the development, sales, and marketing of the four Witness products accused in *NICE I*, which are all also accused in *NICE IV*. (*See* Witness Br. Supp. Mot. Transfer 11.)

Fact discovery in *NICE I* was originally slated to close on April 25, 2006. However, during a March 1, 2006 conference with Special Master McKelvie, the parties

---

[6] NICE's Israeli counsel represented Mr. Bar and insisted on a Hebrew-only deposition, taken by Israeli lawyers, even though Bar is proficient in English, having lived and worked for NICE in Silicon Valley for years.

agreed to extend the close of fact discovery for *NICE I* and *NICE II* until at least 45 days from entry of the respective claim construction rulings. (Ex. 43 at 6-8, Transcript of March 1, 2005 Conference.) Because a *Markman* hearing just took place for *NICE I*, on July 27, 2006, many months of fact discovery remain, to be followed by general expert discovery. Therefore, transfer of the present case to the NDGa presents an excellent opportunity to coordinate further discovery and make more efficient use of the parties' resources. NICE's assertion that "[a]ttempting to coordinate trial or discovery with those cases would needlessly delay those cases," is wrong. (NICE Br. Opp. Mot. Transfer 21.)

2.  *NICE II – Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*

Since the outset of *NICE II*, NICE has refused to comply with the NDGa's Patent Local Rules. Specifically, NICE continues to withhold relevant source code, contrary to Patent L.R. 4.2. Initially, NICE claimed it could not produce the bulk of the source code for its accused product because a third party (Netopia, Inc.) had provided such code under license and refused to allow code disclosure. After motion practice with Netopia (Ex. 44, N.D.Cal. Order denying motion for protective order and granting motion to compel) and seventeen (17) months of negotiation and discussion, as of July 2006, Witness finally expects to shortly receive from NICE all relevant source code.

NICE's continued refusal to cooperate on discovery issues has left the bulk of fact discovery in *NICE II* remaining. For instance, Witness' Rule 30(b)(6) deposition notice of NICE Systems Ltd. has remained unfulfilled since being served on May 26, 2005. Despite numerous requests that NICE provide dates for such a deposition, to date,

- 6 -

Witness has had no opportunity to depose any witness testifying on behalf of NICE Systems Ltd.  (Ex. 45, N. Graubart letter to S. Lindvall of May 31, 2006.)

The Rule 30(b)(6) deposition of NICE Systems, Inc. has been equally elusive.  In January 2005, NICE provided Mr. Aviad Abiri to testify on a small number of topics.  NICE has never provided additional witnesses (despite giving assurances in February 2005 that it would do so soon and despite multiple requests from Witness) to testify on the bulk of the topics.  (Ex. 46 at 3, S. Lindvall letter to N. Setty of February 28, 2005.)

Nor has NICE diligently pursued any fact discovery in *NICE II*.  Just as in *NICE I*, NICE has yet to depose a single fact witness.  NICE has served notices of deposition, including for Mr. Stephen Beckett, a named inventor.  Witness has offered dates for that deposition, but NICE has never chosen to pursue Mr. Beckett's testimony.

Furthermore, NICE will likely seek information relating to the financial performance of Witness' products embodying the inventions of the patents-in-suit in *NICE II*.  Under *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978), evidence of, *inter alia*, product demand, availability of non-infringing substitute products, and manufacturing and marketing capabilities of Witness may be relevant to the calculation of lost profits.  As those products mirror those at issue in *NICE IV*, that precise information will be at issue in both *NICE II* and *IV*.  Witness' products also may be relevant for evaluating *indicia* of non-obviousness, such as commercial success.  (*See* Ex. 41 at 36, Order from Judge Story (*NICE I*), Jan. 6, 2006 ("Simply put, where NICE products embody the claims of the STS patents, STS may not unilaterally limit discovery as to the commercial success of those products by merely 'electing' to rely on the commercial success of the infringer's products.").)  Even after Judge Story's

- 7 -

ruling in *NICE I* requiring that NICE produce information about its products, NICE simply cross-designated documents already produced in *NICE II*. Despite these recognized overlaps in issues and discovery, NICE claims the absence of overlap here because different "features" of the same products are implicated in the four cases.

In light of NICE's delay tactics, *NICE II* remains at the early stages of discovery. As with *NICE I*, the discovery period ends no earlier than forty-five (45) days after the entry of a *Markman* order – the *Markman* hearing is scheduled for September 7, 2006. The NDGa can, therefore, readily coordinate discovery in *NICE IV* with that in *NICE I* and *NICE II*, promoting judicial economy and reducing party expense.

