# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICE SYSTEMS, INC., a Delaware Corporation, and<br>NICE SYSTEMS, LTD., an Israeli Corporation, | ) )<br>)<br>) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-311-JJF |
| WITNESS SYSTEMS, INC, a Delaware Corporation, | )<br>)<br>) | |
| Defendant. | ) | |

## NOTICE OF DEPOSITION OF WITNESS SYSTEMS, INC.

**TO:**   William J. Marsden, Jr.
Kyle Wagner Compton
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114

**PLEASE TAKE NOTICE** that at 10:00 a.m. on May 29, 2007, Plaintiffs NICE

Systems, Inc., and NICE Systems, Ltd. (collectively "NICE"), by their counsel, will take the

deposition upon oral examination of Witness Systems, Inc. under Rules 30 and 45 of the Federal

Rules of Civil Procedure.  The deposition will be conducted at the offices of Ashe, Rafuse &

Hill, LLP, 1355 Peachtree Street, N.E., Suite 500, South Tower, Atlanta, GA 30309-3232, or

some such other location as is mutually agreed upon by the parties.

The deposition will be conducted under the Federal Rules of Civil Procedure and

the Local Rules for the District of Delaware, for the purpose of discovery, for use at trial and for

such other purposes as are permitted at law. This deposition will be recorded by videographic

and/or ordinary stenographic methods, before a Notary Public or other person duly authorized by

law to administer oaths.  The deposition will continue from day to day until completed with such

adjournments as to time and place as may be necessary.  You are invited to attend and examine the witness(es).

**PLEASE TAKE FURTHER NOTICE** that, under Rule 45 of the Federal Rules of Civil Procedure, Witness Systems, Inc.'s attendance and testimony is compelled by subpoena, a copy of which is attached.

Dated:  May 4, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Karen E. Keller (No. 4489)

Melanie K. Sharp (No. 2501)
Karen E. Keller (No. 4489)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE 19899
(302)571-5028
kkeller@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY  10022
(212)836-8000

*Attorneys for Plaintiffs Nice Systems, Inc. and Nice Systems, Ltd.*

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on May 4, 2007, I caused to be electronically filed a true and correct copy of the foregoing document, Notice of Deposition of Witness Systems, Inc., with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Kyle Wagner Compton, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE  19899-1114

I further certify that on May 4, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
> Noah C. Graubart (graubart@fr.com)
> Nagendra Setty (setty@fr.com)
> Daniel A. Kent (kent@fr.com)
> Christopher O. Green (green@fr.com)
> Fish & Richardson, P.C.
> 1180 Peachtree Street, NE
> 21st Floor
> Atlanta, GA  30309

/s/ Karen E. Keller (No. 4489)

Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801

P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-5028
kkeller@ycst.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Northern                    DISTRICT OF                    Georgia

NICE Systems, Inc. and NICE Systems, Ltd.

V.

Witness Systems, Inc.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  06-CV-311-JJF Dist of Delaware

TO:  Witness Systems, Inc.    c/o Fish & Richardson P.C.
     300 Colonial Center Parkway  1180 Peachtree Street, N.E.
     Roswell, GA 30076    21st Floor
                          Atlanta, GA 30309

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  (This deposition will be recorded by videographic and/or stenographic methods. See Exhibit A.)

| PLACE OF DEPOSITION<br>Ashe, Rafuse & Hill, LLP, 1355 Peachtree Street, N.E., Suite 500, South Tower, Atlanta, GA 30309-3232 | DATE AND TIME<br>5/29/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   *Attorney for Plaintiff* | DATE   5/3/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason Frank, Kaye Scholer, LLP, 425 Park Avenue, New York, NY 10022 Tel: 212-836-8000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
        (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
        (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
        (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
        (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
        (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
        (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).



24589163

1-8/210

38372

## KAYE SCHOLER LLP
### A NEW YORK LIMITED LIABILITY PARTNERSHIP
ATTORNEY BUSINESS ACCOUNT
425 PARK AVENUE, NEW YORK, NY 10022-3598

Pay Eighty-four and 50/100**********************************************************

⌐ Witness Systems, Inc.

