# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD.,<br><br>    *Plaintiff*,<br><br>v.<br><br>WITNESS SYSTEMS, INC.,<br><br>    *Defendant*. | Civil Action No. 06-311-JJF |

## WITNESS SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS

Dated: July 3, 2007

FISH & RICHARDSON P.C.

By: */s/ Kyle Wagner Compton*
    William J. Marsden, Jr. (#2247)
    Kyle Wagner Compton (#4693)
    919 N. Market Street, Suite 1100
    P. O. Box 1114
    Wilmington, Delaware 19899-1114
    Telephone: (302) 652-5070

    Nagendra Setty (*pro hac vice*)
    Daniel A. Kent (*pro hac vice*)
    1180 Peachtree Street, NE, 21st Floor
    Atlanta, GA 30309
    Telephone: (404) 892-5005

    ATTORNEYS FOR DEFENDANT
    WITNESS SYSTEMS, INC.

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................2

    **A.** The Court's Scheduling Order Is Controlling. ............................................6

    **B.** NICE Already Conducted Many of the Depositions It Seeks. ..................10

    **C.** NICE Cannot Force Witness Systems Not to Rely on Witnesses NICE Failed to Timely Depose. ..................................................................12

    **D.** NICE Failed to Serve Deposition Notices and Subpoenas. .......................12

III. CONCLUSION.....................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amcast Industrial Corp. v. Detrex Corp.*,
    132 F.R.D. 213 (N.D. Ind. 1990).................................................................................8

*Harry A. v. Duncan*,
    223 F.R.D. 536 (D. Mont. 2004)..................................................................................9

*In re Sulfuric Acid Antitrust Litigation*
    231 F.R.D. 320 (N.D. Ill. 2005)....................................................................................9

*Olgyay v. Society for Environmental Graphic Design, Inc.*,
    169 F.R.D. 219 (D. D.C. 1996).....................................................................................8

*St. Paul Mercury Insurance Co. v. Capitol Sprinkler Inspection, Inc.*,
    No. 05-2115, 2007 WL 1589495 (D. D.C. Jun. 1, 2007) .............................................7

*Ultratech, Inc. v. Tamarack Scientific Co., No. C 03-3235*,
    No. C 03-3235, 2005 WL 696979 (N.D. Cal.  Mar. 17, 2005).............................9, 10

### STATUTES

Fed. R. Civ. P. 16...............................................................................................................6

Fed. R. Civ. P. 29...........................................................................................................6, 7

Fed. R. Civ. P. 30.............................................................................................................12

### MISCELLANEOUS

*3 Moore's Federal Practice* § 16.14[b] (2003) ...................................................................8

*3 Moore's Federal Practice* § 16.14[1][b] (2007)...............................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>WITNESS SYSTEMS, INC.,<br><br>    *Defendant*. | Civil Action No. 06-311-JJF |

**WITNESS SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS**

Defendant Witness Systems, Inc. ("Witness Systems") files this response in opposition to Plaintiffs Nice Systems, Inc. and Nice Systems Ltd.'s (collectively, "NICE") Motion to Compel Depositions (D.I. 175) dated June 19, 2007 ("Motion").

**I.     INTRODUCTION**

NICE's Motion exposes its disregard for the Court's Scheduling Order by its failure to notice dozens of depositions until the very end of the discovery period.  In its October 30, 2006 Rule 16 Scheduling Order, the Court ordered fact discovery "completed on or before May 30, 2007."  (Ex. A, Scheduling Order at ¶ 3(d), (D.I. 46).)  NICE argues that the Court's directive is a mere "technicality."  According to NICE, "Now that the *technical* date for the completion of fact discovery has passed, Witness has used that as an excuse not to comply with the agreements it made in April and May . . . ."  (NICE Mot. at 7 (emphasis added).)  Contrary to NICE's rhetoric, Witness Systems dutifully complied all of its agreements with NICE, and with the Court's Order, taking pains to complete discovery within the period provided in the Scheduling Order.  The only depositions outside the discovery period have been those the parties specifically agreed to

complete after May 30, based on scheduling conflicts for the witnesses and/or attorneys. The parties never agreed to schedule the depositions NICE now seeks to compel outside the discovery period. By its Motion, NICE seeks a unilateral extension of the discovery period to remedy its own procrastination, a request the Court should summarily deny.[1]

