**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD., | **REDACTED** |
| *Plaintiff*, | |
| v. | Civil Action No. 06-311-JJF |
| WITNESS SYSTEMS, INC., | **CONFIDENTIAL** |
| *Defendant*. | **FILED UNDER SEAL** |

**WITNESS SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO COMPEL NICE SYSTEMS, INC. AND NICE SYSTEMS LTD.**
**TO PRODUCE DOCUMENTS AND RULE 30(b)(6) TESTIMONY**

Dated:  July 6, 2007

FISH & RICHARDSON P.C.

William J. Marsden, Jr. (#2247)
marsden@fr.com
Kyle Wagner Compton (#4693)
kcompton@fr.com
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware  19899-1114
Telephone:  (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone:  (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................2

      A.    Witness Systems Exhausted All Reasonable Efforts to Resolve the
            Disputes.............................................................................................................2

      B.    NICE Remains in Default of Its Discovery Obligations—Witness Systems'
            Motion Is Not "Moot."......................................................................................4

            1.    NICE refuses to provide required deposition testimony. ............................4

            2.    NICE admits that it continues to refuse to produce responsive
                documents. ..................................................................................................6

III.  ARGUMENT...........................................................................................................7

      A.    NICE Must Produce a Witness for All Noticed Topics. .........................................7

            1.    NICE cannot establish "waiver." .............................................................7

            2.    NICE must provide Rule 30(b)(6) testimony relating to all ten
                patents-in-suit—even those acquired from Dictaphone............................7

            3.    NICE acquired the entire Dictaphone CRS business ..................................9

            4.    The Court should preclude NICE from seeking damages for the
                time period prior to NICE's Acquisition of Dictaphone...........................12

      B.    Mr. Rudnik Was Not Capable of Testifying on Ten of the Thirteen Topics
            for Which NICE Designated Him. ........................................................................13

      C.    NICE Must Produce Emails Responsive to Witness Systems' Document
            Requests. ..........................................................................................................15

IV.   CONCLUSION....................................................................................................16

706 BRIEF.DOC

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arachnid, Inc. v. Merit Industries, Inc.,*
    939 F.2d 1574 (Fed. Cir. 1991)..........................................................................12

*E.E.O.C. v. Thorman & Wright Corp.,*
    ___ F.R.D. ___, 2007 WL 1638602 (D. Kan. Jun. 5, 2007)............................ 8-9

*Hockerson-Halberstadt, Inc. v. Nike, Inc.,*
    779 F. Supp. 49 (E.D. La. 1991) ......................................................................12

*Ierardi v. Lorillard, Inc.,*
    No. 90-7049, 1991 WL 158911 (E.D. Pa. Aug. 13, 1991) ................................9

*Kanaji v. Philadelphia Child Guidance Center of Children's Hospital,*
    No. Civ. A. 00-937, 2001 WL 708898 (E.D. Pa. Jun. 20, 2001)........................9

## RULES

FED. R. CIV. P. 34 ..................................................................................................15

iii

Defendant Witness Systems, Inc. ("Witness Systems") files this Reply in Support of its

Motion to Compel NICE Systems, Inc. and NICE Systems Ltd. (collectively, "NICE") to Produce

Documents and Rule 30(b)(6) Testimony (D.I. 171) filed June 15, 2007 ("Motion").

## I.    INTRODUCTION

NICE recanted its own promises and defaulted on its discovery obligations under the

Federal Rules.  NICE admits that it did not honor its promise to provide Rule 30(b)(6) testimony.

In the weeks leading up to the Rule 30(b)(6) deposition of Eyal Rudnik, NICE stated that it

would provide Mr. Rudnik to testify on "the remaining topics,"[1] only to change its tune the

afternoon before the deposition and designate Mr. Rudnik for less than half of the remaining

topics.  Then, even with respect to the thirteen topics for which NICE designated Mr. Rudnik to

testify, NICE admits that Mr. Rudnik was not prepared to testify about seven of them.[2]  Despite

NICE's promise to provide testimony on "the remaining topics," NICE now claims it has no

obligation to provide any testimony relating to eight of the patents-in-suit (acquired as part of its

purchase of Dictaphone).  NICE's Response Brief also confesses its refusal to produce

responsive emails, citing an imaginary agreement not to produce emails (a notion refuted by

NICE's own admissions and by the parties' practices).

