IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICE SYSTEMS, INC., a Delaware Corporation, and NICE SYSTEMS, LTD., an Israeli Corporation, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-311-JJF |
| WITNESS SYSTEMS, INC., a Delaware Corporation, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO WITNESS SYSTEMS, INC.'S MOTION TO STRIKE PLAINTIFF'S SECOND AND THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO WITNESS SYSTEMS, INC.'S INTERROGATORY NOS. 17 AND 18 AND TO PRECLUDE PLAINTIFFS' USE OF EVIDENCE RELATED THERETO**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6681
msharp@ycst.com

KAYE SCHOLER LLP

Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY 10022
(212)836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd.*

Dated: September 21, 2007

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT ................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 3

    A.  NICE's May 11 Supplemental Responses to Interrogatory Nos. 17 and 18 ........... 3

    B.  Witness' Depositions of Individual Inventors ...................................................... 4

    C.  NICE's August 2 and August 10 Responses to Interrogatory Nos. 17 and 18 ....... 4

    D.  Witness' Rule 30(b)(6) Deposition of John Henits ............................................... 5

    E.  Witness' Supplemental Invalidity Contentions .................................................... 6

III. ARGUMENT ...................................................................................................... 6

    A.  Governing Law ................................................................................................ 6

    B.  Witness Has Suffered No Prejudice as a Result of the August 2 and 10 Supplements .................................................................................................... 7

    C.  NICE's August 2 and August 10 Supplements Have Not Caused A Disruption to the Trial Schedule .......................................................................................... 10

    D.  NICE Has Not Demonstrated Any Bad Faith or Willfulness in Responding to Witness' Interrogatory Nos. 17 and 18 ............................................................. 11

    E.  NICE's Contentions for Conception Dates and the Documents Used to Support Them Are Important Evidence for NICE ............................................................. 12

IV. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bridgestone Sports Co. Ltd. v. Acushnet Co.,*
  2007 WL 521894 (D. Del. Feb. 15, 2007) ............................................................6, 7

*Kopykake Enters., Inc. v. Lucks Co.,*
  264 F.3d 1377 (Fed. Cir. 2001) ...........................................................................3

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
  595 F.2d 894 (3d Cir. 1977), *overruled on other grounds by*
  *Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir. 1985) .....................................7

*Parrish v. Freightliner, LLC,*
  471 F.Supp.2d 1262 (M.D. Fla. 2006) .................................................................11

**Statutes**

Fed. R. Civ. P. 26(e) .......................................................................................2, 9

## I.    SUMMARY OF ARGUMENT

Witness Systems, Inc.'s ("Witness") motion to strike NICE Systems Ltd. and NICE Systems, Inc.'s (collectively "NICE") August 2 and August 10, 2007 supplemental responses to Witness' Interrogatory Nos. 17 and 18 is based on the false premise that NICE's prior responses had not provided Witness with NICE's contentions on dates of conception and reduction to practice for the ten NICE patents in suit.  To the contrary, NICE's May 11, 2007 interrogatory responses provided, with the exception of two patents, the *same* conception and reduction to practice dates set forth in the August 2 and 10 supplements, as well as documentary evidence supporting NICE's contentions.  For two related patents (the '372 and '920 patents), NICE's continuing investigation identified documentary support for a conception date only several months earlier than the date set forth in the May 11 responses.

Witness' contention that it was prejudiced by NICE's August 2 and 10 supplemental responses is frivolous.  First, on August 21, 2007, Witness took the Rule 30(b)(6) deposition of NICE on the very issue of the dates of conception and reduction to practice, and NICE's designee, Mr. John Henits, is the sole inventor on the two patents for which NICE's supplemental August responses provided earlier dates of conception than those provided in its May 11 responses.  Second, Witness' argument that the supplemental responses "impacted" the scope of its prior art searches is sheer nonsense.  Presumably, Witness searched for any and all art dated prior to the filing dates of the patents in suit, unless one were to irrationally conclude that Witness believed that it could not challenge NICE's contentions on conception and reduction to practice.  Indeed, if Witness conducted its initial prior art searches based on the filing dates of the patents (as Witness must have if it in fact concluded that NICE was limited to the filing dates), it would have uncovered all prior art that could later be used to challenge any earlier contentions on conception dates later asserted by NICE.  Moreover, even if one were to

1

draw the illogical conclusion that Witness limited its prior art searches solely to evidence dated prior to the conception dates NICE provided in its May 11 responses, Witness could not have been prejudiced by NICE's August supplemental response providing an *earlier* conception date for two of the patents because its initial searches would have uncovered any art dated prior to the *later* conception dates set forth in the May 11 responses. Witness' additional "prejudice" arguments - - that it would have posed different deposition questions to inventor witnesses and that it would have changed its claim construction positions - - are similarly unsupported and without merit. (*See* Witness' Brief in Support of Its Motion to Strike, filed Sep. 7, 2007 ("Witness Brief"), pp. 8-9). As set forth in more detail below, Witness had every opportunity to question each inventor on the facts surrounding conception and reduction to practice for the patents in suit and had every opportunity to question NICE's 30(b)(6) witness, Mr. Henits, on the dates set forth in NICE's August supplemental responses. Moreover, NICE's contentions on conception and reduction to practice dates have no bearing on claim construction, and Witness fails to present any basis for concluding otherwise.

Finally, both parties operated under the provisions of Federal Rule of Civil Procedure 26(e), requiring supplementation of discovery responses. Indeed, Witness' interrogatories specifically instructed that "interrogatories are continuing so as to require supplemental responses by NICE in accordance with Rule 26(e)," and accordingly NICE's May 11, 2007 responses advised Witness that its continuing investigation may require supplementation of its responses. (Ex. A, Witness' Second Set of Interrogatories to NICE, served Nov. 17, 2006, p. 5). Indeed, Witness itself has repeatedly supplemented its responses to NICE's interrogatories on Witness' invalidity contentions on March 2, 2007, April 30, 2007, May 30, 2007, July 10, 2007, and most recently on September 10, 2007, the last four supplements having been served after the

2

Scheduling Order's March 2, 2007 deadline for serving supplemental interrogatory responses. (*See* Exs. B-F, Witness' Responses to NICE's Interrogatories).

In short, Witness' motion to strike is utterly devoid of merit and should be denied.

## II.    STATEMENT OF FACTS

### A.    NICE's May 11 Supplemental Responses to Interrogatory Nos. 17 and 18

On May 11, 2007, NICE identified, "subject to continued investigation," the following dates of conception for the patents-in-suit:

> U.S. Patent No. 5,274,738: on or before April 21, 1989
> U.S. Patent No. 5,396,371: on or before April 19, 1991
> U.S. Patent No. 5,819,005: on or before April 19, 1991
> U.S. Patent No. 6,249,570: on or before July 9, 1997
> U.S. Patent No. 6,728,345: on or before July 9, 1997
> U.S. Patent No. 6,775,372: on or before November 5, 1997
> U.S. Patent No. 6,785,370: on or before July 9, 1997
> U.S. Patent No. 6,870,920: on or before November 5, 1997
> U.S. Patent No. 6,959,079: on or before February 14, 2000
> U.S. Patent No. 7,010,109: on or before August 28, 2000

(Ex. G, Plaintiff's Supplemental Obj. & Resp. to Defendant Witness Systems, Inc.'s Second Set of Interrogatories, served May 11, 2007 ("May 11 Response"), pp. 8-9).[1]

In its May 11 Response, NICE not only disclosed conception dates for each of the patents in suit, it also identified specific documents which supported its contentions for the dates of conception. These documents, including functional specifications, architectural requirements and engineering overviews, clearly set forth the basis for the dates of conception set forth in

---

[1] NICE specifically stated that "each patent in suit was conceived on its respective priority date provided in response to Interrogatory No. 17." The dates that NICE set forth in its response to Interrogatory No. 17 were not priority dates, which could only be filing dates of the patents in suit or earlier related applications, but were rather earlier dates, which could only represent conception dates. NICE also contended that its inventions were reduced to practice on the filing date of each patent in suit. Even absent such a contention, a patentee is by law entitled to a constructive reduction to practice date of the filing date of the patent. *See Kopykake Enters., Inc. v. Lucks Co.*, 264 F.3d 1377, 1383 (Fed. Cir. 2001) (stating that "the date the invention was constructively reduced to practice [is] the date the patent application was filed").

response to Interrogatory No. 17. Thus, the May 11 response to Interrogatory No. 18 provided NICE's contentions on dates of conception and reduction to practice, as well as the documentary evidence on which NICE relied to support these contentions.[2]

### B.    Witness' Depositions of Individual Inventors

Witness initially noticed and scheduled the depositions of twelve inventors on the eight NICE patents in suit acquired from the Dictaphone Corporation ("Dictaphone").[3] Witness took a total of nine of these inventor depositions, seven of which took place after Witness received NICE's May 11 Response.[4] After receiving NICE's May 11 Response, Witness cancelled the other three inventor depositions that it had initially noticed. During each of the inventor depositions it did take, Witness had the opportunity to ask each inventor about any and all circumstances surrounding the conception of the patents in suit.

### C.    NICE's August 2 and August 10 Responses to Interrogatory Nos. 17 and 18

On August 2, 2007, based on continuing investigation and in preparation for Witness' Rule 30(b)(6) deposition on conception dates, NICE identified documents that supported an earlier date of conception for the '372 and '920 patents. (Ex. H, Plaintiff's Second Supplemental Obj. & Resp. to Defendant Witness Systems, Inc.'s Interrogatory Nos. 17 and 18, served August

---

[2] Witness' position that striking the August supplements would leave NICE with conception and reduction to practice dates of the priority dates of the patents is clearly incorrect. (*See* Witness Brief, p. 12). The May 11 Response provided NICE's contentions on the conception dates of the patents in suit and the documents supporting these contentions.

[3] NICE was not the original assignee of the '570, '345, '370, '738, '005, '372, '920 and '371 patents (collectively, the "Dictaphone patents"), and acquired these patents from Dictaphone in the spring of 2005. In response to Witness' document requests in this litigation, NICE produced for inspection over 450 boxes of documents related to the acquisition of assets from Dictaphone (the "Dictaphone documents"). Upon inspection, Witness requested a copy of the vast majority, if not all, of the Dictaphone documents -- the source of the documentary evidence identified in the May 11 Response. Thus, both parties had access to the Dictaphone documents and all of the documents evidencing the conception of the patents in suit.

[4] Only John Richter and Phil Min Ni (co-inventor on the '570, '345 and '370 patents with David Glowny) were deposed on April 4 and 5, 2007, respectively. David Glowny, the lead inventor on these patents, however, was deposed on May 17, 2007, after the May 11 Response.

4

2, 2007 ("August 2 Supplement")).  These documents supported a conception date of April 4, 1997 for both of these patents, which is seven months earlier than the November 5, 1997 date identified in the May 11 Response.  In addition, in the August 2 Supplement, NICE corrected an error in its May 11 Response to Interrogatory No. 17 and stated the actual priority dates for the patents in suit, and NICE restated its conception dates in its response to Interrogatory No. 18, instead of referring back to the dates set forth in Interrogatory No. 17, as it had done in the May 11 Response. (*Id.*).

In order to facilitate Witness' upcoming August 21 Rule 30(b)(6) deposition, on August 10, 2007, NICE further supplemented its response to Interrogatory No. 18 to identify for each patent in suit the exact Bates ranges of documents that supported its date of conception.  The August 10 supplement did not identify any new contentions for the dates of conception for any of the patents and merely provided supplemental documentary support for those previously identified conception dates.[5]

### D.    Witness' Rule 30(b)(6) Deposition of John Henits

On August 21, 2007, almost two weeks after service of the August 2 Supplement and three months after service of the May 11 Response, Witness took the Rule 30(b)(6) deposition of Mr. John Henits, a former employee of Dictaphone, regarding the dates of conception and reduction to practice of the patents in suit.  Mr. Henits spent several weeks preparing for this deposition, studying the documents that NICE produced in the litigation regarding the work underlying the patents in suit, including the documents in support of its contentions for the dates of conception. (*See* Ex. I, Excerpt from Uncertified Transcript of the Henits 30(b)(6) Deposition, Lns. 16-22).  Mr. Henits also brought with him to the deposition, a set of the documents

---

[5] It should be noted that the April 4, 1989 date listed in the August 10 Supplement for the '738 patent was a typographical error, and NICE's contention of the conception date for the '738 patent remains April 21, 1989 -- the same date as provided in its May 11, 2007 Response.

referenced in the August 2 and August 10 Supplements to assist in the examination of the conception date issue, and was prepared to answer any and all questions on this topic for all of the patents in suit. (*See* Ex. J, Excerpt from Uncertified Transcript of the Henits 30(b)(6) Deposition, Lns. 13-15). Moreover, as the sole inventor of the '372 and '920 patents (the only patents for which the August supplements provided earlier dates of conception than the May 11 Response), Mr. Henits was a particularly appropriate witness to answer any questions regarding the conception dates of these two patents.

### E.    Witness' Supplemental Invalidity Contentions

Just as NICE has supplemented its responses to Witness' interrogatories as a result of continued investigation, Witness has also supplemented its responses to NICE's interrogatories throughout the course of this litigation. Specifically, Witness served supplemental responses to NICE's Interrogatory Nos. 2 and 2(a), concerning Witness' invalidity contentions, on March 2, 2007, April 30, 2007, May 30, 2007, July 10, 2007, and most recently on September 10, 2007. (*See* Exs. B-F, Witness' Responses to NICE's Interrogatories). Most of these supplements were served after the March 2, 2007 date set forth in the Court's Rule 16 Scheduling Order as the deadline for document production and responses to all contention interrogatories. (D.I. 46). Two of these supplements also came after the Court's deadline of May 30, 2007 for completing all fact discovery, including all depositions of fact witnesses.

## III.    ARGUMENT

### A.    Governing Law

It is within the court's discretion to exclude evidence submitted after the deadline set forth in the court's scheduling order, unless the delay in submitting such evidence is justified or harmless. *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15,

2007). The Third Circuit has identified several factors that may be used to guide a court in ruling on motions to exclude such delayed evidence:

> (1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption to the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the party offering it.

*Id.* (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 595 F.2d 894, 905 (3d Cir. 1977, *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985)). These factors are to be "weighed in the context of the particular case before the Court, the specific conduct complained of, and the nature of the evidence sought to be excluded." *Bridgestone*, 2007 WL 521894, at *4.

### B.    Witness Has Suffered No Prejudice as a Result of the August 2 and 10 Supplements

Witness was not prejudiced by NICE's August 2 and 10 supplemental responses ("August Supplements"), and its contentions to the contrary are entirely unsupportable. As stated above, these supplements only provided one new conception date for the related '372 and '920 patents. On August 21, 2007, Witness took the Rule 30(b)(6) deposition of NICE on the very issue of the dates of conception and reduction to practice for all of the patents at issue acquired from Dictaphone. Prior to that deposition, Witness had almost two weeks, ample opportunity to review the documents relied on by NICE to support the conception date disclosed on August 2. Moreover, NICE's Rule 30(b)(6) designee, Mr. John Henits, was more than adequately prepared to respond to all questions regarding the conception and reduction to practice of any of the patents in suit. (*See* pp. 5-6, *supra*). Thus, none of the disclosures in the August Supplements deprived Witness of meaningful discovery on any issue in this litigation.

