IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD.,<br><br>*Plaintiff*,<br><br>v.<br><br>WITNESS SYSTEMS, INC.,<br><br>*Defendant*. | Civil Action No. 06-311-JJF |

**DEFENDANT WITNESS SYSTEMS, INC.'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO RESTORE TO THE SCHEDULING ORDER
DATES CERTAIN FOR THE EXCHANGE OF EXPERT REPORTS**

FISH & RICHARDSON P.C.

William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware 19899-1114
Telephone: (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

Dated: October 30, 2007

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II. STATEMENT OF FACTS ............................................................................................ 2

III. ARGUMENT .................................................................................................................. 6

    A. NICE Cannot Present Forty-Two Claims at Trial. ....................................... 6

    B. NICE Has Not Shown Good Cause to Modify the
Sequence Established in the Scheduling Order. ........................................... 7

    C. Proceeding with Expert Reports before NICE
Focuses its Case Is a Waste of Resources. .................................................... 8

    D. NICE's Proposed Schedule Is Unworkable. ................................................. 9

    E. NICE's Failure to Focus its Case Requires
Modification of the Current Trial Date. ....................................................... 9

IV. CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*
   Civ. A. No. 04-0038-J 2005 WL. 2304190 (D. Del. Sept. 20, 2005) ..........................6

*Olgyay v. Society for Environmental Graphic Design, Inc.*,
   169 F.R.D. 219 (D.D.C. 1996)........................................................................................7

*Power Integrations, Inc. v. Fairchild Semiconductor International*,
   No. 04-1371-JJF, 2006 WL. 2590884 (D. Del. Sept. 8, 2006) ......................................6

*Reroof America, Inc. v. United Structions of America, Inc.*
   Nos. 98-1378, 98-1430, 1999 WL. 674517 (Fed. Cir. Aug. 30, 1999)......................6, 7

*Ronald A. Katz Tech. Licensing, L.P. v. Citibank*,
   No. 5:05-CV-142-DF (E.D. Tex. Aug. 1, 2006)............................................................7

### STATUTES

Fed. R. Civ. P. 16(b) ..............................................................................................................2, 7

Fed. R. Civ. P. 30(d)(2)................................................................................................................9

### OTHER AUTHORITY

*3 Moore's Federal Practice* § 16.14[b] (2003) ......................................................................7

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

NICE's Motion to Restore to the Scheduling Order Dates Certain for the Exchange of Expert Reports (D.I. 235) should be denied, and the sequence established by the Court's August 14, 2007 Stipulated Order Amending Scheduling Order (D.I. 221) should be maintained. Exchanging expert reports without the benefit of the Court's claim construction, and before NICE focuses its case sufficiently for trial would be premature, prejudicial and wasteful. The current Scheduling Order properly requires NICE to narrow its case for trial after claim construction and before expert reports and depositions. NICE's recent attempt to "narrow" is far from sufficient, and still leaves forty-two (42) separate claims asserted from nine (9) different patents against seventy-six (76) accused products and 764 discrete versions of those products— far more than could ever be presented during a five-day trial. Having already wasted the Court's and Witness Systems' resources by seeking construction of approximately forty (40) terms from seventy (70) different asserted claims, the order NICE now seeks would cause further prejudice by forcing Witness Systems to submit expert reports on the validity of the 42 remaining claims without the benefit of a claim construction ruling, followed by non-infringement reports on potentially thousands of alleged infringement scenarios.

As a result, the Court should deny NICE's attempt to modify the Scheduling Order and maintain the case sequence set forth during the Court's July 13, 2007 motions hearing and subsequent amendment to the Scheduling Order. That sequence requires: (1) after claim construction, NICE must propose a narrowed subset of claims it will present at trial; (2) Witness Systems will have an opportunity to object that NICE has not sufficiently narrowed its case; (3) the Court will rule on the sufficiency of NICE's narrowing; and (4) the parties will exchange

expert reports, followed by expert depositions. Although couched as a motion "to restore" dates to the Scheduling Order, NICE's Motion actually seeks a drastic modification of the Scheduling Order—an order that resulted from the Court's directive and was implemented via negotiation between the parties. Federal Rule of Civil Procedure 16 provides that such scheduling orders "shall not be modified except upon a showing of good cause . . . ." FED. R. CIV. P. 16(b). Here, NICE has not demonstrated good cause.

