**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

      *Plaintiffs*,

      v.

WITNESS SYSTEMS, INC.

      *Defendant*.

Civil Action No. 06-311-JJF

**DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF
DEFENDANT WITNESS SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO RESTORE TO THE SCHEDULING ORDER DATES
<u>CERTAIN FOR THE EXCHANGE OF EXPERT REPORTS</u>**

I, Kyle Wagner Compton, declare as follows:

    1.      I am an Associate with Fish & Richardson P.C., counsel for Defendant Witness

Systems, Inc.  I make the following statements based on personal knowledge.

    2.      Attached hereto as Exhibit A is a true and correct copy of  Plaintiffs' Amended

Objections and Responses to Witness Systems' Second Set of Interrogatories, served March

2, 2007.

    3.      Attached hereto as Exhibit B is a true and correct copy of Plaintiffs' Second

Supplemental Objections and Response to Defendant Witness Systems, Inc.'s Interrogatory

13, served June 28, 2007.

    4.      Attached hereto as Exhibit C is a true and correct copy of the transcript of this

Court's July 13, 2007 hearing on the parties' discovery motions.

    5.      Attached hereto as Exhibit D is a true and correct copy of an order of the United

States District Court for the Eastern District of Texas in *Ronald A. Katz Technology

Licensing, L.P. v. Citibank*, No. 5:05-CV-142-DF, dated August 1, 2006.

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.


Executed on October 30, 2007.

/s/ Kyle Wagner Compton
Kyle Wagner Compton (#4693)

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2007, I electronically filed with the Clerk of Court the **DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF DEFENDANT WITNESS SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO RESTORE TO THE SCHEDULING ORDER DATES CERTAIN FOR THE EXCHANGE OF EXPERT REPORTS** using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel. In addition, the filing will also be sent via hand delivery.

Josy W. Ingersoll                    *Attorneys for Plaintiffs*
Melanie K. Sharp                     *Nice Systems Ltd. and Nice Systems, Inc.*
Karen E. Keller
Mary Dugan
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

I also certify that on October 30, 2007, I have sent by electronic mail and U.S. First Class Mail, the document(s) to the following non-registered participants:

Scott G. Lindvall                    *Attorneys for Plaintiffs*
Daniel DiNapoli                      *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

*/s/Kyle Wagner Compton*
Kyle Wagner Compton

12039848.doc

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NICE SYSTEMS, INC., and                    :

NICE SYSTEMS LTD.,                         :

                  Plaintiffs,        :        Civil Action No. 06-311-JJF

         v.                         :

WITNESS SYSTEMS, INC.,                     :

              Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT WITNESS SYSTEMS, INC.'S SECOND SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware Rule 26.1, Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd. (collectively "NICE"), by their attorneys, hereby provide the following amended responses to Defendant Witness Systems, Inc.'s ("Witness" or "Defendant") Second Set of Interrogatories (referred to hereafter individually as "Interrogatory" and collectively as "Interrogatories").

## GENERAL OBJECTIONS

1.      NICE objects to each interrogatory to the extent that it seeks material not reasonably calculated to lead to the discovery of admissible evidence and/or material protected by the attorney-client privilege and/or material protected by the work-product doctrine and/or material which otherwise exceeds the bounds of the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure. The responses given herein by NICE to any of the Interrogatories shall not be deemed to waive any claim of privilege or immunity.

2.      NICE objects to Defendant's instructions to the extent that they purport to vary NICE's rights and obligations under the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

3.      NICE objects to any discovery propounded in bad faith, including but not limited to the improper purpose of unduly burdening or harassing NICE, or otherwise improperly and intentionally exceeding the limitations of the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

4.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that is vague and/or ambiguous.

5.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which calls for information already in Defendant's possession or within the public domain.  Information in the public domain or in Defendant's possession that may be responsive to an interrogatory is as readily available to Defendant as such information is to NICE.

6.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which seeks disclosure of trade secrets, confidential, proprietary or other sensitive information of either NICE or a third party.

7.      To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that attempts to obligate NICE to conduct anything other than a reasonable search for the information sought.  NICE objects to each and every Interrogatory to the extent that it demands "each," "every" or "all" facts, circumstances, communications or persons falling within particular categories, because such demand will cause

2

undue burden and expense.  NICE will undertake a reasonable search to identify available information requested in the Interrogatories.

8.     To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's interrogatories which seeks information related to events and occurrences which took place subsequent to the date of the complaint on the grounds that such requests are overbroad, unduly burdensome and beyond the scope of permissible discovery in that such information is not reasonably calculated to lead to the discovery of admissible evidence.

9.     NICE's responses to Defendant's Interrogatories may not be complete because discovery in this matter is ongoing.  NICE is not limited by its responses herein.  If NICE discovers additional responsive information to Defendant's Interrogatories, NICE will provide such additional information in a supplemental response.

10.     NICE objects to each and every Interrogatory to the extent that it seeks information not within the possession, custody or control of NICE.

11.     NICE reasserts and incorporates its objections to the definitions and instructions to Defendant's First Request for Production of Documents which were part of Defendant's Interrogatories.

12.     NICE specifically objects to Witness' definition of "NICE," "You," and "Your" in definition lettered "A" in the Definitions and Instructions section as overbroad to the extent it seeks to improperly impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

13.     NICE specifically objects to Witness' definition of "Dictaphone" in definition lettered "G" in the Definitions and Instructions section as overbroad to the extent it improperly seeks to impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

Subject to and without waiving the foregoing general objections and any specific objections below, NICE responds as follows to Defendant's Interrogatories:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 13:

Identify each patent claim(s) in each of the Patents-in-Suit NICE contends Witness infringes or has infringed, specifying for each claim which Witness product(s) and/or method(s) NICE contends infringe or have infringed, including whether NICE's contention is based on literal infringement, infringement under the doctrine of equivalents, direct infringement, contributory infringement, and/or infringement by inducement.

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13:

NICE objects to Interrogatory No. 13 to the extent it seeks information protected by the attorney-client or work product privileges. NICE also objects to this interrogatory as premature as discovery is in its infancy stages. NICE further objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that the claims at issue and the theories of infringement that NICE may assert in this action are subject to modification and further development as Witness has yet to produce any

documents or relevant source code. Moreover, NICE is still investigating the facts concerning Witness' infringement of the claims at issue, including Witness' sales through its channel partners such as Avaya and Nortel. Notwithstanding, NICE refers Witness to NICE's Preliminary Infringement Contentions attached as Exhibit A hereto. NICE anticipates reducing the number of claims presently asserted and will do so after the conclusion of document and/or deposition discovery. NICE further responds that its Preliminary Infringement Contentions are subject to modification and/or supplementation as Witness has yet to produce any documents or relevant source code. NICE's infringement analysis as well as the accused products list in Exhibit A are also subject to modification in light of claim constructions agreed to by the parties or ultimately adopted by the Court. NICE has narrowed the claims asserted in this litigation to the following: claim 1 of the '738 Patent, claims 1, 5 and 8 of the '371 Patent; claims 1, 3, 4, 6, 11, 13, 15, 20 and 21 of the '005 Patent; claims 6 and 7 of the '570 Patent; claims 14, 15, 21, 22, 23, 24, 25, 26, 40, 41, 42, 43, 45, 46, 47, 48, 49, 50, 51, and 52 of the '345 Patent; claims 1, 6, 14, 15, 17, 19, 33, 34 and 44 of the '372 Patent, claims 1, 5, 6, 8, 9, 11, 12, and 27 of the '370 Patent; claims 1, 3, 6, 16, 18 and 21 of the '920 Patent; Claim 6 of the '079 Patent; and claims 1, 3, 4, 6, 8, 15, 16, 18, 22, 24 and 29 of the '109 Patent. NICE reserves its right to amend this response.

**INTERROGATORY NO. 14:**

For each patent claim and product or method identified in response to Interrogatory No. 13, identify where each limitation of each claim is found within each accused Witness product(s) or method(s) by providing in the form of a claim chart a limitation-by-limitation comparison of each claim limitation with each accused Witness product(s) or method(s), including a description of the function, way and result for each limitation NICE

contends is infringed under the doctrine of equivalents, and an identification of all facts, circumstances, documents, and evidence that NICE contends supports or undermines NICE's contentions.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 14:

NICE objects to Interrogatory No. 14 to the extent it seeks information protected by the attorney-client or work product privileges.  NICE also objects to this interrogatory as premature as discovery is in its infancy stages.  NICE further objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics.  As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE refers Witness to Exhibit A.  NICE reserves its right to amend this response.

## INTERROGATORY NO. 15:

Identify all limitations in each of the claims identified in Interrogatory No. 13, that NICE contends should be interpreted under 35 U.S.C. § 112, ¶ 6, specifying for each identified limitation all disclosures in the relevant patent's specification of the structure, material or act that NICE contends corresponds to such limitations and equivalents thereof; all references from the prosecution history or extrinsic evidence that NICE relies upon to support its contentions; and a detailed description of each alleged occurrence of such § 112, ¶ 6 claim limitation (or equivalents thereto) in any Witness product or activity that NICE contends infringes or has infringed the Patents-in-Suit.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 15:

NICE objects to Interrogatory No. 15 to the extent it seeks information protected by the attorney-client or work product privileges.  NICE also objects to this interrogatory on the

grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories. NICE further objects to this request as premature. The parties agreed to a claim construction schedule in section 7 of the Scheduling Order dated October 30, 2006. NICE will answer this interrogatory on March 9, 2007 as provided for in the Scheduling Order.

**INTERROGATORY NO. 16:**

Identify all claim terms, phrases, or limitations of the Patents-in-Suit that NICE contends should be construed by the Court, providing for each term, phrase, or limitation NICE's proposed construction and an identification of all intrinsic and extrinsic evidence NICE contends supports or undermines its proposed construction.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 16:**

NICE objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client or work product privilege. NICE additionally objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories. NICE further objects to this request as premature. The parties agreed to a claim construction schedule in section 7 of the Scheduling Order dated October 30, 2006. NICE will answer this interrogatory on March 30, 2007 as provided for in the Scheduling Order.

**INTERROGATORY NO. 17:**

For any Patent-in-Suit that claims priority to an earlier application, identify the priority date to which NICE contends each asserted claim is entitled.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17:**

NICE objects to Interrogatory Number 17 to the extent it seeks information which is protected by the attorney-client or work product privileges. Subject to, and without waiving, the foregoing General and Specific Objections, NICE states, subject to continued due diligence and investigation, that the priority dates for the patents at issue are as follows:

U.S. Patent No. 5,274,738:  December 31, 1991

U.S. Patent No. 5,396,371:  December 21, 1993

U.S. Patent No. 5,819,005:  August 3, 1993

U.S. Patent No. 6,249,570:  June 8, 1999

U.S. Patent No. 6,728,345:  June 8, 1999

U.S. Patent No. 6,775,372:  June 2, 1999

U.S. Patent No. 6,785,370:  June 8, 1999

U.S. Patent No. 6,870,920:  June 2, 1999

U.S. Patent No. 6,959,079:  February 14, 2000

U.S. Patent No. 7,010,109:  August 28, 2000

NICE reserves its right to amend this response.

**INTERROGATORY NO. 18:**

For each claim of the Patents-in-Suit, identify all facts and circumstances surrounding the conception and reduction to practice and/or development of the alleged invention, including an identification of all persons involved with and/or who have knowledge about the conception, reduction to practice and/or development; the date(s) NICE contends each alleged invention was conceived and actually reduced to practice; and an identification of all documents, things, and individuals NICE contends can corroborate each such date of conception and actual reduction to practice.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 18:**

NICE objects to Interrogatory No. 18 to the extent it seeks information that is protected by the attorney-client or work product privilege. NICE also objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories. NICE further objects to the phrase "surrounding the conception and reduction to practice and/or development of the alleged invention" as vague, ambiguous and overly broad.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that the persons involved in the conception, reduction to practice and/or development of the Patents-in-Suit were previously disclosed in NICE's Responses and Objections to Witness's First Set of Interrogatories, dated November 1, 2006, specifically in response to Interrogatory No. 5. In addition, the inventors of each of the patents at issue were involved with and/or have knowledge about the conception, reduction to practice and/or development of the patents at issue and their underlying inventions. Presently, NICE states, subject to continued investigation, that each of the patents at issue was conceived on its respective priority date provided in response to Interrogatory No. 18 and reduced to practice upon their date of issuance. NICE relies on the each of the patents at issue to corroborate the aforementioned dates of conception and reduction to practice. NICE reserves its right to amend this response.

**INTERROGATORY NO. 19:**

Identify each instance of marking NICE contends is or was sufficient to provide notice to Witness under 35 U.S.C. §287 for each of the Patents-in-Suit, including an identification of each product NICE contends is or was marked with one or more of the patent numbers of the Patents-in-Suit; the date(s) during which NICE contends each instance or

marking took place; the details concerning how and where on each product such marking is or was placed; and all of the facts, circumstances, documents, and evidence (including knowledgeable witness) regarding such marking.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 19:

NICE objects to Interrogatory No. 19 to the extent it seeks information that is protected by the attorney-client privilege, consists of attorney work-product, or is otherwise protected from disclosure. NICE further objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that NICE is still investigating the facts relating to the marking of Dictaphone products it acquired in 2005. NICE intends to provide all relevant, non-privileged information regarding the patent marking of those products upon the completion of its investigation. With regard to its products, NICE responds as follows:

| Product | Patents listed on Product Marking | Dates of Product Marking |
|---------|-----------------------------------|--------------------------|
| Voice Over IP Logger, NICE Log | U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; and 6,959,079 | January 2006 to present |
| NICE Perform Applications Suite | U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; and 6,959,079 | January 2006 to present |
| NICE Perform Applications Suite | U.S. Patent No. 7,010,109 | March 2006 to present |
| NICE Perform Compliance Suite | U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; 6,959,079; and 7,010,109 | March 2006 to present |

In addition to the above response, NICE refers Witness to documents bates numbered STS017145-46 and NSDE 004120-004122 which are copies of product markings. Nothing in this response should be deemed an admission that prior markings do not exist. If NICE becomes aware of prior markings, it will produce or identify such markings. NICE reserves its right to amend this response.

Dated: March 2, 2007

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

/s/ *Karen E. Keller*
Josy W. Ingersoll (#1088)
Melanie K.Sharp (#2501)
Karen E. Keller (#4489)

OF COUNSEL:
Scott G. Lindvall
Daniel P. DiNapoli
Joseph M. Drayton
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 1899-0391
(302) 571-6600
kkeller@ycst.com

*Attorneys for NICE Systems, Inc. and NICE
Systems Ltd.*

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on March 2, 2007, I caused copies of the foregoing document to be served by hand delivery and electronic mail upon the following counsel of record:

>William J. Marsden, Jr., Esquire (marsden@fr.com)
>Kyle Wagner Compton, Esquire (kcompton@fr.com)
>Fish & Richardson, PC
>919 N. Market Street, Suite 1100
>Wilmington, DE 19801

I further certify that on March 2, 2007, I caused a copy of the foregoing document to be served upon the following in the manner indicated:

>**BY ELECTRONIC MAIL**
>Noah C. Graubart, Esquire (graubart@fr.com)
>Nagendra Setty, Esquire (nsetty@fr.com)
>Daniel A. Kent, Esquire (kent@fr.com)
>Christopher O. Green, Esquire (green@fr.com)
>John Hamann, Esquire (hamann@fr.com)
>Fish & Richardson, PC
>1180 Peachtree Street, NE, 21st Floor
>Atlanta, GA 30309

>YOUNG CONAWAY STARGATT & TAYLOR, LLP

>*/s/ KAREN E. KELLER*
>Karen E. Keller (No. 4489)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19899-0391
>(302) 571-6600
>kkeller@ycst.com

>*Attorneys for NICE Systems, Inc. and NICE Systems Ltd.*

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC., a Delaware Corporation, and<br>NICE SYSTEMS, LTD., an Israeli Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WITNESS SYSTEMS, INC, a Delaware Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)    Civil Action No. 06-311-JJF<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' SECOND SUPPLEMENTAL OBJECTIONS
AND RESPONSE TO DEFENDANT
WITNESS SYSTEMS, INC.'S INTERROGATORY 13**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules

of the District of Delaware Rule 26.1, Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd.

(collectively "NICE"), by their attorneys, hereby provide the following supplemental responses

to Defendant Witness Systems, Inc.'s ("Witness" or "Defendant") Second Set of Interrogatories

(referred to hereafter individually as "Interrogatory" and collectively as "Interrogatories").

These supplemental responses supersede NICE's prior objections and responses to Witness's

Second Set of Interrogatories.

**GENERAL OBJECTIONS**

1.     NICE objects to each interrogatory to the extent that it seeks material not

reasonably calculated to lead to the discovery of admissible evidence and/or material protected

by the attorney-client privilege and/or material protected by the work-product doctrine and/or

material which otherwise exceeds the bounds of the Local Rules of the District of Delaware

and/or the Federal Rules of Civil Procedure.  The responses given herein by NICE to any of the

Interrogatories shall not be deemed to waive any claim of privilege or immunity.

1

2.     NICE objects to Defendant's instructions to the extent that they purport to vary NICE's rights and obligations under the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

3.     NICE objects to any discovery propounded in bad faith, including but not limited to the improper purpose of unduly burdening or harassing NICE, or otherwise improperly and intentionally exceeding the limitations of the Local Rules of the District of Delaware and/or the Federal Rules of Civil Procedure.

4.     To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that is vague and/or ambiguous.

5.     To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which calls for information already in Defendant's possession or within the public domain.  Information in the public domain or in Defendant's possession that may be responsive to an interrogatory is as readily available to Defendant as such information is to NICE.

6.     To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which seeks disclosure of trade secrets, confidential, proprietary or other sensitive information of either NICE or a third party.

7.     To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that attempts to obligate NICE to conduct anything other than a reasonable search for the information sought.  NICE objects to each and every Interrogatory to the extent that it demands "each," "every" or "all" facts, circumstances, communications or persons falling within particular categories, because such demand will cause

2

undue burden and expense.  NICE will undertake a reasonable search to identify available information requested in the Interrogatories.

8.    To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's interrogatories which seeks information related to events and occurrences which took place subsequent to the date of the complaint on the grounds that such requests are overbroad, unduly burdensome and beyond the scope of permissible discovery in that such information is not reasonably calculated to lead to the discovery of admissible evidence.

