# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

     *Plaintiffs*,

       v.

WITNESS SYSTEMS, INC.

     *Defendant*.

Civil Action No. 06-311-JJF

---

## DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF DEFENDANT WITNESS SYSTEMS, INC.'S MOTION  FOR PARTIAL SUMMARY JUDGMENT ON LACK OF WILLFUL INFRINGEMENT

DATED:  November 2, 2007

FISH & RICHARDSON P.C.

William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware  19899-1114
Telephone:  (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone:  (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

I, Kyle Wagner Compton, declare as follows:

1.     I am an Associate with Fish & Richardson P.C., counsel for Defendant Witness Systems, Inc. ("Witness Systems").  I make the following statements based on personal knowledge.

2.     Attached hereto as Exhibit A is a true and correct copy of Witness Systems' First Set of Interrogatories to NICE Systems, Inc. and NICE Systems, Ltd. (collectively, NICE").

3.     Attached hereto as Exhibit B is a true and correct copy of NICE's Amended Objections and Responses to Witness Systems' First Set of Interrogatories.

4.     Attached hereto as Exhibit C is a true and correct copy of Witness Systems' Objections and Responses to NICE's First Set of Interrogatories.

5.     Attached hereto as Exhibit D is a true and correct copy of Witness Systems' Fourth Supplemental Response to NICE's Interrogatories 2 and 2(a).


I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.


Executed on November 2, 2007.

                                          /s/ Kyle Wagner Compton
                                          Kyle Wagner Compton (#4693)

1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 2nd day of November, 2007, I electronically filed with the

Clerk of Court the **DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF**

**DEFENDANT WITNESS SYSTEMS, INC.'S MOTION FOR PARTIAL SUMMARY**

**JUDGMENT ON LACK OF WILLFUL INFRINGEMENT** using CM/ECF which will send

electronic notification of such filing(s) to the below-listed Delaware counsel.  In addition, the

filing will also be sent via hand delivery.

Josy W. Ingersoll                    *Attorneys for Plaintiffs*
Melanie K. Sharp                    *Nice Systems Ltd. and Nice Systems, Inc.*
Karen E. Keller
Mary Dugan
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

I also certify that on November 2, 2007, I have sent by electronic mail and U.S.

First Class Mail, the document(s) to the following non-registered participants:

Scott G. Lindvall                    *Attorneys for Plaintiffs*
Daniel DiNapoli                     *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

                                        */s/Kyle Wagner Compton*
                                        Kyle Wagner Compton

2

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF DELAWARE**

NICE SYSTEMS, INC., and
NICE SYSTEMS LTD.

     *Plaintiffs*,

     v.

WITNESS SYSTEMS, INC.

     *Defendant*.

Civil Action No. 06-311-JJF

**DEFENDANT WITNESS SYSTEMS, INC.'S FIRST SET OF
INTERROGATORIES TO PLAINTIFFS
NICE SYSTEMS, INC. AND NICE SYSTEMS LTD.**

     Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant

Witness Systems, Inc. ("Witness") requests that Plaintiffs NICE Systems, Inc. and NICE

Systems Ltd. ("NICE") answer the following interrogatories separately and fully, in

writing, under oath and within thirty (30) days of the service of this request.  These

interrogatories are governed by the following Definitions and Instructions:

**<u>DEFINITIONS AND INSTRUCTIONS</u>**

     These requests incorporate, without limiting the scope of the Federal Rules of

Civil Procedure, the following definitions and instructions:

     A.     "NICE," "you," and "your" refer to NICE Systems Ltd., NICE Systems,

Inc., and any of their directors, officers, consultants, agents, representatives, predecessors

in interest, parents, subsidiaries, assignees, licensees, employees, and attorneys of either,

and any other persons acting on NICE's behalf.

     B.     "Witness" means Witness Systems, Inc. and its directors, officers,

consultants, agents, representatives, predecessors in interest, subsidiaries, affiliates,

assignees, employees, attorneys and any other persons acting on Witness' behalf, including without limitation Eyretel Plc.

      C.    "Patents-in-Suit" means, collectively, U.S. Patent Nos. 5,274,738; 5,396,371; 5,819,005; 6,249,570; 6,728,345; 6,775,372; 6,785,370; 6,870,920; 6,959,079; and 7,010,109; each, individually, is a "Patent-in-Suit."

      D.    These requests call for production of all requested documents in the possession, custody or control of NICE, including but not limited to research and development records, regulatory compliance records, production records and all records of sales, marketing, administration, management, patent and legal departments.

      E.    "Related Applications" shall mean any and all applications related to the Patents-in-Suit, including any (1) continuations, (2) continuations-in-part, (3) divisions, (4) interferences, (5) reexaminations, (6) reissues, (7) related patents, (8) parents, (9) foreign counterpart applications to any of the Patents-in-Suit or foreign counterparts to any of items "1" through "11," (10) any other applications disclosing, describing or claiming any invention disclosed, described or claimed in any of the Patents-in-Suit, or (11) any other applications claiming the benefit of the filing date of any application whose benefit is claimed in any of the Patents-in-Suit, whether or not abandoned and whether or not issued.

      F.    "NICE Product" means any product, process, or service of NICE that (a) when used or made, incorporates, performs, or embodies the subject matter of any of the alleged inventions described or claimed in the Patents-in-Suit or (b) that NICE contends is covered by one or more claims of the Patents-in-Suit.

G.       "Dictaphone" means Dictaphone Corporation, its directors, officers, consultants, agents, representatives, predecessors in interest, subsidiaries, affiliates, assignees, employees, attorneys and any other persons acting on Dictaphone's behalf.

H.       "Mercom Litigation" means *Dictaphone Corporation v. Mercom Systems, Inc.*, Civil Action No. 1:04-CV-05844-MBM, filed in the United States District Court for the Southern District of New York.

I.        "Voice Print Litigation" means *Dictaphone Corporation v. Voice Print International, Inc.*, Civil Action No. 2:04-CV-06160-ER-RC, filed in the United States District Court for the Central District of California.

J.       "Dictaphone/NICE Litigation" means *Dictaphone Corp. v. NICE Systems Ltd.*, Civil Action No. 3:00-CV-1143, filed in the United States District Court for the District of Connecticut.

K.       As used herein, the term "person" means any natural person or any business, legal, or governmental or other entity or association.

L.       As used herein, the term "communication" means any transmittal of information in the form of facts, ideas, inquiries, or otherwise.

M.       Unless otherwise indicated, these requests cover the period prior to the conception of the alleged inventions claimed in each of the Patents-in-Suit until the date on which these requests are answered.  NICE is reminded of its continuing duty to supplement its responses under the rules cited above.

N.       As used herein, the term "identify," when used in reference to:

   a.   a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment.  Once a

person has been identified in full, only the name of that person need be

listed in response to subsequent discovery requests requesting

identification of that person;

b.  an event or activity, means to give the date, participants, and nature of

the activity or event;

c.  documents, means to give, to the extent known, the (i) type of

document; (ii) general subject matter; (iii) date of the document; and

(iv) author(s), address(es), and recipient(s);

d.  things other than documents means to give, to the extent known, a

description of the thing requested including any and all product names

(both those used internally within NICE and those used externally in

sales, marketing, and other commercial activities), and any and all

product numbers or codes related to such things and an explanation of

each such number or code.

e.  As used herein, the term "all" shall be construed as all and each, and

the term "each" shall be construed as all and each.

O.    The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all

responses that might otherwise be construed to be outside of its scope.

P.    The use of the singular form of any word includes the plural and vice

versa.

Q.     In the event that NICE refuses to answer an interrogatory on the basis that it is privileged, subject to work product immunity, or otherwise excludable from discovery, NICE is requested to list such documents by request number and to state the following:

     a.   the nature of the privilege, including work product, which is being claimed;

     b.   the type of document, *e.g.*, letter or memorandum;

     c.   the general subject matter of the document;

     d.   the date of the document; and

     e.   such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

R.     The term "Complaint" means the complaint NICE filed against Witness Systems, Inc. in Civil Action No. 06-311-JJF, pending in the United States District Court for the District of Delaware.

S.     These interrogatories are continuing so as to require supplemental responses by NICE in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

5

<u>**INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1:**</u>

Identify all NICE Products, as defined herein.

<u>**INTERROGATORY NO. 2:**</u>

Describe the circumstances under which NICE first became aware that Witness was allegedly infringing claims of the Patents-in-Suit, including identification of all persons involved and the nature of each person's involvement.

<u>**INTERROGATORY NO. 3:**</u>

With respect to any secondary considerations that NICE believes are relevant in determining the issue of obviousness of the alleged inventions described in the Patents-in-Suit under 35 U.S.C. § 103, list each such secondary consideration and describe all of the facts and circumstances that NICE believes establish or support each such secondary consideration.

<u>**INTERROGATORY NO. 4:**</u>

Specify with particularity the basis for NICE's claim that the alleged infringement was willful.

<u>**INTERROGATORY NO. 5:**</u>

Identify each person who participated in any way, including a description of each person's involvement, in the preparation, filing or prosecution of each of the applications leading to the issuance of the Patents-in-Suit, or of any Related Application.

<u>**INTERROGATORY NO. 6:**</u>

Identify all Related Applications.

**INTERROGATORY NO. 7:**

Identify all products made, used, sold or offered for sale by any person not a party to this suit that NICE believes infringe the Patents-in-Suit.

**INTERROGATORY NO. 8:**

State whether any documents or records relating to the parties' claims and defenses in this action have been lost or destroyed and, if so, identify the documents and/or records that have been lost or destroyed, state the date on which and the reasons why they were destroyed and identify the person or persons by whom and on whose instructions they were destroyed.

**INTERROGATORY NO. 9:**

Identify the dates of conception and reduction to practice for each of the alleged inventions defined by each claim of the Patents-in-Suit and describe in detail the circumstances surrounding such conception and reduction to practice.

**INTERROGATORY NO. 10:**

For the subject matter claimed in the Patents-in-Suit, identify the pertinent art and the level of ordinary skill in that art as of the earliest date NICE claims the inventions disclosed by the claims of the Patents-in-Suit were either conceived or reduced to practice.

**INTERROGATORY NO. 11:**

Identify all facts relied upon in alleging NICE's affirmative defense in the Dictaphone/NICE Litigation that U.S. Patent No. 5,396,371 is unenforceable.

**INTERROGATORY NO. 12:**

Describe in detail the facts and circumstances surrounding any and all efforts by

NICE or its counsel to comply with the obligations set forth in Federal Rule of Civil

Procedure 11 prior to the filing of the Complaint.

Dated:  September 29, 2006            FISH & RICHARDSON P.C.


                                     By:  */s/ William J. Marsden, Jr.*
                                          William J. Marsden, Jr. (#2247)
                                          Kyle Wagner Compton (#4693)
                                          919 N. Market Street, Suite 1100
                                          P. O. Box 1114
                                          Wilmington, Delaware  19899-1114
                                          Telephone:  (302) 652-5070


                                          Nagendra Setty
                                          Daniel A. Kent
                                          John D. Hamann
                                          1230 Peachtree Street, NE, 19th Floor
                                          Atlanta, GA 30309
                                          Tel: (404) 892-5005

                                          ATTORNEYS FOR DEFENDANT
                                          WITNESS SYSTEMS, INC.

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of September, 2006, I caused a copy of

DEFENDANT WITNESS SYSTEMS, INC.'S FIRST SET OF INTERROGATORIES

TO PLAINTIFFS NICE SYSTEMS, INC. AND NICE SYSTEMS LTD. to be served on

the following counsel of record in the manner indicated below:

## <u>VIA ELECTRONIC & FIRST CLASS MAIL:</u>

Josy W. Ingersoll                          *Attorneys for Plaintiffs*
Karen L. Pascale                           *Nice Systems Ltd. and Nice Systems, Inc.*
Young, Conoway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899


Scott G. Lindvall                          *Attorneys for Plaintiffs*
Daniel DiNapoli                            *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022


                                           */s/ Kyle Wagner Compton*
                                           Kyle Wagner Compton

9

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NICE SYSTEMS, INC., and                                   :

NICE SYSTEMS LTD.,                                        :

                              Plaintiffs,      :      Civil Action No. 06-311-JJF

                     v.                             :

WITNESS SYSTEMS, INC.,                                    :

                         Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### PLAINTIFFS' AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT WITNESS SYSTEMS, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware Rule 26.1, Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. (respectively "NICE Inc." and "NICE Ltd." or collectively "NICE"), by their attorneys, hereby provide the following amended responses to Defendant Witness Systems, Inc.'s ("Witness") First Set of Interrogatories (referred to hereafter individually as "Interrogatory" and collectively as "Interrogatories").

NICE's responses to Defendant's Interrogatories incorporate and are subject to the objections set forth below (the "General Objections"). These General Objections form a part of the response to each interrogatory and are set forth here to avoid the duplication and repetition of restating them within each response. While these General Objections may be referred to specifically in response to individual interrogatories for purposes of clarity, the failure to specifically incorporate a General Objection in a response to a particular interrogatory should not

be construed as a waiver of the objection. Likewise, any response and/or specific objection to an

interrogatory should not be construed as a waiver of these General Objections.

## **GENERAL OBJECTIONS**

      1.    NICE objects to each interrogatory to the extent that it seeks material not

reasonably calculated to lead to the discovery of admissible evidence and/or material protected

by the attorney-client privilege and/or material protected by the work-product doctrine and/or

material which otherwise exceed the bounds of the Local Rules of the District of Delaware

and/or the Federal Rules of Civil Procedure. The responses given herein by NICE to any of the

Interrogatories shall not be deemed to waive any claim of privilege or immunity.

      2.    NICE objects to Defendant's instructions to the extent that they purport to

vary NICE's rights and obligations under the Local Rules of the District of Delaware and/or the

Federal Rules of Civil Procedure.

      3.    NICE objects to any discovery propounded in bad faith, including but not

limited to the improper purpose of unduly burdening NICE, harassing it, or otherwise improperly

and intentionally exceeding the limitations of the Local Rules of the District of Delaware and/or

the Federal Rules of Civil Procedure.

      4.    To the extent not encompassed by General Objection No. 1, above, NICE

objects to each of Defendant's Interrogatories that is vague and/or ambiguous.

      5.    To the extent not encompassed by General Objection No. 1, above, NICE

objects to each of Defendant's Interrogatories which calls for information already in Defendant's

possession or within the public domain. Information in the public domain or in Defendant's

possession that may be responsive to an interrogatory is as readily available to Defendant as such

information is to NICE.

6.    To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories which seeks disclosure of trade secrets, confidential, proprietary or other sensitive information of either NICE or a third party.

7.    To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's Interrogatories that attempts to obligate NICE to conduct anything other than a reasonable search for the information sought. NICE objects to each and every Interrogatory to the extent that it demands "each," "every" or "all" facts, circumstances, communications or persons falling within particular categories, because such demand will cause undue burden and expense. NICE will undertake a reasonable search to identify available information requested in the Interrogatories.

8.    To the extent not encompassed by General Objection No. 1, above, NICE objects to each of Defendant's interrogatories which seeks information related to events and occurrences which took place subsequent to the date of the complaint on the grounds that such requests are overbroad, unduly burdensome and beyond the scope of permissible discovery in that such information is not reasonably calculated to lead to the discovery of admissible evidence.

9.    NICE's responses to Defendant's Interrogatories may not be complete because discovery in this matter is ongoing. NICE will not be limited by its responses herein. If NICE gathers additionally responsive to Defendant's Interrogatories, NICE will provide such additional information in a supplemental response.

10.    NICE objects to each and every Interrogatory to the extent that it seeks information not within the possession, custody or control of NICE.

11.     NICE reasserts and incorporates its objections to the DEFINITIONS AND INSTRUCTIONS to Defendant's First Request for Production of Documents.

12.     NICE specifically objects to Witness' definition of "NICE," "You," and "Your" in definition lettered "A" in the Definitions and Instructions section as overbroad to the extent it seeks to improperly obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

13.     NICE specifically objects to Witness' definition of "Dictaphone" in definition lettered "G" in the Definitions and Instructions section as overbroad to the extent it improperly seeks to impose obligations upon persons and entities that are not parties to this action and impose a duty upon plaintiff, NICE, to produce information that is not within its possession, custody or control.

Subject to and without waiving the foregoing general objections and any specific objections below, NICE responds as follows to Defendant's Interrogatories:

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify all NICE Products, as defined herein.

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1:

NICE objects to Interrogatory No. 1 as overly broad and not likely to lead to the discovery of admissible evidence to the extent that it seeks identification of "all NICE Products."

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that its products which use or incorporate one or more invention disclosed and claimed in one or more of the Patents-in-Suit are as follows:  Prolog, Guardian, da Vinci, Freedom,

Freedom FT, Freedom Enterprise, Freedom Navigator, Freedom Explorer, NICE Log, NICE Universe and NICE Perform.

**INTERROGATORY NO. 2:**

Describe the circumstances under which NICE first became aware that Witness was allegedly infringing claims of the Patents-in-Suit, including identification of all persons involved and the nature of each person's involvement.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2:**

NICE objects to Interrogatory No. 2 to the extent it seeks information that is protected by the attorney-client privilege, consists of attorney work-product, or is otherwise protected from disclosure. NICE further objects to this interrogatory on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that it learned of NICE learned of Witness's infringement of the NICE Ltd. patents in suit after those patents issued. Additionally, NICE learned of Witness's infringement of the NICE Patents-in-Suit shortly after it acquired those patents from Dictaphone Corporation.

**INTERROGATORY NO. 3:**

With respect to any secondary considerations that NICE believes are relevant in determining the issue of obviousness of the alleged inventions described in the Patents-in-Suit under 35 U.S.C. Sec. 103, list each such secondary consideration and describe all of the facts and circumstances that NICE believes establish or support each such secondary consideration.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3:**

NICE objects to Interrogatory No. 3 to the extent it seeks information that is protected by the attorney-client privilege, which consists of attorney work-product, or which is otherwise protected from disclosure. NICE further objects to this interrogatory on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that this information will be the subject of expert testimony and as such NICE has no information to disclose at this time.

**INTERROGATORY NO. 4:**

Specify with particularity the basis for NICE's claim that the alleged infringement was willful.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4:**

NICE objects to Interrogatory No. 4 to the extent it seeks information that is protected by the attorney-client privilege, which consists of attorney work-product, or which is otherwise protected from disclosure.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that Witness has prior knowledge of the patents in suit prior to the filing of the Complaint in the present action. Moreover, Witness continues market and sell the Accused Products throughout the United States without regard to the patents.

**INTERROGATORY NO. 5:**

Identify each person who participated in any way, including a description of each person's involvement, in the preparation, filing or prosecution of each of the applications leading to the issuance of the Patents-in-Suit, or of any Related Application.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 5:**

NICE objects to Interrogatory No. 5 as overly broad and vague to the extent it seeks disclosure of "each person who participated in any way...in the preparation, filing or prosecution of each of the applications leading to the issuance of the Patents-in-Suit, or of any Related Application." NICE further objects to this interrogatory on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE discloses the following:

Peter Vrahotes, Pitney Bowes

Melvin Scolnick, Pitney Bowes

Anthony Meola, Howrey Simon

Melinda Smith, Dictaphone

Daniel Hart, Dictaphone

Alan Meyer, Dictaphone

Joseph Diamante, Pennie & Edmond

Ognian Shentov, Pennie & Edmonds

Richard An, Pennie & Edmonds

David Leason, Darby and Darby

Naomi Latzer, Pearl Cohen-Zedek Latzer

Zeev Pearl, Pearl Cohen-Zedek Latzer

Inventors of Patents-in-Suit

## INTERROGATORY NO. 6:

Identify all Related Applications.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 6:

NICE objects to Interrogatory No. 6 as overly broad and vague to the extent it seeks

disclosure of "all Related Applications."

Subject to, and without waiving, the foregoing General and Specific Objections, NICE

identifies the following filed applications:

AU 2000/53,215

AU 2000/53,292

AU 2001/182,488

AU 2001/0,082,488

CA 2,085,657

CA 2,128,835

CA 2,375,863

CA 2,376,157

CN 2000/811,139

CN 2000/811,409

DE 69,432,811

EP 2000/938,130

EP 2000/938,220

EP 2001/1,961,110

EP 2001/0,961,110

EP 2006/004,938

EP 1992/311,852

EP 1994/305,675

ES 938,130

ES 938,220

IL 146,833

IL 146,901

MX PA 2001/01,228

MX PA 2001/0126

NZ 516,066

PCT/IL 01/00136

U.S 09/503,479

U.S 10/111,767

U.S 623,671

U.S. 10/906,962

U.S. 111,767

U.S. 171,296

U.S. 187,865

U.S. 324,459

U.S. 328,294

U.S. 328,295

U.S. 328,298

U.S. 328,299

U.S. 367,749

U.S. 60/228,124

U.S. 815,202

U.S. 876,954

U.S. 876,958

U.S. 876,978

U.S. 876,979

U.S. 906,962

WO 01/IL/00805

WO 2000 US15,419

WO 2000 US15,748

WO 2001/IL/805

## INTERROGATORY NO. 7:

Identify all products made, used, sold or offered for sale by any person not a party to this suit that NICE believes infringe the Patents-in-Suit.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 7:

NICE objects to Interrogatory No. 7 as overly broad and vague to the extent it seeks disclosure of "all products made, used, sold or offered for sale by any person not a party to this suit that NICE believes infringe the Patents-in-Suit." NICE further objects that this interrogatory is not relevant to the subject matter of the pending action, or reasonably calculated to lead to the discovery of admissible evidence. Additionally, NICE objects to this interrogatory to the extent

it seeks information which is protected by the attorney-client privilege, which consists of attorney work-product, or which is otherwise protected from disclosure. NICE further objects to this interrogatory on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of obviating the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that NICE has not conducted any such investigation.

**INTERROGATORY NO. 8:**

State whether any documents or records relating to the parties' claims and defenses in this action have been lost or destroyed and, if so, identify the documents and/or records that have been lost or destroyed, state the date on which and the reasons why they were destroyed and identify the person or persons by whom and on whose instructions they were destroyed.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8:**

NICE objects to Interrogatory No. 8 on the grounds that it is vague and imposes undue burden in that it seeks disclosure of information pertaining to "any documents or records...[that] have been lost or destroyed." NICE further objects to this interrogatory on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that it is not aware of any documents or information responsive to this interrogatory; however, discovery is ongoing and should such information become available NICE will supplement its responses.

**INTERROGATORY NO. 9:**

Identify the dates of conception and reduction to practice for each of the alleged inventions defined by each claim of the Patents-in-Suit and describe in detail the circumstances surrounding such conception and reduction to practice.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 9:**

NICE objects to Interrogatory No. 9 to the extent it seeks information that is protected by the attorney-client privilege, which consists of attorney work-product, or which is otherwise protected from disclosure. NICE further objects to this interrogatory on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of the limit on the number of interrogatories.

Subject to, and without waiving, the foregoing General and Specific Objections, NICE responds that at this stage of the litigation this Interrogatory is premature. Additionally, documents from which such information may be derived or ascertained will be produced to Defendant in response its request for production of documents. For certain patents in suit, the burden of deriving or ascertaining this answer is substantially the same for Defendant as for Plaintiff. At the time NICE produces bates numbered documents in response Defendant's request for production of documents, it will supplement this response to identify the bates numbers of documents responsive to Interrogatory No. 9.

**INTERROGATORY NO. 10:**

For the subject matter claimed in the Patents-in-Suit, identify the pertinent art and the level of ordinary skill in that art as of the earliest date NICE claims the inventions disclosed by the claims of the Patents-in-Suit were either conceived or reduced to practice.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10:**

NICE objects to Interrogatory No. 10 on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of obviating the limit on the number of interrogatories.

Subject to these Specific Objections and the above-listed General Objections, NICE responds that this information will be the subject of expert testimony and opinion. Therefore, NICE has no information responsive to this interrogatory at this time.

