# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

     *Plaintiffs*,

      v.

WITNESS SYSTEMS, INC.

     *Defendant*.

Civil Action No. 06-311-JJF

## DEFENDANT WITNESS SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S COUNTER-STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS

DATED:  November 29, 2007

FISH & RICHARDSON P.C.
Kyle Wagner Compton (#4693)
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware  19899-1114
Telephone:  (302) 652-5070


Nagendra Setty (pro hac vice)
Daniel A. Kent (pro hac vice)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone:  (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS SYSTEMS, INC.

# TABLE OF CONTENTS

PAGE(S)

I.    THE PRODUCTS TO WHICH LACHES BARS RELIEF………………..…2

II.    NICE'S UNREASONABLE AND INEXCUSABLE DELAY………………2

III.    PREJUDICE SUFFERED BY WITNESS SYSTEMS………………………4

    A.    Witness Systems Suffered Evidentiary Prejudice……………………4

    B.    Witness Systems Suffered Economic Prejudice………………………4

IV.    CONCLUSION…………………………………………………………….7

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

## CASES

*Jamesbury Corp. v. Litton Industrial Products, Inc.*…………………….…………...3
    839 F.2d 1544, 1553 (Fed. Cir. 1988)

*James River Corp. of Virginia v. Hallmark Cards, Inc*………………………………...6
    915 F. Supp. 968, E.D. Wis. 1996)

*Meyers v. Brooks Shoe, Inc.*…………………………………......................................6
    912 F.2d 1459, 1462-63 (Fed. Cir. 1990)

*Odetics, Inc. v. Storage Tech. Corp.*
    185 F.3d 1259, 1273 (Fed. Cir. 1999)……………………….………………2

*Tristrata Technology, Inc. v. Cardinal Health, Inc.*
    2004 WL 97655 at *2……………………………………………………...2

Witness Systems, Inc. ("Witness Systems") moved for summary judgment on the issue of laches because NICE Systems, Ltd.'s and NICE Systems, Inc.'s ("NICE's") dilatory conduct in asserting U.S. Patent No. 5,396,371 ("the '371 Patent") and U.S. Patent No. 5,819,005 ("the '005 Patent") was unreasonable, inexcusable, and prejudicial to Witness Systems. NICE delayed a full seven years before it brought this lawsuit. Accordingly, NICE is barred from seeking any relief under the '371 and '005 Patents by laches.

On November 21, 2007, NICE responded to Witness Systems' Motion for Partial Summary Judgment on Laches by filing Plaintiff's Counter-Statement of Genuine Issues of Material Fact in Dispute In Opposition To Defendant's Motion For Partial Summary Judgment On Laches ("NICE's Counter-Statement").

NICE's Counter-Statement purports to list a number of facts it claims should defeat Witness Systems' Motion for Partial Summary Judgment on Laches. However, each fact provided by NICE is either immaterial or unsupported by the evidence NICE cites. As stated in Witness Systems' Motion, a presumption of laches arose here due to NICE's seven-year delay in filing suit. In NICE's Counter-Statement, NICE fails to provide evidence sufficient to overcome the presumption that such a delay is unreasonable, inexcusable, and prejudicial, and laches therefore bars any relief NICE seeks for the alleged infringement of the '371 and '005 Patents.

Pursuant to the Court's Standing order on motions for summary judgment, defendant Witness Systems hereby responds to NICE's Counter-Statement.

## I.    THE PRODUCTS TO WHICH LACHES BARS RELIEF

In paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 of NICE's Counter-Statement, it makes numerous assertions in its attempt to show that the products accused in 1999 are "substantially different" from the products accused today, either through rebranding, modification, updating or the like.  Unfortunately for NICE, the extent to which any particular product accused in this case may or may not differ from the products originally accused in the Eyretel letters in 1999 is immaterial.  Laches bars recovery under the '371 and '005 Patents for *all potentially infringing products sold prior to the lawsuit.  Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273 (Fed. Cir. 1999) ("Laches completely abrogates prefiling damages and the "right to exclude any infringing products sold prior to the filing of the complaint.")  Moreover, the Eyretel E-l 000, E-500 and Mediastore products accused in 1999 are also accused in this case.  *See* Plaintiffs' Second Supplemental Objections In Response To Defendant Witness Systems, Inc.'s Interrogatory 13, filed June 28, 2007.

