IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC. and NICE SYSTEMS LTD,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WITNESS SYSTEMS, INC.<br><br>　　　　Defendant. | Civil Action No. 06-311 |

**DEFENDANT WITNESS SYSTEMS INC.'S MOTIONS IN LIMINE**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899-1114

Nagendra Setty (pro hac vice)
Daniel A. Kent (pro hac vice)
Noah C. Graubart (pro hac vice)
1180 Peachtree Street, N.E., 21st Floor
Atlanta, GA 30309

**ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.**

Dated:  December 19, 2007

In advance of the five-day trial beginning January 14, 2007, Defendant Witness Systems, Inc. ("Witness Systems") hereby respectfully moves *in limine* as set forth in detail below, pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, to exclude and limit testimony, admission of evidence, theories and arguments asserted by Plaintiffs NICE Systems Ltd. and NICE Systems, Inc. (collectively, "NICE").

I. **MOTION *IN LIMINE* NO. 1: To Exclude Untimely Disclosed Witnesses**

Witness Systems requests that the Court enter an order *in limine* precluding NICE from calling Messrs. Shlomo Shamir and Eran Porat ("Shamir and Porat") to testify at trial.

NICE's Proposed Witness List states that NICE may call several individuals who NICE never identified in its initial disclosures as "individuals likely to have discoverable information that [NICE] may use to support its claims or defenses . . . ." FED. R. CIV. P. 26(a)(1)(A). On November 6, NICE belatedly provided its Proposed Pretrial Order and related exhibits, including its list of witnesses it may call at trial ("NICE's Proposed Witness List").[1] As a result, Witness Systems did not pursue taking their depositions in this case and will have had no opportunity before trial to investigate these witnesses' potential testimony relating to the specific issues of this case. Accordingly, to avoid the unfair surprise NICE seeks to gain by disclosing these witnesses at the last minute, Witness Systems respectfully requests that the Court preclude NICE from calling Shamir and Porat from testifying at trial.

A. **Background**

NICE never divulged Mr. Shlomo Shamir or Mr. Eran Porat in its initial disclosures. On October 17, 2006, NICE served its initial disclosures, (D.I. 42), as required by Federal Rule of

---

[1] Under Local Rule 16.3(d)(1), plaintiffs were to provide their draft "no less than 30 days before the pretrial order is to be filed with the Court"—*i.e*, by November 29, 5 days prior to the scheduled pretrial conference (December 6). NICE provided its draft on November 6—one week late.

Civil Procedure 26(a)(1). Those disclosures (even as later amended) never listed either Mr. Shamir, President of NICE Systems Ltd. or Mr. Porat, Corporate Vice President of Finance of NICE Systems Ltd. (*See* D.I. 58.) Although fact discovery did not close for almost six more months (and certain depositions even extended months thereafter), NICE never identified Shamir or Porat as individuals having any knowledge relating to the specific claims and defenses in this case.

On November 6, NICE served its Proposed Witness List, listing thirty-three potential fact witnesses, including four who were not listed in NICE's initial disclosures: (1) Eran Porat, (2) Shlomo Shamir, (3) Thomas Moran and (4) David Murray, both of whom are employees of Nortel, Inc.[2]

Although Witness Systems deposed Shamir and Porat in connection with a different case (*STS Software Systems v. Witness Systems*, No. 1:04-2111-RWS (N.D. Ga.)) ("*STS*"), those depositions were narrowly limited by Court order, and could not have covered matter relevant to NICE's claims in this case. Moreover, at the time of those depositions, NICE had not yet disclosed that it intended to call Shamir or Porat to testify at trial in this case. Thus, Witness Systems had neither the opportunity nor the motivation to question Shamir or Porat about any issues specifically relevant to NICE's claims in this case.

NICE's inactive subsidiary, STS Software Systems, sued Witness Systems for patent infringement in July 2004, and that case is set for trial before Judge Richard W. Story of the Northern District of Georgia in March 2008. Near the close of fact discovery, STS moved to join NICE Systems Ltd. as a party. Witness Systems opposed, contending the addition of a new

---

[2] Witness Systems also objects to NICE's intent to call Messrs. Moran and Murray to testify at trial. Those witnesses, however, are discussed in Witness Systems' Motion *In Limine* No. 2, addressed below.

party would require extensive additional discovery. Judge Story ultimately granted the motion, finding extensive additional discovery would not be necessary. However, Judge Story recognized Witness Systems required certain additional discovery, and re-opened fact discovery for a limited time to allow for discovery relating to NICE's joinder to the case, including the license agreement which laid the groundwork for NICE's joinder. Witness Systems then deposed Shamir and Porat, both of whom were signatories to the agreement.

