## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

    *Plaintiffs,*

    v.

WITNESS SYSTEMS, INC.

    *Defendant.*

Civil Action No. 06-311-JJF

## DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF
## DEFENDANT WITNESS SYSTEMS, INC.'S MOTIONS IN LIMINE

I, Kyle Wagner Compton, declare as follows:

1.    I am an Associate with Fish & Richardson P.C., counsel for Defendant Witness Systems, Inc.  I make the following statements based on personal knowledge.

2.    Attached hereto as Exhibit A is a true and correct copy of S. Lindvall's letter to D. Kent dated August 15, 2007.

3.    Attached hereto as Exhibit B is a true and correct copy of the *STS* Transcript of Scheduling Conference, July 18, 2007.

4.    Attached hereto as Exhibit C is a true and correct copy of N. Graubart's letter to S. Lindvall dated March 15, 2007 at 1-2.

5.    Attached hereto as Exhibit D is a true and correct copy of excerpts from the expert report of John Henits.

6.    Attached hereto as Exhibit E is a true and correct copy of the '345 Patent Prosecution History, Second Preliminary Amendment.

7.    Attached hereto as Exhibit F is a true and correct copy of the October 6, 2005 Amendment.

8.    Attached hereto as Exhibit G is a true and correct copy of the '371 Amendment dated June 23, 1994 (WSNSDE008667-70).

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Executed on December 19, 2007.


/s/ Kyle Wagner Compton
Kyle Wagner Compton (#4693)

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2007, I electronically filed with the

Clerk of Court the **DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF**

**DEFENDANT WITNESS SYSTEMS, INC.'S MOTIONS IN LIMINE** using CM/ECF which

will send electronic notification of such filing(s) to the below-listed Delaware counsel.  In

addition, the filing will also be sent via hand delivery.

Josy W. Ingersoll                      *Attorneys for Plaintiffs*
Melanie K. Sharp                      *Nice Systems Ltd. and Nice Systems, Inc.*
Karen E. Keller
Mary Dugan
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

I also certify that on December 19, 2007, I have sent by electronic mail and U.S.

First Class Mail, the document(s) to the following non-registered participants:


Scott G. Lindvall                      *Attorneys for Plaintiffs*
Daniel DiNapoli                        *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022


                                       */s/Kyle Wagner Compton*
                                       Kyle Wagner Compton


80053221.doc

# EXHIBIT A

# KAYE SCHOLER LLP

Scott G. Lindvall
212 836–8700
Fax 212 836–6369
slindvall@kayescholer.com

425 Park Avenue
New York, New York 10022–3598
212 836–8000
Fax 212 836–8689
www.kayescholer.com

August 15, 2007

**VIA EMAIL**

Daniel A. Kent
Fish & Richardson P.C.
1180 Peachtree Street, N.E., 21st Floor
Atlanta, Georgia 30309

         Re:   *STS Software Systems, Ltd. v. Witness Systems, Inc.*
               *Civil Action No. 1:04-CV-2111-RWS (N.D. Ga.)*

Dear Dan:

We write in response to Witness's Notices of Deposition of Moty Cory, Shlomo Shamir, Haim Shani, Eran Porat, and Mordechai Golan served on August 14, 2007.

Before we can provide you with a meaningful response, we must know what you believe the scope of the questioning for each witness to be. We remind you that the Court has reopened discovery on very limited issues and that these depositions will be limited to those narrow issues. This approach is consistent with the position Witness took during Dr. Blair's deposition on August 6, 2007, during which Witness instructed Dr. Blair not to answer questions unrelated to the narrow issue of eWare source code.

In addition, Witness has already taken eight (8) depositions in this case. These additional depositions would exceed the (10) depositions allowed under the Federal Rules. If Witness intends to seek depositions beyond this limit, Witness is required to first obtain leave of Court.

With respect to the individuals noticed, Mordechai Golan is neither an employee nor officer of NICE Ltd. and is not under our control, thus, we are unable to provide him for deposition. Furthermore, we do not understand why the deposition of Mr. Haim Shani, the Chief Executive Officer of NICE Ltd., is necessary as he possesses no unique knowledge relevant to this case that Witness could not readily obtain from other witnesses (i.e. Mr. Shlomo Shamir, NICE's President) also noticed for deposition.

Finally, we are in receipt of your letter from this afternoon which we consider to be Witness's first attempt to confer regarding the scope of discovery. While our position on discovery is set forth in our letters, we believe that a telephone conference may be fruitful. I am available for a telephone conference to discuss these matters tomorrow, August 16, 2007 between 2:00-3:30pm.

---

# KAYE SCHOLER LLP

Daniel A. Kent                              2

Sincerely,

Scott G. Lindvall

# EXHIBIT B

2007-07-18 STS Scheduling Conference.txt

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STS SOFTWARE SYSTEMS,            ) DOCKET NO. 1:04-CV-2111-RWS
                                 )
LTD.                             ) ATLANTA, GEORGIA
                                 ) JULY 18, 2007
         PLAINTIFF               )
                                 )
            V.                   )
                                 )
WITNESS SYSTEMS, INC.            )
                                 )
         DEFENDANT.              )

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              SCOTT G. LINDVALL, ESQ.
                               ANGELA S. BLACKWELL, ESQ.


FOR THE DEFENDANT:             NAGENDRA SETTY, ESQ.
                               CHRISTOPHER O. GREEN, ESQ.
                               NOAH C. GRAUBART, ESQ.


COURT REPORTER:                SHARON D. UPCHURCH
                               2114 U. S. COURTHOUSE
                               ATLANTA, GEORGIA 30303-3361
                               (404) 215-1354


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
PRODUCED BY COMPUTER.