### 3.   *NICE III – Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems Ltd.*

Witness brought *NICE III* in the NDGa on January 19, 2006, less than four months before NICE initiated the present case.[7] As NICE has conceded, the sum total of activity in *NICE III* is an exchange of initial disclosures, written discovery, and modest document productions. (NICE Br. Opp. Mot. Transfer 5-6.) Important to the current transfer analysis, Witness has cross-designated its technical and marketing productions from *NICE I-II* to satisfy much of its production obligations in *NICE III*.

Also, similar to *NICE II*, the design and development of the same Witness products accused in *NICE IV* are at issue in *NICE III*. Specifically, NICE agrees that Witness' products are relevant for damages and validity analyses, including lost profits

---

[7] Erroneously, NICE has asserted that *NICE III* was pending over seven months before the filing of the current case in the District of Delaware. (NICE Br. Opp. Mot. Transfer 21.) *NICE III* was filed January 19, 2006, and *NICE IV* was filed May 10, 2006.

- 8 -

and commercial success.  (*See*, *e.g.*, NICE's Request for Production of Documents No. 36.)

In sum, *NICE III* is in its infancy.  Virtually no discovery has taken place; **no depositions** have occurred and coordination with *NICE I, II* and *IV* is ripe.  Transfer would serve judicial economy and conserve the parties' resources.

### B. The NDGa Already Has Coordinated Common Aspects of *NICE I* and *NICE II*

Witness never argued that *NICE I-III* were pending before the same judge.  In fact, from the first page of Witness' opening brief it is clear that *NICE I-III* are pending before three different judges within the NDGa.  (Witness Br. Supp. Mot. Transfer 1 nn.2-3.)  Rather, Witness has highlighted that coordinating common aspects of *NICE I-IV* is already underway and will continue in the NDGa.  For example, during a March 1, 2006 conference, NICE's lead counsel, Mr. Scott Lindvall, explained to Special Master McKelvie that *NICE I* and *II* were operating under a "*de facto* consolidation."  (Ex. 43 at 10.)  That admission is consistent with Judge Story's own actions and remarks in *NICE I* about his discussions and coordination with Judge Pannell, who is presiding over *NICE II*.  Speaking about the potential for appointing a special master for *NICE I*:

> And I wanted to make you aware of that and to make you aware that Judge Pannell is thinking in those same terms.  And while I do not think that necessarily means a single judge should handle the entire case, a single special master could, I think, very appropriately handle the discovery aspect [of both cases].

(Ex. 47 at 3, Transcript of Status Conference of Jan. 4, 2006.)

Thus, NICE's assertion that "Witness never sought any consolidation of discovery of the cases in Georgia" selectively ignores the record.  NICE has ignored that Witness has not had to move for consolidation of discovery in *NICE I* and *II* because Judges Story

- 9 -

80035944.doc

and Pannell have done so *sua sponte*, ignored NICE's own admission of "*de facto*" consolidation, and ignored that when *NICE III* proceeds to the merits, the parties will have to address these same issues with Judge Batten.

## II. THERE IS SIGNIFICANT OVERLAP AMONG ALL FOUR CASES.

By now it should be plain that *NICE I-IV* overlap in many significant respects. Much of the discovery described above would be duplicative if conducted without coordination. As shown in Witness' Opening Brief, the cases share common products, common inventors, common witnesses, and common underlying technology and prior art. Although NICE may be able to identify granular differences among the "features" of the parties' products at issue in the various cases, NICE has not contended that knowledge developed in *NICE I-III* will not lead to more efficient adjudication of *NICE IV*. Even though Judge Story denied the motion to consolidate trial of *NICE I* and *II*, he and Judge Pannell *sua sponte* consolidated discovery and claim construction in those cases before Special Master McKelvie.[8]

## III. JUDICIAL ECONOMY AND THE INTEREST OF JUSTICE STRONGLY FAVOR TRANSFER

There can be little credible argument as to whether judicial economy will be served by coordinating *NICE I-IV* in the same district and, perhaps, even the same judge, as the significant overlaps are revisited closer to trial in *NICE I-III*. *See Bayer AG v. Biovail Corp.,* Civ. No. 00-466-JJF, at 2 (D. Del. July 17, 2000) (transferring a case to the

---

[8] Contrary to NICE's claim that there are no inventors in common in *NICE I-IV*, patents asserted in *NICE IV* name inventors clearly at issue in *NICE I*. Both Ilan Yosef and Danny Shporer are named inventors on the continuation-in-part application upon which all of the patents-in-suit in *NICE I* rely for priority. (Ex. 50, U.S. Patent Application No. 09/664,755.) None of NICE's attempts to deny overlap undermine the obvious conclusion that the public and private interests will be served by transfer.