TO
THE
ORDER
OF

CITIBANK, N.A.
NEW YORK, NY 10271

⌐              ⌐              ⌐
└              └              └

‖·038372‖·  ‖:021000089|: 400 24589163‖·

DOLLARS    $  ***84.50***

May 2, 2007

KAYE SCHOLER LLP
ATTORNEY BUSINESS ACCOUNT

Check #:      38372
Check Date:   May 02/07

Payee:      Witness Systems, Inc.
Vendor ID:   2038950

| Invoice Num | Invoice Date | Reference | Invoice Amount | Amount Paid | Discount Taken | Payment Amt |
|---|---|---|---|---|---|---|
| 05020 7A | May 02/07 | | 84.50 | 84.50 | 0.00 | 84.50 |
| | | Totals: | $84.50 | $84.50 | $0.00 | $84.50 |

Security Features Included  ⊟❭  Details on back

## EXHIBIT A - DEPOSITION TOPICS

## DEFINITIONS

These requests incorporate the following definitions and instructions, without limiting the scope of the Federal Rules of Civil Procedure.

A.    The words "or," "and," "and/or," "all," "every," "any," "each," "one or more," "including," and similar words of guidance are intended merely as such and should not be construed as words of limitation.  The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the request.  The word "including" shall not be used to limit any general category or description that precedes it.  The words "all," "every," "any," "each," and "one or more" shall include each other whenever possible to expand, not restrict, the scope of the request.

B.    "Witness," "Witness Systems, Inc.," "You," or "Your" shall mean Witness Systems, Inc., and any of the directors, officers, consultants, agents, representatives, predecessors in interest (including Eyretel plc and any of its directors, officers, consultants, agents, representatives, parents, subsidiaries, affiliates, employees, attorneys and predecessors), successors in interest, parents, subsidiaries, affiliates, assignees, employees, vendors, partners, distributors and attorneys of the same, and any other Persons acting on Witness's behalf, including but not limited to Software Hothouse, Ltd.

C.    "NICE" means NICE Systems, Inc. and/or NICE Systems, Ltd., its directors, officers, consultants, agents, representations, predecessors in interest, parents, subsidiaries, affiliates, assignees, employees, vendors, partners, distributors and attorneys of the same and any other Persons acting on NICE Systems, Inc.'s and/or NICE Systems, Ltd.'s behalf.

D.    "Dictaphone" means Dictaphone Corporation, its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, affiliates, assignees, employees, attorneys and any other persons acting on Dictaphone's behalf.

E.    "Adtech" refers to Adtech-GESI, LLC, Adtech Global Solutions or Adtech Solutions and any directors, officers, consultants, agents, representatives, predecessors in interest, parents, subsidiaries, divisions, affiliates, assignees, employees, and attorneys of the same, and any other persons acting on Adtech's behalf.

F.    "Avaya, Inc." refers to Avaya Inc. and any directors, officers, consultants, agents, representatives, predecessors in interest, parents, subsidiaries, affiliates, divisions, assignees, employees, attorneys and any other persons acting on Avaya's behalf.

G.    The term "Avaya Products" includes ContactStore for Communication Manager, Avaya's Communication Manager API ("CMAPI"), and Avaya's Application Enablement Services ("AES").

H.    The term "Nortel Products" refers to any product sold or developed by Nortel Networks which has been integrated with Witness' Workforce Optimization Solution. "Nortel Products" includes Nortel Contact Recording and Nortel Quality Monitoring.

I.    The term "Cisco Products" refers to any product sold or developed by Cisco Systems, Inc. which has been integrated with Witness's Workforce Optimization. "Cisco Products" includes Cisco Call Manager, Cisco Call Manager Express, Cisco IP Contact Center, and Cisco IP Contact Center Express.