## II.    BACKGROUND

NICE unnecessarily delayed taking the depositions it seeks. NICE is asserting infringement of seventy separate claims in ten different patents. Despite the obvious difficulty in readying such an unwieldy case for trial, at the Rule 16 Scheduling Conference, NICE's counsel asserted, "[W]e can maintain this schedule without much difficulty, the one that's proposed by Plaintiffs." (Ex. B, Tr. of Oct. 12, 2006 Scheduling Conference at 8 (D.I. 47).) Amazingly, however, with only five weeks remaining before the close of fact discovery, NICE had not yet served a single deposition notice. Realizing the trouble it was in, over the next two weeks, NICE issued a total of twenty-nine deposition notices, the last of which NICE delivered with only eighteen business days remaining before the May 30 fact discovery deadline.

NICE delivered its first deposition notices on April 20, a full seven weeks after the twelve-week deposition discovery period began on March 2. At that time, NICE served seventeen deposition notices, followed by an additional notice three days later, bringing the total to eighteen. On April 24 and 25, Witness Systems notified NICE that it was not authorized to accept service on behalf of seven of the noticed individuals who reside outside the United States,

---

[1] NICE's procrastination infects even this Motion, which appears untimely in light of the Court's Standing Order on Non-Dispositive Motions (requiring motions to be filed sufficiently early to allow full briefing to be completed at least five days prior to the hearing date). In connection with the filing of Witness Systems' pending Motion to Compel (D.I. 171), Witness Systems was informed by the Court's Chambers that the last day to file motions to be heard at the July 13, 2007 hearing date was June 15. NICE filed its Motion on June 19.

- 2 -

but that Witness Systems would nevertheless work to try to schedule appropriate witnesses before the close of discovery on May 30. (Ex. C, D. Kent letter to J. Drayton dated Apr. 25, 2007 at 2.) Witness Systems even identified additional individuals more likely to have discoverable information than those NICE noticed, and offered to schedule their depositions instead, all to be completed by the May 30 discovery cutoff.

Undeterred, on April 27 and May 2, NICE served two more deposition notices on third parties Adtech-GESI, LLC and Mr. Kevin Hegebarth, respectively. On May 3, NICE issued eight more deposition notices, and one more on May 8, bringing its total to twenty-nine. Of course, neither the parties nor the dozens of witnesses NICE wished to depose could arrange their schedules to allow NICE to complete twenty-nine depositions in eighteen days.[2]

Witness Systems thus asked NICE to select the witnesses it most needed to depose. Once NICE did so, Witness Systems attempted to schedule those depositions within the discovery period, where possible. Where it was not possible due to scheduling conflicts, Witness Systems agreed to provide four witnesses for depositions outside of the discovery period[3]—an agreement Witness Systems has honored.[4]

Witness Systems went to great lengths to schedule as many depositions as possible within what little remained of the discovery period, based on NICE's stated preferences for which witnesses it wanted to depose. The large number of tardy deposition notices, however, required

---

[2] Indeed, the Court's Scheduling Order only allows each party to take twenty-five depositions.

[3] Witness Systems agreed to schedule the deposition of Mr. Carel Warfield for May 31; Mr. Kevin Hegebarth for June 7 (later rescheduled for July, after the Court's July 13 motion hearing); Mr. Marc Callahan for June 28; and Ms. Nancy Treaster, as Witness Systems' remaining Rule 30(b)(6) designee, for June 29.