Witness Systems respectfully requests the Court enter Witness Systems' Proposed Order

compelling NICE to fulfill its promises and obligations.

---

[1] (Ex. 4, J. Drayton correspondence to D. Kent dated May 18, 2007.)  Citations to Exhibits 1-18
herein refer to the exhibits attached to the Declaration of Kyle Wagner Compton in Support of
Witness Systems' Motion to Compel NICE Systems, Inc. and NICE Systems Ltd. to Produce
Documents and Rule 30(b)(6) Testimony (D.I. 173).  Exhibits 19-29 are attached to the Second
Declaration of Kyle Wagner Compton, filed contemporaneously with this Reply.
[2] As Witness Systems will demonstrate, Mr. Rudnik was actually unprepared on ten of the
thirteen topics for which NICE designated him.  *See* Section III.B., *infra*.

## II.    BACKGROUND

Despite its admitted failures to provide required deposition testimony and responsive documents, NICE primarily bases its opposition to this Motion on two equally faulty arguments: (1) that Witness Systems allegedly failed to confer with NICE before filing its Motion; and (2) that NICE somehow mooted the Motion with after-the-fact offers to provide certain of the requested testimony and documents.  Neither premise is correct.

### A.    Witness Systems Exhausted All Reasonable Efforts to Resolve the Disputes.

Witness Systems raised its discovery concerns with NICE as soon as it was able to do so, and requested a prompt response in light of the Court's motion deadline.  Once it became apparent that NICE would not fulfill its promise to provide deposition testimony on all outstanding Rule 30(b)(6) topics (when NICE suddenly limited Mr. Rudnik's designated topics the afternoon before his deposition), Witness Systems contacted the Court's Chambers to ascertain the date by which a Motion to Compel needed to be filed in order to be heard at the Court's July 13, 2007 hearing date and learned that such a motion needed to be filed by June 15.[3] With this deadline in mind, at the close of Mr. Rudnik's testimony on June 13, Witness Systems asked NICE to confirm the following day whether NICE would remedy its discovery failures. Witness Systems' request was detailed and unambiguous; NICE's counsel agreed to consider the request promptly and asked for no clarification.[4]

---

[3] In contrast, NICE filed its Motion to Compel Depositions (D.I. 176) on June 19, 2007.

[4] (Ex. 14, Rudnik Dep. (rough draft) 247:4-249:13, June 13, 2007    REDACTED

Witness Systems could not have raised its discovery concerns any earlier than it did. First, NICE only limited the topics on which Mr. Rudnik would testify the afternoon before the deposition.[5]  Second, Mr. Rudnik's inability to testify on even the topics for which NICE designated him did not become apparent until his deposition was underway.  Third, the existence of a number of specific documents was only revealed during Mr. Rudnik's deposition.  Where NICE's discovery failures were known to Witness Systems previously—*e.g.*, NICE's failure to produce documents in the possession of inventors and NICE consultants—Witness Systems raised its concerns long before filing this Motion, but NICE did not respond.[6]

---

<span style="color:red">REDACTED</span>

---

[5] (*Compare* Ex. 4, J. Drayton correspondence to D. Kent dated May 18, 2007 ("With the exception of topics one and two, it is our present intention to produce one or more witnesses to cover the remaining topics the week May 27.") *and* Ex. 5, J. Drayton correspondence to D. Kent dated May 21, 2007 ("Eyal Rudnik will serve as NICE's 30(b)(6) deposition designee."), *with* Ex. 13, J. Drayton correspondence to D. Kent dated June 12, 2007 ("Mr. Rudnik is prepared to testify on the following [thirteen (13)] topics: . . . ." ).)

[6] (*See* Ex. 15, Morlando Dep. at 41:1-42:13; 205:6-16.; Ex. 16, Daly Dep. at 71-73; Ex. 17, Henits Dep. at 58:19-59:8; Ex. 18, K. W. Compton letter to J. Drayton dated May 24, 2007.)