7

Witness' argument that the August Supplements would impact the scope of its searches for relevant prior art is also disingenuous. (Witness Brief, pp. 8-9). The August 2 supplement provided an *earlier* conception date for the related '372 and '920 patents than the May 11 Response. Prior art searches are by their nature backward and not forward looking, and therefore no additional searching would have been required following the seven month change in the conception date identified for the '372 and '920 patents in the August 2 supplement if Witness conducted a prior art search in the first place. Witness' initial searches would have uncovered any art dated prior to the *later* conception dates set forth in the May 11 Response.[6] Consequently, NICE's August supplements had no impact on the scope of Witness' prior art searching and did not prejudice Witness.

Witness also contends that it would have posed different deposition questions to inventor witnesses if it had known about the conception dates identified in the August 2 Supplement. (*Id.*). There is no factual basis to support this argument. First, on May 11, 1997, Witness knew that NICE contended that all of the patents in suit acquired from Dictaphone were conceived earlier than their priority dates and, in fact, had NICE's present contentions for the conception dates of eight of the ten patents at issue, as well as the documents on which NICE relied to support its contentions. Second, Witness had every opportunity to question the inventors of the patents in suit and NICE on the facts surrounding conception and reduction to practice. With the exception of two inventors, all of the inventor depositions were taken by Witness *after* the May

---

[6] Likewise, assuming that Witness always intended to challenge NICE's contentions on conception and reduction to practice, it would have searched for any and all art dated prior to the filing dates of the patents in suit. Indeed, if Witness conducted its initial prior art searches based on the filing dates of the patents (as it would have if it really believed that NICE was not contending any earlier dates of conception), it would have necessarily uncovered all prior art that could later be used to challenge any contentions on earlier conception dates identified by NICE in any future supplemental responses to the interrogatories.

11 Response, and Mr. Henits' 30(b)(6) deposition was taken *after* the August supplements were served. Lastly, the facts underlying a date of conception do not depend on the patentee's contentions and Witness provides absolutely no support for its argument that it altered its questioning based on NICE's contentions.

Although Witness argues that it would have changed its claim construction positions if it had been aware of NICE's August contentions, it fails to show how this could possibly be the case. (*Id*). Witness has not demonstrated any way in which NICE's August contentions could at all impact its claim constructions. Indeed, there is no basis for contending that a party's contentions as to conception dates could have any relevance to the legal issue of claim construction.

Finally, both parties to this litigation operated under the provisions of Rule 26(e), requiring supplementation of discovery responses.[7] Indeed, Witness' interrogatories specifically instructed that the "interrogatories are continuing so as to require supplemental responses by NICE in accordance with Rule 26(e)," and accordingly NICE's May 11, 2007 responses advised Witness that its continuing investigation may require supplementation. (Ex. A, Witness' Second Set of Interrogatories to NICE, served Nov. 17, 2006, p. 5). Moreover, Witness itself has repeatedly supplemented its responses to NICE's interrogatories on Witness' invalidity contentions on March 2, 2007, April 30, 2007, May 30, 2007, July 10, 2007, and most recently on September 10, 2007. (*See* Exs. B-F, Witness' Responses to NICE's Interrogatories). Four of these supplements were served after the Scheduling Order's March 2, 2007 deadline for serving supplemental interrogatory responses, and the last two of these supplements were served after the

---

[7] In relevant part, Rule 26(e) provides that "[a] party is under a duty to seasonably amend a prior response to an interrogatory, request for production or request for admission if the party learns that its response is in some material respect incomplete or incorrect." Fed. R. Civ. P. 26(e)(2).

9

court's May 30, 2007 deadline for completing all fact discovery. (D.I. 46). Clearly, both parties have recognized that supplementation of responses is both necessary and appropriate in this litigation. Consequently, NICE's August Supplements were not prejudicial to Witness and its motion to strike should be denied.

As the discussion above demonstrates, there is clearly no prejudice to Witness as a result of NICE's August Supplements and Witness' arguments to the contrary are without merit. Even assuming, *arguendo*, that some prejudice did occur, Witness had full opportunity to cure any such prejudice through its supplemental invalidity contentions and its Rule 30(b)(6) deposition of John Henits. Having had these opportunities to cure any possible prejudice, Witness should certainly not be entitled to the striking of NICE's August Supplements and exclusion of NICE's evidence.

C.    **NICE's August 2 and August 10 Supplements Have Not Caused A Disruption to the Trial Schedule**

NICE's August 2 and August 10 Supplements have not posed any conceivable disruption to the trial schedule. Since these supplements did not prejudice Witness, they have had no impact on the progress of this litigation. Witness' contention that the only way in which it would avoid prejudice is to "begin discovery in the case all over again, including re-taking numerous depositions, re-briefing and arguing claim construction, and postponing the trial sufficiently to allow all that to happen," only reveals Witness' true goal -- to derail the case scheduled for trial in January of 2008. (*See* Witness Brief, p. 9). As already discussed, *supra*, Witness should have conducted all necessary prior art searches following NICE's May 11 Response and had no need to conduct any further searches after the August Supplements. Witness also had every opportunity to ask appropriate questions of the inventors on the patents in suit regarding the circumstances surrounding the dates of conception. Witness is not entitled to

10

more than it has already been provided and so clearly, no disruption to the trial schedule will occur.

### D.    NICE Has Not Demonstrated Any Bad Faith or Willfulness in Responding to Witness' Interrogatory Nos. 17 and 18

There was no bad faith in NICE's August 2 and 10 supplements.[8]    NICE's supplementation was based on clear documentary support that conception for the '372 and '920 patents occurred no later than April 4, 1997, as opposed to November 5, 1997.    This supplemental contention was based on a thorough review of the documents in preparation for Mr. Henits' Rule 30(b)(6) deposition.    More than 1 million pages of documents related to the Dictaphone patents and the underlying technology were produced in this litigation, and it was only through continued investigation of this large volume of documents that NICE could find evidence for the dates of conception.    As such, NICE diligently continued its investigation of the Dictaphone documents in this case and supplemented its interrogatory responses based on this investigation, as required by the Federal Rules of Civil Procedure.    No bad faith on NICE's part ever existed during this process and Witness' contentions that NICE acted with bad faith are unsupported by the facts of this litigation.

---

[8] NICE's supplements were not an attempt on NICE's part to engage in a game of "blind man's bluff" or "hide the ball," as Witness asserts in its motion. (*See* Witness' Brief, p. 11). The case to which Witness points for its "blind man's bluff" and "hide the ball" quotation, *Parrish v. Freightliner, LLC*, 471 F.Supp.2d 1262, 1270 (M.D. Fla. 2006), is easily distinguishable from the instant situation. In *Parrish*, the plaintiff failed to notify the defendant of a wholesale change in liability theory until her submission of an expert report asserting the new theory. That plaintiff never supplemented her interrogatory responses to set forth this new theory and claimed that defendant should have been aware that the theory existed because it had been sued on a similar theory in other jurisdictions. Clearly, although the acts in *Parrish* may show actual bad faith and willfulness, NICE's August 2 and August 10 supplements are the results of continued investigation and were certainly not served in bad faith.

065251.1001

### E.    NICE's Contentions for Conception Dates and the Documents Used to Support Them Are Important Evidence for NICE

The conception dates at issue in the August 2 and August 10 Supplements, as well as the documents used to support them, are important to NICE's case in this litigation. These dates and documents will be important in defending against Witness' invalidity contentions based on prior art.

Moreover, the purpose of Witness' motion is clearly to prejudice NICE and create a windfall for itself. Witness wishes to completely eliminate NICE's ability to establish that its patents were conceived earlier than their priority dates. However, it is indisputable that an inventor does not conceive the invention on the day he or she files a patent application. NICE provided its contentions on conception dates in its May 11 Response and properly supplemented that response on August 2 and 10, 2007. In addition, on August 21, 2007, NICE provided a fully knowledgeable Rule 30(b)(6) witness on conception dates to answer any of Witness' questions on the topic. Moreover, NICE produced to Witness the evidence necessary to support its contentions for its actual dates of conception and should be entitled to present this evidence in this case. Thus, Witness' motion to strike should be denied in order to avoid clear prejudice to NICE and an unjustified windfall for Witness.

## IV.    CONCLUSION

For the foregoing reasons, the court should deny Witness' motion to strike NICE's August 2 and August 10 Supplements and reject Witness' request to exclude from trial NICE's evidence establishing conception and reduction to practice dates for the patents in suit.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY  10022
(212)836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and
NICE Systems, Ltd.*

Dated:  September 21, 2007

13

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on September 21, 2007, I caused to be electronically filed a true and correct copy of the foregoing document, Plaintiffs' Brief in Opposition to Witness Systems, Inc.'s Motion to Strike Plaintiff's Second and Third Supplemental Objections and Responses to Witness Systems, Inc.'s Interrogatory Nos. 17 and 18 and to Preclude Plaintiffs' use of evidence related thereto, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Kyle Wagner Compton, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE 19899-1114

I further certify that on September 21, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
> Noah C. Graubart (graubart@fr.com)
> Nagendra Setty (setty@fr.com)
> Daniel A. Kent (kent@fr.com)
> Christopher O. Green (cgreen@fr.com)
> Fish & Richardson, P.C.
> 1180 Peachtree Street, NE
> 21st Floor
> Atlanta, GA 30309

> Melanie K. Sharp (No. 2501)
> YOUNG CONAWAY STARGATT &
> TAYLOR, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19801
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> (302) 571-6681
> msharp@ycst.com

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD.,

     *Plaintiffs,*

     v.

WITNESS SYSTEMS, INC.,

     *Defendant.*

C.A. No. 06-311-JJF

---

## DEFENDANT WITNESS SYSTEMS, INC.'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS NICE SYSTEMS, INC. AND NICE SYSTEMS LTD.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Witness Systems, Inc. ("Witness") requests that Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. ("NICE") answer the following interrogatories separately and fully, in writing, under oath and within thirty (30) days of service. These interrogatories are governed by the following Definitions and Instructions:

### DEFINITIONS AND INSTRUCTIONS

These interrogatories incorporate, without limiting the scope of the Federal Rules of Civil Procedure or the Local Rules for the U.S. District of Delaware, the following definitions and instructions:

A.    "NICE," "you," and "your" refer to NICE Systems Ltd., NICE Systems, Inc., and any of their directors, officers, consultants, agents, representatives, predecessors in interest, parents, subsidiaries, assignees, licensees, employees, and attorneys of either, and any other persons acting on NICE's behalf.

B.      "Witness" means Witness Systems, Inc. and its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, affiliates, assignees, employees, attorneys and any other persons acting on Witness' behalf, including without limitation Eyretel Plc.

C.      "Patents-in-Suit" means, collectively, U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; 6,959,079; and 7,010,109; each, individually, is a "Patent-in-Suit."

D.      "Related Applications" shall mean any and all applications related to the Patents-in-Suit, including any (1) continuations, (2) continuations-in-part, (3) divisions, (4) interferences, (5) reexaminations, (6) reissues, (7) related patents, (8) parents, (9) foreign counterpart applications to any of the Patents-in-Suit or foreign counterparts to any of items "1" through "11," (10) any other applications disclosing, describing or claiming any invention disclosed, described or claimed in any of the Patents-in-Suit, or (11) any other applications claiming the benefit of the filing date of any application whose benefit is claimed in any of the Patents-in-Suit, whether or not abandoned and whether or not issued.

E.      "NICE Product" means any product, process, or service of NICE that (a) when used or made, incorporates, performs, or embodies the subject matter of any of the alleged inventions described or claimed in the Patents-in-Suit, (b) that NICE contends is covered by one or more claims of the Patents-in-Suit, or (c) that is marked or has been marked with the patent number of any of the Patents-in-Suit.

F.      "Witness Product" means any product, process, or service of Witness (a) that when used or made, incorporates, performs, or embodies the subject matter of any

of the alleged inventions described or claimed in the Patents-in-Suit or (b) that NICE contends is covered by one or more claims of the Patents-in-Suit.

G.     "Dictaphone" means Dictaphone Corporation, its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, affiliates, assignees, employees, attorneys and any other persons acting on Dictaphone's behalf.

H.     "Mercom Litigation" means *Dictaphone Corporation v. Mercom Systems, Inc.*, Civil Action No. 1:04-CV-05844-MBM, filed in the United States District Court for the Southern District of New York.

I.     "Voice Print Litigation" means *Dictaphone Corporation v. Voice Print International, Inc.*, Civil Action No. 2:04-CV-06160-ER-RC, filed in the United States District Court for the Central District of California.

J.     "Dictaphone/NICE Litigation" means *Dictaphone Corp. v. NICE Systems Ltd.*, Civil Action No. 3:00-CV-1143, filed in the United States District Court for the District of Connecticut.

K.     As used herein, the term "person" means any natural person or any business, legal, or governmental or other entity or association.

L.     As used herein, the term "communication" means any transmittal of information in the form of facts, ideas, inquiries, or otherwise.

M.     As used herein, the terms "identify" or "identification" when used in reference to:

        a.     a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a

person has been identified in full, only the name of that person need be listed in response to subsequent discovery requests requesting identification of that person;

b.  an event or activity, means to give the date, participants, and nature of the activity or event;

c.  documents, means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(es), and recipient(s);

d.  things other than documents means to give, to the extent known, a description of the thing requested including any and all product names (both those used internally within NICE and those used externally in sales, marketing, and other commercial activities), and any and all product numbers or codes related to such things and an explanation of each such number or code.

N.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

O.    The use of the singular form of any word includes the plural and vice versa.

P.    In the event that NICE refuses to answer an interrogatory on the basis that the requested information is privileged, subject to work product immunity, or otherwise excludable from discovery, NICE is requested to state the following:

a. the nature of the privilege, including work product, which is being claimed;

b. the type of information;

c. the general subject matter of the requested information;

d. the date(s) associated with the requested information; and

e. such other information as is sufficient to identify the information, including without limitation the persons involved in communications regarding the requested information, the author of the information, and recipients of the information.

Q.    The term "Complaint" means the complaint NICE filed against Witness Systems, Inc. in Civil Action No. 06-311-JJF, pending in the United States District Court for the District of Delaware.

R.    These interrogatories are continuing so as to require supplemental responses by NICE in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

### INTERROGATORY NO. 13

Identify each patent claim(s) in each of the Patents-in-Suit NICE contends Witness infringes or has infringed, specifying for each claim which Witness product(s) and/or method(s) NICE contends infringe or have infringed, including whether NICE's contention is based on literal infringement, infringement under the doctrine of equivalents, direct infringement, contributory infringement, and/or infringement by inducement.