In addition, the current trial date of January 14, 2007 should be postponed to allow the events set forth in the scheduling order to proceed. The current situation has been caused solely by NICE's failure to narrow its case meaningfully for trial, and thus good cause exists to modify the trial date. Witness Systems should not be prejudiced by being forced to conduct expert discovery on claims that have not yet been construed or narrowed for trial. Instead, the Amended Scheduling Order's sequence should stand. After the Court issues its claim construction ruling, NICE should limit its asserted claims to a number appropriate for trial, after which the parties should conduct expert discovery. The trial date should be postponed to allow that to happen in the sequence set forth in the Scheduling Order.

## II.  STATEMENT OF FACTS

NICE initiated this lawsuit on May 10, 2006, alleging infringement of ten (10) NICE patents containing over three hundred (300) claims. The Complaint failed to specify which claims NICE alleged were infringed by any particular Witness Systems product. Seven months later, NICE initially responded to Witness Systems' contention interrogatories by asserting infringement of two hundred nine (209) total claims across all ten (10) patents. (D.I. 55, Notice of Service of Plaintiffs' Obj. & Answers to Witness Systems' Second Set of Interrogatories, served Dec. 27, 2006 (attaching claim charts for 209 asserted claims).) NICE later amended its

response by removing some claims and adding others, leaving a total of seventy (70) remaining asserted claims from all ten (10) patents. (Ex. A,[1] NICE's Am. Obj. & Resp. to Witness Systems' Second Set of Interrogatories, served Mar. 2, 2007.[2]) NICE maintained its list of seventy (70) asserted claims through the remainder of fact discovery and claim construction, and reaffirmed that list as recently as June 28, 2007. (Ex. B, NICE's Second Suppl. Obj. & Resp. to Witness Systems' Interrogatory No. 13.)

In May and June of 2007, the parties submitted claim construction briefing on forty-three (43) disputed claim terms across the seventy (70) claims and ten (10) patents then still asserted by NICE. The Court heard claim construction arguments on June 26, 2007 on forty-one (41) of those disputed claim terms.[3]

During a discovery hearing on July 13, 2007, the Court ordered NICE to narrow its asserted claims to a number appropriate for trial after the Court's claim construction ruling issues (Ex. C, Tr. Of July 13, 2007 Motions hearing at 41-52.) Following the hearing, the parties carefully crafted a Stipulated Order implementing the Court's ruling in a manner agreeable to both parties. (D.I. 221, Stip. Order Amending Sched. Order, entered August 14, 2007.) That order establishes the following sequence:

1. Claim Construction Order entered;
2. NICE proposes narrowed subset of claims to be asserted at trial within fifteen (15) days of the claim construction Order;
3. Witness Systems has five (5) days to object to NICE's proposed narrowing as insufficient;

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Kyle Wagner Compton, filed contemporaneously herewith.

[2] NICE failed to attach the "Exhibit A" referenced in this amended set of responses, so it is not included in this Exhibit either.

[3] Prior to the claim construction hearing, the parties reached compromise constructions on two of the disputed claim terms. (D.I. 184.)

3

      4. The Court shall enter an order on NICE's proposed narrowing of claims to be asserted at trial;
      5. Initial expert reports served thirty (30) days after the Court's narrowing order;
      6. Responsive expert reports due thirty (30) days after initial reports; and
      7. Expert depositions take place.