9.    NICE's responses to Defendant's Interrogatories may not be complete because discovery in this matter is ongoing.  NICE is not limited by its responses herein.  If NICE discovers additional responsive information to Defendant's Interrogatories, NICE will provide such additional information in a supplemental response.

10.    NICE objects to each and every Interrogatory to the extent that it seeks information not within the possession, custody or control of NICE.

11.    NICE reasserts and incorporates its objections to the definitions and instructions to Defendant's First Request for Production of Documents which were part of Defendant's Interrogatories.

12.    NICE specifically objects to Witness' definition of "NICE," "You," and "Your" in definition lettered "A" in the Definitions and Instructions section as overbroad to the extent it seeks to improperly impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

3

13.    NICE specifically objects to Witness' definition of "Dictaphone" in definition lettered "G" in the Definitions and Instructions section as overbroad to the extent it improperly seeks to impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

Subject to and without waiving the foregoing general objections and any specific objections below, NICE responds as follows to Defendant's Interrogatories:

## SPECIFIC OBJECTIONS AND RESPONSES

## INTERROGATORY NO. 13:

Identify each patent claim(s) in each of the Patents-in-Suit NICE contends Witness infringes or has infringed, specifying for each claim which Witness product(s) and/or method(s) NICE contends infringe or have infringed, including whether NICE's contention is based on literal infringement, infringement under the doctrine of equivalents, direct infringement, contributory infringement, and/or infringement by inducement.

## SUPPLEMENTAL OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13:

NICE objects to Interrogatory No. 13 to the extent it seeks information protected by the attorney-client or work product privileges.  NICE also objects to this interrogatory as premature as discovery is in its infancy stages.  NICE further objects to this interrogatory on the grounds that it is compound and pertains to a number of distinct topics.  As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that the claims at issue and the theories of infringement that NICE may assert in this action are subject to modification and further development as Witness has yet to produce any documents or relevant source code.  Moreover, NICE is still investigating the facts concerning

4

Witness' infringement of the claims at issue, including Witness' sales through its channel partners such as Avaya and Nortel.    Notwithstanding, NICE refers Witness to NICE's Preliminary Infringement Contentions attached as Exhibit A hereto.    NICE anticipates reducing the number of claims presently asserted and will do so after the conclusion of document and/or deposition discovery.    NICE further responds that its Preliminary Infringement Contentions are subject to modification and/or supplementation as Witness has yet to produce any documents or relevant source code.    NICE's infringement analysis as well as the accused products list in Exhibit A are also subject to modification in light of claim constructions agreed to by the parties or ultimately adopted by the Court.    NICE has narrowed the claims asserted in this litigation to the following:    claim 1 of the '738 Patent, claims 1, 5 and 8 of the '371 Patent; claims 1, 3, 4, 6, 11, 13, 15, 20 and 21 of the '005 Patent; claims 6 and 7 of the '570 Patent; claims 14, 15, 21, 22, 23, 24, 25, 26, 40, 41, 42, 43, 45, 46, 47, 48, 49, 50, 51, and 52 of the '345 Patent; claims 1, 6, 14, 15, 17, 19, 33, 34 and 44 of the '372 Patent, claims 1, 5, 6, 8, 9, 11, 12, and 27 of the '370 Patent; claims 1, 3, 6, 16, 18 and 21 of the '920 Patent; Claim 6 of the '079 Patent; and claims 1, 3, 4, 6, 8, 15, 16, 18, 22, 24 and 29 of the '109 Patent.    NICE reserves its right to amend this response.

NICE further responds that it is in the process of reviewing the more than 5 million pages that Witness produced in this litigation.    To the extent Witness can provide bates ranges of the relevant technical documents for each version of the Accused Products, NICE will be able to accelerate any supplementation of this Interrogatory response.    NICE further responds that Witness's infringing products include, but are not limited to, all versions of the following:

- The Accused Products;

- Audio Server versions 6.0* and 6.1 (four releases)*;

- Avaya Communication Manager*;

- Cisco IP Contact Center (integration project with Witness)*;

- Central Archive Manager 6.0* and 6.0.1*;

- Contact Adapter 7.1*;

- Contact Archive 7.1*;

- Contact Audio Server 7.1*;

- ContactStore 7.0.0*, 7.0.1*, 7.0.2*, 7.1*, 7.1.0.43*, 7.1.0.44*, 7.1.0.47*, 7.2*, 7.2.1*, 7.2.2*, 7.2.3* and 7.2.4*;

- ContactStore for Communication Manager 7.1, 7.2 and 7.7*;

- ContactStore IP 7.1* and 7.2*;

- Contact Store SC 7.1*;

- Contact Viewer 1.0.0*, 1.0.1*, 1.0.10*, 1.0.11*, 1.0.12*, 1.0.13*, 1.0.14*, 1.0.15*, 1.0.16*, 1.0.17*, 1.0.18*, 1.0.19*, 1.0.2*, 1.0.3*, 1.0.4*, 1.0.5*, 1.0.6*, 1.0.7* and 1.0.8*;

- E 1000 1V47*, 1V76D*, 1V82*, 1V83*, 1V84*, 1V85*, 1V85B*, 1V85C*, 1V85D*, 1V85E*, 1V85F*, 2V00*, 2V00-08*, 2V01*, 2V01B*, 2V01E*, 2V01F*, 2V01G*, 2V01H*, 2V01K*, 2V02*, 2V02R15*, 2V02SR03*, 2V02SR04*, 2V03*, 2V03A*, 2V04A*, 2V04R40*, 2V05*, 2V05A*, 2V05B*, 2V05C*, 2V05D*, 2V05E*, 2V05EP*, 2V05F*, 2V06*, 2V06R15*, 2V07C34*, 2V07M05*, 2V07R07*, 2V07R08*, 2V07R15*, 2V07R16*, 2V07R19*, 2V07R20*, 2V07R21*, 2V07R22*, 2V07R25*, 2V07R26*, 2V07R27*, 2V07R28*, 2V07R30*, 2V07R31*, 2V07R33*, 2V07R34*, 2V07R36*, 2V07R37*, 2V07R38*, 2V07R39*, 2V08*, 2V09R03*, 2V09R04*, 2V07R05*, 2V10R04*, 3.0.33*, 3.0.34*, 3.00.44*, 3.1.12*, 3.1.16*, 3.1.17*, 3.1.18*, 3.1.22*, 3.1.24*, 3.1.27*, 3.1.28*, 3.1.29*, 3.1.32*, 3.1.33*, 3.1.35*, 3.1.36*, 3.2.08*, 3.2.16*, 3V00R22*, 3V00R25*, 3V00R26*, 9V12*, 9V12A*, 9V12B*, 9V12C*, 9V12E*, 9V12F*, 9V12G*, 9V13*, 9V14* and 9V20*;

- E1000Win 1-01-10*, 1-01-11*, 1-01-12*, 1-01-2*, 1-01-3*, 1-01-4*, 1-01-5*, 1-01-6*, 1-01-7*, 1-01-7MP*, 1-01-8*, 1-01-9*, 1-03*, 1V01* and 1V01L*;

- E1048*;

6

- E200*;

- E500*;

- Eclipse 2.2*, 3*, 1.21.26*, 1.21.27*, 2.0.2.69*, 2.0.2.69* and 2.02.69* Churchills Extra Work*, 2.01.03*, 2.01.04*, 2.01.06*, 2.01.15*, 2.01.16*, 2.01.17*, 2.01.19*, 2.01.21*, 2.01.24*, 2.01.25*, 2.01.28*, 2.01.29*, 2.01.30*, 2.01.32*, 2.01.33*, 2.01.34*, 2.01.35*, 2.01.36*, 2.01.38*, 2.01.39*, 2.01.40*, 2.01.42*, 2.01.44*, 2.01.45*, 2.01.47*, 2.01.48*, 2.01.49*, 2.02.02*, 2.02.03*, 2.02.04*, 2.02.08*, 2.02.11*, 2.02.12*, 2.02.13*, 2.02.14*, 2.02.15*, 2.02.17*, 2.02.18*, 2.02.19*, 2.02.20*, 2.02.23*, 2.02.25*, 2.02.26*, 2.02.27*, 2.02.28*, 2.02.29*, 2.02.30*, 2.02.32*, 2.02.33*, 2.02.34*, 2.02.35*, 2.02.36*, 2.02.37*, 2.02.39*, 2.02.43*, 2.02.49*, 2.02.50*, 2.02.52*, 2.02.56*, 2.02.58*, 2.02.59*, 2.02.61*, 2.02.64* Barclays Stockbrokers*, 2.02.65 Colonnade new format*, 2.02.66 BSL Mods and Colonnade*, 2.02.67 Compilation Optimisation*, 2.02.68 Churchills Modifications*, 2.1*, 2.1.18*, 2.1.31*, 2.1.41*, 2.2.05*, 2.2.05* and 2.2.10*;

- Eclipse eWComms DLL*;

- Eclipse MultiSock 1.21.26*;

- Eclipse Record Control DLL 2*, 1.21.26*, 2.0.0.0*, Version 5* and Version 6*

- E-Learning 4.6.0*, 4.6.1*, 4.6.2*, 4.7.0*, 4.7.1*, 7.6.0*, 7.6.1*, 7.6.2*, 7.7.0* and 7.7.1*;

- Enterprise Reporting 2.1.0*, 2.2.1*, 2.2.2*, 7.6.0*, 7.6.1*, 7.6.2*, 7.7.0* and 7.7.1*;

- eQuality Analysis version 3.0*;

- eQuality Balance 5.x, 5.2, 5.2.8*, 5.2.9*, 6.x, 6.0, 6.3.1, 6.3.11*, 6.3.12*, 6.3.13*, 6.3.14*, 6.4, 6.4.0*, 6.4.1*, 6.4.10*, 6.4.11*, 6.4.12*, 6.4.2*, 6.4.3*, 6.4.4*, 6.4.5*, 6.4.6*, 6.4.7*, 6.4.8*, 6.4.9*, 6.5.0*, 6.5.1*, 6.5.2*, 6.5.3*, 6.5.4*, 6.5.5, 6.5.6*, 7.6.0*, 7.6.1*, 7.6.2*, 7.7.0* and 7.7.1* and R6*;

- eQuality Call Miner*;

- eQuality Connect 2.0*, 2.1*, 2.1.1*, 2.1.2*, 2.2.0*, 2.2.1*, 2.2.2*, 2.2.3*, 2.2.4*, 2.3.0*, 2.3.1*, 2.3.2*, 2.3.3*, 2.3.4*, 2.4.0*, 2.4.1*, 2.4.2*, 2.4.3*, 2.5.0*, 2.5.1*, 2.5.2*, 2.6.0*, 2.6.1*, 3.0.0*, 3.0.1*, 3.0.2*, 3.0.3*, 3.0.4*, 3.0.5*, 3.0.6*, 3.0.7*, First release*, Major update 1*, Major update 2* and Major update 3*;

- eQuality Contact Adapters 7.2*, 7.4.0*, 7.7.0* and 7.7.1*;

- eQuality Contact Archive 7.2*, 7.4*, 7.6.1*, 7.6.2*, 7.7.0* and 7.7.1*;

7

- eQuality ContactStore IP 7.1*, 7.2*, 7.2.1*, 7.3*, 7.4.0*, 7.4.1* and 7.4.2*;

- eQuality ContactStore IP (Enterprise Management Tool) 7.4.0*, 7.4.1* and 7.4.2*;

- eQuality ContactStore*;

- eQuality ContactStore PLUS*;

- eQuality Contact Viewer 7.1*, 7.2*, 7.3*, 7.3.1*, 7.4.0*, 7.6.0*, 7.6.1*, 7.6.2*, 7.7.0* and 7.7.1*;

- eQuality ContactStore Replay Station 7.1.2*;

- eQuality ContactStore SC 7.2*;

- eQuality Discover*;

- eQuality eWare 7.1.1* and 7.1.2*;

- eQuality Evaluation*;

- eQuality Express 7.1*, 7.2*, 7.3* and 7.3.1*;

- eQuality Focus*;

- eQuality Now versions 3.1*, 3.2*, 3.3* and 4.0*;

- eQuality Producer 2.0*;

- eQuality Vision*;

- eQuality Visualization 7.2*, 7.6.0*, 7.6.2*, 7.7.0* and 7.7.1*;

- eQuality Web Observer 7.2*, 7.4*, 7.7.0* and 7.7.1*;

- ES148 2V00R03*, 2V00R14* and 3.0.0.3*;

- eWare / eWare II 1.0.13*, 1.0.14*, 1.0.15*, 1.0.18*, 2.0.14*, 2.00 Release 11*, 2.2.0 build 2*, 5.0.0.10*, 5.0.0.6*, 5.1*, 5.2.0.1*, 5.2.1*, 5.2.2*, 6*, 6.0.1*, 6.1 Build 13*, 6.2 Build 5*, 6.3*, 6.4 Build 7 (RC6)*, 6.4.1*, 7.1 Build 6*, 7.1 Build 8*, Build1*, Build2*, Eware 2.2*, Nokia* and V6 Build 9*;

- eWare Replay 1.0.014*, 1.0.015*, 1.0.016*, 1.0.017*, 1.0.017a* and 1.0.018*;

- Eyretel Contact Archive*;

8

- Eyretel IP Recording Suite*;

- Eyretel MediaStore*;

- Eyretel MediaStore IP 3.1*;

- Eyretel Screen Recording 6* and 6.1*;

- Impact 360**;

- Impact 360 Recorder 7.6.0*, 7.6.1*, 7.6.2*, 7.7.0* and 7.7.1*;

- Insight/Witness Contact Viewer 6* and 6.1, 7*;

- Media Store 4.0.1A*, 4.0.1D*, 4.0.2A*, 4.0.2D*, 4.0.3A*, 4.0.3D*, 4.0.4A*, 4.0.4D*, 4.0.5A*, 4.0.5D*, 4.0.7A*, 4.0.7D*, 4.00A.92*, 4.1.0A*, 4.1.0D*, 4.1.1A*, 4.1.1D*, 4.1.2A*, 4.1.2D*, 4.1.3A*, 4.1.3D*, 4.1.8A*, 4.1.8D*, 4.2*, 5*, 5.1*, 5.2.0*, 5.2.1*, 5.2.2*, 5.2.3*, 5.6.01*, 5.6.02*, 5.6.10*, 6.0.0*, 6.0.1*, 6.0.2*, 6.1.0*, 6.1.1*, 6.1.3*, 6.1.4*, 6.1.5*, 6.2.0*, 6.2.1* and 6.3.0*;

- Media Store IP 3.0.19*, 3.0.20*, 3.0.21*, 3.1*, 3.1.1 RC3*, 3.1.1 RC5*, 7.1 RC5* and 7.1.5*;

- Media Store Micro 5.2* 6.2.1*, Digital 6.2.0*, Digital Micro 6.0.0 Build 1752*, Digital Micro 6.0.0 Build 1759*, Digital Micro 6.0.0 Build 1766*, Digital Micro 6.0.0 Build 1802*, Digital Micro 6.0.1 Build 1812*, Digital Micro 6.0.1 Build 1852*, Digital Micro 6.0.1 Build 1869*, Digital Micro 6.0.1 Build 1893*, Digital Micro 6.0.1 Build 1897*, Digital Micro 6.0.1 Build 1901*, Digital Micro 6.0.1 Build 1925*, Digital Micro 6.0.1 Build 1927*, Digital Micro 6.0.2 Build 2001*, Digital Micro 6.0.2 Build 2027*, Digital Micro 6.1.4 Build 2307*, Digital Micro 6.2.1 Build 2326*, Digital Micro 6.2.1 Build 2329*, Digital Micro 6.2.1 Build 2344*, Hercules 6.0.0 Build 1657*, Hercules 6.0.0 Build 1751*, Hercules 6.0.1 Build 1786*, Hercules 6.0.1 Build 1811*, Hercules 6.0.1 Build 1868*, Hercules 6.0.1 Build 1879*, Hercules 6.0.1 Build 1880*, Hercules 6.0.1 Build 1883*, Hercules 6.0.1 Build 1884*, Hercules 6.0.1 Build 1894*, Hercules 6.0.1 Build 1896*, Hercules 6.0.1 Build 1902*, Hercules 6.0.1 Build 1926*, Hercules 6.0.1 Build 1928*, Hercules 6.0.1 Build 1982*, Hercules 6.0.2 Build 2000*, Hercules 6.0.2 Build 2004*, Hercules 6.0.2 Build 2012*, Hercules 6.2.1 Build 2327*, Hercules 6.2.1 Build 2330*, Hercules 6.2.1 Build 2345*, Hercules5.1 Build 1134*, Hercules5.1 Build 1205*, Hercules5.1 Build 1241*, Hercules5.1 Build 1315*, Hercules5.1 Build 1365* and Hercules5.2 Build 1403*;

- Media Store NT 4.0.1a*, 4.0.1b*, 4.0.1c*, 4.0.3*, 4.0.5*, 4.0.8*, 4.2.0*, 5v0*, 5v1*, 6.1.3*, 6v0*, 6v1*, 6v1.4*, 7.0.1.2*, 7.0.3.0*, 7.0.4.0* and 7_0_1*;

- Media Trader 6*, 6.1*, 6.2*, ITS*, v1.1*, v1.2*, v1.6* and v2.0*;

9

- Media Store SC 6.2*, 6.2.1* and 6.2.2*;

- Performance Analyzer*;

- Performance Mgr/Contact Intelligence*;

- Quality Call/Contact Quality 1.0 SP1*, 1.1 SP1*, 1.1 SP3*, 5.1*, 5.1 Build 82*, 5.1 Build 87* or 5.1 SP0 patch 1*, 5.1 Build 95*, 5.2.1*, 5.2.2*, 6*, 6.1*, 6.2*, 6.3*, 6.4* and Unknown Unit Test Release 5*;

- Quality for Communication Manager 5.3*;

- Recorder Archive Manager*;

- Replay Station--E100pc 2.24.10*, 2.30.2*, 3*, 3.1* and 3v2r6*;

- Replay Studio 6*, 6.1*, 6.2*, 6.3*, 6.4*, 7.1.4* and RSA*;

- Scorecard Application Scorecard 3.3.1 hf_1*, Scorecard 3.3.1*, Scorecard 3.3.2* and Scorecard 3.3.3*;

- Toolbook 8.0*;