**INTERROGATORY NO. 11:**

Identify all facts relied upon in alleging NICE's affirmative defense in the Dictpahone/NICE litigation that U.S. Patent No. 5,396,371 is unenforceable.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11:**

NICE objects to Interrogatory No. 11 to the extent it seeks information which is protected by the attorney-client privilege, which consists of attorney work-product, or which is otherwise protected from disclosure.

Subject to these Specific Objections and the above-listed General Objections, NICE responds that documents from which such information may be derived or ascertained will be produced to Defendant in response its request for production of documents. During NICE's production of bates numbered documents in response Defendant's request for production of documents, NICE intends to supplement this response to identify the bates numbers of documents responsive to Interrogatory No. 11. Further, NICE's contention of inequitable conduct during the prosecution of U.S. Patent 5,396,371 was ultimately unsupported by the facts of the Dictaphone v. NICE litigation.

## INTERROGATORY NO. 12:

Describe in detail the facts and circumstances surrounding any and all efforts by NICE or its counsel to comply with the obligations set forth in Federal Rule of Civil Procedure 11 prior to the filing the Complaint.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 12:

NICE objects to Interrogatory No. 12 to the extent it seeks information which is protected by the attorney-client privilege, which consists of attorney work-product, or which is otherwise protected from disclosure. NICE further objects to this interrogatory on the grounds that it is a compound and pertains to a number of distinct topics. As such, there are multiple distinct interrogatories here for purposes of obviating the limit on the number of interrogatories.

Dated: March 2, 2007

YOUNG CONAWAY STARGAT
& TAYLOR, LLP

/s/ Karen E. Keller
Josy W. Ingersoll (#1088)
Melanie K.Sharp (#2501)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 1899-0391
(302) 571-6600
kkeller@ycst.com

OF COUNSEL:
Scott G. Lindvall
Daniel P. DiNapoli
Joseph M. Drayton
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

Attorneys for NICE Systems, Inc. and NICE
Systems Ltd.

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on March 2, 2007, I caused copies of the foregoing document to be served by hand delivery and electronic mail upon the following counsel of record:

> William J. Marsden, Jr., Esquire (marsden@fr.com)
> Kyle Wagner Compton, Esquire (kcompton@fr.com)
> Fish & Richardson, PC
> 919 N. Market Street, Suite 1100
> Wilmington, DE 19801

I further certify that on March 2, 2007, I caused a copy of the foregoing document to be served upon the following in the manner indicated:

> **BY ELECTRONIC MAIL**
> Noah C. Graubart, Esquire (graubart@fr.com)
> Nagendra Setty, Esquire (nsetty@fr.com)
> Daniel A. Kent, Esquire (kent@fr.com)
> Christopher O. Green, Esquire (green@fr.com)
> John Hamann, Esquire (hamann@fr.com)
> Fish & Richardson, PC
> 1180 Peachtree Street, NE, 21st Floor
> Atlanta, GA 30309

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ KAREN E. KELLER
> Karen E. Keller (No. 4489)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391
> (302) 571-6600
> kkeller@ycst.com
>
> *Attorneys for NICE Systems, Inc. and NICE Systems Ltd.*

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

       *Plaintiffs*,

    v.

WITNESS SYSTEMS, INC.

       *Defendant*.

C.A. No. 1:06-CV-00311-JJF

## DEFENDANT WITNESS SYSTEMS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rules of the District of Delaware, Defendant Witness Systems, Inc. ("Witness Systems") responds to the First Set of Interrogatories propounded by Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. (collectively, "NICE") as follows:

## GENERAL OBJECTIONS

A.      Witness Systems generally objects to all of NICE's Interrogatories to the extent they seek the disclosure of information constituting or reflecting attorney-client communications protected by the attorney-client privilege. By responding to any particular Interrogatory, Witness Systems does not intend nor does it waive the attorney-client privilege or any other applicable privilege that it may have, and Witness Systems specifically intends to assert the same. Inadvertent disclosure of any privileged information shall not constitute a waiver of privilege or of any other basis for objecting to discovery with respect to such information.

B.      Witness Systems generally objects to all of NICE's Interrogatories to the extent they seek the disclosure of information, documents, or communications constituting or reflecting attorney work product, including without limitation the thought processes or mental impressions of Witness Systems' attorneys concerning the preparation, prosecution or defense of any claim by or against Witness Systems, which are protected by the work product exemption from discovery.  By responding to any particular Interrogatory, Witness Systems does not intend nor does it waive work product immunity or any other applicable privilege that it may have, and Witness Systems specifically intends to assert the same.  Inadvertent disclosure of any information protected by work product immunity shall not constitute a waiver of the immunity or of any other basis for objecting to discovery with respect to such information.

C.      Witness Systems objects to identification of information regarding any privileged or work product documents or information created or prepared by any of its employees, attorneys, agents, or representatives on or after May 10, 2006, the date this action was filed.  Witness Systems believes that the categorical identification of such withheld documents and/or information satisfies any identification requirements predicate to a proper assertion of the applicable privilege or immunity.

D.      Witness Systems objects to each Interrogatory to the extent it seeks information not within Witness Systems' possession, custody or control.

E.      Witness Systems objects to each Interrogatory to the extent it seeks information not relevant to any claim or defense in this case or reasonably calculated to lead to the discovery of information relevant to any claim or defense.

F.      Witness Systems objects to each Interrogatory to the extent that it seeks information constituting trade secrets, proprietary information, or other confidential or competitively sensitive technical or business information, outside the protections afforded by an appropriate protective order.  Such Witness Systems information will only be produced subject to a protective order governing the exchange of such information in this case.  Witness Systems further objects to each Interrogatory to the extent it seeks information constituting trade secrets, proprietary information, or other confidential or competitively sensitive technical or business information of a third party.

G.      Witness Systems' responses to these Interrogatories do not constitute an admission or acknowledgment that the information sought is within the proper scope of discovery.

H.      Witness Systems objects to each Interrogatory to the extent that it is unduly burdensome.  Witness Systems also objects to the definition of "Accused Products" on the grounds that it is overly broad, unduly burdensome, and vague and ambiguous to the extent it fails to identify specific products and/or versions of specific products, and to the extent it may include products and/or versions not identified by NICE in response to Witness Systems' Interrogatory No. 13.

I.      Witness Systems objects to these Interrogatories and to the "Definitions and Instructions" to the extent they purport to enlarge upon or are otherwise inconsistent with the duties imposed by the Federal Rules of Civil Procedure or the Local Rules for the District of Delaware or to the extent that they attempt to use a word or phrase in a manner other than its normal and customary meaning.

J.       Witness Systems' responses herein are based upon such information and documents as have been reviewed to date, after a reasonable search of those files and locations where it reasonably believes responsive documents may be located.  The responses herein are given without prejudice to Witness Systems' right to supplement these responses and produce evidence of any subsequently discovered facts or documents, or facts or documents that Witness Systems may later develop.

K.       Witness Systems objects to each and every interrogatory to the extent that it is a premature because discovery is still in its very early stages and the claims of the patents-in-suit have yet to be construed.  Witness Systems is still formulating its contentions regarding the claims and defenses of the parties and specifically reserves the right to supplement theses responses as its investigation continues.

L.       Witness Systems objects to these Interrogatories to the extent that, including subparts, they exceed the maximum number of interrogatories allowed in this action.

M.       Witness Systems' responses to each Interrogatory are made without in any way waiving: (a) the right to object, on the grounds of competency, relevancy, materiality, privilege or admissibility as evidence for any purpose in any subsequent proceeding in this case; and (b) the right to object on any ground to any other Interrogatories involving or relating to the subject matter of these Interrogatories.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections, each of which is incorporated by reference below in each separate response, Witness Systems responds to the Interrogatories as follows:

-4-

## INTERROGATORY NO. 1:

Describe in detail the factual and legal bases for Witness' contention that "Witness Systems has not and does not infringe, directly or indirectly, any claim of any of the '738, '371, '005, '570, '345, '370, '920, '079, and/or '109 patents, either literally or under the doctrine of equivalents." The detailed description of such factual and legal bases should include, without limitation, an identification on a claim-by-claim basis of each claim limitation Witness contends is not met by the Accused Products, either literally or under the doctrine of equivalents.

## RESPONSE TO INTERROGATORY NO. 1:

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege and/or work product doctrine. Witness Systems also objects to this Interrogatory to the extent it calls for information comprising trade secrets, proprietary information, or other confidential or competitively sensitive technical information. Accordingly, Witness Systems' responses are provided subject to the terms of the protective order entered by the Court in this action. Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent NICE has failed to identify specific products and/or versions of specific products by its definition of the "Accused Products" and has refused to identify whether NICE's infringement contentions regarding the "Accused Products" are based on literal infringement, infringement under the doctrine of equivalents, direct infringement, contributory infringement, and/or infringement by inducement. Witness Systems also objects to this Interrogatory as vague and ambiguous to the extent it mischaracterizes and purports to state Witness Systems' contention.

Subject to and without waiving the foregoing objections, Witness Systems refers NICE to Exhibit A.

-5-

Witness Systems' investigation of this matter is ongoing and discovery is in its

very early stages.  Witness Systems specifically reserves its right to amend and/or

supplement this response as that investigation continues.

**INTERROGATORY NO. 2:**

        Describe in detail the factual and legal bases for Witness' contention that
**"[the claims of the '738, '371, '005, '345, '372, '370,'920, '079, and '109 patents are
invalid for failure to comply with the United States patent laws, 35 U.S.C. §§ 1, et
seq., including without limitation § § 102, 103, and/or 112." The detailed description
of such factual and legal bases should include, without limitation, an identification
of which aspect(s) of 35 U.S.C. § 112 Witness contends the Patents-In-Suit do not
meet and an identification and description of every document, tangible item and
item of information that Witness has relied upon or intends to rely upon as support
for its contention.**

**RESPONSE TO INTERROGATORY NO. 2:**

        Witness Systems incorporates by reference its General Objections as if fully

stated herein.  Witness Systems also objects to this Interrogatory to the extent that it seeks

information that is protected by the attorney-client privilege and/or work product

doctrine.  Witness Systems also objects to this Interrogatory to the extent it calls for

information comprising trade secrets, proprietary information, or other confidential or

competitively sensitive technical information.  Accordingly, Witness Systems' responses

are provided subject to the terms of the protective order entered by the Court in this

action. Witness Systems also objects to this Interrogatory as vague and ambiguous to the

extent it mischaracterizes and purports to state Witness Systems' contention.

        Subject to and without waiving the foregoing objections, Witness Systems

responds as follows:

        Witness Systems believes one or more of the claims of the '109, '371 and '920

patents are invalid for failure to satisfy 35 U.S.C. § 112, ¶ 1.

        Witness Systems believes one or more claims of the '109, '370, '570, '371, '920,

'005, '372, '079 and '738 Patents are invalid for failure to satisfy 35 U.S.C. § 112, ¶ 2.

Witness Systems believes one or more of the claims of the '738 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: 4,121,058; 4,124,773; 4,254,304; 4,260,854; 4,360,910; 4,523,055; 4,549,047; 4,564,936; 4,573,140; 4,602,129; 4,625,081; 4,663,777; 4,672,662; 4,674,083; 4,791,660; 4,829,514; 4,839,888; 4,882,729; 4,998,249; 5,093,825; 5,105,421; 5,129,036; 5,179,585; 5,179,627; 5,185,781; 5,227,987; 5,265,075; 5,276,678; 5,283,638; 5,291,479; 5,353,377; 5,509,059; DE 39 23 631 A1; EP 0 185 445 A2; EP 0 261 790 A2; EP 0 412 799 A2; EP 0 444 536 A2; JP 57024148; WO 85/05000; WO 8912271; WO 90/04298; Rolm Introduces Digital PBX Line, Electronic News, v29, n1472 (Nov 21, 1983); Signal Processing Software For A Voice Messaging System Using The TMS32010 Processor, 1985 IEEE Int. Conf. on Acoustics, Speech and Signal Processing, pages 1417-1420; Siemens Unveils The HCM 200 - A Fully Digital, Voice/Data Hybrid, Teleconnect, v7, n11 (Nov 1989); Telephone Logging, Teleconnect, v8, n10 (Oct 1990); Digital Audio System, IEEE ASSP Magazine, October 1985; Multiprocessor System For Speech Processing And Telecommunication, IEEE, 1984; Communication Processors, Proceeding of the IEEE, Vol. 60, No. 11, November 1972; Text-to-Speech Unit Simplifiers Interface for Computer Interaction, Computer Technology Review, Dec. 1985, Vol. 5, Iss. 4; Modular Voice Processor, IEEE, 1991; An Audio Computer Interface: A Case Study of Structured Electronic Equipment  Design, Microprocessing and Microprogramming, Amsterdam: Mar 1986, Vol. 17, Iss. 3; Digital Circuit Multiplication Gets 120 Speech Channels From T1,  Data  Communications v16, n2, Feb 1987; Digital Delivers Voice Processing Across Computer Networks, Telephony, V220, n17, April 29, 1991; Multiple Microprocessor System For Real Time Speech

Signal Processing, IEEE ELECTRONICOM 85, Conference Proceedings, 622-5 vol. 3,

1985; Computer Interfacing Of The Rockwell International ADAP For Flexible Digital

Audio Processing, Proceedings Of The 1980 Carnahan Conference  On Crime

Countermeasures: 1980; The DSC-2000 VoiceServer System, Office Proceedings of

Speech Tech 85, Voice Input/Output Applications Show and Conference: 84-8, 1985;

PBX Helps University Provide Voice and Data, Telephony, Chicago: Jun 29, 1987, Vol.

212, Iss. 26; Data Compression, Satellite Communications, Atlanta: May 1985, Vol. 9,

Iss. 5; General DataComm Ltd, Computing Canada v17, n9, April 25, 1991; and any and

all references of record in the file history of this patent and/or any related patent,

including matter incorporated by reference therein.

Witness Systems believes one or more of claims of the '371 Patent are invalid

under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following

references, either alone or in combination: 4,051,355; 4,121,058; 4,221,933; 4,260,854;

4,408,309; 4,412,098; 4,523,055; 4,549,047; 4,573,140; 4,805,217; 4,829,514; 4,841,574;

4,864,543; 4,873,589; 4,891,835; 4,905,141; 4,963,866; 4,985,914; 4,998,272; 5,012,459;

5,025,324; 5,031,218; 5,142,527; 5,210,829; 5,241,428; 5,343,452; 5,345,430; 5,359,468;

5,371,551; 5,406,425; 5,539,897; 5,564,033; 5,581,606; 5,710,978; 5,819,005; 5,946,445;

5,974,015; 6,208,476; DE 40 15 626 A1; DE 40 24 231 A1; EP 0 321 077 A2; EP 0 372

894 A2; EP 0 449 213 A2; EP 424116; EP 490239; EP 503480; GB 2 212 359 A; JP

05325511; JP 62192077; Digital Audio Tape For Data Storage, IEEE Spectrum October,

1989; A New Play-Back Method for R-DAT Using Non-Tracking Signal Processing,

IEEE September 11, 1991; Rolm Introduces Digital PBX Line, Electronic News, v29,

n1472 (Nov 21, 1983); Signal Processing Software For A Voice Messaging System

Using The TMS32010 Processor, 1985 IEEE Int. Conf. on Acoustics, Speech and Signal

Processing, pages 1417-1420; Siemens Unveils The HCM 200 - A Fully Digital,

Voice/Data Hybrid, Teleconnect, v7, n11 (Nov 1989); Telephone Logging, Teleconnect,

v8, n10 (Oct 1990); Eyretel e1000; and any and all references of record in the file history

of this patent and/or any related patent, including matter incorporated by reference

therein.

        Witness Systems believes one or more of the claims of the '345 Patent are invalid

under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following

references, either alone or in combination: 4,399,331; 4,471,169; 4,475,011; 4,510,351;

5,003,574; 5,048,079; 5,153,909; 5,159,698; 5,163,085; 5,164,983; 5,181,239; 5,287,270;

5,325,290; 5,434,910; 5,465,286; 5,500,795; 5,517,560; 5,535,256; 5,535,261; 5,539,808;

5,559,867; 5,559,875; 5,619,557; 5,668,863; 5,696,811; 5,710,978; 5,715,307; 5,740,233;

5,784,452; 5,793,861; 5,799,073; 5,818,907; 5,864,616; 5,867,599; 5,903,641; 5,923,746;

5,926,535; 5,933,780; 5,940,494; 5,946,375; 5,982,857; 5,991,373; 6,022,753; 6,058,163;

6,072,860; 6,084,954; 6,091,808; 6,097,792; 6,151,386; 6,252,945; 6,304,648; 6,314,089;

6,327,343; 6,345,094; 6,363,145; 6,385,301; 6,393,106; 6,404,883; 6,430,270; 6,466,663;

6,490,350; 6,526,397; 6,567,504; 6,665,376; 6,665,395; 6,732,082; 6,741,697; 6,788,315;

6,874,119; 6,975,707; 6,975,708; 6,988,205; 7,020,250; 7,027,578; 7,065,192; 7,092,494;

7,142,650; EP 0 572 544 B1; EP 0 572 544 B1; EP 0 572 544 B1; EP 0 946 032 A2; EP 0

946 032 A2; EP 380798; WO 00/76188; WO 00/76188 A1; Duration Distribution

Analyzer; Tibaldo, F.; Veronese, G.Revue F.I.T.C.E. vol.13, no.3, 19-23, May-June

1974; A Dependent Processor For A Multiprocessing Telephone Switching System,

Neville, S.M.L Vandermolen, G.L. Proceedings Of The National Electronics Conference,

9-11 Dec. 1968, 578-83, Chicago, IL, USA; Phone Lines Controlled By Microprocessor,

Elektrotehniski Vestnik vol.51,  no.5, 185-92, Oct.-Dec. 1984; Social Security

Administration: Information on Monitoring 800 Number Telephone Calls, General

Accounting Office, Washington, DC, Health Education and Human Services Div. 8 Dec

1987; Recording Call Center Performance, Electric Perspectives, Jul/Aug 1998 by Tom

Eastland; Ichat, Now Acuity, Launches Web Call Center, Computergram International,

June 1, 1998; Web-Enabled Call Center From Netspeak, Telemarketing & Call Center

Solutions, Apr  1998; New Call Center Query Tools Help Bring Wisdom To

Management, Telemarketing & Call Center Solutions, Jan 1998 by Zack Taylor; How

Logging And Monitoring Technologies Improve Quality In A Call Center, Telemarketing

& Call Center Solutions, Jan 1998 by Gary Shearer; The Evolution Of Digital Recording

In The Call Center, Telemarketing & Call Center Solutions, Nov 1997 by Michael

Binder; Centralized Call Center Data: The Hidden Corporate Asset, Telemarketing &

Call Center Solutions, Aug 1997 by Cynthia Holladay; Call Center Management System

From AVT, Telemarketing & Call Center Solutions, June 1997; Managing The Call

Center Deluge, Telemarketing, June 1995 by Larry Jernigan; Value-Added Software

Applications Vital To Future Call Center Management, Telemarketing, Oct 1995 by

Dianna Walta; Call Logging Solutions For The Call Center, Telemarketing & Call Center

Solutions, June 1996 by Joav Avtalion; Aspect Puts OLE And ACD To Work On Call

Center Reports, Network World, 11 Dec 1995  by David Rohde; Making Workforce

Management A Part Of Your Inbound Solution, Telemarketing & Call Center Solutions,

June 1998 by Margaret Sansom; Playing The Numbers: Using ACD Statistics For

Workforce Management, Telemarketing & Call Center Solutions, Mar 1998 by Illah

Nourbakhsh; CentreVu from Lucent, Telemarketing & Call Center Solutions, Mar 1998;

Health Care Provider's Quality Monitoring Pays Off, Telemarketing & Call Center

Solutions, Jan 1998 by Ron Elwell; Mustang Internet Message Center, Telemarketing &

Call Center Solutions, March 1998; Desktop Screen Capture From Teknekron Infoswitch,

Telemarketing & Call Center Solutions, August 1997; Monitoring Technology Helps

Keep Customers Satisfied, Telemarketing & Call Center  Solutions, July 1997 by Ron

Elwell; How Logging & Monitoring Technologies Improve Quality, Telemarketing &

Call Center  Solutions, Feb 1997 by Joav Avtalion; E-Ware (including E-Ware Replay)

Versions 1.0.003, 1.0.004, 1.0.006, 1.0.008, 1.0.0011, 1.0.031, 1.0.036, 1.0.037, 1.0.038,

1.0.039, 1.0.044, 1.0.045; Eyretel e1000; Eyretel e500; MediaStore; ContactStore; and

any and all references of record in the file history of this patent and/or any related patent,

including matter incorporated by reference therein.

Witness Systems believes one or more of the claims of the '372 Patent are invalid

under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following

references, either alone or in combination: 4,488,274; 4,597,077; 4,634,809; 4,757,497;

4,805,172; 4,893,301; 5,003,574; 5,133,081; 5,200,993; 5,265,075; 5,351,276; 5,392,329;

5,488,648; 5,524,147; 5,533,103; 5,559,875; 5,623,540; 5,740,231; 5,751,961; 5,799,063;

5,812,644; 5,828,730; 5,864,616; 5,905,775; 5,930,341; 5,945,989; 5,982,857; 5,999,965;

6,014,437; 6,052,454; 6,122,357; 6,122,364; 6,222,838; 6,230,197; 6,266,400; 6,311,186;

6,385,646; 6,493,434; 6,535,586; 6,587,871; 6,724,875; 6,850,609; 7,051,182; 7,092,494;

2001/004369; 2002/0075587; 2002/0080927; 2003/0009464; 2003/0191970;

2006/0253627; CA 2 217 923; DE 41 42 094 A1; EP 0 637 160 A2; EP 0 642 250 A2;

EP 0 837 388 A2; EP0450610; GB 2 317 782 A; H001918; JP 05-324448 A; WO

99/12326; WO9738422A1; WO 98/13995; An Overview Of The Etherphone System And

Its Applications, Zellweger, P.T., Terry, D.B., Swinehart, D.C., Computer Workstations,

1988, Proceedings of the 2nd IEEE Conference on 7-10 March 1988 Page(s) 160 – 168;

Why Optimistic Message Logging Has Not Been Used In Telecommunications Systems,

Yennun Huang, Yi-Min Wang, Fault-Tolerant Computing, 1995, FTCS-25, Digest of

Papers, Twenty-Fifth International Symposium, 27-30 June 1995, Page(s) 459 – 463;

Data Logging: A Method For Efficient Data Updates In Constantly Active RAIDS,

Gabber, E., Korth, H.F., Data Engineering, 1998 Proceedings, 14th International

Conference, 23-27 Feb. 1998 Page(s) 144 – 153; Standardization On Multimedia

Communications: Computer-Telephony-Integration-Related Issues, Asatani, K.,

Communications Magazine, IEEE Volume 36,  Issue 7,  July 1998, Page(s) 105 – 109;

Establishing The Value Of Voice Communication With Computers, Lea, W., Audio and

Electroacoustics, IEEE Transactions on Volume 16,  Issue 2,  Jun 1968, Page(s) 184 –

197; A Recording and Processing System for Accounting and Traffic Analysis on a Large

PABX, Myskja, A., IEEE Transactions on Communications, Volume 19,  Issue 5,  Part 1,

Oct 1971 Page(s) 692 – 699; E-Ware (including E-Ware Replay) Versions 1.0.003,

1.0.004, 1.0.006, 1.0.008, 1.0.0011, 1.0.031, 1.0.036, 1.0.037, 1.0.038, 1.0.039, 1.0.044,

1.0.045; Eyretel e1000; Eyretel e500; MediaStore; ContactStore; and any and all

references of record in the file history of this patent and/or any related patent, including

matter incorporated by reference therein.