## II.    NICE'S UNREASONABLE AND INEXCUSABLE DELAY

In paragraphs 11 and 12 of its Counter Statement, NICE asserts that there were ongoing license discussions and negotiations that lasted through August of 1999 between Eyretel and Dictaphone.  However, whether or not such discussions and negotiations were ongoing is immaterial to the ultimate question of laches. "[T]he underlying critical factors of laches are presumed upon proof that the patentee delayed filing suit for more than six years after *actual or constructive knowledge of the defendant's alleged infringing activity*."  *Tristrata Technology, Inc. v. Cardinal Health, Inc.*, 2004 WL 97655 at *2 (D. Del. Jan. 16, 2004) (Farnan, J.) (emphasis added).  It is undisputed that in April of 1999

NICE had constructive knowledge of the allegedly infringing activity. A few months of alleged negotiations ending nearly seven years before NICE filed this action has no bearing on Witness Systems' motion.

In paragraphs 13 and 14, NICE asserts that Witness Systems' predecessor (Eyretel) was a minor competitor in the marketplace. Whether Witness Systems or Eyretel was a major or minor competitor in the marketplace is also immaterial to the ultimate question of laches. What matters is whether NICE's predecessor, Dictaphone had actual or constructive knowledge of the allegedly infringing activity. Here, Dictaphone sent Eyretel a series of eight letters charging infringement of the '371 and '005 Patents, establishing that Dictaphone (and thus, NICE), in fact had actual knowledge of the allegedly infringing activity.

In paragraphs 15, 16, and 17, NICE asserts that it "sued three competitors," that Witness Systems was aware of such litigation, and that NICE had "significant business disruptions" that prevented it from suing Witness Systems. Again, such facts are immaterial to a finding of laches. "[I]n order to excuse delay based on other litigation, the patentee must give notice to the alleged infringer of the existence of the other litigation and of an intent to enforce its rights against the infringer at the conclusion of the other litigation." *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1553 (Fed. Cir. 1988) (overruled on other grounds). NICE points to no such notice provided either to Eyretel or to Witness Systems in this case, nor can it do so.

III.    **PREJUDICE SUFFERED BY WITNESS SYSTEMS**

    A.    <u>**Witness Systems Suffered Evidentiary Prejudice**</u>

In paragraphs 18, 19, and 20, NICE asserts that Witness Systems had sufficient time to depose witnesses and alleges that many documents were exchanged in this litigation. These assertions miss the point. The passage of more than seven years necessarily impacts the memories and availability of witnesses and documents. The parties here and third parties as well have undergone numerous corporate re-structurings. The documents produced from NICE's predecessor, Dictaphone, were found in over 450 boxes, many water damaged, in a New Jersey warehouse, and on an inactive server. The impact that the passage of time has had on the memories of witnesses and availability of documents is unknowable, which is precisely why the presumption of laches exists.

In paragraphs 21 and 22 NICE asserts that Witness Systems has benefited from the *Dictaphone v. NICE* and the *Dictaphone v. Mercom* litigations. Even if Witness Systems has been able to utilize some of the evidence from those matters, the impact that NICE's delay has had on the availability of other evidence remains unknowable. As a result, NICE's assertions about the other cases are immaterial.

    B.    <u>**Witness Systems Suffered Economic Prejudice**</u>

In paragraphs 23, 24, 25, and 26, NICE asserts broadly and without evidentiary support that Witness Systems did not invest substantially in research and development of the accused products line.

For instance, in paragraph 24, NICE asserts that Witness Systems phased out the Mediastore by 2005, apparently concluding that Witness Systems therefore must not have

- 4 -

expended resources in developing the product thereafter. Even if true, however, NICE's assertion does not address Witness Systems' research and development efforts from 1999 to 2005 on the Mediastore, and its efforts related to the numerous other accused products in this case. These efforts were conducted after Witness Systems was accused of infringing the '371 and '005 patents in 1999, which accusations were followed by a complete absence of communications or enforcement efforts by Dictaphone or NICE until this suit was filed.