Witness Systems could not have questioned Shamir and Porat about this case during their *STS* depositions. By court order, and at NICE's insistence, all additional discovery was limited to the narrowly defined topics of the recently executed license agreement between NICE and STS, and facts relating to Witness Systems' unclean hands defense in that case. Narrowly construing the scope of allowed additional discovery, NICE repeatedly resisted Witness Systems' discovery efforts. For example, even after offering Mr. Shamir's deposition in open court before Judge Story,[3] NICE later refused to allow his deposition without first being assured that the scope of the deposition would be limited to the issues created by NICE's joinder to *STS*:

> We write in response to Witness's Notices of Deposition of Moty Cory, Shlomo Shamir, Haim Shani, Eran Porat, and Mordechai Golan served on August 14, 2007.
>
> Before we can provide you with a meaningful response, we must know what you believe the scope of the questioning for each witness to be. We remind you that the Court has reopened discovery on very limited issues and that these depositions will be limited to those narrow issues.

(Ex. A, S. Lindvall letter to D. Kent dated Aug. 15, 2007.) Consequently, any attempt to question Shamir or Porat regarding this case during their depositions in the *STS* case would have been hotly contested by NICE and contrary to Judge Story's order. Witness Systems had no

---

[3] *See* Ex. B, *STS* Trans. of Scheduling Conference, July 18, 2007 at 10:13-11:2. All exhibits are attached to the Declaration of Kyle Wagner Compton, filed herewith.

4

opportunity to question either individual with respect to their knowledge of NICE's specific claims in this case, and the questions at Shamir and Porat's deposition focused only on issues specific to *STS* and on NICE's business in general.

Even if NICE had provided Witness Systems some notice that NICE might rely on Shamir and Porat's testimony at trial, the difficulty in securing their depositions in *STS* demonstrates that pursuing their depositions in this case would have been futile. Despite availing itself of U.S. courts and asserting claims as plaintiff in both this case and the *STS* case, NICE has avoided bringing its employees to the United States for depositions at all costs. For example, Witness Systems first served a Notice of Deposition for Mr. Porat in *STS* in October 2005. STS (NICE's wholly-owned subsidiary) immediately moved for a protective order to prevent the deposition, but Judge Story denied the motion in January 2006. Nevertheless, STS/NICE refused—for almost two years—to produce Mr. Porat in the United States for a deposition and insisted that Witness Systems' counsel must travel to Israel for the deposition. (Ex. C, N. Graubart letter to S. Lindvall dated Mar. 15, 2007 at 1-2.) Witness Systems only secured his deposition after Judge Story ordered NICE to produce Mr. Porat in the United States[4]—but the deposition was limited to the narrow scope discussed above. Given that NICE had not identified Shamir and Porat as having information relevant to its claims in this case, Witness Systems understandably did not seek to reignite the same geography debate in this case.

**B.    Argument**

NICE violated Federal Rule of Civil Procedure 26 by failing to disclose the identity of witnesses it intended to call at trial in support of its claims. FED. R. CIV. P. 26(a)(1)(A). Because Witness Systems did not have notice of NICE's intent to rely on Shamir and Porat's testimony,

---

[4]   Ex. B, Trans. of July 18, 2007 *STS* Sched. Conf. at 42:22-43:3.

Witness Systems did not have the opportunity to question those witnesses about their knowledge of this case, and will be prejudiced if NICE is allowed to call them at trial.

Where a party fails to timely disclose the identity of witnesses it intends to call at trial, and that failure causes prejudice to an opposing party, the Court may properly exclude the proposed testimony. FED. R. CIV. P. 37(c)(1) (sanctions for failure to provide discovery); *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). Unless a party can demonstrate its failure to disclose the witnesses was substantially justified or harmless, Rule 37 requires sanctions, including the exclusion of the testimony. *See Baden Sports, Inc. v. Kabushiki Kaisha Molten*, No. C06-210MJP, 2007 WL 2285857, at * 1 (W.D. Wash. Aug. 2, 2007) (precluding witness testimony where witness was not identified until three months after close of fact discovery); *Sonnier v. Field*, No. 2:05-cv-14, 2007 WL 2155576, at *1 (W.D. Pa. July 25, 2007) (precluding witness testimony where defendant did not identify witness it its initial disclosures and plaintiff did not have an opportunity to depose him).