SHARON D. UPCHURCH, OFFICIAL COURT REPORTER

Page 1

2007-07-18 STS Scheduling Conference.txt

12      I THINK ANY OF US WANT IS TO OPEN UP A CAN OF WORMS AND HAVE TO

13      PRODUCE A LOT OF OTHER INFORMATION.  WE'RE OBVIOUSLY MORE THAN

14      HAPPY TO PROVIDE DISCOVERY, FOR EXAMPLE, ON THE LICENSE

15      AGREEMENT.

16              THE COURT:  I THINK THAT'S THE PRIMARY AREA OF

17      DISCOVERY THAT'S OPEN AS A RESULT OF THIS.

18              MR. LINDVALL:  IN FACT, TO SHOW YOU THE IMPORTANCE, I

19      FAILED TO MENTION, MR. SHLOMO SHAMIR WHO'S PRESIDENT OF NICE

20      SYSTEMS, LTD., JUST FLEW IN FROM ISRAEL TODAY --

21              THE COURT:  GOOD AFTERNOON.

22              MR. LINDVALL:  -- IN CONCERN FOR THIS.  AND GENERAL

23      COUNSEL, MR. YECHIAM COHEN, ALSO FLEW IN FROM ISRAEL.

24      MR. SHAMIR WHO WAS PART OF THIS LICENSE AGREEMENT HAS SAID THAT

25      HE CAN MAKE HIMSELF AVAILABLE FOR A DEPOSITION MAYBE NEXT WEEK,


SHARON D. UPCHURCH, OFFICIAL COURT REPORTER

                                                        11


1       AND HE COULD BE A 30(B)(6) DEPONENT ON THAT PARTICULAR SUBJECT

2       AND TAKE CARE OF THAT AREA.

3               WHAT I'M AFRAID OF, WE MAY START SEEKING A LOT OF

4       OTHER AREAS, AND LET ME GIVE YOU AN EXAMPLE.  THIS IS AN ISSUE

5       THAT'S PROBABLY GOING TO COME UP AND WE MIGHT AS WELL BRING IT

6       UP NOW.  WE RECEIVED NICE'S -- I MEAN WITNESS'S ANSWER A COUPLE

7       OF DAYS AGO TO OUR AMENDED COMPLAINT.  IN THAT ANSWER FOR THE

8       FIRST TIME IS A CHARGE OF INEQUITABLE CONDUCT; AND THIS, THE

9       FACTS OF THAT INEQUITABLE CONDUCT CLAIM, WOULD HAVE EASILY BEEN

10      KNOWN TO WITNESS MORE THAN A YEAR AND A HALF AGO.  IT'S BASED

11      ON ANOTHER PATENT, AND THAT PATENT ISSUED BACK IN MARCH OF

12      2006.  AND THE FILE HISTORY WAS AVAILABLE.  THEY KNEW ABOUT

Page 10

2007-07-18 STS Scheduling Conference.txt

SHARON D. UPCHURCH, OFFICIAL COURT REPORTER

42

1    WEARING BOTH HATS AND THAT YOU DIDN'T KNOW THAT BEFORE AND THAT

2    IT COULDN'T HAVE BEEN RAISED BEFORE.  THAT'S WHAT CONCERNS ME

3    AND WHY I WOULD ALLOW YOU TO RAISE IT NOW AND OPEN UP A WHOLE

4    NEW AREA OF DISCOVERY AND I'M THINKING THAT MAY NOT BE PROPER

5    AND IT SHOULDN'T BE IN THE CASE, IT'S TOO LATE.  BUT THAT'S

6    SOMETHING WE WILL ADDRESS.

7         BUT THAT'S MY THINKING IS THAT WE WOULD EXTEND THAT

8    FIRST DATE OUT TO SEPTEMBER 14TH.  THAT WOULD GIVE US A CHANCE

9    TO RESOLVE WHAT DOES NEED TO HAVE DISCOVERY; AND IF UPON

10   RESOLVING THAT I DECIDE YOU NEED ANOTHER WEEK, I CAN GIVE YOU

11   ANOTHER WEEK.  BUT THOSE LATTER DATES I'M PRETTY LOCKED INTO.

12   I WANT TO GET THE EXPERT DISCLOSURES DONE.  I WANT TO GET THE

13   BRIEFING DONE ON THE SCHEDULE THAT I'VE SUGGESTED BECAUSE I

14   REALLY THINK WE NEED TO JUST ABOUT MEET THAT SCHEDULE TO MAKE

15   SURE WE ARE LOOKING AT A MARCH TRIAL DATE.

16        MR. SETTY:  CAN I ASK ONE QUICK QUESTION, YOUR HONOR?

17        THE COURT:  YES.

18        MR. SETTY:  ON THIS QUESTION OF THE DEPOSITIONS, THE

19   DEPOSITIONS WOULD BE RELEVANT WITH OR WITHOUT THE INEQUITABLE

20   CONDUCT ISSUE.

21        THE COURT:  RIGHT.

22        MR. SETTY:  SO GIVEN THAT NICE, LTD., HAS NOW CHOSEN

23   TO BECOME A PLAINTIFF IN THIS FORUM, AM I CORRECT IN

24   UNDERSTANDING THAT THEY WILL BE BRINGING THOSE WITNESSES TO

25   ATLANTA?

SHARON D. UPCHURCH, OFFICIAL COURT REPORTER
Page 40

2007-07-18 STS Scheduling Conference.txt

43

1              THE COURT:  THAT WOULD BE WHAT I WOULD EXPECT, THAT

2    THEY WOULD MAKE THE WITNESSES AVAILABLE HERE FOR DEPOSITION,

3    THOSE THAT ARE APPROPRIATE TO BE DEPOSED.

4              YES, SIR, MR. LINDVALL?

5              MR. LINDVALL:  I DON'T KNOW WHERE TO BEGIN, TO TELL

6    YOU THE TRUTH.  ALL WE WANT TO DO IS A TRIAL DATE; OKAY?  AND

7    I'M WILLING TO BEND OVER BACKWARDS AND EVEN DO THINGS THAT I,

8    IN MY OWN SELF, DISAGREE WITH MR. SETTY JUST TO GET THAT TRIAL

9    DATE.  I PREFER NOT TO HAVE A TRIAL DATE IN THE MIDDLE OF NEXT

10   YEAR.  FEBRUARY 2008, THAT'S WHAT I WOULD LIKE.

11             I CAN SEE WHAT'S GOING TO HAPPEN NOW.  IT'S A

12   SLIPPERY SLOPE HERE.  IT'S BEEN THAT WAY ALL ALONG.  THEY ASK

13   FOR DISCOVERY, THEY GET SOME, MOVE TO COMPEL, BRING SOME

14   MOTIONS, THEN THEY ASK FOR MORE DISCOVERY, AND THE ISSUES

15   CHANGE AGAIN AND THEY ASK FOR MORE DISCOVERY.  AND YOU KNOW

16   WHAT'S GOING TO HAPPEN?  A COUPLE MONTHS FROM NOW WE'RE GOING

17   TO BE BACK HERE, MR. SETTY'S GOING TO HAVE ANOTHER ISSUE TO

18   BRING UP AND HE'S GOING TO ASK FOR A LATER TRIAL DATE; AND IT'S

19   GOING TO KEEP ON GOING, IT'S GOING TO KEEP ON GOING, IT'S GOING

20   TO KEEP ON GOING.  THAT'S ALL THAT'S BEEN HAPPENING.

21             LET ME JUST GO A LITTLE BIT THROUGH THE CHRONOLOGY.

22   PLEASE BEAR WITH ME.  I HAVE TO KIND OF GET THIS OUT OF ME.

23             ON JANUARY 4TH, 2006, THIS COURT GRANTED WITNESS'S

24   MOTION TO COMPEL DISCOVERY ON NICE, LTD.  AS A RESULT OF THAT,

25   WE PRODUCED SOURCE CODE, TECHNICAL DOCUMENTS, FINANCIAL

SHARON D. UPCHURCH, OFFICIAL COURT REPORTER

Page 41

**EXHIBIT C**

# FISH & RICHARDSON P.C.

1180 Peachtree Street
Atlanta, Georgia
30309

Telephone
404 892-5005

Facsimile
404 892-5002

Web Site
www.fr.com

Noah Graubart
404 724-2820

Email
Graubart@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA EMAIL**

March 15, 2007

Scott G. Lindvall, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

Re:    *STS Software Systems Ltd. v. Witness Systems, Inc.*
       USDC-N.D. Ga. Civil Action No.1:04-CV-2111 (RWS)



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Scott:

I write in response to your letter to Nick Setty, dated March 5, 2007. In your letter, you address several issues, including the upcoming schedule for the exchange of expert reports, and the necessity of additional discovery stemming from STS's motion to join NICE as a plaintiff ("Joinder Motion"). As you are aware, Dan Kent addressed certain of the scheduling issues in an email to Rob Laurenzi dated March 13. This letter, therefore, responds to your discussion of outstanding discovery and its potential effect upon the scheduling of expert discovery.

As Witness Systems explained in its opposition to STS's Joinder Motion, the addition of NICE as a party to this case would require significant additional discovery. Topics on which discovery would be necessary include, *inter alia*, (1) competition in the marketplace between NICE's products and Witness Systems' accused products; (2) the detailed technical operation of NICE's embodying products to establish their potential suitability as substitutes for Witness Systems' accused products; (3) the eleventh-hour license purportedly granted to NICE by STS; and (4) the contractual relationships between NICE and Avaya, Nortel and/or Cisco.

Notably, the above-described topics are not specifically relevant to STS's claims against Witness Systems in the absence of NICE's joinder as a co-plaintiff. Accordingly, Witness Systems has no obligation to pursue such discovery unless and until NICE is joined. Indeed, serving discovery requests directly on NICE is not possible unless and until Judge Story grants STS's Joinder Motion and NICE appears before the Court as a party to this case.

Moreover, your letter incorrectly states that Witness Systems "had ample time to obtain such discovery and simply neglected to do so." As you are aware (as evidenced by our numerous exchanges of correspondence on the subject), since October of 2005, Witness Systems has sought the deposition of several NICE

12016301.doc

F I S H & R I C H A R D S O N P.C.

Scott G. Lindvall, Esq.
March 15, 2007
Page 2

employees, including those whose testimony would become especially necessary if
NICE is joined as a co-plaintiff. Despite STS's failed attempt to avoid these
depositions through a motion for a protective order (denied by Judge Story in January
2006), you continue to refuse to provide dates for the deposition of these witnesses.
As Witness Systems explained in its opposition to STS's Joinder Motion, NICE's
potential joinder as a co-plaintiff would necessitate the depositions of, at least, the
four NICE executives who signed the license agreement between STS and NICE:
Haim Shani, Eran Porat, Ran Oz and Shlomo Shamir.

As I wrote to you on February 13, 2007, the deposition notices for Messrs. Oz and
Porat remain outstanding, and STS has failed to provide dates for their deposition,
despite your promise of August 24, 2006 that "STS will advise Witness of the next
date when each witness is scheduled to travel to the United States for business
reasons, at which time Witness may depose that individual in New York." Although
you responded that Witness Systems is free to take these witnesses' depositions in
Israel, STS's attempts to join NICE as a co-plaintiff in this case demonstrate the
inappropriateness of forcing a defendant to travel to a foreign country to depose
employees of a plaintiff choosing to litigate in the courts of this country.
Accordingly, we continue to await your fulfillment of your August promise to
provide dates when each witness will be in the United States.

Because you have not advised us of their presence thus far (over six months since
your promise), we trust that none of the witnesses have been in the United States
since your August 24 letter. Given previous deposition testimony stating that certain
of these witnesses travel to the United States with regularity,[1] we expect their next
travel to the United States cannot be far off.

Lastly, your March 5 letter incorrectly asserts that

> even if Witness were granted an extension of fact discovery to conduct
> very specific and targeted discovery of NICE, there is no reason to
> delay the exchange of opening expert reports because none of the
> discovery Witness seeks is relevant to any issue involving the experts.
> In its opposition to STS's Motion to Join, Witness described the
> discovery it claims to need as relating generally to: (1) the competitive
> nature of Witness and NICE; and (2) the negotiation of the STS/NICE
> license agreement. None of this discovery is relevant to the expert's
> opinion on infringement or validity of the patents at issue.

(S. Lindvall letter to N. Setty dated Mar. 5, 2007 at 1-2 (citation omitted).)

---

[1] (See, e.g., Witness Systems v. NICE Systems, No. 1:04-CV-2531-CAP (N.D. Ga.), Danon Dep.
192:15-18 (stating that Mr. Porat visits NICE's U.S. headquarters once per quarter).)
12016301.doc

FISH & RICHARDSON P.C.

Scott G. Lindvall, Esq.
March 15, 2007
Page 3

In addition to your unduly narrow and restrictive description of the discovery needed should NICE be joined as a co-plaintiff, your assertion ignores the role of expert testimony in establishing, at least, STS or NICE's claimed right to injunctive relief. Patent Local Rule 7.1 requires each party to provide its initial expert witness disclosures "on the issues on which each bears the burden of proof," and allows the opposing party thirty days thereafter to provide expert reports "on the issues on which the opposing party bears the burden of proof." Plainly, if the Court allows NICE's joinder as a co-plaintiff, NICE would bear the burden of establishing its entitlement to injunctive relief, and discovery on that topic would be necessary to the ability of Witness Systems' experts to adequately opine on that issue.

As a result, we maintain our position that if NICE is joined as a party, additional discovery and extension of the expert reporting dates will be necessary. Moreover, if the motion to join NICE remains undecided as the expert reporting dates approach, we will need to further extend those deadlines to allow the joinder issue to be resolved by the Court, and to avoid wasting time and effort on expert reports while the joinder and additional discovery issues are resolved. Please contact me should you have any questions regarding any of the foregoing.

Very truly yours,

Noah C. Graubart

cc: Robert R. Laurenzi, Esq.

12016301.doc

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
NICE SYSTEMS, INC. and                      :
NICE SYSTEMS LTD.,
                                            :     Civil Action No. 06-311-JJF
                    Plaintiffs,
                                            :
             v.
                                            :
WITNESS SYSTEMS, INC,
                                            :
                    Defendant.
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

### EXPERT REPORT OF JOHN HENITS ON INFRINGEMENT ISSUES

### I.    INTRODUCTION

My name is John Henits, and I have been retained on behalf of NICE Systems, Inc. and

NICE Systems, Ltd. (collectively, "NICE") to assess whether or not certain products made and

sold by Witness Systems, Inc. ("Witness") infringe any of the claims of certain patents owned by

NICE.  I understand that the claims and patents at issues are claims 1 and 8 of U.S. Patent No.

5,396,371 (the "'371 patent"), claims 1 and 6 of U.S. Patent No. 7,010,109 (the "'109 patent"),

claims 1, 15, and 33 of U.S. Patent No. 6,775,372 (the "'372 patent"), claims 1, 16, and 21 of

U.S. Patent No. 6,870,920 (the "'920 patent"), claim 6 of U.S. Patent No. 6,249,570 (the "'570

patent"), and claims 14 and 48 of U.S. Patent No. 6,728,345 (the "'345 patent").

A list of materials I have considered in reaching the conclusions described herein is

attached to this report as Exhibit A.  Those materials include, among other things, deposition

transcripts and exhibits in this case and in other cases between NICE and Witness, as well as

solutions made, used, offered for sale, or sold by Witness: Impact 360 Compliance Recorder

(including at least versions 7.6.0-7.7.1) (TDM implementation), ContactStore (including at least

versions 7.0.0–7.2.4), ContactStore Plus, Nortel Contact Recording (TDM implementation), and

Nortel Quality Monitoring (TDM implementation).[3]  "ContactStore for IP" refers to the

---

Q.  Does the compliance recorder under the Impact '360 have those same
capabilities as you just described?
THE WITNESS:  The compliance recorder has the capability of recording the
audio data which might be used by the quality monitoring application to be able
to fulfill those quality monitoring functions.