NDGa because of prior similar and complex litigation between the parties) (Ex. 33); *Am. Bio Medica Corp. v. Peninsula Analysis Co., Inc.*, No. Civ. A. 99-218, 1999 WL 615175, at *5 (D. Del. Aug. 3, 1999) (transferring because of a related case elsewhere that is the more appropriate vehicle to resolve dispute) (Ex. 34).

Here, the following material facts remain, despite NICE's mischaracterizations and spin:

- The same parties are involved in *NICE I- IV*.
- All four cases involve the parties' technologies for capturing, recording, monitoring, and/or analyzing calls.
- *NICE IV* implicates all products at issue in *NICE I*.
- *NICE I-IV* all involve similar subject matter and claim scope.
- *NICE I-IV* share a largely common pool of prior art.
- The NDGa can coordinate common aspects of *NICE I-IV*, including the parties' Patent Local Rules claim construction and prior art disclosures.
- The NDGa has already begun coordinating discovery and claim construction in *NICE I* and *II* under Special Master McKelvie.
- Fact discovery in *NICE I* and *II* is still ongoing, and NICE has not deposed a single fact witness, thereby allowing depositions of Witness and NICE employees and inventors to be coordinated with ease.

On these facts, this case should be transferred to the NDGa. *See* Ex. 1 at 8:16-9:15 (*Yodlee, Inc.*, No. 03-600-JJF, transcript of Aug. 27, 2003 Telephone Conference) (transferring a case to where another case was pending based on finding: (1) the same parties were involved; (2) "related, similar technology, although not identical"; (3) a

- 11 -

"largely common field of prior art"; (4) the convenience of the parties was unaffected by a change in forum; and (5) that "justice weighs heavily on the side of a transfer" in "that there are, as in any patent case, complex legal issues which, although not precisely overlapping, are affected and related between the two cases . . . , and that these issues should be decided in a consistent manner, particularly where the same parties are involved in related or closely related technology."); *Brunswick Corp. v. Precor Inc.*, No. 00-691-GMS, 2000 WL 1876477, at *2-*3 (D. Del. Mar. 25, 2003) (Ex. 31) (finding it in the interests of justice to transfer to a district where the same parties were litigating another patent matter involving the same type of accused product); *Altera Corp. v. Xilinx, Inc.*, No. 95-242-JJF, at 4 (D. Del. Mar. 29, 1996) (Ex. 2) (transferring a case to a district that had two other lawsuits between the parties and which was familiar with the complex technologies, product structures, and prior art).

In fact, this Court recently transferred a Delaware case in the same procedural posture as *NICE IV*. *See Cashedge, Inc. v. Yodlee, Inc.*, 06-170-JJF, Mem. Opinion, at 6 (D. Del. July 19, 2006) (J. Farnan) (Ex. 48). Judicial economy strongly favored transferring *Yodlee* to the Northern District of California where the court had just addressed *Markman* issues on similar technologies and where discovery was ongoing on "seemingly related products and technologies." *Id.* That is exactly the posture of *NICE IV*, and transfer is just as compelling here.

**IV.   THE CONVENIENCE OF THE WITNESSES STRONGLY FAVORS TRANSFER.**

The convenience of witnesses strongly favors transfer. *See Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (finding the "convenience of the

witnesses (to the extent that the witnesses may actually be unavailable for trial)" should be considered). Specifically, former Witness employees integrally involved with accused products live within the trial *subpoena* power of the NDGa.

NICE has asserted without basis that Witness has failed to show that former Witness employees with integral knowledge of the accused products reside in Georgia. (NICE Br. Opp. Mot. Transfer 17.) In reality, Witness has provided the declaration of Witness' Director of Strategic Analysis, Mr. Kevin Hegebarth, declaring that four former Witness employees, "who were integrally involved in development . . . and/or sales" of the accused products, reside within the *subpoena* power of the NDGa. (Hegebarth Decl. ¶ 7.) NICE, on the other hand, has argued to the contrary without any supporting evidence.[9] These witnesses reside within the *subpoena* power of the NDGa and outside of this Court's reach.