J.    "Witness Products" refers to any product owned by Witness that integrates and/or interfaces with an Avaya Product. "Witness Products" also refers to any system and/or software jointly engineered, developed or manufactured by Witness and Avaya, Adtech, Cisco, or Nortel that receives, records, monitors, stores and/or plays back audio data. "Witness Products" also refers to any and all of the following products, Impact 360, ContactStore, ContactStore for Communication Manager and Quality for Communication Manager and ContactStore for IP, marketed or branded as set forth below or otherwise:

      i.    Eyretel's ContactStore

ii.    Eyretel's MediaStore

iii.   Eyretel's Contact 7000

iv.    eQuality ContactStore

v.     ContactStore

vi.    ContactStore for IP

vii.   Witness ContactStore for Communication Manager

viii.  Witness Quality for Communication Manager

ix.    Impact 360

x.     eQuality Balance

xi.    eQuality ContactStore for IP.

K.    "Person" means any natural person or any business, legal or governmental entity or association, including, but not limited to, private and public partnerships, associations, corporations, joint ventures, sole proprietorships, firms and governments.

L.    "Document" means any recording of information in tangible or recoverable form, including all written, typed, printed, recorded or graphic matter, photographic matter and tapes, records, tape recordings or other sound or visual reproduction materials, computer databases, computer tapes and discs, word processing files, discs, diskettes, or "floppies", or any other devices or tangible objects however produced, reproduced or stored, upon which words or other

information are affixed or recorded of from which, by appropriate transcription, written matter or a tangible thing may be produced, that is in Your actual or constructive possession, custody or control, all prior drafts of the foregoing, and copies of the foregoing on which any mark, alteration, writing, or other change from the original has been made. It includes, but is not limited to, letters, memoranda, reports, evaluations, e-mails, correspondence, communications, agreements, contracts, invoices, checks, journals, ledgers, telegrams, telexes, handwritten notes, periodicals, pamphlets, computer or business machine printouts, accountants' work papers, accountants' statements and writings, notations or records of meetings, printers' galleys, books, papers, speeches, public relations issues, advertising, materials filed with government agencies, office manuals, employee manuals or office rules and regulations, reports of experts, and any other written matter. A draft or non-identical copy is a separate document.

M.    "Relating to," "relates to" and "concerning" shall be construed broadly as evidencing, constituting, referring to, comprising, illustrating, recording, memorializing, discussing or describing.

N.    The term "Patents-in-Suit" shall mean United States Patents Nos. 5,274,738 ("the '738 patent"), 5,396,371 ("the '371 patent"), 5,819,005 ("the '005 patent"), 6,249,570 ("the '570 patent"), 6,728,345 ("the '345 patent"), 6,775,372

("the '372 patent"), 6,785,370 ("the '370 patent"), 6,870,920 ("the '920 patent"), 6,959,079 ("the '079 patent"), and 7,010,109 ("the '109 patent").

O.     The term "Related Patents" shall mean all patents and patent applications (provisional and non-provisional) filed in this country and in any foreign country that are related to, or claim priority from, the Patents-in-Suit.

P.     "Infringe" or "infringed" include, without limitation, both literal infringement and infringement under the doctrine of equivalents, contributory infringement and inducement to infringe.

Q.     The term "Communication" refers to any oral or written transmittal and/or receipt of words or information, whether such was by chance, pre-arranged, formal, or informal, and specifically includes without limitation notices of conversations in person, telephone conversations, faxes, telexes, telegrams, electronic mail, letters, reports, memoranda, formal statements, press releases, and media publications. References to communications with business entities shall be deemed to include present and former officers, directors, employees, agents, attorneys, or other representatives or such entities.

R.     "Call Center Market" refers to the market consisting of entities which implement or may implement any technology relating to the call center field.

S.     Unless otherwise indicated, the Topics that follow cover the period prior to the conception of the alleged inventions claimed in each of the Patents-in-

Suit until the date of the deposition.  Witness is reminded of its continuing duty to supplement its deposition testimony.

# TOPICS

## TOPIC NO. 1

The identification of all Witness Products.