[4] In contrast, NICE agreed to provide a Rule 30(b)(6) deponent on June 13, 2007. However, the witness was unable to testify on virtually any of the noticed topics, necessitating Witness Systems' pending Motion to Compel, filed June 15, 2007. (D.I. 171.)

two and even three depositions to take place in different cities on the same day, including overseas. NICE specifically requested that Witness Systems "attempt to schedule the depositions of the employees in the United Kingdom before the depositions of employees in the United States . . . ." (Ex. D, J. Drayton letter to D. Kent dated Apr. 26, 2007 at 1.) Strangely, NICE's Motion now complains about this very arrangement: "NICE took the deposition of all witnesses residing in the United Kingdom during the week of May 21, which delayed the scheduling of the technical depositions of U.S. Witnesses at issue in this Motion." (NICE Mot. at 4.) Given that NICE brought at least five senior attorneys (four partners and one counsel) to the Court's June 26 *Markman* hearing (plus an untold number of associates), the only reason NICE could not have taken these "technical depositions" concurrently is because the calendar was already full with all of the other depositions NICE sought, also at the last minute.[5]

Witness Systems more than satisfied its discovery obligations by making available numerous witnesses for NICE to depose in the United States and in the United Kingdom (including witnesses outside the subpoena power of the Court). Accordingly, NICE was able to complete thirteen depositions (and one more is currently scheduled by agreement for after the Court's motion hearing day on July 13).

---

[5] NICE also complains that it "tabled the depositions of several non-technical witnesses until after the completion of the deposition of Witness Systems' Rule 30(b)(6) designee, Nancy Treaster." Even if NICE made a unilateral, conscious choice to postpone certain depositions until after Ms. Treaster's Rule 30(b)(6) deposition, Witness Systems never agreed to allow multiple depositions to occur outside the discovery period once Ms. Treaster's Rule 30(b)(6) testimony was complete. In contrast, Witness Systems completed the depositions of all individual fact witnesses, despite that NICE has yet to provide any Rule 30(b)(6) testimony on the vast majority of the noticed topics. (*See* Witness Systems' Mot. to Compel filed June 15, 2007 (D.I. 171.).)

In all of the parties' discussions about deposition scheduling, Witness Systems consistently explained that—absent the few exceptions agreed to by the parties—all depositions must be completed by the close of discovery on May 30.  NICE even confirmed this understanding in correspondence seeking to schedule the depositions.  (Ex. D, J. Drayton letter to D. Kent dated April 26, 2007 at 1 ("It is my understanding that both parties are taking steps to attempt to schedule all noticed depositions prior to May 30, 2007 . . . .").)

NICE's claim that Witness Systems somehow agreed to schedule depositions in "two phases" is a complete fabrication directly contradicted by the parties' written correspondence and verbal communications.  At no time did Witness Systems ever agree to any sort of "second phase" of depositions to take place outside the discovery period, and Witness Systems specifically rejected NICE's suggestion that Witness Systems must schedule all noticed depositions despite the extreme tardiness of the notices.  (Ex. E, D. Kent letter to J. Drayton dated April 27, 2007 at 1 ("[W]e did not agree to make all of the employees NICE has attempted to subpoena individually available for deposition absent a protective order or mutual agreement. . . . [W]e will work with you and the witnesses in an effort to make them available for you to depose at mutually agreeable times and places . . . .").)  Try as NICE might, it is utterly unable to provide evidence of any agreement relating to a "second phase" of depositions.

Discovery closed in this case on May 30.  Through extraordinary efforts, the parties scheduled and took numerous depositions, all in the last few weeks of the discovery period.  This extremely compressed schedule was entirely of NICE's own making, having made no attempt to schedule any depositions until the last few weeks of discovery and refusing to scale back the number of patents and asserted claims to a scope appropriate for trial.  As a result, Witness

80046435.DOC

Systems must defend against far more patents and claims than could ever be tried under the current schedule.