**B.    NICE Remains in Default of Its Discovery Obligations—Witness Systems'
Motion Is Not "Moot."**

NICE still refuses to provide deposition testimony on a multitude of noticed Rule

30(b)(6) topics, and NICE also refuses to produce responsive email.

1.    <u>NICE refuses to provide required deposition testimony.</u>

Although Witness Systems' Motion to Compel persuaded NICE to offer a (presumably)

competent deponent on a *limited* number of topics, NICE continues its refusal to provide a

deponent on all remaining topics, as previously promised.  Witness Systems' Rule 30(b)(6)

Deposition Notice lists thirty-four specific topics.  NICE designated its litigation consultant, John

Henits, to testify on two of the topics (topics 8 and 16), and Mr. Rudnik testified competently on

three topics (topics 15, 17 and 20).  NICE has yet to provide a witness on *twenty-nine* of the

noticed topics.  At 5:27 p.m. on the day that Witness Systems filed this Motion, NICE suddenly

stated that it "intended to produce" a deponent to testify on "certain topics," although it did not

specify which topics.[7]  Therefore, NICE's assertion that, prior to Witness Systems filing this

Motion, NICE offered testimony on the remaining topics is false.  NICE's cryptic offers of

additional testimony continued even after Witness Systems filed this Motion.  On June 20, NICE

again ambiguously stated that it "intends" to produce a witness "for the continuation of its

30(b)(6) deposition," yet failed to identify the topics on which the witness would testify.[8]

Finally, on June 22 (one week after Witness Systems filed this Motion), NICE revealed

the limited topics for which it would provide a deponent.  Of the twenty-nine unfulfilled topics,

NICE stated it would designate Mr. Yochai Rozenblat to testify on nine topics.[9]  Because NICE

---

[7] (Ex. C to NICE's Resp. Br. at 1.)

[8] (Ex. F to NICE's Resp. Br.)

[9] (Ex. H to NICE's Resp. Br. ("NICE intends to produce, in New York, Yochai Rozenblat, Vice

once again has chosen to produce a witness employed not by NICE Systems Ltd. (the entity at which all research, development, and finance functions are centralized) in favor an employee of NICE Systems, Inc. (the U.S. sales arm) it is doubtful that Mr. Rozenblat will be able to offer any meaningful testimony.  But, even assuming Mr. Rozenblat can testify on the nine topics for which NICE offers him*, twenty additional topics will remain unfulfilled*.

Thirteen of the remaining twenty topics relate to Dictaphone (from which NICE obtained eight of the patents-in-suit).  NICE makes an illusory offer to provide Mr. John Henits (NICE's litigation consultant) to testify about these topics, but this "offer" is illusory.  NICE specifically disclaims that Mr. Henits will testify on behalf of the NICE entities, as required by Rule 30(b)(6).  Mr. Henits will instead only offer testimony "based on his *personal* knowledge."[10]  According to NICE, "Neither NICE nor Mr. Henits are under any obligation to obtain any additional information beyond what Mr. Henits presently knows based on his prior Dictaphone employment."[11]  Such an offer amounts to a deposition of Mr. Henits in his individual capacity; it does nothing to satisfy NICE's obligation under Rule 30(b)(6) to provide a person to testify about *NICE's* knowledge of the noticed topics.

Even if NICE truly offered Rule 30(b)(6) testimony on the thirteen topics about which Mr. Henits will supposedly be "designated," NICE still ignores seven topics (topics 1-3, 5, 9, 12, 29).  Consequently, the record directly contradicts NICE's argument that Witness Systems' requests for deposition testimony are somehow "moot."

---

President of Sales at NICE Inc., as its designee to provide testimony for topics 10, 22, 23, 26, 28, 30-33.").)

[10] (NICE Resp. Br. at 7 n.2 (emphasis in original).)