**INTERROGATORY NO. 14**

For each patent claim and product or method identified in response to

Interrogatory No. 13, identify where each limitation of each claim is found within each

accused Witness product(s) or method(s) by providing in the form of a claim chart a

limitation-by-limitation comparison of each claim limitation with each accused Witness

product(s) or method(s), including a description of the function, way and result for each

limitation NICE contends is infringed under the doctrine of equivalents, and an

identification of all facts, circumstances, documents, and evidence that NICE contends

supports or undermines NICE's contentions.

**INTERROGATORY NO. 15**

Identify all limitations in each of the claims identified in Interrogatory No. 13 that

NICE contends should be interpreted under 35 U.S.C. §112, ¶ 6, specifying for each

identified limitation all disclosures in the relevant patent's specification of the structure,

material or act that NICE contends corresponds to such limitations and equivalents

thereof; all references from the prosecution history or extrinsic evidence that NICE relies

upon to support its contentions; and a detailed description of each alleged occurrence of

such § 112, ¶ 6 claim limitation (or equivalents thereto) in any Witness product or

activity that NICE contends infringes or has infringed the Patents-in-Suit.

**INTERROGATORY NO. 16**

Identify all claim terms, phrases, or limitations of the Patents-in-Suit that NICE

contends should be construed by the Court, providing for each term, phrase, or limitation

NICE's proposed construction and an identification of all intrinsic and extrinsic evidence

NICE contends supports or undermines its proposed construction.

**INTERROGATORY NO. 17**

For any Patent-in-Suit that claims priority to an earlier application, identify the priority date to which NICE contends each asserted claim is entitled.

**INTERROGATORY NO. 18**

For each claim of the Patents-in-Suit, identify all facts and circumstances surrounding the conception and reduction to practice and/or development of the alleged invention, including an identification of all persons involved with and/or who have knowledge about the conception, reduction to practice and/or development; the date(s) NICE contends each alleged invention was conceived and actually reduced to practice; and an identification of all documents, things, and individuals NICE contends can corroborate each such date of conception and actual reduction to practice.

**INTERROGATORY NO. 19**

Identify each instance of marking NICE contends is or was sufficient to provide notice to Witness under 35 U.S.C. § 287 for each of the Patents-in-Suit, including an identification of each product NICE contends is or was marked with one or more of the patent numbers of the Patents-in-Suit; the date(s) during which NICE contends each instance of marking took place; the details concerning how and where on each product such marking is or was placed; and all of the facts, circumstances, documents, and evidence (including knowledgeable witness) regarding such marking.

Dated:  November 17, 2006              FISH & RICHARDSON P.C.


By:  */s/ Kyle Wagner Compton*
 William J. Marsden, Jr. (#2247)
 Kyle Wagner Compton (#4693)
 919 N. Market Street, Suite 1100
 P. O. Box 1114
 Wilmington, Delaware  19899-1114
 Telephone:  (302) 652-5070


 Nagendra Setty
 Daniel A. Kent
 John D. Hamann
 1180 Peachtree Street, N.E.
 21st Floor
 Atlanta, GA 30309
 Telephone:  (404) 892-5005

 ATTORNEYS FOR DEFENDANT
 WITNESS SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2006, I caused a copy of

DEFENDANT WITNESS SYSTEMS, INC.'S SECOND SET OF

INTERROGATORIES TO PLAINTIFFS NICE SYSTEMS, INC. AND NICE

SYSTEMS LTD. to be served on the following counsel of record in the manner indicated

below:

**VIA ELECTRONIC MAIL &**
**HAND DELIVERY:**

Josy W. Ingersoll                          *Attorneys for Plaintiffs*
Melanie K. Sharp                           *Nice Systems Ltd. and Nice Systems, Inc.*
Karen L. Pascale
Young, Conoway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

**VIA ELECTRONIC &**
**FIRST CLASS U.S. MAIL:**

Scott G. Lindvall                          *Attorneys for Plaintiffs*
Daniel DiNapoli                            *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022


                                           */s/ Kyle Wagner Compton*
                                           Kyle Wagner Compton

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

       *Plaintiffs,*

       v.

WITNESS SYSTEMS, INC.

       *Defendant.*

C.A. No. 1:06-CV-00311-JJF

### DEFENDANT WITNESS SYSTEMS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rules of the District of Delaware, Defendant Witness Systems, Inc. ("Witness Systems") responds to the Second Set of Interrogatories propounded by Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. (collectively, "NICE") as follows:

### GENERAL OBJECTIONS

A.     Witness Systems generally objects to all of NICE's Interrogatories to the extent they seek the disclosure of information constituting or reflecting attorney-client communications protected by the attorney-client privilege. By responding to any particular Interrogatory, Witness Systems does not intend to, nor does it waive, the attorney-client privilege or any other applicable privilege that it may have, and Witness Systems specifically intends to assert the same. Inadvertent disclosure of any privileged information shall not constitute a waiver of privilege or of any other basis for objecting to discovery with respect to such information.

B.     Witness Systems generally objects to all of NICE's Interrogatories to the extent they seek the disclosure of information, documents, or communications constituting or reflecting attorney work product, including without limitation the thought processes or mental impressions of Witness Systems' attorneys concerning the preparation, prosecution or defense of any claim by or against Witness Systems, which are protected by the work product exemption from discovery. By responding to any particular Interrogatory, Witness Systems does not intend to, nor does it, waive work product immunity or any other applicable privilege that it may have, and Witness Systems specifically intends to assert the same. Inadvertent disclosure of any information protected by work product immunity shall not constitute a waiver of the immunity or of any other basis for objecting to discovery with respect to such information.

C.     Witness Systems objects to the identification of information regarding any privileged or work product documents or information created or prepared by any of its employees, attorneys, agents, or representatives on or after May 10, 2006, the date this action was filed. Witness Systems believes that the categorical identification of such withheld documents and/or information satisfies any identification requirements predicate to a proper assertion of the applicable privilege or immunity.

D.     Witness Systems objects to each Interrogatory to the extent it seeks information not within Witness Systems' possession, custody or control.

E.     Witness Systems objects to each Interrogatory to the extent it seeks information not relevant to any claim or defense in this case or reasonably calculated to lead to the discovery of information relevant to any claim or defense.

F.    Witness Systems objects to each Interrogatory to the extent that it seeks information constituting trade secrets, proprietary information, or other confidential or competitively sensitive technical or business information, outside the protections afforded by an appropriate protective order.  Such Witness Systems information will only be produced subject to a protective order governing the exchange of such information in this case.  Witness Systems further objects to each Interrogatory to the extent it seeks information constituting trade secrets, proprietary information, or other confidential or competitively sensitive technical or business information of a third party.

G.    Witness Systems' responses to these Interrogatories do not constitute an admission or acknowledgment that the information sought is within the proper scope of discovery, relevant or admissible.

H.    Witness Systems objects to each Interrogatory to the extent that it is unduly burdensome.  Witness Systems also objects to the definition of "Accused Products" on the grounds that it is overly broad, unduly burdensome, and vague and ambiguous to the extent it fails to identify specific products and/or versions of specific products, and to the extent it may include products and/or versions not identified by NICE in response to Witness Systems' Interrogatory No. 13.

I.    Witness Systems objects to these Interrogatories and to the "Definitions and Instructions" to the extent they purport to enlarge upon or are otherwise inconsistent with the duties imposed by the Federal Rules of Civil Procedure or the Local Rules for the District of Delaware or to the extent that they attempt to use a word or phrase in a manner other than its normal and customary meaning.

-3-

J.      Witness Systems' responses herein are based upon such information and documents as have been reviewed to date, after a reasonable search of those files and locations where it reasonably believes responsive documents may be located.  The responses herein are given without prejudice to Witness Systems' right to supplement these responses and produce evidence of any subsequently discovered facts or documents, or facts or documents that Witness Systems may later develop.

K.      Witness Systems objects to each and every interrogatory to the extent that it is a premature because discovery is still in its very early stages and the claims of the patents-in-suit have yet to be construed.  Witness Systems is still formulating its contentions regarding the claims and defenses of the parties and specifically reserves the right to supplement theses responses as its investigation continues.

L.      Witness Systems objects to these Interrogatories to the extent that, including subparts, they exceed the maximum number of interrogatories allowed in this action.

M.      Witness Systems' responses to each Interrogatory are made without in any way waiving: (a) the right to object, on the grounds of competency, relevancy, materiality, privilege or admissibility as evidence for any purpose in any subsequent proceeding in this case; and (b) the right to object on any ground to any other Interrogatories involving or relating to the subject matter of these Interrogatories.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections, each of which is incorporated by reference below in each separate response, Witness Systems responds to the Interrogatories as follows:

-4-

## PURPORTED INTERROGATORY NO. 1(a),

On a claim-by-claim basis and for each claim element, state whether you
contend that NICE's response to Witness' Interrogatory No. 13 set forth in Exhibit
A to that document does not demonstrate infringement of the Accused Products.
For each claim element that you contend NICE has not demonstrated infringement
by each Accused Product, on a claim-by-claim basis in a chart, describe in detail the
factual and legal bases as to why the specific infringement contention identified in
NICE's response to Witness' Interrogatory No. 13 set forth in Exhibit A to that
document does not demonstrate infringement of the Accused Products.

## RESPONSE TO PURPORTED INTERROGATORY NO. 1(a):

Witness Systems incorporates by reference its General Objections as if fully

stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous

because NICE has failed to specify the products and versions accused of infringement

sufficiently to identify those products falling within its definition of "Accused Product."

Witness Systems again requests that NICE clarify what products and which versions it

accuses infringe. Witness Systems also objects to this Interrogatory to the extent it seeks

information protected by the attorney-client privilege, work product doctrine, and/or any

other applicable privilege. Witness Systems further objects to this Interrogatory to the

extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is

not. Thus, this Interrogatory counts as a separate Interrogatory. Witness Systems further

objects to this Interrogatory to the extent it is premature because discovery is still

ongoing and the claims of the Patents-in-Suit have yet to be construed. Witness Systems

further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or

to the extent that it seeks information that will be the subject of expert opinion testimony.

Subject to and without waiving the foregoing objections, Witness Systems refers NICE to

Exhibit A. Witness Systems reserves its right to amend and/or supplement this response

as discovery and Witness Systems' investigations continue and after any claim

construction ruling.

## PURPORTED INTERROGATORY NO. 2(a):

On a claim-by-claim basis in a chart, for each prior art reference identified by Witness in response to NICE's Interrogatory No. 2, identify the disclosure in each prior art reference of each limitation of the Asserted Claims in the respective Patent-in-Suit. To the extent that Witness asserts the prior art references support its invalidity defense under 35 U.S.C. § 103, it must further identify any prior art combinations and the motivation to combine those references.

## RESPONSE TO PURPORTED INTERROGATORY NO. 2(a):

Witness Systems incorporates by reference its General Objections as if fully

stated herein. Witness Systems also objects to this Interrogatory to the extent it seeks

information protected by the attorney-client privilege, work product doctrine, and/or any

other applicable privilege. Witness Systems further objects to this Interrogatory to the

extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is

not. Thus, this Interrogatory counts as a separate Interrogatory. Witness Systems further

objects to this Interrogatory to the extent it is premature because discovery is still

ongoing and the claims of the Patents-in-Suit have yet to be construed. Witness Systems

further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or

to the extent it seeks information that will be the subject of expert opinion testimony.

Subject to and without waiving the foregoing objections, Witness Systems refers NICE to

Exhibit B, which identifies representative, invalidating prior art. Numerous other prior

art references also contain the identified disclosures. Witness Systems reserves its right

to amend and/or supplement this response as discovery and Witness Systems'

investigation continue, and after any claim construction ruling. Witness Systems

specifically reserves the right to supplement and/or amend its response in light of

materials that it is currently seeking from Blue Cross Blue Shield.

## INTERROGATORY NO. 10:

**For each Accused Product, identify any other Witness products that perform either the identical or substantially the same function.**

## RESPONSE TO INTERROGATORY NO. 10:

Witness Systems incorporates by reference its General Objections as if fully

stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous

because NICE has failed to specify the products and versions accused of infringement

sufficiently to identify those products falling within its definition of "Accused Product."

Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent

it calls for identification of "products that perform either the identical or substantially the

same function" as the Accused Products, including to the extent that NICE has failed to

identify any specific "function" or explain what is meant by "function" as used in this

Interrogatory. Witness Systems again requests that NICE clarify what products and

which versions it claims infringe. Subject to and without waiving the foregoing

objections, Witness Systems states it has produced source code and technical documents

sufficient for NICE to understand the operation of Witness Systems' products and specify

those products and versions NICE claims infringe.

## INTERROGATORY NO. 11:

**Identify each version of each Accused Product and/or each product identified in response to Interrogatory No. 10, above, that Witness has developed, marketed, made, sold, used, or offered for sale. Trace each version back to the first product in its progeny in the form of a chart listing the date of development, marketing, use, sale or offer for sale for each such product.**

**RESPONSE TO INTERROGATORY NO. 11:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product." Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent it includes "products that perform either the identical or substantially the same function" as the Accused Products based on Interrogatory No. 10. Witness Systems again requests that NICE specify Witness Systems products and versions it claims infringe. Subject to and without waiving the foregoing objections, Witness Systems states it has produced source code to NICE on two laptops in directory tree structure from which each version of each potentially relevant Witness Systems product can be identified. Witness Systems will produce financial information on mutually agreed terms from which information about the date of general availability can be determined.

**INTERROGATORY NO. 12:**

In the areas of (a) product management, (b) product development, (c) sales, (d) marketing, (e) product function and (f) product operation, (g) manufacture, and (h) distribution, identify the three most knowledgeable employees (either current or former) in each area for each Accused Product and/or products identified in response to Interrogatory No. 10, above.

**RESPONSE TO INTERROGATORY NO. 12:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product." Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent it includes "products that perform either the identical or substantially the same function" as the Accused Products based on Interrogatory No. 10. Witness Systems again requests

that NICE specify Witness Systems products and versions it claims infringe. Witness Systems also objects to this Interrogatory as being vague and ambiguous, including because NICE has failed to distinctly point out what is meant by "(c) sales, (d) marketing, (e) product function and (f) product operation, (g) manufacture, and (h) distribution" and how these subcategories differ from each other. Witness Systems further objects to this Interrogatory to the extent it purports to be a single Interrogatory. Each delineated subpart of this Interrogatory counts as a separate Interrogatory. Subject to and without waiving the foregoing objections, Witness Systems identifies the following: Sales and marketing: Ms. Nancy Treaster; Engineering: Mr. Dan Sphorer; and Product Management: Mr. Robert Barnes.

## INTERROGATORY NO. 13:

**For each Accused Product, and/or the products identified in response to Interrogatory No. 10, above, identify each and every customer to whom you have sold or otherwise provided a system incorporating the particular product.**

## RESPONSE TO INTERROGATORY NO. 13:

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product." Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent that it includes "products that perform either the identical or substantially the same function" as the Accused Products based on Interrogatory No. 10. Witness Systems again requests that NICE specify Witness Systems products and versions it claims infringe. Witness Systems further objects to this Interrogatory as being overly broad and unduly burdensome. Witness Systems further objects to this Interrogatory to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to and without waiving the

foregoing objections, Witness Systems states it will produce financial information on mutually agreed terms from which information requested by this Interrogatory can be determined.