(*Id.*)

Apparently realizing that its own failure to narrow this case before claim construction has likely delayed the Court's claim construction ruling far beyond the July 24 date by which the Court previously hoped to issue it (*see* Ex. C at 46-48), NICE wrote to the Court on September 28, 2007, stated it was withdrawing twenty-nine (29) claims (although the real number was twenty-eight (28)[4]) "in advance of the date required in the August 14, 2007 Stipulated Order Amending Scheduling Order (D.I. 221, ¶ 1a), and will make every effort to further narrow the claims at issue ahead of the timetable provided in that Order." (D.I. 230.) NICE also stated that as a result of its narrowing of specified claims, "no construction of claims contained therein is required." (*Id.*) NICE failed, however, to specify which disputed claim terms it contends no longer require construction, leaving Witness Systems and the Court to guess which claim construction disputes remain to be resolved. In addition, NICE has failed to provide any further narrowing, and the claim construction order which will trigger the sequence of events set forth in the Amended Scheduling Order has not yet issued. Although NICE has now withdrawn all of the previously asserted claims of the '079 patent, nine (9) patents and forty-two (42) asserted claims remain in the case.

---

[4] Among the claims NICE purported to withdraw were claims 5 and 6 of the '079 patent. However, NICE had already withdrawn claim 5 with its March 2 response to Witness Systems' contention interrogatories, in which NICE stated it was only asserting claim 6. (Ex. A.) As a result, NICE September 28 letter only withdrew twenty-eight (28) claims (not twenty-nine (29)), leaving a total of forty-two (42) remaining asserted claims.

NICE also has not provided any meaningful narrowing of its infringement contentions. The claim charts NICE provided with its December 27, 2006 initial response to Witness Systems' contention interrogatories identified ten (10) different accused products. That list later exploded to *seventy-six (76)* Witness Systems products and numerous versions of each—in one case accusing ninety-six (96) versions of the same product. (Ex. B.) All told, NICE now contends that seven hundred and sixty four (764) identifiable versions of seventy-six (76) Witness Systems products infringe the forty-two (42) remaining claims at issue. NICE has not, however, specified which of the 76 accused Witness Systems products, and 764 accused versions, NICE contends infringes each of the 42 remaining claims. NICE has never provided a claim chart with an element-by-element comparison of each of the now-asserted claims against the numerous Witness Systems products and versions NICE now accuses of infringing. As a result, Witness Systems and the Court are again left to guess which of the hundreds of accused products and versions NICE contends infringe the 42 still-asserted claims of the 9 remaining patents.

As this case is currently staged, Witness Systems would be required to submit expert reports concerning the invalidity of all forty-two (42) claims still asserted across nine (9) remaining patents, and non-infringement expert reports on up to *32,088* different potential infringement scenarios.[5] Such a large, complex, and unwieldy case cannot be fairly tried to a jury over five days in January. As a result, the current sequence requiring NICE to narrow its claims after the Court issues its claim construction ruling should be maintained. Because NICE's failure to do so thus far has required the Court to review and construe far more claims than will

---

[5] (764 product versions) x (42 asserted claims) = (32,088 potential infringement cases).

be at issue in the trial, thereby delaying the Court's claim construction ruling, the current January trial date is unworkable and the Court should postpone the trial to a date that will allow claim construction, claim narrowing, expert reporting, expert depositions and trial to proceed in an efficient and reasonable manner.

## III.     ARGUMENT

### A.     NICE Cannot Present Forty-Two Claims at Trial.

Although NICE's withdrawal of twenty-eight claims—leaving forty-two at issue—represents a small step in the right direction, NICE still has not narrowed the asserted claims sufficiently for trial as required by the Amended Scheduling Order. This Court has previously addressed the numbers of patents, claims, and accused products appropriate for patent infringement trials. Based on that guidance, NICE must narrow and focus its case far more than it has to date before this case can be tried. For example, in *Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, this Court ordered the plaintiff to limit its case to ten (10) asserted claims and five (5) asserted products, down from ninety (90) claims across eight (8) patents. Civ. A. No. 04-0038-JJF, 2005 WL 2304190 (D. Del. Sept. 20, 2005). Although the Court recognized that those limits may be "arbitrary," they were nevertheless "appropriate from the viewpoint of the typical patent litigation." *Id.* Similarly, this Court has limited a plaintiff in a four-patent case to seven asserted claims and four groups of accused products. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, No. 04-1371-JJF, 2006 WL 2590884 (D. Del. Sept. 8, 2006).