- Unify 1.02*, 1.03*, 1.1.2*, 4.2* or V2.0*, 6.0.0.4*, 6.1*, 6.1.1*, 6.1.2*, 6.1.3.0*, 7.0.0.0*, 7.0.0.1*, 7.0.0.10*, 7.0.0.11*, 7.0.0.12*, 7.0.0.14*, 7.0.0.16*, 7.0.0.17*, 7.0.0.2*, 7.0.0.3*, 7.0.0.4*, 7.0.0.5*, 7.0.0.6*, 7.0.0.7*, 7.0.0.8*, 7.0.0.9*, 7.0.1.18*, 7.0.1.19*, 7.0.3*, Unify2 V5.2 build 3* and V5.0*;

- Unify Sources AspectCMISource*, AspectPLayerService*, AspectPortalSource*, AudioServer*, Avaya PDS (Mosaix)*, AvayaCMISource*, CallRetrieval*, Cisco ICM v6*, Cisco ICM v7*, CMPSource*, CTCSource*, CTCSourceV5*, DialogicE1Source*, DigitalInput*, DSESource*, EdgeSource-Old*, EQCONNECTSOURCE*, Ericsson TSAPI*, Genesys*, GeoSource Old (USe CISCO ICM)*, GeoSource2 Old (USe CISCO ICM)*, INDeXCTINtegrator*, IpcSource*, Isdx Acd*, JtapaSource*, LTSBEdgeSource*, MediaTrader*, MELCAS*, MeridianMax*, MQSource*, NokiaDLIU*, NokiaDLIUSource*, Prospect*, RockwellSource*, RS232Source*, RTDISource*, SchedSource*, SDSSource*, selSource*, ServerTCPIP*, Siemens ISDX Source*, Siemens Traderboard*, TAPI Source*, TCPClientSource*, TCPServer*, TelasBas*, TestConsole*, TSAPISource*, TSAPIV6Source*, TwiceAPISource* and VoIP Recorder*;

- Witness ContactStore Communication Manager 7.2 sp 2.0 pre 1*, 7.2 sp 2.1*, 7.2 sp 2.10*, 7.2 sp 2.11*, 7.2 sp 2.12*, 7.2 sp 2.13*, 7.2 sp 2.14*, 7.2 sp 2.15*, 7.2 sp 2.16*, 7.2 sp 2.17*, 7.2 sp 2.18*, 7.2 sp 2.19*, 7.2 sp 2.2*, 7.2 sp 2.3*, 7.2 sp 2.4*, 7.2 sp 2.5*, 7.2 sp 2.6*, 7.2 sp 2.7*, 7.2 sp 2.8*, 7.2 sp 2.9*, 7.2.38*, 7.2.39*, 7.2.40 rc 1*, 7.3 sp 1.4*, 7.3 sp 1.5*, 7.3.10*, 7.3.11*, 7.3.12*, 7.3.13*, 7.3.14*, 7.3.15*, 7.3.16*, 7.3.17*, 7.3.18*, 7.3.19*, 7.3.1b*, 7.3.1e*, 7.3.2*, 7.3.20*, 7.3.21*, 7.3.22*, 7.3.23*, 7.3.24*, 7.3.25*, 7.3.26*, 7.3.27*, 7.3.28*, 7.3.29*, 7.3.3*, 7.3.30*, 7.3.4*, 7.3.5*, 7.3.6*, 7.3.7*, 7.3.8*, 7.3.9*, 7.7.1*, 7.7.2c* and 7.7.3*; and

- Witness Quality for Communication Manager 5.3.0*, 5.3.1*, 5.3.2*, 5.4.0*, 5.4.1* and 5.4.3*

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:

Subject to and without waiving the foregoing general and specific objections, NICE further supplements its answer to interrogatory 13 by inclusion of the items above denoted by one or two asterisks. Those products and versions marked by a single asterisk were listed by Witness in the May 4, 2007 letter from Daniel Kent to Joseph Drayton on "Attachment A – Product/Version List." According to Witness' representatives, Impact 360 (marked by a double asterisk above) is not a "product," but rather is a brand name incorporating various products.

Dated:  June 28, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
Karen E. Keller (No. 4489)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY  10022
(212)836-8000

*Attorneys for Plaintiffs Nice Systems, Inc. and Nice Systems, Ltd.*

12

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on June 28, 2007, I caused a copy of Plaintiffs' Second Supplemental Objections and Response to Defendant Witness Systems, Inc.'s Interrogatory 13 to be served on the following counsel of record in the manner indicated below:

### BY HAND DELIVERY E-MAIL

William J. Marsden, Jr., Esquire
Kyle Wagner Compton, Esquire
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

### BY E-MAIL

Noah C. Graubart (graubart@fr.com)
Nagendra Setty (setty@fr.com)
John Hamann (haman@fr.com)
Daniel A. Kent (kent@fr.com)
Christopher O. Green (cgreen@fr.com)
Fish & Richardson, P.C.
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA  30309

Mary F. Dugan (No. 4704)

13

DB02:6091863.1                                                                065251.1001

# EXHIBIT C

*Nice Systems, Inc., et al.   v.*
*Witness Systems, Inc.*

---

*Hearing*
*July 13, 2007*

---

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 071307~2.TXT, 53 Pages*
*Min-U-Script® File ID: 2207876585*

**Word Index included with this Min-U-Script®**

1
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC., )
et al., )
    Plaintiffs, )
     ) C.A. No. 06-311-JJF
v. )
WITNESS SYSTEMS, INC., )
    Defendant. )

Friday, July 13, 2007
10:14 a.m.
Courtroom 4B
844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
United States District Court Judge
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
BY: MELANIE SHARP, ESQ.
-and-
KAYE SCHOLER
BY: JOSEPH DRAYTON, ESQ.
Counsel for Plaintiff
FISH & RICHARDSON
BY: WILLIAM MARSDEN, ESQ.
BY: DANIEL A. KENT, ESQ.
Counsel for the Defendant

---

1—08:46:46   24—08:48:18          Page 2

[1] **THE COURT:** All right. Let see the [2] folks from Nice and Witness.

[3] **MR. MARSDEN:** William Marsden and [4] Dan Kent for Witness from Fish & Richardson.

[5] **THE COURT:** Good morning.

[6] **MS. SHARP:** Your Honor, Melanie [7] Sharp and Joe Drayton for Nice. I'm from Young [8] Conaway and Joe Drayton is from Kaye Scholer.

[9] **THE COURT:** All right. Good [10] morning.

[11] **MR. KENT:** Good morning, Your Honor.

[12] **THE COURT:** Let's see if we can cut [13] through a little bit of this for you.

[14] **MR. KENT:** Your Honor, if I may, the [15] parties have worked out a few of the issues on [16] witnesses for this motion to compel.

[17] **THE COURT:** Oh.

[18] **MR. KENT:** We just met this morning [19] and confirmed that agreement. There are [20] outstanding issues on Nice Systems' two motions [21] to compel. So I'm not sure if that affects how [22] you might handle the proceedings this morning.

[23] **THE COURT:** Well, I was going to ask [24] you, see you try to balance all your competing

---

1—08:48:22   24—08:49:24          Page 3

[1] contentiousness when you read these kinds of [2] things. And, well, tell me what you think you've [3] agreed to.

[4] **MR. KENT:** All right. In Witness [5] Systems' motion to compel, there were two [6] separate issues. There were 30(b)6 [7] deposition [7] topic issues and then there were two document [8] production issues.

[9] On the Rule 30(b)6 deposition topic [10] issues, Nice has, since we filed the

---

motion, [11] agreed to produce two additional 30(b)6 witnesses [12] on most of the remaining topics. And they've [13] committed to having those witnesses fully [14] prepared and ready to provide testimony on [15] behalf of Nice.

[16] And if they do that, that would [17] satisfy our concern about the 30(b)6 issues, and [18] we would withdraw topics 1, 2, 3, 5, 9 and 29.

[19] On the documents, we've agreed to a [20] limited scope of the Emails that we've requested. [21] And they've agreed to search for those and [22] produce those in a timely fashion as well as the [23] power-point presentations that were identified to [24] us at the recent 30(b)6 deposition of Mr. Rudnick

---

1—08:49:28   24—08:50:26          Page 4

[1] for the first time.

[2] If those are produced to us by the [3] end of the month or they confirm to us that [4] there are no more, then we would consider that issue [5] satisfied as well.

[6] **MR. DRAYTON:** Your Honor, we had a [7] telephone conference yesterday, and I thought [8] there were more issues that Witness was prepared [9] to withdraw from the 30(b)6 witness notice than [10] counsel listed. And I'll just say them.

[11] Counsel can help me out. I had —[12] well, the topics I had were 1, 2, 3 through 7, 9, [13] 11 through 14.

[14] **MR. KENT:** Well, we did have a [15] conversation yesterday. Your Honor, we tried to [16] work some of these issues out. It didn't happen [17] until this morning.

[18] And the topics I gave you this [19] morning are the ones we're agreeing to withdraw. [20] The other ones that Mr. Drayton just mentioned, [21] they already offered a witness on, so we would [22] like to take them up on that.

[23] **MR. DRAYTON:** It's different than [24] the conversation we had yesterday; however, I am

---

1—08:50:32   24—08:51:30          Page 5

[1] a little —

[2] **THE COURT:** Well, okay. Here's what [3] we're going to do. See, I told you you were [4] contentious.

[5] Here's what I'm going to do. I'm [6] going to resolve one motion for you, and then the [7] other two are kind of like cross motions. I'm [8] going to send you outside to work them out.

[9] If you don't work them out, because [10] I can tell you you're going down a path different [11] than I would have given as a decision. I can see [12] that already,[13] So, and I think it's better if you [14] work it out. Did you really mean what you said [15] about them fabricating the two-phase discovery or [16] you sorry

---

about that now?

[17] **MR. KENT:** Well, Your Honor, I'm not [18] quite sure how to describe it other than there [19] was never an agreement. There was never any such [20] agreement to do it in two phases.

[21] They noticed a whole bunch of [22] depositions near the end of discovery. We tried [23] very diligently to get all the depositions [24] scheduled as we could.

---

1—08:51:32   24—08:52:36          Page 6

[1] **THE COURT:** So you never knew about [2] the two-phase agreement, and you think it was [3] just a misunderstanding?

[4] **MR. KENT:** That's the best spin I [5] can put on it, because we never certainly had [6] that understanding.

[7] **THE COURT:** You see you're both — I [8] don't know if you're nervous about the end of [9] discovery or nervous about the beginning of [10] trial. But whichever it is, it would serve your [11] purposes to work it out.

[12] Now, the one motion you can't decide [13] I'm going to decide for you, I'm convinced of, [14] and that is that the documents that are claimed [15] to be inadvertently produced, I find aren't [16] inadvertently produced. And they, in fact,[17] aren't privileged, because I don't find that they [18] contain legal advice.

[19] I find at best they are reported [20] reports of mixed meetings, business maybe with [21] some legal conversation at the meeting. But the [22] fact that the general counsel — is that guy [23] still employed, by the way, or did he leave in [24] December 2006?

---

1—08:52:36   24—08:53:24          Page 7

[1] **MR. KENT:** He was still employed [2] after that, Your Honor.

[3] **THE COURT:** Is he there now?

[4] **MR. KENT:** He's a consultant for the [5] new company now.

[6] **THE COURT:** Okay. You know, he may [7] have showed up at some of the meetings, but I [8] think the witness, if I remember, Bourne had no [9] problem testifying about the documents, it seems [10] to me.

[11] I mean, there's some bad stuff in [12] there, but you know, sometimes you've got to face [13] that in a lawsuit. Yes.

[14] **MR. DRAYTON:** Your Honor —

[15] **THE COURT:** So I'm going to — just [16] so the record doesn't get confused, the motion to [17] compel, in essence, will be granted.

[18] **MR. DRAYTON:** I just wanted to just [19] clarify something. Ms. Sharp can help me if I [20] misstate this.

[21] I believe there were two documents [22] that were subject to that motion, but —

---

[23] THE COURT: 315 and 316.

[24] MR. DRAYTON: Correct. And those

---

1—08:53:26   24—08:54:12                    Page 8

[1] were examples to that deposition; however, there [2] are several documents that are of the same type.

[3] And one document, for example —

[4] THE COURT: Well, anything that has [5] to do with that Advisory Council or committee, [6] should go over unless you have a specific claim [7] of privilege.

[8] In other words, you're talking about [9] a specific anticipated litigation, you're giving [10] specific legal advice, and then I'll review the [11] document. Other than that, that category of [12] documents from — that council, as I understand [13] it, met quarterly.

[14] You're entitled to them, the ones in [15] the — I saw 315 and 316. I think there was some [16] reference in one of the things to 317, but you [17] get them all.

[18] MR. DRAYTON: Understood. Thank [19] you.

[20] THE COURT: All right. With that [21] ruling, go talk with each other and see if you [22] can work out what I consider the cross motions, [23] and hopefully you can.

[24] Otherwise, you'll be back here and

---

1—08:54:16   24—09:24:48                    Page 9

[1] neither of you will be happy. Trust me.

[2] MR. DRAYTON: Thank you, Your Honor.

[3] THE COURT: Thank you.

[4] MR. KENT: Thank you, Your Honor.

[5] THE COURT: I'll save my notes just [6] in case.

[7] MR. KENT: Okay.

[8] MR. DRAYTON: Okay.

[9] (Hearing was adjourned while the [10] attorneys had further discussions:)

[11] (Court was reconvened at 10:50 a.m.)

[12] THE COURT: All right. We're back. [13] How are we doing?

[14] MR. KENT: Your Honor, I just wanted [15] to apologize to the Court for the use of the [16] fabrication term in the briefing. It was more [17] than was necessary, and I realize that.

[18] So I do apologize for that.

[19] THE COURT: Sure. Thank you.

[20] MR. KENT: The discussions outside [21] were less than fruitful. Basically where I [22] understand we are —

[23] MR. DRAYTON: I can speak on behalf [24] of plaintiff's motion.

---

1—09:24:50   24—09:25:46                    Page 10

[1] THE COURT: Let's hear from the [2] defendant first and then we'll go to the [3] plaintiff.

[4] MR. KENT: Where I understand we [5] are, Your Honor, either already agreed to or on [6] calendar are two additional Nice 30(b)6 witnesses [7] from two weeks from now on selected topics that [8] were identified to us a few weeks ago.

[9] And the witness that used to be an [10] employee of Witness Systems who was on the Tack [11] Committee, the minutes of which you just ruled [12] upon earlier, his name is Evan Hayworth. We [13] agree to produce him after this hearing. And [14] this Tack issue was decided.

[15] We decided — they have since [16] requested four additional people, a Dan Spohrer, [17] who we've already agreed and are still agreeing [18] we'll produce again in his individual capacity. [19] He's already been deposed as a 30(b)6 and we're [20] offering him again in his individual capacity.

[21] And then there's three other names. [22] One is a fellow named Richard Heap who lives in [23] the U.K. who is not an employee of Witness [24] Systems. He works for a subcontractor of Witness

---

1—09:25:48   24—09:26:36                    Page 11

[1] Systems and is a business partner of the guy who [2] is Witness Systems' CTO.

[3] Under a contract. Not an employee [4] CTO, but under a consulting agreement [5] arrangement.

[6] There's two other folks in the U.S. [7] both of whom were on the Tack Committee, the [8] minutes of which you ruled on earlier today. [9] Based on that ruling, we're willing to have them [10] pick one of those.

[11] And if they're still employed with [12] the company, which I don't know as I stand here [13] right today because of the recent merger and the [14] acquisition by Verint Systems, Inc. of Witness [15] Systems. The name changed to Verint Systems, [16] Inc. I don't know the current employment [17] relationship, but I think I can produce them if [18] they want one of them.

[19] And I'd be willing to do that. I [20] don't think they need two of those members of [21] the committee.

[22] But I'll be willing to see what I [23] can do to get one of the two. And I think that's [24] where we are.

---

1—09:26:38   24—09:27:38                    Page 12

[1] THE COURT: All right.

[2] MR. KENT: And Your Honor, real [3] briefly on the Heap issue. We don't think he's [4] necessary because his business partner, the CTO, [5] Dr. Chris Blaire, has already given testimony in [6] the case about the products that Mr. Heap would [7] also testify about.

[8] And Blair would be the one to come [9] to trial. Mr. Heap, we have no current plans to [10] bring him to trial.

[11] MR. DRAYTON: Your Honor, let's [12] start with our motion. We would like some [13] depositions from Witness.

[14] Originally I think to date we've [15] taken 11 depositions. And in the scheduling [16] order, we were entitled to take 25 depositions. [17] We noticed all of the depositions that we [18] currently seek on April 19th, 2007.

[19] From the time period that we [20] realized it was a misunderstanding between the [21] parties, we attempted on several occasions to [22] negotiate with Witness with regard to these [23] depositions. It's not until —

[24] THE COURT: See, the big question

---

1—09:27:40   24—09:28:30                    Page 13

[1] is: Why did you wait until April 19th, given the [2] May 30th cut-off?

[3] MR. DRAYTON: Well, Your Honor —

[4] THE COURT: I noticed that you [5] noticed that number of witnesses in a case of [6] this magnitude.

[7] MR. DRAYTON: Well, just both [8] parties served the majority of their deposition [9] notices on April 19th. Nice did on April 20th. [10] Witness did — Witness produced over seven [11] million pages of documents that we had to digest [12] and analyze before we could competently take [13] depositions. We were prepared to take the [14] depositions as scheduled.

[15] We got derailed because Witness [16] refused to allow us to take the depositions that [17] we noticed, and we got into discussions because [18] we were ready to come to you for resolution at [19] that time.

[20] There was a misunderstanding about [21] the outcome of those discussions. But the bottom [22] line is once we took the depositions of certain [23] technical people in the U.K., we knew that we [24] needed additional depositions. And we

---

1—09:28:32   24—09:29:36                    Page 14

[1] immediately sought that from Witness.

[2] At this point, we originally, at the [3] outset, wanted 14 depositions, in part because [4] the non-technical 30(b)6 deposition of Witness [5] did not happen as of yet. All of that has [6] happened.

[7] We narrowed it down from 14 [8] depositions to seven in the motion. When [9] Mr. Kent for the first time said, We're willing [10] to give you some depositions and we won't object [11] to a three-month extension of the trial in the [12] pretrial schedule, or stipulating to request that [13] from Your Honor.

[14] After we considered it yesterday, we [15] came back and said, We only need four [16] depositions. The deposition of Daniel Spohrer, [17] the deposition of Ed Murray, who happens to be [18] the or he

---

was the senior vice president of [19] engineering, and Joe Watson, who is the director [20] of technology, or maybe the former director of [21] technology.