Witness Systems believes one or more of the claims of the '370 Patent are invalid

under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following

references, either alone or in combination: 4,399,331; 4,471,169; 4,475,011; 4,510,351;

-12-

5,003,574; 5,048,079; 5,153,909; 5,159,698; 5,163,085; 5,164,983; 5,181,239; 5,287,270; 5,325,290; 5,434,910; 5,465,286; 5,500,795; 5,517,560; 5,535,256; 5,535,261; 5,539,808; 5,559,867; 5,559,875; 5,619,557; 5,668,863; 5,696,811; 5,710,978; 5,715,307; 5,740,233; 5,784,452; 5,793,861; 5,799,073; 5,818,907; 5,864,616; 5,867,599; 5,903,641; 5,923,746; 5,926,535; 5,933,780; 5,940,494; 5,946,375; 5,982,857; 5,991,373; 6,022,753; 6,058,163; 6,072,860; 6,084,954; 6,091,808; 6,097,792; 6,151,386; 6,252,945; 6,304,648; 6,314,089; 6,327,343; 6,345,094; 6,363,145; 6,385,301; 6,393,106; 6,404,883; 6,430,270; 6,466,663; 6,490,350; 6,526,397; 6,567,504; 6,665,376; 6,665,395; 6,732,082; 6,741,697; 6,788,315; 6,874,119; 6,975,707; 6,975,708; 6,988,205; 7,020,250; 7,027,578; 7,065,192; 7,092,494; 7,142,650; EP 0 572 544 B1; EP 0 572 544 B1; EP 0 572 544 B1; EP 0 946 032 A2; EP 0 946 032 A2; EP 380798; WO 00/76188; WO 00/76188 A1; IBM System 7 Traffic Monitoring Program, Pensiero, W.S., Dahlman, P.O., International Conference on Communications, 17-19 June 1974, Minneapolis, MN, USA; International Conference on Communications: 4D/1-5, 1974; Monolog-A Single-Line Call Logging Device, British Telecommunications Engineering vol. 8, pt.1, 1-5, April 1989; Survey of Remote Data Monitoring Systems, Automation Industries, Inc., Silver Spring, MD, Vitro Labs. Div. Sponsor Department of Energy, Washington, DC, Sep. 1984; Telephone Cost Meter, Electronics Now 66 Apr. 95; Recording Call Center Performance, Electric Perspectives, Jul/Aug 1998 by Tom Eastland; Ichat, Now Acuity, Launches Web Call Center, Computergram International, June 1, 1998; Web-Enabled Call Center From Netspeak, Telemarketing & Call Center Solutions, Apr 1998; New Call Center Query Tools Help Bring Wisdom To Management, Telemarketing & Call Center Solutions, Jan 1998 by Zack Taylor; How Logging And Monitoring Technologies Improve Quality In A Call

-13-

Center, Telemarketing & Call Center Solutions, Jan 1998 by Gary Shearer; The

Evolution Of Digital Recording In The Call Center, Telemarketing & Call Center

Solutions, Nov 1997 by Michael Binder; Centralized Call Center Data: The Hidden

Corporate Asset, Telemarketing & Call Center Solutions, Aug 1997 by Cynthia

Holladay; Call Center Management System From AVT, Telemarketing & Call Center

Solutions, June 1997; Managing The Call Center Deluge, Telemarketing, June 1995 by

Larry Jernigan; Value-Added Software Applications Vital To Future Call Center

Management, Telemarketing,  Oct 1995 by Dianna Walta; Call Logging Solutions For

The Call Center, Telemarketing & Call Center Solutions, June  1996 by Joav Avtalion;

Aspect Puts OLE And ACD To Work On Call Center Reports, Network World, 11 Dec

1995 by David Rohde; Making Workforce Management A Part Of Your Inbound

Solution, Telemarketing & Call Center Solutions, June 1998 by Margaret Sansom;

Playing The Numbers: Using ACD Statistics For Workforce Management, Telemarketing

& Call Center Solutions, Mar 1998 by Illah Nourbakhsh; CentreVu from Lucent,

Telemarketing & Call Center Solutions, Mar 1998; Health Care Provider's Quality

Monitoring Pays Off, Telemarketing & Call Center Solutions, Jan 1998 by Ron Elwell;

Mustang Internet Message Center, Telemarketing & Call Center Solutions, March 1998;

Desktop screen capture from Teknekron Infoswitch, Telemarketing & Call Center

Solutions, August 1997; Monitoring Technology Helps Keep Customers Satisfied,

Telemarketing & Call Center Solutions, July 1997 by Ron Elwell; How Logging &

Monitoring Technologies Improve Quality, Telemarketing & Call Center Solutions, Feb

1997 by Joav Avtalion; E-Ware (including E-Ware Replay) Versions 1.0.003, 1.0.004,

1.0.006, 1.0.008, 1.0.0011, 1.0.031, 1.0.036, 1.0.037, 1.0.038, 1.0.039, 1.0.044, 1.0.045;

Eyretel e1000; Eyretel e500; MediaStore; ContactStore; and any and all references of record in the file history of this patent and/or any related patent, including matter incorporated by reference therein.

Witness Systems believes one or more of the claims of the '920 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: 4,488,274; 4,597,077; 4,634,809; 4,757,497; 4,805,172; 4,893,301; 5,003,574; 5,133,081; 5,200,993; 5,265,075; 5,351,276; 5,392,329; 5,488,648; 5,524,147; 5,533,103; 5,559,875; 5,623,540; 5,740,231; 5,751,961; 5,799,063; 5,812,644; 5,828,730; 5,864,616; 5,905,775; 5,930,341; 5,945,989; 5,982,857; 5,999,965; 6,014,437; 6,052,454; 6,122,357; 6,122,364; 6,222,838; 6,230,197; 6,266,400; 6,311,186; 6,385,646; 6,493,434; 6,535,586; 6,587,871; 6,724,875; 6,850,609; 7,051,182; 7,092,494; 2001/004369; 2002/0075587; 2002/0080927; 2003/0009464; 2003/0191970; 2006/0253627; CA 2 217 923; DE 41 42 094 A1; EP 0 637 160 A2; EP 0 642 250 A2; EP 0 837 388 A2; EP0450610; GB 2 317 782 A; H001918; JP 05-324448 A; WO 99/12326; WO9738422A1; WO 98/13995; An Overview Of The Etherphone System And Its Applications, Zellweger, P.T., Terry, D.B., Swinehart, D.C., Computer Workstations, 1988, Proceedings of the 2nd IEEE Conference on 7-10 March 1988 Page(s) 160 – 168; Why Optimistic Message Logging Has Not Been Used In Telecommunications Systems, Yennun Huang, Yi-Min Wang, Fault-Tolerant Computing, 1995, FTCS-25, Digest of Papers, Twenty-Fifth International Symposium, 27-30 June 1995, Page(s) 459 – 463; Data Logging: A Method For Efficient Data Updates In Constantly Active RAIDs, Gabber, E., Korth, H.F., Data Engineering, 1998 Proceedings, 14th International Conference, 23-27 Feb. 1998, Page(s) 144 – 153; Standardization On Multimedia

-15-

Communications: Computer-Telephony-Integration-Related Issues, Asatani, K.,

Communications Magazine, IEEE Volume 36, Issue 7, July 1998, Page(s), 105 – 109;

Establishing the Value of Voice Communication with Computers, Lea, W., Audio and

Electroacoustics, IEEE Transactions on Volume 16, Issue 2, Jun 1968, Page(s) 184 –

197; A Recording and Processing System for Accounting and Traffic Analysis on a Large

PABX, Myskja, A., IEEE Transactions on Communications Volume 19,  Issue 5,  Part 1,

Oct 1971; E-Ware (including E-Ware Replay) Versions 1.0.003, 1.0.004, 1.0.006,

1.0.008, 1.0.0011, 1.0.031, 1.0.036, 1.0.037, 1.0.038, 1.0.039, 1.0.044, 1.0.045; Eyretel

e1000; Eyretel e500; MediaStore; ContactStore; and any and all references of record in

the file history of this patent and/or any related patent, including matter incorporated by

reference therein.

   Witness Systems believes one or more of the claims of the '079 Patent are invalid

under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following

references, either alone or in combination: 5,163,085; 5,590,171; 5,655,081; 5,668,863;

5,790,650; 5,790,798; 5,854,825; 5,854,832; 5,857,190; 5,914,951; 5,923,746; 5,991,373;

6,122,740; 6,263,049; 6,370,574; 6,510,220; 6,600,821; 6,665,395; 6,724,887; 6,850,609;

EP 0 622 969 B1; EP 0 818 104 B1; EP 0 903 921 A2; EP 1 061 720 A2; EP 1 115 264

A2; EP 1 211 619 A2; Recording Call Center Performance, Electric Perspectives,

Jul/Aug 1998 by Tom Eastland; Ichat, Now Acuity, Launches Web Call Center,

Computergram International, June 1, 1998; Web-Enabled Call Center From Netspeak,

Telemarketing & Call Center Solutions, Apr. 1998; New Call Center Query Tools Help

Bring Wisdom To Management, Telemarketing & Call Center Solutions, Jan 1998 by

Zack Taylor; How Logging And Monitoring Technologies Improve Quality In A Call

Center, Telemarketing & Call Center Solutions, Jan 1998 by Gary Shearer; The

Evolution Of Digital Recording In The Call Center, Telemarketing & Call Center

Solutions, Nov 1997 by Michael Binder; Centralized Call Center Data: The Hidden

Corporate Asset, Telemarketing & Call Center Solutions, Aug. 1997 by Cynthia

Holladay; Call Center Management System From AVT, Telemarketing & Call Center

Solutions, June 1997; Managing The Call Center Deluge, Telemarketing, June 1995 by

Larry Jernigan; Value-Added Software Applications Vital To Future Call Center

Management, Telemarketing, Oct 1995 by Dianna Walta; Call Logging Solutions For

The Call Center, Telemarketing & Call Center Solutions, June 1996 by Joav Avtalion;

Aspect Puts OLE And ACD To Work On Call Center Reports, Network World, 11 Dec

1995 by David Rohde; Making Workforce Management A Part Of Your Inbound

Solution, Telemarketing & Call Center Solutions, June 1998 by Margaret Sansom;

Playing The Numbers: Using ACD Statistics For Workforce Management, Telemarketing

& Call Center Solutions, Mar 1998 by Illah Nourbakhsh; CentreVu from Lucent,

Telemarketing & Call Center Solutions, Mar 1998; Health Care Provider's Quality

Monitoring Pays Off, Telemarketing & Call Center Solutions, Jan 1998 by Ron Elwell;

Mustang Internet Message Center, Telemarketing & Call Center Solutions, March 1998;

Desktop Screen Capture From Teknekron Infoswitch, Telemarketing & Call Center

Solutions, August 1997; Monitoring Technology Helps Keep Customers Satisfied,

Telemarketing & Call Center Solutions, July 1997 by Ron Elwell; How Logging &

Monitoring Technologies Improve Quality, Telemarketing & Call Center  Solutions, Feb

1997 by Joav Avtalion; Eyretel MediaStore with Funk Screen Capture Recorder; Unify;

and any and all references of record in the file history of this patent and/or any related patent, including matter incorporated by reference therein.

Witness Systems believes one or more of the claims of the '109 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: 5,382,972; 5,440,624; 5,590,171; 5,655,081; 5,668,863; 5,757,889; 5,854,825; 5,857,190; 5,923,746; 5,991,373; 6,122,740; 6,263,049; 6,298,129; 6,301,246; 6,404,857; 6,665,395; 6,668,044; 6,731,609; U.S. Application 20010043697; DE 103 24 872 A1; EP 0 846 395; EP 1 115 264 A2; EP 1 335 571 A1; EP 1 351 436 A1; EP 1 432 217 A2; WO 02/19620 A2; WO 94 22 246 A1; WO 99 46 702 A1; Real-Time Disk Storage And Retrieval Of Digital Audio/Video Data, U.Cal Berkeley EECS  Dept., August 1991; Apple Computer's Quicktime Conferencing Kit Now Shipping; ISDN Upgrade Kits Soon to Follow, PR Newswire, 18 December 1995; First Virtual Ports Products to Corporate Intranet, Enabling Business-Quality Videoconferencing, Video on Demand, and Live Broadcast From the Web Browser, PR Newswire, 27 January 1997; Internet Conferencing With Networked Virtual Environments, by John and Elizabeth Towell, Internet Research, 1995 Vol. 5, Iss. 3; and any and all references of record in the file history of this patent and/or any related patent, including matter incorporated by reference therein.

Witness Systems believes one or more of the claims of the '570 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: 4,399,331; 4,471,169; 4,475,011; 4,510,351; 5,003,574; 5,048,079; 5,153,909; 5,159,698; 5,163,085; 5,164,983; 5,181,239; 5,287,270; 5,325,290; 5,434,910; 5,465,286; 5,500,795; 5,517,560; 5,535,256; 5,535,261; 5,539,808;

5,559,867; 5,559,875; 5,619,557; 5,668,863; 5,696,811; 5,710,978; 5,715,307; 5,740,233;
5,784,452; 5,793,861; 5,799,073; 5,818,907; 5,864,616; 5,867,599; 5,903,641; 5,923,746;
5,926,535; 5,933,780; 5,940,494; 5,946,375; 5,982,857; 5,991,373; 6,022,753; 6,058,163;
6,072,860; 6,084,954; 6,091,808; 6,097,792; 6,151,386; 6,252,945; 6,304,648; 6,314,089;
6,327,343; 6,345,094; 6,363,145; 6,385,301; 6,393,106; 6,404,883; 6,430,270; 6,466,663;
6,490,350; 6,526,397; 6,567,504; 6,665,376; 6,665,395; 6,732,082; 6,741,697; 6,788,315;
6,874,119; 6,975,707; 6,975,708; 6,988,205; 7,020,250; 7,027,578; 7,065,192; 7,092,494;
7,142,650; EP 0 572 544 B1; EP 0 572 544 B1; EP 0 572 544 B1; EP 0 946 032 A2; EP 0
946 032 A2; EP 380798; WO 00/76188; WO 00/76188 A1; Build A Telephone-Usage
Monitor And Controller, Dave Dage, Electronics Now v69.n8 (August 1998); Ever Taken
A Call On Your Computer?, (AT&T Computer Phone 8130) (Network Edition First
Looks) Frank J. Derfler; Complementary Solutions' Telemate Facilities Manager: Call
Accounting, Cable  Management And More, Lyle Deixler, Teleconnect v12, n5 (May
1994); Tap Into The Secret Service Of Telephone Line: WHOSS CALLING?, Computer
Shopper, V12, n6 (June 1992); Call Monitoring, Gill, S. Business Equipment Digest : 26,
July 1993; Intelligent Call Processing In Automatic Call Distributors, Wang, E., Business
Communications Review, vol.18, no.1,  22-6, Jan.-Feb. 1998; Electronic Supervisor:
New Technology, New Tensions, Office of  Technology Assessment, Washington, DC.
Sponsor: National Aeronautics and Space Administration, Washington, DC, Sept 1987;
E-Ware (including E-Ware Replay) Versions 1.0.003, 1.0.004, 1.0.006, 1.0.008,
1.0.0011, 1.0.031, 1.0.036, 1.0.037, 1.0.038, 1.0.039, 1.0.044, 1.0.045; Eyretel e1000;
Eyretel e500; MediaStore; ContactStore; and any and all references of record in the file

history of this patent and/or any related patent, including matter incorporated by

reference therein.

Witness Systems believes one or more of the claims of the '005 Patent are invalid

under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following

references, either alone or in combination: 3,855,617; 4,121,058; 4,124,773; 4,221,933;

4,221,933; 4,378,574; 4,412,098; 4,521,879; 4,523,055; 4,549,047; 4,553,223; 4,573,140;

4,791,660; 4,841,574; 4,985,914; 5,146,439; 5,163,085; 5,163,134; 5,185,781; 5,194,995;

5,245,667; 5,265,075; 5,297,231; 5,396,371; 5,437,050; 5,446,880; 5,506,891; 5,515,352;

5,526,408; 5,581,606; 5,710,978; 5,764,847; 5,790,177; EP 0 372 894 A2; EP 0 550 274

A2; EP 0 642 250 A2; EP 0 731 592 A2; EP 503480; JP 05-324448 A; JP 63056766;

Rolm Introduces Digital PBX Line, Electronic News, v29, n1472, Nov 21, 1983; Signal

Processing Software For A Voice Messaging System Using The TMS32010 Processor,

1985 IEEE Int. Conf. on Acoustics, Speech and  Signal Processing, pages 1417-1420;

Siemens Unveils The HCM 200 - A Fully Digital, Voice/Data Hybrid, Teleconnect, v7,

n11 Nov 1989; Telephone Logging, Teleconnect, v8, n10, Oct 1990; A Second-

Generation Digital Signal Processor, IEEE, 1986; Editing Digital Audio, IEEE, 1984;

Modular Voice Processor, IEEE, 1991; Voice Processing System, The Internal Auditor:

Jun 1992, 49, 3, ABI/INFORM Global; Digital Recording Arrives, Popular Science, New

York, Apr 1993. Vol. 242, Iss. 4; Data loggers, Systems International, London, Jul 1980,

Vol. 8, Iss. 7; Voice-Data Digitization Too New For Standards, Unix World, v6, n10,

Oct. 1989; Hard Drive's Read-Channel Electronics Fit On One Chip; Small Form-

Factory Drives Benefit From Analog And Digital Integration, Electronic Design, v39, n7,

April 11, 1991; Trends and Technology in Data Recording, Automation, v19, n1, Jan.

1983; Digital Audio Tape for Data Storage, IEEE Spectrum, New York, Oct 1989, Vol. 26, Iss.10; Eyretel e1000; Eyretel e500; and any and all references of record in the file history of this patent and/or any related patent, including matter incorporated by reference therein.

Witness Systems' investigation of this matter is ongoing and discovery is in its very early stages. Witness Systems specifically reserves its right to amend and/or supplement this response as that investigation continues.

**INTERROGATORY NO. 3:**

**Describe in detail the factual and legal bases for Witness' contention that "[b]y virtue of the proceedings in the USPTO during the prosecution of the applications that matured into the '738, '371, '005, '345, '372, '370,'920, '079, and '109 patents, as illustrated by their prosecution histories, NICE is estopped from asserting that Witness Systems has infringed directly or indirectly, any claim of any of the '738, '371, '005, '345, '372, '370,'920, '079, and '109 patents, either literally or under the doctrine of equivalents." The detailed description of such factual and legal bases should include, without limitation, an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

**RESPONSE TO INTERROGATORY NO. 3:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege and/or work product doctrine. Witness Systems also objects to this Interrogatory to the extent it calls for information comprising trade secrets, proprietary information, or other confidential or competitively sensitive technical information. Accordingly, Witness Systems' responses are provided subject to the terms of the protective order entered by the Court in this action.

Subject to and without waiving the foregoing objections, Witness Systems responds as follows:

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '345 Patent based on the '345 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '345, '370, and/or '570 patents; during prosecution of U.S. Pat. Nos. 6,246,752; 6,252,946; 6,937,706; 6,252,947; and/or 6,785,369; during prosecution of Patent Cooperation Treaty (PCT) App. Ser. No. PCT/US00/15748; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '370 Patent based on the '370 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '345, '370, and/or '570 patents; during prosecution of U.S. Pat. Nos. 6,246,752; 6,252,946; 6,937,706; 6,252,947; and/or 6,785,369; during prosecution of PCT App. Ser. No. PCT/US00/15748; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '109 Patent based on the '109 Patent specification, and/or the specification of U.S. Pat. App. Ser. No. 60/228,124; and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '109 Patent; during prosecution of U.S. Pat. No. 7,010,106; during prosecution of PCT App. Ser. No.

PCT/IL01/00805; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '738 Patent based on the '738 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '738 Patent; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '371 Patent based on the '371 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '371 Patent; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '079 Patent based on the '079 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '079 Patent; during prosecution of U.S. Pat. No. 6,542,602, U.S. Pat. App. Ser. Nos. 10/451,371 and/or 10/766,851; the specification of U.S. Pat. App. Ser. No. 60/259,158; during prosecution of PCT App. Ser. No. PCT/IL02/00009; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '920 Patent based on the '920 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '920 Patent; during prosecution of the '372 Patent; during prosecution of PCT App. Ser. No. PCT/US00/15419; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '372 Patent based on the '372 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '372 Patent; during prosecution of the '920 Patent; during prosecution of PCT App. Ser. No. PCT/US00/15419; and/or during prosecution of other patent applications and/or patents related thereto.

Witness Systems believes NICE should be estopped from asserting that Witness System has directly or indirectly infringed, either literally or under the doctrine of equivalents, any claim of the '005 Patent based on the '005 Patent specification and/or based on amendments, replies and/or other filings filed with the USPTO during prosecution of the '005 Patent; during prosecution of U.S. Pat. App. Ser. Nos. 08/100,944 and/or 09/672,148; and/or during prosecution of other patent applications and/or patents related thereto.

-24-

Witness Systems' investigation of this matter ongoing and discovery is in its very early stages. Witness Systems specifically reserves its right to amend and/or supplement this response as that investigation continues.

**INTERROGATORY NO. 4:**

**Describe in detail the factual and legal bases for Witness' contention that ''NICE'S patent infringement claims are barred by the doctrine of laches.'' The detailed description of such factual and legal bases should include, without limitation, an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

**RESPONSE TO INTERROGATORY NO. 4:**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent that it seeks information subject to the attorney-client privilege and/or work product doctrine. Witness Systems also objects to this Interrogatory to the extent it calls for information comprising trade secrets, proprietary information, or other confidential or competitively sensitive technical information. Accordingly, Witness Systems' responses are provided subject to the terms of the protective order entered by the Court in this action. Witness Systems also objects to this Interrogatory to the extent that it calls for legal conclusions.

Subject to and without waiving the foregoing objections, Witness Systems responds as follows: NICE unreasonably and inexcusably delayed bringing suit, despite having had long-standing knowledge of Witness Systems' products, which NICE now accuses of infringement in this litigation. By way of example only, NICE was aware of the existence of Witness Systems' products as early as July 2004, as evidenced by the decision of its wholly owned subsidiary, STS Software Systems Ltd. ("STS"), to bring a patent infringement action against Witness Systems. NICE, however, initiated this suit only after a long period of inaction. Witness Systems has suffered material prejudice as a

consequence of NICE's unreasonable delay, evidenced, in part, by Witness' continued

research and development of the products accused of infringement in this case.

Witness Systems' investigation of this matter is ongoing and discovery is in its

very early stages.  Witness Systems specifically reserves its right to amend and/or

supplement this response as that investigation continues.

### INTERROGATORY NO. 5:

**Describe in detail the factual and legal bases for Witness' contention that "NICE'S patent infringement claims are barred based on the doctrine of equitable estoppel."  The detailed description of such factual and legal bases should include, without limitation, an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

### RESPONSE TO INTERROGATORY NO. 5:

Witness Systems incorporates by reference its General Objections as if fully

stated herein.  Witness Systems also objects to this Interrogatory to the extent that it seeks

information subject to the attorney-client privilege and/or work product doctrine.

Witness Systems also objects to this Interrogatory to the extent it calls for information

comprising trade secrets, proprietary information, or other confidential or competitively

sensitive technical information.  Accordingly, Witness Systems' responses are provided

subject to the terms of the protective order entered by the Court in this action.  Witness

Systems also objects to this Interrogatory to the extent that it calls for legal conclusions.

Subject to and without waiving the foregoing objections, Witness Systems states

by way of example only that the assertions made and positions taken by NICE in the prior

Dictaphone litigation involving the '371 patent should equitably estop NICE from

obtaining the relief it seeks in this action.  Witness Systems incorporates by reference its

Response to Interrogatory No. 9 as if fully stated herein.  Witness Systems anticipates

that as this action proceeds, further facts and information may be discovered which may

further support Witness Systems' affirmative defense, and Witness Systems will

supplement this response as appropriate as its investigation continues. Witness Systems

specifically reserves its right to amend and/or supplement this response as that

investigation continues.