In paragraphs 25 and 26, NICE also asserts that $33.3 million that Witness Systems expended in research and development, and $221.7 million in revenue Witness Systems earned, was not "attributable to the Eyretel Mediastore products" but to the Impact 360$^{TM}$ product line. First, the Mediastore product line is only one product category implicated by the laches defense, and only one of many products accused of infringing these patents. Second, Witness Systems' laches defense covers all products prior to the litigation that NICE accuses of infringing these patents, not only the ones accused in 1999.

In paragraph 27, NICE asserts that "Witness's decision to buy Eyretel was not affected by asserted delay" because "Witness acquired Eyretel in 2003 in order to increase its international presence and in order to offer 'a complete recording solution.'" Whatever Witness Systems' stated reasons for buying Eyretel, the fact remains that at the time of the acquisition no litigation was pending concerning the '371 and '005 patents, no discussions concerning those patents were ongoing, and nothing had been heard about Dictaphone's unfounded allegations for four years. The absence of any infringement cloud over the deal is what matters, and the fact that Witness Systems purchased Eyretel

absent such a cloud further confirms the significant investment Witness Systems made in the now-accused technologies, further supporting its laches defense.

In paragraph 28, NICE suggests that no party can prevail on a laches defense unless it ceases sales of the accused product upon the filing of an infringement lawsuit. The cases on which NICE relies are not applicable to the current facts.

In *Meyers v. Brooks Shoe, Inc.,* the delay was only 1 1/2 years, so no presumption of laches applied.  912 F.2d 1459, 1462-63 (Fed. Cir. 1990) (overruled on other grounds). In addition, the defendant in *Meyers* presented no evidence showing that resources were invested in developing the product after receiving notice of plaintiffs original infringement claim.  *Id.* at 1463.  Moreover, the defendant's "project manager testified that Brooks never responded to outsiders who approached it with ideas for improving its products and never changed its course of action on a shoe construction because of a submission of ideas from outside the company."  *Id.*  In fact, the defendant completely ignored all contact by the plaintiff until the filing of suit.  *Id.*  The court concluded that on those facts, the defendants actions where completely independent of the plaintiff's actions, and an inference that the defendant would not have acted differently was appropriate.[1]  *Id.*

NICE points to no similar facts here.  Instead, Witness Systems' predecessor, Eyretel, explained to Dictaphone in 1999 why its products did not infringe, after which Dictaphone and NICE dropped the matter completely until filing suit seven years later.

---

[1] The *James River* case is similarly distinguishable, since it involves a delay of less than six years, the plaintiff never threatened litigation, and the decision was based on the specific facts of that case.  *See James River Corp. of Virginia v. Hallmark Cards,* 915 F. Supp. 968, 978 (E.D. Wis. 1996).

- 6 -

Witness Systems invested millions of dollars in developing and growing the market for the products NICE now accuses, so that those products now represent a significant portion of Witness Systems' business.  NICE points to no authority which would require a defendant in such circumstances to stop selling accused products immediately upon the plaintiff (finally) filing suit, or risk losing its laches defense.  Absent such authority, no inference should be made based on Witness Systems' continuing to sell the accused products in this case.

## IV.     CONCLUSION

NICE' Counter Statement fails to establish any genuine issue of fact material to Witness Systems' Motion for Partial Summary Judgment on the issue of Laches.  As a result, Witness Systems respectfully requests that this Court grant its motion for partial summary judgment to bar NICE from obtaining any relief for the alleged infringement of the '371 and '005 Patents under the doctrine of laches.

Dated:  November 29, 2007              FISH & RICHARDSON P.C.

By:  */s/Kyle Wagner Compton*
Kyle Wagner Compton (#4693)
William J. Marsden, Jr. (#2247)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware  19899-1114
Telephone:  (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone:  (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of November, 2007, I electronically filed with the Clerk of Court the **DEFENDANT WITNESS SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S COUNTER-STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS** using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel.  In addition, the filing will also be sent via hand delivery.

Josy W. Ingersoll                          *Attorneys for Plaintiffs*
Melanie K. Sharp                          *Nice Systems Ltd. and Nice Systems, Inc.*
Karen E. Keller
Mary Dugan
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

I also certify that on November 29, 2007, I have sent by electronic mail and U.S.

First Class Mail, the document(s) to the following non-registered participants:

Scott G. Lindvall                          *Attorneys for Plaintiffs*
Daniel DiNapoli                           *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

                              */s/Kyle Wagner Compton*
                              Kyle Wagner Compton (#4693)

- 8 -