In the Third Circuit, a limited set of factors must guide a district court's discretion to exclude evidence under such circumstances ("the *Meyers* factors"):

> (1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption to the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the party offering it.

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*, No. Civ. A. 05-132-JJF, 2007 WL 521894, *4-*5 (D. Del. Feb. 15, 2007) (citing *Meyers*, 559 F.2d at 905). The first two *Meyers* factors focus on the prejudice or surprise a party would suffer from the use of the belatedly disclosed evidence

6

and the possibility of curing that prejudice; the third factor relates to the impact on the Court's schedule that would result from the introduction of the new evidence.

Witness Systems will be highly prejudiced if the Court allows NICE to call Shamir and Porat live at trial, as Witness Systems has not previously had the opportunity to depose the witnesses and ascertain what testimony they may provide about the NICE's claims in this case. Allowing NICE to call Shamir and Porat would open the door to the very sort of "surprise" testimony that *Meyers* allows the Court to exclude, and the first *Meyers* factor therefore favors exclusion of the testimony.

As there is no realistic way to cure that prejudice, the second and third *Meyers* factors also counsel exclusion of the testimony. The only possible way to cure the prejudice would be to allow Witness Systems to depose Shamir and Porat before trial. However, given the current case posture—on the eve of trial with expert discovery yet to commence—new depositions will be virtually impossible to schedule. As the Court is aware, the parties had significant difficulty scheduling expert depositions. Adding two additional depositions—solely as the result of NICE's failure to timely disclose its witnesses—will visit additional prejudice on Witness Systems, assuming it is even logistically possible to schedule them without disrupting the trial schedule.

Further, NICE's conduct suggests that its failure to disclose Shamir and Porat was willful, and demonstrates that NICE views their testimony as unimportant. The fourth *Meyers* factor asks whether the withholding party acted willfully or in bad faith. Here, the failure to disclose Shamir and Porat until serving its Proposed Witness List cannot be excused as it might where a party suddenly learns of additional witnesses with relevant information and promptly discloses those witnesses. Here, even though NICE certainly has long been aware of whatever

relevant knowledge its President and Corporate Vice President of Finance possess, NICE waited until the last minute to identify them. Similarly, NICE's conduct belies any claim that the evidence is of paramount importance. If the testimony to be provided by Shamir and Porat is central to NICE's case, their knowledge would have been identified much earlier.

For the foregoing reasons, Witness Systems respectfully requests the Court enter an order *in limine* precluding NICE from calling Messrs. Shlomo Shamir and Eran Porat to testify live at trial.

II.  **MOTION *IN LIMINE* NO. 2**: **To Exclude Infringement Accusations Against Nortel Products and Witnesses**

Witness Systems requests that the Court enter an order *in limine* precluding NICE from presenting any evidence accusing Witness Systems' products sold in partnership with Nortel, Inc. ("Nortel Products") or from calling Messrs. Thomas Moran and David Murray ("Moran and Murray") of Nortel to testify at trial. Although NICE never accused the Nortel Products of infringement for the first year and a half of this case, NICE now wants to conduct "trial by surprise."

B.  **Background**

Despite many opportunities, NICE did not accuse the Nortel Products of infringement until the eve of trial. NICE's Complaint, filed in May of 2006, accused ten products of infringing the ten patents then in suit. (D.I. 1.) On December 27, 2006, NICE's initial infringement contentions accused the same ten products, but NICE did not include the Nortel Products. After the close of fact discovery, NICE amended its infringement contentions, this time accusing seventy-six different products, but again, no Nortel Products were accused. NICE also never divulged Mr. Thomas Moran or Mr. David Murray, two Nortel employees ("the

8

Nortel Witnesses") in its initial disclosures. As a result, Witness Systems has never deposed the Nortel Witnesses.