[3] *See* Calahan Deposition Ex. 210 (identifying versions); *see also,*Kevin Hegebarth Deposition, *NICE Systems, Inc., v. Witness Systems, Inc.,* No. 06-CV-311-JFF (D. Del.), at 87:13-89:2 (August 9, 2007) (describing ContactStore product branding history); *see also,* Hegebarth Deposition Exhibit 718; *see also,* eQuality ContactStore and ContactStore Plus Solutions Guide-Multimedia Recording and Evaluation, p. 5 (September 2003) (Blair Deposition Exhibit 26); *see also,* eQuality ContactStoreIP Sytem Guide, inside front cover (2004) ("The following table shows the Previous Name for a given product, the Rebranded Name and the Version this occurred at...Previous Name: MediaStore or ContactStore- Rebranded Name: eQuality ContactStore") (Bourne Deposition Exhibit 309); *see also,* Nancy Treaster 30(b)(6) Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 107: 11-16 (June 29, 2007):

Q.  What was ContactStore Plus?
A.  ContactStore Plus is the combination of ContactStore plus Balance.  So
where we did not sell a previous Eyretel quality system, we sold the Balance
system on top of voice recording that was captured by
ContactStore.  So it is really a combined product.

*see also,* Nortel Contact Recording, Nortel Quality Monitoring Sales Engineering Technical Overview,  (February 2006) (WSDEPROD 0317200-249); Vision Document- Nortel Contact Recording & Quality Monitoring, v6.1 and v6.2,  (March 7, 2006) (WSDEPROD 0309370-384); Duane Wright Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 246:24-247:25 (May 23, 2007) (mapping the Nortel products to the Impact 360 recording solution using Deposition Exhibit 129); "MEDIA ADVISORY: Workforce Optimization: The Year-in-Review", Witness Systems, Inc. Press Release dated August 21, 2006 found at http://www.witness.com/main.aspx.?pid=403 (stating that market leaders Avaya, BT and Nortel all have OEM agreements to include WFO under their brands, extending Impact 360's footprint as organizations turn to a single provider); Impact 360 Success Story: Loop Customer Management & Yorkshire Water, 2006, found at http://www.witness.com/main.aspx.?pid=218 (stating that eQuality ContactStore was re-branded as Impact 360 Compliance Recording); "Witness Systems Transforms Workforce Optimization Market with Launch of Impact 360 Solution", Witness Systems, Inc. Press Release dated September 27, 2005 found at http://www.witness.com/main.aspx.?pid=258 ("Impact 360's open systems recording platform is also being leveraged through partner solutions from leading companies like Nortel"); Nancy Treaster30(b)(6) Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 78:17-24 (June 29, 2007):

Q.  What resellers of Witness Systems products are there?
A.  In general or in the US?
Q.  In the US?
A.  Black Box is a reseller, Verizon Call Center Services is a reseller, Adtech is
a reseller, Dimension Data is a reseller, of course OEM Partners, Avaya, Nortel.

following VOIP compliance recording solutions made, used, offered for sale, or sold by Witness:

Impact 360 Compliance Recorder (including at least versions 7.7.0-7.7.1) (IP implementation),

ContactStore IP (including at least versions 7.1–7.4.2), ContactStore IP Plus, Nortel Contact

Recording (IP implementation), and Nortel Quality Monitoring (IP implementation).[4]

---

[4] *See* Calahan Deposition Exhibit 210 (identifying versions); *see also,* Kevin Hegebarth Deposition, in *NICE Systems, Inc., v. Witness Systems, Inc.,* No. 06-CV-311-JFF (D. Del. ), at 87:13-89:2 (August 9, 2007) (describing ContactStore product branding history); *see also,* Hegebarth Deposition Exhibit 718; *see also,* Nancy Treaster 30(b)(6) Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 43:20- 24 (June 29, 2007):

> Q.  What's the difference between ContactStore IP and eQuality ContactStore IP if any?
> A.  Branding.
> Q.  Just branding?
> A.  Yes.

*see also,* Unify Solution Installation and Support Guide-ContactStore IP Plus,  p. 3 (June 18, 2003) (WSDEPROD 0762476-480); *see also,* Nancy Treaster 30(b)(6) Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 107: 20-22 (June 29, 2007):

> Q.  And ContactStore IP Plus?
> A.  ContactStore in an IP environment with an eQuality Balance on top of it.

*see also,* John Bourne Deposition, *Witness Systems, Inc. v. NICE Systems, Inc. & NICE Systems, Ltd.,* No. 1:04-CV-2531-CAP (N.D. Ga.), at84:19-23 (February 27, 2007):

> Q.    What would be ContactStore IP Plus, do you know?
> A.    ContactStore IP Plus is a package that includes ContactStore IP and, at this time, eQuality Balance together.

*see also,* Nortel Sales and Marketing Bulletin- Announcing the Introduction of Nortel Contact Recording  6.0 and Nortel Quality Monitoring 6.0 for IP Configurations on Controlled Availability, (January 30, 2006) (WSDEPROD 0317257-276); Nortel Contact Recording, Nortel Quality Monitoring Sales Engineering Technical Overview, (February 2006) (WSDEPROD 0317200-249); Vision Document- Nortel Contact Recording & Quality Monitoring, v6.1 and v6.2,  (March 7, 2006) (WSDEPROD 0309370-384); Impact 360 Success Story: Heritage Trust Federal Credit Union, found at http://www.witness.com/main.aspx.?pid=218 (stating that eQuality ContactStore for IP was re-branded as Impact 360 IP Recording); Duane Wright Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 246:24-247:25 (May 23, 2007) (mapping the Nortel products to the Impact 360 recording solution using Deposition Exhibit 129); "MEDIA ADVISORY: Workforce Optimization: The Year-in-Review", Witness Systems, Inc. Press Release dated August 21, 2006 found at http://www.witness.com/main.aspx.?pid=403 (stating that market leaders Avaya, BT and Nortel all have OEM agreements to include WFO under their brands, extending Impact 360's footprint as organizations turn to a single provider); "Witness Systems Transforms Workforce Optimization Market with Launch of Impact 360 Solution", Witness Systems, Inc. Press Release dated September 27, 2005 found at http://www.witness.com/main.aspx.?pid=258 ("Impact 360's open systems recording platform is also being leveraged through partner solutions from leading companies like Nortel"); Nancy Treaster Deposition 30(b)(6),

> A.  Branding.
> Q.  Just branding?
> A.  Yes.

*see also,* Unify Solution Installation and Support Guide-ContactStore IP Plus,  p. 3 (June 18, 2003) (WSDEPROD 0762476-480); *see also,* Nancy Treaster 30(b)(6) Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 107: 20-22 (June 29, 2007):

> Q.  And ContactStore IP Plus?
> A.  ContactStore in an IP environment with an eQuality Balance on top of it.

*see also,* John Bourne Deposition, *Witness Systems, Inc. v. NICE Systems, Inc. & NICE Systems, Ltd.,* No. 1:04-CV-2531-CAP (N.D. Ga.), at84:19-23 (February 27, 2007):

> Q.    What would be ContactStore IP Plus, do you know?
> A.    ContactStore IP Plus is a package that includes ContactStore IP and, at this
> time, eQuality Balance together.

*see also,* Nortel Sales and Marketing Bulletin- Announcing the Introduction of Nortel Contact Recording  6.0 and Nortel Quality Monitoring 6.0 for IP Configurations on Controlled Availability, (January 30, 2006) (WSDEPROD 0317257-276); Nortel Contact Recording, Nortel Quality Monitoring Sales Engineering Technical Overview, (February 2006) (WSDEPROD 0317200-249); Vision Document- Nortel Contact Recording & Quality Monitoring, v6.1 and v6.2,  (March 7, 2006) (WSDEPROD 0309370-384); Impact 360 Success Story: Heritage Trust Federal Credit Union, found at http://www.witness.com/main.aspx.?pid=218 (stating that eQuality ContactStore for IP was re-branded as Impact 360 IP Recording); Duane Wright Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 246:24-247:25 (May 23, 2007) (mapping the Nortel products to the Impact 360 recording solution using Deposition Exhibit 129); "MEDIA ADVISORY: Workforce Optimization: The Year-in-Review", Witness Systems, Inc. Press Release dated August 21, 2006 found at http://www.witness.com/main.aspx.?pid=403 (stating that market leaders Avaya, BT and Nortel all have OEM agreements to include WFO under their brands, extending Impact 360's footprint as organizations turn to a single provider); "Witness Systems Transforms Workforce Optimization Market with Launch of Impact 360 Solution", Witness Systems, Inc. Press Release dated September 27, 2005 found at http://www.witness.com/main.aspx.?pid=258 ("Impact 360's open systems recording platform is also being leveraged through partner solutions from leading companies like Nortel"); Nancy Treaster Deposition 30(b)(6), *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 78:17-24 (June 29, 2007):

> Q.  What resellers of Witness Systems products are there?
> A.  In general or in the US?
> Q.  In the US?
> A.  Black Box is a reseller, Verizon Call Center Services is a reseller, Adtech is
> a reseller, Dimension Data is a reseller, of course OEM Partners, Avaya, Nortel.

*see also,* John Bourne Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 18:10-16 (May 23, 2007):

> Q.  I believe you testified earlier that MediaStore IP became known as
> ContactStore IP, correct?
> THE WITNESS: Yes.
> Q.Today ContactStore IP falls under the umbrella of the Impact 360 brand
> name?
> A.  Yes.

16

The Witness '371 Accused Products, when used by Witness's customers as described in Witness's product installation guides and user manuals, perform the particular method steps as described below. Also, each of the Witness '371 Accused Products, when used by Witness's customers, include at least one digital audio logger.

| Claim element 1a |
| --- |
| monitoring an audio source, |

The Witness '371 Accused Products each use voice cards (also referred to as telephony interface modules) to monitor analog and/or digital telephone audio, and/or use standard PC Ethernet network interface cards (NIC's) with protocol decoding software for monitoring Internet Protocol (IP) telephony audio.[14]

| Claim element 1b | | |
| --- | --- | --- |
| Claim Text | Term | Court's Construction |
| storing audio data from the audio source in a buffer, | buffer | device in communication with the digital audio tape and the random access storage device that temporarily stores data |

---

[14] *See,* Impact 360 Compliance Recording System Administration Guide Release 7.7.1, p. 14 (September 2006) (Spohrer 30(b)(6) Deposition Exhibit 323); Free Droopy RB-0025/36 Performance and Sizing Supplementary Specifications, Version 1.0, bates p. 1126873 (January 26, 2006) (J. Williams Deposition Exhibit 58); Compliance Recorder 7.7 Installation and Administration Course Module 1: System Administration Instructor Guide, p. 6 (2006) (Spohrer Deposition Exhibit 703); Nortel TDM Recorder System Administration Guide- Product Release 6.0, pp.15, 36 (July 2006) (Bourne Deposition Exhibit 300); Avaya Witness ContactStore for Communication Manager Release 7.3 System Administration Guide, p. 78 (September 2005) (Blair Deposition Exhibit 40) (discloses NIC card between Witness ContactStore for Communication Manager and Avaya Communication Manager for audio input); Witness ContactStore 7.7 for Avaya Communication Manager (CSCM) Technical Note: CSCM 7.7 for Quality Monitoring 7.7.1 (formally eQuality Balance) (Spohrer Deposition Exhibit 704) (Quality Monitoring 7.7.1 can be connected to CSCM 7.7); Avaya Witness Quality for Communication Manager (2004) (WSDEPROD0012562-65) (Quality for Communication Manager works in conjunction with ContactStore for Communication Manager).

| Claim element 6e | | |
|---|---|---|
| Claim Text | Terms | Court's Construction |
| constructing a data representation of a lifetime of the telephone call using data regarding telephony events associated with the telephone call segments of the telephone call, wherein said data representation comprises, for each segment of the call, the location of the stored audio data of that segment and the start time, end time, and duration of that segment | data representation | Digital representation of data. |
| | data representation of a lifetime of the telephone call | Call-centric data record of the telephone call that includes a detailed cumulative start-to-finish history of a telephone call, including all telephony events and participants. |
| | constructing a data representation of a lifetime of the telephone call using data regarding telephony events associated with the telephone call segments of the telephone call | Plain meaning. |

Once all of the telephone call segments related to a telephone call within the CSCM are identified, a data representation of a lifetime of that call can be constructed from the data regarding telephony events associated with each call segment.  The Court has construed the claim term "data representation" to mean "digital representation of data," and the term "data representation of a lifetime of the telephone call" as "call-centric data record of the telephone call that includes a detailed cumulative start-to-finish history of a telephone call, including all telephony events and participants."  Under the Court's constructions, the CSCM, Balance and ContactStore systems meet the requirements of this claim, either literally or under the doctrine of equivalents.