Further, NICE's assertion that Witness must establish that its former employees would be unwilling to travel to Delaware for trial is legally irrelevant. *See, e.g.*, *Nillsen v. Osram Sylvania, Inc.*, No. Civ.A. 00-695-JJF, 2001 WL 34368395, at *2 (D. Del. May 1, 2001) ("A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's *subpoena* power."); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510-511 (D. Del. 1999) (residence of former employee-witnesses within *subpoena* power of transferee district "strongly favor[ed] transfer" even without evidence that they would refuse to travel to Delaware). Residency of potential witnesses

---

[9] NICE's bald argument as to Witness' written discovery responses in *NICE I-III* is not evidence, much less contradictory evidence sufficient to create a fact issue.

is paramount because "even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged inconvenience." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205 (D. Del. 1998).

Lastly, NICE's reliance on Connecticut inventors is misplaced. (NICE Br. Opp. Mot. Transfer 17 n.13.) Because no part of Connecticut is within 100 miles of Delaware, Witness' Motion to Transfer will have zero effect on the Court's ability (either this Court or the NDGa) to compel those witnesses to appear for trial. *See* FED. R. CIV. P. 45(c)(3)(A)(ii). The Connecticut inventors, therefore, have no bearing on the "convenience of the witnesses" factor, although NICE's declaration from Mr. Henits demonstrates that it has some control over and access to such witnesses. *See Nillsen*, No. Civ.A. 00-695-JJF, 2001 WL 34368395, at *2.

## V.     CONCLUSION

This case should be transferred to the NDGa in the interests of justice, to promote judicial economy, and for the convenience of the witnesses. The interests of justice weigh heavily in favor of transfer – *NICE IV* involves the same parties, technologies, products, and pool of prior art as *NICE I-III*. The inability to compel key former Witness employees to appear at trial in this Court should also weigh heavily in the Court's calculus. Witness, therefore, respectfully requests that this Court grant its motion to transfer this case to the NDGa, pursuant to 28 U.S.C. § 1404(a).

Dated: August 11, 2006                FISH & RICHARDSON P.C.


                                      By: */s/ William J. Marsden, Jr.*
                                          William J. Marsden, Jr. (#2247)
                                          Kyle Wagner Compton (#4693)
                                          919 N. Market Street, Suite 1100
                                          P. O. Box 1114
                                          Wilmington, Delaware  19899-1114
                                          Telephone:  (302) 652-5070


                                          Nagendra Setty
                                          Daniel A. Kent
                                          John D. Hamann
                                          1230 Peachtree Street, NE, 19th Floor
                                          Atlanta, GA 30309
                                          Tel: (404) 892-5005

                                          **Attorneys for Defendant
                                          Witness Systems, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August, 2006, I electronically filed with the Clerk of Court the attached DEFENDANT WITNESS SYSTEMS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR TRANSFER using CM/ECF which will send electronic notification of such filing(s) to the following attorneys of record. In addition, the filing will also be sent at the following addresses in the manner indicated below:

**VIA HAND DELIVERY**

| | |
|---|---|
| Josy W. Ingersoll (#1088) | *Attorneys for Plaintiffs* |
| Karen L. Pascale (#2903) | *NICE Systems Ltd. and* |
| YOUNG CONAWAY STARGATT & | *NICE Systems, Inc.* |
| TAYLOR LLP | |
| The Brandywine Building | |
| 1000 West Street, 17th Floor | |
| Wilmington, DE 19899-0391 | |
| Tel: (302) 571-6672 | |

**VIA ELECTRONIC MAIL**

Of Counsel:

| | |
|---|---|
| Scott G. Lindvall. | *Attorneys for Plaintiffs* |
| Patricia J. Clarke | *NICE Systems Ltd. And* |
| Robert R. Laurenzi | *NICE Systems, Inc.* |
| KAYE SCHOLER LLP | |
| 425 Park Avenue | |
| New York, NY 10022 | |
| Fax: (212) 836-6369 | |
| slindvall@kayescholer.com | |
| pclarke@kayescholer.com | |
| rlaurenzi@kayescholer.com | |

*/s/ Kyle Wagner Compton*
Kyle Wagner Compton