## TOPIC NO. 2

The functionality, capabilities, operation and design of all Witness Products or any component thereof and the facts and circumstances relating to the same.

## TOPIC NO. 3

The configuration and architecture of all Witness Products or any component thereof and the facts and circumstances relating to the same.

## TOPIC NO. 4

The implementation of all Witness Products or any component thereof and the facts and circumstances relating to the same.

**TOPIC NO. 5**

The way in which each applicable Witness Product receives, analyzes, filters, identifies, stores, records, archives, restores, plays back, organizes, distributes and/or outputs data.

**TOPIC NO. 6**

The operation of any hardware and software, including any underlying source code, implemented in any Witness Products at any time. This topic specifically requires testimony about how the Witness Products operate at the source code level.

**TOPIC NO. 7**

The research, development and manufacture of all Witness Products or any component thereof and the facts and circumstances relating to the same.

**TOPIC NO. 8**

The comparison, study, analysis, testing or evaluation of Witness Products by Witness, and the facts and circumstances surrounding the comparison, study, analysis, testing or evaluation.

## TOPIC NO. 9

The operation and interaction of the operating system as it concerns recording audio data by the Witness Products.

## TOPIC NO.10

The function, operation and design of source code that embodies Witness Products.

## TOPIC NO.11

The documents concerning the capabilities or performances of Witness Products, including documents provided to distributors, sales personnel, customers and prospective customers.

## TOPIC NO. 12

The commercial distribution of software and/or source code related to the Witness Products.

## TOPIC NO. 13

The way in which each Witness Product operates, functions and interacts with the products of any non-parties (including but not limited to Cisco Systems, Inc., Avaya, Inc., Adtech-GESI, LLC, and Nortel Networks).

## TOPIC NO. 14

The nature and scope of the relationship between, communications between, and documents relating to Witness and nonparties (including but not limited to Cisco Systems, Inc., Avaya, Inc., Adtech-GESI, LLC and Nortel Networks), including the business relationship between the companies, the joint development of any Witness Product, and the resale of Witness Products.

## TOPIC NO. 15

The facts and circumstances surrounding the development, function, design, implementation, and marketing of Avaya Products, Nortel Products, or Cisco Products.

**TOPIC NO. 16**

The content, scope, and execution of Witness' agreements (including all attachments, exhibits, statements of work and appendices) with Software Hothouse Ltd., Christopher Blair, and Richard Heap.

**TOPIC NO. 17**

Software Hothouse, Ltd. and its research, design, development and implementation of Witness Products.

**TOPIC NO. 18**

Christopher Blair and his research, design, development and implementation of Witness Products.

**TOPIC NO. 19**

Richard Heap and his research, design, development and implementation of Witness Products.

**TOPIC NO. 20**

Witness' acquisition of Eyretel, including but not limited to, the reasons for the acquisition, and the technology and/or products acquired.

**TOPIC NO. 21**

The marketing, promotion, sales and licensing of Witness Products or any component thereof and the facts and circumstances relating to the same.

**TOPIC NO. 22**

The facts and circumstances surrounding the advertising and marketing of Witness Products and any services relating to Witness Products, including but not limited to installation and maintenance.

**TOPIC NO. 23**

The identity of all customers who have purchased, licensed or otherwise acquired Witness Products and services related to Witness Products.

## TOPIC NO. 24

The effort and expense expended by Witness to market and secure each sale or license of a Witness Product and services related to Witness Products and the facts and circumstances surrounding the same.

## TOPIC NO. 25

The facts and circumstances regarding the financial performance and commercial success resulting from the manufacture, use, sale and offer for sale of Witness products and services related to Witness Products, including demand, market share, growth in market share, replacement of traditional TDM solutions, annual revenue, unit sales and profitability. This topic includes any and all forecasts and projections of such use, sales, or offers for sale.

## TOPIC NO. 26

Witness' accounting practices, methods and understandings, including but not limited to Witness' methods for accounting for revenues, costs (indirect and direct) and profits; methods of depreciation; allocation of expenses; inventory measurements; profit allocation; and losses and assignments of debt.