Accordingly, if NICE truly wants to take the multiple additional depositions it now seeks, and continues in its refusal to limit the scope of this case to something appropriate for trial, significant adjustments to the case schedule and trial date will be required.  As the Court noted at the October 12, 2006 Rule 16 Scheduling Conference, the Court would entertain continuing the trial date should both parties "agree . . . that, you know, the pressures of the case require another few months or six months."  (Ex. B, Tr. of Oct. 12, 2006 Scheduling Conference at 27 (D.I. 47).) NICE's own behavior indicates it is unable to complete discovery under the schedule it requested, yet NICE insists on burdening Witness Systems with protracted discovery without a concomitant extension of the trial schedule.  Plainly, NICE's Motion proves that it found the discovery and trial preparation schedule unworkable.  NICE should admit as much and agree to extend the case schedule and trial date, if it truly needs the additional depositions it seeks.

**IV.    ARGUMENT**

**A.    The Court's Scheduling Order Is Controlling.**

NICE's Motion ignores controlling law.  The text of Rule 16 explicitly directs district courts to "enter a scheduling order that limits the time . . . (3) to complete discovery."  FED. R. CIV. P. 16(b).  The schedule set out in a Rule 16 Scheduling Order "shall not be modified except upon a showing of good cause . . . ."  *Id.*  NICE's Motion seeks a *de facto* unilateral extension of the discovery period, but NICE has neither asked the Court to modify its Rule 16 Scheduling Order, nor has NICE established good cause for so doing.

Although the parties may modify, by written agreement, certain discovery limitations, the parties never reached an agreement that would allow the depositions sought in NICE's Motion.

- 6 -

Federal Rule of Civil Procedure 29 allows the parties, "by written stipulation," to " (1) provide that depositions may be taken before any person, at any time or place . . . and (2) modify other procedures governing or limitations placed upon discovery . . . ." FED. R. CIV. P. 29.  Under Rule 29, therefore, the parties agreed to conduct a handful of depositions outside of the discovery period:  (1) Mr. Carel Warfield on May 31; Mr. Kevin Hegebarth (currently scheduled for late July); (2) Mr. Marc Calahan on June 28; (3) Ms. Nancy Treaster (as Witness Systems' Rule 30(b)(6) designee) on June 29; and (4) NICE's Rule 30(b)(6) designee on all remaining topics. (*See* Ex. F, D. Kent letter to S. Lindvall dated June 15, 2007 at 2 n.1 and accompanying text.) No agreement, however, was ever reached allowing NICE to take—outside of the discovery period—the numerous depositions it now seeks with its Motion, and NICE fails to cite any "written stipulation" to that effect as required by Rule 29.

NICE's Motion also fails to cite a single case in support of its fanciful belief that (a) the Court's Rule 16 Scheduling Order amounts to a technicality that can be ignored; and that (b) a party is entitled to escape the Court's Rule 16 Scheduling Order deadlines unilaterally by issuing an unrealistically large number of deposition notices near the close of the period in hopes of rescheduling the depositions later.  In fact, the case law squarely refutes these notions.

A Scheduling Order is not a mere technicality to be ignored at one party's whim.  "A Scheduling Order is intended to serve as the unalterable road map (absent good cause) for the remainder of the case.  A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, No. 05-2115, 2007 WL 1589495, at *5 (D. D.C. Jun. 1, 2007) (citations omitted).  Although Rule 16(b) allows for a modification of the Scheduling Order upon a showing of "good cause," "good cause" can only be found where "the moving party has been

- 7 -

generally diligent, the need for more time was neither foreseeable nor its fault . . . ." *3 Moore's Federal Practice* § 16.14[b] (2003). "Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause." *Olgyay v. Soc'y for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D. D.C. 1996).

Rather than attempting to demonstrate the requisite good cause for an extension of the discovery period, NICE argues that a unilateral extension of the deposition discovery period will not prejudice Witness Systems. This suggestion is at once both irrelevant and incorrect. First, "***the existence or degree of prejudice*** to the party opposing modification [of a Scheduling Order] may supply an additional reason to deny a motion to modify a scheduling order, but it ***is irrelevant to the moving party's exercise of diligence and does not show good cause***." *3 Moore's Federal Practice* § 16.14[1][b] (2007) (emphasis added); *Amcast Indus. Corp. v. Detrex Corp.*, 132 F.R.D. 213, 217 (N.D. Ind. 1990) (absence of prejudice to non-moving party "does not fulfill the 'good cause' requirement of Rule 16(b)").