[11] (*Id.*)

706 BRIEF.DOC

2.    <u>NICE admits that it continues to refuse to produce responsive documents.</u>

NICE incorrectly states, "Neither party in this case has performed or expected the other

party to engage in electronic search of email."[12]  Even if this statement were correct, it would

still fail to demonstrate that NICE satisfied the demands catalogued in Witness Systems' Motion.

As will be discussed in greater detail, infra, NICE is obligated under the Federal Rules to

produce responsive electronically stored documents, such as email.  Witness Systems never

agreed to exempt email from production, and NICE fails to cite any agreement to the contrary.

Thus, the email dispute is anything but "moot."

With respect to the other documents Witness Systems seeks, NICE has only partially

remedied its failures.  After Witness Systems filed this Motion, NICE produced two categories of

documents:  (1) certain emails between named inventors and NICE's litigation consultant, John

Henits; and (2) two PowerPoint presentations.  Category (1) may have belatedly satisfied the

requests first made by Witness Systems at the depositions of Salvatore Morlando, Daniel Daly,

and John Henits, reiterated in writing thereafter, and which NICE ignored until Witness Systems'

Motion to Compel.  Category (2), however, fails to satisfy Witness Systems' requests for the

documents identified by Eyal Rudnik at his deposition.  Mr. Rudnik testified REDACTED

Such

presentations fall squarely within Witness Systems' document requests, and NICE had not

previously produced them, so Witness Systems requested their immediate production.[14]  Mr.

Rudnik testified                          REDACTED

---

[12] (NICE Resp. Br. at 5-6.)
[13] (Ex. 19, Rudnik Dep. (rough draft) at 135:7-136:8.)

706 BRIEF.DOC

<span style="color:red">REDACTED</span>                                   .  As a result, NICE's

production of only two such presentations does not "moot" Witness Systems' requests.

## III.    ARGUMENT

### A.    NICE Must Produce a Witness for All Noticed Topics.

#### 1.    NICE cannot establish "waiver."

Hoping to distract the Court from its broken promise to provide testimony on all remaining topics, NICE asserts—with no case law to support it—that Witness Systems somehow "waived" its right to Rule 30(b)(6) testimony.  According to NICE, it conclusively foreclosed Witness Systems' ability to obtain testimony on the objected-to topics by serving written objections to Witness Systems Rule 30(b)(6) deposition topics.  NICE even suggests that Witness Systems was obligated to lodge "timely objection[s]" to NICE's objections.[15]  Such a suggestion finds no basis in the Federal Rules, the case law, or common sense, and the Court should summarily reject it.  Despite NICE's objections, Witness Systems properly proceeded with the Rule 30(b)(6) deposition of NICE, during which the scope of NICE's refusal to provide Rule 30(b)(6) testimony became apparent.  This motion followed.  On these facts, no waiver occurred.

#### 2.    NICE must provide Rule 30(b)(6) testimony relating to all ten patents-in-suit—even those acquired from Dictaphone.

Rule 30(b)(6) requires a corporation to provide a witness to testify on the corporation's knowledge of noticed topics.  Yet, NICE refuses to provide any Rule 30(b)(6) testimony on ten topics (topics 4, 6, 9, 11, 13, 18, 21, 24, 27 and 29), based solely on the manner in which NICE obtained its knowledge.[16]  As the Court is aware, NICE did not develop the inventions claimed

---

[14] (*Id.* at 141:11-15.)
[15] (NICE Resp. Br. at 9.)
[16] (*Id.* at 8.)

706 BRIEF.DOC

in eight of the patents-in-suit; instead, NICE acquired those patents when it acquired the

Dictaphone Corporation's "Communication Recording Systems [('CRS')] Business."[17]

According to NICE, it has no obligation to provide any testimony regarding those eight patents.

No matter what knowledge the NICE entities (or NICE employees) possess relating to those

patents—their development, their commercial success, or the basis for damages for alleged

infringement—NICE states it does not need to provide testimony on that knowledge.  NICE

believes it is somehow exempt from providing testimony about its corporate knowledge, simply

because NICE executed an asset purchase of the Dictaphone business, instead of a merger.[18]

Despite NICE's characterization of the Dictaphone transaction, ***the form of the corporate
transaction is simply not relevant***.  Whether NICE acquired knowledge via merger, stock

purchase, asset purchase or otherwise, if NICE possesses knowledge, it must provide a witness to

testify on that knowledge pursuant to Rule 30(b)(6).  The source of NICE's knowledge is of no

moment.