## INTERROGATORY NO. 14:

**Identify the dates and circumstances when Witness first became aware of each of the Patents-in-Suit, and describe the action taken, if any, by Witness as a result of becoming aware of each patent.**

## RESPONSE TO INTERROGATORY NO. 14:

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Witness Systems further objects to this Interrogatory to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to and without waiving the foregoing objections, Witness Systems states it was aware of the existence of the following patents as early as October 2004: the '738 Patent, the '005 Patent, the '570 Patent, the '345 Patent, the '372 Patent, and the '370 Patent. Witness Systems, however, was not aware of any allegations of infringement against any Witness Systems' products based on any of the Patents-in-Suit until receiving the Complaint in this action.

## INTERROGATORY NO. 15:

**Identify all products developed, made, sold or offered for sale that fall within the scope of and/or integrated with Impact 360 by providing a chart identifying each product, including the date of development, manufacture, sale or offer for sale for each such product.**

**RESPONSE TO INTERROGATORY NO. 15:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous with respect to the phrase "fall within the scope of and/or integrated." Witness Systems further objects to this Interrogatory as being overly broad and unduly burdensome, including to the extent that it seeks "the date of development, manufacture, sale or offer for sale for each such product." Subject to and without waiving the foregoing objections, Witness Systems attaches Exhibit C in response. Witness Systems will produce financial information on mutually agreed terms from which information about dates can be determined.

**INTERROGATORY NO. 16:**

**Identify each license you have given or taken for patents that cover quality monitoring, compliance and/or IP recording, workforce management, performance management, and e-learning software, including without limitation, the royalty rate for each license.**

**RESPONSE TO INTERROGATORY NO. 16:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems further objects to this Interrogatory as being neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case to the extent it seeks information concerning "workforce management" software. Subject to and without waiving the foregoing objections, Witness Systems states it is unaware of any such licenses. Witness notes, however, that it has entered into agreements with manufacturers and others to manufacture and/or offer for sale and sell Witness Systems' products or aspects thereof. Witness Systems has produced these agreements.

## INTERROGATORY NO. 17:

Identify on a quarterly basis, from March 30, 2000 to present, the unit sales, revenues, profits, and costs (direct and indirect) for each version of each Accused Produce and/or each product identified in response to Interrogatory No. 10, including the unite sales, revenues, profits and costs for each version of each component associated with each identified products and/or product suite. Include in your response revenue, profit and costs associated with the maintenance and service of each product.

## RESPONSE TO INTERROGATORY NO. 17:

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product." Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent it includes "products that perform either the identical or substantially the same function" as the Accused Products based on Interrogatory No. 10. Witness Systems again requests that NICE specify Witness Systems products and versions it claims infringe. Witness Systems further objects to this Interrogatory as being overly broad and unduly burdensome. Witness Systems further objects to this Interrogatory to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to and without waiving the foregoing objections, Witness Systems will produce financial information on mutually agreed terms from which information about the date of general availability can be determined.

## INTERROGATORY NO. 18:

Identify the three people within Witness or any of its subsidiaries or affiliated companies who are most knowledgeable about each Interrogatory Nos. 14-17.

**RESPONSE TO INTERROGATORY NO. 18:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also incorporates its objections to Interrogatories Nos. 14-17 as if fully stated herein. Witness Systems also objects to this Interrogatory as being vague and ambiguous, including with respect to the phrase "affiliated companies." Subject to and without waiving the foregoing objections, Witness Systems identifies the following persons as having knowledge: Interrogatory No. 14: Mr. Joe Watson; Interrogatory No. 15: Ms. Nancy Treaster and Mr. Dan Sphorer; and Interrogatory No. 17: Ms. Nancy Treaster.

**INTERROGATORY NO. 19:**

**For each Accused Product and/or products identified in response to Interrogatory No. 10, above, identify all products that you contend compete or have competed with the respective Accused Product and/or products identified in response to Interrogatory No. 10 since the first sale of that Product.**

**RESPONSE INTERROGATORY NO. 19:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product." Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent it includes "products that perform either the identical or substantially the same function" as the Accused Products based on Interrogatory No. 10. Witness Systems again requests that NICE specify Witness Systems products and versions it claims infringe. Witness Systems further objects to this Interrogatory to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence

-13-

in this case, including to the extent that it seeks information only relevant to Witness

Systems' antitrust counterclaims before such claims are amended into this action.

Subject to and without waiving the foregoing objections, Witness Systems states that

discovery in this case is ongoing, depositions have yet to begin, and Witness Systems'

antitrust counterclaims have not yet been added to the case. Thus, Witness Systems

reserves the right to supplement this response, including by identifying products at the

appropriate time.

**INTERROGATORY NO. 20:**

      **For each Accused Product and/or products identified in response to Interrogatory No. 10, above, identify all third party software or hardware that is or was used by, or is or was a component or part of the Accused Product and/or products identified in response to Interrogatory No. 10, including identifying the name of the software and/or hardware vendor and price of the third party software or hardware.**

**RESPONSE INTERROGATORY NO. 20:**

      Witness Systems incorporates by reference its General Objections as if fully

stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous

because NICE has failed to specify the products and versions accused of infringement

sufficiently to identify those products falling within its definition of "Accused Product."

Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent

it includes "products that perform either the identical or substantially the same function"

as the Accused Products based on Interrogatory No. 10. Witness Systems again requests

that NICE specify Witness Systems products and versions it claims infringe. Witness

Systems further objects to this Interrogatory to the extent that it seeks information that is

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence

in this case. Subject to and without waiving the foregoing objections, Witness Systems

states it has entered into agreements with manufacturers and others concerning aspects of

Witness Systems' products or aspects thereof. These agreements, which Witness

believes have been produced, are between Witness Systems and each of the following

parties: Adtech, ACW, Funk, Avaya, and Nortel.

## INTERROGATORY NO. 21:

**Identify each and every factual and/or legal basis for Witness' contention that NICE is not entitled to injunctive relief in this litigation, including why Witness claims monetary damages are adequate to compensate NICE for its harm, how Witness claims the balance of hardships favors Witness, and how the public interest would not be served by a permanent injunction, if Witness so contends.**

## RESPONSE TO INTERROGATORY NO. 21:

Witness Systems incorporates by reference its General Objections as if fully

stated herein. Witness Systems also objects to this Interrogatory to the extent it seeks

information protected by the attorney-client privilege, work product doctrine, and/or any

other applicable privilege. Witness Systems further objects to this Interrogatory to the

extent it is premature because discovery is still ongoing. Witness Systems further objects

to this Interrogatory to the extent it calls for legal conclusions and/or to the extent it seeks

information that will be the subject of expert opinion testimony. Subject to and without

waiving the foregoing objections, Witness Systems states that NICE bears the burden to

prove any right to injunctive relief, and that NICE has not produced evidence sufficient to

establish such a right. Witness Systems reserves the right to supplement this response if

NICE comes forward with evidence concerning its claim for injunctive relief.

## INTERROGATORY NO. 22:

**Identify the corporate officers and directors for Witness from 1991 to present, including providing names, positions, addresses, titles, duties, and tenures.**

**RESPONSE TO INTERROGATORY NO. 22:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as being duplicative of previously served interrogatories. Witness Systems also objects to this Interrogatory to the extent it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to and without waiving the foregoing objections, Witness Systems has or will produced documents, such as Annual Reports or other public disclosures, from which relevant information responsive to this Interrogatory may be ascertained and the burden of deriving or ascertaining the answer is substantially the same for NICE as for Witness Systems, in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 23:**

To the extent that you deny NICE's first and second requests for admission, explain each and every factual and legal basis for your denial.

**RESPONSE TO INTERROGATORY NO. 23:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Subject to and without waiving the foregoing objections, Witness Systems states it may have in its possession, custody, or control third party documents for which it does not possess sufficient information to admit the requests. Thus, Witness Systems denies that these documents necessarily are what they purport to be or are authentic.

-16-

**INTERROGATORY NO. 24:**

Identify the steps taken by Witness in responding to any of the document requests served by NICE in this litigation, including the identification of the addresses of all locations searched, all electronic media searched, what types of documents were found at each searched location, each person from whom documents were sought, and what additional steps were taken, if any.

**RESPONSE TO INTERROGATORY NO. 24:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Witness Systems further objects to the extent that this Interrogatory seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case. Witness Systems further objects to this Interrogatory to the extent that it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Witness Systems states it searched its electronic repositories of documents including its knowledge base at its Atlanta, GA location and its relevant servers located in Leatherhead, U.K. Witness Systems also searched relevant source code control systems located at these facilities for electronic versions of the source code. Witness Systems also searched non-duplicative hard copy files, including at its Leatherhead, U.K. facility. Witness Systems coordinated its search activities through Witness Systems' personnel, including Mr. David Williams, Ms. Nancy Treaster, and Mr. David Boardman.

**INTERROGATORY NO. 25:**

Identify all versions of source code that were made available in the U.S. for any of the Accused Products and/or products identified in response to Interrogatory No. 10, above, including the name of each source code version, the locations of each source code version, any additional information necessary to locate each source code version, and to whom each source code was made available and when.

-17-

## RESPONSE TO INTERROGATORY NO. 25:

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product." Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent it includes "products that perform either the identical or substantially the same function" as the Accused Products based on Interrogatory No. 10. Witness Systems again requests that NICE specify Witness Systems products and versions it claims infringe. Witness Systems further objects to the extent that this Interrogatory seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case. Witness Systems objects to this Interrogatory as being overly broad and unduly burdensome, including to the extent that its seeks information concerning "to whom each source code was made available and when." Subject to and without waiving the foregoing objections, Witness Systems states it has produced source code to NICE on two laptops in directory tree structure from which each version of each potentially relevant Witness Systems product can be identified. Witness Systems will produce financial information on mutually agreed terms from which information about the date and to whom can be determined.

## INTERROGATORY NO. 26:

Identify what Witness contends is the market share of each competitor for the market you identified in response to Interrogatory No. 19.

### RESPONSE TO INTERROGATORY NO. 26:

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as being vague, ambiguous, and non-sensical because it improperly references a "market you identified in response to Interrogatory No. 19" while Interrogatory 19 does not concern a "market." Witness Systems further objects to this Interrogatory to the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case, including to the extent that it seeks information only relevant to Witness Systems' antitrust counterclaims before such claims are amended into this action. Witness Systems further objects to this Interrogatory to the extent it seeks information that will be the subject of expert opinion testimony. Subject to and without waiving the foregoing objections, Witness Systems states that discovery is ongoing, depositions have yet to begin, and Witness Systems' antitrust counterclaims have not yet been added to this case. Thus, Witness Systems reserves its right to supplement this response, including by identifying market share and competitors at the appropriate time.

### INTERROGATORY NO. 27:

**Identify any acceptable or unacceptable substitutes in the United States for the Accused Products and/or other call center products, whether infringing any of the Patents-in-Suit or not, from the filing dates of the Patents-in-Suit to the present.**

### RESPONSE TO INTERROGATORY NO. 27:

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product."

-19-

Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent it includes "products that perform either the identical or substantially the same function" as the Accused Products based on Interrogatory No. 10. Witness Systems again requests that NICE specify Witness Systems products and versions it claims infringe. Witness Systems further objects to this Interrogatory to the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case, including to the extent that it seeks information only relevant to Witness Systems' antitrust counterclaims before such claims are amended into this action. Witness Systems further objects to this Interrogatory to the extent that it seeks information that will be the subject of expert opinion testimony. Subject to and without waiving the foregoing objections, Witness Systems states that discovery is ongoing, depositions have yet to begin, and Witness Systems' antitrust counterclaims have not yet been added to this case. Thus, Witness Systems reserves its right to supplement this response, including by identifying substitutes at the appropriate time.

**INTERROGATORY NO. 28:**

**Identify any likely new entrants into the creation, development, production, distribution or sale of any call center products if prices were raised 5% and/or 10% and sustained, including any relevant requirements, such as costs and scale requirements, for entry.**

**RESPONSE TO INTERROGATORY NO. 28:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems further objects to this Interrogatory to the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case, including to the extent that it seeks information only relevant to Witness Systems' antitrust counterclaims before such claims

are amended into this action.  Witness Systems further objects to this Interrogatory to the extent that it seeks information that will be the subject of expert opinion testimony. Subject to and without waiving the foregoing objections, Witness Systems states that discovery is ongoing, depositions have yet to begin, and that Witness Systems' antitrust counterclaims have not yet been added to this case.  Thus, Witness Systems reserves its right to supplement this response, including by identifying entrants at the appropriate time.

DATED:  March 2, 2007

FISH & RICHARDSON P.C.

William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070

Nagendra Setty (*Pro Hac Vice*)
Daniel A. Kent (*Pro Hac Vice*)
John D. Hamann (*Pro Hac Vice*)
1180 Peachtree Street, NE, 19th Floor
Atlanta, GA 30309
Tel: (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

-21-

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2007, I caused to be served "DEFENDANT

WITNESS SYSTEMS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S NICE

SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S SECOND SET OF

INTERROGATORIES" by electronic and First Class U.S. Mail addressed to counsel for

Plaintiffs as follows:

| | |
|---|---|
| Scott G. Lindvall<br>Daniel P. DiNapoli<br>Joseph M. Drayton<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, NY 10022-3598 | Attorneys for Plaintiffs<br>NICE Systems, Inc. and NICE Systems,<br>LTD |
| Josy W. Ingersoll<br>Melanie K. Sharp<br>Karen E. Keller<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building, 17th Floor<br>1000 West Street<br>P.O. Box 391<br>Wilmington, DE  19899-0391 | Attorneys for Plaintiffs<br>NICE Systems, Inc. and NICE Systems,<br>LTD |

_____
Kyle Wagner Compton (#4693)

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

       *Plaintiffs and Counterclaim
Defendants,*

       v.

WITNESS SYSTEMS, INC.