Other courts have also limited plaintiffs to far fewer asserted claims than the forty-two (42) claims still asserted here. In *Reroof America, Inc. v. United Structures of America, Inc.*, the Federal Circuit affirmed the propriety of limiting the plaintiff to one claim from each of five

6

asserted patents. Nos. 98-1378, 98-1430, 1999 WL 674517, *4-*6 (Fed. Cir. Aug. 30, 1999). According to the Federal Circuit, the patentee must establish, at a minimum, that being forced to narrow its case causes it prejudice. Finding no prejudice, the *Reroof America* court instead noted that the greater risk of prejudice flows from allowing too many, not too few claims:

> Not having the opportunity to "impress" a jury by presenting a large number of claims, however, does not constitute legally cognizable prejudice. If anything, the risk that a jury will be unduly influenced by the mere number of claims presented by the plaintiff is a justification for a court's attempting to limit the number of claims tried.

*Id.* at *6. Indeed, a plaintiff may even be limited to less than one claim per patent-in-suit. *See e.g., Ronald A. Katz Tech. Licensing, L.P. v. Citibank*, No. 5:05-CV-142-DF at 2 (E.D. Tex. Aug. 1, 2006) (attached as Ex. D) (proposing to limit plaintiff to ten representative claims out of the 850 claims from twenty-two patents originally asserted and noting, "[T]en claims at any one trial is about all the Court, the staff, and the jury can endure" in a two-week trial).[6]

### B. NICE Has Not Shown Good Cause to Modify the Sequence Established in the Scheduling Order.

Although the Federal Rules allow modifications of the Scheduling Order upon a showing of "good cause," NICE's Motion does not attempt to establish good cause warranting the upheaval of case sequence it seeks. FED. R. CIV. P. 16(b). "Good cause" can only be found where "the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault . . . ." 3 MOORE'S FEDERAL PRACTICE § 16.14[b] (2003). "Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause." *Olgyay v. Soc'y for Envtl. Graphic Design*,

---

[6] The parties in *Katz* ultimately agreed (with the Court's blessing) to proceed on eighteen asserted claims until claim construction, at which point further narrowing might occur. *Id.* at 3, 6.

7

Inc., 169 F.R.D. 219, 220 (D.D.C. 1996). Because the current situation is entirely the result of NICE's failure to identify the claims it intends to present at trial, NICE cannot show good cause.

### C. Proceeding with Expert Reports before NICE Focuses its Case Is a Waste of Resources.

NICE already has squandered valuable resources of the Court and the parties by pursuing its "kitchen sink" litigation approach. By accusing the vast majority of products sold by Witness Systems over the past decade and beyond of infringing scores of asserted claims, NICE has unnecessarily increased the scope of discovery, including the production by Witness Systems alone of over six million pages of responsive documents. NICE's scattershot approach also forced the Court to consider nearly forty (40)[7] disputed claim terms during claim construction, many of which likely appear in claims that NICE will never assert at trial.

With the present motion, NICE seeks to perpetuate this pattern of inefficiency by forcing Witness Systems to prepare and serve expert reports on the invalidity of 42 still-asserted claims—many more than it can reasonably present at trial. NICE also wants to force expert discovery to proceed without the benefit of a claim construction ruling from the Court—contrary to the terms of the Amended Scheduling Order that were painstakingly negotiated by the parties at the urging of the Court.

Not only would expert discovery at this time cover an unnecessary number of claims and issues, it would ensure that Witness Systems could not conduct a meaningful deposition of NICE's infringement expert. The Federal Rules of Civil Procedure limit depositions to "one day

---

[7] Although the parties addressed forty-one (41) disputed claim terms at the claim construction hearing, NICE's recent withdrawal of all previously asserted claims of the '079 patent, eliminates the need to construe the two disputed claim terms of the '079 patent.