[22] These were people that were [23] identified in interrogatory responses and in [24] disclosure statements as knowledgeable to the

---

1—09:29:38    24—09:30:38    Page 15

[1] technical aspects of Witness' products, and also [2] on this particular committee that we have been [3] precluded from receiving any testimony regarding, [4] and 30(b)6 and other depositions so you can see [5] from our motion.

[6] So we'd like to take those two [7] deponents as well. The only reason we didn't [8] come to you earlier is because we were relying on [9] our understanding, which happened to be a [10] misunderstanding of where the parties were with [11] regard to discovery.

[12] The last person happens to be [13] Mr. Richard Heap. Mr. Richard Heap is someone [14] who worked at Aratel (phonetic), and that's a [15] legacy. That's a company that Witness acquired [16] products from, they adopted as their own and [17] products that are issue in this litigation, both [18] on the invalidity side as well as the [19] infringement side.

[20] And Mr. Heap is a central figure in [21] Aratel, one of the key technology people. And [22] he's the co-creator of the state-of-the-art [23] recording solution that is at issue in this [24] litigation for patent infringement.

---

1—09:30:40    24—09:31:44    Page 16

[1] Mr. Blair's recollection of the [2] Aratel days will be different from Mr. Heap's, [3] and the responsibilities of these two people are [4] not going to be overlapping. So what Witness [5] wants us to do is to just rely solely on the [6] witness that they choose to take to trial and not [7] be able to thoroughly depose other witnesses.

[8] From day one, we asked for [9] Mr. Heap's deposition, and we were refused. It [10] became clear that he was a very knowledgeable [11] witness as we got through deposition discovery. [12] And that is why we seek Mr. Heap's deposition [13] today.

[14] It is true that Mr. Heap is located [15] in the United Kingdom. That's true.

[16] However, it's also true that [17] Software Hothouse, the company that he co-owns [18] with Chris Blair has an intimate relationship [19] with Witness Systems. And if you look at the [20] document — well, one of the documents that —[21] one of the exhibits at John Bourne's deposition, [22] they want him to serve on the Architect Council [23] and

---

other various — other various ad hoc [24] committees at Witness.

---

1—09:31:44    24—09:32:36    Page 17

[1] So this is not someone who they [2] can't produce, and they never stated that they've [3] asked him would he cooperate. They never stated [4] that he refused to cooperate. They just want to [5] rely on the fact that he's a U.K. resident and [6] keep us from deposing him.

[7] So, in essence, we narrowed it down [8] from 14 to four depositions. And Ms. Sharp and I [9] were on the phone to Mr. Kent on the outset [10] before we brought the motion, and we said, Just [11] tell us how many depositions you're willing to [12] give us and maybe we can figure it out. Refused [13] until yesterday when he came back with three [14] depositions.

[15] The ironic thing about yesterday is [16] he says, I want to tell you who you can depose [17] and he offered Scott Blumen, who was part of our [18] motion to compel. He offered Nancy Treaster, and [19] he offered Daniel Spohrer.

[20] And I said these three are not [21] sufficient for our purposes, but here are the [22] four. And that's where we left that.

[23] And he's been unwilling to agree to [24] give us these four depositions, although we've

---

1—09:32:38    24—09:33:44    Page 18

[1] compromised, in our opinion, significantly. [2] Potentially even to our detriment possibly, but I [3] don't think so.

[4] But we've come as far as we can come [5] with that, Your Honor, from a voluntary — on a [6] voluntary basis.

[7] With regard to their motion, we have [8] bent over backwards for them, even when we feel [9] we have no obligation. And there were just a few [10] issues that remained with regard to their motion [11] that Mr. Kent brought to our attention. And I've [12] reasonably resolved those issues with Mr. Kent.

[13] So I don't — so, on one hand, I [14] feel that we've been reasonable. We've [15] compromised with them.

[16] We feel we have good positions at [17] this point. We brought our motions. We wouldn't [18] have defended their motion if we didn't feel we [19] had valid motion positions.

[20] But in the spirit of compromise, [21] we've went to great lengths to provide 30(b)6 [22] deposition testimony about Nice's knowledge of [23] the company's operations and activities that it [24] has no relationship with, other than the fact

---

1—09:33:46    24—09:34:50    Page 19

[1] that it acquired some of its patents.

[2] So, in our opinion, we've been [3]

---

cooperating and attempting to resolve this [4] without your assistance, Your Honor. But we [5] have — that hasn't been reciprocated.

[6] Additionally, with regard to why we [7] noticed the depositions in April, we've gotten —[8] the documents have been rolling in, and they were [9] still rolling in after we started on our [10] depositions.

[11] And that wasn't as contemplated by [12] your order. And I think both parties produced [13] documents on a rolling basis.

[14] Our quantity is obviously, for [15] plaintiff, is significantly less than Witness' [16] quantity, but we did our best efforts to deal [17] with that and move forward depositions anyway. [18] And our position is this: Fish & Richardson and [19] Kaye Scholer are capable of doing the [20] depositions, and we were ready to move forward [21] with all of our depositions as noticed.

[22] So, again, we have been steadily [23] attempting to compromise. And there are a few [24] discovery issues that even remain that we haven't

---

1—09:34:52    24—09:35:46    Page 20

[1] run to Court and put in motions, but we're [2] attempting to resolve these issues relating to [3] Witness' 30(b)6 testimony where they didn't [4] provide us with a designee on certain topics.

[5] And there's also the issue of where [6] we were provided with source code and other [7] technical documents the night before deposition, [8] and we were not able to question the witness on [9] those. We attempted to resolve those issues with [10] Witness.

[11] We haven't brought them to the [12] Court's attention. We were attempting to [13] globally resolve all of this.

[14] But to just sum up, we went from 14 [15] to four, and we've pretty much provided Witness [16] Systems with the discovery they seek, regardless [17] of our position of whether they're entitled to it [18] or not.

[19] Thank you, Your Honor.

[20] **MR. KENT:** Your Honor, as Your Honor [21] recognized during the claim construction hearing [22] a few weeks ago, there are 70 claims at issue in [23] this case across ten patents. That's why there [24] were six or seven million documents produced by

---

2—09:35:50    24—09:36:42    Page 21

[1] Witness Systems.

[2] They were produced as quickly as [3] they could be processed. Nice Systems' [4] production also rolled in throughout the course [5] of the winter and spring.

[6] The fact of the matter is we bent [7] over backwards in May, including sched-

uling a [8] week's worth of depositions in London to try to [9] schedule as many of the witnesses that Nice had [10] they wanted to depose, so they could depose them. [11] And we did that.

[12] We had depositions going on two and [13] three at a time in London, in Boston, in New [14] York, in Atlanta. We did everything we could to [15] try to give them what they were reasonably [16] entitled to within the discovery period.

[17] But we also always viewed that [18] discovery period as our hard cut-off, with the [19] only exception with the deposition that couldn't [20] be scheduled in because the witness was out of [21] town, or traveling, or there were just too many [22] conflicts on a given day, things like that.

[23] The fact of the matter, though, is [24] that we have expert reporting deadlines coming up

---
1—09:36:46  24—09:37:32          Page 22

[1] in late August. And as yet, we still have 70 [2] claims across ten patents that we have to do [3] invalidity expert reports on.

[4] As Your Honor also knows, we have [5] three cases, four cases pending in the Northern [6] District of Georgia, which are heating up right [7] now as well.

[8] It involves the same counsel, the [9] same witnesses, many of the same issues.

[10] THE COURT: How are you doing there?

[11] MR. KENT: I'm sorry?

[12] THE COURT: How's it going there?

[13] MR. KENT: We have a scheduling [14] conference with Judge Storey, who has the very [15] first filed case scheduled for next Wednesday. [16] That case he just recently ordered some [17] additional discovery, and the parties, as you [18] probably perceive, are having difficulty agreeing [19] on exactly the scope of that and what the timing [20] of that should be.

[21] The second filed case is in expert [22] reporting and pretrial preparation.

[23] The third case is awaiting a final [24] ruling in claim construction, which will then

---
1—09:37:34  24—09:38:28          Page 23

[1] trigger a short discovery period followed by [2] expert reporting and trial preparation.

[3] And then the fourth case was a D.J. [4] case that has a pending motion to dismiss or to [5] stay. So that one is sort of at a preliminary [6] stage and not really going anywhere at the [7] moment.

[8] But the other three cases are very [9] active and the parties are actively negotiating [10] scheduling of expert depositions, even through [11] July, and I think even a few August dates have [12]

been offered.

[13] So there's a lot going on that [14] impacts the counsel and the parties beyond this [15] schedule. And we're trying to juggle all of that [16] and get as much done as we can. And we still [17] have this looming expert reporting deadline [18] coming up at the end of August.

[19] We've got to do an invalidity report [20] on everything they've asserted. And until they [21] limit the case, which they haven't done and they [22] still want to force all of these depositions to [23] happen between now and then, we're looking at a [24] very tight schedule. And we, frankly, don't see

---
1—09:38:32  23—09:39:24          Page 24

[1] how that can be done.

[2] So what we think we've offered here [3] today is pretty reasonable. We're giving them [4] Mr. Spohrer, who is a very high-level engineering [5] person who knows how all the products work. [6] They've already deposed him once, but we'll offer [7] him again in his individual capacity.

[8] Given Your Honor's ruling on the TAC [9] minutes, we're offering one of the two people, [10] Mr. Murray or Mr. Watson, who were on the TAC [11] Committee that they've asked for. They're [12] already getting Mr. Hayworth, who we already [13] agreed to produce, too, who was also on the TAC [14] Committee and was, in many ways, the driving [15] force.

[16] And Mr. Heap, we frankly don't [17] control. We have no way of forcing him to accept [18] service of a subpoena to appear for a deposition [19] in London. We just don't have that ability.

[20] Even Mr. Murray and Mr. Watson, as I [21] stand here right now, I don't know their current [22] employment status. But we did accept service on [23] a subpoena on their behalf while they were [24] employees.

---
1—09:39:26  24—09:40:22          Page 25

[1] So I don't anticipate a problem of [2] getting one of them to appear for a deposition. [3] I think that can be done.

[4] I'm waiting for the Court to see if [5] we can make that happen. But to say that we've [6] been unreasonable, Your Honor, I think is not [7] correct. We've done everything we can possibly [8] do given the lateness of the notice, given the [9] scope of the case, given the number of witnesses [10] that have been taken. Five in London, double and [11] triple in tracking in the last week of May.

[12] They've taken 11. We took eight. [13] We even agreed to do a few even outside the discovery [14] period, even though we didn't think we had that [15] obligation.

[16] And now they still want more. And [17]

we think enough is enough. And if they do want [18] more, we think there needs to be some adjustment [19] to at least the expert reporting deadlines, [20] because we're going to be very squeezed from the [21] original three months that the Court had on its [22] scheduling order from the close of discovery to [23] initial expert reports, to now we're talking [24] about a matter of weeks by the time all of these

---
1—09:40:24  24—09:41:20          Page 26

[1] depositions they want to be scheduled.

[2] So we would ask for at least some [3] adjustment to the expert reporting and deposition [4] schedule. It wouldn't need to impact the trial [5] date, but at least some reprieve on that, so we [6] weren't jammed by their delay.

[7] Thank you, Your Honor.

[8] MR. DRAYTON: Your Honor, I just [9] want to note that before we filed this motion, we [10] asked Mr. Kent directly, How many depositions are [11] you willing to provide for us? We tried to come [12] to some agreement.

[13] If he had come to the agreement that [14] I suggested to when he got back to me yesterday, [15] those depositions would have been over with, and [16] there would be no prejudice whatsoever to Witness [17] Systems as they purport.

[18] I purport that there's no prejudice. [19] It's our infringement report that is actually [20] going to be due on August 24th, I believe on your [21] current schedule.

[22] They have to reply to that report 30 [23] days later, I believe under your schedule. So [24] the only party who's been prejudiced would be

---
1—09:41:24  24—09:42:18          Page 27

[1] Nice Systems when they — as we tried to prepare [2] a report with our experts, we need to have these [3] four depositions.

[4] These are all technical depositions [5] that we're currently seeking at this time. The [6] reason that we are seeking damages for Daniel [7] Spohrer is because his 30(b)6 deposition, [8] Witness' 30(b)6 deposition provided us with no [9] useful — virtually no useful testimony.

[10] And there was a lot of gamesmanship [11] at that deposition. We didn't bother the Court. [12] We just said we'll take them individually, which [13] was something that I believe that we discussed [14] with Mr. Kent prior to that deposition.

[15] THE COURT: And you're not willing [16] to produce him individually?

[17] MR. KENT: We are. Mr. Spohrer is [18] one of the people that we have offered

and are [19] offering again to produce individually.

[20] MR. DRAYTON: They're only willing [21] to produce two witnesses, Your Honor, as it [22] relates to the motion that we have pending. And [23] we would like four witnesses to be produced with [24] regard to the Georgia litigation.

---

1—09:42:20    24—09:43:02    Page 28

[1] I just want to say that it's my [2] understanding that no case is set for trial. And [3] there's — as I understand it, I only work on one [4] of the Georgia cases, and the Georgia cases that [5] I actually work on and I'm intimately familiar [6] with is the case in which we haven't even had our [7] claim construction ruling by the District Court [8] as of yet.

[9] THE COURT: Did you have a Markman [10] hearing?

[11] MR. DRAYTON: We had the Markman [12] hearing, yes, sir.

[13] THE COURT: When was that?

[14] MR. DRAYTON: The Markman hearing [15] was —

[16] MR. KENT: If I may, Your Honor, it [17] was February.

[18] MR. DRAYTON: Okay.

[19] MR. KENT: The Special Master issued [20] a report of recommendation just waiting for the [21] Court's approval. And I don't mean to interrupt, [22] but the STS case was scheduled for trial [23] August 6th. It's been continued pending the [24] scheduling conference on that.

---

1—09:43:02    24—09:43:52    Page 29

[1] MR. DRAYTON: There's a good [2] possibility that none of these cases in Atlanta [3] will go forward before this case goes forward in [4] January 2007. There's a possibility that there [5] needs to be one trial, given the way these cases [6] have been scheduled in the Atlanta cases that [7] have been progressing.

[8] THE COURT: Is the report and [9] recommendation by the Special Master in Georgia [10] in opinion form or is it in order form? I mean, [11] does it have rationale provided?

[12] MR. KENT: Yes.

[13] MR. KENT: Yes, it does. And just [14] to give you some background in the other two, the [15] first two cases, the reports and recommendations [16] were accepted without further discussion. So, [17] you know, we don't know what that's going to [18] happen in this case, but that's what happened in [19] the others.

[20] THE COURT: And there was no [21] objection?

[22] MR. KENT: There were objections [23] filed —

[24] MR. DRAYTON: We filed objections.

---

1—09:43:52    24—09:44:34    Page 30

[1] MR. KENT: — in both cases.

[2] THE COURT: Oh, by both sides?

[3] MR. KENT: Yes. And in this case, [4] MR. DRAYTON: We filed objections.

[5] THE COURT: See, I'm trying to [6] figure out how it works. In all the cases, the [7] Special Master held a Markman hearing?

[8] MR. DRAYTON: correct.

[9] THE COURT: Was there extrinsic [10] evidence offered?

[11] MR. KENT: Yes, I believe so.

[12] MR. DRAYTON: Yes.

[13] THE COURT: And so you each had [14] your expert testify?

[15] MR. DRAYTON: I'm not — we've [16] never — I believe that Nice has never offered an [17] expert in any of the Markman hearings. But I [18] think Witness, Mr. Kent can correct me if I'm [19] wrong, has.

[20] MR. KENT: I did not attend, but my [21] understanding there was Witness —

[22] THE COURT: But there was a hearing?

[23] MR. KENT: There was a hearing, and [24] I believe there was witnesses at at least two of

---

1—09:44:36    24—09:45:28    Page 31

[1] them.

[2] THE COURT: And there were [3] witnesses?

[4] MR. KENT: Yes.

[5] THE COURT: And then the Special [6] Master, who is the Special Master?

[7] MR. DRAYTON: It's Judge McKelvie.

[8] THE COURT: He issued a decision?

[9] MR. KENT: He issued a report and [10] recommendation that the parties then either file [11] the objection or motions to accept, and then the [12] district judge in the other two cases accepted [13] them without modification.

[14] And in the third case, the report [15] and recommendation has been made and filed by the [16] Special Master. The parties have filed whatever [17] objection or motion to accept that they deemed [18] appropriate.

[19] And it's just waiting for the judge [20] to accept it, or modify it, or do whatever a [21] judge will do.

[22] THE COURT: So I can, I guess, [23] presume that it's a split decision?

[24] MR. KENT: So far that's fair.

---

1—09:45:30    24—09:46:26    Page 32

[1] MR. DRAYTON: With regard to the?

[2] THE COURT: The claim construction.

[3] In other words, it wasn't an [4] adoption of one side over the other?

---

[5] MR. DRAYTON: I believe in one of [6] the cases, it was. I know in one of the cases, [7] the STS v. Witness Systems case, that opinion was [8] very favorable to Nice Systems, Inc.

[9] And the case that I actually work on [10] with Dan Kent, I think that it was a split [11] decision on the various issues. I'm not familiar [12] with the Witness Systems v. Nice case that's also [13] pending in that district.

[14] MR. KENT: If you were keeping [15] score, Your Honor, across all three, it's about [16] even. It's about even.

[17] THE COURT: So that kind of tells [18] you if you're going to have a trial.

[19] MR. KENT: Yeah.

[20] MR. DRAYTON: Well —

[21] MR. KENT: I practiced in that Court [22] a long time, Your Honor, and I think at least two [23] of these are going to trial.

[24] THE COURT: Okay.

---

1—09:46:26    24—09:47:34    Page 33

[1] MR. KENT: One might get out at [2] summary judgment.

[3] THE COURT: Because I'm trying to [4] take into consideration your work load.

[5] MR. KENT: Yes.

[6] THE COURT: Because we're on a trial [7] here that we're not going to move. But I [8] appreciate that there's a lot to do in this case, [9] and I'm trying to understand how much there is to [10] do in those cases, and what the target of getting [11] it done by is.

[12] I think I understand. You know [13] what, justice in this case would be denying both [14] motions and leaving you to your own devices. But [15] that's probably not prudent.

[16] What I'm going to do is I'm going to [17] grant both motions. I'm going to grant on Nice's [18] motion in its proposal with the addition of two [19] witnesses.

[20] Heap's out. So you'll get [21] additional witnesses, but you won't get that [22] witness from England, the United Kingdom.