**INTERROGATORY NO. 6:**

      **Describe in detail the factual and legal bases for Witness' contention that "NICE'S patent infringement claims are barred based on the doctrine of waiver." The detailed description of such factual and legal bases should include, without limitation, an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

**RESPONSE TO INTERROGATORY NO. 6:**

      Witness Systems incorporates by reference its General Objections as if fully

stated herein. Witness Systems also objects to this Interrogatory to the extent that it seeks

information subject to the attorney-client privilege and/or work product doctrine.

Witness Systems also objects to this Interrogatory to the extent it calls for information

comprising trade secrets, proprietary information, or other confidential or competitively

sensitive technical information. Accordingly, Witness Systems' responses are provided

subject to the terms of the protective order entered by the Court in this action. Witness

Systems also objects to this Interrogatory to the extent that it calls for legal conclusions.

      Subject to and without waiving the foregoing objections, Witness Systems

responds, by way of example only, that NICE voluntarily and intentionally relinquished

its right to enforce the asserted patents against Witness Systems at least by failing to do

so in prior litigation involving the same products. In 2004, NICE, through its wholly-

owned subsidiary, STS, sued Witness Systems alleging, at various times, infringement of

four separate patents. That suit encompasses essentially the same products accused of

infringement in this case, yet NICE never alleged infringement of the patents at issue in

this case.

Witness Systems' investigation of this matter is ongoing and discovery is in its

very early stages.  Witness Systems specifically reserves its right to amend and/or

supplement this response as that investigation continues.

## INTERROGATORY NO. 7:

**Describe in detail the factual and legal bases for Witness' contention that "NICE's patent infringement claims are barred based on the doctrine of unclean hands."  The detailed description of such factual and legal bases should include, without limitation, an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

## RESPONSE TO INTERROGATORY NO. 7:

Witness Systems incorporates by reference its General Objections as if fully

stated herein.  Witness Systems also objects to this Interrogatory to the extent that it seeks

information subject to the attorney-client privilege and/or work product doctrine.

Witness Systems also objects to this Interrogatory to the extent it calls for information

comprising trade secrets, proprietary information, or other confidential or competitively

sensitive technical information.  Accordingly, Witness Systems' responses are provided

subject to the terms of the protective order entered by the Court in this action.  Witness

Systems also objects to this Interrogatory to the extent that it calls for legal conclusions.

Subject to and without waiving the foregoing objections, Witness Systems

responds as follows:  In prior litigation with Dictaphone before NICE obtained the '371

patent, NICE asserted that the '37l patent is unenforceable due to breaches of the duty of

candor by the named inventors and/or others substantively involved in the prosecution of

the applications that resulted in that patent.  The patentee's inequitable conduct in

procuring the '371 patent has an immediate and necessary relation to the enforcement of

the other patents asserted in this lawsuit because Witness Systems believes that the

assertion  of the '371 patent is an integral part of NICE's underlying strategy and thus the

assertion of the '371 patent has an immediate and necessary relationship to the

enforcement of the other patents asserted in this lawsuit, and therefore constitutes unclean

hands.  Witness Systems further incorporates by reference its response to Interrogatory

No. 9 as though fully set forth herein.

Witness Systems' investigation of this matter is ongoing and discovery is in its

very early stages.  Witness Systems specifically reserves its right to amend and/or

supplement this response as that investigation continues.

## INTERROGATORY NO. 8:

**Describe in detail the factual and legal bases for Witness' contention that "NICE'S claims for damages for purported patent infringement are limited by 35 U.S.C. § 287."  The detailed description of such factual and legal bases should include, without limitation, an identification of any NICE product (or products) that Witness contends fails to give notice to the public that it is covered by a patent and should include an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

## RESPONSE TO INTERROGATORY NO. 8:

Witness Systems incorporates by reference its General Objections as if fully

stated herein.  Witness Systems also objects to this Interrogatory to the extent that it seeks

information subject to the attorney-client privilege and/or work product doctrine.

Witness Systems also objects to this Interrogatory to the extent it calls for information

comprising trade secrets, proprietary information, or other confidential or competitively

sensitive technical information.  Accordingly, Witness Systems' responses are provided

subject to the terms of the protective order entered by the Court in this action.  Witness

Systems also objects to this Interrogatory to the extent that it calls for legal conclusions.

-29-

Subject to and without waiving its objections, Witness Systems states that it does not believe NICE or Dictaphone marked embodying products with the numbers of the Patents in Suit, nor did NICE provide notice to Witness Systems of NICE's infringement claims prior to filing suit.  As a result, NICE's damages, if any, are limited by Section 287.  Witness Systems anticipates that as this action proceeds and discovery has proceeded beyond its very early stages, further information may be discovered. Accordingly, Witness Systems specifically reserves its right to amend and/or supplement this response as its investigation continues.

**INTERROGATORY NO. 9:**

**Describe in detail the factual and legal bases for Witness' contention that "[t]he '371 patent is unenforceable due to the intentional failure to disclose to the USPTO, during prosecution, information known to be material to the patentability of the subject matter claimed in the '371 patent, in violation of the duties of candor and good faith required under 37 C.F.R. § 1.56."  The detailed description of such factual and legal bases should include, without limitation, identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.**

**RESPONSE TO INTERROGATORY FOR PRODUCTION NO. 9:**

Witness Systems incorporates by reference its General Objections as if fully stated herein.  Witness Systems further objects to this Interrogatory to the extent that it seeks information subject to the attorney-client privilege and/or work product doctrine. Witness Systems also objects to this Interrogatory to the extent that it calls for legal conclusions.

Subject to and without waiving the foregoing objections, Witness Systems responds as follows:  On June 19, 2000, Dictaphone Corporation sued NICE for patent infringement in a complaint filed in the United States District Court for the District of Connecticut.  *Dictaphone Corp. v. NICE Sys. Ltd.*, No. 3:00-CV-1143 ("the Dictaphone

action"). That lawsuit alleged, *inter alia*, that NICE infringed the '371 patent, then

owned by Dictaphone.

> In defending against the Dictaphone action, NICE alleged:

> Upon information and belief, one or more individuals associated with the filing and prosecution of the application that led to U.S. Patent No. 5,396,371 knew of a public use or sale in the United States of at least one digital audio logger or at least one publication disclosing at least one digital audio logger, including but not limited to Racal Recorder Inc.'s Rapidax product, more than one year prior to the filing date.

> Upon information and belief, the public use or sale in the United States and/or publications disclosing the Rapidax product, includes all the elements of at least one claim of U.S. Patent No. 5,396,371 and as a result this information material [sic] to the patentability of the claims at the time of filing.

> Upon information and belief, although one or more individuals associated with the filing and prosecution of the application that led to the U.S. Patent No. 5,396,371 knew of this information prior to filing the application, one or more of these individuals intentionally failed to disclose this information to the U.S. Patent Office.

> The conduct described by NICE, above, constitutes inequitable conduct rendering

the '371 patent unenforceable.

> Witness Systems' investigation of this matter is ongoing and discovery is in its

very early stages. Witness Systems specifically reserves its right to amend and/or

supplement this response as that investigation continues.

DATED:  January 18, 2007                    FISH & RICHARDSON P.C.


                                            /s/ Kyle Wagner Compton
                                            William J. Marsden, Jr. (#2247)
                                            Kyle Wagner Compton (#4693)
                                            919 N. Market Street, Suite 1100
                                            P.O. Box 1114
                                            Wilmington, DE 19899-1114
                                            Tel:  (302) 652-5070

                                            Nagendra Setty (Pro Hac Vice)
                                            Daniel A. Kent (Pro Hac Vice)
                                            John D. Hamann(Pro Hac Vice)
                                            1180 Peachtree Street, NE, 19th Floor
                                            Atlanta, GA 30309
                                            Tel: (404) 892-5005

                                            ATTORNEYS FOR DEFENDANT
                                            WITNESS SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January, 2007, I caused a copy of

DEFENDANT WITNESS SYSTEMS, INC.'S OBJECTIONS AND RESPONSES TO

PLAINTIFFS NICE SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S FIRST SET OF

INTERROGATORIES to be served on the following counsel of record in the manner

indicated below:

### VIA EMAIL & HAND DELIVERY:

Josy W. Ingersoll                           *Attorneys for Plaintiffs*
Karen L. Pascale                            *Nice Systems Ltd. and Nice Systems, Inc.*
Young, Conoway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899


### VIA EMAIL & FIRST CLASS MAIL:

Scott G. Lindvall                           *Attorneys for Plaintiffs*
Daniel DiNapoli                             *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022


_____

Kyle Wagner Compton (#4693)


80041128.doc

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

       *Plaintiffs and Counterclaim*
       *Defendants*,

     v.

WITNESS SYSTEMS, INC.

       *Defendant and Counterclaim*
       *Plaintiff.*

C.A. No. 1:06-CV-00311-JJF

---

### DEFENDANT WITNESS SYSTEMS, INC.'S FOURTH SUPPLEMENTAL RESPONSES TO PLAINTIFFS NICE SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S INTERROGATORY 2 and 2(a)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware, Defendant Witness Systems, Inc. ("Witness Systems") provides the following fourth supplemental objections and responses to the Interrogatories propounded by Plaintiffs NICE Systems, Inc. and NICE Systems Ltd. (collectively, "NICE"). Subject to and without waiving its previously stated objections, Witness Systems incorporates by reference its original, first, second and third supplemental responses and objections to NICE's First and Second Sets of Interrogatories[1] as if set forth verbatim herein, and for brevity provides only the supplemental information for the identified interrogatories below:

---

[1] Served on January 18, 2007; March 2, 2007; April 30, 2007; May 30, 2007; and July 10, 2007, respectively.

**SUPPLEMENTAL RESPONSES**

**INTERROGATORY NO. 2:**

 Describe in detail the factual and legal bases for Witness' contention that "[the claims of the '738, '371, '005, '345, '372, '370,'920, '079, and '109 patents are invalid for failure to comply with the United States patent laws, 35 U.S.C. §§ 1, et seq., including without limitation § § 102, 103, and/or 112." The detailed description of such factual and legal bases should include, without limitation, an identification of which aspect(s) of 35 U.S.C. § 112 Witness contends the Patents-In-Suit do not meet and an identification and description of every document, tangible item and item of information that Witness has relied upon or intends to rely upon as support for its contention.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

 Witness believes one or more of the claims of the '005 Patent are invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either alone or in combination: U.S. Patent No. 4,523,055, to Hohl et al., issued Jun. 11, 1985; U.S. Patent No. 4,549,047, to Brian et al., issued Oct. 22, 1985;  U.S. Patent No. 4,790,003, to Kepley et al., issued Dec. 6, 1988; U.S. Patent No. 4,221,933, to Cornell et al., issued Sep. 9, 1980; U.S. Patent No. 4,371,752, to Matthews et al., issued Feb. 1, 1983; U.S. Patent No. 4,375,083, to Maxemchuk, issued Feb. 22, 1983; U.S. Patent No. 4,582,957, to Hayes et al., issued Apr. 15, 1986; U.S. Patent No. 4,612,416, to Emerson et al., issued Sep. 16, 1986; U.S. Patent No. 4,646,346, to Emerson et al., issued Feb. 24, 1987; U.S. Patent No. 4,663,777, to Szeto, issued May 5, 1987; U.S. Patent No. 4,747,126, to Hood et al., issued May 24, 1988; U.S. Patent No. 4,785,473, to Pfeiffer et al., issued Nov. 15, 1988; U.S. Patent No. 4,837,798, to Cohen et al., issued Jun. 6, 1989; U.S. Patent No. 4,916,726, to Morley, Jr. et al., issued Apr. 10, 1990; U.S. Patent No. 4,926,462, to Ladd et al., issued May 15, 1990; U.S. Patent No. 5,003,577, to Ertz et al., issued May 26, 1991; U.S. Patent No. 5,008,926, to Misholi, issued Apr. 16, 1991; U.S.

Patent No. 5,029,199, to Jones et al., issued Jul. 2, 1991; U.S. Patent No. 5,187,735, to

Herrero Garcia et al., issued Feb. 16, 1993; "Communication Systems: Towards Global

Integration," Singapore ICCS '90, dated Nov. 5-9, 1990; and "Voicemail,"

Wikipedia.com, dated Sep. 5, 2007.

      Witness believes one or more of the claims of the '920 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination:  U.S. Patent No. 6,233,318 to Picard et al., issued May 15, 2001;

"Access Web TM. Internet Messaging Application," BostonTechnology.com, dated Dec.

27, 1996; and "Boston Technology Completes The Connection! Adds Internet Support

To Its Public Network Services," PR Newswire, dated Nov. 30, 1995.

      Witness believes one or more of the claims of the '372 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination:  U.S. Patent No. 6,233,318 to Picard et al., issued May 15, 2001;

"Access Web TM. Internet Messaging Application," BostonTechnology.com, dated Dec.

27, 1996; and "Boston Technology Completes The Connection! Adds Internet Support

To Its Public Network Services," PR Newswire, dated Nov. 30, 1995.

      Witness believes one or more of the claims of the '371 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination: U.S. Patent No. 4,121,058, issued to Jusko et al., filed on

December 13, 1976; U.S. Patent No. 4,841,574, issued to Pham et al, issued June 20,

1989; United States Patent No. 4,549,047, issued October 22, 1985 to Brian et al; United

States Patent No. 4,523,055, issued June 11, 1985 to Hohl et al., filed November 25,

1983;  United States Patent No. 5,103,467, issued April 17, 1992 to Bedlek et al., filed

October 31, 1989; United States Patent No. 4,985,914, issued January 15, 1991 to

Fukunga, filed January 12, 1990.

Witness believes one or more of the claims of the '738 Patent are invalid under 35

U.S.C. § 102 and/or 35 U.S.C. § 103 over one or more of the following references, either

alone or in combination:  U.S. Patent No. 4,523,055, to Hohl et al., issued Jun. 11, 1985;

U.S. Patent No. 4,549,047, to Brian et al., issued Oct. 22, 1985;  U.S. Patent No.

4,790,003, to Kepley et al., issued Dec. 6, 1988; U.S. Patent No. 4,221,933, to Cornell et

al., issued Sep. 9, 1980; U.S. Patent No. 4,371,752, to Matthews et al., issued Feb. 1,

1983; U.S. Patent No. 4,375,083, to Maxemchuk, issued Feb. 22, 1983; U.S. Patent No.

4,582,957, to Hayes et al., issued Apr. 15, 1986; U.S. Patent No. 4,612,416, to Emerson

et al., issued Sep. 16, 1986; U.S. Patent No. 4,646,346, to Emerson et al., issued Feb. 24,

1987; U.S. Patent No. 4,663,777, to Szeto, issued May 5, 1987; U.S. Patent No.

4,747,126, to Hood et al., issued May 24, 1988; U.S. Patent No. 4,785,473, to Pfeiffer et

al., issued Nov. 15, 1988; U.S. Patent No. 4,837,798, to Cohen et al., issued Jun. 6, 1989;

U.S. Patent No. 4,916,726, to Morley, Jr. et al., issued Apr. 10, 1990; U.S. Patent No.

4,926,462, to Ladd et al., issued May 15, 1990; U.S. Patent No. 5,003,577, to Ertz et al.,

issued May 26, 1991; U.S. Patent No. 5,008,926, to Misholi, issued Apr. 16, 1991; U.S.

Patent No. 5,029,199, to Jones et al., issued Jul. 2, 1991; U.S. Patent No. 5,187,735, to

Herrero Garcia et al., issued Feb. 16, 1993; "Communication Systems: Towards Global

Integration," Singapore ICCS '90, dated Nov. 5-9, 1990; and "Voicemail,"

Wikipedia.com, dated Sep. 5, 2007.

**INTERROGATORY NO. 2(a):**

On a claim-by-claim basis in a chart, for each prior art reference identified by Witness in response to NICE's Interrogatory No. 2, identify the disclosure in each prior art reference of each limitation of the Asserted Claims in the respective Patent-in-Suit. To the extent that Witness asserts the prior art references support its invalidity defense under 35 U.S.C. § 103, it must further identify any prior art combinations and the motivation to combine those references.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2(a):**

Witness Systems incorporates by reference its General Objections as if fully stated herein. Witness Systems also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Witness Systems further objects to this Interrogatory to the extent it purports to be duplicative of an Interrogatory NICE earlier served, which it is not. Thus, this Interrogatory counts as a separate Interrogatory. Witness Systems further objects to this Interrogatory to the extent it is premature because discovery is still ongoing and the claims of the Patents-in-Suit have yet to be construed. Witness Systems further objects to this Interrogatory to the extent it calls for pure legal conclusions and/or to the extent it seeks information that will be the subject of expert opinion testimony. Subject to and without waiving the foregoing objections, Witness Systems refers NICE to Supplemental Exhibit B, which identifies additional representative, invalidating prior art for the '372, '920, '371, and '005 patents. Numerous other prior art references also contain the identified disclosures. Witness Systems reserves its right to amend and/or supplement this response as discovery and Witness Systems' investigation continue, and after any claim construction ruling. Witness Systems specifically reserves the right to supplement and/or amend its response in light of information and materials that it is currently seeking from third parties.

DATED:  September 10, 2007                    FISH & RICHARDSON P.C.


                                              /s/ Kyle Wagner Compton
                                              William J. Marsden, Jr. (#2247)
                                              Kyle Wagner Compton (#4693)
                                              919 N. Market Street, Suite 1100
                                              P.O. Box 1114
                                              Wilmington, DE 19899-1114
                                              Tel:  (302) 652-5070

                                              Nagendra Setty (*Pro Hac Vice*)
                                              Daniel A. Kent (*Pro Hac Vice*)
                                              1180 Peachtree Street, NE, 19th Floor
                                              Atlanta, GA 30309
                                              Tel: (404) 892-5005

                                              ATTORNEYS FOR DEFENDANT
                                              WITNESS SYSTEMS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2007, I caused to be served "DEFENDANT

WITNESS SYSTEMS, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS NICE

SYSTEMS, INC.'S AND NICE SYSTEMS LTD.'S INTERROGATORIES 2 and 2(a)" on

counsel for Plaintiffs as follows:

**By E-Mail and U.S. First Class Mail:**

Scott G. Lindvall                    Attorneys for Plaintiffs
Daniel P. DiNapoli                   NICE Systems, Inc.  And NICE Systems,
Joseph M. Drayton                    LTD
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

**By E-Mail and Hand Delivery:**

Josy W. Ingersoll                    Attorneys for Plaintiffs
Melanie K. Sharp                     NICE Systems, Inc.  And NICE Systems,
Karen E. Keller                      LTD
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391


                              _/s/ Kyle Wagner Compton_____
                                    Kyle Wagner Compton (#4693)

# SUPPLEMENTAL
# EXHIBIT B

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D1: Sale of Eyretel e1000, sold in the U.S. on or before October, 1992. See 30(b)(6) Deposition of Chris Blair in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143.<br><br>D2:  e1000 Circuit Diagrams (illustrating the hardware of the D1 sale). (WSNSDE0013861-94; WSNSDE0050671)<br><br>D3:  "E1000/E500 Recorder: Engineer Familiarisation" (illustrating the hardware of the D1 sale.) (WSNSDE0015161-98)<br><br>D4: U.S. Patent No. 5,724,738, to Daly et al., filed on December 31, 1991. (WSNSDE0008620-5)<br><br>D5: "Digital Audio Tape For Data Storage", IEEE Spectrum, October, 1989. (WSNSDE0010785-9)<br><br>D6:  Racal Rapidax, sold in the U.S. as of at least December 21, 1992.<br><br>D7:  "Racal's 'Rapidax' Voice Logging Recorders Offers Instant Message Recall of Multichannel Calls, Transmissions." (NSDE008300-008302) (evidencing the hardware of the D6 sale).<br><br>D8: "Rapidax Access Voice Logging Recorder." (NSDE008312-008319) (evidencing the hardware of the D6 sale).<br><br>D9: "Rapidax Instant Call Recorder," (NSDE008305-008309)  (illustrating the hardware of the D6 sale).<br><br>D10:  "Rapidax in Surveillance and Security Monitoring" (NSDE008310-008311) (evidencing the hardware of the D6 sale).<br><br>D11:  "Operator's Manual." (NSDE008320-008324) (evidencing the hardware of the D6 sale).<br><br>D12: "System Manager's Manual." (NSDE008325-008340) (evidencing the hardware of the D6 sale). | |

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D13: "Rapidax Tape Archive and System Network." (NSDE008303-008304) (evidencing the hardware of the D6 sale).<br><br>D14: Deposition of Andrew Jackson in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE008273-008299) (evidencing the hardware of the D6 sale).<br><br>D15: Expert Report on the Invalidity of U.S. Patent No. 5,396,371 in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE008447-008468) (evidencing the hardware of the D6 sale).<br><br>D16: U.S. Patent No. 4,523,055, to Hohl et al., issued Jun. 11, 1985. (WSNSDE064653-76)<br><br>D17: U.S. Patent No. 4,549,047, to Brian et al., issued Oct. 22, 1985. (WSNSDE064677-733)<br><br>D18: U.S. Patent No. 4,790,003, to Kepley et al., issued Dec. 6, 1988. (WSNSDE064246-63) | |
| 1. A modular digital recording logger, comprising: | D1: D2 and D3.<br><br>D4: Col. 1, lines 28-58.<br><br>D6: D7, Pages 1-3; D9, Entire Document.<br><br>D16: Col. 2, lines 1-12, Claims 1-36, FIGs. 1a, 1b.<br><br>D17: Abstract, FIG.1. | Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D1 (evidenced by D1-D3).<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15).<br><br>Claim 1 is invalid under 35 U.S.C. §103 as obvious in view of D4 in combination with D1, D5 and/or D16.<br><br>Claim 1 is invalid under 35 U.S.C. §103 as obvious over D16 in view of D17.<br><br>Claim 1 is invalid under 35 U.S.C. §103 as obvious over D17 in view of D1, D5 and/or D16. |
| a housing; | D1: D2, and D3 Page 9. | |

**U.S. Pat. No. 5,819,005 Invalidity Chart**

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D4: Col. 2, lines 15-19, Col. 3, lines 28-32.<br><br>D6: D7, Pages 1-3; D8, Page 4; D9, Entire Document<br><br>D16: Col. 2, lines 1-12, Claims 1-36, FIGs. 1a, 1b.<br><br>D17: Abstract, FIG.1, Summary of Invention. | |
| at least two circuit modules in said housing for converting analog voice signals to digital voice signals, each of said circuit modules including at least two terminals for receiving said analog voice signals, each of said terminals being capable of receiving said analog voice signals for recording a two-way conversation; | D1: D2, and D3 Pages 2-5.<br><br>D4: Col. 1, lines 44-49 and lines 55-58; Col. 2, lines 4-10; Col. 3, lines 13-21; Col. 4, lines 3-6.<br><br>D6: D7, Page 2; D8, Page 6.<br><br>D16: FIGs. 1a, 1b, 7; Col. 5, lines 8-36; Col. 11, line 44 to Col. 12, line 52.<br><br>D17: FIGs.1, 6a-6c, 10; Col. 6, lines 16-56; Col. 22, line 27 to Col. 26, line 37. | |
| a circuit in said housing for compressing said digital voice signals received from each of said circuit modules to provide compressed voice data; | D1: D2, and D3 Page 6.<br><br>D4: Col. 2, line 65 – Col. 3, line 2.<br><br>D6: D7, Page 2; D8, Page 6.<br><br>D17: FIG.1, Col. 6, lines 16-56; Col. 44, line 5 to Col. 45, line 36. | In D16 digitized audio is transmitted via a multiplexed voice bus to a storage network processor, which can stored the digitized voice to tape. It would have been obvious to one of ordinary skill in the art to compress the digitized voice in the D16 apparatus prior to storage, as is taught by D17, to minimize the amount of memory required to store the voice data and to aid in processing of the voice data.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital recorders, would have seen a benefit to incorporate compression in the teaching of D16, as is taught by the microprocessor in the digital line cards of D17, to minimize the amount of memory required to store the voice data and to aid in processing of the voice data. |
| a first bus in said housing | D1: D2, and D3 Pages 2-7. | |