NICE revealed its intent to accuse the Nortel Products for the first time in the exhibits to NICE's proposed Pretrial Order, served November 6, 2007. (See D.I. 261-5, Ex. 2 to Proposed Pretrial Order, filed November 29, 2007; D.I. 261-9, Ex. 6 to Proposed Pretrial Order at, *e.g.*, Ex. Nos. 391, 411, 454, 460, 509.) NICE also listed the two Nortel Witnesses, Messrs. Murray and Moran, as individuals NICE intends to call to testify at trial. (D.I. 261-13, Ex. 8 to Proposed Pretrial Order at 3.)

NICE formally accused the Nortel Products on December 17, 2006—just twenty-eight days before trial. (D.I. 281.) Three days earlier, on December 14, the Court ordered NICE to provide "the specific identification of the *five* products that will be at issue before the jury." (D.I. 280 at 1.) Not only did NICE disregard the Court's order by identifying multiple versions of at least *fourteen* distinct Witness Systems products, but NICE also shifted its infringement contentions. For the first time, NICE accused: "Nortel TDM Recorder, Nortel Quality Monitoring (TDM implementation); Nortel Contact Recording IP, Nortel Quality Monitoring IP." (D.I. 281 at 2.) NICE repeated the new accusations via the report of its infringement expert, Mr. John Henits. (*See* Ex. D at 5-6; *see also, e.g., id.* at 16, n.11 & 18 n.14 (repeated throughout report).)

### B. Argument

NICE violated the Court's Rule 16 Scheduling Order (D.I. 46), by failing to timely identify the Nortel Products in its infringement contentions. In addition, NICE violated Federal Rule of Civil Procedure 26 by failing to disclose the identity of witnesses it intended to call at trial in support of its claims. FED. R. CIV. P. 26(a)(1)(A).

NICE's departure from its infringement contentions inflicts significant prejudice on Witness Systems. Throughout the this case, Witness Systems prepared its case for trial based on NICE's identification of the accused products. Witness Systems' reliance on NICE's contentions impacted at least (1) Witness Systems' non-infringement contentions, (2) the preparation of the reports of Witness Systems' expert witnesses, and (3) the scope and focus of Witness Systems' discovery efforts. NICE has given no reason for its belated accusations, and its delay appears solely designed to surprise Witness Systems and gain unfair advantage.

Where a party fails to timely disclose Court-ordered infringement contentions (or the identity of witnesses it intends to call at trial), and that failure causes prejudice to an opposing party, the Court may properly exclude any proposed evidence related to the undisclosed contentions. FED. R. CIV. P. 37(c)(1); *Meyers*, 559 F.2d at 905. Unless a party can demonstrate its failure to properly respond to interrogatories and disclose witnesses was substantially justified or harmless, Rule 37 requires sanctions, including the exclusion of evidence and testimony. *See Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 469 (D. Del. 2006) (excluding prior art that was not timely revealed in party's invalidity contentions); *Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1269 (M.D. Fla. 2006) (precluding plaintiff from belated amending interrogatory responses to assert new basis for alleged liability); *Sonnier v. Field*, 2007 WL 2155576, at *1. This Court has sanctioned parties that fail to comply with the Court's deadline for providing the parties' respective contentions by excluding evidence relating to the belated contentions. *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, No. Civ. A. 05-132-JJF, 2007 WL 521894, *4-*5 (D. Del. Feb. 15, 2007) (excluding two prior art references that were not disclosed in defendant's invalidity contentions).

In the Third Circuit, the *Meyers* factors (set forth in Section I(B) above) must guide a district court's discretion to exclude evidence under such circumstances. Here, the *Meyers* factors counsel excluding NICE's accusations against the Nortel Products and precluding NICE from calling the Nortel Witnesses.

Witness Systems will be severely prejudiced if the Court allows NICE to accuse products that NICE never identified until the eve of trial. The Court's Scheduling Order required the parties to complete written discovery—including service of and responses to contention interrogatories—by March 2, 2007. (D.I. 46, Rule 16 Scheduling Order, entered October 30, 2006.) The parties then had three months to complete all depositions of fact witnesses, and certain depositions took place several months after the original fact discovery deadline. (*Id.*) Yet NICE never updated its infringement contentions to include the Nortel Products. As a result, Witness Systems had no notice that it should conduct discovery relating to Nortel, and now has no opportunity to do so.