---

D:\eQuality_eWare\7.1.0.30\Core\EWare2\Src Code\Reply Studio 6.3 Old\Hartfold\ETN702.ZIP . EWARE2 Default Browse Query.sql (source code).

As the Court explains in its Memorandum on Tentative Claim Construction, a call-centric data record of the telephone call is a "compilation of data," which is related to the same telephone call. (Memo at 17). The CSCM, Balance and ContactStore systems all construct a compilation of data related to one telephone call from start to finish, including all telephony events and participants. The compilation of data or the data record includes call segments of a call that are linked together by an identifier. For example, as discussed above, the CSCM system captures data regarding telephony events related to each segment of a telephone call and tags each segment of the call with the same unique identifier. The data related to each call segment is placed in an .xml file, which contains the location of the audio data with which it is associated, as well as the unique identifier.[168] The complete set of .xml files is a data representation of the lifetime of a telephone call.[169] Additionally, the data in the .xml file is eventually copied into the recorder's database. The information in the database related to the telephone call can be linked together using the unique identifier. Since all of the call segments are linked by the unique identifier, a user who finds one call segment in the system's search and replay mechanism, "can easily find the other segments by clicking on the link in the [unique identifier column]."[170] The data related to a telephone call in a recorder's database is another representation of a lifetime of a telephone call. Also, applications in the system, such as Viewer can obtain the call segments that relate to one telephone call from the system's database and merge them into one result set.[171]

---

[168] *See* Witness ContactStore for Communication Manger Release 7.3 System Administration Guide, p. 37 (Spohrer 30(b)(6) Ex. 322) ("The .xml files contain details about the recorded call segments. . . . Within each .xml file there [is]: . . . A link to the audio files."); *See e.g.* cscm_source/cscmmain/src/com/swhh/cscm/calldetails/Recording.java (source code).
[169] *See* Witness ContactStore for Communication manager, Release 7.3, Prerequisites Guide (NSDE002215-296), p. 20 (September 2005 ) ("the details of each recording are inserted into a database (PostgreSQL) for ease of retrieval.").
[170] Witness ContactStore for Communication Manager, Release 7.7, Planning, Installation and Administration Guide (WSISTS063087-359), p. 34 (November 2006).
[171] Witness ContactStore for Communication Manager, Release 7.7, Planning, Installation and Administration Guide (WSISTS063087-359), p. 34 (November 2006); *see, generally,* and Rover LRUC905 Search and Replay Contacts

125

In some systems, the .xml file may not contain the location of the audio data with which it is associated. Nonetheless, these systems meet this claim element under the doctrine of equivalents. The .wav of every call segment and its associated .xml file are related by a common file name, which is referred to as INUM.[172] Regardless of whether or not a system stores the location of the audio of a particular call segment in the .xml file, both types of systems achieve the same purpose or function (creating a relationship between the telephony data and the location of the audio file), in substantially the same way (by storing data regarding telephony events for a call segment and the location of the audio for that segment in the same storage device), to achieve substantially the same result (the ability to identify the telephony event data of a call segment and the location of the related audio). The function, way and result of both the systems and the claim element are still the same, regardless of whether the .xml file contains the location of the audio or an INUM is used to relate the two. It is merely a matter of design choice. Thus, there is equivalence and the claim element is satisfied. The differences between the equivalent and the claim element are insubstantial and interchangeable to one of ordinary skill in the art.

To the extent that "data record" is interpreted as limited to one or more contiguous rows of data in a database, the CSCM, Balance and ContactStore systems nevertheless meet the requirements of this claim element under the doctrine of equivalents. Regardless of whether the system stores the data of all call segments of a telephone in a single location or relates the data of multiple call segments stored in multiple locations by a common identifier, the systems achieve the same purpose or function (the preservation of data related to a telephone call), in

---

from Viewer (March 8, 2005) (WSDEPROD1517850-861) *see also* Duane Sherrington Wright Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 203:24 - 204:22 (May 23, 2007)

[172] *See* Marc Calahan Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 46:5 - 46:15 (June 28, 2007).
*See also* Duane Sherrington Wright Deposition, *NICE Systems, Inc. & NICE Systems, Ltd. v. Witness Systems, Inc.,* No. 06-CV-311-JJF (D. Del.), at 128:12 - 129:14 (May 23, 2007).

substantially the same way (by storing the call data in the same storage device in a manner so that there is an identifiable relationship between each piece of data related to a single call), to achieve substantially the same result ( the ability to identify the stored data that relates to the same telephone call).  One skilled in the art would understand that one could design the system to either store  the data of all call segments of a telephone in a single location, or simply relate the data of multiple call segments store in multiple locations by a common identifier - this is merely a choice of design.  The function, way and result of both the systems and the claim element are still the same, regardless of the method of storage.  As long as all information that relates to the same telephone call can be identified, there is a logical equivalence and the claim element is satisfied.  The differences between the logical equivalent and the claim element are insubstantial and interchangeable to one of ordinary skill in the art.

To the extent that the systems do not store the start time, end time and duration of the call segments, these systems nevertheless, meet this claim element under the doctrine of equivalents. Regardless of whether all three pieces of information are stored, or just two of these pieces, the systems achieve the same purpose or function (reconstructing a data representation of an entire conversation), in substantially the same way (preserving data regarding when the segments occurred and for how long), to achieve substantially the same result (the ability to recreate the entire data representation).  The duration of the call can be calculated from the start and end time, the end time can be calculated from the start time and duration and the start time can be calculated from the end time and duration.  Thus, there is equivalence and the claim element is satisfied.  The differences between the equivalent and the claim element are insubstantial and interchangeable to one of ordinary skill in the art.

To the extent that the examples discussed above are not data representations because they do not contain all telephony events, they still meet this claim element under the doctrine of equivalents. The accused systems store telephony events sufficient to reconstruct the telephone call and achieve the same purpose or function (identification of an action or occurrence related to a conversation between a business entity and a caller), in substantially the same way (storage of data sufficient to conclude the an action or occurrence took place), to achieve substantially the same result (the ability to determine that the action or occurrence related to a conversation between a business entity and a caller did in fact happen). The function, way and result of both the systems and the claim element are the same. Thus, there is a equivalence and the claim element is satisfied. The differences between the equivalent and the claim element are insubstantial and interchangeable to one of ordinary skill in the art.

**EXHIBIT E**

AO                                    2645 /38

EXPRESS MAIL NO.: EL 501 640 851 US

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application of: GLOWNY et al.

Serial No.: 09/876,979                    Group Art Unit: 2645

Filed: 06/08/2001                         Examiner: Not yet assigned

For:   A SYSTEM AND METHOD              Attorney Docket No.: 8740-062
       FOR RECORDING AND
       STORING TELEPHONE CALL
       INFORMATION

SECOND PRELIMINARY AMENDMENT

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

Please enter the following amendments:            RECEIVED

                                                  JUL 2 6 2001

In the claims                                     Technology Center 2800

Please add the following claims:

        35.    A system for recording information regarding telephone calls with three or
more participants and comprising one or more telephone call segments, comprising:

               (a) a first memory having one or more locations storing audio data of
telephone call segments;

               (b) a second memory having one or more locations storing data regarding
telephony events associated with telephone call segments; and

               (c) a processor programmed to:

                       (i) identify telephone call segments that relate to the same telephone
call, and

                       (ii) construct data representations of lifetimes of telephone calls that
have three or more participants, wherein said data representations are constructed using data
regarding telephony events associated with telephone call segments.

NY2 - 1121113.1

36.    The system of claim 35 wherein the data representation of each telephone call comprises

(i) a list of participants in the telephone call;

(ii) a list of telephony events regarding the call;

(iii) a list containing the time each telephony event occurred; and

(iv) the start and end time of the call.

37.    The system of claim 35 wherein the data representation of each telephone call comprises, for each segment of the call, the location of the stored audio data of that segment.

38.    The system of claim 35 wherein the first memory and the second memory are the same.

39.    The system of claim 35 wherein the processor is comprised of a plurality of physically separated components.

40.    The system of claim 37 wherein the location of the stored audio data of each segment comprises a location of a .WAV file containing the audio data.

41.    The system of claim 40 wherein the data representation of a telephone call further comprises an offset within the .WAV file to the start of the stored audio data.

42.    The system of claim 35 wherein the data regarding telephony events is received from a plurality of sources connected to a telephone switching environment.

43.    The system of claim 35 further comprising display software that uses said data representation to display a graphical representation of said telephone call.

44.    The system of claim 36 further comprising display software that uses a data representation of a telephone call to display a graphical representation of said telephone call.

NY2 - 12211 13.2

45.    The system of claim 44 wherein the graphical representation comprises a representation of each segment of the call.

46.    The system of claim 44 wherein the graphical representation comprises a representation of the length of time of each segment of the call.

47.    The system of claim 43 wherein the display software further displays a table comprising data from the data representation.

48.    A method for recording information regarding telephone calls with three or more participants and comprising one or more telephone call segments, comprising:

(a) receiving audio data regarding one or more telephone call segments;

(b) receiving data regarding telephony events associated with said telephone call segments;

(c) storing the received audio data regarding telephone call segments;

(d) storing the received data regarding telephony events associated with said telephone call segments;

(e) identifying telephone call segments that relate to the same telephone call; and

(f) constructing data representations of lifetimes of telephone calls, wherein said data representations are constructed using data regarding telephony events associated with telephone call segments.

49.    The method of claim 48 wherein each data representation of a telephone call comprises:

(i) a list of participants in the telephone call;

(ii) a list of telephony events regarding the call;

(iii) a list containing the time each telephony event occurred; and

(iv) the start and end time of the call.