## TOPIC NO. 27

The customer demand for Witness Products.

## TOPIC NO. 28

The market for Witness Products.

## TOPIC NO. 29

The facts and circumstances surrounding the revenue derived from the sale of the Witness Products and related services in the United States, now and in the past, and all costs and profits related to such sales.

## TOPIC NO. 30

The facts and circumstances surrounding the revenue derived from the sale of all Witness products and services in general and the relation of those sales to the sales of Witness Products and related services.

## TOPIC NO. 31

Witness' knowledge of competition in the Call Center Market and the facts and circumstances surrounding the same.

**TOPIC NO. 32**

Witness' competitive advantage and/or disadvantage with respect to NICE in the

Call Center Market and the facts and circumstances surrounding the same.

**TOPIC NO. 33**

The competition between Witness and any other entity for sales of Witness

Products.

**TOPIC NO. 34**

The history of Witness' knowledge of TDM and VoIP recording solutions sold by

NICE.

**TOPIC NO. 35**

The facts and circumstances surrounding Witness' knowledge or awareness of

each of the Patents-in-Suit.

**TOPIC NO. 36**

Witness' knowledge of the Patents-in-Suit prior to the commercial introduction of

the Witness Products.

## TOPIC NO. 37

Witness' knowledge of the history of the technology of the inventions described and claimed by the Patents-in-Suit and Related Patents.

## TOPIC NO. 38

Any attempts by Witness to design around the Patents-in-Suit.

## TOPIC NO. 39

Any opinions about the Patents-in-Suit relied upon by Witness.

## TOPIC NO. 40

Witness' knowledge of NICE or any product designed, manufactured or sold by NICE, including but not limited to NICE Log, NICE Universe, NICE Perform, ProLog, Guardian, da Vinci, Freedom, Freedom FT. Freedom Enterprise, Freedom Navigator, and Freedom Explorer.

## TOPIC NO. 41

Witness' knowledge of Dictaphone or any product designed, manufactured or sold by Dictaphone, including but not limited to: Mirra Series, Freedom Enterprise,

Contact Point, Freedom VoIP, Freedom, da Vinci, Symphony CTI, Freedom

Connect, Sentinel, Prolog and Guardian.

## TOPIC NO. 42

The authenticity of documents produced or created by Witness in this litigation.

## TOPIC NO. 43

The location and identification of documents requested by NICE in its document

requests served on Witness pursuant to Federal Rule of Civil Procedure 34.

## TOPIC NO. 44

The factual basis for and facts and circumstances surrounding the collection of

information responsive to any interrogatory posed to Witness in this litigation.

## TOPIC NO. 45

The factual basis for the contentions in Witness's Answer and Counterclaims filed

in this case.

## TOPIC NO. 46

Any communications made between Witness and NICE.

## TOPIC NO. 47

The factual basis for any claim by Witness that a permanent injunction should not be entered precluding Witness from marketing, offering to sell, selling, offering to license and/or licensing any of the Witness Products should Witness be held liable for infringing one or more of the Patents-in-Suit.

## TOPIC NO. 48

Witness' document retention policies, document disposal policies and document destruction policies.

## TOPIC NO. 49

Witness' knowledge of the destruction of documents that relate in any way to this litigation and the facts and circumstances relating to the same.

## TOPIC NO. 50

The facts and circumstances surrounding and leading up to the decision to sell Witness.

## TOPIC NO. 51

The facts and circumstances surrounding the offer to sell Witness, including the identification of any interested parties in the potential acquisition of Witness.

## TOPIC NO. 52

Any communications or information exchanged between Verint Systems, Inc. and Witness related to this litigation and/or the Patents-in-Suit.

## TOPIC NO. 53

The facts and circumstances surrounding Verint Systems, Inc.'s acquisition of Witness.

## TOPIC NO. 54

The facts and circumstances surrounding any representations made by Witness to any regulatory agency relating to competition.