Moreover, Witness Systems will be prejudiced if NICE continues taking depositions throughout the summer, as it desires. The Court's Scheduling Order requires the parties to serve initial expert reports on issues for which the producing party bears the burden of proof by August 24, 2007. NICE claims that "[t]he next critical date" is "the submission of ***NICE's*** expert reports, on August 24, 2007." (NICE Mot. at 9 (emphasis added).) However, Witness Systems' Answer asserts that all of the ten patents-in-suit are invalid. Invalidity is an issue on which Witness Systems bears the burden, and thus Witness Systems' expert reports on invalidity are also due August 24.

Witness Systems must be able to devote substantial attorney time to preparation of its invalidity case over the coming weeks, especially once the Court issues its claim construction

ruling, which the Court indicated would be forthcoming by mid-July.  Indeed, in a ten-patent case, with NICE asserting seventy separate claims, merely digesting the millions of pages of produced documents and the dozens of completed deposition transcripts is an almost insurmountable task, even without the demands of preparing for and defending seven additional depositions.  The Court's Scheduling Order includes a three-month period, post-discovery, (1) to evaluate the evidence uncovered during discovery in preparation for trial, (2) to adjust its case to the Court's forthcoming claim construction ruling, and (3) to retain experts to opine on issues of infringement and invalidity.  Witness Systems cannot adequately complete those tasks if it must devote considerable attorney resources to depositions that NICE should have completed during the discovery period had it attempted to schedule them in a timely fashion.

Courts consistently reject the tactics NICE employed here, *i.e.*, failing to serve deposition notices for the bulk of the discovery period, and issuing an unrealistically large number of deposition notices near the close of the period in hopes continuing the depositions past the close of discovery.  As explained in *In re Sulfuric Acid Antitrust Litigation*, service of multiple deposition notices, late in the discovery period, where "it was obvious—or at least probable—that the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices," is inherently "not reasonable."  231 F.R.D 320, 327-28 (N.D. Ill. 2005); *id.* ("[P]laintiffs did not pay sufficient heed to the various discovery cut-offs. . . . [B]ecause the conditions giving rise to their predicament are attributable to having waited to the last minute to notice the depositions, the motion to compel the depositions . . . is denied."); *see also Harry A. v. Duncan*, 223 F.R.D. 536, 538-39 (D. Mont. 2004) (granting protective order where plaintiff noticed dozens of depositions to take place in last two weeks of discovery); *Ultratech, Inc. v. Tamarack Scientific Co.*, No. C 03-3235, 2005 WL 696979, at *1 (N.D. Cal.

Mar. 17, 2005) (rejecting attempt to notice and take two depositions with only a week remaining in the discovery period: "The emergency was created by Tamarack, by waiting until the last minute to notice these expert depositions.").

Any other result, including the result NICE seeks with this Motion—*i.e.,* a forced unilateral extension of the discovery period without a showing of good cause—violates both Rule 16 and the Court's Scheduling Order and should be rejected.

### B. NICE Already Conducted Many of the Depositions It Seeks.

NICE has already deposed in this case four of the witnesses whose deposition it seeks, two of whom NICE has also deposed multiple times in the related cases pending in the Northern District of Georgia. NICE seeks the deposition of Ms. Nancy Treaster, who served as Witness Systems' Rule 30(b)(6) designee for twenty-four of the topics included in NICE's Rule 30(b)(6) notice. During Ms. Treaster's deposition, NICE's counsel repetitively and persistently questioned Ms. Treaster on issues unrelated to the topics for which she had consented to testify on behalf of the corporation. Witness Systems unambiguously (and repeatedly) objected to these questions as improper under Rule 30(b)(6), but NICE's counsel insisted on seeking Ms. Treaster's personal knowledge. Accordingly, as Witness Systems' counsel explained during the deposition, NICE exhausted its opportunity to question Ms. Treaster in her personal capacity.[6]