> [T]he responding party must make a conscientious good-faith endeavor to
> designate the persons having knowledge of the matters sought by the interrogator
> and to prepare those persons in order that they can answer fully, completely,
> unevasively, the questions posed by the interrogator as to the relevant subject
> matters.

*E.E.O.C. v. Thorman & Wright Corp*., ___ F.R.D. ___, 2007 WL 1638602, at *4 (D. Kan. Jun. 5,

2007).

Even if NICE claims a total lack of corporate knowledge of the noticed topics (something

it has not done), that would be insufficient to avoid providing a deponent.  In *Ierardi v. Lorillard,*

---

[17] (Ex. G to NICE's Resp. Br.)

[18] (NICE Resp. Br. at 9 ("NICE did not acquire Dictaphone in its entirety, but rather acquired
only certain Dictaphone assets, *e.g.*, Dictaphone patents.").)

*Inc.*, the Eastern District of Pennsylvania explained that "claimed lack of knowledge does not provide sufficient grounds for a protective order: ***the other side is allowed to test this claim by depositing the witness***."  No. 90-7049, 1991 WL 158911, *1 (E.D. Pa. Aug. 13, 1991) (emphasis added).  Indeed, even if the noticed organization has no current employees with sufficient knowledge to testify fully on the noticed topics, the party "is obligated to prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation."  *Id.* (citations omitted; alteration in original); *see also Kanaji v. Philadelphia Child Guidance Center of Children's Hosp.*, No. Civ. A. 00-937, 2001 WL 708898, at *2 (E.D. Pa. June 20, 2001) (change in corporate form or ownership not sufficient to excuse organization from providing a deponent on organization's knowledge of a noticed topic).

3.    <u>NICE acquired the entire Dictaphone CRS business</u>

NICE's characterization of its Dictaphone purchase is contradicted both by its previous assertion that NICE is Dictaphone's successor-in-interest and by the documentary record.  When Witness Systems served third-party subpoenas on law firms that prosecuted the Dictaphone patents and represented Dictaphone in its patent infringement suit against NICE, NICE insisted on reviewing any responsive documents for attorney-client privilege as the successor-in-interest to Dictaphone.[19]  Moreover, even as of July 2, NICE was still asserting that it had the right to

---

[19] (Ex. 20, J. Drayton correspondence to J. Hamann dated Feb. 5, 2007 ("NICE is seeking an agreement with Witness does not object [sic] to NICE having an opportunity to review documents to protect against the disclosure of privileged or otherwise protectable information prior to disclosure to Witness."); Ex. 21, J. Hamman correspondence to J. Drayton dated Feb. 2, 2007 ("As I understand the proposal, Kelley Drye & Warren will soon forward any responsive documents in its possession, custody, or control to Kaye Scholer. At that point, Kaye Scholer will timely conduct a privilege review of those documents - *in light of your representations that any privilege runs to NICE as Dictaphone's corporate successor*." (emphasis added)); Ex. 22, J. Frank correspondence to N. Graubart dated March 7, 2007 ("Additionally, as to the Jones Day subpoena, NICE is prepared to work with Jones Day in a manner consistent with the way we

706 BRIEF.DOC

require confidential treatment of deposition testimony containing discussions "related to Dictaphone products."[20]

Contrary to the assertion in NICE's brief that NICE "only acquired certain assets, *e.g.*, Dictaphone patents,"[21] the record demonstrates that NICE acquired an entire independently operated business, the Dictaphone CRS business.  The extent of the purchase is evident even from the exhibits on which NICE relies in its Response Brief.  In a press release entitled, "Dictaphone to Sell Communication Recording Systems Business to NICE Systems," Dictaphone explains that it sold to NICE its entire "CRS unit," *i.e.*, the business that marketed "recording systems for 9-1-1 centers and other mission-critical operations in the public safety, financial, and call center markets."[22]

The transaction documents themselves establish the extent of the purchase.  For example, the Asset Purchase and Sale Agreement                REDACTED

_____

worked with Kelley, Drye & Warren LLP. We are currently coordinating the receipt and review of documents responsive to the Jones Day subpoena.").)