       *Defendant and Counterclaim
Plaintiff.*

C.A. No. 1:06-CV-00311-JJF

**DEFENDANT WITNESS SYSTEMS, INC. S SUPPLEMENTAL
RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC. S AND NICE
SYSTEMS LTD. S INTERROGATORIES 1(a), 2 and 2(a)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the District of Delaware, Defendant Witness Systems, Inc. ( Witness Systems )

provides the following supplemental objections and responses to the Interrogatories

propounded by Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. (collectively,

 NICE ).  Subject to and without waiving its previously stated objections, Witness

Systems incorporates by reference its responses and objections to NICE s First and

Second Sets of Interrogatories as if set forth verbatim herein, and for brevity provides

only the supplemental information for the identified interrogatories below:

**SUPPLEMENTAL RESPONSES**

**INTERROGATORY NO. 1(a):**

      **On a claim-by-claim basis and for each claim element, state whether you
contend that NICE's response to Witness' Interrogatory No. 13 set forth in Exhibit
A to that document does not demonstrate infringement of the Accused Products.
For each claim element that you contend NICE has not demonstrated infringement
by each Accused Product, on a claim-by-claim basis in a chart, describe in detail the
factual and legal bases as to why the specific infringement contention identified in**

**NICE's response to Witness' Interrogatory No. 13 set forth in Exhibit A to that document does not demonstrate infringement of the Accused Products.**

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1(a):**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory as vague and ambiguous because NICE has failed to specify the products and versions accused of infringement sufficiently to identify those products falling within its definition of "Accused Product." Witness Systems again requests that NICE clarify what products and which versions it accuses infringe. Witness Systems also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Witness Systems further objects to this Interrogatory to the extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is not. Thus, this Interrogatory counts as a separate Interrogatory. Witness Systems further objects to this Interrogatory to the extent it is premature because discovery is still ongoing and the claims of the Patents-in-Suit have yet to be construed. Witness Systems further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or to the extent that it seeks information that will be the subject of expert opinion testimony. Subject to and without waiving the foregoing objections, Witness Systems refers NICE to Exhibit A to its original response to this interrogatory, as well as Supplemental Exhibit A, attached hereto, which addresses the newly asserted claims of the 079 Patent. Witness Systems reserves its right to amend and/or supplement this response as discovery and Witness Systems investigations continue and after any claim construction ruling.

-2-

**INTERROGATORY NO. 2:**

Describe in detail the factual and legal bases for Witness' contention that
[the claims of the  738,  371,  005,  345,  372,  370,'920,  079, and  109 patents are
invalid for failure to comply with the United States patent laws, 35 U.S.C. §§ 1, et
seq., including without limitation § § 102, 103, and/or 112.   The detailed description
of such factual and legal bases should include, without limitation, an identification
of which aspect(s) of 35 U.S.C. § 112 Witness contends the Patents-In-Suit do not
meet and an identification and description of every document, tangible item and
item of information that Witness has relied upon or intends to rely upon as support
for its contention.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Witness Systems incorporates by reference its General Objections as if fully

stated herein.  Witness Systems also objects to this Interrogatory to the extent that it seeks

information that is protected by the attorney-client privilege and/or work product

doctrine.  Witness Systems also objects to this Interrogatory to the extent it calls for

information comprising trade secrets, proprietary information, or other confidential or

competitively sensitive technical information.  Accordingly, Witness Systems  responses

are provided subject to the terms of the protective order entered by the Court in this

action. Witness Systems also objects to this Interrogatory as vague and ambiguous to the

extent it mischaracterizes and purports to state Witness Systems  contention.

Subject to and without waiving the foregoing objections, Witness Systems provides the

following additional invalidating prior art references as set forth below.

In addition to the prior art references listed in its prior response to this

interrogatory, Witness Systems believes one or more of the claims of the  345,  370 and

 570 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of

the following additional references:  Eyretel Unify Computer Telephony Integration

(CTI) application (all prior versions); and Eclipse application (all prior versions).

In addition to the prior art references listed in its prior response to this interrogatory,

Witness Systems believes one or more of the claims of the '005 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following additional references, either alone or in combination:  Racal Rapidax (sold in the U.S. as of at least December 21, 1992);  Racal's 'Rapidax' Voice Logging Recorders Offers Instant Message Recall of Multichannel Calls, Transmissions; Rapidax Access Voice Logging Recorder; Rapidax Instant Call Recorder; Rapidax in Surveillance and Security Monitoring; Operator's Manual.; System Manager's Manual.; Rapidax Tape Archive and System Network.; Deposition of Andrew Jackson in Dictaphone Corporation vs. Nice Systems, Ltd. (June 21, 2002), Civil Action 3:00CV1143; Expert Report on the Invalidity 5,396,371 in Dictaphone Corporation vs. Nice Systems, Ltd. (June 21, 2002 ), Civil Action 3:00CV1143.

In addition to the prior art references listed in its prior response to this interrogatory, Witness Systems believes one or more of the claims of the '371 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following additional references, either alone or in combination:  The Disk Drive As An Audio Recorder, Hard Disk Recording Conference (May 16-17, 1990); An Experimental Speech Storage and Editing Facility, The Bell System Technical Journal (October 1980); Mediation Brief, Analysis of Prior Art Which Anticipates or Renders Obvious the Claims of U.S. Patent No. 5,396,371, in Dictaphone Corporation vs. Mercom Systems, Inc., Civil Action 3:00CV1143; 4,375,083; JP S62-20460; Memory Space Allocation of Messages in Voice  Mail, IBM Technical Disclosure Bulletin (July 1987); A Magnetic Storage Disk Based Digital Audio Recording, Editing and Processing System, 83rd AES Corporation (October 16-19, 1987); A Flexible Digital Sound-Editing Program for Minicomputer

Systems, 68th Convention of the Audio Engineering Society in Hamburg, German,

Journal of Audio Engineering Society (March 17-20, 1981); NICE's Markman Brief in

Dictaphone Corporation vs. Nice Systems, Ltd., (June 21, 2002), Civil Action

3:00CV1143.

**INTERROGATORY NO. 2(a):**

**On a claim-by-claim basis in a chart, for each prior art reference identified by Witness in response to NICE's Interrogatory No. 2, identify the disclosure in each prior art reference of each limitation of the Asserted Claims in the respective Patent-in-Suit. To the extent that Witness asserts the prior art references support its invalidity defense under 35 U.S.C. § 103, it must further identify any prior art combinations and the motivation to combine those references.**

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2(a):**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Witness Systems further objects to this Interrogatory to the extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is not. Thus, this Interrogatory counts as a separate Interrogatory. Witness Systems further objects to this Interrogatory to the extent it is premature because discovery is still ongoing and the claims of the Patents-in-Suit have yet to be construed. Witness Systems further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or to the extent it seeks information that will be the subject of expert opinion testimony. Subject to and without waiving the foregoing objections, Witness Systems refers NICE to Supplemental Exhibit B, which identifies additional representative, invalidating prior art for five of the ten asserted patents. Numerous other prior art references also contain the identified disclosures. Witness Systems reserves its right to amend and/or supplement this response as discovery and Witness Systems' investigation continue, and after any claim construction ruling. Witness Systems specifically reserves the right to supplement

and/or amend its response in light of information and materials that it is currently seeking from third parties.


DATED:  April 30, 2007                    FISH & RICHARDSON P.C.


                                          /s/ Kyle Wagner Compton
                                          William J. Marsden, Jr. (#2247)
                                          Kyle Wagner Compton (#4693)
                                          919 N. Market Street, Suite 1100
                                          P.O. Box 1114
                                          Wilmington, DE 19899-1114
                                          Tel:  (302) 652-5070

                                          Nagendra Setty (*Pro Hac Vice*)
                                          Daniel A. Kent (*Pro Hac Vice*)
                                          1180 Peachtree Street, NE, 19th Floor
                                          Atlanta, GA 30309
                                          Tel: (404) 892-5005

                                          ATTORNEYS FOR DEFENDANT
                                          WITNESS SYSTEMS, INC.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD,<br><br>      *Plaintiffs and Counterclaim*<br>      *Defendants,*<br><br>   v.<br><br>WITNESS SYSTEMS, INC.<br><br>      *Defendant and Counterclaim*<br>      *Plaintiff.* | C.A. No. 1:06-CV-00311-JJF |

**DEFENDANT WITNESS SYSTEMS, INC. S SUPPLEMENTAL
RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC. S AND NICE
SYSTEMS LTD. S INTERROGATORY 2 and 2(a)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the District of Delaware, Defendant Witness Systems, Inc. ( Witness Systems )

provides the following supplemental objections and responses to the Interrogatories

propounded by Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. (collectively,

 NICE ).  Subject to and without waiving its previously stated objections, Witness

Systems incorporates by reference its responses and objections to NICE s First and

Second Sets of Interrogatories as if set forth verbatim herein, and for brevity provides

only the supplemental information for the identified interrogatories below:

**SUPPLEMENTAL RESPONSES**

**INTERROGATORY NO. 2:**

      **Describe in detail the factual and legal bases for Witness' contention that
 [the claims of the  738,  371,  005,  345,  372,  370,'920,  079, and  109 patents are
invalid for failure to comply with the United States patent laws, 35 U.S.C. §§ 1, et
seq., including without limitation § § 102, 103, and/or 112.   The detailed description
of such factual and legal bases should include, without limitation, an identification
of which aspect(s) of 35 U.S.C. § 112 Witness contends the Patents-In-Suit do not**

**meet and an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

For each of the Patents-in-Suit that Witness Systems contends to be invalid in view of the e1000 recorder, including documentation for and actual physical samples of the same, whether alone or in combination with one more references, Witness Systems intends to rely on the personal knowledge of Mr. Alan Gribben.

Witness believes one or more of the claims of the  371 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following refrences, either alone or in combination:  The Disk Drive As An Audio Recorder, Hard Disk Recording Conference (May 16-17, 1990); An Experimental Speech Storage and Editing Facility, The Bell System Technical Journal (October 1980); Mediation Brief, Analysis of Prior Art Which Anticipates or Renders Obvious the Claims of U.S. Patent No. 5,396,371, in Dictaphone Corporation vs. Mercom Systems, Inc., Civil Action 3:00CV1143; 4,375,083; JP S62-20460; Memory Space Allocation of Messages in Voice  Mail, IBM Technical Disclosure Bulletin (July 1987); A Magnetic Storage Disk Based Digital Audio Recording, Editing and Processing System, 83rd AES Corporation (October 16-19, 1987); A Flexible Digital Sound-Editing Program for Minicomputer Systems, 68th Convention of the Audio Engineering Society in Hamburg, German, Journal of Audio Engineering Society (March 17-20, 1981); NICE s Markman Brief in Dictaphone Corporation vs. Nice Systems, Ltd., (June 21, 2002), Civil Action 3:00CV1143; Magnasync Digital Voice Logger, sold in the U.S. as of at least October, 1992.

Witness believes one or more of the claims of the 920 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following refrences, either alone or in combination: U.S. Publication No. 2001/0043697 to Cox, published November 22, 2001, filed on May 11, 1998.(WSNSDE0000874-94); PCT Publication No. WO 98/13995 to Smythe, published April 2, 1998, filed September 25, 1997.(WSNSDE0008433-77); U.S. Patent No. 5,668,863 to Bieslin, filed April 26, 1996, claiming priority to U.S. Application Serial No. 08/509,390, filed June 31, 1995.(WSNSDE0005185-5222); Blue Cross Blue Shield Eclipse, sold in the U.S. before June 2, 1998; "Blue Cross Blue Shield User Guide" (illustrating hardware of D1 sale) (WSNSDE0012983-92); "Application Development Guide - Blue Cross / Blue Shield Eclipse Project Eclipse Modification and Design" (illustrating hardware of D1 sale) (WSNSDE0012967-82); "Tracking Agent Id through Inter-Site Call Transfers" (illustrating hardware of D1 sale)(WSNSDE0012993-4); "Racal Adds Remote Replay Over LAN to Wordnet Voice-Logging Recorder, dated June 17, 1996; Deposition of Andrew Jackson in Dictaphone CorPage vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE008273-008299); United States Patent No. 6,222,838 to Sparks, filed November 26, 1997; European Patent Publication 0837388A2, to Yamakita, filed October 9, 1997, claiming priority to October 15, 1996.

Witness believes one or more of the claims of the 372 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following refrences, either alone or in combination: Blue Cross Blue Shield Eclipse, sold in the U.S. before June 2, 1998; "Blue Cross Blue Shield User Guide" (illustrating hardware of D1 sale) (WSNSDE0012983-92); "Application Development Guide - Blue Cross / Blue Shield

Eclipse Project Eclipse Modification and Design" (illustrating hardware of D1 sale) (WSNSDE0012967-82); "Tracking Agent Id through Inter-Site Call Transfers" (illustrating hardware of D1 sale)(WSNSDE0012993-4); "Blue Cross Blue Shield System Diagrams" (illustrating hardware of D1 sale)(WSNSDE0013084-7; WSNSDE0013177-83); e1000 Circuit Diagrams (illustrating the hardware of the D1 sale). (WSNSDE0013861-94; WSNSDE0050671); "E1000/E500 Recorder: Engineer Familiarisation" (illustrating the hardware of the D1 sale). (WSNSDE0015161-98); U.S. Publication No. 2001/0043697 to Cox, published November 22, 2001, filed on May 11, 1998. (WSNSDE0000874-94); PCT Publication No. WO 98/13995 to Smythe, published April 2, 1998, filed September 25, 1997. (WSNSDE0008433-77); Racal Rapidax, sold in the U.S. as of at least December 21, 1992; "Racal s 'Rapidax Voice Logging Recorders Offers Instant Message Recall of Multichannel Calls, Transmissions," dated June 4, 1991. (NSDE008300-008302) (evidencing the hardware of the D10 sale); "Rapidax Access Voice Logging Recorder." (NSDE008312-008319) (evidencing the hardware of the D10 sale); "Rapidax Instant Call Recorder," (NSDE008305-008309) (illustrating the hardware of the D10 sale); "Rapidax in Surveillance and Security Monitoring" (NSDE008310-008311) (evidencing the hardware of the D10 sale); "Operator s Manual." (NSDE008320-008324) (evidencing the hardware of the D10 sale); "System Manager s Manual." (NSDE008325-008340) (evidencing the hardware of the D10 sale); "Rapidax Tape Archive and System Network." (NSDE008303-008304) (evidencing the hardware of the D10 sale); Deposition of Andrew Jackson in Dictaphone CorPage vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE008273-008299) (evidencing the hardware of the D10 sale); Expert Report on the Invalidity of

U.S. Patent No. 5,396,371 in Dictaphone CorPage vs. Nice Systems, Ltd., dated June 21,

2002, Civil Action 3:00CV1143.  (NSDE008447-008468) (evidencing the hardware of

the D10 sale); R[a]cal Recorders, Inc.; "R[a]cal Adds Remote 'Replay Over LAN' to

Wordnet Voice   Logging Recorder," June 1996. (MERC 013540);  "Proposal for a

Quality Monitoring / Agent Evaluation System", dated August 20, 1998. (WSNDE

013060-066); Canon ITS Technology Services Incorporated Quality Monitoring

Functionality Design, dated November 18, 1998.  (WSNDE 013035-059) (evidencing the

hardware and function of the D21 offer for sale.);  "Racal 'Worldnet'   Second

Generation of World's Best Selling Voice-Logging Recorder," June 28, 1995. (NSDE

004715-16); United States Patent No. 6,222,838 to Sparks, filed November 26, 1997.

## INTERROGATORY NO. 2(a):

**On a claim-by-claim basis in a chart, for each prior art reference identified
by Witness in response to NICE's Interrogatory No. 2, identify the disclosure in
each prior art reference of each limitation of the Asserted Claims in the respective
Patent-in-Suit.  To the extent that Witness asserts the prior art references support
its invalidity defense under 35 U.S.C. § 103, it must further identify any prior art
combinations and the motivation to combine those references.**

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2(a):

Witness Systems incorporates by reference its General Objections as if fully

stated herein.  Witness Systems also objects to this Interrogatory to the extent it seeks

information protected by the attorney-client privilege, work product doctrine, and/or any

other applicable privilege.  Witness Systems further objects to this Interrogatory to the

extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is

not.  Thus, this Interrogatory counts as a separate Interrogatory.  Witness Systems further

objects to this Interrogatory to the extent it is premature because discovery is still

ongoing and the claims of the Patents-in-Suit have yet to be construed.  Witness Systems

further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or

to the extent it seeks information that will be the subject of expert opinion testimony.