8

of seven hours." FED. R. CIV. P. 30(d)(2). Consequently, Witness Systems will have only seven hours to question NICE's infringement expert on the full extent of his opinions regarding all of the asserted claims and accused products. By refusing to specifically identify a reasonable number of claims to be presented at trial, NICE will prevent Witness Systems from conducting any meaningful questioning about the validity or infringement of any of the asserted claims, much less all of them. Even if every minute of an expert's deposition were focused on the asserted claims (and no time spent on the expert's background, qualifications, etc.), Witness Systems would have only ten minutes to probe the expert's opinion regarding each of the remaining 42 claims, and potentially tens of thousands of alleged infringement scenarios.

      **D.**    **NICE's Proposed Schedule Is Unworkable.**

NICE's proposed schedule sets the date for exchange of initial expert reports for November 9, 2007 (the same day it asked that this motion be heard), with responsive expert reports to be exchanged on November 26 (the Monday after Thanksgiving). In contrast, Witness Systems believes the current Scheduling Order properly sequences the remaining events necessary to prepare this case for trial. Substantial narrowing should follow claim construction, followed by expert reports and depositions. Only then, after the case has finally been focused and framed, should it be presented to a jury.

      **E.**    **NICE's Failure to Focus its Case Requires Modification of the Current Trial Date.**

Because the sequence of events memorialized in the current Scheduling Order should remain intact, as set forth above, the delay caused by NICE's failure to focus its case earlier renders the rapidly approaching trial date of January 14, 2008 unworkable. For example, if a claim construction order issued today, the parties would still be in the midst of expert reports and depositions by the time of trial, even assuming the upcoming holidays did not interfere too

9

greatly with expert availability for those tasks. Similarly, the Court has set the pre-trial conference for December 6, 2007. Conducting a pre-trial conference before the Court or Witness Systems knows which claims NICE intends to assert, which products it intends to accuse, what the claims mean or what the experts will say, makes little sense.

NICE's proposed solution to the predicament it created is again to force Witness Systems and the Court to waste vast resources by serving expert reports, conducting expert depositions, and preparing for trial without knowing what the disputed claim terms mean or which claims will be asserted against which products. Instead, the Court should maintain the current requirements for NICE to narrow its asserted claims after claim construction to a number appropriate for trial, followed by expert reports and depositions, and then trial. If the trial date must be postponed to accommodate this reasonable sequence, NICE should not be heard to complain since any such delay would be solely the result of NICE's own failures to focus its case earlier, and thus good cause exists to modify the scheduled trial date

## IV.   CONCLUSION

For the foregoing reasons, NICE's Motion to Restore to the Scheduling Order Dates Certain for the Exchange of Expert Reports (D.I. 235) should be denied, and the sequence established by the Court's August 14, 2007 Stipulated Order Amending Scheduling Order (D.I. 221) should be maintained. Moreover, the current trial date of January 14, 2007 should be postponed to allow expert reports and depositions to proceed after claim construction and appropriate narrowing has occurred.

Dated: October 30, 2007                     FISH & RICHARDSON P.C.


By: */s/ Kyle Wagner Compton*
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware 19899-1114
Telephone: (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2007, I electronically filed with the Clerk of Court the foregoing **DEFENDANT WITNESS SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO RESTORE TO THE SCHEDULING ORDER DATES CERTAIN FOR THE EXCHANGE OF EXPERT REPORTS** using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel. In addition, the filing will also be sent via hand delivery.

| | |
|---|---|
| Josy W. Ingersoll<br>Melanie K. Sharp<br>Karen E. Keller<br>Mary Dugan<br>Young, Conaway, Stargatt & Taylor, LLP<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899 | *Attorneys for Plaintiffs*<br>*Nice Systems Ltd. and Nice Systems, Inc.* |

I also certify that on October 30, 2007, I have sent by electronic mail and U.S. First Class Mail, the document(s) to the following non-registered participants:

| | |
|---|---|
| Scott G. Lindvall<br>Daniel DiNapoli<br>Joseph M. Drayton<br>Robert R. Laurenzi<br>Jason Frank<br>Steven Chin<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, NY 10022 | *Attorneys for Plaintiffs*<br>*Nice Systems Ltd. and Nice Systems, Inc.* |

                                                          */s/Kyle Wagner Compton*
                                                          Kyle Wagner Compton

12040032.DOC