[23] And I'm going to — well, I think [24] I'll just order that Witness' motion is granted

---

1—09:47:50    24—09:48:48    Page 34

[1] and allow Witness to have an additional [2] — what [2] was the total request?

[3] Let me go back and look.

[4] MR. KENT: Our motion, Your Honor, [5] was to deal with a number of 30(b)6 topics, which [6] were filed by them offering two witnesses which [7] are already on the calendar for two weeks from [8] now.

[9] THE COURT: I'm sorry. Say that [10] again.

[11] MR. KENT: After we file our motion,

---

[12] Your Honor, Nice offered two 30(b)6 witnesses to [13] address most of the topics. We're willing to [14] withdraw the rest.

[15] THE COURT: Motion granted to the [16] extent Nice — Yes. Here it is.

[17] This is the Witness motion. The [18] Nice motion is granted to the extent of the [19] proposal, exclusive of heap.

[20] And on the Witness motion, let me [21] get my notes out here. You have almost an [22] agreement; right?

[23] MR. DRAYTON: Yes, sir.

[24] MR. KENT: I believe we do, Your

1—09:48:50    24—09:49:42    Page 35

[1] Honor.

[2] THE COURT: I'm going to — just let [3] me check my notes to make sure I'm not going too [4] far field with what I thought was equitable.

[5] All right. I'll order that [6] agreement on Witness' motion.

[7] MR. DRAYTON: Agreement that [8] Mr. Kent expressed earlier.

[9] THE COURT: On Witness' motion, your [10] proposal is two, as I understand it?

[11] MR. KENT: I can reiterate, and [12] maybe that will clarify.

[13] THE COURT: Right. Let's understand [14] it.

[15] MR. KENT: Let's make sure we're on [16] the same page as we understand.

[17] THE COURT: Otherwise I'll be [18] accused of fabricating.

[19] MR. KENT: No, Your Honor. No, Your [20] Honor. That will not happen. I can guarantee [21] you that will not happen.

[22] THE COURT: That would be ugly.

[23] MR. KENT: As I understand it, [24] Witness has offered and we've accepted two 30(b)6

1—09:49:46    24—09:50:44    Page 36

[1] witnesses.

[2] THE COURT: Right.

[3] MR. KENT: One is named [4] Mr. Rosenblatt to testify on topics 10, 22, 23, [5] 26, 28, and 30 through 33.

[6] And Mr. Henits to testify on topics [7] 4, 6, 7, 11, 13, 14, 18, 19, 21, 24, 25, 27, 31 [8] and 34. And that was in a letter after we filed [9] the motion.

[10] MR. DRAYTON: What I can say, Your [11] Honor, is that we have correspondence. If it's [12] consistent, we want to provide those witnesses [13] for deposition.

[14] THE COURT: All right. Well, for [15] today's purposes, I'll order that proposal.

[16] MR. DRAYTON: Yes, sir.

[17] THE COURT: You'll submit an order

[18] that wraps this up. And if there's any tweaking [19] that has to be done, you can do it between [20] yourselves.

[21] And if you can't, then you'll submit [22] that narrow issue to me.

[23] MR. DRAYTON: I just wanted to [24] clarify one thing about Nice's motion for the

1—09:50:46    24—09:51:34    Page 37

[1] deposition. As I understood Your Honor, you're [2] allowing us to have four depositions; is that [3] correct?

[4] THE COURT: Yes.

[5] MR. DRAYTON: Okay. And I [6] understand.

[7] THE COURT: But with the [8] exclusion —

[9] MR. DRAYTON: Not Mr. Heap.

[10] THE COURT: Right.

[11] MR. DRAYTON: Correct. Now, I did [12] want to — I wanted Your Honor to know that there [13] are basically two issues out there that we may be [14] able to resolve. I'm not sure.

[15] Mr. Kent can maybe provide further [16] guidance. And they relate to certain deposition [17] topics that were properly noticed, and we're [18] seeking testimony on those topics.

[19] And they also relate to the fact [20] that we were delivered source code and other [21] technical documents. I was personally delivered [22] by Email the source code, which is a list of [23] unusual, the night before a deposition that I [24] took in Atlanta.

1—09:51:34    24—09:52:36    Page 38

[1] And we just went with that witness, [2] to depose that witness on the documents that —[3] we attempted to question the witness on these [4] technical documents and source codes the day of [5] the deposition. And I couldn't do that, and I [6] wasn't prepared to move forward.

[7] THE COURT: I don't think that's [8] before me.

[9] MR. DRAYTON: It's not. It was [10] addressed —

[11] THE COURT: I'm getting confused.

[12] MR. DRAYTON: It was briefed in our [13] briefing contingently. I didn't want to come [14] in with another motion down the road and you not [15] know about it. We could use your guidance if you [16] wanted to provide it.

[17] THE COURT: I'm not going to provide [18] any guidance. I'll share this with you so you [19] can see how far you've come.

[20] After reading your papers, I was [21] prepared to, on Witness' motion, deny if Nice [22] complied or committed to its

obligation.

[23] And on the Nice motion, I was going [24] to grant it to the extent Nice may select two

1—09:52:40    24—09:53:24    Page 39

[1] witnesses from the decided motion and depose [2] them. And look how far you've come.

[3] So if I came in here this morning [4] and didn't listen to you, that's where you were [5] going. And then I went through the wave of [6] wisdom where I was going to deny both motions.

[7] So I think I've exhausted my [8] decision making for the day.

[9] MR. DRAYTON: I understand.

[10] THE COURT: So that's why I don't [11] want to hear anymore. Otherwise, it will spill [12] over into my Saturday at the beach.

[13] MR. DRAYTON: Understood.

[14] THE COURT: And then I won't be in a [15] good frame of mind when I show up on Monday.

[16] MR. DRAYTON: Okay.

[17] MR. KENT: Your Honor, may I clarify [18] what Witness' obligations are?

[19] THE COURT: Sure.

[20] MR. KENT: As we — did we [21] understand Nice is going to —

[22] THE COURT: Isn't that amazing how [23] far you've come, the two of you?

[24] MR. KENT: What I understood, and I

1—09:53:26    24—09:54:16    Page 40

[1] just want to make sure I understood correctly, we [2] had already committed to Mr. Hayworth's [3] deposition and Mr. Spohrer's deposition.

[4] Is the Court ordering us to produce [5] both Mr. Murray and Mr. Watson?

[6] Is that correct?

[7] MR. DRAYTON: Your Honor, Hayworth's [8] deposition has nothing to do with this motion. [9] That was on the calender. The parties agreed to [10] it.

[11] This motion dealt with 14 — with [12] seven depositions ultimately, and I assumed we [13] were getting four which we requested, but not [14] Heap.

[15] And what Mr. Kent is saying is that [16] it should just be Hayworth and three others.

[17] THE COURT: I'm ordering four [18] without Heap.

[19] MR. KENT: So any four but Heap of [20] the seven?

[21] MR. DRAYTON: But not individuals [22] that were being deposed that weren't part of the [23] subject to this motion?

[24] THE COURT: Right.

**1—09:54:16  24—09:55:36     Page 41**

[1] MR. KENT: And they get to pick, I [2] assume?

[3] THE COURT: Yes.

[4] MR. KENT: Thank you, Your Honor.

[5] THE COURT: I think that resolves it [6] as equitably as it can be resolved for both of [7] you.

[8] MR. DRAYTON: I did want to just [9] comment on one thing. As we said at the Markman [10] hearing, Nice is definitely prepared to scale [11] back on the claims that it currently asserts.

[12] We were obviously waiting for your [13] Markman ruling to do so, and we were waiting to [14] conclude with the discovery period.

[15] THE COURT: You know, I think I told [16] you that sometime mid-July I was going to get you [17] an order on the Markman ruling. And when you [18] have that many claims, it sort of drives the [19] Markman decision to be more narrow. Not in the [20] sense of interpreting the language, but in the [21] sense at this early stage, the rationale that can [22] be provided, unless you're a judge that wants to [23] settle the cases.

[24] Because you have to be careful,

**1—09:55:38  24—09:56:40     Page 42**

[1] because you haven't gotten into evidentiary [2] rulings yet. That's what experience teaches you [3] on this bench.

[4] So you'll get that, and then you'll [5] be either by, you know, hopefully by voluntary [6] act, but if not by order required to scale down [7] tremendously the asserted claims and patents. So [8] that — again, I think that's why I keep asking [9] about trials.

[10] Some folks come here and don't [11] understand that we're actually going to go to [12] trial here, and there's actually going to be [13] eight people in the jury box. And they're going [14] to try to understand this in ten days or less.

[15] So we can't play those games like we [16] did in the '80s where we could throw everything [17] against the wall and see what stuck and work it [18] out. We've got to make it work for eight jurors.

[19] So I don't typically make you scale [20] down before Markman, although it's a good idea [21] because you get a better claim construction [22] ruling. But we'll get you a ruling, and then [23] we'll get you a narrowing.

[24] And then we'll get ready really for

**1—09:56:42  24—09:57:30     Page 43**

[1] trial, and the important part, the evidence and [2] what's going to go in front of that jury.

[3] Now, there is a thought out there [4]

when you go to these conferences, you hear the [5] Markman ruling settles cases. Not really [6] contested cases, though.

[7] It settles small cases. It doesn't [8] settle big cases.

[9] So I say all this as background so [10] you understand that the context of what I do is [11] thinking that you're going to — what is it, [12] January?

[13] MR. KENT: Yes, sir.

[14] MR. DRAYTON: Yes, sir.

[15] THE COURT: We're going to be in [16] trial in January. Now, and I don't push [17] settlement.

[18] If you want to settle before then, [19] that's fine, but I'm not going to push it. I'm [20] just working — everything I do is in the context [21] of what's going to occur in January, which is why [22] I'm interested in this whole idea of Special [23] Master.

[24] I've only done it once or twice with

**1—09:57:32  24—09:58:10     Page 44**

[1] the claim construction, because I don't know how [2] that trial judge then plays into the idea of the [3] pretrial conference and all.

[4] Could you send me the three claim [5] construction reports and recommendations you [6] have? I just want to see what that judge is [7] looking at.

[8] And then I'll be interested in what [9] the result, if you would write me, of your [10] scheduling conference next week is.

[11] MR. DRAYTON: We will.

[12] MR. KENT: Certainly, Your Honor.

[13] THE COURT: Just from a procedure [14] point of view.

[15] MR. KENT: I'd be happy to.

[16] THE COURT: For me it's a point of [17] interest.

[18] MR. KENT: One point on the [19] procedure you just mentioned, Your Honor. If [20] Nice is committing to narrowing the case after [21] the claim construction ruling —

[22] THE COURT: Well, not only are they [23] committing, I'm telling you I'm going to do it.

[24] MR. KENT: Understood. Is there

**1—09:58:12  24—09:59:06     Page 45**

[1] some way we could have a mechanism in place that [2] allows our invalidity expert report, which is due [3] August 24th, because we — that there is some [4] period of time, so that our expert doesn't have [5] to work on invalidity for 70 claims when there's [6] only going to be ten or however many they pare [7] down to?

[8] So what I'm suggesting is maybe a [9] deadline by which they need to narrow after your [10] claim construction ruling

and then a time period [11] before which —

[12] THE COURT: Well, they'd probably [13] like the same thing for infringement. So why [14] don't you agree to extend it to their opening in [15] infringement to a time, a certain number of days [16] or whatever past my Markman order.

[17] MR. KENT: I would suggest 30 is [18] reasonable.

[19] MR. DRAYTON: I actually don't, Your [20] Honor, because they just served validity [21] contentions.

[22] THE COURT: Well, they're doing [23] that.

[24] MR. DRAYTON: Right.

**1—09:59:06  24—09:59:42     Page 46**

[1] THE COURT: But you — it wouldn't [2] prejudice you in any way.

[3] MR. DRAYTON: No. No, I understand. [4] I agree to the concept. I just [5] don't know if I can agree to 30 days.

[6] He's saying July 24th.

[7] THE COURT: No. No.

[8] MR. KENT: No. I may not be making [9] myself clear.

[10] THE COURT: Say I get you a Markman [11] order July 24th.

[12] MR. DRAYTON: Right.

[13] THE COURT: He's saying that your [14] infringement between then and the time you have [15] to open up with your expert infringement [16] opinions, —

[17] MR. DRAYTON: Sure.

[18] THE COURT: — you will narrow your [19] claims.

[20] MR. DRAYTON: That's not a problem.

[21] MR. KENT: Well —

[22] THE COURT: That's what you're [23] saying.

[24] MR. KENT: And Your Honor, what I'm

**1—09:59:44  24—10:00:24     Page 47**

[1] suggesting, too, is, we also at the same time have [2] to do our invalidity expert report.

[3] THE COURT: Exactly.

[4] MR. KENT: And if they wait until [5] their expert report to narrow, then I have to [6] file my expert report on invalidity on all 70 [7] claims.

[8] THE COURT: No, you won't. You only [9] have to file against what they narrow it to.

[10] MR. KENT: And that's what I'm [11] asking is: When can we get the narrowing [12] sufficiently in advance before my initial expert [13] report on invalidity is due?

[14] THE COURT: And what I'm saying is [15] to make it clear, they should narrow 30 days [16] after the Markman order.

**Hearing**  Case 1:06-cv-00311-JJF  Document 239-2  Filed 10/30/2007  Page 38 of 51 et al. v.

July 13, 2007  Witness Systems, Inc.

[17] MR. KENT: Okay.

[18] MR. DRAYTON: That's fine.

[19] THE COURT: Then you should have a [20] time when the reports come in.

[21] MR. KENT: Say around 30 days [22] perhaps?

[23] MR. DRAYTON: Well, Your Honor, [24] correct me if I'm wrong, but today is July 13th.

---

1—10:00:30  24—10:01:16  Page 48

[1] THE COURT: Friday.

[2] MR. DRAYTON: And I believe our [3] expert reports are due on August 24th. So I'm [4] not sure I understand when your ruling will come [5] out on claim construction.

[6] THE COURT: July 24th.

[7] MR. DRAYTON: So if it comes out on [8] July 24th —

[9] THE COURT: You have 30 days to [10] narrow your claims to August 24th.

[11] MR. DRAYTON: That's fine.

[12] THE COURT: Then you have 30 days to [13] submit your report, your expert report. Then [14] they have 30 days to submit their expert report, [15] or whatever it is.

[16] MR. KENT: And maybe that's where [17] some of the confusion is. The way we read the [18] record is we bear the burden on invalidity, so we [19] need to produce an invalidity report in the first [20] round at the same time.

[21] That's why we need to make sure [22] there is some time between the narrowing and the [23] initial expert report.

[24] THE COURT: Right.

---

1—10:01:16  24—10:02:06  Page 49

[1] MR. KENT: So as long as we get [2] that, and I think 30 days is reasonable.

[3] THE COURT: That's what I under-[4] stand you're asking for.

[5] MR. DRAYTON: Well, if I just —

[6] THE COURT: So the only thing you [7] have to agree to today is two parts. First, 30 [8] days after the construction order claim [9] construction order, there will be a narrowing of [10] the claims by plaintiff. Everybody agrees to [11] that.

[12] MR. DRAYTON: Well, I'm not sure how [13] we — basically what I'm seeing happen, Your [14] Honor, I just want clarity, is as I understood [15] the sched-ule, we had to — both parties are [16] obligated to file expert reports.

[17] THE COURT: On the invalidity issue, [18] you have the burden.

[19] MR. DRAYTON: Correct, on August [20] 24th.

[21] THE COURT: Right.

[22] MR. DRAYTON: Correct. And under

---

[23] your proposal or under this, August 24th is going [24] to become a narrowing day.

---

1—10:02:08  24—10:02:50  Page 50

[1] And we're going to extend it back.

[2] THE COURT: Then you're going to — [3] right. Was that back or forward? I don't know.

[4] MR. DRAYTON: I just wanted to make [5] sure.

[6] MS. SHARP: What I'm concerned [7] about, if we move 30 days and add that on, [8] there's not enough room in the schedule to do [9] that without creating an issue for the trial.

[10] THE COURT: Well, then make it 15 [11] days. The burden is on you to narrow.

[12] MS. SHARP: Yeah. I think the [13] solution is —

[14] THE COURT: I don't care how long [15] the narrowing is.

[16] MR. KENT: If they can narrow [17] faster, that's fine.

[18] THE COURT: The only problem, when [19] they narrow, it won't be adequate for your [20] purposes, so you'll be filing something to cause [21] them to narrow more, because I'm going to make [22] them narrow to a trial assertion.

[23] So there's going to be some time [24] eaten up there. So we'll say 15 days after the

---

1—10:02:54  24—10:03:44  Page 51

[1] claim construction order, plaintiff will narrow [2] the claims five days after any objection by [3] defendant will be sub-mitted.

[4] And then I'll rule. And expert [5] reports won't be due until 30 days after the [6] Court's order on the plaintiff's reduction of [7] claim assertion, reduct-ion of asserted claims.

[8] MS. SHARP: Okay.

[9] THE COURT: Does that work?

[10] MR. DRAYTON: Sounds good, Your [11] Honor.

[12] MR. KENT: Yes, Your Honor. Thank [13] you.

[14] THE COURT: You know where I think I [15] confused you was I might have said invalidity to [16] you when I was talking about it was the answering [17] report. I think that's what confused you.

[18] In other words, we have 30 days to [19] get the opening reports and 30 days for everybody [20] to answer, and then you go to depositions.

[21] MR. KENT: Thank you.

[22] THE COURT: I think I may have [23] confused everybody's thinking when I said [24] invalidity response or some-thing.

---

1—10:03:46  15—10:04:04  Page 52

[1] MR. DRAYTON: Yes, sir.

[2] THE COURT: Okay. So are we all [3] set?

[4] MR. KENT: I think so.

[5] MS. SHARP: Thank you very much.

[6] THE COURT: Who's going to submit [7] the order summing this all up, so it's all in [8] order?

[9] MS. SHARP: We will, Your Honor.

[10] THE COURT: I look forward to [11] getting it.

[12] MR. MARSDEN: Thank you, Your Honor.

[13] MS. SHARP: Thank you, Your Honor.

[14] THE CLERK: All rise.

[15] (Court was recessed at 11:28 a.m.)

---

Page 53

State of Delaware     )
                      )
New Castle County     )

CERTIFICATE OF REPORTER

I, Heather M. Triozzi, Registered Professional Reporter, Certified Shorthand Reporter, and Notary Public, do hereby certify that the foregoing record, Pages 1 to 53 inclusive, is a true and accurate transcript of my stenographic notes taken on July 13, 2007, in the above-captioned matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 17th day of July, 2007, at Wilmington.