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| for providing communication between said circuit module and said compressing circuit; | D4: FIG. 1; Col. 2, lines 2-6, and line 58 to Col. 3, line 8.<br><br>D6: D7, Page 2; D8, Page 6.<br><br>D16: Fig 1a, 1b, including voice bus 20.<br><br>D17: FIGs.1, 6A-6C; Col. 6, lines 16-56; Col. 19, lines 59-63. | |
| a multiplexer circuit in said housing for providing communication between said compressing circuit and said first bus, wherein said multiplexer circuit multiplexes voice signals exchanged between said compressing circuit and said circuit modules on said first bus; and | D1: D2, and D3 Pages 2-7.<br><br>D4: FIG. 1; Col. 2, lines 2-6, and line 58 to Col. 3, line 8.<br><br>D6: D7, Pages 1-3, D8, Page 6.<br><br>D16: FIGs. 1a, 1b, Col. 13, lines 26-30.<br><br>D17: FIGs.1, 6A-6C; Col. 6, lines 16-56; Col. 19, lines 44-51. | |
| a digital audio tape (DAT) drive for storing said compressed voice data. | D1: D2 and D3 Pages 2, 6-7, and 13-15.<br><br>D5: Entire Article.<br><br>D6: D10, Page 1; D13, Page 2; D12, Pages 6-16; D9, Entire Document.<br><br>D16: FIGs. 1b, 1c, Claims 39-46; Col. 4, line 56 to Col. 5, line7. | The digital audio tape in D1, D5 and D16 is used to store compressed data. The DAT may be used as backup storage to the host computer of D4, which "stores" data from the voice processing board. The DAT may be used as a supplement the hard disk drive of the mass storage subsystem 30 of D17. It would have been obvious to one of ordinary skill in the art to include the DAT of D1, D5 or D16 in the system of D4 or D17 for the purpose of backup storage and archiving of digital data in a reliable manner at a low cost.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital recording loggers, would have seen a benefit to incorporate the DAT teaching of D1, D5 or D16 with the teachings of D4 or D17 to provide backup storage and archiving of digital data. |
| 3. The modular digital | D1: D2 and D3 Pages 8-9. | Claim 3 is invalid under 35 U.S.C. |

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| recording logger of claim 1, further including a speaker in communication with at least one circuit module. | D6: D8, Page 7.<br><br>D16: FIGs. 1a, 1c, Col. 9, lines 21-28; Col. 11, lines 44-50.<br><br>D17: FIG. 1; Col. 9, lines 44-63. | §102(b) as anticipated by D1.<br><br>Claim 3 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative, under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15).<br><br>Claim 3 is invalid under 35 U.S.C. §103 as obvious over D16 in view of D17.<br><br>Claim 3 is invalid under 35 U.S.C. §103 as obvious over D17 in view of D1, D5 and/or D16. See motivation to combine from Claim 1. |
| 4. The modular digital recording logger of claim 1, further comprising a hard disk drive in said housing for storing and reproducing said compressed voice data. | D1: D2, D3 pages 2, 11-16.<br><br>D4: Col. 2, lines 15-19; Col. 1, lines 55-58.<br><br>D6: D7, Pages 1-3; D8, Page 7; D9, Entire Document.<br><br>D16: FIG. 1b, Col. 4, lines 64 – 68; Col. 6, line 25 to Col. 7, line 25.<br><br>D17: FIG. 1; Col. 9, line 62 to Col. 9, line 29. | Claim 4 is invalid under 35 U.S.C. §102(b) as anticipated by D1. See motivation to combine from Claim 1.<br><br>Claim 4 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative, under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15).<br><br>Claim 4 is invalid under 35 U.S.C. §103 as obvious in view of D4 in combination with D1. See motivation to combine from Claim 1.<br><br>Claim 4 is invalid under 35 U.S.C. §103 as obvious over D16 in view of D17. See motivation to combine from Claim 1.<br><br>Claim 4 is invalid under 35 U.S.C. §103 as obvious over D17 in view of D1, D5 and/or D16. See motivation to combine from Claim 1. |
| 6. The modular digital recording logger of claim 1, wherein said first bus is a time division multiplexing (TDM) bus and said multiplexer circuit is a time division multiplexer circuit. | D1: D2, and D3 Pages 2-7.<br><br>D4:  FIG. 1; Col. 2, lines 2-6, and line 58 to Col. 3, line 8.<br><br>D6: D7, Page 2; D8, Page 6.<br><br>D16: FIGs. 1a, 1b, Col. 13, lines 26-30.<br><br>D17: FIGs.1, 6A-6C; Col. 6, lines 16-56; | Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative, under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15). |

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | Col. 19, lines 44-63. | Claim 6 is invalid under 35 U.S.C. §103 as obvious in view of D4 in combination with D1 and/or D5. See motivation to combine from Claim 1.<br><br>Claim 6 is invalid under 35 U.S.C. §103 as obvious over D16 in view of D17. See motivation to combine from Claim 1.<br><br>Claim 6 is invalid under 35 U.S.C. §103 as obvious over D17 in view of D1, D5 and/or D16. See motivation to combine from Claim 1. The use of a TDM bus as the 'first bus' is a matter of design choice. It would have been obvious to one of ordinary skill in the art to utilize a TDM bus between the analog line cards and digital line cards to reduce the number of physical connections between the cards given the large number of telephone lines. |
| 11. A network system of modular digital recording loggers, comprising: | D1: D2, and D3 Pages 2, 17.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6; D9, Entire Document<br><br>D18: FIG. 1; Abstract. | Claim 11 is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>Claim 11 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative, under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15).<br><br>Claim 11 is invalid under 35 U.S.C. §103 as obvious in view of D4 in combination with D1, D5 and/or D16.<br><br>Claim 11 is invalid under 35 U.S.C. §103 as obvious in view of D18 in combination with D1, D5 and/or D16. |
| at least two digital recording loggers for logging voice conversations, each of said recording loggers comprising: | D1: D2, and D3 Pages 2, 17.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6.<br><br>D18: FIG. 1; Col. 5, line 50 to Col. 6, line 7; Col. 4, lines 52-61. | It would have been obvious to one of ordinary skill in the art to utilize multiple digital voice processing systems of D4 to increase capacity for voice processing, and to permit access to stored digital voice signals on remote computers or devices, as in D1.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of modular digital recording loggers, would have |

- 6 -

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | seen a benefit to incorporate the multiple digital voice processing systems of D4 with the teachings of D1 to permit access to stored digital voice signals on remote computers or devices. |
| a housing; | D1: D2, and D3 Page 9.<br><br>D4: Col. 2, lines 15-19, Col. 3, lines 28-32.<br><br>D6: D7, Pages 1-3; D8, Page 4; D9, Entire Document.<br><br>D18: FIG. 1; Abstract; Col. 4, lines 44-61. | |
| a circuit in said housing for converting analog voice signals to and from digital voice signals, said circuit modules including at least two terminals for receiving said analog voice signals, and wherein each of said terminals is capable of receiving said analog voice signals for recording a two-way conversation, | D1: D2, and D3 Pages 2-5.<br><br>D4: FIG. 1; Col. 1, lines 44-49 and lines 55-58; Col. 2, lines 4-10; Col. 3, lines 13-21; Col. 4, lines 3-6.<br><br>D6: D7, Page 2; D8, Page 6.<br><br>D18: FIGs. 1, 2; Col. 5, lines 31-47; Col. 8, lines 25-68. | |
| a circuit in said housing for compressing said digital voice signals received from each of said circuit modules to provide compressed voice data, | D1: D2, and D3 Page 6.<br><br>D4: Col. 2, line 65 – Col. 3, line 2.<br><br>D6: D7, Page 2; D8, Page 6.<br><br>D18: FIGs. 1, 2; Col. 5, lines 31-47; Col. 8, lines 25-68. | |
| a first bus in said housing for providing communication between said circuit module and said compressing circuit, | D1: D2, and D3 Pages 2-7.<br><br>D4: FIG. 1; Col. 2, lines 2-6, and line 58 to Col. 3, line 8.<br><br>D6: D7, Pages 1-3, D8, Page 6.<br><br>D18: FIGs. 1, 2; Col. 5, lines 31-47; Col. 8, lines 25-68; Col. 9, lines 4-20. | |
| a multiplexer circuit in said housing for providing communication between said compressing circuit and | D1: D2, and D3 Pages 2-7.<br><br>D4: FIG. 1; Col. 2, lines 2-6, and line 58 to Col. 3, line 8. | |

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| said first bus, wherein said multiplexer circuit multiplexes voice signals exchanged between said compressing circuit and said circuit modules on said first bus, | D6: D7, Pages 1-3, D8, Page 6.<br><br>D18: FIGs. 1, 2; Col. 5, lines 31-47; Col. 8, lines 25-68; Col. 9, lines 4-20. | |
| a digital audio tape (DAT) drive for storing said compressed voice data, | D1: D2 and D3 Pages 2, 6-7, and 13-15.<br><br>D5: Entire Article.<br><br>D6: D10, Page 1; D13, Page 2; D12, Pages 6-16; D9, Entire Document. | D1, D5, and D16 teach a DAT drive for use in the system of D4. The DAT in D1 is used to store compressed data. The DAT in D16 is used to store digital voice data. The DAT may be used as backup storage, e.g., to the storage 203 of D18. It would have been obvious to one of ordinary skill in the art to include the DAT of D1, D5 or D16 in the system of D4 or D18 for backup storage and archiving digital data.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of modular digital recording loggers, would have seen a benefit to incorporate the DAT teaching of D1, D5 or D16 with the teachings of D4 or D18 to provide backup storage and archiving of digital data. |
| a hard disk drive in said housing for storing and reproducing said compressed voice data, | D1: D2, D3 pages 2, 11-16.<br><br>D4: Col. 2, lines 15-19; Col. 1, lines 55-58.<br><br>D6: D7, Pages 1-3; D8, Page 7; D9, Entire Document.<br><br>D18: FIG. 2; Col. 8, lines 10-20; Col. 14, lines 32-49. | |
| a first computer in said housing for operating said DAT drive and/or said hard disk drive to store and reproduce said digital voice signals, and | D1: D2 and D3 Pages 2, 6-7, and 11-15.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6; D10, Pages 1-2; D12, Pages 2-16; D9, Entire Document.<br><br>D18: FIG. 2; Col. 8, lines 10-20. | |
| a second bus in said housing for connecting said computer to said hard disk | D1: D2 and D3 Pages 2, 6-7, and 11-15. | One or more buses may be added to D4 to communicate with the DAT in addition to the hard disk drive, which |

**U.S. Pat. No. 5,819,005 Invalidity Chart**

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| drive and said DAT drive; | D6: D7, Pages 1-3; D8, Pages 2-6; D10, Pages 1-2; D9, Entire Document.<br><br>D18: FIG. 2; Col. 8, lines 10-20. | is a matter of design choice. It would have been obvious to one of ordinary skill in the art to use a single bus to reduce the number of communication channels required to supply digital data to the DAT and hard disk, as in D1.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of modular digital recording loggers, would have seen a benefit to incorporate a single bus with the teachings of D4 to reduce the number of communication channels required to supply digital data to the DAT and hard disk. |
| a second computer for processing compressed digital voice signals received from each of said recording loggers; and | D1: D2 and D3 Pages 2, 17.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6; D10, Pages 1-2.<br><br>D18: FIG. 1; Col. 4, lines 28-61. | It would have been obvious to one of ordinary skill in the art to connect multiple digital voice processing systems of D4 with one or more buses, as in D1, to permit computer access to stored digital voice signals, and to permit remote access of digital voice signals from a single location.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of modular digital recording loggers, would have seen a benefit to incorporate the connection of multiple digital voice processing systems teaching of D4 with the teachings of D1 to permit computer access to stored digital voice signals, and to permit remote access of digital voice signals from a single location. |
| a third bus connecting each of said recording loggers to said second computer. | D1: D2 and D3 Pages 2, 17.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6; D10, Pages 1-2.<br><br>D18: FIGs. 1, 2; Col. 7, line 58 to col. 8, line 23. | It would have been obvious to one of ordinary skill in the art to connect multiple digital voice processing systems of D4 with one or more buses, as in D1, to permit computer access to stored digital voice signals, and to permit remote access of digital voice signals from a single location.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by |

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | developments in the field of modular digital recording loggers, would have seen a benefit to incorporate the connection of multiple digital voice processing systems teaching of D4 with the teachings of D1 to permit computer access to stored digital voice signals, and to permit remote access of digital voice signals from a single location. |
| 13. The network system of claim 11, wherein said third bus is a local area network (LAN) bus. | D1:  D2, D3 Pages 2, 12-17.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6; D10, Pages 1-2; D12, Pages 2-16. | Claim 13 is invalid under 35 U.S.C. §102(b) as anticipated by D1 and/or D6, or in the alternative, under 35 U.S.C. §103 as obvious in view of D1 and/or D6.<br><br>RS 485 serial connections, which can carry compressed voice data, are LANs.  Alternatively, if RS485 is not a LAN, replacing RS485 with a LAN would have been obvious to one of ordinary skill in the art as a matter of design choice.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of modular digital recording loggers, would have seen a benefit to incorporate a LAN, as in D6, with the teachings of D1 to permit computer connectivity. |
| 15. The network system of claim 11, wherein said first bus is a time division multiplexed (TDM) bus and said multiplexer circuit is a time division multiplexer circuit. | D1: D2, and D3 Pages 2-7.<br><br>D4: FIG. 1, Col. 2, line 58 to Col. 3, line 8.<br><br>D6: D7, Pages 1-3; D8, Page 6.<br><br>D18: FIGs. 1, 2; Col. 5, lines 31-47; Col. 8, lines 25-68; Col. 9, lines 4-20. | Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative, under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15).<br><br>Claim 15 is invalid under 35 U.S.C. §103 as obvious in view of D4 in combination with D1 and/or D16.  See motivation to combine from Claim 11.<br><br>Claim 15 is invalid under 35 U.S.C. §103 as obvious in view of D18 in combination with D1, D5 and/or D16. See motivation to combine from Claim 11. |

## U.S. Pat. No. 5,819,005 Invalidity Chart

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | |
| 20. The network system of claim 11, wherein said second computer is a workstation. | D1: D2, and D3 Pages 2, 17.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6; D10, Pages 1-2; D12, Pages 2-16.<br><br>D18: FIGs. 1, 2; Col. 7, line 58 to col. 8, line 23. | Claim 20 is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br>Claim 20 is invalid under 35 U.S.C. §103 as obvious in view of D18 in combination with D1, D5 and/or D16. See motivation to combine from Claim 11.<br><br>Claim 20 is invalid under 35 U.S.C. §103 as obvious in view of D4 in combination with D1.<br><br>It would have been obvious to one of ordinary skill in the art utilize multiple digital voice processing systems of D4 to increase capacity for voice processing, and to permit access and replay to stored digital voice signals on remote devices, as in D1, to permit a distributed system of recorders.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of modular digital recording loggers, would have seen a benefit to incorporate the multiple digital voice processing systems teaching of D4 with the teachings of D1 to permit a distributed system of recorders to increase capacity for voice processing, and to permit access and replay to stored digital voice signals on remote devices.<br><br>Claim 20 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative, under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15). |
| 21. The network system of claim 11, further comprising a speaker in communication with said second computer for reproducing said analog voice signals. | D1: D2, and D3 Pages 2, 17.<br><br>D6: D7, Pages 1-3; D8, Pages 2-6; D10, Pages 1-2; D12, Pages 2-16.<br><br>D18: FIGs. 1, 2; Col. 7, line 58 to col. 8, line 23. | Claim 21 is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>Claim 21 is invalid under 35 U.S.C. §103 as obvious in view of D18 in combination with D1, D5 and/or D16. See motivation to combine from Claim 11.<br><br>Claim 21 is invalid under 35 U.S.C. |

**U.S. Pat. No. 5,819,005 Invalidity Chart**

| '005 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | §103 as obvious in view of D4 in combination with D1.<br><br>It would have been obvious to one of ordinary skill in the art to utilize multiple digital voice processing systems of D4 to increase capacity for voice processing, and to permit access and replay to stored digital voice signals on remote devices, as in D1, to permit a distributed system of recorders.<br><br>A digital recording logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of modular digital recording loggers, would have seen a benefit to incorporate the multiple digital voice processing systems teaching of D4 with the teachings of D1 to permit a distributed system of recorders to increase capacity for voice processing, and to permit access and replay to stored digital voice signals on remote devices.<br><br>Claim 21 is invalid under 35 U.S.C. §102(b) as anticipated by D6 (evidenced by D7-D15), and in the alternative, under 35 U.S.C. §102(a) as anticipated by D6 (evidenced by D7-D15). |

## U.S. Pat. No. 5,396,371 Invalidity Chart

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D1:  Racal Rapidax, sold in the U.S. as of at least December 21, 1992.<br><br>D2:  "Racal's 'Rapidax' Voice Logging Recorders Offers Instant Message Recall of Multichannel Calls, Transmissions." (NSDE008300-008302) (evidencing the hardware of the D1 sale).<br><br>D3: "Rapidax Access Voice Logging Recorder." (NSDE008312-008319) (evidencing the hardware of the D1 sale).<br><br>D4: "Rapidax Instant Call Recorder," (NSDE008305-008309)  (illustrating the hardware of the D1 sale).<br><br>D5: "Rapidax in Surveillance and Security Monitoring" (NSDE008310-008311) (evidencing the hardware of the D1 sale).<br><br>D6: "Operator's Manual." (NSDE008320-008324) (evidencing the hardware of the D1 sale).<br><br>D7: "System Manager's Manual." (NSDE008325-008340) (evidencing the hardware of the D1 sale).<br><br>D8: "Rapidax Tape Archive and System Network."  (NSDE008303-008304) (evidencing the hardware of the D1 sale).<br><br>D9:  Deposition of Andrew Jackson in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143.  (NSDE008273-008299) (evidencing hardware of the D9 sale)<br><br>D10:  Expert Report on the Invalidity of U.S. Patent No. 5,396,371 in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143.  (NSDE008447-008468) (evidencing the hardware of the D1 sale).<br><br>D11:  United States Patent No. 4,891,835, to Leung, filed on April 30, 1986, issued on June 2, 1990. (WSNSDE0003055-80) | |