The prejudice caused by NICE's behavior also affects expert opinions. Because NICE failed to timely accuse the Nortel Products, Witness Systems' experts were denied the opportunity to review the products and accusations until the eve of trial. As the Court knows, Witness Systems' experts have only ten days (including Christmas) to respond to the Henits report and to NICE's new accusations against the Nortel Products. (D.I. 272, NICE's proposed expert reporting schedule; D.I. 280, Court's Order adopting NICE's proposal, entered Dec. 14, 2007, at 2.) Thus, NICE's actions severely prejudice Witness Systems, and the first *Meyers* factor favors excluding NICE's accusations against the Nortel Products.

The only practical way to cure all of the prejudice to Witness Systems is for the Court to preclude NICE from making any reference to the Nortel products, and exclude Moran and Murray. Absent granting this Motion in Limine, the only way to minimize the prejudice to Witness Systems is to allow additional discovery on this issue, including re-taking numerous depositions, and to allow Witness Systems' experts significant additional time to analyze NICE's new accusations against the Nortel products. However, no time remains for that discovery and analysis.

Further, NICE's conduct throughout this litigation implies that its failure to disclose its position was willful. The fourth *Meyers* factor asks whether the withholding party acted willfully or in bad faith. Here, the failure to accuse the Nortel Products until the eleventh hour cannot be excused, nor can NICE's failure to timely identify the Nortel Witnesses. NICE was aware of the Nortel products for the entire duration of this case,[5] but waited until the very last moment to accuse those products of infringing the patents at issue here. Such a decision can only be categorized as willful.

NICE's conduct also belies any claim that the evidence is of paramount importance. NICE had over one year from the time it filed its Complaint until it last amended its infringement contentions on June 28, 2007. If NICE's accusations against the Nortel Products were important to NICE's case, NICE would have accused made those accusations long ago. For the foregoing reasons, Witness Systems respectfully requests the Court enter an order *in limine* excluding any accusation of infringement by the Nortel Products, and excluding the testimony of Messrs. Thomas Moran and David Murray.

III.  **MOTION *IN LIMINE* NO. 3**:  To Preclude Plaintiffs' Reliance on Doctrine of Equivalents for Certain Claim Limitations

Witness Systems requests that the Court enter an order *in limine* precluding NICE from presenting evidence accusing Witness Systems' products of infringing the patents in suit via the doctrine of equivalents. Having given up claim scope in an effort to convince the Patent and Trademark Office ("PTO") to allow its patents, via amendment or disclaimer, NICE may not now broaden the literal scope of its claims by arguing that Witness Systems' products are "equivalent".

A.  **Legal Standard**

Under the doctrine of equivalents, the scope of a patent claim is not limited to its literal terms but instead embraces all equivalents to the claims described. *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 535 U.S. 728, 732 (2002). The doctrine allows the patentee to claim insubstantial alterations of the literal claim that were not captured in drafting the original patent claim but which could be created by trivial changes. *Id.* at 733. NICE bears the burden of proving infringement under the doctrine of equivalents. *Nutrinova Nutrition Specialties and Food Ingredients GmbH v. U.S. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000).

Analysis under the doctrine of equivalents must be performed on a claim limitation-by-limitation basis. A claim limitation is present equivalently if a feature of the accused device performs the same function, in the same way, for the same result as the missing limitation. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950). If the differences between the accused device and the claim, when analyzed under the function, way, result test,

---

[5] Indeed, NICE accused Witness Systems' Nortel Products of infringing unrelated patents in a separate case pending in the Northern District of Georgia. *STS Software Sys. Ltd. v. Witness Systems, Inc.*, No. 1:04-2111-RWS (N.D. Ga.).

are no more than insubstantial, then the accused device infringes the claim equivalently. *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1043 (Fed. Cir. 1993). The degree of difference must be judged in the view of one of ordinary skill in the art. *Id.*

The doctrine of prosecution history estoppel limits the ability of a patentee to claim infringement by equivalents. The doctrine of equivalents, by expanding the reach of a patent beyond its literal terms, renders the scope of a patent somewhat uncertain. *Festo*, 535 U.S. at 732. Thus, in order for the public to have fair notice of the scope of a patent, the doctrine of prosecution history estoppel limits the breadth of patents under the doctrine of equivalents. Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process. *Id* at 733. Where the patentee originally claimed the subject matter alleged to infringe but later narrowed the claim during prosecution, he may not argue that the surrendered claim scope be deemed equivalent to the literal claims of the issued patent. *Id.* at 733-34. A patentee's decision to narrow his claims through amendment is presumed to be a general disclaimer of the territory between the original claim and the amended claim. *Id.* at 740. Prosecution history estoppel operates not only when an existing claim limitation is narrowed, but also when a new limitation is added to a claim. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370, F.3d 1131, 1141 (Fed. Cir. 2004).