50.    The method of claim 48 wherein each data representation of a telephone call comprises, for each segment of the call, a location of stored audio data of that segment.

NY2 - 12111121

WSNSDE0009488

51.   The method of claim 48 wherein the received audio data and the data regarding telephony events are stored in the same memory.

52.   The method of claim 48 wherein each data representation is constructed by a plurality of physically separated processors.

53.   The method of claim 50 wherein the location of the stored audio data of each segment comprises a location of a .WAV file containing the audio data.

54.   The method of claim 53 wherein a data representation further comprises an offset within the .WAV file to the start of the stored audio data.

55.   The method of claim 48 wherein data regarding telephony events is received from a plurality of sources connected to a telephone switching environment.

56.   The method of claim 48 further comprising the step of using a data representation of a telephone call to display a graphical representation of the telephone call.

57.   The method of claim 49 further comprising the step of using said a data representation of a telephone call to display a graphical representation of the telephone call.

58.   The method of claim 57 wherein the graphical representation comprises a representation of each segment of the call.

59.   The method of claim 57 wherein the graphical representation comprises a representation of the length of time of each segment of the call.

60.   The method of claim 56 further comprising the step of displaying a table comprising data from the data representation.

NY2 - 1221113.1

WSNSDE0009489

61.    A system for recording information regarding telephone calls comprising one or more telephone call segments, wherein said calls comprise calls wherein at least one participant participates in a plurality of segments, comprising:

(a) a first memory having one or more locations storing audio data regarding telephone call segments;

(b) a second memory having one or more locations storing data regarding telephony events associated with telephone call segments; and

(c) a processor programmed to:

(i) identify telephone call segments that relate to the same telephone call;

(ii) identify multiple call segments that have the same participant;  and

(iii) construct data representations of lifetimes of telephone calls using data regarding telephony events associated with telephone call segments.

62.    The system of claim 61 wherein a data representation of a telephone call comprises:

(i) a list of participants in the telephone call;

(ii) a list of telephony events regarding the call;

(iii) a list containing the time each telephony event occurred; and

(iv) the start and end time of the call.

63.    The system of claim 61 wherein each data representation of a telephone call comprises, for each segment of the call, a location of the stored audio data of that segment.

64.    The system of claim 61 wherein the first memory and the second memory are the same.

65.    The system of claim 61 wherein the processor is comprised of a plurality of physically separated components.

66.    The system of claim 63 wherein the location of the stored audio data of each segment comprises a location of a .WAV file containing the audio data.

NY2 - 1221113.1

WSNSDE0009490

67. The system of claim 66 wherein a data representation of a telephone call further comprises an offset within the .WAV file to the start of the stored audio data.

68. The system of claim 61 wherein data regarding telephony events is received from a plurality of sources connected to a telephone switching environment.

69. The system of claim 61 further comprising display software that uses a data representation of a telephone call to display a graphical representation of said telephone call.

70. The system of claim 62 further comprising display software that uses a data representation of a telephone call to display a graphical representation of said telephone call.

71. The system of claim 70 wherein the graphical representation comprises a representation of each segment of the call.

72. The system of claim 70 wherein the graphical representation comprises a representation of the length of time of each segment of the call.

73. The system of claim 69 wherein the display software further displays a table comprising data from the data representation.

74. A method for recording information regarding telephone calls comprising one or more telephone call segments, wherein said calls comprise calls wherein at least one participant participates in a plurality of segments,, comprising:

(a) receiving audio data regarding one or more telephone call segments and data regarding telephony events associated with said telephone call segments;

(b) storing the received audio data regarding telephone call segments;

(c) storing the received data regarding telephony events associated with said telephone call segments;

(d) identifying telephone call segments that relate to the same telephone call

(e) identifying multiple call segments that have the same participant; and

NY2 - 1221113.1

(f) constructing data representations of lifetimes of telephone calls, wherein each data representation of a telephone call is constructed using data regarding telephony events associated with telephone call segments of the telephone call.

75.    The method of claim 74 wherein a data representation of a telephone call comprises:

(i) a list of participants in the telephone call;

(ii) a list of telephony events regarding the call;

(iii) a list containing the time each telephony event occurred; and

(iv) the start and end time of the call.

76.    The method of claim 74 wherein a data representation of a telephone call comprises, for each segment of the call, a location of the stored audio data of that segment.

77.    The method of claim 74 wherein the received audio data and the data regarding telephony events is stored in the same memory.

78.    The method of claim 74 wherein a data representation of a telephone call is constructed by a plurality of physically separated processors.

79.    The method of claim 76 wherein a location of stored audio data of each segment comprises the location of a .WAV file containing the audio data.

80.    The method of claim 79 wherein a data representation of a telephone call further comprises an offset within the .WAV file to the start of the stored audio data.

81.    The method of claim 74 wherein data regarding telephony events is received from a plurality of sources connected to a telephone switching environment.

82.    The method of claim 74 further comprising the step of using a data representation of a telephone call to display a graphical representation of said telephone call.

NY2 - 1211133.1

WSNSDE0009492

83.    The method of claim 75 further comprising the step of using a data representation of a telephone call to display a graphical representation of said telephone call.

84.    The method of claim 83 wherein the graphical representation comprises a representation of each segment of the call.

85.    The method of claim 83 wherein the graphical representation comprises a representation of the length of time of each segment of the call.

86.    The method of claim 82 further comprising the step of displaying a table comprising data from the data representation.

NY2 - 1221113.1.

**Remarks**

Claims 1-5, 8-10, 13-22, 25-27, 30-34, and 35-86 are now pending in the subject application.

In an Office Action mailed August 30, 2000, in the case of Application No. 09/328,299, of which the subject application is a continuation, the Patent Office rejected claims 1-5, 8-10, 13-22, 25-27, and 30-34 under 35 U.S.C. § 102(b) or 35 U.S.C. § 103(a). Those same claims, with the same claim numbers, are now pending in the subject continuation application. Therefore, Applicants submit the following remarks.

The August 30, 2000, Office Action ("the Office Action") rejected claims 1, 3-5, 10, 18, 20-22, and 27 under 35 U.S.C. § 102(b) as anticipated by U.S. Pat. No. 5,533,103, to Peavey et al. ("Peavey").

The Office Action states that:

> The claims read on Peavey as follows: Peavey teaches (Abstract: figures 1, 3, 4, 5; col.2,ln.30-45; col.3,ln.10-47; col.4,ln.17-65; col.5,ln.16-48; col.8,ln.17-col.9,ln.47; col.11,ln.39-52) a system, method, program and software including for recording telephone call information in first and second memory which are the same device, and a processor for reconstruction of the telephone by use thereof, the data representation includes location of each segment as required for playback thereof, the processor is comprised of plural components, the data of telephony events is received from the a plurality of sources connected to a telephone switching environment (the users).

Peavey does not anticipate the claimed invention because Peavey does not teach a system, method, program, or software including for recording telephone call information regarding telephony events, nor for using data regarding telephony events to associate telephone call segments of the telephone call to form a data representation of a lifetime of the telephone call. In addition, Peavey does not teach the storing in memory of received telephony events from plurality of sources.

Peavey teaches the recording of outgoing telephone calls using the customer's telephone number or a separate customer identification number as a key to associate the recording of the telephone call with the customer data record (col.3, ln.48 - col.4, ln.48). Peavey's use of a telephone number as a key for a telephone call recording does not anticipate the claimed invention. The claimed invention has the limitation that the processor uses data regarding telephony events associated with the telephone call segment to construct a data representation of a lifetime of the telephone call. Peavey does not anticipate the claimed

NY2 - 1221103.1

invention because the telephone number is not a telephony event. The telephone number is not an action or occurrence that relates to telephony that was detected by a computer. The telephone number is just an identifier that is retrieved from a database. Calling the telephone number a telephony event would be similar to calling a basketball player's number a basketball event. Michael Jordan dunking the ball is a basketball event. His player number 23 is not.

Further, Peavey does not create a data representation of the lifetime of a telephone call. The only telephony-related data Peavey stores is the customer's telephone number and the trunk the telephone call originated from (col. 8, ln. 18-31). The combination of these pieces of information does not provide enough information to represent the lifetime of a call. Much like knowing the home address and phone number of a person does not give a representation of his lifetime, knowing the telephone number and originating trunk does not give a representation of a telephone call's lifetime.

Moreover, Peavey does not anticipate the receiving of data regarding telephony events from a plurality of sources connected to a telephone switching environment. Peavey does not teach the storing of the signal, from the agents to the call processors, that indicates the call has ended. In fact, none of the information stored by Peavey's method in the customer data records qualifies as telephony data. Transmittal of customer data records from the agents' computers to the call processor does not anticipate the claimed invention. Since the pieces of information used by Peavey do not contain telephony event information that can be used to construct a data representation of a lifetime of a telephone call, Peavey does not anticipate the claimed invention.

In rejecting claims 13, 17, 30, and 34 under 35 U.S.C. 103(a), as being unpatentable over Peavey in view of Jorgensen (U.S. Pat. No. 5,867,559), the Office Action states:

> Jorgensen teaches (col.3,ln.34-65; col.4,ln.27-col.5,ln.8) details of the verification process including the playback process using file locations, displaying of graphical representations of the telephone call of at least one segment, displaying data representative of a table of the call record as by display of the record itself on computer screen for verification.

Jorgensen does not teach the displaying of graphical representations of the telephone call, nor of displaying data representative of a table of the call record as by display of the record itself. Because Jorgensen does not teach these elements of the claimed invention, and because Peavey does not disclose the elements of the claimed invention alleged by the Office

NY2 - 1221113.1

WSNSDE0009495

Action, a person skilled in the art would not find the claimed invention obvious with knowledge of Jorgensen in view of Peavey.

Jorgensen teaches a system of validation that displays a customer data record while allowing the playback of a conversation between the customer and an agent (col.3, ln.66 - col.4, ln.11). The displaying of the customer data record does not constitute a graphical representation of the telephone call nor a displaying of a table comprising data from the data representation. The customer data record contains information regarding the customer, not the call. This information could include data such as the customer's address, account number, and purchases. Peavey and Jorgensen, either separately or together, do not disclose any list of information that would enable the customer data record to provide a graphical representation of the telephone call. The lack of any telephony event data in the customer data record also reveals the inability to display a graphical representation of a telephone call. Without knowing what telephony events occurred during a telephone call, a graphical representation cannot be made. Because Jorgensen and Peavey do not teach the graphical representation of a telephone call, one ordinarily skilled in the art would not find the claimed invention obvious. Moreover, the Office Action fails to cite any motivation in the art at the time of the invention to combine Peavey and Jorgensen.

In rejecting claims 2, 8, 9, 19, 25, and 26 under 35 U.S.C. 103(a) as being unpatentable over Peavey in view of Brady (U.S. Pat. Num. 5,982,857), the Office Action states:

> It would have been obvious to one of ordinary skill in the art at the time the invention was made to enable the system of Peavey to include[] all of a list of participants and a list of telephony events and a list for the time of each telephony event and the start and end time of the call as taught by Brady for the purpose of enabling the complete verification of certain parts of the telephone record, as well as to use a .WAV file containing the audio with the required offset data to determine start and end points as taught by Brady for the purpose of using a well known file format which would be widely compatible between different systems.