---

[6] (*Compare* Ex. H, Treaster Dep. 55:17-56:5, June 29, 2007 (rough draft) ("[Witness Systems Counsel]: [T]o the extent you wish to elicit this witness' personal knowledge concerning any topic, you can certainly do so outside of the scope of the topics she has been designated here for today, but if you do so, we will deem your individual notice of deposition to Ms. Treaster satisfied. She is here to talk about the topics that we identified for you a week ago. That's what she consents to testify for on behalf of the company. That's what she is prepared to do. So if you go outside of those, we are going to deem the individual notice satisfied."), *with, e.g., id.* at 155:16-156:11 ("Q. In leading up to the decision to sell Witness to Verint Group, were you involved in those discussions? A. No. MR. GRAUBART [Witness Systems Counsel]: Mr. Lindvall, I'm going to reserve my objections her [sic] to questions that fall outside the scope of

Similarly, NICE had adequate opportunity to depose Mr. Daniel Spohrer, who also served as a Witness Systems Rule 30(b)(6) designee on a multitude of noticed topics. At his deposition, NICE's counsel questioned Mr. Spohrer extensively on issues that fell outside the noticed topics, but on which Mr. Spohrer testified based on his personal knowledge. At the conclusion of the deposition, NICE's counsel declined the opportunity to complete any additional questions it had for Mr. Spohrer based on his personal knowledge.[7]

Though NICE only lists seven individual depositions it seeks via this Motion, NICE also asserts that it is entitled to "resume" questioning other witnesses it already deposed. For example, NICE asserts that it is entitled to resume Mr. Carel Warfield's deposition, despite that NICE already questioned him for a full seven-hour day. (NICE Mot. at 5 n.3.) Although NICE complains that it did not have the opportunity to review certain documents prior to Mr. Warfield's deposition (roughly one hundred pages of documents discovered shortly before the deposition on Mr. Warfield's laptop computer), Mr. Warfield was prepared to testify about the documents, yet NICE declined to question him and failed to reserve any time to do so at a later date. NICE exhausted a full seven hours of deposition time with Mr. Warfield, and is therefore

---

the topics for which Ms. Treaster has been designated. So to the extent you want to continue asking these questions and she is able to answer based on her knowledge, it is Witness Systems' position that to continue to do so will serve as satisfaction of the appearance of Ms. Treaster at deposition in her personal capacity. MR. LINDVALL [NICE Counsel]: I understand it is your position. I disagree, but we'll move forward. MR. GRAUBART: Okay. Q. (By Mr. Lindvall) You were not involved at all with respect to the decision to sell Witness to Verint? A. No.").

[7] (Ex. E to NICE's Motion, Spohrer Dep. 296:14-299:9 ("MR. LINDVALL: I'm going to reserve the right to continue with his individual deposition. MR. KANABE [Witness Systems Counsel]: . . . We are happy to stick around and let you question Mr. Spohrer in his individual capacity to the extent you want to do that. I have also been trying to be lenient throughout the day to the extent you asked some things which were not specifically on topic, such as when we got into discussions about Verient [sic] which I know is not a Topic. So to the extent you want to ask any other questions not relating to notice or otherwise, not relating to the noticed topics or otherwise, we are happy to continue doing so. You have that opportunity at this point.").

precluded from continuing his deposition. FED. R. CIV. P. 30(d)(2) ("[A] deposition is limited to one day of seven hours.").

NICE similarly states that it is entitled "to re-call" the witness designated to testify on behalf of third party Adtech-GESI, LLC ("Adtech"). (NICE Mot. at 5 n.3.) Not only is NICE incorrect about its entitlement to any more testimony from Adtech (a third party that provided a full seven hours of deposition testimony), but the Adtech subpoena issued from a different court. Adtech is a third party, located in suburban Atlanta, which provided a deponent pursuant to a subpoena issued out of the Northern District of Georgia. Should NICE wish to seek additional testimony from Adtech, it must seek such relief from the Georgia court.