[20] (Ex. 23, J. Drayton correspondence to D. Kent dated July 2, 2007.)

[21] (NICE Resp. Br. at 9.)

[22] (Ex. G to NICE Resp. Br.)

[23] (Ex. 24, Asset Purchase and Sale Agreement dated April 11, 2005 at § 2.1 (NICE_DE_01135435-509).)

- 10 -

REDACTED

The extent of the transaction is also reflected in NICE's own financial statements and activities. For example, although NICE paid $40,000,000 for the Dictaphone business, it accounted for over $25,000,000 as "Goodwill," not attributed to any specific tangible assets.[28] Moreover,                    REDACTED

Plainly, NICE succeeded to the entire Dictaphone CRS business and Witness Systems is entitled to question a witness about NICE's current knowledge of topics relating to the development and exploitation of the inventions claimed in the patents-in-suit that NICE acquired as part of the Dictaphone transaction.

---

[24] (*Id.* at § 2.3.)

[25] (*Id.* at § 7.5.)

[26] (Ex. 25, Dictaphone Communications Recording Systems Management Presentation (NSDE006172).)

[27] (Ex. 26, Patent Assignment (LOOSABLLP001538).)

[28] (Ex. 27, NICE Consolidated Financial Statements as of Dec. 31, 2005. at F-11.)

[29] (Ex. 19, Rudnik Dep. (rough draft) 117:4-9          REDACTED

706 BRIEF.DOC

4.    The Court should preclude NICE from seeking damages for the time period prior to NICE's Acquisition of Dictaphone.

If NICE refuses to provide testimony relating to the Dictaphone patents and Dictaphone's sales of products embodying the patented inventions, the Court should preclude NICE from recovering damages for the period prior to the acquisition. To date, NICE has not articulated its theory of damages in this case. Indeed, the topics on which Witness Systems seeks testimony include the revenues, costs, profits, etc. related to the embodying products sold by NICE and Dictaphone,[30] yet NICE refuses to provide such testimony. As a result, NICE has not stated whether it intends to seek damages for the period prior to the acquisition of the Dictaphone patents, and if so, whether it intends to seek lost profits or merely a reasonable royalty.[31] NICE's interrogatory responses are also silent as to the period for which NICE seeks damages.[32]

Should NICE continue to block Witness Systems' efforts to conduct discovery as to the basis for damages that predate the 2005 acquisition of the Dictaphone patents, NICE should be precluded from recovering any damages related to the pre-acquisition time period. NICE argues,

> [T]he basis for NICE's objections to these topics is that NICE did not acquire Dictaphone in its entirety, but rather acquired only certain Dictaphone assets, *e.g.*, Dictaphone patents. NICE therefore has no obligation to designate an individual to testify on these topics.[33]

---

[30] (Ex. 3 at, *e.g.*, Topics 26-33.)

[31] Notably, the transferee of a patent has no automatic right to collect damages for past infringement, unless that right was ***expressly*** assigned along with the patents. *See Arachnid, Inc. v. Merit Indus. Inc*., 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("With a single exception the plaintiff in an action at law must be the person or persons in whom the legal title to the patent resided at the time of the infringement."); *Hockerson-Halberstadt, Inc. v. Nike, Inc.*, 779 F. Supp. 49, 52 (E.D. La. 1991) ("[T]he parties must specifically state their intent [to transfer right to sue for past infringements]; *i.e.*, they must use the magic words.").

[32] (Ex. 28, NICE's Supp. Obj. & Resp. to Witness Systems' Third Set of Interrogatories dated April 6, 2007 at Interrogatory 22.)

[33] (NICE Resp. Br. at 9.)