Subject to and without waiving the foregoing objections, Witness Systems refers NICE to

Supplemental Exhibit B, which identifies additional representative, invalidating prior art

for the ten asserted patents.  Numerous other prior art references also contain the

identified disclosures.  Witness Systems reserves its right to amend and/or supplement

this response as discovery and Witness Systems' investigation continue, and after any

claim construction ruling.  Witness Systems specifically reserves the right to supplement

and/or amend its response in light of information and materials that it is currently seeking

from third parties.


DATED:  May 30, 2007                              FISH & RICHARDSON P.C.


                                                 /s/ Kyle Wagner Compton
                                                 William J. Marsden, Jr. (#2247)
                                                 Kyle Wagner Compton (#4693)
                                                 919 N. Market Street, Suite 1100
                                                 P.O. Box 1114
                                                 Wilmington, DE 19899-1114
                                                 Tel:  (302) 652-5070

                                                 Nagendra Setty (*Pro Hac Vice*)
                                                 Daniel A. Kent (*Pro Hac Vice*)
                                                 1180 Peachtree Street, NE, 19th Floor
                                                 Atlanta, GA 30309
                                                 Tel: (404) 892-5005

                                                 ATTORNEYS FOR DEFENDANT
                                                 WITNESS SYSTEMS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2007, I caused to be served   DEFENDANT WITNESS

SYSTEMS, INC. S SUPPLEMENTAL RESPONSES TO PLAINTIFFS NICE SYSTEMS,

INC. S AND NICE SYSTEMS LTD. S INTERROGATORIES 2 and 2(a)   on counsel for

Plaintiffs as follows:

**By E-Mail and U.S. First Class Mail:**

| | |
|---|---|
| Scott G. Lindvall | Attorneys for Plaintiffs |
| Daniel P. DiNapoli | NICE Systems, Inc.  And NICE Systems, |
| Joseph M. Drayton | LTD |
| Kaye Scholer LLP | |
| 425 Park Avenue | |
| New York, NY 10022-3598 | |

**By E-Mail and Hand Delivery:**

| | |
|---|---|
| Josy W. Ingersoll | Attorneys for Plaintiffs |
| Melanie K. Sharp | NICE Systems, Inc.  And NICE |
| Karen E. Keller | Systems, LTD |
| Young Conaway Stargatt & Taylor, LLP | |
| The Brandywine Building, 17th Floor | |
| 1000 West Street | |
| P.O. Box 391 | |
| Wilmington, DE  19899-0391 | |

*/s/ Kyle Wagner Compton*
Kyle Wagner Compton (#4693)

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

       *Plaintiffs and Counterclaim*
       *Defendants,*

    v.

WITNESS SYSTEMS, INC.

       *Defendant and Counterclaim*
       *Plaintiff.*

C.A. No. 06-311-JJF

## DEFENDANT WITNESS SYSTEMS, INC. S THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC. S AND NICE SYSTEMS LTD. S INTERROGATORY 2 and 2(a)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware, Defendant Witness Systems, Inc. ( Witness Systems ) provides the following third supplemental objections and responses to the Interrogatories propounded by Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. (collectively, NICE ). Subject to and without waiving its previously stated objections, Witness Systems incorporates by reference its original, first and second supplemental responses and objections to NICE s First and Second Sets of Interrogatories[1] as if set forth verbatim herein, and for brevity provides only the supplemental information for the identified interrogatories below:

---

[1] Served on January 18, 2007; March 2, 2007; April 30, 2007; and May 30, 2007, respectively.

## SUPPLEMENTAL RESPONSES

### INTERROGATORY NO. 2:

Describe in detail the factual and legal bases for Witness' contention that [the claims of the 738, 371, 005, 345, 372, 370,'920, 079, and 109 patents are invalid for failure to comply with the United States patent laws, 35 U.S.C. §§ 1, et seq., including without limitation § § 102, 103, and/or 112. The detailed description of such factual and legal bases should include, without limitation, an identification of which aspect(s) of 35 U.S.C. § 112 Witness contends the Patents-In-Suit do not meet and an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

Witness believes one or more of the claims of the 738 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: U.S. Patent No. 4,995,054 to Boyd, Jr. et al., issued September 4, 1990; and U.S. Patent No. 4,817,086 to Oye et al., issued March 18, 1989. These references were identified in invalidity charts provided in Witness s previous responses to Interrogatory No. 2(a).

Witness believes one or more of the claims of the 005 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: Sale of Eyretel e1000, sold in the U.S. on or before October, 1992; 30(b)(6) Deposition of Chris Blair in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143; e1000 Circuit Diagrams; "E1000/E500 Recorder: Engineer Familiarisation"; U.S. Patent No. 5,724,738, to Daly et al.; "Digital Audio Tape For Data Storage", IEEE Spectrum, October, 1989; Racal Rapidax, sold in the U.S. as of at least December 21, 1992; "Racal s Rapidax Voice Logging Recorders Offers Instant Message Recall of Multichannel Calls, Transmissions"; "Rapidax Access Voice Logging Recorder"; "Rapidax Instant Call Recorder"; "Rapidax in Surveillance and Security Monitoring"; "Operator s Manual"; "System Manager s Manual"; "Rapidax Tape Archive and System Network";

Deposition of Andrew Jackson in Dictaphone CorPage vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143; and Expert Report on the Invalidity of U.S. Patent No. 5,396,371 in Dictaphone CorPage vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. These references were identified in invalidity charts provided in Witness's previous responses to Interrogatory No. 2(a).

Witness believes one or more of the claims of the '920 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: "Rapidax Tape Archive and System Network"; "Rapidax in Surveillance and Security Monitoring"; "Rapidax Access Voice Logging Recorder"; "Operator's Manual"; and Parnes et al, "mMOD: the multicast Media-on-Demand system," dated March 6, 1997.

Witness believes one or more of the claims of the '372 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: Parnes et al, "mMOD: the multicast Media-on-Demand system," dated March 6, 1997.

Witness believes one or more claims of the '079 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: Teknekron Infoswitch Web Site, dated July 1997; U.S. Patent No. 5,867,559 to Jorgenson, et al., issued February 2, 1999; U.S. Patent No. 6,404,857 to Blair, et al., issued on June 11, 2002; and "Proxy Remote Control Gateway   Gateway Administrator". These references were identified in invalidity charts provided in Witness's previous responses to Interrogatory No. 2(a).

**INTERROGATORY NO. 2(a):**

On a claim-by-claim basis in a chart, for each prior art reference identified by Witness in response to NICE's Interrogatory No. 2, identify the disclosure in each prior art reference of each limitation of the Asserted Claims in the respective Patent-in-Suit.  To the extent that Witness asserts the prior art references support its invalidity defense under 35 U.S.C. § 103, it must further identify any prior art combinations and the motivation to combine those references.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2(a):**

Witness Systems incorporates by reference its General Objections as if fully stated herein.  Witness Systems also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege.  Witness Systems further objects to this Interrogatory to the extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is not.  Thus, this Interrogatory counts as a separate Interrogatory.  Witness Systems further objects to this Interrogatory to the extent it is premature because discovery is still ongoing and the claims of the Patents-in-Suit have yet to be construed.  Witness Systems further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or to the extent it seeks information that will be the subject of expert opinion testimony.  Subject to and without waiving the foregoing objections, Witness Systems refers NICE to Supplemental Exhibit B, which identifies additional representative, invalidating prior art for the '372 and '920 patents.  Numerous other prior art references also contain the identified disclosures.  Witness Systems reserves its right to amend and/or supplement this response as discovery and Witness Systems' investigation continue, and after any claim construction ruling.  Witness Systems specifically reserves the right to supplement and/or amend its response in light of information and materials that it is currently seeking from third parties.

DATED:  July 10, 2007                    FISH & RICHARDSON P.C.


                                         */s/ Kyle Wagner Compton*
                                         William J. Marsden, Jr. (#2247)
                                         Kyle Wagner Compton (#4693)
                                         919 N. Market Street, Suite 1100
                                         P.O. Box 1114
                                         Wilmington, DE 19899-1114
                                         Tel:  (302) 652-5070

                                         Nagendra Setty (*Pro Hac Vice*)
                                         Daniel A. Kent (*Pro Hac Vice*)
                                         1180 Peachtree Street, NE, 19th Floor
                                         Atlanta, GA 30309
                                         Tel: (404) 892-5005

                                         *Attorneys for Defendant*
                                         *Witness Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2007, I caused to be served **DEFENDANT WITNESS SYSTEMS, INC.'S THIRD SUPPLEMENTAL RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S INTERROGATORIES 2 and 2(a)** on counsel for Plaintiffs as follows:

### By E-Mail and U.S. First Class Mail:

Scott G. Lindvall                    *Attorneys for Plaintiffs*
Daniel P. DiNapoli                   *NICE Systems, Inc. and*
Joseph M. Drayton                    *NICE Systems, Ltd.*
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

### By E-Mail and Hand Delivery:

Josy W. Ingersoll                    *Attorneys for Plaintiffs*
Melanie K. Sharp                     *NICE Systems, Inc. and*
Karen E. Keller                      *NICE Systems, Ltd.*
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391


*/s/ Kyle Wagner Compton*
Kyle Wagner Compton (#4693)

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD,<br><br>     *Plaintiffs and Counterclaim*<br>     *Defendants*,<br><br>    v.<br><br>WITNESS SYSTEMS, INC.<br><br>     *Defendant and Counterclaim*<br>     *Plaintiff.* | C.A. No. 1:06-CV-00311-JJF |

**DEFENDANT WITNESS SYSTEMS, INC.'S FOURTH SUPPLEMENTAL
RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC.'S AND NICE
SYSTEMS LTD.'S INTERROGATORY 2 and 2(a)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local

Rules of the District of Delaware, Defendant Witness Systems, Inc. ("Witness Systems")

provides the following fourth supplemental objections and responses to the

Interrogatories propounded by Plaintiffs NICE Systems, Inc. and NICE Systems Ltd.

(collectively, "NICE"). Subject to and without waiving its previously stated objections,

Witness Systems incorporates by reference its original, first, second and third

supplemental responses and objections to NICE's First and Second Sets of

Interrogatories[1] as if set forth verbatim herein, and for brevity provides only the

supplemental information for the identified interrogatories below:

---

[1] Served on January 18, 2007; March 2, 2007; April 30, 2007; May 30, 2007; and July 10, 2007, respectively.

<u>**SUPPLEMENTAL RESPONSES**</u>

<u>**INTERROGATORY NO. 2:**</u>

      **Describe in detail the factual and legal bases for Witness' contention that "[the claims of the '738, '371, '005, '345, '372, '370,'920, '079, and '109 patents are invalid for failure to comply with the United States patent laws, 35 U.S.C. §§ 1, et seq., including without limitation § § 102, 103, and/or 112." The detailed description of such factual and legal bases should include, without limitation, an identification of which aspect(s) of 35 U.S.C. § 112 Witness contends the Patents-In-Suit do not meet and an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

<u>**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**</u>

      Witness believes one or more of the claims of the '005 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: U.S. Patent No. 4,523,055, to Hohl et al., issued Jun. 11, 1985; U.S. Patent No. 4,549,047, to Brian et al., issued Oct. 22, 1985;  U.S. Patent No. 4,790,003, to Kepley et al., issued Dec. 6, 1988; U.S. Patent No. 4,221,933, to Cornell et al., issued Sep. 9, 1980; U.S. Patent No. 4,371,752, to Matthews et al., issued Feb. 1, 1983; U.S. Patent No. 4,375,083, to Maxemchuk, issued Feb. 22, 1983; U.S. Patent No. 4,582,957, to Hayes et al., issued Apr. 15, 1986; U.S. Patent No. 4,612,416, to Emerson et al., issued Sep. 16, 1986; U.S. Patent No. 4,646,346, to Emerson et al., issued Feb. 24, 1987; U.S. Patent No. 4,663,777, to Szeto, issued May 5, 1987; U.S. Patent No. 4,747,126, to Hood et al., issued May 24, 1988; U.S. Patent No. 4,785,473, to Pfeiffer et al., issued Nov. 15, 1988; U.S. Patent No. 4,837,798, to Cohen et al., issued Jun. 6, 1989; U.S. Patent No. 4,916,726, to Morley, Jr. et al., issued Apr. 10, 1990; U.S. Patent No. 4,926,462, to Ladd et al., issued May 15, 1990; U.S. Patent No. 5,003,577, to Ertz et al., issued May 26, 1991; U.S. Patent No. 5,008,926, to Misholi, issued Apr. 16, 1991; U.S.

Patent No. 5,029,199, to Jones et al., issued Jul. 2, 1991; U.S. Patent No. 5,187,735, to

Herrero Garcia et al., issued Feb. 16, 1993; "Communication Systems: Towards Global

Integration," Singapore ICCS '90, dated Nov. 5-9, 1990; and "Voicemail,"

Wikipedia.com, dated Sep. 5, 2007.

      Witness believes one or more of the claims of the '920 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination:  U.S. Patent No. 6,233,318 to Picard et al., issued May 15, 2001;

"Access Web TM. Internet Messaging Application," BostonTechnology.com, dated Dec.

27, 1996; and "Boston Technology Completes The Connection! Adds Internet Support

To Its Public Network Services," PR Newswire, dated Nov. 30, 1995.

      Witness believes one or more of the claims of the '372 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination:  U.S. Patent No. 6,233,318 to Picard et al., issued May 15, 2001;

"Access Web TM. Internet Messaging Application," BostonTechnology.com, dated Dec.

27, 1996; and "Boston Technology Completes The Connection! Adds Internet Support

To Its Public Network Services," PR Newswire, dated Nov. 30, 1995.

      Witness believes one or more of the claims of the '371 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination: U.S. Patent No. 4,121,058, issued to Jusko et al., filed on

December 13, 1976; U.S. Patent No. 4,841,574, issued to Pham et al, issued June 20,

1989; United States Patent No. 4,549,047, issued October 22, 1985 to Brian et al; United

States Patent No. 4,523,055, issued June 11, 1985 to Hohl et al., filed November 25,

1983;  United States Patent No. 5,103,467, issued April 17, 1992 to Bedlek et al., filed

October 31, 1989; United States Patent No. 4,985,914, issued January 15, 1991 to

Fukunga, filed January 12, 1990.

Witness believes one or more of the claims of the '738 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination:  U.S. Patent No. 4,523,055, to Hohl et al., issued Jun. 11, 1985;

U.S. Patent No. 4,549,047, to Brian et al., issued Oct. 22, 1985;  U.S. Patent No.