Heather M. Triozzi, RPR, CSR
Cert. No. 184-PS

**Lawyer's Notes**

# 1

**1** 3:18; 4:12
**10** 36:4
**10:50** 9:11
**11** 4:13; 12:15; 25:12; 36:7
**11:28** 52:15
**13** 36:7
**13th** 47:24
**14** 4:13; 14:3, 7; 17:8; 20:14; 36:7; 40:11
**15** 50:10, 24
**18** 36:7
**19** 36:7
**19th** 12:18; 13:1, 9

# 2

**2** 3:18; 4:12
**2006** 6:24
**2007** 12:18; 29:4
**20th** 13:9
**21** 36:7
**22** 36:4
**23** 36:4
**24** 36:7
**24th** 26:20; 45:3; 46:6, 11; 48:3, 6, 8, 10; 49:20, 23
**25** 12:16; 36:7
**26** 36:5
**27** 36:7
**28** 36:5
**29** 3:18

# 3

**3** 3:18
**30** 26:22; 36:5; 45:17; 46:5; 47:15, 21; 48:9, 12, 14; 49:2, 7; 50:7; 51:5, 18, 19
**30(b)6** 3:6, 9, 11, 17, 24; 4:9; 10:6, 19; 14:4; 15:4; 18:21; 20:3; 27:7, 8; 34:5, 12; 35:24
**30th** 13:2
**31** 36:7
**315** 7:23; 8:15
**316** 7:23; 8:15
**317** 8:16
**33** 36:5
**34** 36:8

# 4

**4** 36:7

# 5

**5** 3:18; 4:12

# 6

**6** 36:7
**6th** 28:23

# 7

**7** 4:12; 36:7
**70** 20:22; 22:1; 45:5; 47:6

# 8

**80s** 42:16

# 9

**9** 3:18; 4:12

# A

**a.m** 9:11; 52:15
**ability** 24:19
**able** 16:7; 20:8; 37:14
**accept** 24:17, 22; 31:11, 17, 20
**accepted** 29:16; 31:12; 35:24
**accused** 35:18
**acquired** 15:15; 19:1
**acquisition** 11:14
**across** 20:23; 22:2; 32:15
**act** 42:6
**active** 23:9
**actively** 23:9
**activities** 18:23
**actually** 26:19; 28:5; 32:9; 42:11, 12; 45:19
**ad** 16:23
**add** 50:7
**addition** 33:18
**additional** 3:11; 10:6, 16; 13:24; 22:17; 33:21; 34:1
**Additionally** 19:6
**address** 34:13
**addressed** 38:10
**adequate** 50:19
**adjourned** 9:9
**adjustment** 25:18; 26:3
**adopted** 15:16
**adoption** 32:4
**advance** 47:12
**advice** 6:18; 8:10
**Advisory** 8:5
**affects** 2:21
**again** 10:18, 20; 19:22;

24:7; 27:19; 34:10; 42:8
**against** 42:17; 47:9
**ago** 10:8; 20:22
**agree** 10:13; 17:23; 45:14; 46:4, 5; 49:7
**agreed** 3:3, 11, 19, 21; 10:5, 17; 24:13; 25:13; 40:9
**agreeing** 4:19; 10:17; 22:18
**agreement** 2:19; 5:19, 20; 6:2; 11:4; 26:12, 13; 34:22; 35:6, 7
**agrees** 49:10
**allow** 13:16; 34:1
**allowing** 37:2
**allows** 45:2
**almost** 34:21
**although** 17:24; 42:20
**always** 21:17
**amazing** 39:22
**analyze** 13:12
**anticipate** 25:1
**anticipated** 8:9
**anymore** 39:11
**apologize** 9:15, 18
**appear** 24:18; 25:2
**appreciate** 33:8
**appropriate** 31:18
**approval** 28:21
**April** 12:18; 13:1, 9, 9; 19:7
**Aratel** 15:14, 21; 16:2
**Architect** 16:22
**arrangement** 11:5
**aspects** 15:1
**asserted** 23:20; 42:7; 51:7
**assertion** 50:22; 51:7
**asserts** 41:11
**assistance** 19:4
**assume** 41:2
**assumed** 40:12
**Atlanta** 21:14; 29:2, 6; 37:24
**attempted** 12:21; 20:9; 38:3
**attempting** 19:3, 23; 20:2, 12
**attend** 30:20
**attention** 18:11; 20:12
**attorneys** 9:10
**August** 22:1; 23:11, 18; 26:20; 28:23; 45:3; 48:3, 10; 49:19, 23
**awaiting** 22:23

# B

**back** 8:24; 9:12; 14:15; 17:13; 26:14; 34:3; 41:11; 50:1, 3

**background** 29:14; 43:9
**backwards** 18:8; 21:7
**bad** 7:11
**balance** 2:24
**Based** 11:9
**Basically** 9:21; 37:13; 49:13
**basis** 18:6; 19:13
**beach** 39:12
**bear** 48:18
**became** 16:10
**become** 49:24
**beginning** 6:9
**behalf** 3:14; 9:23; 24:23
**bench** 42:3
**bent** 18:8; 21:6
**best** 6:4, 19; 19:16
**better** 5:13; 42:21
**beyond** 23:14
**big** 12:24; 43:8
**bit** 2:13
**Blair** 12:8; 16:18
**Blair's** 16:1
**Blaire** 12:5
**Blumen** 17:17
**Boston** 21:13
**both** 6:7; 11:7; 13:7; 15:17; 19:12; 30:1, 2; 33:13, 17; 39:6; 40:5; 41:6; 49:15
**bother** 27:11
**bottom** 13:21
**Bourne** 7:8
**Bourne's** 16:21
**box** 42:13
**briefed** 38:12
**briefing** 9:16; 38:13
**briefly** 12:3
**bring** 12:10
**brought** 17:10; 18:11, 17; 20:11
**bunch** 5:21
**burden** 48:18; 49:18; 50:11
**business** 6:20; 11:1; 12:4

# C

**calendar** 34:7
**calender** 10:6; 40:9
**came** 14:15; 17:13; 39:3
**can** 2:12; 4:11; 5:10, 11; 6:5; 7:19; 8:22, 23; 9:23; 11:17, 23; 15:4; 17:12, 16; 18:4; 23:16; 24:1; 25:5, 5, 7; 30:18; 31:22; 35:11, 20; 36:10, 19; 37:15; 38:19; 41:6, 21; 46:5; 47:11; 50:16
**capable** 19:19
**capacity** 10:18, 20; 24:7
**care** 50:14

**careful** 41:24
**case** 9:6; 12:6; 13:5; 20:23; 22:15, 16, 21, 23; 23:3, 4, 21; 25:9; 28:2, 6, 22; 29:3, 18; 30:3; 31:14; 32:7, 9, 12; 33:8, 13; 44:20
**cases** 22:5, 5; 23:8; 28:4, 4; 29:2, 5, 6, 15; 30:1, 6; 31:12; 32:6, 6; 33:10; 41:23; 43:5, 6, 7, 8
**category** 8:11
**cause** 50:20
**central** 15:20
**certain** 13:22; 20:4; 37:16; 45:15
**certainly** 6:5; 44:12
**changed** 11:15
**check** 35:3
**choose** 16:6
**Chris** 12:5; 16:18
**claim** 8:6; 20:21; 22:24; 28:7; 32:2; 42:21; 44:1, 4, 21; 45:10; 48:5; 49:8; 51:1, 7
**claimed** 6:14
**claims** 20:22; 22:2; 41:11, 18; 42:7; 45:5; 46:19; 47:7; 48:10; 49:10; 51:2, 7
**clarify** 7:19; 35:12; 36:24; 39:17
**clarity** 49:14
**clear** 16:10; 46:9; 47:15
**CLERK** 52:14
**close** 25:22
**co-creator** 15:22
**co-owns** 16:17
**code** 20:6; 37:20, 22
**codes** 38:4
**coming** 21:24; 23:18
**comment** 41:9
**committed** 3:13; 38:22; 40:2
**committee** 8:5; 10:11; 11:7, 21; 15:2; 24:11, 14
**committees** 16:24
**committing** 44:20, 23
**company** 7:5; 11:12; 15:15; 16:17
**company's** 18:23
**compel** 2:16, 21; 3:5; 7:17; 17:18
**competently** 13:12
**competing** 2:24
**complied** 38:22
**compromise** 18:20; 19:23
**compromised** 18:1, 15
**Conaway** 2:8
**concept** 46:4
**concern** 3:17
**concerned** 50:6
**conclude** 41:14

conference 4:7; 22:14;
28:24; 44:3, 10
conferences 43:4
confirm 4:3
confirmed 2:19
conflicts 21:22
confused 7:16; 38:11;
51:15, 17, 23
confusion 48:17
consider 4:4; 8:22
consideration 33:4
considered 14:14
consistent 36:12
construction 20:21;
22:24; 28:7; 32:2; 42:21;
44:1, 5, 21; 45:10; 48:5;
49:8, 9; 51:1
consultant 7:4
consulting 11:4
contain 6:18
contemplated 19:11
contentions 45:21
contentious 5:4
contentiousness 3:1
contested 43:6
context 43:10, 20
contingently 38:13
continued 28:23
contract 11:3
control 24:17
conversation 4:15, 24;
6:21
convinced 6:13
cooperate 17:3, 4
cooperating 19:3
correctly 40:1
correspondence 36:11
Council 8:5, 12; 16:22
counsel 4:10, 11; 6:22;
22:8; 23:14
course 21:4
COURT 2:1, 5, 9, 12, 17,
23; 5:2; 6:1, 7; 7:3, 6, 15,
23; 8:4, 20; 9:3, 5, 11, 12,
15, 19; 10:1; 12:1, 24;
13:4; 20:1; 22:10, 12; 25:4,
21; 27:11, 15; 28:7, 9, 13;
29:8, 20; 30:2, 5, 9, 13, 22;
31:2, 5, 8, 22; 32:2, 17, 21,
24; 33:3, 6; 34:9, 15; 35:2,
9, 13, 17, 22; 36:2, 14, 17;
37:4, 7, 10; 38:7, 11, 17;
39:10, 14, 19, 22; 40:4, 17,
24; 41:3, 5, 15; 43:15;
44:13, 16, 22; 45:12, 22;
46:1, 7, 10, 13, 18, 22;
47:3, 8, 14, 19; 48:1, 6, 9,
21, 24; 49:3, 6, 17, 21;
50:2, 10, 14, 18; 51:9, 14,
22; 52:2, 6, 10, 15
Court's 20:12; 28:21;
51:6
creating 50:9
cross 5:7; 8:22

CTO 11:2, 4; 12:4
current 11:16; 12:9;
24:21; 26:21
currently 12:18; 27:5;
41:11
cut 2:12
cut-off 13:2; 21:18

**D**

D.J 23:3
damages 27:6
Dan 2:4; 10:16; 32:10
Daniel 14:16; 17:19; 27:6
date 12:14; 26:5
dates 23:11
day 16:8; 21:22; 38:4;
39:8; 49:24
days 16:2; 26:23; 42:14;
45:15; 46:5; 47:15, 21;
48:9, 12, 14; 49:2, 8; 50:7,
11, 24; 51:2, 5, 18, 19
deadline 23:17; 45:9
deadlines 21:24; 25:19
deal 19:16; 34:5
dealt 40:11
December 6:24
decide 6:12, 13
decided 10:14, 15; 39:1
decision 5:11; 31:8, 23;
32:11; 39:8; 41:19
deemed 31:17
defendant 10:2; 51:3
defended 18:18
definitely 41:10
delay 26:6
delivered 37:20, 21
deny 38:21; 39:6
denying 33:13
deponents 15:7
depose 16:7; 17:16;
21:10, 10; 38:2; 39:1
deposed 10:19; 24:6;
40:22
deposing 17:6
deposition 3:6, 9, 24;
8:1; 13:8; 14:4, 16, 17;
16:9, 11, 12, 21; 18:22;
20:7; 21:19; 24:18; 25:2;
26:3; 27:7, 8, 11, 14;
36:13; 37:1, 16, 23; 38:5;
40:3, 3, 8
depositions 5:22, 23;
12:13, 15, 16, 17, 23;
13:13, 14, 16, 22, 24; 14:3,
8, 10, 16; 15:4; 17:8, 11,
14, 24; 19:7, 10, 17, 20,
21; 21:8, 12; 23:10, 22;
26:1, 10, 15; 27:3, 4; 37:2;
40:12; 51:20
derailed 13:15
describe 5:18
designee 20:4

detriment 18:2
devices 33:14
different 4:23; 5:10; 16:2
difficulty 22:18
digest 13:11
diligently 5:23
directly 26:10
director 14:19, 20
disclosure 14:24
discovery 5:15, 22; 6:9;
15:11; 16:11; 19:24;
20:16; 21:16, 18; 22:17;
23:1; 25:13, 22; 41:14
discussed 27:13
discussion 29:16
discussions 9:10, 20;
13:17, 21
dismiss 23:4
District 22:6; 28:7; 31:12;
32:13
document 3:7; 8:3, 11;
16:20
documents 3:19; 6:14;
7:9, 21; 8:2, 12; 13:11;
16:20; 19:8, 13; 20:7, 24;
37:21; 38:2, 4
done 23:16, 21; 24:1;
25:3, 7; 33:11; 36:19;
43:24
double 25:10
down 5:10; 14:7; 17:7;
38:14; 42:6, 20; 45:7
Dr 12:5
Drayton 2:7, 8; 4:6, 20,
23; 7:14, 18, 24; 8:18; 9:2,
8, 23; 12:11; 13:3, 7; 26:8;
27:20; 28:11, 14, 18; 29:1,
12, 24; 30:4, 8, 12, 15;
31:7; 32:1, 5, 20; 34:23;
35:7; 36:10, 16, 23; 37:5,
9, 11; 38:9, 12; 39:9, 13,
16; 40:7, 21; 41:8; 43:14;
44:11; 45:19, 24; 46:3, 12,
17, 20; 47:18, 23; 48:2, 7,
11; 49:5, 19, 24; 51:4
experts 27:2
expressed 35:8
extend 45:14; 50:1
extension 14:11
extent 34:16, 18; 38:24
extrinsic 30:9

drives 41:18
driving 24:14
due 26:20; 45:2; 47:13;
48:3; 51:5
during 20:21

**E**

earlier 10:12; 11:8; 15:8;
35:8
early 41:21
eaten 50:24
Ed 14:17
efforts 19:16
eight 25:12; 42:13, 18
either 10:5; 31:10; 42:5
Email 37:22
Emails 3:19

employed 6:23; 7:1;
11:11
employee 10:10, 23; 11:3
employees 24:24
employment 11:16;
24:22
end 4:3; 5:22; 6:8; 23:18
engineering 14:19; 24:4
England 33:22
enough 25:17, 17; 50:8
entitled 8:14; 12:16;
20:17; 21:16
equitable 35:4
equitably 41:6
essence 7:17; 17:7
Evan 10:12
even 18:2, 8; 19:24;
23:10, 11; 24:20; 25:13,
14; 28:6; 32:16, 16
Everybody 49:10; 51:19
everybody's 51:23
evidence 30:10; 43:1
evidentiary 42:1
exactly 22:19; 47:3
example 8:3
examples 8:1
exception 21:19
exclusion 37:8
exclusive 34:19
exhausted 39:7
exhibits 16:21
experience 42:2
expert 21:24; 22:3, 21;
23:2, 10, 17; 25:19, 23;
26:3; 30:14, 17; 45:2, 4;
46:15; 47:2, 5, 6, 12; 48:3,
13, 14, 23; 49:16; 51:4

field 35:4
figure 15:20; 17:12; 30:6
file 31:10; 34:11; 47:6, 9;
49:16
filed 3:10; 22:15, 21; 26:9;
29:23, 24; 30:4; 31:15, 16;
34:6; 36:8
filing 50:20
final 22:23
find 6:15, 17, 19
fine 43:19; 47:18; 48:11;
50:17
first 4:1; 10:2; 14:9;
22:15; 29:15; 48:19; 49:7
Fish 2:4; 19:18
Five 25:10; 51:2
folks 2:2; 11:6; 42:10
followed 23:1
force 23:22; 24:15
forcing 24:17
form 29:10, 10
former 14:20
forward 19:17, 20; 29:3,
3; 38:6; 50:3; 52:10
four 10:16; 14:15; 17:8,
22, 24; 20:15; 22:5; 27:3,
23; 37:2; 40:13, 17, 19
fourth 23:3
frame 39:15
frankly 23:24; 24:16
Friday 48:1
front 43:2
fruitful 9:21
fully 3:13
further 9:10; 29:16; 37:15

**G**

games 42:15
gamesmanship 27:10
gave 4:18
general 6:22
Georgia 22:6; 27:24;
28:4, 4; 29:9
given 5:11; 12:5; 13:1;
21:22; 24:8; 25:8, 8, 9;
29:5
giving 8:9; 24:3
globally 20:13
goes 29:3
Good 2:5, 9, 11; 18:16;
29:1; 39:15; 42:20; 51:10
grant 33:17, 17; 38:24
granted 7:17; 33:24;
34:15, 18
great 18:21
guarantee 35:20
guess 31:22
guidance 37:16; 38:15,
18
guy 6:22; 11:1

# H

**hand** 18:13
**handle** 2:22
**happen** 4:16; 14:5;
23:23; 25:5; 29:18; 35:20,
21; 49:13
**happened** 14:6; 15:9;
29:18
**happens** 14:17; 15:12
**happy** 9:1; 44:15
**hard** 21:18
**Hayworth** 10:12; 24:12;
40:16
**Hayworth's** 40:2, 7
**Heap** 10:22; 12:3, 6, 9;
15:13, 13, 20; 16:14;
24:16; 34:19; 37:9; 40:14,
18, 19
**Heap's** 16:2, 9, 12; 33:20
**hear** 10:1; 39:11; 43:4
**Hearing** 9:9; 10:13;
20:21; 28:10, 12, 14; 30:7,
22, 23; 41:10
**hearings** 30:17
**heating** 22:6
**held** 30:7
**help** 4:11; 7:19
**Henits** 36:6
**Here's** 5, 5
**high-level** 24:4
**hoc** 16:23
**Honor** 2:6, 11, 14; 4:6, 15;
5:17; 7:2, 14; 9:2, 4, 14;
10:5; 12:2, 11; 13:3; 14:13;
18:5; 19:4; 20:19, 20, 20;
22:4; 25:6; 26:7, 8; 27:21;
28:16; 32:15, 22; 34:4, 12;
35:1, 19, 20; 36:11; 37:1,
12; 39:17; 40:7; 41:4;
44:12, 19; 45:20; 46:24;
47:23; 49:14; 51:11, 12;
52:9, 12, 13
**Honor's** 24:8
**hopefully** 8:23; 42:5
**Hothouse** 16:17
**How's** 22:12