## U.S. Pat. No. 5,396,371 Invalidity Chart

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D12:  Sale of Eyretel e1000, sold in the U.S. as of at least October, 1992. | |
| | D13:  Deposition of Chris Blair in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143.  (evidencing the hardware of the D12 sale) | |
| | D14:  European Patent Publication 0372894, to Koizumi, published on June 13, 1990, filed on December 5, 1989.(WSNSDE0000277-93) | |
| | D15:  U.S. Patent No. 4,905,141, to Brenza, issued February 27, 1990, filed on October 25, 1988.(WSNSDE0003096-126) | |
| | D16:  U.S. Patent No. 4,864,543, to Ward, issued September 5, 1989, filed on April 30, 1987. (WSNSDE0002971-84) | |
| | D17:  "The Disk Drive As An Audio Recorder," Hard Disk Recording Conference, published on Mary 16-17, 1990.  (LOOSABLLP 002304-15) | |
| | D18:  "An Experimental Speech Storage and Editing Facility," The Bell System Technical Journal, published in October 1980.  (LOOSABLLP 002317-002330) | |
| | D19:  Mediation Brief, Analysis of Prior Art Which Anticipates or Renders Obvious the Claims of U.S. Patent No. 5,396,371, in Dictaphone Corporation vs. Mercom Systems, Inc., Civil Action 3:00CV1143 (evidencing hardware of D1).  (LOOSABLLP 002292-002302) | |
| | D20:  United States Patent No. 4,375,083,  to Maxemchuk, issued on February 22, 1983.  (LOOSABLLP 002332-002355) | |
| | D21:  Japanese Publication No. S62-20460, to Hirokawa, published on January 29, 1987.  (LOOSABLLP 002357-002364) | |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D22: "Memory Space Allocation of Messages in Voice–Mail," IBM Technical Disclosure Bulletin, published in July 1987. (LOOSABLLP 002366-002367) | |
| | D23: "A Magnetic Storage Disk Based Digital Audio Recording, Editing and Processing System," presented to the public at the 83rd AES Corporation on October 16-19, 1987. (002381-002398) | |
| | D24: "A Flexible Digital Sound-Editing Program for Minicomputer Systems," presented to the public at the 68th Convention of the Audio Engineering Society in Hamburg, German, Journal of Audio Engineering Society, on March 17-20, 1981. (NSDE008479-86) | |
| | D25: NICE's Markman Brief in Dictaphone Corporation vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE014561-603) (evidencing hardware of D24) | |
| | D26: Magnasync Digital Voice Logger, sold in the U.S. as of at least October, 1992. (JONESDAY0021219-JONESDAY0021224) | |
| | D27: United States Patent No. 4,121,058, issued to Jusko et al., filed on December 13, 1976. (WSNSDE064624-52) | |
| | D28: United States Patent No. 4,841,574, issued June 20, 1989 to Pham et al., filed Oct. 11, 1985. (WSNSDE064612-23) | |
| | D29: United States Patent No. 4,549,047, issued October 22, 1985 to Brian et al., filed June 22, 1982. (WSNSDE064677-733) | |
| | D30: United States Patent No. 4,523,055, issued June 11, 1985 to Hohl et al., filed November 25, 1983. (WSNSDE064653-76) | |
| | D31: United States Patent No. | |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | 5,103,467, issued April 17, 1992 to Bedlek et al., filed October 31, 1989. (WSNSDE064734-39)<br><br>D32:  United States Patent No. 4,985,914, issued January 15, 1991 to Fukunga, filed January 12, 1990. (WSNSDE064601-11) | |
| 1.  In a method of storing and retrieving audio from a digital audio logger, the steps comprising: | D1:  D2, Pages 1-2; D9, Page 8, line 17 – Page 9, line 4;<br><br>D12:  D13, Page 11, lines 7-8.<br><br>D11:  Col. 2, lines 10-14.<br><br>D17:  Page 16, Para. 5.<br><br>D26:  JONESDAY0021219-JONESDAY0021224.<br><br>D28:  Col. 2, lines 35-49. | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D11 in combination with D1 and/or D12 and/or D14 and/or D17 and/or D21.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D17 in combination with D1 and/or D12 and/or D14 and/or D18 and/or D21 and/or D23 and/or D26 and/or D27 and/or D30 |
| a) monitoring an audio source, | D1:  D8, Page 1; D4, Page 4.<br><br>D11:  Col. 3, lines 42-50.<br><br>D12:  D13, Page 11, lines 7-8.<br><br>D14:  Col. 4, lines 24-30.<br><br>D17:  Page 17, Para. 3, 4.<br><br>D26:  JONESDAY00219-JONESDAY0021224.<br><br>D27: Col. 3, lines 25-30; 5-61<br><br>D30:  Col. 2, lines 1-23, 53-64 | |
| b) storing audio data from the audio source in a buffer, | D1:  D9, Page 18, lines 10-14; D10, Page 9; D2, Page 2.<br><br>D11:  Figure 6, Col. 10, line 66 – Col. 11, line 54, Col. 9, lines 46-47.<br><br>D12:  D13, Page 11, lines 7-8.<br><br>D14:  Col. 5, lines 16-27.<br><br>D17:  Page 16, Para. 3-4; Page 18, Paragraphs 3, 4; Page 18, Para. 3; Page 20, Figure 1.<br><br>D21:  LOOSABLLP 002357, 002358. | |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D23: Page 9, section 5.3.<br><br>D26: JONESDAY0021219-JONESDAY0021224<br><br>D27: Col. 1, lines 39-64; Col. 1, line 51 – Col. 2, line 20; Col. 2, lines 42-52; Col. 4, lns. 1-14; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1-59; Col. 12, lines 10-19, 42-52; Col. 16, line 50 – Col. 18, line 12<br><br>D30: Col. 2, lines 25-53. | |
| c) writing the audio data from the buffer onto a digital audio tape and a random access storage device, and | D1: D8, Page 1; D3, Page 3; D4, Page 4; D10; D9, Page 14, lines 20-25; Page 46, lines 2-20;<br><br>D11: Col. 10, line 66 – Col. 11, line 54, Col. 9, lines 46-47, Col. 2, lines 29-36, Col. 2, lines 38-41.<br><br>D12: D13, Page 11, lines 18-21.<br><br>D14: Col. 3, lines 17-27, Col. 5, lines 35-41.<br><br>D15: Col. 3, lines 25-29, Col. 3, lines 35-38, Col. 3, lines 51-53.<br><br>D17: Page 16, Para. 6; Page 18, Para. 1-4.<br><br>D18: Page 1385, Para. 2, 4; Page, 1388, Para. 2, 4; D19: Page 4, lines 7-8).<br><br>D21: LOOSABLLP 002357, 002358.<br><br>D23: Page 9, section 5.3.<br><br>D26: JONESDAY0021219-JONESDAY0021224.<br><br>D27: Col. 1, lines 39-64; Col. 1, line 51 – Col. 2, line 20; Col. 2, lines 42-52; Col. 4, lns. 1-14; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1-59; Col. 12, lines 10-19, 42-52; Col. 16, line 50 – Col. 18, line 12<br><br>D30: Col. 2, line 1 – Col. 3, line 36; Col. 5, lines 15-55; Col. 5, line 61 – Col. 6, line 2; Col. 6, lines 18-55; Col. 7, lines 29-52; Col. 11, lines 1-32; Col. | It would have been obvious to one of ordinary skill in the art to incorporate the digital audio tape of D1 and/or and/or D12 and/or D14  and/or D18 with the system of D11 to allow archiving of data and/or to store the same type of data in the DRAM and the recorder unit and/or to obtain a duplicate recording that requires less hardware and/or to increase the audio channels that may be recorded or the transfer rate of existing channels.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate the buffer of D1 and/or D11 and/or D12 and/or D17 with the modem of D14 to reduce loss of data resulting from data sent to the modem at a rate that exceeds the modem's capacity to process such data.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 and the random access memory of D21 and/or D26 with the digital recording and editing system of D17 to increase the audio channels that may be recorded or the transfer rate of existing channels.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 into the systems of D27 and D30 to increase the audio channels that may be recorded or the transfer rate of existing channels. |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | 12, line 26 – Col. 14, line 34; Col. 23, line 65 – Col. 24, line 43; Figures 1b and 1c | A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 with the system of D11 to allow archiving of data and/or to store the same type of data in the DRAM and the recorder unit and/or to obtain a duplicate recording that requires less hardware and/or to increase the audio channels that may be recorded or the transfer rate of existing channels. |
| | | A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the buffer of D1 and/or D11 and/or D12 and/or D17 with the modem of D14 to reduce loss of data resulting from data sent to the modem at a rate that exceeds the modem's capacity to process such data. |
| | | A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 and the random access memory of D21 and/or D26 with the digital recording and editing system of D17 to increase the audio channels that may be recorded or the transfer rate of existing channels. |
| | | A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 and the |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | | random access memory of D21 and/or D26 with the systems of D27 and D30 to increase the audio channels that may be recorded or the transfer rate of existing channels or the transfer rate of existing channels. |
| d) retrieving audio from the random access storage device while audio data is written into the digital audio tape and the random access storage device. | D1:  D2, Page 1; D5, Page 1; D10, Page 10; D9:  Page 14, lines 20-25; Page 46, lines 2-20.<br><br>D11:  Col. 2, lines 29-48.<br><br>D14:  Col. 3, lines 17-27, Col. 4, lines 33-35, Col. 5, lines 35-41, Col. 6, lines 31-35.<br><br>D12:  D13, Page 11, lines 18-21.<br><br>D15:  Col. 3, lines 25-29, Col. 3, lines 35-38, Col. 3, lines 51-53.<br><br>D17:  Page 1, Para. 6; Page 15, Para. 1; Page 17, Para. 4; Page 18, Para. 1-4.<br><br>D21:  LOOSABLLP 002357, 002358.<br><br>D23:  Page 9, section 5.3.<br><br>D26:  JONESDAY0021219-JONESDAY0021224.<br><br>D27:  D27:  Col. 1, line 51 – Col. 2, line 20; Col. 2, lines 42-52; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1-59<br><br>D30:  Col. 2, line 1 – Col. 3, line 36; Col. 5, lines 15-55; Col. 5, line 61 – Col. 6, line 2; Col. 6, lines 18-55; Col. 7, lines 29-52; Col. 11, lines 1-32; Col. 12, line 26 – Col. 14, line 34; Col. 23, line 65 – Col. 24, line 43; Figures 1b and 1c | It would have been obvious to one of ordinary skill in the art to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D23 and/or the random access memory of D21 with the system of D17 and/or D26 and/or D27 and/or D30 to retrieve data more efficiently and precisely and/or to write audio in the digital audio tape and the random access storage device in digital format.<br><br>A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D23 and/or the random access memory of D21 with the system of D17 and/or D26 and/or D27 and/or D30 to retrieve data more efficiently and precisely and/or to write audio in the digital audio tape and the random access storage device in digital format. |
| 5.  In a system for processing audio having | D1: D9, Page 8, line 17 – Page 9, line 4, Page 10, line 13 – Page 11, line 10; Page 15, lines 12-23, Page 22, lines 10-13.<br>.<br>D17:  Page 13, Para. 1. | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D11 in combination with D1 and/or D12 and/or D14 and/or D15 and/or D16 and/or D20 and/or D23 and/or 24 and/or D26.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D14 in combination with D1 and/or D11 |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | | and/or D15 and/or D16 and/or D17 D18 and/or D20 and/or D21 and/or D22 and or D23 and/or D24.<br><br>This claim is invalid under 35 U.S.C. § 103(a) as obvious in view of D17 in combination with D1 and/or D11 and/or D12, and/or D15 and/or D16 and/or D18 and/or D20 and/or D21 and/or D22 and or D23 and/or D24 and/or D26.<br><br>This claim is invalid under 35 U.S.C. § 103 in view of D1 and/or D12 and/or D14 and/or D18 and/or D23 and the random access memory of D21 and/or D26 in combination with D27 and/or D28 and/or D29 and/or D30 and/or D31 and/or D32 |
| an interface for receiving audio from an audio source, | D1: D9, Page 8, line 17 – Page 9, line 4, Page 10, line 13 – Page 11, line 10, Page 15, lines 12-23, Page 22, lines 10-13.<br><br>D17: Page. 16, Para. 3 | |
| a digital signal processor in communication with the interface for compressing the audio signals, | D1: D9, Page 8, line 17 – Page 9, line 4, Page 10, line 13 – Page 11, line 10, D10, Page 16.<br><br>D17: Page 16, Para. 3 | |
| a controller in communication with the digital signal processor for receiving audio therefrom and arranging data in a prescribed order, | D1: D9, Page 8, line 17 – Page 9, line 4, Page 10, line 13 – Page 11, line 10, Page, 22, lines 10-13; D10, Page 16.<br><br>D17: Page. 16, Para. 3, 5. | |
| a supervisor in communication with said controller accessing data from said system, and | D1: D9, Page 15, lines 12-23, Page 8, line 17 – Page 9, line 4, Page 10, line 13 – Page 11, line 10, Page, 22, lines 10-13; D10, Page 16.<br><br>D17: Page 16, Para. 3, 5. | |
| a buffer in communication with the controller for receiving arranged audio from the controller, the improvement comprising: | D1: D9, Page 10, line 13 – Page 11, line 10, Page 18, lines 10-14, Page 15, lines 13-23, Page 17, lines 7-20; D2, page 2; D10, Page 9.<br><br>D17: Page. 16, Para. 3<br><br>D30: Col. 2, line 1 – Col. 3, line 36; Col. 5, lines 15-55; Col. 6, lines 18-55; Col. 7, lines 29-52; Col. 11, lines 1-32; Col. 12, line 26 – Col. 14, line 34. | |
| a digital audio tape drive unit in | D1: D9, Page 10, line 13 – Page 11, | It would have been obvious to one of |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| communication with the buffer for receiving arranged audio data from the buffer, | line 10, Page 18, lines 10-14, Page 15, lines 13-23, Page 17, lines 7-20; D2, Page 2; D10, Page 17.<br><br>D11:  Col. 10, line 66 – Col. 11, line 54, Col. 9, lines 46-47, Col. 2, lines 29-36, Col. 2, lines 38-41, Col. 3, lines 31-47, Col. 7, lines 26-33.<br><br>D12:  D13, Page 11, lines 18-21<br><br>D14:  Col. 17, lines 30-54; Col. 2, lines 29-48.<br><br>D23:  Page 9, section 5.3.<br><br>D26:  JONESDAY0021219-JONESDAY0021224<br><br>D27:  Col. 1, lines 39-64; Col. 1, line 51 – Col. 1, line 20; Col. 2, lines 42-52; Col. 4, lns. 1-14; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1-59; Col. 12, lines 10-19, 42-52; Col. 16, line 50 – Col. 18, line 12<br><br>D28: Col. 4, lines 21-32.<br><br>D30:  Col. 5, line 61 – Col. 6, line 2; Col. 23, line 65 – Col. 24, line 43; Figures 1b and 1c<br><br>D31:  Col. 5, lines 5-7, 10-15<br><br>D32:  Col. 1, lines 57-64 | ordinary skill in the art to incorporate the digital audio tape of D1 and/or and/or D12 and/or D14  and/or D18 with the system of D11 to allow archiving of data and/or to store the same type of data in the DRAM and the recorder unit and/or to obtain a duplicate recording that requires less hardware and/or to increase the audio channels that may be recorded or the transfer rate of existing channels.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate the buffer of D1 and/or D11 and/or D12 and/or D17 with the modem of D14 to reduce loss of data resulting from data sent to the modem at a rate that exceeds the modem's capacity to process such data.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 and the random access memory of D21 and/or D26 with the digital recording and editing system of D17 to increase the audio channels that may be recorded or the transfer rate of existing channels.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 into the systems of D27 and/or D28 and/or D29 and/or D30 and/or D31 and/or D32 to increase the audio channels that may be recorded or the transfer rate of existing channels.<br><br>A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the digital audio tape of D1 and/or and/or D12 and/or D14  and/or D18 with the system of D11 to allow archiving of data and/or to store the same type of data in the DRAM and the recorder unit and/or to obtain a duplicate recording that requires less hardware |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | | and/or to increase the audio channels that may be recorded or the transfer rate of existing channels.<br><br>A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the buffer of D1 and/or D11 and/or D12 and/or D17 with the modem of D14 to reduce loss of data resulting from data sent to the modem at a rate that exceeds the modem's capacity to process such data.<br><br>A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 and the random access memory of D21 and/or D26 with the digital recording and editing system of D17 to increase the audio channels that may be recorded or the transfer rate of existing channels.<br><br>A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the digital audio tape of D1 and/or D12 and/or D14 and/or D18 and/or D23 into the systems of D27 and/or D28 and/or D29 and/or D30 and/or D31 and/or D32 to increase the audio channels that may be recorded or the transfer rate of existing channels. |
| a random access storage device, and | D1:  D4, NSDE008308, D9, Page 14, lines 9-25, NSDE008278, D10, NSDE008463.<br><br>D11:  Col. 2, lines 32-36, Col. 17, lines 18-54.<br><br>D14:  Col. 3, lines 17-27, Col. 2, lines 47-54. | |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D15:  Col. 3, lines 25-29, Col. 3, lines 35-38, Col. 3, lines 51-53.<br><br>D17:  Page 15, Para. 3; Page 16, 1-4; Figure 4.<br><br>D26:  JONESDAY0021219-JONESDAY0021224.<br><br>D27:  Col. 1, line 51 – Col. 2, line 20; Col. 2, lines 42-52; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1 – Col. 11, line 22<br><br>D28: Col. 4, lines 21-32.<br><br>D29:  Col. 4, line 8 – Col. 7, line 18; Col. 6, lines 37-55; Col. 18, lines 55 – Col. 22, line 27; Col. 71, line 57 – Col. 80, line 35<br><br>D30:  Col. 2, line 1 – Col. 3, line 36; Col. 5, lines 15-55; Col. 6, lines 18-55; Col. 7, lines 29-52; Col. 11, lines 1-32; Col. 12, line 26 – Col. 14, line 34.<br><br>D31:  Col. 5, lines 5-7, 10-15<br><br>D32:  Col. 1, lines 46-53; Col. 3, line 43 – Col. 7, line 30 | |
| a pair of pointers providing communication between said buffer and random storage device, the first of said pointers operative for transmitting audio data to said random access storage device from said buffer and the second of said pointers being operative to send audio data from said random access storage device to said controller. | D1:  D9, Page 15, lines 12-23, Page 16, lines 8-19, Page 19, line 20 – Page 22, line 13; D3, Pages 2-3; D9: Page 15, lines 1-23; Page 24, lines 5-14; Page 31, lines 1-12; Page 47, 5-20.<br><br>D11:  Col. 17, lines 30-54; Col. 2, lines 29-48.<br><br>D14:  Col. 3, lines 17-27, Col. 5, lines 35-41, Col. 4, lines 33-35, Col. 6, lines 31-35.<br><br>D15:  Col. 3, lines 25-29, Col. 3, lines 35-38, Col. 3, lines 51-53.<br><br>D17:  Page 1, Para. 6; Page 15, Para. 1; Page 17, Para. 4; Page 18, Para. 3, 4.<br><br>D18:  Page 1385, Para. 4, Page 1387 Para. 2; Page 1388, Para. 2, 4.<br><br>D20:  Col. 13, lines 36-41; col. 14, lines 24-34; col. 15, lines 30-47. | It would have been obvious to one of ordinary skill in the art to incorporate the pair of pointers of D1 and/or D12 and/or D14 and/or D15 and/or D16 and/or D20 and/or D23 and/or 24 with the system of D11 and/or D17 and/or D18 and/or D21 and/or D22 to store and retrieve data efficiently and precisely while operating with a single buffer and reduce loss of data resulting from an excessive transfer rate.<br><br>A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the pair of pointers of D1 and/or D12 and/or D14 and/or D15 and/or D16 and/or D20 and/or D23 and/or 24 and/or D26 with the system of D11 and/or D17 and/or D18 and/or D21 and/or |

## U.S. Pat. No. 5,396,371 Invalidity Chart

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D22: LOOSABLLP 002366, line 14 – LOOSABLLP 002367, line 69.<br><br>D26: JONESDAY0021219-JONESDAY0021224.<br><br>D27: Col. 1, line 51 – Col. 2, line 20; Col. 2, lines 42-52; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1 – Col. 11, line 22<br><br>D28: Col. 4, lines 21-32.<br><br>D29: Col. 4, line 8 – Col. 7, line 18; Col. 6, lines 37-55; Col. 18, lines 55 – Col. 22, line 27; Col. 71, line 57 – Col. 80, line 35<br><br>D30: Col. 2, line 1 – Col. 3, line 36; Col. 5, lines 15-55; Col. 6, lines 18-55; Col. 7, lines 29-52; Col. 11, lines 1-32; Col. 12, line 26 – Col. 14, line 34<br><br>D31: Col. 2, lines 49-53; Col. 5, line 1 – Col. 6, line 19<br><br>D32: Col. 2, line 54 – Col. 2, line 57; Col. 3, line 43 – Col. 7, line 30 | D22 to store and retrieve data efficiently and precisely while operating with a single buffer and reduce loss of data resulting from an excessive transfer rate. |
| 8. An audio data storage device, comprising: | D1: D3, Page 3.<br><br>D15: Col. 3, lines 25-29, Col. 3, lines 35-38, Col. 3, lines 51-53.<br><br>D17: Page 13, Para. 1.<br><br>D19: Page 1385, Para. 2.<br><br>D26: JONESDAY0021219-JONESDAY0021224.<br><br>D28: Col. 4, lines 8-21.<br><br>D29: Col. 4, line 8 – Col. 7, line 18; Col. 6, lines 37-55; Col. 18, lines 55 – Col. 22, line 27; Col. 71, line 57 – Col. 80, line 35 | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D11 in combination with D1 and/or D12 and/or D14 and/or D15 and/or D16 and/or D22 and/or D26.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D17 in combination with D1 and/or D12 and/or D14 and/or D15 and/or D16 and/or D22 and/or D26. |
| a random access storage device having a primary partition for storing audio data and a secondary partition for storing means for locating data on said primary partition and | D1: D5, Page 1; D2, Page 1; D3, Page 3; D8, Page 1; D9: Page 15, lines 1-23; Page 19, line 17 – Page 20, line 14; Page 24, lines 5-14; Page 31, lines 1-12; Page 46, lines 2-20; Page 47, 5-20, Page 19, line 17 – Page 20, line 14; D10, Pages 12-13. | It would have been obvious to incorporate the partitions of D1 and/or D15 and/or D18 and/or D20 and/or D24 and/or D26 with the system of D11 and/or D12 and/or D14 and/or D17 and/or to store and retrieve data more efficiently and precisely while operating with a |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D11: Col. 17, lines 30-54; Col. 2, lines 29-48.<br><br>D14: Col. 3, lines 17-27, Col. 2, lines 47-54.<br><br>D15: Col. 3, lines 25-29, Col. 3, lines 35-38, Col. 3, lines 51-53.<br><br>D17: Page 17, Para. 4; Page 18, Para. 1-3, 5.<br><br>D18: Page 1390, Para. 2-4.<br><br>D20: Col. 10, lines 36-40.<br><br>D24: Page 128, section 3.1.<br><br>D25: Page, 24-25.<br><br>D26: JONESDAY0021219-JONESDAY0021224.<br><br>D27: Col. 1, line 51 – Col. 2, line 20; Col. 2, lines 42-52; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1 – Col. 11, line 22<br><br>D28: Col. 4, lines 32-37, 56-69, Col. 5, lines 1-53, Col. 7, line 12, Col 8, line 30.<br><br>D29: Col. 4, line 8 – Col. 7, line 18; Col. 6, lines 37-55; Col. 18, lines 55 – Col. 22, line 27; Col. 71, line 57 – Col. 80, line 35<br><br>D30: Col. 2, line 1 – Col. 3, line 36; Col. 5, lines 15-55; Col. 6, lines 18-55; Col. 7, lines 29-52; Col. 11, lines 1-32; Col. 12, line 26 – Col. 14, line 34<br><br>D31: Col. 5, line 1 – Col. 6, line 19<br><br>D32: Col. 3, line 43 – Col. 7, line 30 | single buffer and/or reduce loss of data resulting from an excessive transfer rate.<br><br>A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the partitions of D1 and/or D15 and/or D18 and/or D20 and/or D24 and/or D26 with the system of D11 and/or D12 and/or D14 and/or D17 to store and retrieve data more efficiently and precisely while operating with a single buffer and/or and reduce loss of data resulting from an excessive transfer rate. |
| a pair of pointers in communication with said random access memory, a first of said pointers being operated to transmit data to said random access storage device and the second of said pointers being operative to retrieve audio data from said random access storage device. | D1: D9, Page 15, lines 12-23, Page 19, line 17 – Page 20, line 14, Page 18, line 25 – Page 19, line 15; D10, Pages 12-13, Pages 15-16; D9: Page 15, lines 1-23; Page 24, lines 5-14; Page 31, lines 1-12; Page 47, 5-20.<br><br>D11: Col. 17, lines 30-54; Col. 2, lines 29-48. | It would have been obvious to one of ordinary skill in the art to incorporate the pair of pointers of D16 and/or D18 and/or D20 and/or D22 and/or D26 with the system of D11 and/or D12 and/or D14 and/or D17 to retrieve data efficiently and precisely while operating with a single buffer and to store and retrieve data efficiently. |