Lastly, a patentee can be estopped from asserting infringement by equivalents based on the disavowal of claim scope in the patent's specification.

> There is of course no literal infringement because, as we have held and Honeywell has admitted, a quick connect is not a fuel filter. ***There can also be no infringement under the doctrine of equivalents because the accused quick connects use carbon fibers, and such fibers were disavowed from the scope of the "electrically conductive fibers" limitation***, as we have discussed above. *See J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed.Cir.2001) ("The scope of equivalents may [ ] be limited by statements in the specification that disclaim coverage of certain subject matter." *Dawn Equip. Co. v. Ky. Farms, Inc.*,

140 F.3d 1009, 1016 (Fed.Cir.1998)).

*See Honeywell Int'l., Inc. v. ITT Indus., Inc.,* 452 F.3d 1312, 1321 (Fed. Cir. 2006)

**B.     Argument**

     **1.     NICE is Estopped from Asserting Infringement by Equivalents of Several Limitations of the '345 and '570 Patents.**

All of the asserted claims of the '345 and '570 patents require constructing a "data representation of a lifetime of a telephone call." In its Memorandum on Tentative Claim Construction, the Court "conclude[d] that the ['570] specification reveals a call-centric compilation of data to be an *indispensable element* of the invention, and not merely an element of the preferred embodiment." (D.I. 279 at 17 (citing the '570 Patent at 20:34-64; 27:65-28:4)) (emphasis added). The '345 and '570 patents distinguish prior art recording systems that did not create one unified call record. The Court correctly recognized that NICE had limited its claim scope to include only data representations that combined all the data for a call into a cumulative, start-to-finish history of an entire telephone call.

NICE knows that Witness Systems products do not infringe under this interpretation of the '570 and '345 patents: all of the accused Witness Systems products store data in several different records, not in one unified call record. Recognizing this, NICE's infringement expert raises four different doctrine of equivalents arguments for this single claim limitation, attempting to avoid this Court's claim construction. (Ex. D at 124-128.)

Because the Court found that NICE disclaimed claim scope through the specification of the patent, NICE cannot later recapture coverage of disclaimed subject matter through the doctrine of equivalence. *See Honeywell*, 452 F.3d at 1321. Moreover, NICE made statements during the prosecution of the '345 patent that limit the scope of equivalents here. (Ex. E '345

Patent Prosecution History, Second Preliminary Amendment at 9-10.) NICE explicitly argued that using a unique identifier such as a customer telephone number or customer identifier to form a data representation of a lifetime of a call by combining data from multiple sources did not anticipate the claimed invention. NICE now impermissibly asserts that using a unique customer identifier does fall under the claim language via the doctrine of equivalents.

Witness respectfully requests that the Court preclude NICE from arguing during trial that the Witness Systems products infringe under the doctrine of equivalence by using a unique identifier to locate data stored in multiple, different locations. Similarly, Witness respectfully asks that the Court preclude NICE from arguing that a data representation is "equivalent" if it does not include all telephony events in one cumulative call record.

### 2. NICE is Estopped from Asserting Infringement by Equivalents of Several Limitations of the '109 Patent.

In its Memorandum on Tentative Claim Construction, the Court construed the "conference controller" limitation of claim 1 of the '109 Patent to mean "component that initiates, enables and/or establishes a conference call." (D.I. 279 at 34.) During prosecution of the '109 Patent, NICE amended claims and made arguments to the examiner to overcome prior art references. As a consequence of NICE surrendered the ability to argue that a "conference controller" s a device that is integrated with a recorder. (*See* Ex. F, October 6, 2005 Amendment, pp. 26-27 (distinguishing Rust, which included a control server that stored the IP data session and provided the IP data session to other communication devices)).