The rejected claims are patentable because, *inter alia*, and in addition to the reasons described above, there is no cited suggestion or motivation in the art at the time of the invention to modify Peavey in view of Brady, as required by MPEP § 2143. Also, Brady does not teach of using a .WAV file to store the audio.

NY2 - 1221113.1

The MPEP establishes three criteria to establish a prima facie case for obviousness. The first of these criteria, that a suggestion or motivation to modify is needed in the prior art, is explained as follows:

> Obviousness can only be established by combining or modifying the teachings of the prior art to produce the claimed invention where there is some teaching, suggestion, motivation to do so found either in the references themselves or in the knowledge generally available to one of ordinary skill in the art. *In re Fine*, 837 F.2d 1071, 5 USPQ2d 1596 (Fed. Cir. 1988); *In re Jones*, 958 F.2d 347, 21 USPQ2d 1941 (Fed. Cir. 1992)[1].

Peavey does not teach, suggest, or motivate the combination with Brady, and the Office Action did not offer sufficient evidence that knowledge generally available to one of ordinary skill in the art would teach, suggest, or motivate this merger. The only explanation to suggest the modification given by the Office Action is "for the purpose of enabling the complete verification of certain parts of the telephone record." However, the verification process in Peavey only covers the verification of the customer data record. Peavey does not make the suggestion of verifying telephony events, nor for verifying the start and end time of the call.

Brady does not teach of using the .WAV file format to store its audio. Brady teaches using the .VOX file format (col.4, ln.50).

In rejecting claims 14-16 under 35 U.S.C. 103(a) as being unpatentable over Peavey in view of Brady and further in view of Jorgensen, the Office Action states:

> It would have been obvious to one of ordinary skill in the art at the time the invention was made to enable the system of Peavey modified in view of Brady to retrieve data for the verification process including the playback process as taught by Jorgensen, displaying of graphical representations of the telephone call of at least one segment as taught by Jorgensen, and display data representative of a table of the call record as taught by Jorgensen for the purpose of enabling the verification system described by Peavey modified in view of Brady to retrieve and verify the updated records recorded thereby.

The rejected claims are patentable because, as shown above, there is no suggestion or motivation to modify Peavey in view of Brady as required by MPEP § 2143. As also shown above, Jorgensen does not teach the display of a graphical representation of a phone call, but of a customer data record. Because Jorgensen does not teach the representation of a phone call, it would not have been obvious to one ordinarily skilled in the art to modify Peavey in view of Brady to have a graphical representation of a telephone call, especially when the

---

[1] MPEP 2143.01.

NY2 - 12211 3.1

graphical representation comprises a representation of each segment of the call or where the graphical representation comprises a representation of the length of time of each segment of the call.

Moreover, the Patent Office is not allowed to use hindsight to determine obviousness. In particular, applicant's invention cannot be used as a roadmap to combine disparate references. The most egregious example of this practice would be to say: "It would be obvious to one skilled in the art at the time of the invention, motivated to create applicant's claimed invention, to combine the teachings of A and B." Clearly such an approach is not permitted. Applicants are confident that the Patent Office will endeavor to cite a motivation *in the prior art* to combine cited references, and will not fabricate a motivation to combine references from applicants' patent application and claims.

In view of the above amendments and remarks, Applicants believe the subject application has been placed in condition for allowance, and such action is respectfully requested. Please charge appropriate fees, if any, to Deposit Account 16-1150.

Respectfully submitted,

*Steven S. Underwood* (Reg. No. 47,205)

Date: July 23, 2001

For Edmond R. Bannon                                    32,110
PENNIE & EDMONDS LLP                            (Reg. No.)
1155 Avenue of the Americas
New York, NY 10036
(212) 790-9090

RECEIVED

JUL 2 6 2001

Technology Center 2600

MAIL DATE CANCELLED

NY2-1221115.1

WSNSDE0009498

# EXHIBIT F

P18216.A07                                     033311202559US2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Hagay GRITZER et al.

                                          Tech. Center: 2642

Appl. No.:    10/906,962

                                          Examiner:    Bing Q. BUI

Filed    :    March 14, 2005

                                          Confirmation No.: 3962

For      :    DIGITAL RECORDING OF IP BASED DISTRIBUTED SWITCHING PLATFORM

### AMENDMENT UNDER 37 C.F.R. 1.111

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Sir:

        Responsive to the non-Final Official Action of June 6, 2005, reconsideration and

withdrawal of the rejections made therein are respectfully requested, in view of the following

amendments and remarks.

        Inasmuch as the three-month shortened statutory period set in the Office action

expired on September 6, 2005, Applicant hereby requests an extension of one (1) month, i.e.,

from September 6, 2005 to October 6, 2005. If for any reason the fee submitted herewith is

deemed insufficient, the Director is hereby authorized to charge any fees necessary to

preserve the pendency of this application to deposit account No. 50-2929.

10/11/2005 NDEYEKE1 00000107 10906962

01 FC:1202                    1950.00 DP
02 FC:1251                    120.00 DP

-1-

WSNSDE0010597

P18216.A07                                    033311202559US2

In response to the Official Action mailed on June 6, 2005, please enter the following

amendment which has been prepared in accordance with the requirements of 37 C.F.R.

1.121, in which:

Amendments to the **Claims** begin on page 3 of this paper, and

**Remarks** begin on page 24 of this paper.

-2-

WSNSDE0010598

P18216.A07                                    033311202559US2

## LISTING OF THE CLAIMS

Upon entry of this Amendment, the listing of claims shall be as follows:

Claims 1-55 (Cancelled)

56. (Currently Amended) A method for recording at least a portion of one or more of a plurality of IP data sessions, each being between at least a first communication device and a second communication device through a network by a recording device, comprising for each IP data session:

initiating the data session by said first communication device with said second communication device;

implementing the data session as a conference call through a conference controller such that said first and second communication devices are connected, respectively, as first and second participants;

using the conference controller, selectively entering the recording device to said conference call as an additional participant, wherein the recording device is distinct from the first and second communication devices yet receives as the additional participant at least the portion of the IP data session from each of the first and second participants; and

recording at least the portion of the IP data session received as the additional participant of through said conference call using said recording device.

57. (Previously Presented) The method of claim 56, wherein the step of selectively

-3-

WSNSDE0010599

PI8216.A07                                              033311202559US2

entering the recording device to said conference call includes the step of directing the recording device to enter said conference call as the additional participant when a data session has been initiated.

58. (Previously Presented)  The method of claim 56, including the additional step of permitting a user of at least one of the first and second communication devices to determine whether the session is to be recorded prior to entering the recording device as the additional participant.

59. (Previously Presented)  The method of claim 56, wherein the connection of the second communication device is established by the conference controller by:

passing telephone numbers to a gatekeeper for performing IP address resolution, and

using a resolved IP address of the second communication device for connecting the second communication device to the conference call.

60. (Previously Presented)  The method of claim 56, wherein the step of selectively entering the recording device to said conference call is in response to a command that the data session is to be recorded.

-4-

WSNSDE0010600

P18216.A07                         033311202559US2

61. (Previously Presented) The method of claim 60, including the additional step of providing the command from a scheduler.

62. (Previously Presented) The method of claim 61, including the additional step of locating the scheduler with the recording device.

63. (Previously Presented) The method of claim 61, including the additional step of analyzing information about the IP data session at the scheduler to determine whether the IP data session is to be recorded.

64. (Previously Presented) The method of claim 63, wherein the information includes the identity of at least one of the first and second communication devices.

65. (Previously Presented) The method of claim 56, wherein the IP data session is either an IP telephony session or an IP multimedia session.

66. (Previously Presented) The method of claim 56, wherein the step of initiating the data session is detected by a recording agent, and wherein said recording agent contacts the recording device.

WSNSDE0010601

P18216.A07                                              033311202559US2

67. (Previously Presented)  The method of claim 56, wherein said conference controller is a MCU.

68. (Previously Presented)  The method of claim 56, wherein the conference controller implements said conference call in response to a request to initiate the conference call.

69. (Previously Presented) The method of claim 68, wherein the request is from at least one of the recording device, the first communication device, the second communication device, and an other component on the network.

70. (Previously Presented)  The method of claim 56, wherein said first communication device is a gateway for receiving communication through a PSTN.

71. (Previously Presented) The method of claim 56, wherein the recording device joins the data session performed through a hunt group.

72. (Previously Presented) The method of claim 71, including the additional step of

-6-

WSNSDE0010602

PI8216.A07                                    033311202559US2

identifying the hunt group using a gatekeeper.

73. (Previously Presented)  The method of claim 56, wherein at least one of the first communication device and the second communication device is a non-IP telephony device.

74. (Previously Presented)  The method of claim 73, wherein the step of selectively entering the recording device to said conference call includes the step of directing the recording device to enter said conference call as the additional participant when a data session has been initiated.

75. (Previously Presented)  The method of claim 73, wherein the connection of the second communication device is established by the conference controller by:
      passing telephone numbers to a gatekeeper for performing IP address resolution, and
      using a resolved IP address of the second communication device for connecting the second communication device to the conference call.

76. (Previously Presented)  The method of claim 73, wherein the step of selectively entering the recording device to said conference call is in response to a command that the data session is to be recorded.

-7-

WSNSDE0010603

P18216.A07                                     033311202559US2

77. (Previously Presented) The method of claim 76, including the additional step of providing the command from a scheduler.

78. (Previously Presented) The method of claim 77, including the additional step of locating the scheduler with the recording device.

79. (Previously Presented) The method of claim 77, including the additional step of analyzing information about the IP data session at the scheduler to determine whether the IP data session is to be recorded.

80. (Previously Presented) The method of claim 79, wherein the information includes the identity of at least one of the first and second communication devices.

81. (Previously Presented) The method of claim 73, wherein the step of initiating the data session is detected by a recording agent, and wherein said recording agent contacts the recording device.

82. (Previously Presented)  The method of claim 81, wherein said conference

-8-

P18216.A07                                              033311202559US2

controller is a MCU.

83. (Previously Presented) The method of claim 81, wherein the conference controller implements said conference call in response to a request to initiate the conference call.

84. (Previously Presented) The method of claim 73, wherein the recording device joins the data session performed through a hunt group.

85. (Previously Presented) The method of claim 84, including the additional step of identifying the hunt group using a gatekeeper.

86. (Previously Presented) The method of claim 56, including the additional steps of passing telephone numbers to a gatekeeper for performing IP address resolution and using a resolved IP address of the second communication device in connecting the second communication device to the conference call, wherein the step of selectively entering the recording device to said conference call includes the step of directing the recording device to enter said conference call as the additional participant when a data session has been initiated.

87. (Previously Presented) The method of claim 86, wherein the recording device is

-9-

WSNSDE0010605

P18216.A07                                          0333112022559US2

directed to enter said conference call in response to a command that the data session is to be recorded.