### C. NICE Cannot Force Witness Systems Not to Rely on Witnesses NICE Failed to Timely Depose.

NICE has abandoned its earlier demand of twelve additional depositions, and now only seeks seven. (*Compare* Ex. G, D. Kent Letter to S. Lindvall dated June 6, 2007 at 1, *with* NICE Mot. at 3.) Yet, NICE's "accommodation" comes with a caveat—Witness Systems must forgo any intention "to call [the additional five individuals] to testify at trial, or otherwise rel[y] on them." (NICE Mot. at n.2.) Of course, NICE supplies no authority in support of its novel suggestion that a plaintiff may unilaterally force a defendant to disclaim the ability to rely on witnesses that the defendant failed to timely depose during the discovery period, and the Court should reject NICE's unprecedented demand.

### D. NICE Failed to Serve Deposition Notices and Subpoenas.

NICE has not served deposition notices or subpoenas on at least two of the witnesses it seeks to depose. Specifically, NICE seeks to depose Mr. Scott Bluman (a Witness Systems engineer residing in India) and Mr. Richard Heap (a citizen and resident of the United Kingdom, who has never been employed by Witness Systems). Although NICE delivered deposition

notices and subpoenas to Witness Systems' counsel, Witness Systems is not authorized by these individuals to accept service of a United States subpoena demanding appearance at a deposition in the United States, a fact Witness Systems has explained to NICE from the beginning.[8]  Where possible during the discovery period Witness Systems assisted NICE in arranging depositions of foreign witnesses at mutually agreeable times and places.[9]  Absent these individuals' consent, however, for NICE to compel these individuals' depositions, NICE must seek appropriate relief from the Indian and British courts via the Hague Convention—precisely the path NICE forced Witness Systems to take in the related Georgia cases, where Witness Systems sought to depose Israeli nationals affiliated with NICE.

### III.  CONCLUSION

For the foregoing reasons, Witness Systems respectfully requests that the Court deny NICE's Motion to Compel Depositions.

---

[8] (Ex. I, D. Kent letter to J. Drayton dated Apr. 24, 2007 ("Mr. Heap [is] not currently employed by Witness Systems, and we are not authorized to accept service of a subpoena on [his] behalf.").)

[9] (*Id.* ("The other individuals include at least 10 citizens of the UK.  We are not authorized to accept service on their behalf, but will check to see what we can do to schedule their depositions before the May 30 deposition deadline.").)  Accordingly, Witness Systems arranged for the deposition (in the United Kingdom) of five British witnesses during the discovery period: Messrs. Damian Smith, Timothy Hannah, Duane Wright, Dave Williams, and Phil Dawes.

- 13 -

Dated: July 3, 2007  FISH & RICHARDSON P.C.

By: */s/ Kyle Wagner Compton*
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware 19899-1114
Telephone: (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of July, 2007, I electronically filed with the Clerk of Court the foregoing **WITNESS SYSTEMS, INC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS** using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel.  In addition, the filing will also be sent via hand delivery.

| | |
|---|---|
| Josy W. Ingersoll | *Attorneys for Plaintiffs* |
| Melanie K. Sharp | *Nice Systems Ltd. and Nice Systems, Inc.* |
| Karen E. Keller | |
| Young, Conaway, Stargatt & Taylor, LLP | |
| 1000 West Street, 17th Floor | |
| P.O. Box 391 | |
| Wilmington, DE  19899 | |

I also certify that on July 3, 2007, I have sent by electronic mail and U.S. First Class Mail, the document(s) to the following non-registered participants:

| | |
|---|---|
| Scott G. Lindvall | *Attorneys for Plaintiffs* |
| Daniel DiNapoli | *Nice Systems Ltd. and Nice Systems, Inc.* |
| Joseph M. Drayton | |
| Robert R. Laurenzi | |
| Jason Frank | |
| Steven Chin | |
| Kaye Scholer LLP | |
| 425 Park Avenue | |
| New York, NY  10022 | |

*/s/Kyle Wagner Compton*
Kyle Wagner Compton

-1-