- 12 -

As explained above, NICE's argument is flawed for two reasons: (1) The form of the Dictaphone-NICE transaction is irrelevant to NICE's obligations to provide testimony as to its corporate knowledge, and (2) NICE plainly acquired the entire CRS business. Nevertheless, if the Court accepts NICE's arguments—*e.g.*,"NICE has no obligation to produce a witness to testify on Dictaphone's [pre-acquisition] accounting practices"[34]—then NICE equally has no basis upon which it could collect for any damages that may have accrued pre-acquisition.

   **B.    Mr. Rudnik Was Not Capable of Testifying on Ten of the Thirteen Topics for Which NICE Designated Him.**

Witness Systems Rule 30(b)(6) deposition of Mr. Eyal Rudnik was an almost total waste of resources, for which NICE should be forced to bear the costs. NICE limited the topics Mr. Rudnik would testify about late in the afternoon before his deposition, while counsel was en route from Atlanta to New York to take the deposition. NICE also admits that Mr. Rudnik was not prepared to testify on at least seven of the thirteen topics for which NICE designated him, and has therefore offered to produce Mr. Rozenblat to testify on certain of those topics.[35] Witness Systems agrees Mr. Rudnik testified adequately on three topics, but NICE incorrectly maintains that Mr. Rudnik provided sufficient testimony on the three other topics for which he was designated (topics 3, 5, and 12).

The deposition transcript reveals Mr. Rudnik's inability to testify about topics 3, 5, and 12. Topic 3 calls for testimony on NICE's activities to enforce the patents-in-suit, "including any letters of other communications with third parties concerning potential infringement of the

---

[34] (NICE Resp. Br. at 10.)

[35] The day before Mr. Rudnik's deposition, NICE designated him to testify on thirteen topics (topics 3, 5, 7, 10, 12, 14, 15, 17, 19, 20, 22, 23 and 25). Mr. Rudnik was capable of testifying on three topics (topics 15, 17, and 20), leaving ten unfulfilled. NICE concedes he was unable to testify on seven of those topics (topics 7, 10, 14, 19, 22, 23, and 25). (Ex. H to NICE Resp. Br.)

patents or allegations of infringement of the patents."[36]          REDACTED

Topic 5 calls for testimony on

NICE's organizational structure as it relates to, *inter alia*, conception and reduction to practice of

the claimed inventions of the patents-in-suit.[38]          REDACTED

Topic 12 relates to NICE's intellectual property policies and procedures.[40] REDACTED

---

[36] (Ex. 3, Rule 30(b)(6) Deposition Notice of NICE at Topic 3.)
[37] (Ex. 14, Rudnik Dep. at 51:23-52:5          REDACTED

[38] (Ex. 3 at Topic 5.)
[39] (Ex. 14 at 66:6-24          REDACTED

[40] (Ex. 3 at Topic 12.)
[41] (Ex. 19 at 99:21-100:3          REDACTED

- 14 -

C.     **NICE Must Produce Emails Responsive to Witness Systems' Document Requests.**

Rule 34 specifically allows parties to request the production of electronically stored information, including emails. FED. R. CIV. P. 34(a) advisory committee's note ("Rule 34(a) is amended to confirm that discovery of electronically stored information stands on equal footing with discovery of paper documents. . . . A common example often sought in discovery is electronic communications, such as e-mail."). Accordingly, Witness Systems' Requests for the Production of Documents specifically call for the production of "electronic mail."[42]

Although NICE implies that the parties agreed not to produce emails, it then admits otherwise. Rather than argue that the parties agreed to forgo producing emails (which would be false), NICE instead confirms that the parties reached no agreement exempting email: "[*T*]*he parties never reached any agreement concerning email*."[43] Thus, Rule 34 and Witness Systems' document requests govern.

NICE's admission is confirmed by the parties' practice. Because the parties are engaged in multiple related patent infringement cases, both parties agreed to cross-designate their document production in the other cases for production and use in this case.[44] A review of both parties' productions in these cases reveals that each side has produced thousands of pages of emails. Thus, NICE's suggestion that the parties reached an agreement to withhold email from production is simply false.

---

[42] (Ex. 1, Witness Systems' First Set of Requests for Production of Documents at 2 (definition of "Documents").)