4,790,003, to Kepley et al., issued Dec. 6, 1988; U.S. Patent No. 4,221,933, to Cornell et

al., issued Sep. 9, 1980; U.S. Patent No. 4,371,752, to Matthews et al., issued Feb. 1,

1983; U.S. Patent No. 4,375,083, to Maxemchuk, issued Feb. 22, 1983; U.S. Patent No.

4,582,957, to Hayes et al., issued Apr. 15, 1986; U.S. Patent No. 4,612,416, to Emerson

et al., issued Sep. 16, 1986; U.S. Patent No. 4,646,346, to Emerson et al., issued Feb. 24,

1987; U.S. Patent No. 4,663,777, to Szeto, issued May 5, 1987; U.S. Patent No.

4,747,126, to Hood et al., issued May 24, 1988; U.S. Patent No. 4,785,473, to Pfeiffer et

al., issued Nov. 15, 1988; U.S. Patent No. 4,837,798, to Cohen et al., issued Jun. 6, 1989;

U.S. Patent No. 4,916,726, to Morley, Jr. et al., issued Apr. 10, 1990; U.S. Patent No.

4,926,462, to Ladd et al., issued May 15, 1990; U.S. Patent No. 5,003,577, to Ertz et al.,

issued May 26, 1991; U.S. Patent No. 5,008,926, to Misholi, issued Apr. 16, 1991; U.S.

Patent No. 5,029,199, to Jones et al., issued Jul. 2, 1991; U.S. Patent No. 5,187,735, to

Herrero Garcia et al., issued Feb. 16, 1993; "Communication Systems: Towards Global

Integration," Singapore ICCS '90, dated Nov. 5-9, 1990; and "Voicemail,"

Wikipedia.com, dated Sep. 5, 2007.

**INTERROGATORY NO. 2(a):**

       **On a claim-by-claim basis in a chart, for each prior art reference identified by Witness in response to NICE's Interrogatory No. 2, identify the disclosure in each prior art reference of each limitation of the Asserted Claims in the respective Patent-in-Suit. To the extent that Witness asserts the prior art references support its invalidity defense under 35 U.S.C. § 103, it must further identify any prior art combinations and the motivation to combine those references.**

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2(a):**

       Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Witness Systems further objects to this Interrogatory to the extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is not. Thus, this Interrogatory counts as a separate Interrogatory. Witness Systems further objects to this Interrogatory to the extent it is premature because discovery is still ongoing and the claims of the Patents-in-Suit have yet to be construed. Witness Systems further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or to the extent it seeks information that will be the subject of expert opinion testimony. Subject to and without waiving the foregoing objections, Witness Systems refers NICE to Supplemental Exhibit B, which identifies additional representative, invalidating prior art for the '372, '920, '371, and '005 patents. Numerous other prior art references also contain the identified disclosures. Witness Systems reserves its right to amend and/or supplement this response as discovery and Witness Systems' investigation continue, and after any claim construction ruling. Witness Systems specifically reserves the right to supplement and/or amend its response in light of information and materials that it is currently seeking from third parties.

DATED:  September 10, 2007                    FISH & RICHARDSON P.C.

                                              */s/ Kyle Wagner Compton*
                                              William J. Marsden, Jr. (#2247)
                                              Kyle Wagner Compton (#4693)
                                              919 N. Market Street, Suite 1100
                                              P.O. Box 1114
                                              Wilmington, DE 19899-1114
                                              Tel:  (302) 652-5070

                                              Nagendra Setty (*Pro Hac Vice*)
                                              Daniel A. Kent (*Pro Hac Vice*)
                                              1180 Peachtree Street, NE, 19th Floor
                                              Atlanta, GA 30309
                                              Tel: (404) 892-5005

                                              ATTORNEYS FOR DEFENDANT
                                              WITNESS SYSTEMS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2007, I caused to be served "DEFENDANT

WITNESS SYSTEMS, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS NICE

SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S INTERROGATORIES 2 and 2(a)" on

counsel for Plaintiffs as follows:

**By E-Mail and U.S. First Class Mail:**

| | |
|---|---|
| Scott G. Lindvall | Attorneys for Plaintiffs |
| Daniel P. DiNapoli | NICE Systems, Inc.  And NICE Systems, |
| Joseph M. Drayton | LTD |
| Kaye Scholer LLP | |
| 425 Park Avenue | |
| New York, NY 10022-3598 | |

**By E-Mail and Hand Delivery:**

| | |
|---|---|
| Josy W. Ingersoll | Attorneys for Plaintiffs |
| Melanie K. Sharp | NICE Systems, Inc.  And NICE Systems, |
| Karen E. Keller | LTD |
| Young Conaway Stargatt & Taylor, LLP | |
| The Brandywine Building, 17th Floor | |
| 1000 West Street | |
| P.O. Box 391 | |
| Wilmington, DE  19899-0391 | |

*/s/ Kyle Wagner Compton*
Kyle Wagner Compton (#4693)

# SUPPLEMENTAL EXHIBIT B

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC., a Delaware Corporation, and )
NICE SYSTEMS, LTD., an Israeli Corporation, )
                                              )
                        Plaintiffs, )
                    v. )        Civil Action No. 06-311-JJF
                                                )
WITNESS SYSTEMS, INC, a Delaware Corporation, )
                                                  )
                        Defendant. )

## PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT WITNESS SYSTEMS, INC.'S SECOND SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware Rule 26.1, Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd. (collectively "NICE"), by their attorneys, hereby provide the following supplemental responses to Defendant Witness Systems, Inc.'s ("Witness" or "Defendant") Second Set of Interrogatories (referred to hereafter individually as "Interrogatory" and collectively as "Interrogatories"). These supplemental responses supersede NICE's prior objections and responses to Witness's Second Set of Interrogatories.

## GENERAL OBJECTIONS

1.       NICE objects to each interrogatory to the extent that it seeks material not reasonably calculated to lead to the discovery of admissible evidence and/or material protected by the attorney-client privilege and/or material protected by the work-product doctrine and/or material which otherwise exceeds the bounds of the Local Rules of the District of Delaware

and/or the Federal Rules of Civil Procedure.  The responses given herein by NICE to any of the Interrogatories shall not be deemed to waive any claim of privilege or immunity.

2.      NICE objects to Defendant's instructions to the extent that they purport to vary NICE's rights and obligations under the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

3.      NICE objects to any discovery propounded in bad faith, including but not limited to the improper purpose of unduly burdening or harassing NICE, or otherwise improperly and intentionally exceeding the limitations of the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

4.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that is vague and/or ambiguous.

5.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which calls for information already in Defendant's possession or within the public domain.  Information in the public domain or in Defendant's possession that may be responsive to an interrogatory is as readily available to Defendant as such information is to NICE.

6.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which seeks disclosure of trade secrets, confidential, proprietary or other sensitive information of either NICE or a third party.

7.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that attempts to obligate NICE to conduct anything other than a reasonable search for the information sought.  NICE objects to each and every Interrogatory to the extent that it demands "each," "every" or "all" facts, circumstances,

communications or persons falling within particular categories, because such demand will cause undue burden and expense. NICE will undertake a reasonable search to identify available information requested in the Interrogatories.

       8.    To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's interrogatories which seeks information related to events and occurrences which took place subsequent to the date of the complaint on the grounds that such requests are overbroad, unduly burdensome and beyond the scope of permissible discovery in that such information is not reasonably calculated to lead to the discovery of admissible evidence.

       9.    NICE's responses to Defendant's Interrogatories may not be complete because discovery in this matter is ongoing. NICE is not limited by its responses herein. If NICE discovers additional responsive information to Defendant's Interrogatories, NICE will provide such additional information in a supplemental response.

      10.    NICE objects to each and every Interrogatory to the extent that it seeks information not within the possession, custody or control of NICE.

      11.    NICE reasserts and incorporates its objections to the definitions and instructions to Defendant's First Request for Production of Documents which were part of Defendant's Interrogatories.

      12.    NICE specifically objects to Witness' definition of "NICE," "You," and "Your" in definition lettered "A" in the Definitions and Instructions section as overbroad to the extent it seeks to improperly impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

13.    NICE specifically objects to Witness' definition of "Dictaphone" in definition lettered "G" in the Definitions and Instructions section as overbroad to the extent it improperly seeks to impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

Subject to and without waiving the foregoing general objections and any specific objections below, NICE responds as follows to Defendant's Interrogatories:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 13:

Identify each patent claim(s) in each of the Patents-in-Suit NICE contends Witness infringes or has infringed, specifying for each claim which Witness product(s) and/or method(s) NICE contends infringe or have infringed, including whether NICE's contention is based on literal infringement, infringement under the doctrine of equivalents, direct infringement, contributory infringement, and/or infringement by inducement.

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13:

NICE objects to Interrogatory No. 13 to the extent it seeks information protected by the attorney-client or work product privileges. NICE also objects to this interrogatory as premature as discovery is in its infancy stages. NICE further objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that the claims at issue and the theories of infringement that NICE may assert in this action are subject to modification and further development as Witness has yet to produce any

documents or relevant source code. Moreover, NICE is still investigating the facts concerning Witness' infringement of the claims at issue, including Witness' sales through its channel partners such as Avaya and Nortel. Notwithstanding, NICE refers Witness to NICE's Preliminary Infringement Contentions attached as Exhibit A hereto. NICE anticipates reducing the number of claims presently asserted and will do so after the conclusion of document and/or deposition discovery. NICE further responds that its Preliminary Infringement Contentions are subject to modification and/or supplementation as Witness has yet to produce any documents or relevant source code. NICE's infringement analysis as well as the accused products list in Exhibit A are also subject to modification in light of claim constructions agreed to by the parties or ultimately adopted by the Court. NICE has narrowed the claims asserted in this litigation to the following: claim 1 of the '738 Patent, claims 1, 5 and 8 of the '371 Patent; claims 1, 3, 4, 6, 11, 13, 15, 20 and 21 of the '005 Patent; claims 6 and 7 of the '570 Patent; claims 14, 15, 21, 22, 23, 24, 25, 26, 40, 41, 42, 43, 45, 46, 47, 48, 49, 50, 51, and 52 of the '345 Patent; claims 1, 6, 14, 15, 17, 19, 33, 34 and 44 of the '372 Patent, claims 1, 5, 6, 8, 9, 11, 12, and 27 of the '370 Patent; claims 1, 3, 6, 16, 18 and 21 of the '920 Patent; Claim 6 of the '079 Patent; and claims 1, 3, 4, 6, 8, 15, 16, 18, 22, 24 and 29 of the '109 Patent. NICE reserves its right to amend this response.

NICE further responds that it is in the process of reviewing the more than 5 million pages that Witness produced in this litigation. To the extent Witness can provide bates ranges of the relevant technical documents for each version of the Accused Products, NICE will be able to accelerate any supplementation of this Interrogatory response. NICE further responds that Witness's infringing products include, but are not limited to, all versions of the following: the Accused Products; Avaya Communication Manager; Cisco IP Contact Center (integration project

with Witness); ContactStore for Communication Manager 7.1 and 7.2; ContactStore IP 7.1 and 7.2; eQuality Analysis version 3.0; eQuality Balance versions 5.x, 5.2, 6.x, 6.0, 6.3.1, 6.4, 6.5, 6.5.5 and R6; eQuality Call Miner; eQuality ContactStore; eQuality ContactStore PLUS; eQuality Discover; eQuality Evaluation; eQuality Focus; eQuality Now versions 3.1, 3.2, 3.3 and 4.0; eQuality Producer 2.0; eQuality Vision; Eyretel Contact Archive; Eyretel IP Recording Suite; Eyretel MediaStore; Eyretel MediaStore IP; Eyretel MediaStore IP 3.1; Quality for Communication Manager 5.3; Toolbook 8.0; Witness ContactStore for Communication Manager; and, Witness Quality for Communication Manager 5.4.

## INTERROGATORY NO. 14:

For each patent claim and product or method identified in response to Interrogatory No. 13, identify where each limitation of each claim is found within each accused Witness product(s) or method(s) by providing in the form of a claim chart a limitation-by-limitation comparison of each claim limitation with each accused Witness product(s) or method(s), including a description of the function, way and result for each limitation NICE contends is infringed under the doctrine of equivalents, and an identification of all facts, circumstances, documents, and evidence that NICE contends supports or undermines NICE's contentions.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 14:

NICE objects to Interrogatory No. 14 to the extent it seeks information protected by the attorney-client or work product privileges. NICE also objects to this interrogatory as premature as discovery is in its infancy stages. NICE further objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE refers Witness to Exhibit A. NICE reserves its right to amend this response.

## INTERROGATORY NO. 15:

Identify all limitations in each of the claims identified in Interrogatory No. 13, that NICE contends should be interpreted under 35 U.S.C. § 112, ¶ 6, specifying for each identified limitation all disclosures in the relevant patent's specification of the structure, material or act that NICE contends corresponds to such limitations and equivalents thereof; all references from the prosecution history or extrinsic evidence that NICE relies upon to support its contentions; and a detailed description of each alleged occurrence of such § 112, ¶ 6 claim limitation (or equivalents thereto) in any Witness product or activity that NICE contends infringes or has infringed the Patents-in-Suit.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 15:

NICE objects to Interrogatory No. 15 to the extent it seeks information protected by the attorney-client or work product privileges. NICE also objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories. NICE further objects to this request as premature. The parties agreed to a claim construction schedule in section 7 of the Scheduling Order dated October 30, 2006. NICE will answer this interrogatory on March 9, 2007 as provided for in the Scheduling Order.

## INTERROGATORY NO. 16:

Identify all claim terms, phrases, or limitations of the Patents-in-Suit that NICE contends should be construed by the Court, providing for each term, phrase, or limitation NICE's proposed construction and an identification of all intrinsic and extrinsic evidence NICE contends supports or undermines its proposed construction.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 16:

NICE objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client or work product privilege. NICE additionally objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories. NICE further objects to this request as premature. The parties agreed to a claim construction schedule in section 7 of the Scheduling Order dated October 30, 2006. NICE will answer this interrogatory on March 30, 2007 as provided for in the Scheduling Order.

## INTERROGATORY NO. 17:

For any Patent-in-Suit that claims priority to an earlier application, identify the priority date to which NICE contends each asserted claim is entitled.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17:

NICE objects to Interrogatory Number 17 to the extent it seeks information which is protected by the attorney-client or work product privileges. Subject to, and without waiving, the foregoing General and Specific Objections, NICE states, subject to continued due diligence and investigation, that the priority dates for the patents at issue are as follows:

U.S. Patent No. 5,274,738: on or before April 21, 1989

U.S. Patent No. 5,396,371: on or before April 19, 1991

U.S. Patent No. 5,819,005:  on or before April 19, 1991

U.S. Patent No. 6,249,570:  on or before July 9, 1997

U.S. Patent No. 6,728,345:  on or before July 9, 1997

U.S. Patent No. 6,775,372:  on or before November 5, 1997

U.S. Patent No. 6,785,370:  on or before July 9, 1997

U.S. Patent No. 6,870,920:  on or before November 5, 1997

U.S. Patent No. 6,959,079:  on or before February 14, 2000

U.S. Patent No. 7,010,109:  on or before August 28, 2000

NICE reserves its right to amend this response.