# I

**idea** 42:20; 43:22; 44:2
**identified** 3:23; 10:8;
14:23
**immediately** 14:1
**impact** 26:4
**impacts** 23:14
**important** 43:1
**inadvertently** 6:15, 16
**Inc** 11:14, 16; 32:8
**including** 21:7
**individual** 10:18, 20;
24:7

**individually** 27:12, 16,
19
**individuals** 40:21
**infringement** 15:19, 24;
26:19; 45:13, 15; 46:14, 15
**initial** 25:23; 47:12; 48:23
**interest** 44:17
**interested** 43:22; 44:8
**interpreting** 41:20
**interrogatory** 14:23
**interrupt** 28:21
**intimate** 16:18
**intimately** 28:5
**into** 13:17; 33:4; 39:12;
42:1; 44:2
**invalidity** 15:18; 22:3;
23:19; 45:2, 5; 47:2, 6, 13;
48:18, 19; 49:17; 51:15, 24
**involves** 22:8
**ironic** 17:15
**issue** 4:4; 10:14; 12:3;
15:17, 23; 20:5, 22; 36:22;
49:17; 50:9
**issued** 28:19; 31:8, 9
**issues** 2:15, 20; 3:6, 7, 8,
10, 17; 4:8, 16; 18:10, 12;
19:24; 20:2, 9; 22:9; 32:11;
37:13

# J

**jammed** 26:6
**January** 29:4; 43:12, 16,
21
**Joe** 2:7, 8; 14:19
**John** 16:21
**Judge** 22:14; 31:7, 12,
19, 21; 41:22; 44:2, 6
**judgment** 33:2
**juggle** 23:15
**July** 23:11; 46:6, 11;
47:24; 48:6, 8
**jurors** 42:18
**jury** 42:13; 43:2
**justice** 33:13

# K

**Kaye** 2:8; 19:19
**keep** 17:6; 42:8
**keeping** 32:14
**Kent** 2:4, 11, 14, 18; 3:4;
4:14; 5:17; 6:4; 7:1, 4; 9:4,
7, 14, 20; 10:4; 12:2; 14:9;
17:9; 18:11, 12; 20:20;
22:11, 13; 26:10; 27:14,
17; 28:16, 19; 29:13, 22;
30:1, 3, 11, 18, 20, 23;
31:4, 9, 24; 32:10, 14, 19,
21; 33:1, 5; 34:4, 11, 24;
35:8, 11, 15, 19, 23; 36:3;
37:15; 39:17, 20, 24;
40:15, 19; 41:1, 4; 43:13;
44:12, 15, 18, 24; 45:17;

46:8, 21, 24; 47:4, 10, 17,
21; 48:16; 49:1; 50:16;
51:12, 21; 52:4
**key** 15:21
**kind** 5:7; 32:17
**kinds** 3:1
**Kingdom** 16:15; 33:22
**knew** 6:1; 13:23
**knowledge** 18:22
**knowledgeable** 14:24;
16:10
**knows** 22:4; 24:5

# L

**language** 41:20
**last** 15:12; 25:11
**late** 22:1
**lateness** 25:8
**later** 26:23
**lawsuit** 7:13
**least** 25:19; 26:2, 5;
30:24; 32:22
**leave** 6:23
**leaving** 33:14
**left** 17:22
**legacy** 15:15
**legal** 6:18, 21; 8:10
**lengths** 18:21
**less** 9:21; 19:15; 42:14
**letter** 36:8
**limit** 23:21
**limited** 3:20
**line** 13:22
**listed** 4:10
**listen** 39:4
**litigation** 8:9; 15:17, 24;
27:24
**little** 2:13; 5:1; 37:22
**lives** 10:22
**load** 33:4
**located** 16:14
**London** 21:8, 13; 24:19;
25:10
**long** 32:22; 49:1; 50:14
**look** 16:19; 34:3; 39:2;
52:10
**looking** 23:23; 44:7
**looming** 23:17
**lot** 23:13; 27:10; 33:8

# M

**magnitude** 13:6
**majority** 13:8
**making** 39:8; 46:8
**many** 17:11; 21:9, 21;
22:9; 24:14; 26:10; 41:18;
45:6
**Markman** 28:9, 11, 14;
30:7, 17; 41:9, 13, 17, 19;

42:20; 43:5; 45:16; 46:10;
47:16
**MARSDEN** 2:3, 3; 52:12
**Master** 28:19; 29:9; 30:7;
31:6, 6, 16; 43:23
**matter** 21:6, 23; 25:24
**may** 2:14; 7:6; 13:2; 21:7;
25:11; 28:16; 37:13;
38:24; 39:17; 46:8; 51:22
**maybe** 6:20; 14:20;
17:12; 35:12; 37:15; 45:8;
48:16
**McKelvie** 31:7
**mean** 5:14; 7:11; 28:21;
29:10
**mechanism** 45:1
**meeting** 6:21
**meetings** 6:20; 7:7
**Melanie** 2:6
**members** 11:20
**mentioned** 4:20; 44:19
**merger** 11:13
**met** 2:18; 8:13
**mid-July** 41:16
**might** 2:22; 33:1; 51:15
**million** 13:11; 20:24
**mind** 39:15
**minutes** 10:11; 11:8; 24:9
**misstate** 7:20
**misunderstanding** 6:3;
12:20; 13:20; 15:10
**mixed** 6:20
**modification** 31:13
**modify** 31:20
**moment** 23:7
**Monday** 39:15
**month** 4:3
**months** 25:21
**more** 4:4, 8; 9:16; 25:16,
18; 41:19; 45:20; 50:21
**morning** 2:5, 10, 11, 18,
22; 4:17, 19; 39:3
**most** 3:12; 34:13
**motion** 2:16; 3:5, 10; 5:6;
6:12; 7:16, 22; 9:24; 12:12;
14:8; 15:5; 17:10, 18; 18:7,
10, 18, 19; 23:4; 26:9;
27:22; 31:17; 33:18, 24;
34:4, 11, 15, 17, 18, 20;
35:6, 9; 36:9, 24; 38:14,
21, 23; 39:1; 40:8, 11, 23
**motions** 2:20; 5:7; 8:22;
18:17; 20:1; 31:11; 33:14,
17; 39:6
**move** 19:17, 20; 33:7;
38:6; 50:7
**much** 20:15; 23:16; 33:9;
52:5
**Murray** 14:17; 24:10, 20;
40:5
**myself** 46:9

# N

**name** 10:12; 11:15
**named** 10:22; 36:3
**names** 10:21
**Nancy** 17:18
**narrow** 36:22; 41:19;
45:9; 46:18; 47:5, 9, 15;
48:10; 50:11, 16, 19, 21,
22; 51:1
**narrowed** 14:7; 17:7
**narrowing** 42:23; 44:20;
47:11; 48:22; 49:9, 24;
50:15
**near** 5:22
**necessary** 9:17; 12:4
**need** 11:20; 14:15; 26:4;
27:2; 45:9; 48:19, 21
**needed** 13:24
**needs** 25:18; 29:5
**negotiate** 12:22
**negotiating** 23:9
**neither** 9:1
**nervous** 6:8, 9
**new** 7:5; 21:13
**next** 22:15; 44:10
**Nice** 2:2, 7, 20; 3:10, 15;
10:6; 13:9; 21:3, 9; 27:1;
30:16; 32:8, 12; 34:12, 16,
18; 38:21, 23, 24; 39:21;
41:10; 44:20
**Nice's** 18:22; 33:17;
36:24
**night** 20:7; 37:23
**non-technical** 14:4
**none** 29:2
**Northern** 22:5
**note** 26:9
**notes** 9:5; 34:21; 35:3
**notice** 4:9; 25:8
**noticed** 5:21; 12:17; 13:4,
5, 17; 19:7, 21; 37:17
**notices** 13:9
**number** 13:5; 25:9; 34:5;
45:15

# O

**object** 14:10
**objection** 29:21; 31:11,
17; 51:2
**objections** 29:22, 24;
30:4
**obligated** 49:16
**obligation** 18:9; 25:15;
38:22
**obligations** 39:18
**obviously** 19:14; 41:12
**occasions** 12:21
**occur** 43:21
**offer** 24:6
**offered** 4:21; 17:17, 18,

19; 23:12; 24:2; 27:18;
30:10, 16; 34:12; 35:24
**offering** 10:20; 24:9;
27:19; 34:6
**once** 13:22; 24:6; 43:24
**one** 5:6; 6:12; 8:3, 16;
10:22; 11:10, 18, 23; 12:8;
15:21; 16:8, 20, 21; 18:13;
23:5; 24:9; 25:2; 27:18;
28:3; 29:5; 32:4, 5, 6; 33:1;
36:3, 24; 41:9; 44:18
**ones** 4:19, 20; 8:14
**only** 14:15; 15:7; 21:19;
26:24; 27:20; 28:3; 43:24;
44:22; 45:6; 47:8; 49:6;
50:18
**open** 46:15
**opening** 45:14; 51:19
**operations** 18:23
**opinion** 18:1; 19:2;
29:10; 32:7
**opinions** 46:16
**order** 12:16; 19:12;
25:22; 29:10; 33:24; 35:5;
36:15, 17; 41:17; 42:6;
45:16; 46:11; 47:16; 49:8,
9; 51:1, 6; 52:7, 8
**ordered** 22:16
**ordering** 40:4, 17
**original** 25:21
**Originally** 12:14; 14:2
**others** 29:19; 40:16
**Otherwise** 8:24; 35:17;
39:11
**out** 2:15; 4:11, 16; 5:8, 9,
14; 6:11; 8:22; 17:12;
21:20; 30:6; 33:1, 20;
34:21; 37:13; 42:18; 43:3;
48:5, 7
**outcome** 13:21
**outset** 14:3; 17:9
**outside** 5:8; 9:20; 25:13
**outstanding** 2:20
**over** 8:6; 13:10; 18:8;
21:7; 26:15; 32:4; 39:12
**overlapping** 16:4
**own** 15:16; 33:14

**P**

**page** 35:16
**pages** 13:11
**papers** 38:20
**pare** 45:6
**part** 14:3; 17:17; 40:22;
43:1
**particular** 15:2
**parties** 2:15; 12:21; 13:8;
15:10; 19:12; 22:17; 23:9,
14; 31:10, 16; 40:9; 49:15
**partner** 11:1; 12:4
**parts** 49:7
**party** 26:24
**past** 45:16

**patent** 15:24
**patents** 19:1; 20:23; 22:2;
42:7
**path** 5:10
**pending** 22:5; 23:4;
27:22; 28:23; 32:13
**people** 10:16; 13:23;
14:22; 15:21; 16:3; 24:9;
27:18; 42:13
**perceive** 22:18
**perhaps** 47:22
**period** 12:19; 21:16, 18;
23:1; 25:14; 41:14; 45:4,
10
**person** 15:12; 24:5
**personally** 37:21
**phases** 5:20
**phone** 17:9
**phonetic** 15:14
**pick** 11:10; 41:1
**place** 45:1
**plaintiff** 10:3; 19:15;
49:10; 51:1
**plaintiff's** 9:24; 51:6
**plans** 12:9
**play** 42:15
**plays** 44:2
**point** 14:2; 18:17; 44:14,
16, 18
**position** 19:18; 20:17
**positions** 18:16, 19
**possibility** 29:2, 4
**possibly** 18:2; 25:7
**Potentially** 18:2
**power-point** 3:23
**practiced** 32:21
**precluded** 15:3
**prejudice** 26:16, 18; 46:2
**prejudiced** 26:24
**preliminary** 23:5
**preparation** 22:22; 23:2
**prepare** 27:1
**prepared** 3:14; 4:8;
13:13; 38:6, 21; 41:10
**presentations** 3:23
**president** 14:18
**presume** 31:23
**pretrial** 14:12; 22:22;
44:3
**pretty** 20:15; 24:3
**prior** 27:14
**privilege** 8:7
**privileged** 6:17
**probably** 22:18; 33:15;
45:12
**problem** 7:9; 25:1; 46:20;
50:18
**procedure** 44:13, 19
**proceedings** 2:22
**processed** 21:3
**produce** 3:11, 22; 10:13,
18; 11:17; 17:2; 24:13;
27:16, 19, 21; 40:4; 48:19

**produced** 4:2; 6:15, 16;
13:10; 19:12; 20:24; 21:2;
27:23
**production** 3:8; 21:4
**products** 12:6; 15:1, 16,
17; 24:5
**progressing** 29:7
**properly** 37:17
**proposal** 33:18; 34:19;
35:10; 36:15; 49:23
**provide** 3:14; 18:21;
20:4; 26:11; 36:12; 37:15;
38:16, 17
**provided** 20:6, 15; 27:8;
29:11; 41:22
**prudent** 33:15
**purport** 26:17, 18
**purposes** 6:11; 17:21;
36:15; 50:20
**push** 43:16, 19
**put** 6:5; 20:1

**Q**

**quantity** 19:14, 16
**quarterly** 8:13
**quickly** 21:2
**quite** 5:18

**R**

**rationale** 29:11; 41:21
**read** 3:1; 48:17
**reading** 38:20
**ready** 3:14; 13:18; 19:20;
42:24
**real** 12:2
**realize** 9:17
**realized** 12:20
**really** 5:14; 23:6; 42:24;
43:5
**reason** 15:7; 27:6
**reasonable** 18:14; 24:3;
45:18; 49:2
**reasonably** 18:12; 21:15
**receiving** 15:3
**recent** 3:24; 11:13
**recently** 21:2
**recessed** 52:15
**reciprocated** 19:5
**recognized** 20:21
**recollection** 16:1
**recommendation** 28:20;
29:9; 31:10, 15
**recommendations**
29:15; 44:5
**reconvened** 9:11
**record** 7:16; 48:18
**recording** 15:23
**reduction** 51:6, 7
**reference** 8:16
**refused** 13:16; 16:9;

17:4, 12
**regard** 12:22; 15:11;
18:7, 10, 19; 19:6; 27:24; 32:1
**regarding** 15:3
**regardless** 20:16
**reiterate** 35:11
**relate** 37:16, 19
**relates** 27:22
**relating** 20:2
**relationship** 11:17;
16:18; 18:24
**rely** 16:5; 17:5
**relying** 15:8
**remain** 19:24
**remained** 18:10
**remaining** 3:12
**remember** 7:8
**reply** 26:22
**report** 23:19; 26:19, 22;
27:2; 28:20; 29:8; 31:9, 14;
45:2; 47:2, 5, 6, 13; 48:13,
13, 14, 19, 23; 51:17
**reported** 6:19
**reporting** 21:24; 22:22;
23:2, 17; 25:19; 26:3
**reports** 6:20; 22:3; 25:23;
29:15; 44:5; 47:20; 48:3;
49:16; 51:5, 19
**reprieve** 26:5
**request** 14:12; 34:2
**requested** 3:20; 10:16;
40:13
**required** 42:6
**resident** 17:5
**resolution** 13:18
**resolve** 5:6; 19:3; 20:2, 9,
13; 37:14
**resolved** 18:12; 41:6
**resolves** 41:5
**response** 51:24
**responses** 14:23
**responsibilities** 16:3
**rest** 34:14
**result** 44:9
**review** 8:10
**Richard** 10:22; 15:13, 13
**Richardson** 2:4; 19:18
**right** 2:1, 9; 3:4; 8:20;
9:12; 11:13; 12:1; 22:6;
24:21; 34:22; 35:5, 13;
36:2, 14; 37:10; 40:24;
45:24; 46:12; 48:24;
49:21; 50:3
**rise** 52:14
**road** 38:14
**rolled** 21:4
**rolling** 19:8, 9, 13
**room** 50:8
**Rosenblatt** 36:4
**round** 48:20
**Rudnick** 3:24
**Rule** 3:9; 51:4
**ruled** 10:11; 11:8

**ruling** 8:21; 11:9; 22:24;
24:8; 28:7; 41:13, 17;
42:22, 22; 43:5; 44:21;
45:10; 48:4
**rulings** 42:2
**run** 20:1

**S**

**same** 8:2; 22:8, 9, 9;
35:16; 45:13; 47:1; 48:20
**satisfied** 4:5
**satisfy** 3:17
**Saturday** 39:12
**save** 9:5
**saw** 8:15
**saying** 40:15; 46:6, 13,
23; 47:14
**scale** 41:10; 42:6, 19
**schedule** 14:12; 21:9;
23:15, 24; 26:4, 21, 23;
49:15; 50:8
**scheduled** 5:24; 13:14;
21:20; 22:15; 26:1; 28:22;
29:6
**scheduling** 12:15; 21:7;
22:13; 23:10; 25:22;
28:24; 44:10
**Scholer** 2:8; 19:19
**scope** 3:20; 22:19; 25:9
**score** 32:15
**Scott** 17:17
**search** 3:21
**second** 22:21
**seeing** 49:13
**seek** 12:18; 16:12; 20:16
**seeking** 27:5, 6; 37:18
**seems** 7:9
**select** 38:24
**selected** 10:7
**send** 5:8; 44:4
**senior** 14:18
**sense** 41:20, 21
**separate** 3:6
**serve** 6:10; 16:22
**served** 13:8; 45:20
**service** 24:18, 22
**set** 28:2; 52:3
**settle** 41:23; 43:8, 18
**settlement** 43:17
**settles** 43:5, 7
**seven** 13:10; 14:8; 20:24;
40:12, 20
**several** 8:2; 12:21
**share** 38:18
**SHARP** 2:6, 7; 7:19; 17:8;
50:6, 12; 51:8; 52:5, 9, 13
**short** 23:1
**show** 39:15
**showed** 7:7
**side** 15:18, 19; 32:4
**sides** 30:2

significantly 18:1; 19:15
six 20:24
small 43:7
Software 16:17
solely 16:5
solution 15:23; 50:13
someone 15:13; 17:1
sometime 41:16
sometimes 7:12
sorry 5:16; 22:11; 34:9,
16
sort 23:5; 41:18
sought 14:1
Sounds 51:10
source 20:6; 37:20, 22;
38:4
speak 9:23
Special 28:19; 29:9; 30:7;
31:5, 6, 16; 43:22
specific 8:6, 9, 10
spill 39:11
spin 6:4
spirit 18:20
split 31:23; 32:10
Spohrer 10:16; 14:16;
17:19; 24:4; 27:7, 17
Spohrer's 40:3
spring 21:5
squeezed 25:20
stage 23:6; 41:21
stand 11:12; 24:21
start 12:12
started 19:9
state-of-the-art 15:22
stated 17:2, 3
statements 14:24
status 24:22
stay 23:5
steadily 19:22
still 6:23; 7:1; 10:17;
11:11; 19:9; 22:1; 23:16,
22; 25:16
stipulating 14:12
Storey 22:14
STS 28:22; 32:7
stuck 42:17
stuff 7:11
subcontractor 10:24
subject 7:22; 40:23
submit 36:17, 21; 48:13,
14; 52:6
submitted 51:3
subpoena 24:18, 23
sufficient 17:21
sufficiently 47:12
suggest 45:17
suggested 26:14
suggesting 45:8; 47:1
sum 20:14
summary 33:2
summing 52:7

sure 2:21; 5:18; 9:19;
35:3, 15; 37:14; 39:19;
40:1; 46:17; 48:4, 21;
49:12; 50:5
Systems 2:20; 3:5;
10:10, 24; 11:1, 2, 14, 15,
15; 16:19; 20:16; 21:1, 3;
26:17; 27:1; 32:7, 8, 12