**U.S. Pat. No. 5,396,371 Invalidity Chart**

| '371 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D14:  Col. 3, lines 17-27, Col. 5, lines 35-41, Col. 4, lines 33-35, Col. 6, lines 31-35.<br><br>D15:  Col. 3, lines 25-29, Col. 3, lines 35-38, Col. 3, lines 51-53.<br><br>D16:  Col. 2, line 62 – Col. 3, line 21, Col. 4, lines 11-33.<br><br>D17:  Page 1, Para. 6; Page 15, Para. 1; Page 17, Para. 4; Page 18, Para. 3, 4.<br><br>D18:  Page 1385, Para. 4, Page 1387 Para. 2; Page 1388, Para. 2, 4.<br><br>D20:  Col. 13, lines 36-41; col. 14, lines 24-34; col. 15, lines 30-47.<br><br>D22:  LOOSABLLP 002366, line 14 – LOOSABLLP 002367, line 69.<br><br>D24:  Page 128, section 3; Page 129, section 6.1; Page 130, section 7.1.<br><br>D25:  Page 23.<br><br>D26:  JONESDAY0021219-JONESDAY0021224.<br><br>D27:  Col. 1, line 51 – Col. 2, line 20; Col. 2, lines 42-52; Col. 4, line 17 - Col. 5, line 66; Col. 8, lns. 1 – Col. 11, line 22<br><br>D28: Col. 4, lines 32-37, 56-69, Col. 5, lines 1-53, Col. 7, line 12, Col 8, line 30.<br><br>D29:  Col. 4, line 8 – Col. 7, line 18; Col. 6, lines 37-55; Col. 18, lines 55 – Col. 22, line 27; Col. 71, line 57 – Col. 80, line 35<br><br>D30:  Col. 2, line 1 – Col. 3, line 36; Col. 5, lines 15-55; Col. 6, lines 18-55; Col. 7, lines 29-52; Col. 11, lines 1-32; Col. 12, line 26 – Col. 14, line 34<br><br>D31:  Col. 5, line 1 – Col. 6, line 19<br><br>D32:  Col. 3, line 43 – Col. 7, line 30 | A digital audio logger designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of digital audio loggers would have seen a benefit to incorporate the pair of pointers of D16 and/or D18 and/or D20 and/or D22 and/or D26 with the system of D11 and/or D12 and/or D14 and/or D17 to retrieve data efficiently and precisely while operating with a single buffer and to store and retrieve data efficiently. |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D1:  Blue Cross Blue Shield Eclipse, sold in the U.S. before June 2, 1998. | |
| | D2:  "Blue Cross Blue Shield User Guide" (illustrating hardware of D1 sale) (WSNSDE0012983-92) | |
| | D3:  "Application Development Guide - Blue Cross / Blue Shield Eclipse Project Eclipse Modification and Design" (illustrating hardware of D1 sale) (WSNSDE0012967-82) | |
| | D4:  "Tracking Agent Id through Inter-Site Call Transfers" (illustrating hardware of D1 sale)(WSNSDE0012993-4) | |
| | D5:  "Blue Cross Blue Shield System Diagrams" (illustrating hardware of D1 sale)(WSNSDE0013084-7; WSNSDE0013177-83) | |
| | D6:  e1000 Circuit Diagrams (illustrating the hardware of the D1 sale). (WSNSDE0013861-94; WSNSDE0050671) | |
| | D7:  "E1000/E500 Recorder: Engineer Familiarisation" (illustrating the hardware of the D1 sale). (WSNSDE0015161-98) | |
| | D8:  U.S. Publication No. 2001/0043697 to Cox, published November 22, 2001, filed on May 11, 1998. (WSNSDE0000874-94) | |
| | D9:  PCT Publication No. WO 98/13995 to Smythe, published April 2, 1998, filed September 25, 1997. (WSNSDE0008433-77) | |
| | D10:  Racal Rapidax, sold in the U.S. as of at least December 21, 1992. | |
| | D11:  "Racal's 'Rapidax' Voice Logging Recorders Offers Instant Message Recall of Multichannel Calls, Transmissions," dated June 4, 1991. (NSDE008300-008302) (evidencing the hardware of the D10 sale). | |
| | D12:  "Rapidax Access Voice Logging Recorder." (NSDE008312-008319) (evidencing the hardware of the D10 | |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | sale). | |
| | D13: "Rapidax Instant Call Recorder," (NSDE008305-008309) (evidencing the hardware of the D10 sale). | |
| | D14: "Rapidax in Surveillance and Security Monitoring" (NSDE008310-008311) (evidencing the hardware of the D10 sale). | |
| | D15: "Operator's Manual." (NSDE008320-008324) (evidencing the hardware of the D10 sale). | |
| | D16: "System Manager's Manual." (NSDE008325-008340) (evidencing the hardware of the D10 sale). | |
| | D17: "Rapidax Tape Archive and System Network." (NSDE008303-008304) (evidencing the hardware of the D10 sale). | |
| | D18: Deposition of Andrew Jackson in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE008273-008299) (evidencing the hardware of the D10 sale). | |
| | D19: Expert Report on the Invalidity of U.S. Patent No. 5,396,371 in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE008447-008468) (evidencing the hardware of the D10 sale). | |
| | D20: R[a]cal Recorders, Inc.; "R[a]cal Adds Remote 'Replay Over LAN' to Wordnet Voice – Logging Recorder," dated June 17, 1996. (MERC013540) | |
| | D21: "Proposal for a Quality Monitoring / Agent Evaluation System", dated August 20, 1998. (WSNDE 013060-066) | |
| | D22: Canon ITS Technology Services Incorporated Quality Monitoring Functionality Design, dated November 18, 1998. (WSNDE 013035-059) (evidencing the hardware and function of the D21 offer for sale.) | |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D23: "Racal 'Worldnet' – Second Generation of World's Best Selling Voice-Logging Recorder," June 28, 1995. (NSDE 004715-16).<br><br>D24: United States Patent No. 6,222,838 to Sparks, filed November 26, 1997. (WSNSDE0006107-15)<br><br>D25: Parnes et al, "mMOD: the multicast Media-on-Demand system," dated March 6, 1997. (WSISTS065463-8)<br><br>D26: U.S. Patent No. 6,233,318 to Picard et al., filed Nov. 5, 1996. (WSNSDE063951-74)<br><br>D27: "Access Web TM. Internet Messaging Application," BostonTechnology.com, dated Dec. 27, 1996. (WSNSDE063975-77)<br><br>D28: "Boston Technology Completes The Connection! Adds Internet Support To Its Public Network Services," PR Newswire, dated Nov. 30, 1995. (WSNSDE063946-50) | |
| 1. A multi-stage data logging system comprising: | D1: D3, pg. 5; D5.<br><br>D10: D11, Pages 1-3; D13, entire document; D14: entire document; D15: entire document.<br><br>D20: entire document.<br><br>D23: entire document.<br><br>D24: FIG. 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13.<br><br>D25: pgs. 1-6.<br><br>D26: entire document.<br><br>D27: entire document.<br><br>D28: entire document. | Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>Claim 1 is invalid under 35 U.S.C. §102(e) as anticipated by D8.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D9.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D10.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D11.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D20.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D23.<br><br>Claim 1 is invalid under 35 U.S.C. |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | §102(b) as anticipated by D24.<br><br>Claim 1 is invalid under 35 U.S.C. §102(e) as anticipated by D26.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D27.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D28.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24.<br><br>It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage.<br><br>A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| a) a telecommunications ("telecom") stage receiving input from a plurality of communication channels; | D1: D3, pgs. 5-6; D5.<br><br>D8: paras. 46 to 48.<br><br>D9: FIG. 2, pg. 6, line 33 – pg. 7, line 2.<br><br>D10: D11, Page 2; D12, Page 6; D14: entire document; D15: entire document.<br><br>D11: entire document.<br><br>D20: entire document. | |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D21:  entire document; D22: entire document. | |
| | D23:  entire document. | |
| | D24:  FIG. 3; Col. 2, lines 26-56; Col. 3, lines 5-34; 45-56; Col. 3, line 65 – Col. 4, line 3; Col. 4, lines 19-26, 43-49; Col. 4, line 63 – Col. 5, line 9; Col. 5, lines 27-35, Col. 5, lines 56 – Col. 6, line 2; Col. 6, lines 6-17, 47-54, 56-64. | |
| | D25:  pgs. 1-6. | |
| | D26:  FIG 4.; FIG. 6; Col. 6, lines 11-62, Col. 8, line 32-Col. 9, line 10; Claims 1-2. | |
| | D27: entire document. | |
| | D28: entire document. | |
| b) a recorder stage having one or more recorders, at least one recorder logging data associated with information transmitted on at least one of said plurality of communication channels; | D1: D3, pgs. 5-7, and 16; D4, pgs. 3-5; D5; D6; D7. | |
| | D8: paras. 34, 38, 39, 43, 58, 71-75, and 78. | |
| | D9:  FIG. 2, pg. 6, line 33 – pg. 7, line 2. | |
| | D10: D11, Page 2; D14, Page 6; D14: entire document; D15: entire document. | |
| | D11: entire document. | |
| | D20: entire document. | |
| | D21:  entire document; D22: entire document. | |
| | D23:  entire document. | |
| | D24:  FIG. 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13. | |
| | D25:  pgs. 1-6. | |
| | D26:  FIGs. 1-6; Col. 6, lines 11-62, Col. 8, line 32-Col. 9, line 10; Col. 11, lines 28-36; Claims 1-2; Col. 1, line 10-Col. 2, line 61. | |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D27: entire document.<br><br>D28: entire document. | |
| c) a distribution stage providing access to data logged in the recorder stage; | D1: D3, pgs. 5-8; D4, pgs. 4-5; D5.<br><br>D8: para. 40-42.<br><br>D9: FIG. 2, pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Page 6, 7; D14, Page 1; D17, Page 2; D16, Pages 6-16; D13, entire document; D15: entire document.<br><br>D11: entire document.<br><br>D20: entire document.<br><br>D21:  entire document; D22: entire document.<br><br>D23:  entire document.<br><br>D24:  FIG. 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26 – Col. 6, 6-17, 47-53; Col. 7, lines 9-23.<br><br>D25:  pgs. 1-6.<br><br>D26:  entire document.<br><br>D27: entire document.<br><br>D28: entire document. | |
| d) a first interface linking the telecom and the recorder stages and a second interface linking the recorder and the distribution stages; | D1: D3, pgs. 5-6; D4, pgs. 4-5; D5.<br><br>D8: FIG. 1; para. 46-48.<br><br>D9:  FIG. 2, pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Page 6, 7; D17, Page 2; D16, Pages 6-16; D13, entire document; D14: entire document; D15: entire document.<br><br>D11: entire document.<br><br>D20: entire document. | |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D21: entire document; D22: entire document.<br><br>D23: entire document.<br><br>D24: FIG. 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13.<br><br>D25: pgs. 1-6.<br><br>D26: FIGs. 1-6, Claims 1-2.<br><br>D27: entire document.<br><br>D28: entire document. | |
| wherein at least two stages of the system are physically separable and in operation can be located wide distances apart. | D1: D3, pgs. 5-6; D4, pgs. 4-5; D5.<br><br>D8: FIG. 1; para. 30-33.<br><br>D9: FIG. 2, pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document, 4; D17, Page 2; D16, Pages 6-16; D13, entire document; D15: entire document.<br><br>D11: entire document.<br><br>D20: entire document.<br><br>D21: entire document; D22: entire document.<br><br>D23: entire document.<br><br>D24: FIG. 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13.<br><br>D25: pgs. 1-6.<br><br>D26: FIGs. 1-6; Claims 1-2.<br><br>D27: entire document.<br><br>D28: entire document. | |
| 6. The data logging system of claim 1 wherein the | D1: D3, pgs. 5, 10; D4, pgs. 3-5; D5. | Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D1. |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| telecom stage provides time stamping of the received input. | D8: para. 35, 99.<br><br>D9: FIG. 2, pg. 21, line 30 – pg. 22, line 1.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document; D14: entire document; D15: entire document.<br><br>D11: entire document.<br><br>D20: entire document.<br><br>D21:  entire document; D22: entire document.<br><br>D23:  entire document.<br><br>D25:  pgs. 1-6.<br><br>D26: FIG. 8, Col. 7,lines 29-40.<br><br>D27: Page 1.<br><br>D28: Page 1. | Claim 6 is invalid under 35 U.S.C. §102(e) as anticipated by D8.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D9.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D10.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D11.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D20.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D23.<br><br>Claim 6 is invalid under 35 U.S.C. §102(e) as anticipated by D26.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D27.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D28.<br><br>Claim 6 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24.<br><br>It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage.<br><br>A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| 14. The data logging system of claim 1 wherein the distribution stage comprises: | | Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D1.

Claim 14 is invalid under 35 U.S.C. §102(e) as anticipated by D8.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D9.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D10.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D11.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D20.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D21.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D23.

Claim 14 is invalid under 35 U.S.C. §102(e) as anticipated by D26.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D27.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D28.

Claim 14 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24.

It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage.<br><br>A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| c1) a first interface receiving data from the recorder stage; | D1: D3, Page 5; D5.<br><br>D8: para. 31, 40-45, 90-94, 108, 109.<br><br>D9: FIG. 2, pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document; D15: entire document.<br><br>D11: entire document.<br><br>D20: entire document.<br><br>D21: entire document; D22: entire document.<br><br>D23: entire document.<br><br>D25: pgs. 1-6.<br><br>D26: FIGs. 4-7.<br><br>D27: entire document.<br><br>D28: entire document. | |
| c2) a controller for directing and monitoring distribution stage operations; | D1: D2, pgs. 3-4, 7; D3, pgs. 5-7; D5.<br><br>D8: para. 31, 40-45, 90-94, 108, 109.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document; D15: | |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | entire document. | |
| | D9:  FIG. 2, pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2. | |
| | D11: entire document. | |
| | D20: entire document. | |
| | D21:  entire document; D22: entire document. | |
| | D23:  entire document. | |
| | D25:  pgs. 1-6. | |
| | D26: FIGs. 4-7; Claims 1-2; Col. 5, lines 24-44; Col. 9, line 1 – Col. 11, line 59; Col. 13, line 11, line 45. | |
| | D27: entire document. | |
| | D28: entire document. | |
| c3) a buffer for transitional data storage; and | D1:  D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5. | |
| | D8: para. 31, 40-45, 90-94, 108, 109. | |
| | D9:  FIG. 2, pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2. | |
| | D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document; D15: entire document. | |
| | D11: entire document. | |
| | D20: entire document. | |
| | D21: entire document; D22: entire document. | |
| | D23: entire document. | |
| | D25:  pgs. 1-6. | |
| | D26: FIGs. 1-7, Col. 16, lines 9-44; Col. 11, lines 28-36. | |
| | D27: entire document. | |
| | D28: entire document. | |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | |
| c4) a second interface for distributing data to one or more output channels. | D1:  D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5.<br><br>D8: para. 31, 40-45, 90-94, 108, 109.<br><br>D9:  FIG. 2, pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document.<br><br>D11: entire document.<br><br>D20: entire document.<br><br>D21: entire document; D22: entire document.<br><br>D23:  entire document.<br><br>D25:  pgs. 1-6.<br><br>D26: FIGs. 1-7, Claims 1-2; Col. 9, line 28- Col. 11, line 16.<br><br>D27: entire document.<br><br>D28: entire document. | |
| 15. The data logging system of claim 1 wherein the distribution stage comprises an archive storage device for archiving data. | D1:  D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5.<br><br>D9: FIG. 2, pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document.<br><br>D11: entire document.<br><br>D20: entire document.<br><br>D21:  entire document; D22: entire document.<br><br>D23:  entire document.<br><br>D25:  pgs. 1-6.<br><br>D26: FIGs. 1-7, Claims 1-2; Col. 9, line 28- Col. 11, line 16. | Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D1.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D9.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D10.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D11.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D20.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D23.<br><br>Claim 15 is invalid under 35 U.S.C. §102(e) as anticipated by D26. |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D27: entire document.<br><br>D28: entire document. | Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D27.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D28.<br><br>Claim 15 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24.<br><br>It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage.<br><br>A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| 17. The data logging system of claim 15 wherein said archive storage device is a RAID array. | | Claim 17 is invalid under 35 U.S.C. §103 as obvious over D1 and/or D9 and/or D10 and/or D11 and/or D20 and/or D21 and/or D23 and/or D25 and/or D26 and/or D27 and/or D28.<br><br>It would have been obvious to one of ordinary skill in the art to replace a hard disk drive, as in D1, D9, D10, D11, D20, D21, D23, D25, D26, D27, or D28 with a RAID array, as was known in the art, to increase data integrity, data storage capacity, and/or fault-tolerance.<br><br>A data logging system designer of |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | ordinary skill in the art, facing the wide range of needs created by developments in the field of data logging systems, would have seen a benefit to replace a RAID array with the hard disk drive teachings of D1, D9, D10, D11, D20, D21, D23, D25, D26, D27, or D28 to increase data integrity, data storage capacity, and/or fault-tolerance. |
| 19. The data logging system of claim 1 wherein the distribution stage comprises: | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D1. |
| | | Claim 19 is invalid under 35 U.S.C. §102(e) as anticipated by D8. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D9. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D10. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D11. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D20. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D21. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D23. |
| | | Claim 19 is invalid under 35 U.S.C. §102(e) as anticipated by D26. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D27. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D28. |
| | | Claim 19 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24. |
| | | It would have been obvious to one of ordinary skill in the art to include the ability to receive communication |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage.<br><br>A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| an operating system software application and a computer capable of running said software application and accessing one or more remote serve computers. | D1:  D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5.<br><br>D8: para. 31, 40-45, 90-94, 108, 109.<br><br>D9:  FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, Page 1, 4; D17, Page 2; D16, Pages 6-16; D13, entire document; D15: entire document.<br><br>D11: entire document.<br><br>D20: entire document.<br><br>D21:  entire document; D22: entire document.<br><br>D23:  entire document.<br><br>D25:  pgs. 1-6.<br><br>D26: entire document.<br><br>D27: entire document.<br><br>D28: entire document. | |
| 32. The data logging system of claim 1, wherein the distribution stage is | D1:  D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D1. |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| implemented as a network server. | D8: para. 40-42. | Claim 32 is invalid under 35 U.S.C. §102(e) as anticipated by D8. |
| | D9: FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D9. |
| | D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D10. |
| | D11: entire document. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D11. |
| | D20: entire document. | |
| | D21:  entire document; D22: entire document. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D20. |
| | D23:  entire document. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D21. |
| | D25:  pgs. 1-6. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D23. |
| | D26: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2. | Claim 32 is invalid under 35 U.S.C. §102(e) as anticipated by D26. |
| | D27: entire document. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D27. |
| | D28: entire document. | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D28. |
| | | Claim 32 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24. |
| | | It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage. |
| | | A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| 33. The data logging system of claim 32, wherein the network server is a Web server. | D1: D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5.<br><br>D8: para. 40-42.<br><br>D9:  FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2, D16, Pages 6-16; D13, entire document.<br><br>D20: entire document.<br><br>D21:  entire document; D22: entire document.<br><br>D23:  entire document.<br><br>D25:  pgs. 1-6.<br><br>D26: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2.<br><br>D27: entire document.<br><br>D28: entire document. | Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D1, or in the alternative, under 35 U.S.C. §103 as obvious over D1 in view of D8.<br><br>Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D10, or in the alternative, under 35 U.S.C. §103 as obvious over D10 in view of D8.<br><br>Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D20, or in the alternative, under 35 U.S.C. §103 as obvious over D20 in view of D8.<br><br>Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>Claim 33 is invalid under 35 U.S.C. §102(e) as anticipated by D26.<br><br>Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D27.<br><br>Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D28.<br><br>Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D23, or in the alternative, under 35 U.S.C. §103 as obvious over D23 in view of D8.<br><br>Claim 33 is invalid under 35 U.S.C. §102(e) as anticipated by D8.<br><br>Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24.<br><br>It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage. |
| | | A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| | | D8 discloses a call center with call recording capabilities, where the call center is accessible via a web server and a browser. It would have been obvious to one of ordinary skill in the art to utilize a web server to permit remote access, as in D1, D10, D20, D23, and/or D25 from web-based clients, as the world-wide-web is a popular and easily accessible network for remotely connecting to a computer/network. |
| | | A data logging system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of data logging systems, would have seen a benefit to incorporate a web server of D8 with the teachings of D1, D10, D20, D23, or D25 to permit remote access from the world-wide-web, which is a popular and easily accessible network for remotely connecting to a computer/network. |
| | | Claim 33 is invalid under 35 U.S.C. §102(b) as anticipated by D9. |
| 34. The data logging system of claim 32, wherein the network server is a file server. | D1: D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5.

D8: para. 40-42.

D9: FIG. 2; pg. 6, line 33 – pg. 7, line 2; | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D1.

Claim 34 is invalid under 35 U.S.C. §102(e) as anticipated by D8. |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | pg. 21, line 23 – pg. 22, line 2. | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D9. |
| | D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document. | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D10. |
| | D20: entire document. | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D20. |
| | D21: entire document; D22: entire document. | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D21. |
| | D23: entire document. | Claim 34 is invalid under 35 U.S.C. §102(e) as anticipated by D26. |
| | D25: pgs. 1-6. | |
| | D26: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2. | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D27. |
| | D27: entire document. | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D28. |
| | D28: entire document. | Claim 34 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24. |
| | | It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage. |
| | | A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| 43. A data logger, comprising: | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D1. |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | Claim 43 is invalid under 35 U.S.C. §102(e) as anticipated by D8. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D9. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D10. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D11. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D20. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D21. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D23. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D24. |
| | | Claim 43 is invalid under 35 U.S.C. §102(e) as anticipated by D26. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D27. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D28. |
| | | Claim 43 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24. |
| | | It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom device, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage. |
| | | A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |
| a telecommunication device receiving input from a plurality of communication channels; | D1: D6, and D7 Pages 2-5.<br><br>D8: paras. 46 to 48.<br><br>D9: FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document.<br><br>D11: entire document<br><br>D20: entire document<br><br>D21: entire document; D22: entire document.<br><br>D23: entire document<br><br>D24: FIG. 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26 – Col. 6, 6-17, 47-53; line 55; Col. 7, lines 9-23<br><br>D25: pgs. 1-6.<br><br>D26: FIG 4.; FIG. 6; Col. 6, lines 11-62, Col. 8, line 32-Col. 9, line 10; Claims 1-2.<br><br>D27: entire document.<br><br>D28: entire document. | |
| a processor converting the received input to one or more data formats; | D1: D6, and D7 Pages 2-5.<br><br>D8: paras. 47 to 52.<br><br>D9: FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, | |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | Pages 6-16; D13, entire document. | |
| | D11: entire document | |
| | D20: entire document | |
| | D21: entire document; D22: entire document. | |
| | D23: entire document | |
| | D24: FIG. 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13. | |
| | D25: pgs. 1-6. | |
| | D26: FIGs 4-7; Col. 6, lines 11-62, Col. 8, line 10-Col. 9, line 10; Col. 11, lines 4-36; Claims 1-2. | |
| | D27: entire document. | |
| | D28: entire document. | |
| a memory for logging information about the received input, the information comprising data converted to at least one data format; | D1: D3, pgs. 5, 10; D4, pgs. 3-5; D5.<br><br>D8: para. 34-35, 38, 78, and 99.<br><br>D9: FIG. 2; pg. 6, line 33 – p. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document.<br><br>D11: entire document<br><br>D20: entire document<br><br>D21: entire document; D22: entire document.<br><br>D23: entire document<br><br>D24: FIG. 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13.<br><br>D25: pgs. 1-6.<br><br>D26: D26: FIGs. 1-7, Claims 1-2; Col. 9, | |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | line 28- Col. 11, line 16.<br><br>D27: entire document.<br><br>D28: entire document. | |
| a communication path to a communications network; and | D1: D3, pgs. 5-8; D4, pgs. 4-5; D5.<br><br>D8: para. 40-42.<br><br>D9:  FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document.<br><br>D11: entire document<br><br>D20:  entire document<br><br>D21:  entire document; D22: entire document.<br><br>D23:  entire document<br><br>D24:  FIG. 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13.<br><br>D25:  pgs. 1-6.<br><br>D26: FIGs. 1-7.<br><br>D27: entire document.<br><br>D28: entire document. | |
| a server having access to the memory via the communications network for transferring logged data from one or more of said plurality of communication channels via the communications network to at least one remote user. | D1: D3, pgs. 5-8; D4, pgs. 4-5; D5.<br><br>D8: para. 40-42.<br><br>D9:  FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document.<br><br>D11: entire document<br><br>D20:  entire document | |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | D21: entire document; D22: entire document.<br><br>D23: entire document<br><br>D24: D11: FIG. 3; Col. 2, lines 26-56; Col. 3, lines 5-34; 45-56; Col. 3, line 65 – Col. 4, line 3; Col. 4, lines 19-26, 43-49; Col. 4, line 63 – Col. 5, line 9; Col. 5, lines 27-35, Col. 5, lines 56 – Col. 6, line 2; Col. 6, lines 6-17, 47-54, 56-64.<br><br>D25: pgs. 1-6.<br><br>D26: entire document.<br><br>D27: entire document.<br><br>D28: entire document. | |
| 44. The data logger of claim 43 wherein the server is a Web server and the communications network is the Internet. | D1: D2, pg. 9, D3, pgs. 5-7, D4, pg. 3, D5.<br><br>D8: para. 40-42.<br><br>D9: FIG. 2; pg. 6, line 33 – pg. 7, line 2; pg. 21, line 23 – pg. 22, line 2.<br><br>D10: D11, Pages 1-3, D12, Pages 2-7; D14, entire document; D17, Page 2; D16, Pages 6-16; D13, entire document.<br><br>D11: entire document<br><br>D21: entire document; D22: entire document.<br><br>D24: FIG. 3; Col. 2, lines 26-56; Col. 3, lines 5-34; 45-56; Col. 3, line 65 – Col. 4, line 3; Col. 4, lines 19-26, 43-49; Col. 4, line 63 – Col. 5, line 9; Col. 5, lines 27-35, Col. 5, lines 56 – Col. 6, line 2; Col. 6, lines 6-17, 47-54, 56-64.<br><br>D25: pgs. 1-6.<br><br>D26: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44.<br><br>D27: entire document.<br><br>D28: entire document. | Claim 44 is invalid under 35 U.S.C. §102(e) as anticipated by D8.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D9.<br><br>Claim 44 is invalid under 35 U.S.C. §102(e) as anticipated by D26.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D27.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D28.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D1, or in the alternative, under 35 U.S.C. §103 as obvious over D1 in view of D8.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D10, or in the alternative, under 35 U.S.C. §103 as obvious over D10 in view of D8.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D11, or in the alternative, under 35 U.S.C. §103 as obvious over D1 in view of D8 or D27 or D28.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D21, or in the alternative, under 35 U.S.C. §103 |

## U.S. Pat. No. 6,775,372 Invalidity Chart

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | as obvious over D21 in view of D8 or D27 or D28.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D23, or in the alternative, under 35 U.S.C. §103 as obvious over D23 in view of D8 or D27 or D28.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D24, or in the alternative, under 35 U.S.C. §103 as obvious over D24 in view of D8 or D27 or D28.<br><br>D8, D27, and D28 disclose a call center with call recording capabilities, where the call center is accessible via the Internet, a web server and a browser.  It would have been obvious to one of ordinary skill in the art to utilize a web server to permit remote access, as in D1 and/or D10 and/or D11 and/or D21 and/or D23 and/or D24, from Internet-based clients, as the world-wide-web is a popular and easily accessible network for remotely connecting to a computer/network.<br><br>A data logging system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of data logging systems, would have seen a benefit to incorporate a web server of D8, D27 or D28 with the teachings of D1 and/or D10 and/or D11 and/or D21 and/or D23 and/or D24 to permit remote access from the world-wide-web, which is a popular and easily accessible network for remotely connecting to a computer/network.<br><br>Claim 44 is invalid under 35 U.S.C. §102(b) as anticipated by D25, or in the alternative, under 35 U.S.C. §103 as obvious over D25 in view of D1, D8, D9, D10, D11, D20, D21, D23, and/or D24.<br><br>It would have been obvious to one of ordinary skill in the art to include the ability to receive communication channels from a telecom device, as in |

**U.S. Pat. No. 6,775,372 Invalidity Chart**

| '372 Claim | Prior Art Reference(s) (if applicable) | Invalidity Bases |
|---|---|---|
| | | D1, D8, D9, D10, D11, D20, D21, D23, or D24, in the recording system of D25 to enable the multicast Media-on-Demand system to record audio received from a telecom stage.<br><br>A media on demand system designer of ordinary skill in the art, facing the wide range of needs created by developments in the field of media on demand systems, would have seen a benefit to include the ability to receive communication channels via a telecom stage, as in D1, D8, D9, D10, D11, D20, D21, D23, or D24 with the teaching of D25 to permit playback of recordings received in a distributed system, and with many participants using diverse methods of participation. |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D1: U.S. Publication No. 2001/0043697 to Cox, published November 22, 2001, filed on May 11, 1998.(WSNSDE0000874-94) | |
| | D2:  PCT Publication No. WO 98/13995 to Smythe, published April 2, 1998, filed September 25, 1997.(WSNSDE0008433-77) | |
| | D3:  U.S. Patent No. 5,668,863 to Bieslin, filed April 26, 1996, claiming priority to U.S. Application Serial No. 08/509,390, filed June 31, 1995.(WSNSDE0005185-5222) | |
| | D4:  Blue Cross Blue Shield Eclipse, sold in the U.S. before June 2, 1998. | |
| | D5:  "Blue Cross Blue Shield User Guide" (illustrating hardware of D1 sale) (WSNSDE0012983-92) | |
| | D6:  "Application Development Guide - Blue Cross / Blue Shield Eclipse Project Eclipse Modification and Design" (illustrating hardware of D4 sale) (WSNSDE0012967-82) | |
| | D7:  "Tracking Agent Id through Inter-Site Call Transfers" (illustrating hardware of D1 sale)(WSNSDE0012993-4) | |
| | D8:  Racal Rapidax, sold in the U.S. as of at least December 21, 1992. | |
| | D9:  "Racal Adds Remote 'Replay Over LAN' to Wordnet Voice-Logging Recorder, dated June 17, 1996 (MERC013540) | |
| | D10:  "Rapidax Tape Archive and System Network."  (NSDE008303-008304) (evidencing hardware of D8 sale) | |
| | D11:  "Rapidax in Surveillance and Security Monitoring" (NSDE008310-008311) (evidencing hardware of D8 sale). | |
| | D12:  "Rapidax Access Voice Logging Recorder." (NSDE008312-008319) (evidencing hardware of D8 sale). | |

## U.S. Pat. No. 6,870,920 Invalidity Chart

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D13: "Operator's Manual." (NSDE008320-008324) (evidencing hardware of D8 sale). | |
| | D14: Deposition of Andrew Jackson in Dictaphone Corp. vs. Nice Systems, Ltd., dated June 21, 2002, Civil Action 3:00CV1143. (NSDE008273-008299) (evidencing hardware of D8 offer for sale). | |
| | D15: United States Patent No. 6,222,838 to Sparks, filed November 26, 1997. (WSNSDE0006107-15) | |
| | D16: European Patent Publication 0837388A2, to Yamakita, filed October 9, 1997, claiming priority to October 15, 1996. (WSNSDE0000631-48) | |
| | D17: "Proposal for a Quality Monitoring / Agent Evaluation System", dated August 20, 1998. (WSNDE 013060-066) | |
| | D18: Canon ITS Technology Services Incorporated Quality Monitoring Functionality Design, dated November 18, 1998. (WSNDE 013035-059) (evidencing the hardware and function of the D17 offer for sale.) | |
| | D19: Parnes et al, "mMOD: the multicast Media-on-Demand system," dated March 6, 1997. (WSISTS065463-8) | |
| | D20: U.S. Patent No. 6,233,318 to Picard et al., filed Nov. 5, 1996. (WSNSDE063951-74) | |
| | D21: "Access Web TM. Internet Messaging Application," BostonTechnology.com, dated Dec. 27, 1996. (WSNSDE063975-77) | |
| | D22: "Boston Technology Completes The Connection! Adds Internet Support To Its Public Network Services," PR Newswire, dated Nov. 30, 1995. (WSNSDE063946-50) | |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| 1. A method for accessing information in at least one digital logger storing data associated with input from a plurality of input channels, comprising: | D1: Page 2, Para. 17, 30, 31, 34; Page 3, para. 43, 45, 47, 48; Page 4, para. 51, 58; Page 6, para. 71, 72, 77, 78; Page 7, para. 82.<br><br>D2: Page 5, lines 11-12; Page 7, lines 10-20.<br><br>D3: Col. 1, line 54 - Col. 2, lines 19; Col. 3, lines 31-34; Col. 3, line 56 – Col. 4, line 9; Col. 10, lines 8-14.<br><br>D4: D5, entire document; D6, entire document; D7: entire document.<br><br>D8: D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document.<br><br>D9, Pages 1-3.<br><br>D14: Page 9, lines 22-24.<br><br>D15: Figure 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13.<br><br>D16: Col. 1, lines 1-7, 35-55; Col. 2, lines 25-40; Col. 2, line 47 – Col. 3, line 7; Col. 3, lines 37-49; Col. 5, lines 38-54; Col. 6, line 34 – Col. 8, line 55; Figure 1, 2, 5-9.<br><br>D17: D18: entire document.<br><br>D19: Page 1-6.<br><br>D20: FIGs 4-7; Col. 6, lines 11-62, Col. 8, line 32-Col. 9, line 10; Claims 1-2.<br><br>D21: entire document.<br><br>D22: entire document. | This claim is invalid under 35 U.S.C. §102(e) as anticipated by D1.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D2.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D3.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D4.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D8.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D9.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D15<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D16<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D17<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D19<br><br>Claim 1 is invalid under 35 U.S.C. §102(e) as anticipated by D20.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>Claim 1 is invalid under 35 U.S.C. §102(b) as anticipated by D22.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D2 or D3 in combination with D1 and/or D2 and/or D9 and/or D14 and/or D15 and/or D16 and/or D19. |
| at a Web server having access to said at least one digital logger, | D1: Page 2, Para. 17, 30, 31, 34; Page 3, para. 43, 45, 47, 48; Page 4, para. 51, 58; Page 6, para. 71, 72, 77, 78; Page 7, para. 82.<br><br>D2: Page 5, lines 11-12.<br><br>D3: Col. 2, lines 4-7; Col. 3, lines 31- | It would have been obvious to one of ordinary skill in the art to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | 46; Col. 9, line 67 – Col. 10, lines 8-14; Col. 10, lines 59 – Col. 11, line 36.<br><br>D4:  entire document; D5, Pages 5-9; D6, Pages 5-11; D7:  entire document<br><br>D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document.<br><br>D9:  Pages 1-3.<br><br>D14:  Page 9, lines 22-24.<br><br>D15:  Figure 3; Col. 2, lines 26-56; Col. 3, lines 5-34; 45-56; Col. 3, line 65 – Col. 4, line 3; Col. 4, lines 19-26, 43-49; Col. 4, line 63 – Col. 5, line 9; Col. 5, lines 27-35, Col. 5, lines 56 – Col. 6, line 2; Col. 6, lines 6-17, 47-54, 56-64.<br><br>D16:  Col. 2, lines 25 – Col. 3, line 3; Col. 3, lines 7-37; Col. 5, line 38 – Col. 6, lines 10-32; Figures 1, 2, 8.<br><br>D17:  D18:  entire document.<br><br>D19:  Pages 1-6.<br><br>D20: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2.<br><br>D21: entire document.<br><br>D22: entire document. | make recordings available to more clients across a greater geographical area.<br><br>A digital logger designer of ordinary skill, facing the wise range of needs created by developments in the field of endeavor, would have seen a benefit to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area. |
| receiving a request for retrieval of stored data from a client; | D1:  Page 1, para. 15-17; Page 2, para 31, 35; Page 3, para. 38, 39, 45; Page 6, para. 72, 73, 77, 78; Page 10, claim 25.<br><br>D2:  Page 20, lines 28-29.<br><br>D3:  Col. 3, lines 38-45; Col, 4, lines 10-21; Col. 5, lines 31-58; Col. 6, line 23 – Col. 7, line 44; Col. 7, line 57 – Col. 8, line 19; Col. 11, lines 18-22.<br><br>D4:  entire document; D5:  Pages 5-9; D6:  Pages 5-11; D7:  entire document<br><br>D8:  D10, entire document; D10, entire | |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | document; D11, entire document; D12, entire document; D13, entire document. | |
| | D9, Pages 1-3. | |
| | D14:  Page 9, lines 22-24. | |
| | D15:  Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26 – Col. 6, 6-17, 47-53;line 55; Col. 7, lines 9-23. | |
| | D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8. | |
| | D17:  D18:  entire document. | |
| | D19:  Pages 1-6. | |
| | D20: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2. | |
| | D21: entire document. | |
| | D22: entire document. | |
| retrieving stored data in accordance with the received request; | D1:  Page 1, para. 15-17; Page 2, para. 31; Page 3, para. 38-45; Page 6, para. 72, 73, 77; page 10, claim 25; | |
| | D2:  Page 21, lines 23-25. | |
| | D3:  Col. 3, lines 38-45; Col, 4, lines 10-21; Col. 5, lines 31-58; Col. 6, line 23 – Col. 7, line 44; Col. 7, line 57 – Col. 8, line 19; Col. 9, lines 18 – Col. 10, 14; Col. 10, line 47 – Col. 11, 22. | |
| | D4:  entire document; D5:  Pages 5-9; D6:  Pages 5-11; D7:  entire document | |
| | D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document. | |
| | D9, Pages 1-3. | |
| | D14:  Page 9, lines 22-24. | |
| | D15:  Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. | |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | 3, line 47 – Col. 5, line 26 – Col. 6, 6-17, 47-53; Col. 7, lines 9-23. | |
| | D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8. | |
| | D17:  D18:  entire document. | |
| | D19:  Pages 1-6. | |
| | D20: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2. | |
| | D21: entire document. | |
| | D22: entire document. | |
| and transferring the retrieved data to the client. | D1: Page 1, para. 15-17; Page 2, para. 31; Page 3, para. 38-45; Page 6, para. 72, 73, 77; page 10, claim 25; | |
| | D2:  Page 21, lines 23-25. | |
| | D3:  Col. 11, lines 18-22. | |
| | D4:  entire document; D5:  Pages 5-9; D6:  Pages 5-11; D7:  entire document | |
| | D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document. | |
| | D9, Pages 1-3. | |
| | D15:  Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26 – Col. 6, 6-17, 47-53; Col. 7, lines 9-23. | |
| | D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8. | |
| | D17:  D18:  entire document. | |
| | D19:  Pages 1-6. | |
| | D20: FIGs. 1-7; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2. | |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D21: entire document.<br><br>D22: entire document. | |
| 3. The method of claim 2 wherein the step of retrieving stored data comprises accessing call information for a record of an input channel made by said at least one digital logger. | D1: Page 2, Para. 17, 30, 31, 34, 35; Page 3, para. 43, 45, 47, 48; Page 4, para. 51, 58; Page 6, para. 71, 72, 74, 77, 78; Page 7, para. 82.<br><br>D2: Page 21, lines 30 - Page 22, line 1.<br><br>D3: Col. 9, lines 13-17; Col. 4, lines 47-54.<br><br>D4: entire document; D5: Pages 5-9; D7: entire document<br><br>D8: D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document.<br><br>D9, Pages 1-3.<br><br>D15: Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26; Col. 6, 6-17, 47-53; Col. 7, lines 9-23.<br><br>D16: Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16, 38-54; Col. 6, lines 17-32, 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 8, lines 33-54; Col. 9, lines 12 – Col. 10, line 8; Figure 1, 2, 5-9.<br><br>D17: D18: entire document.<br><br>D19: Pages 1-6.<br><br>D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40.<br><br>D21: entire document.<br><br>D22: entire document. | This claim is invalid under 35 U.S.C. §102(e) as anticipated by D1.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D2.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D3.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D4.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D8.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D15<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D16<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D17<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D19<br><br>This claim is invalid under 35 U.S.C. §102(e) as anticipated by D20.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D22.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D2 or D3 in combination with D1 and/or D2 and/or D9 and/or D14 and/or D15 and/or D16 and/or D19.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | | clients across a greater geographical area.<br><br>A digital logger designer of ordinary skill, facing the wise range of needs created by developments in the field of endeavor, would have seen a benefit to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area. |
| 6. The method of claim 1 wherein the step of retrieving stored data comprises accessing archived data at the Web server corresponding to a record of an input channel made by said at least one digital logger. | D1: Page 8, para. 99, 103.<br><br>D2: Page 21, lines 23-25.<br><br>D3: Col. 3, lines 59-64.<br><br>D16: Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8; Figure 1.<br><br>D17: D18: entire document.<br><br>D19: Pages 1-6.<br><br>D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40.<br><br>D21: entire document.<br><br>D22: entire document. | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D2.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D3.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D16.<br><br>This claim is invalid under 35 U.S.C. §102(e) as anticipated by D20.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D22.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate D1 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area.<br><br>A digital logger designer of ordinary skill, facing the wise range of needs created by developments in the field of endeavor, would have seen a benefit to incorporate D1 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the |

## U.S. Pat. No. 6,870,920 Invalidity Chart

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | | network-based conference system of D2 or the call conference recording system of D3 or the multicast Media-on-demand system of D19 to make recordings available to more clients across a greater geographical area. |
| 16. A method for accessing information stored by at least one digital logger storing data associated with input from a plurality of communication channels, comprising: | D1:  Page 2, Para. 17, 30, 31, 34; Page 3, para. 43, 45, 47, 48; Page 4, para. 51, 58; Page 6, para. 71, 72, 77, 78; Page 7, para. 82.<br><br>D2:  Page 5, lines 11-12; Page 7, lines 10-20.<br><br>D3:  Col. 1, line 54 - Col. 2, lines 19; Col. 3, lines 31-34; Col. 3, line 56 – Col. 4, line 9; Col. 10, lines 8-14.<br><br>D4:  D5, entire document; D6, entire document; D7:  entire document.<br><br>D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document.<br><br>D9, Pages 1-3.<br><br>D14:  Page 9, lines 22-24.<br><br>D15:  Figure 3; Col. 1, line 55 – Col. 2, line 55; Col. 3, lines 5-34; 47-56, Col. 4, lines 19-26; Col. 5, lines 17-37, 39-47; Col. 7, lines 4-13.<br><br>D16:  Col. 1, lines 1-7, 35-55; Col. 2, lines 25-40; Col. 2, line 47 – Col. 3, line 7; Col. 3, lines 37-49; Col. 5, lines 38-54; Col. 6, line 34 – Col. 8, line 55; Figure 1, 2, 5-9.<br><br>D17:  D18:  entire document.<br><br>D19:  Page 1-6.<br><br>D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40.<br><br>D21: entire document.<br><br>D22: entire document. | This claim is invalid under 35 U.S.C. §102(e) as anticipated by D1.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D2.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D3.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D4.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D8.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D9.<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D15<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D16<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D17<br><br>This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D19<br><br>This claim is invalid under 35 U.S.C. §102(e) as anticipated by D20.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D22.<br><br>This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D2 or D3 in combination with D1 and/or D2 and/or D9 and/or D14 and/or D15 and/or D16 and/or D19. |

U.S. Pat. No. 6,870,920 Invalidity Chart

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| at a Web server having access to said information stored by at least one digital logger over a communications network, | D1: Page 2, Para. 17, 30, 31, 34; Page 3, para. 43, 45, 47, 48; Page 4, para. 51, 58; Page 6, para. 71, 72, 77, 78; Page 7, para. 82.<br><br>D2: Page 5, lines 11-12.<br><br>D3: Col. 2, lines 4-7; Col. 3, lines 31-46; Col. 9, line 67 – Col. 10, lines 8-14; Col. 10, lines 59 – Col. 11, line 36.<br><br>D4: entire document; D5, Pages 5-9; D6, Pages 5-11; D7: entire document<br><br>D8: D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document.<br><br>D9: Pages 1-3.<br><br>D14: Page 9, lines 22-24.<br><br>D15: Figure 3; Col. 2, lines 26-56; Col. 3, lines 5-34; 45-56; Col. 3, line 65 – Col. 4, line 3; Col. 4, lines 19-26, 43-49; Col. 4, line 63 – Col. 5, line 9; Col. 5, lines 27-35, Col. 5, lines 56 – Col. 6, line 2; Col. 6, lines 6-17, 47-54, 56-64.<br><br>D16: Col. 2, lines 25 – Col. 3, line 3; Col. 3, lines 7-37; Col. 5, line 38 – Col. 6, lines 10-32; Figures 1, 2, 8.<br><br>D17: D18: entire document.<br><br>D19: Pages 1-6.<br><br>D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40.<br><br>D21: entire document.<br><br>D22: entire document. | It would have been obvious to one of ordinary skill in the art to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area.<br><br>A digital logger designer of ordinary skill, facing the wise range of needs created by developments in the field of endeavor, would have seen a benefit to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area. |
| receiving a request for retrieval of stored data from a user; | D1: Page 1, para. 15-17; Page 2, para 31, 35; Page 3, para. 38, 39, 45; Page 6, para. 72, 73, 77, 78; Page 10, claim 25.<br><br>D2: Page 20, lines 28-29. | |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D3:  Col. 3, lines 38-45; Col, 4, lines 10-21; Col. 5, lines 31-58; Col. 6, line 23 – Col. 7, line 44; Col. 7, line 57 – Col. 8, line 19; Col. 11, lines 18-22. | |
| | D4:  entire document; D5:  Pages 5-9; D6:  Pages 5-11; D7:  entire document | |
| | D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document. | |
| | D9, Pages 1-3. | |
| | D14:  Page 9, lines 22-24. | |
| | D15:  Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26 – Col. 6, 6-17, 47-53;line 55; Col. 7, lines 9-23. | |
| | D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8. | |
| | D17:  D18:  entire document. | |
| | D19:  Pages 1-6 | |
| | D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40. | |
| | D21: entire document. | |
| | D22: entire document. | |
| retrieving said stored data from said information in accordance with the received request; | D1:  Page 1, para. 15-17; Page 2, para. 31; Page 3, para. 38-45; Page 6, para. 72, 73, 77; page 10, claim 25; | |
| | D2:  Page 21, lines 23-25. | |
| | D3:  Col. 3, lines 38-45; Col, 4, lines 10-21; Col. 5, lines 31-58; Col. 6, line 23 – Col. 7, line 44; Col. 7, line 57 – Col. 8, line 19; Col. 9, lines 18 – Col. 10, 14; Col. 10, line 47 – Col. 11, 22. | |
| | D4:  entire document; D5:  Pages 5-9; | |

- 11 -

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D6:  Pages 5-11; D7:  entire document | |
| | D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document. | |
| | D9, Pages 1-3. | |
| | D14:  Page 9, lines 22-24. | |
| | D15:  Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26 – Col. 6, 6-17, 47-53; Col. 7, lines 9-23. | |
| | D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8. | |
| | D17:  D18:  entire document. | |
| | D19:  Pages 1-6. | |
| | D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40. | |
| | D21: entire document. | |
| | D22: entire document. | |
| and transferring the retrieved data to the client. | D1:  Page 1, para. 15-17; Page 2, para. 31; Page 3, para. 38-45; Page 6, para. 72, 73, 77; page 10, claim 25; | |
| | D2:  Page 21, lines 23-25. | |
| | D3:  Col. 11, lines 18-22. | |
| | D4:  entire document; D5:  Pages 5-9; D6:  Pages 5-11; D7:  entire document | |
| | D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document. | |
| | D9, Pages 1-3. | |
| | D15:  Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26 – Col. 6, 6- | |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | 17, 47-53; Col. 7, lines 9-23. | |
| | D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8. | |
| | D17:  D18:  entire document. | |
| | D19:  Pages 1-6. | |
| | D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40. | |
| | D21: entire document. | |
| | D22: entire document. | |
| 18.  The method of claim 17 wherein the step of retrieving stored data comprises accessing call information for a record of a communication channel made by said at least one digital logger. | D1:  Page 2, Para. 17, 30, 31, 34, 35; Page 3, para. 43, 45, 47, 48; Page 4, para. 51, 58; Page 6, para. 71, 72, 74, 77, 78; Page 7, para. 82. | This claim is invalid under 35 U.S.C. §102(e) as anticipated by D1. |
| | D2:  Page 21, lines 30 - Page 22, line 1. | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D2. |
| | D3:  Col. 9, lines 13-17; Col. 4, lines 47-54. | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D3. |
| | D4:  entire document; D5:  Pages 5-9; D7:  entire document | This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D4. |
| | D8:  D10, entire document; D10, entire document; D11, entire document; D12, entire document; D13, entire document. | This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D8. |
| | D9, Pages 1-3. | This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D15 |
| | D15:  Figure 3; Col. 1, line 57 – Col. 2, line 10; Col. 2, lines 10-16, 49-56; Col. 3, line 47 – Col. 5, line 26; Col. 6, 6-17, 47-53; Col. 7, lines 9-23. | This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D16 |
| | D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16, 38-54; Col. 6, lines 17-32, 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 8, lines 33-54; Col. 9, lines 12 – Col. 10, line 8; Figure 1, 2, 5-9. | This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D17 |
| | | This claim is invalid under 35 U.S.C. § 102(b) as anticipated by D19 |
| | | This claim is invalid under 35 U.S.C. §102(e) as anticipated by D20. |
| | | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D21. |
| | D17:  D18:  entire document. | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D22. |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
| | D19:  Pages 1-6.<br><br>D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40.<br><br>D21: entire document.<br><br>D22: entire document. | This claim is invalid under 35 U.S.C. §103(a) as obvious in view of D2 or D3 in combination with D1 and/or D2 and/or D9 and/or D14 and/or D15 and/or D16 and/or D19.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area.<br><br>A digital logger designer of ordinary skill, facing the wise range of needs created by developments in the field of endeavor, would have seen a benefit to incorporate D1 and/or D9 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area. |
| 21. The method of claim 16 wherein the step of retrieving stored data comprises accessing archived data at the Web server corresponding to a record of a communication channel made by said at least one digital logger. | D1:  Page 8, para. 99, 103.<br><br>D2:  Page 21, lines 23-25.<br><br>D3:  Col. 3, lines 59-64.<br><br>D16:  Col. 2, line 47 – Col. 3, line 3; Col. 5, lines 3-16; Col. 6, lines 41-55; Col. 7, line 57 – Col. 8, line 28; Col. 9, lines 12 – Col. 10, line 8; Figure 1.<br><br>D17:  D18:  entire document.<br><br>D19:  Pages 1-6.<br><br>D20: FIGs. 1-8; Col. 9, line 40 – Col. 11, line 16, Col. 14, line 33- Col. 16, line 44; Claims 1-2; Col. 7, lines 29-40.<br><br>D21: entire document. | This claim is invalid under 35 U.S.C. §102(b) as anticipated by D2.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D3.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D16.<br><br>This claim is invalid under 35 U.S.C. §102(e) as anticipated by D20.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D21.<br><br>This claim is invalid under 35 U.S.C. §102(b) as anticipated by D22.<br><br>It would have been obvious to one of ordinary skill in the art to incorporate D1 and/or D15 and/or D16 and/or D19's digital logger associated with |

**U.S. Pat. No. 6,870,920 Invalidity Chart**

| '920 Claim | Prior Art Reference(s) | Invalidity Bases |
|---|---|---|
|  | D22: entire document. | input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 to make recordings available to more clients across a greater geographical area.<br><br>A digital logger designer of ordinary skill, facing the wise range of needs created by developments in the field of endeavor, would have seen a benefit to incorporate D1 and/or D15 and/or D16 and/or D19's digital logger associated with input from a plurality of input channels in the network-based conference system of D2 or the call conference recording system of D3 or the multicast Media-on-demand system of D19 to make recordings available to more clients across a greater geographical area. |