During prosecution, NICE also surrendered the ability to argue that "through a conference controller" is equivalent to "flowing through" a conference controller, or equivalent to "implementing a data session so that audio is transmitted to the first and second participants and the recording device." NICE added the "through the conference controller" limitation to

overcome a rejection over the Rust and Ishizaki. (*See* D.I. 149, Witness Systems' Op. Cl. Constr. Br. at 42 (citing '106 Pat. Pros. Hist., Resp., 9, dated Apr. 14, 2005)). Further, the claim language, the prosecution history, and the specification make clear that "through a conference controller" plainly means that data packets must "pass through a conference controller." (*See Id.* at 43-44 (citing '106 Pros. His., Resp., 21 n.5, date Sept. 11, 2005)).

NICE is also estopped from asserting that "receives as the additional participant at least the portion of the IP data session from each of the first and second participants" is equivalent to "receiving the sum of a two way stream between the first and second participants." NICE surrendered any scope of equivalents when it amended this claim over the Rust reference. (Ex. F, October 6, 2005 Amendment, p. 27.)

### 3. NICE Is Estopped From Asserting Infringement by Equivalents of the "Digital Audio Tape" Limitation in Claims of the '371 Patent.

In the Court's Memorandum Opinion on Tentative Claim Construction, the Court reviewed the both the evidence surrounding the '371 patent's use of the claim phrase "digital audio tape", and concluded that NICE's proposed construction "gives no meaning to 'audio,' a term included in the disputed phrase." (D.I. 279 at 7.) Accordingly, the Court adopted Witness Systems' proposed construction: "magnetic tape designed for storage of audio in digital form."

During prosecution, NICE specifically distinguished the claimed "digital audio tape" from prior art that included analog "audio tape." To avoid the prior art reference, specifically the Leung reference, NICE argued,

> Step 3 of the claim includes writing data from a buffer onto a ***digital*** audio tape. There is no digital audio tape in Leung et al. What is shown [in Leung] is a tape recorder for cassettes, which of course are ***analog***.

(Ex. G '371 Amendment dated 6-23-94 (WSNSDE008667-70) at 2)(emphasis added).

As a result, NICE disclaimed any coverage for analog equivalents to a "digital audio tape," and NICE is estopped from accusing Witness Systems of infringing the "digital audio tape" limitation via those equivalents.

### 4. NICE Is Estopped from Asserting Infringement by Equivalents of Limitations in the '372 Patent and the '920 Patent.

NICE's infringement expert offered no opinion on infringement under the doctrine of equivalents with respect to any claims of the '372 Patent or the '920 Patent. Accordingly, NICE should be barred from making any arguments with respect to infringement of those patents under the doctrine of equivalents at trial.

## IV. Conclusion

For the foregoing reasons, Witness Systems respectfully requests the Court enter an order *in limine* excluding testimony of the above-named witnesses at trial, precluding NICE from accusing Nortel products of infringement, and precluding NICE from asserting the above-described DOE arguments at trial

Dated: December 19, 2007   FISH & RICHARDSON P.C.

By: /s/ Kyle Wagner Compton
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114

Nagendra Setty (pro hac vice)
Daniel A. Kent (pro hac vice)
Noah C. Graubart (pro hac vice)
FISH & RICHARDSON P.C.
1180 Peachtree Street, N.E., 21st Floor
Atlanta, GA 30309

**ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.**

19

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2007, I electronically filed with the Clerk of Court the **DEFENDANT WITNESS SYSTEMS, INC.'S MOTIONS IN LIMINE** using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel. In addition, the filing will also be sent via hand delivery.

| | |
|---|---|
| Josy W. Ingersoll<br>Melanie K. Sharp<br>Karen E. Keller<br>Mary Dugan<br>Young, Conaway, Stargatt & Taylor, LLP<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899 | *Attorneys for Plaintiffs*<br>*Nice Systems Ltd. and Nice Systems, Inc.* |

I also certify that on December 19, 2007, I have sent by electronic mail and U.S. First Class Mail, the document(s) to the following non-registered participants:

| | |
|---|---|
| Scott G. Lindvall<br>Daniel DiNapoli<br>Joseph M. Drayton<br>Robert R. Laurenzi<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, NY 10022 | *Attorneys for Plaintiffs*<br>*Nice Systems Ltd. and Nice Systems, Inc.* |

/s/*Kyle Wagner Compton*
Kyle Wagner Compton

80053198.doc

1