88. (Previously Presented)  The method of claim 87, including the additional steps of:
providing the command from a scheduler; and
analyzing information about the IP data session at the scheduler to determine whether the IP data session is to be recorded.

89. (Previously Presented)  The method of claim 88, wherein the information includes the identity of at least one of the first and second communication devices.

90. (Previously Presented)  The method of claim 56, wherein the step of selectively entering the recording device to said conference call includes the step of directing the recording device to enter said conference call as the additional participant in response to a command that the data session is to be recorded.

91. (Previously Presented)  The method of claim 90, including the additional steps of:
providing the command from a scheduler; and
analyzing information about the IP data session at the scheduler to determine

-10-

WSNSDE0010606

P18216.A07                                           0333112025S9US2

whether the IP data session is to be recorded.

92. (Previously Presented) The method of claim 91, wherein the information includes the identity of at least one of the first and second communication devices.

93. (Previously Presented) The method of claim 56, including the additional steps of:

detecting the step of initiating the data session using a recording agent,

contacting the recording device using the recording agent, and

receiving a request to initiate the conference call and performing the implementing step in response to the request,

wherein the step of selectively entering the recording device to said conference call includes the step of directing the recording device to enter said conference call as the additional participant when a data session has been initiated.

94. (Previously Presented) The method of claim 93, including the additional steps of passing telephone numbers to a gatekeeper for performing IP address resolution and using a resolved IP address of the second communication device in connecting the second communication device to the conference call.

95. (Previously Presented) The method of claim 93, wherein the recording device is

-11-

WSNSDE0010607

P18216.A07                                              033311202559US2

directed to enter said conference call in response to a command that the data session is to be recorded.

96. (Previously Presented) The method of claim 93, including the additional steps of:

providing the command from a scheduler; and

analyzing information about the IP data session at the scheduler to determine whether the IP data session is to be recorded.

97. (Previously Presented) The method of claim 96, wherein the information includes the identity of at least one of the first and second communication devices.

98. (Previously Presented) The method of claim 56, wherein the step of selectively entering the recording device to said conference call includes the steps of:

identifying a hunt group using a gatekeeper;

directing the recording device to enter said conference call as the additional participant in response to a command that the data session is to be recorded; and

joining the recording device to the data session through the hunt group.

99. (Previously Presented) The method of claim 98, including the additional steps of

-12-

WSNSDE0010608

P18216.A07                                    0333112022559US2

passing telephone numbers to a gatekeeper for performing IP address resolution and using a resolved IP address of the second communication device in connecting the second communication device to the conference call.

100. (Previously Presented) The method of claim 98, wherein the recording device is directed to enter said conference call in response to a command that the data session is to be recorded.

101. (Previously Presented) The method of claim 100, including the additional steps of:

   providing the command from a scheduler; and

   analyzing information about the IP data session at the scheduler to determine whether the IP data session is to be recorded.

102. (Previously Presented)  The method of claim 101, wherein the information includes the identity of at least one of the first and second communication devices.

103. (New) A method for recording at least a portion of an IP data session between at least a first communication device and a second communication device through a network by a recording device, comprising:

-13-

WSNSDE0010609

P18216.A07                                          033311202559US2

initiating the data session by said first communication device with said second communication device;

implementing the data session as a conference call through a conference controller such that said first and second communication devices are connected, respectively, as first and second participants;

using the conference controller, selectively entering the recording device to said conference call as an additional participant, wherein the recording device is distinct from the first and second communication devices yet receives as the additional participant at least the portion of the IP data session from each of the first and second participants; and

recording at least the portion of the IP data session received as the additional participant of said conference call using said recording device.

104.  (New)  The method of claim 103, wherein the step of selectively entering the recording device to said conference call includes the step of directing the recording device to enter said conference call as the additional participant when a data session has been initiated.

105.  (New)  The method of claim 103, including the additional step of permitting a user of at least one of the first and second communication devices to determine whether the session is to be recorded prior to entering the recording device as the additional participant.

-14-

WSNSDE0010610

P18216.A07                                          033311202559US2

106.  (New)  The method of claim 103, wherein the connection of the second
communication device is established by the conference controller by:

passing telephone numbers to a gatekeeper for performing IP address resolution, and

using a resolved IP address of the second communication device for connecting the

second communication device to the conference call.

107.  (New)  The method of claim 103, wherein the step of selectively entering the

recording device to said conference call is in response to a command that the data session is

to be recorded.

108.  (New)  The method of claim 107, including the additional step of providing the

command from a scheduler.

109.  (New)  The method of claim 108, including the additional step of locating the

scheduler with the recording device.

110.  (New)  The method of claim 108, including the additional step of analyzing

information about the IP data session at the scheduler to determine whether the IP data

-15-

WSNSDE0010611

P18216.A07                                           033311202559US2

session is to be recorded.

111. (New) The method of claim 110, wherein the information includes the identity of at least one of the first and second communication devices.

112. (New) The method of claim 103, wherein the IP data session is either an IP telephony session or an IP multimedia session.

113. (New) The method of claim 103, wherein the step of initiating the data session is detected by a recording agent, and wherein said recording agent contacts the recording device.

114. (New) The method of claim 103, wherein said conference controller is a MCU.

115. (New) The method of claim 103, wherein the conference controller implements said conference call in response to a request to initiate the conference call.

116. (New) The method of claim 115, wherein the request is from at least one of the recording device, the first communication device, the second communication device, and an

-16-

WSNSDE0010612

P18216.A07                                        033311202559US2

other component on the network.

117. (New) The method of claim 103, wherein said first communication device is a

gateway for receiving communication through a PSTN.

118. (New) The method of claim 103, wherein the recording device joins the data

session performed through a hunt group.

119. (New) The method of claim 118, including the additional step of identifying the

hunt group using a gatekeeper.

120. (New) The method of claim 103, wherein at least one of the first

communication device and the second communication device is a non-IP telephony device.

121. (New) The method of claim 120, wherein the step of selectively entering the

recording device to said conference call includes the step of directing the recording device to

enter said conference call as the additional participant when a data session has been initiated.

122. (New) The method of claim 120, wherein the connection of the second

-17-

WSNSDE0010613

P18216.A07                                        033311202559US2

communication device is established by the conference controller by:

passing telephone numbers to a gatekeeper for performing IP address resolution, and

using a resolved IP address of the second communication device for connecting the

second communication device to the conference call.


123  (New)  The method of claim 120, wherein the step of selectively entering the

recording device to said conference call is in response to a command that the data session is

to be recorded.


124.  (New)  The method of claim 123, including the additional step of providing the

command from a scheduler.


125  (New)  The method of claim 124, including the additional step of locating the

scheduler with the recording device.


126.  (New)  The method of claim 124, including the additional step of analyzing

information about the IP data session at the scheduler to determine whether the IP data

session is to be recorded.


-18-

WSNSDE0010614

P18216.A07                                                    033311202559US2

127. (New) The method of claim 126, wherein the information includes the identity of at least one of the first and second communication devices.

128. (New) The method of claim 120 wherein the step of initiating the data session is detected by a recording agent, and wherein said recording agent contacts the recording device.

129. (New) The method of claim 128, wherein said conference controller is a MCU.

130. (New) The method of claim 128, wherein the conference controller implements said conference call in response to a request to initiate the conference call.

131. (New) The method of claim 120, wherein the recording device joins the data session performed through a hunt group.

132. (New) The method of claim 131, including the additional step of identifying the hunt group using a gatekeeper.

133. (New) The method of claim 103, including the additional steps of passing telephone numbers to a gatekeeper for performing IP address resolution and using a resolved

-19-

WSNSDE0010615

P18216.A07                                          033311202559US2

IP address of the second communication device in connecting the second communication

device to the conference call, wherein the step of selectively entering the recording device to

said conference call includes the step of directing the recording device to enter said

conference call as the additional participant when a data session has been initiated.

134. (New)  The method of claim 133, wherein the recording device is directed to

enter said conference call in response to a command that the data session is to be recorded.

135. (New)  The method of claim 134, including the additional steps of:

providing the command from a scheduler; and

analyzing information about the IP data session at the scheduler to determine

whether the IP data session is to be recorded.

136. (New)  The method of claim 135, wherein the information includes the identity

of at least one of the first and second communication devices.

137. (New)  The method of claim 103, wherein the step of selectively entering the

recording device to said conference call includes the step of directing the recording device to

enter said conference call as the additional participant in response to a command that the data

-20-

WSNSDE0010616

P18216.A07                                         033311202559US2

session is to be recorded.

138. (New) The method of claim 137, including the additional steps of:

providing the command from a scheduler; and

analyzing information about the IP data session at the scheduler to determine

whether the IP data session is to be recorded.

139. (New) The method of claim 138, wherein the information includes the identity

of at least one of the first and second communication devices.

140. (New) The method of claim 103, including the additional steps of:

detecting the step of initiating the data session using a recording agent,

contacting the recording device using the recording agent, and

receiving a request to initiate the conference call and performing the implementing

step in response to the request,

wherein the step of selectively entering the recording device to said conference call

includes the step of directing the recording device to enter said conference call as the

additional participant when a data session has been initiated.

141. (New) The method of claim 140, including the additional steps of passing

-21-

WSNSDE0010617

P18216.A07                                        033311202559US2

telephone numbers to a gatekeeper for performing IP address resolution and using a resolved

IP address of the second communication device in connecting the second communication

device to the conference call.


142.  (New)  The method of claim 140, wherein the recording device is directed to

enter said conference call in response to a command that the data session is to be recorded.


143.  (New )  The method of claim 140, including the additional steps of:

providing the command from a scheduler; and

analyzing information about the IP data session at the scheduler to determine

whether the IP data session is to be recorded.


144.  (New)  The method of claim 143, wherein the information includes the identity

of at least one of the first and second communication devices.


145.  (New)  The method of claim 103,wherein the step of selectively entering the

recording device to said conference call includes the steps of:

identifying a hunt group using a gatekeeper;

directing the recording device to enter said conference call as the additional

participant in response to a command that the data session is to be recorded; and

-22-

WSNSDE0010618

P18216.A07                                      033311202559US2

joining the recording device to the data session through the hunt group.


146.  (New)  The method of claim 145, including the additional steps of passing

telephone numbers to a gatekeeper for performing IP address resolution and using a resolved

IP address of the second communication device in connecting the second communication

device to the conference call.


147.  (New)  The method of claim 145, wherein the recording device is directed to

enter said conference call in response to a command that the data session is to be recorded.


148.  (New)  The method of claim 147, including the additional steps of:

providing the command from a scheduler; and

analyzing information about the IP data session at the scheduler to determine

whether the IP data session is to be recorded.


149.  (New)  The method of claim 148, wherein the information includes the identity

of at least one of the first and second communication devices.


-23-

WSNSDE0010619

P18216.A07                                             033311202559US2

## REMARKS

Upon entry of this Amendment, claims 56-149 will be pending, with claim 56 having been amended and new claims 103-149 having been added.

### Rejection of Claims Over U.S. Patent No. 6,535,909 of Rust

Claims 56-102 were rejected over U.S. Patent No. 6,535,909 of inventor Rust. Of the rejected claims, claim 56 is the sole independent claim now pending, and Applicant's remarks are directed to the features of that claim.

According to the Patent Office, independent claim 56 is anticipated by Rust. Applicant respectfully traverses this rejection because the end-point capture system of Rust does not teach or suggest the elements of independent claim 56.

### A.    Rust '909 Teaches An End-Point Capture System

Rust '909 describes an end-point data capture scheme which is not configured to capture conference call participants regardless of their geographic location or connection relative to a network. The teachings of Rust '909 are all the more clear when considered in view of Mr. Rust's '273 patent, which patent was listed in an Information Disclosure Statement filed by Applicant on July 14, 2005.

The presenter client 110 in Rust '909 initiates the collaborative session, sends

-24-

WSNSDE0010620

P18216.A07                                033311202559US2

messages to the control server 140, counts the number of audio messages sent to the control server 140, and instructs the control server to begin "storing the audio and visual data components of the collaborative Web browsing session." See Column 7, lines 31-44. Therefore, the presenter client is "capturing" the session and forwarding messages to the control server merely for "storing."

The attendee clients merely witness the activities of the presenter clients. During a collaborative session, attendee client machines 120 relinquish control, or in some embodiments, make limited requests to a control server 140 to control the timing by which updated screen images, previously captured at the presenter client 110, are sent to the attendee clients.

Accordingly, although the presenter client 110 may correspond to "a first communication device," the attendee client 120 is not a "participant" and therefore not a second communication device from which there is capture of any messages. Rather, capture occurs at the presenter client 110, messages are then sent to the control server 140 for archive storage, and, if a playback client 150 wishes to see a prior collaborative session, it retrieves what was captured by the presenter client (and any co-presenter client 160). Consequently, Rust '909 does not satisfy the recitations in amended claim 56 which call for a conference controller entering a recording device into a conference call so as to receive, as an additional participant to that call, at least a portion of the IP data session "*from each of the first and*

-25-

P18216.A07                                              033311202559US2

*second participants*."

In the event that multiple presenter clients 110, 160 are involved in a collaborative session, each presenter captures its own presentation and independently forwards captured data to the control server 140, without any teaching or hint that any attendee client action is ever captured. At most, the control server determines the correct start time for a multi-presenter collaborative session, but there is no teaching or hint that the co-presenters are connected in conference with one another. Thus, even when there are co-presenters, the claimed steps are not met by Rust '909.

In view of the above amendments and remarks it is respectfully submitted that Claim 56 and dependent claims 57-102 are allowable over the art of record for at least this reason.

### B. Rust Lacks a Conference Controller

Claim 56 recites a "conference controller" that causes the recording device to enter the conference call as an additional participant. Rust teaches no such structure. Rather, Rust has the presenter client 120 initiating and capturing the collaborative sessions. In particular, the presenter client uses an applet to initiate the capture (end-point recording) in order to have images from its screen available for communication to the attendee clients 120 via the control server 140.

-26-

P18216.A07                                                    033311202559US2

Neither the control server nor any storage device located at the control server receives data "as an additional participant." Rather, the control server 140 of Rust is instructed by the presenter client to begin and stop recording data that the presenter client 110 sends to the control server, and, thus, the control server 140 serves under the utter control of the presenter client.

Likewise, an applet at the attendee client causes the attendee client to relinquish all control to the presenter client.

None of this is akin to establishing a connection with a second communication device and then "implementing the data session as a conference call" in which a recording device distinct from the other participants to the conference call can receive "at least [a] portion of the data session from each of the first and second participants."

The method of independent claim 56 has an IP data session implemented as a conference call through a conference controller. The claimed method recites the step of "using the conference controller, selectively entering the recording device to said conference call as an additional participant." The amendment to claim 56 clarifies that the recording device, while being distinct from the first and second communication devices that are in the IP data session, _receives as the additional participant at least the portion of the data session from each of the first and second participants_ so that it can record that portion of the session which it _received as the additional participant_ of said conference call.

-27-

WSNSDE0010623

P18216.A07                                          033311202559US2

In view of the above amendments and remarks it is respectfully submitted that Claim 56 and dependent claims 57-102 are allowable over the art of record for at least this additional reason.

*Amendments and New Claims*

Claim 56 has been amended to make clear that the method concerns the handling of a portion of one or more of a plurality of IP data sessions.

New claim 103 is directed to a method as in claim 56, except that claim 103 is drawn to the particular case of handling "an IP data session". Claim 103 is believed to be allowable over the art of record for the reasons noted above.

New dependent claims 104-149 recite the same limitations as dependent claims 57-102, and are believed to be allowable over the art of record in view of their respective dependence, direct or indirect, from claim 103 as well as in view of their own respective recitations.

*Information Disclosure Statement of July 14, 2005*

The Supplemental Information Disclosure Statement submitted on July 14, 2005 lists materials that have been produced in a litigation concerning a patent in a different family than the present case (namely, the family of U.S. Patent No. 6,122,665), which patent is

-28-

WSNSDE0010624

P18216.A07                                                033311202559US2

assigned to a different assignee (namely, STS Software Systems, Inc.). Applicant is aware of

these documents because the assignee STS Software is related through corporate documents

to the assignee of the present application. Applicant believes that none of these documents

impacts the patentability of the claims in this application, but has submitted them so that the

Examiner can make his own determination in this regard.

Please charge any fees necessary for consideration of the papers filed herein and

refund excess payments to Deposit Account No. 50-2929.

Should the Examiner have any questions or comments regarding this matter, the

undersigned may be contacted at the below-listed telephone number.


                                        Respectfully submitted,
                                        Hagay GRITZER et al.


                                        Abraham Hershkovitz
                                        Reg. No. 45,294

October 6, 2005
HERSHKOVITZ & ASSOCIATES
1725 I Street, N.W.
Suite 300
Washington DC 20006
(703) 323-9330


                                    -29-


WSNSDE0010625

**EXHIBIT G**





**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                                    )

John Henits et al.                                      )    Attorney Docket No.: DIC-606

Serial No.: 08/171,296                                  )    Group Art Unit:  2514

Filed: December 21, 1993                                )    Examiner: T. Le

For:  ENDLESS LOOP VOICE                               )    Date: June 23, 1994
      DATA STORAGE AND                                  )
      RETRIEVABLE APPARATUS                             )
      AND METHOD THEREOF                                )

### AMENDMENT

Commissioner of Patents and Trademarks
Washington, DC  20231

S I R:

In response to the Office Action of March 24, 1994, please amend the

above entitled application as follows:


#### In The Claims

Claim 7, line 5, delete "printer" and substitute therefor --pointer--.

Claim 8, lines 6 & 8, delete "printers" and substitute therefor --pointers--.


### REMARKS

The Examiner rejected Claim 6 under 35 USC 112 as being indefinite.  In

reviewing the claims, the applicant has found that the term "printer" has been

used in places instead of the word "pointer".  The applicant does not find the

word printer in Claim 6 however finds the word in Claims 7 and 8.  Claims 7 and

8 have been amended to correct the error.  With regard to the element "said

-- 2 --

second pointer" in Claim 7 there is antecedence for this in Claim 5, lines 18 and 19 wherein the second of said pointers is introduced.

In view of the above, the applicant requests that the rejection under 35 USC 112 be withdrawn.

The Examiner rejected Claims 1-4 under 35 USC 102(b) as being anticipated by Leung et al. Applicant respectfully traverses this rejection.

It is well settled that for a patent claim to be anticipated under 35 USC 102, a showing of identity of invention must be made, Kalman v. Kimberly Clark Corp., 218 USPQ 789 CAFC 1983. Leung et al. do not satisfy this requirement.

At the outset, it should be noted that Leung et al. is assigned to the same assignee as the above entitled patent application. Leung et al. show a telephone line leading into a logger 15 and a recorder unit 14, so as to receive audio therefrom. It will be noted that there is no communication from the logger 15 to the recorder unit 14. The recorder unit 14 communicates with a message repeater 10 through a line 16. The message repeater 10 has short term memory and is able to communicate with tape recorders 26, 27 that receive cassettes.

The applicant's invention in Claims 1-4 is directed to a method of storing and retrieving audio from a digital audio logger. As stated previously, there is no data flowing from the logger 16 to the message repeater 10. Step 3 of the claim includes writing data from a buffer onto a digital audio tape. There is no digital audio tape in Leung et al. What is shown is a tape recorder for casettes, which of course are analog. See column 3, lines 55-60. The fourth step of the claim 1 requires retrieving audio from a random access storage device while audio is written into the digital audio tape and the random access storage device. The casettes 26, 27 of the Leung et al. receive audio from the short term memory in the console 12. Consequently it cannot be said that audio is retrieved from a random access storage device while audio is being written thereto. It will be noted that there is no provision for the same in Leung et al.

WSNSDE0008668

-- 3 --

Claim 2 includes a time defining step. Claim 3 primary and secondary partitions and claim 4 a record session of which are disclosed by Leung et al.

For the above reasons, it is submitted that Claims 1-4 are not anticipated by Leung et al. and it is requested that the rejection of these claims under 35 USC 102 be withdrawn.

Claims 5-8 were rejected under 35 USC 103 as being unpatentable over Leung et al. in view of Knitl. Applicant respectfully traverses this rejection on the part of the Examiner. The Examiner has an extensive discussion relative to audio compression, but claims 5-8 are primarily directed to a digital audio tape drive unit in communication with a buffer, which buffer communicates with the random storage device through a pair of pointers. Nothing of this nature is disclosed either by Leung et al or by Knitl. Although Knitl shows memory, there is nothing therein that is equivalent to a buffer having two pointers that have communication between a buffer and a random storage device.

Claims 7 and 8 are more detailed relative to the structure of the buffer. More specifically, these claims speak of a primary partition and a secondary partition. Nothing of this nature is taught or suggested by either Leung et al. of Knitl.

In view of distinctions expressed above, it is submitted that Leung et al and Knitl do not show or suggest in combination the applicant's invention as defined by claims 5-8. This is particularly true when one considers the fact that Leung et al. is an analog system which cannot in any way be conveniently modified so as to incorporate any of the features of Knitl.

WSNSDE0008669

-- 4 --

In view of the above amendments and comments, the above entitled application

is deemed in condition for allowance and such allowance is respectfully

requested.

Respectfully submitted,

Peter Vrahotes
Attorney for Applicant
Registration No. 22,529

Pitney Bowes Inc.
Intellectual Property and
Technology Law Department
World Headquarters
One Elmcroft Road
Stamford, Connecticut 06926-0700
Telephone (203) 351-7566

I hereby certify that this correspondence is being deposited with the United
States Postal Service as first class mail in an envelope addressed to:
Commissioner of Patents and Trademarks, Washington, D.C. 20231, on

_____
(Date of Deposit)

Pitney Bowes Inc.
_____
Name of Applicant, assignee, or Registered Rep.

_____    6-23-94
Signature                          Date