[43] (NICE Resp. Br. at 6.)

[44] (Ex. 29, D. Kent letter to J. Drayton dated Jan. 8, 2007.)

Contrary to NICE's assertion, Witness Systems does not demand that NICE "undertake an exhaustive production of email."[45]  Witness Systems specifically requests that NICE produce only two categories of emails:

- NICE emails relating to the conception and reduction to practice of the inventions claimed in the two patents-in-suit originating from NICE (*i.e.,* the '109 and '079 Patents); and

- NICE emails relating to the remedies NICE seeks (damages and injunctive relief), *i.e.*, emails related to the sales and marketing of NICE products embodying the patents-in-suit, and related to NICE's decision to stop selling the Dictaphone products once it acquired Dictaphone's CRS business.

These requests are reasonable, narrowly tailored, and eminently relevant to the claims and defenses at issue in this case.

## IV.     CONCLUSION

For the foregoing reasons, Witness Systems respectfully requests the Court enter Witness Systems' Proposed Order compelling NICE to fulfill its promises and obligations to produce all responsive documents (including emails falling within the categories described above) and a witness capable of testifying on all outstanding Rule 30(b)(6) topics.

---

[45] (NICE Resp. Br. at 6.)

706 BRIEF.DOC

Dated:  July 6, 2007                    FISH & RICHARDSON P.C.


                            By:  */s/ Kyle Wagner Compton*
                                 William J. Marsden, Jr. (#2247)
                                 marsden@fr.com
                                 Kyle Wagner Compton (#4693)
                                 kcompton@fr.com
                                 919 N. Market Street, Suite 1100
                                 P. O. Box 1114
                                 Wilmington, Delaware  19899-1114
                                 Telephone:  (302) 652-5070

                                 Nagendra Setty (*pro hac vice*)
                                 Daniel A. Kent (*pro hac vice*)
                                 1180 Peachtree Street, NE, 21st Floor
                                 Atlanta, GA 30309
                                 Telephone:  (404) 892-5005

                                 ATTORNEYS FOR DEFENDANT
                                 WITNESS SYSTEMS, INC.

- 17 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of July, 2007, I electronically filed with the Clerk of

Court the foregoing "WITNESS SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS

MOTION TO COMPEL NICE SYSTEMS, INC. AND NICE SYSTEMS LTD. TO PRODUCE

DOCUMENTS AND RULE 30(b)(6) TESTIMONY" using CM/ECF which will send electronic

notification of such filing(s) to the below-listed Delaware counsel.  In addition, the filing will

also be sent via hand delivery.


Josy W. Ingersoll                                 *Attorneys for Plaintiffs*
Melanie K. Sharp                                 *Nice Systems Ltd. and Nice Systems, Inc.*
Karen E. Keller
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

I also certify that on July 6, 2007, I have sent by electronic mail and U.S. First

Class Mail, the document(s) to the following non-registered participants:


Scott G. Lindvall                                 *Attorneys for Plaintiffs*
Daniel DiNapoli                                  *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022


                                                 */s/Kyle Wagner Compton*_____
                                                 Kyle Wagner Compton

706 BRIEF.DOC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of July, 2007, I electronically filed with the Clerk of

Court the foregoing REDACTED WITNESS SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS

MOTION TO COMPEL NICE SYSTEMS, INC. AND NICE SYSTEMS LTD. TO PRODUCE

DOCUMENTS AND RULE 30(b)(6) TESTIMONY using CM/ECF which will send electronic

notification of such filing(s) to the below-listed Delaware counsel:


Josy W. Ingersoll                    *Attorneys for Plaintiffs*
Melanie K. Sharp                     *Nice Systems Ltd. and Nice Systems, Inc.*
Karen E. Keller
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

I also certify that on July 13, 2007, I have sent by electronic mail the document(s)

to the following non-registered participants:


Scott G. Lindvall                    *Attorneys for Plaintiffs*
Daniel DiNapoli                      *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022


                                     */s/Kyle Wagner Compton*
                                     Kyle Wagner Compton