**INTERROGATORY NO. 18:**

For each claim of the Patents-in-Suit, identify all facts and circumstances surrounding the conception and reduction to practice and/or development of the alleged invention, including an identification of all persons involved with and/or who have knowledge about the conception, reduction to practice and/or development; the date(s) NICE contends each alleged invention was conceived and actually reduced to practice; and an identification of all documents, things, and individuals NICE contends can corroborate each such date of conception and actual reduction to practice.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 18:**

NICE objects to Interrogatory No. 18 to the extent it seeks information that is protected by the attorney-client or work product privilege.  NICE also objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics.  As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

NICE further objects to the phrase "surrounding the conception and reduction to practice and/or development of the alleged invention" as vague, ambiguous and overly broad.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that the persons involved in the conception, reduction to practice and/or development of the Patents-in-Suit were previously disclosed in NICE's Responses and Objections to Witness's First Set of Interrogatories, dated November 1, 2006, specifically in response to Interrogatory No. 5. In addition, the inventors of each of the patents at issue were involved with and/or have knowledge about the conception, reduction to practice and/or development of the patents at issue and their underlying inventions. Presently, NICE states, subject to continued investigation, that each of the patents at issue was conceived on its respective priority date provided in response to Interrogatory No. 17 and constructively reduced to practice upon the date of their filing. NICE relies on the following documents to support its of the aforementioned dates of conception: NSDE471405-423 as well as other documents in box 118; NSDE294780-834 as well as other documents in boxes 325 and 341; NSDE097535-629 as well as other documents in boxes 36 and 193; and NSDE409563-584 as well as other documents in box 333. NICE relies on the each of the patents at issue to corroborate the aforementioned dates of reduction to practice. NICE reserves its right to amend this response.

**INTERROGATORY NO. 19:**

Identify each instance of marking NICE contends is or was sufficient to provide notice to Witness under 35 U.S.C. §287 for each of the Patents-in-Suit, including an identification of each product NICE contends is or was marked with one or more of the patent numbers of the Patents-in-Suit; the date(s) during which NICE contends each instance or marking took place; the details concerning how and where on each product such marking is or

was placed; and all of the facts, circumstances, documents, and evidence (including knowledgeable witness) regarding such marking.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 19:**

NICE objects to Interrogatory No. 19 to the extent it seeks information that is protected by the attorney-client privilege, consists of attorney work-product, or is otherwise protected from disclosure. NICE further objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that NICE is still investigating the facts relating to the marking of Dictaphone products it acquired in 2005. NICE intends to provide all relevant, non-privileged information regarding the patent marking of those products upon the completion of its investigation. With regard to its products, NICE responds as follows:

| Product | Patents listed on Product Marking | Dates of Product Marking |
|---|---|---|
| Voice Over IP Logger, NICE Log | U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; and 6,959,079 | January 2006 to present |
| NICE Perform Applications Suite | U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; and 6,959,079 | January 2006 to present |
| NICE Perform Applications Suite | U.S. Patent No. 7,010,109 | March 2006 to present |
| NICE Perform Compliance Suite | U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; 6,959,079; and 7,010,109 | March 2006 to present |

In addition to the above response, NICE refers Witness to documents bates numbered STS017145-46 and NSDE 004120-004122 which are copies of product markings. Nothing in

this response should be deemed an admission that prior markings do not exist.  If NICE becomes aware of prior markings, it will produce or identify such markings.  NICE reserves its right to amend this response.

Dated:  May 11, 2007                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Mary F. Dugan*

Melanie K. Sharp (No. 2501)
Karen E. Keller (No. 4489)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY  10022
(212)836-8000

*Attorneys for Plaintiffs Nice Systems, Inc. and Nice Systems, Ltd.*

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on May 11, 2007, I caused a true and correct copy of PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT WITNESS SYSTEMS, INC.'S SECOND SET OF INTERROGATORIES to be served by hand delivery on the following counsel of record:

William J. Marsden, Jr., Esquire
Kyle Wagner Compton, Esquire
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

I further certify that on May 11, 2007, I caused a copy of the foregoing document to be served by email by agreement of counsel on the following non-registered participants:

**BY E-MAIL**
Noah C. Graubart (graubart@fr.com)
Nagendra Setty (setty@fr.com)
Daniel A. Kent (kent@fr.com)
Christopher O. Green (green@fr.com)
Fish & Richardson, P.C.
1180 Peachtree Street, NE
21st Floor
Atlanta, GA  30309

Mary F. Dugan (No. 4704)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-5028
mdugan@ycst.com

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICE SYSTEMS, INC., a Delaware Corporation, and NICE SYSTEMS, LTD., an Israeli Corporation, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-311-JJF |
| WITNESS SYSTEMS, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT WITNESS SYSTEMS, INC.'S INTERROGATORY NOS. 17 AND 18

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware Rule 26.1, Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd. (collectively "NICE"), by their attorneys, hereby provide the following supplemental responses to Defendant Witness Systems, Inc.'s ("Witness" or "Defendant") Second Set of Interrogatories (referred to hereafter individually as "Interrogatory" and collectively as "Interrogatories"). These supplemental responses supersede NICE's prior objections and responses to Witness's Second Set of Interrogatories.

### GENERAL OBJECTIONS

1.      NICE objects to each interrogatory to the extent that it seeks material not reasonably calculated to lead to the discovery of admissible evidence and/or material protected by the attorney-client privilege and/or material protected by the work-product doctrine and/or material which otherwise exceeds the bounds of the Local Rules of the District of Delaware

and/or the Federal Rules of Civil Procedure. The responses given herein by NICE to any of the Interrogatories shall not be deemed to waive any claim of privilege or immunity.

2. NICE objects to Defendant's instructions to the extent that they purport to vary NICE's rights and obligations under the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

3. NICE objects to any discovery propounded in bad faith, including but not limited to the improper purpose of unduly burdening or harassing NICE, or otherwise improperly and intentionally exceeding the limitations of the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

4. To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that is vague and/or ambiguous.

5. To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which calls for information already in Defendant's possession or within the public domain. Information in the public domain or in Defendant's possession that may be responsive to an interrogatory is as readily available to Defendant as such information is to NICE.

6. To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which seeks disclosure of trade secrets, confidential, proprietary or other sensitive information of either NICE or a third party.

7. To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that attempts to obligate NICE to conduct anything other than a reasonable search for the information sought. NICE objects to each and every Interrogatory to the extent that it demands "each," "every" or "all" facts, circumstances,

2

communications or persons falling within particular categories, because such demand will cause undue burden and expense. NICE will undertake a reasonable search to identify available information requested in the Interrogatories.

8.     To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's interrogatories which seeks information related to events and occurrences which took place subsequent to the date of the complaint on the grounds that such requests are overbroad, unduly burdensome and beyond the scope of permissible discovery in that such information is not reasonably calculated to lead to the discovery of admissible evidence.

9.     NICE's responses to Defendant's Interrogatories may not be complete because discovery in this matter is ongoing. NICE is not limited by its responses herein. If NICE discovers additional responsive information to Defendant's Interrogatories, NICE will provide such additional information in a supplemental response.

10.     NICE objects to each and every Interrogatory to the extent that it seeks information not within the possession, custody or control of NICE.

11.     NICE reasserts and incorporates its objections to the definitions and instructions to Defendant's First Request for Production of Documents which were part of Defendant's Interrogatories.

12.     NICE specifically objects to Witness' definition of "NICE," "You," and "Your" in definition lettered "A" in the Definitions and Instructions section as overbroad to the extent it seeks to improperly impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

3

13.    NICE specifically objects to Witness' definition of "Dictaphone" in definition lettered "G" in the Definitions and Instructions section as overbroad to the extent it improperly seeks to impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

Subject to and without waiving the foregoing general objections and any specific objections below, NICE responds as follows to Defendant's Interrogatories:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 17:

For any Patent-in-Suit that claims priority to an earlier application, identify the priority date to which NICE contends each asserted claim is entitled.

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17:

NICE objects to Interrogatory Number 17 to the extent it seeks information which is protected by the attorney-client or work product privileges. Subject to, and without waiving, the foregoing General and Specific Objections, NICE states, subject to continued due diligence and investigation, that the priority dates for the patents at issue that claim priority to an earlier filed application are as follows:

U.S. Patent No. 5,819,005:  August 3, 1993

U.S. Patent No. 6,728,345:  June 8, 1999

U.S. Patent No. 6,785,370:  June 8, 1999

U.S. Patent No. 6,870,920:  June 2, 1999

U.S. Patent No. 6,959,079:  February 14, 2000

U.S. Patent No. 7,010,109:  August 28, 2000

4

NICE reserves its right to amend this response.

## INTERROGATORY NO. 18:

For each claim of the Patents-in-Suit, identify all facts and circumstances surrounding the conception and reduction to practice and/or development of the alleged invention, including an identification of all persons involved with and/or who have knowledge about the conception, reduction to practice and/or development; the date(s) NICE contends each alleged invention was conceived and actually reduced to practice; and an identification of all documents, things, and individuals NICE contends can corroborate each such date of conception and actual reduction to practice.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 18:

NICE objects to Interrogatory No. 18 to the extent it seeks information that is protected by the attorney-client or work product privilege. NICE also objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories. NICE further objects to the phrase "surrounding the conception and reduction to practice and/or development of the alleged invention" as vague, ambiguous and overly broad.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that the persons involved in the conception, reduction to practice and/or development of the Patents-in-Suit were previously disclosed in NICE's Responses and Objections to Witness's First Set of Interrogatories, dated November 1, 2006, specifically in response to Interrogatory No. 5. In addition, the inventors of each of the patents at issue were involved with and/or have knowledge about the conception, reduction to practice and/or development of the patents at issue and their underlying inventions.

5

Presently, NICE states, subject to continued investigation, that the conception dates for the inventions claimed in the patents at issue are as follows:

U.S. Patent No. 5,274,738:  on or before April 21, 1989

U.S. Patent No. 5,396,371:  on or before April 19, 1991

U.S. Patent No. 5,819,005:  on or before April 19, 1991

U.S. Patent No. 6,249,570:  on or before July 9, 1997

U.S. Patent No. 6,728,345:  on or before July 9, 1997

U.S. Patent No. 6,775,372:  on or before April 4, 1997

U.S. Patent No. 6,785,370:  on or before July 9, 1997

U.S. Patent No. 6,870,920:  on or before April 4, 1997

U.S. Patent No. 6,959,079:  on or before February 14, 2000

U.S. Patent No. 7,010,109:  on or before August 28, 2000

NICE relies on the following documents and the patents at issue themselves to corroborate the aforementioned dates of conception and subsequent reduction to practice: NSDE349273-9316; NSDE294780-834 as well as other documents in boxes 325 and 341; NSDE471405-423 as well as other documents in box 118; NSDE409563-584 as well as other documents in box 333; and NSDE097535-629 as well as other documents in boxes 36 and 193.

NICE reserves its right to amend this response.

6

Dated: August 2, 2007          YOUNG CONAWAY STARGATT & TAYLOR, LLP


_(signature)_

Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY 10022
(212)836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and
NICE Systems, Ltd.*

7

# EXHIBIT I

UNCERTIFIED TRANSCRIPT

August 21, 2007

CONFIDENTIAL TRANSCRIPT


In the United States District Court.

For the District of Delaware.

NICE Systems, Inc. And NICE Systems,

Ltd., plaintiffs.

Versus.

Witness Systems, Inc., defendant.

**the witness is John Henits.

THE VIDEOGRAPHER:   We are now going on

did records at approximately 10:35 a.m.   This is

the videotaped deposition of John Henits taken in

the U.S. District Court for the district of

Delaware.   The caption is NICE Systems, Inc. Et al.

Versus Witness Systems, Inc.   The deposition is

being held today, August 21, 2007 at the offices of

Fish and Richardson, 153 Third Avenue in New York

City.

I'm Kevin Gallagher the videographer, the

court reporter is Bob Bloom, we are both from the

independent firm of Tankoos Reporting of Mineola,

New York.

Counsel will now introduce themselves for

UNCERTIFIED TRANSCRIPT

1

2    Dictaphone?

3         A.    I don't know.

4         Q.    You didn't attempt to contact anybody

5    like that?

6         A.    Again, I don't know if there are any

7    people that work for Dictaphone, so I wouldn't know

8    if there are people who would be knowledgeable on

9    the topics who work for Dictaphone.

10         Q.    Did I cover everybody?  Is there anybody

11    else you talked to in preparation for your

12    deposition today?

13         A.    Counsel.

14         Q.    How many times did you meet with counsel

15    to prepare for this deposition?

16         A.    It was more of the mode where I would

17    come down to New York to their offices and review

18    documentation, so if you mean by meeting them or

19    coming down to their facility, I spent, I think --

20    which would be about three or 4 weeks or so

21    reviewing materials at the Kaye Scholer facility

22    here in New York.

23         Q.    And some of that time you were reviewing

24    documents and some of the time you were talking to

25    counsel?

# EXHIBIT J

UNCERTIFIED TRANSCRIPT

August 21, 2007

CONFIDENTIAL TRANSCRIPT


In the United States District Court.

For the District of Delaware.

NICE Systems, Inc. And NICE Systems,

Ltd., plaintiffs.

Versus.

Witness Systems, Inc., defendant.

**the witness is John Henits.

THE VIDEOGRAPHER:   We are now going on

did records at approximately 10:35 a.m.   This is

the videotaped deposition of John Henits taken in

the U.S. District Court for the district of

Delaware.   The caption is NICE Systems, Inc. Et al.

Versus Witness Systems, Inc.   The deposition is

being held today, August 21, 2007 at the offices of

Fish and Richardson, 153 Third Avenue in New York

City.

I'm Kevin Gallagher the videographer, the

court reporter is Bob Bloom, we are both from the

independent firm of Tankoos Reporting of Mineola,

New York.

Counsel will now introduce themselves for

Page 77

1    UNCERTIFIED TRANSCRIPT

2    response.

3            MR. GRAUBART: You're certainly talking a

4    lot for someone who's not answering questions.

5            MR. BARR:  It's an interrogatory response

6    which we served on you, it speaks for itself.

7        Q.   Mr.  Henits, going back to the top of the

8    list, U.S. patent number 5274738, on or before April

9    4, 1989, do you believe that the inventions claimed

10   in that patent were conceived of on or before that

11   date?

12       A.   Yes.

13           MR. BARR: Just for the record, we have --

14   Mr.  Henits brought with him a set of documents that

15   he reviewed that he may need to refer to.

16           MR. GRAUBART: These are documents --

17           MR. BARR: These are documents identified

18   --

19           MR. GRAUBART: Previously.

20           MR. BARR: They are identified in the

21   interrogatory response.  I will give him a set,

22   they're clean.  If you want to ask him questions

23   about the documents, we have them here.

24           You can leave them there until he asks

25   you questions.