**T**

TAC 24:8, 10, 13
Tack 10:10, 14; 11:7
talk 8:21
talking 8:8; 25:23; 51:16
target 33:10
teaches 42:2
technical 13:23; 15:1;
20:7; 27:4; 37:21; 38:4
technology 14:20, 21;
15:21
telephone 4:7
telling 44:23
tells 32:17
ten 20:23; 22:2; 42:14;
45:6
term 9:16
testify 12:7; 30:14; 36:4,
6
testifying 7:9
testimony 3:14; 12:5;
15:3; 18:22; 20:3; 27:9;
37:18
thinking 43:11; 51:23
third 22:23; 31:14
thoroughly 16:7
though 21:23; 25:14;
43:6
thought 4:7; 35:4; 43:3
three 10:21; 17:13, 20;
21:13; 22:5; 23:8; 25:21;
32:15; 40:16; 44:4
three-month 14:11
throughout 21:4
throw 42:16
tight 23:24
timely 3:22
timing 22:19
today 11:8, 13; 16:13;
24:3; 47:24; 49:7
today's 36:15
told 5:3; 41:15
took 13:22; 25:12; 37:24
topic 3:7, 9
topics 3:12, 18; 4:12, 18;
10:7; 20:4; 34:5, 13; 36:4,
6; 37:17, 18
total 34:2
town 21:21
tracking 25:11
traveling 21:21
Treaster 17:18
tremendously 42:7

trial 6:10; 12:9, 10; 14:11;
16:6; 23:2; 26:4; 28:2, 22;
29:5; 32:18, 23; 33:6;
42:12; 43:1, 16; 44:2; 50:9,
22
trials 42:9
tried 4:15; 5:22; 26:11;
27:1
trigger 23:1
triple 25:11
true 16:14, 15, 16
Trust 9:1
try 2:24; 21:8, 15; 42:14
trying 23:15; 30:5; 33:3, 9
tweaking 36:18
twice 43:24
two 2:20; 3:5, 7, 11; 5:7,
20; 7:21; 10:6, 7; 11:6, 20,
23; 15:6; 16:3; 21:12; 24:9;
27:21; 29:14, 15; 30:24;
31:12; 32:22; 33:18; 34:6,
7, 12; 35:10, 24; 37:13;
38:24; 39:23; 49:7
two-phase 5:15; 6:2
type 8:2
typically 42:19

**U**

U.K 10:23; 13:23; 17:5
U.S 11:6
ugly 35:22
ultimately 40:12
Under 11:3, 4; 26:23;
49:22, 23
Understood 8:18; 37:1;
39:13, 24; 40:1; 44:24;
49:14
United 16:15; 33:22
unless 8:6; 41:22
unreasonable 25:6
unusual 37:23
unwilling 17:23
up 4:22; 7:7; 20:14; 21:24;
22:6; 23:18; 36:18; 39:15;
46:15; 50:24; 52:7
upon 10:12
use 9:15; 38:15
used 10:9
useful 27:9, 9

**V**

v 32:7, 12
valid 18:19
validity 45:20
various 16:23, 23; 32:11
Verint 11:14, 15
vice 14:18
view 44:14
viewed 21:17
virtually 27:9

voluntary 18:5, 6; 42:5

**W**

wait 13:1; 47:4
waiting 25:4; 28:20;
31:19; 41:12, 13
wall 42:17
wants 16:5; 41:22
Watson 14:19; 24:10, 20;
40:5
wave 39:5
way 6:23; 19:17; 24:17;
29:5; 45:1; 46:2; 48:17
ways 24:14
Wednesday 22:15
week 25:11; 44:10
week's 21:8
weeks 10:7, 8; 20:22;
25:24; 34:7
weren't 26:6; 40:22
what's 43:2, 21
whatsoever 26:16
whichever 6:10
who's 26:24; 52:6
whole 5:21; 43:22
William 2:3
willing 11:9, 19, 22; 14:9;
17:11; 26:11; 27:15, 20;
34:13
winter 21:5
wisdom 39:6
withdraw 3:18; 4:9, 19;
34:14
within 21:16
without 19:4; 29:16;
31:13; 40:18; 50:9
Witness 2:2, 4; 3:4; 4:8,
9, 21; 7:8; 10:9, 10, 23, 24;
11:2, 14; 12:13, 22; 13:10,
10, 15; 14:1, 4; 15:1, 15;
16:4, 6, 11, 19, 24; 19:15;
20:3, 8, 10, 15; 21:1, 20;
26:16; 27:8; 30:18, 21;
32:7, 12; 33:22, 24; 34:1,
17, 20; 35:6, 9, 24; 38:1, 2,
3, 21; 39:18
witnesses 2:16; 3:11, 13;
10:6; 13:5; 16:7; 21:9;
22:9; 25:9; 27:21, 23;
30:24; 31:3; 33:19, 21;
34:6, 12; 36:1, 12; 39:1
words 8:8; 32:3; 51:18
work 4:16; 5:8, 9, 14;
6:11; 8:22; 24:5; 28:3, 5;
32:9; 33:4; 42:17, 18; 45:5;
51:9
worked 2:15; 15:14
working 43:20
works 10:24; 30:6
worth 21:8
wraps 36:18
write 44:9
wrong 30:19; 47:24

**Y**

yesterday 4:7, 15, 24;
14:14; 17:13, 15; 26:14
York 21:14
Young 2:7

**Lawyer's Notes**

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:05-CV-142 (DF) |
| CITIBANK, ET. AL., | § § | |
| Defendants. | § § | |

## ORDER

Pending before the Court is Plaintiff's Motion for Partial Reconsideration of the Court's May 8, 2006 Orders Limiting the Number of Asserted Claims, or in the Alternative, Request for a Status Conference and Guidance (Doc. No. 129). In light of the issues raised by Plaintiff's motion, the Court set this matter for status conference, which was held on June 15, 2006. At this status conference, the parties informed the Court that they had reached an agreement regarding the issues raised by Plaintiff's motion for partial reconsideration. In accordance therewith, the Court had the parties dictate the terms of their agreement into the record:

Mr. Neal: [L]et me outline the proposal as I understand it, and then maybe you can add in the dates. But the proposal that was made this morning, which we have accepted, is that we have already – we have identified ten claims in response to the Court's earlier Order.

The Court: And for the record, you know, and I don't want to rock the boat on an agreement. When I entered that Order, that was never with the impression or understanding, perhaps I should have clarified that more, that that was going to be collateral estoppel and you would never be able to try anymore claims. I have come to the, I will go ahead and make the lawyers that were in chambers listen to this a second time. I have tried two of these cases, as many of

you are aware, in the last four months. I have about reached the opinion that about ten claims at any one trial is about all the Court, the staff, and the jury can endure now, I know that's not an ironclad rule. It depends upon the number of parties and the terms and the technology and the number of accused products or systems, but that's sort of a rule of thumb that I am approaching, with these trials lasting no more than two weeks. I am about of the opinion that's about all the jury can endure.

So that's sort of how I arrived at that number. I Probably should have had this meeting in advance of that and maybe we would have saved everyone a lot of concern, but I didn't. Anyway, we are here today, so you may go on.

Mr. Neal:     I appreciate that, and, your honor, I think your Order actually brought about discussions that have achieved the same end anyway.

The Court:     And I appreciate the efforts, by the way, of everyone. I much rather you have worked through this than me try to arrive at something that I felt was reasonable that probably both parties would have felt was unreasonable. So I like this spirit of cooperation.

Mr. Neal:     The proposal, with the Court's permission, would be that we will continue with the ten claims that we asserted in response to the last Order. We will add an additional, up to an additional eight claims. Those additional eight claims will be drawn from among the original forty-five that we asserted earlier this year, and those additional eight claims will be drawn one per patent from eight of the patents that are not yet put in issue by the ten claims that we have asserted.

The Defendants have agreed, consistent with the comments that your Honor just made, that any patents that are not put in issue by the claims that are identified will be dismissed without prejudice.

The Court:     Or we can sever those out and the counterclaim that relates to it. Again, I am not trying to rock the boat. We didn't discuss that in chambers, but whatever way the parties want to approach it. If you have agreed to simply dismiss those without prejudice, well and fine.

2

| Mr. Neal: | Yeah, and the declaratory judgment actions with respect to those claims, those patents will also be dismissed without prejudice. There are some proposed modifications in the briefing schedule that Mr. Rooklidge can address in a moment.  If at the close of discovery, and after the claims construction rulings, we obviously reserve the right under the local rules for good cause to move not to add claims but to substitute claims.  If as a result of either the *Markman* ruling or discovery, or both, we want to make such a motion, the Defendants agree that we can make that motion pursuant to the local rules.  And without committing to it at this point in time, I will reiterate to your Honor that it is my belief and our intention that by the time of trial, we will in fact reduce the number of claims somewhat further.  I don't know whether we will reduce it to ten or to twelve or to fifteen, but – |
|---|---|
| The Court: | That is something we can address after claim construction.  It's my initial thoughts, without knowing more, that we couldn't go forward with all those as to all Defendants in one trial.  But that's something we can address after the Court enters a claims construction order and the parties have opportunity to digest that. |
| Mr. Rooklidge: | There are just a few additional details.  One, your Honor, is that the claims that are selected against the individual Defendants, that are asserted against the individual Defendants, must be claims that were asserted against those individual Defendants from the original forty-eight. |

Tr. of June 15, 2006 at 5:9 - 8:17.  Accordingly, the parties agreement in principle was that Plaintiff would go forward on eighteen claims taken from the original forty-eight patents and any patents not represented by one of the asserted claims would be dismissed without prejudice.

Despite this agreement, the Court was advised by letters from both parties that additional details not previously contemplated have frustrated the agreement.  *See* Letter From Defendant's Counsel dated June 26, 2006, attached hereto as Exhibit A; Letter From Plaintiff's Counsel dated June 27, 2006, attached hereto as Exhibit B.  To wit, Defendants would not agree to tolling the damages period for those patents that would be dismissed without prejudice or, alternatively,

severing out such patents to relinquish the same concern. Based on this correspondence and a review of the record, it is apparent to the Court that the six year statutory limitation on damages was not contemplated by the parties. *See* 35 U.S.C § 286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."). Moreover, such was readily admitted by counsel for all parties in a conference held in chambers on July 11, 2006, during which time the Court discussed resolution of this matter and requested additional letter briefing on the subject. *See* Letter From Plaintiff's Counsel dated July 14, 2006, attached hereto as Exhibit C; Letter From Defendant's Counsel dated July 18, 2006, attached hereto as Exhibit D.

To this end, the Court finds that the agreement contemplated by the parties is not binding. The parties did not form a binding contract but rather an agreement to agree. Under Texas law, "a contract is 'legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations.'" *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 323 (5th Cir. 2006) (quoting *Fort Worth Indep. School Dist. v. City of Fort Worth,* 22 S.W.3d 831, 846 (Tex. 2000)). And an agreement to make a future contract is only enforceable if "all essential terms" are specified. *Id*. "By contrast, where an agreement leaves essential terms open for future negotiations, it is not a binding contract but, rather, an unenforceable 'agreement to agree.' " *Id.* (citing *Pine v. Gibraltar Savings Ass'n,* 519 S.W.2d 238, 244 (Tex.Civ.App.Houston 1975)). "Thus, whether the agreement is an enforceable contract turns upon whether its 'essential terms' are set forth in the agreement or are left to future negotiation." *Id.*

Here, the essential terms were not set forth in the agreement dictated into the record. The effect of Section 286 is clearly an essential term which the parties failed to specify. Without more,

4

it is clear that the parties contemplated an agreement to agree as opposed to a binding contract. Thus, the terms of the agreement are not binding on the parties.

Because the parties failed to reach a binding agreement, Plaintiff's motion for reconsideration remains pending and is ripe for consideration. In this regard, the Court is inclined to enforce the substance of the parties' agreement yet sever out the unrepresented patents. Consistent with the Court's comments repeated above, it was never the Court's intention that its requirement to limit the number of claims have an estoppel effect. Absent the agreement contemplated by the parties, the Court was prepared to divide the asserted patents into groups based on some commonality and proceed to trial in a piecemeal fashion or to allow Plaintiff to proceed with a reasonable number of claims, as previously directed, and sever out those patents not represented by the respective claims. Regardless, the underlying concern was the same – preservation of Plaintiff's rights under the patent system. And this can be accomplished by allowing Plaintiff to proceed as the parties contemplated yet severe out the remaining patents and respective counterclaims rather than dismiss the same without prejudice.

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Partial Reconsideration of the Court's May 8, 2006 Orders Limiting the Number of Asserted Claims, or in the Alternative, Request for a Status Conference and Guidance (Doc. No. 129) is hereby GRANTED. After further review, and in consideration of the agreement contemplated by the Plaintiff, Ronald A. Katz Technology Licensing, L.P., and the Defendants, Discover Financial Services, Inc., Discover Bank, T-Mobile USA, Inc. Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., Wal-Mart Stores Texas, L.P., Sam's East, Inc., Sam's West, Inc. and Wal-Mart.com, Inc., on June 15, 2006, it is hereby

ORDERED that in addition to the 10 patent claims selected by Plaintiff on May 16, 2006

5

(Docket No. 128), Plaintiff is permitted to select up to 8 additional patent claims under the following restrictions: (1) each additional patent claim selected by Plaintiff must come from a patent not previously asserted in the patent claims selected on May 16, 2006 (Docket No. 128); (2) only one claim per patent may be selected; (3) each additional claim selected must come from the set of 48 claims asserted by Plaintiff against the Defendants in Plaintiff's Supplemental Disclosures of Asserted Claims and Preliminary Infringement Contentions, served on February 27, 2006; and (4) each of the additional selected claims may only be asserted against a defendant against whom that claim was previously asserted pursuant to Plaintiff's Supplemental Disclosures of Asserted Claims and Preliminary Infringement Contentions.[1]  It is further

ORDERED that with respect to patents from which Plaintiff did not select any of its 10 claims on May 16, 2006 (Docket No. 128) and for which Plaintiff does not select any of its up to 8 additional claims, the claims and counterclaims of all parties shall be severed pursuant to Rule 21 of the Federal Rules of Civil Procedure, and the severed action along with any corresponding discovery shall be stayed.[2]  It is further

ORDERED that the following amendments are made to the Amended Docket Control Order (Docket No. 125):

---

[1] As evidenced by the parties' joint claims construction and prehearing statement filed July 27, 2006, (Doc. No. 161), Plaintiff has apparently selected eighteen claims in accordance with the parties' proposal.  Nevertheless, the Court enters this order requiring compliance with these provisions.

[2] The parties shall file a joint motion to severe with proposed order severing out the respective claims and counterclaim consistent with the Court's ruling herein within ten (10) days of the date of this order.

| STEP | ACTION | RULE | DUE DATE |
|------|--------|------|----------|
| 18 | Patentee files opening claim construction brief | Patent L.R. 4-5(a) | August 11, 2006 |
| 19 | Accused Infringer files responive claim construction brief | Patent L.R. 4-5(b) | August 25, 2006 |
| 20 | Patentee files claim construction reply brief | Patent L.R. 4-5(c) | September 1, 2006 |
| 21 | ONLY WITH LEAVE OF COURT Accused infringers file sur-reply brief on claim construction | | September 8, 2006 |
| 22 | Parties file Joint Claim Construction Chart | Patent L.R. 4-5(d) | September 12, 2006 |
| 23 | Pre-hearing Conference and technical tutorial | | Tuesday, September 19, 2006 at 1:30 p.m.  Each shall have 1 hour to present. |
| 24 | Claim Construction Hearing | Patent L.R. 4-6 | Wednesday, September 20, 2006 at 9:00 a.m.  Each side shall have 2.5 hours to present. |
| 37 | Deadlines for objections to other parties' expert witnesses | | January 22, 2007 |

It is further

ORDERED that Plaintiff's opening claim construction brief shall be limited to sixty (60)

pages.  Defendants shall file one, joint responsive brief concerning issues about which that all agree

limited to sixty (60) pages and, upon leave of Court, each Defendant group may file a responsive

brief concerning issues about which it disagrees with the other Defendants, if any, limited to ten (10)

pages.  Additionally, that parties shall, within one week of filing their respective briefs, file a

hyperlinked electronic brief that hyperlinks all evidentiary and legal citations to the material that have been submitted.

Additionally, as indicated in the Court's amendments to the docket control order above, the Court have allotted each side 2.5 hours for the claim construction hearing. In this regard, "side" means a party or a group of parties with a common interest. Thus, Defendants shall divide their respective time amongst themselves. If they are unable to do so, they shall notify the Court, and the Court will divide the time accordingly.

Finally, the parties have requested the Court indicate its preference of the two proposed formats for the claim construction hearing: Plaintiff proposes a term-by-term procedure, whereas, Defendants propose that Plaintiff presents its argument in its entirety followed by Defendants' argument. To this end, the Court would prefer Defendants' proposal, and Court will allow the parties to reserve time for rebuttal.

**SIGNED this 1st day of August, 2006.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE