IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC., and
NICE SYSTEMS, LTD.,

     Plaintiffs,

      v.

WITNESS SYSTEMS, INC.,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 06-311-JJF

## **JOINT PROPOSED JURY INSTRUCTIONS**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302) 571-6681
msharp@ycst.com
mdugan@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Plaintiffs NICE Systems, Inc.
and NICE Systems, Ltd.*

FISH & RICHARDSON, P.C.
William J. Marsden, Jr. (No. 2247)
Kyle Wagner Compton (No. 4693)
919 North Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 778-8401
marsden@fr.com

Nagendra Setty
Daniel A. Kent
Noah Graubart
FISH & RICHARDSON, P.C.
1180 Peachtree Street, N.E., 21st Floor
Atlanta, GA 30309
(404) 892-5005

*Attorneys for Defendant Witness
Systems, Inc.*

Dated: January 7, 2008

# TABLE OF CONTENTS

**Page No.**

1.0    GENERAL INSTRUCTIONS ............................................................................. 1

    1.1    INTRODUCTION - JOINTLY PROPOSED JURY INSTRUCTIONS ................ 1
    1.2    DUTY OF THE JURY - JOINTLY PROPOSED JURY INSTRUCTIONS ......... 2
    1.3    BURDEN OF PROOF - JOINTLY PROPOSED JURY INSTRUCTIONS ......... 3
    1.4    EVIDENCE - NICE'S PROPOSED JURY INSTRUCTIONS ............................ 4
    1.4    EVIDENCE DEFINED - WITNESS SYSTEMS' PROPOSED JURY
           INSTRUCTIONS.................................................................................................. 6
    1.5    CONSIDERATION OF EVIDENCE - JOINTLY PROPOSED JURY
           INSTRUCTIONS.................................................................................................. 7
    1.6    USE OF NOTES - JOINTLY PROPOSED JURY INSTRUCTIONS.................. 8
    1.7    DIRECT AND CIRCUMSTANTIAL EVIDENCE - JOINTLY
           PROPOSED JURY INSTRUCTIONS ................................................................. 9
    1.8    CREDIBILITY OF WITNESSES - JOINTLY PROPOSED JURY
           INSTRUCTIONS................................................................................................ 10
    1.9    NUMBER OF WITNESSES - JOINTLY PROPOSED JURY
           INSTRUCTIONS................................................................................................ 11
    1.10    EXPERT WITNESSES - JOINTLY PROPOSED JURY
           INSTRUCTIONS................................................................................................ 12
    1.11    DEPOSITION TESTIMONY - JOINTLY PROPOSED JURY
           INSTRUCTIONS................................................................................................ 13
    1.12    DEMONSTRATIVE EXHIBITS - JOINTLY PROPOSED JURY
           INSTRUCTIONS................................................................................................ 14

2.0    THE PARTIES AND THEIR CONTENTIONS ............................................. 15

    2.1    THE PARTIES - JOINTLY PROPOSED JURY INSTRUCTIONS ................... 15
    2.2    NICE'S CONTENTIONS - JOINTLY PROPOSED JURY
           INSTRUCTIONS................................................................................................ 16
    2.3    WITNESS SYSTEMS' CONTENTIONS - JOINTLY PROPOSED JURY
           INSTRUCTIONS................................................................................................ 18
    2.4    SUMMARY OF PATENT ISSUES - NICE'S PROPOSED JURY
           INSTRUCTIONS................................................................................................ 20
    2.4    SUMMARY OF PATENT ISSUES - WITNESS SYSTEMS' PROPOSED
           JURY INSTRUCTIONS.................................................................................... 21

3.0    THE PATENT CLAIMS ................................................................................. 22

    3.1    THE PATENT CLAIMS – GENERALLY - NICE'S PROPOSED JURY
           INSTRUCTIONS................................................................................................ 22
    3.1    THE PATENT CLAIMS - GENERALLY - WITNESS SYSTEMS'
           PROPOSED JURY INSTRUCTIONS ............................................................... 23

i

3.2    CONSTRUCTION OF CLAIMS - NICE'S PROPOSED JURY
INSTRUCTIONS........................................................................ 24
3.2    CONSTRUCTION OF CLAIMS -WITNESS SYSTEMS' PROPOSED
JURY INSTRUCTIONS............................................................ 30
3.3    DEPENDENT AND INDEPENDENT CLAIMS -JOINTLY PROPOSED
JURY INSTRUCTIONS............................................................ 36
3.4    MEANS-PLUS-FUNCTION CLAIMS- NICE'S PROPOSED JURY
INSTRUCTIONS........................................................................ 37

4.0    INFRINGEMENT........................................................................... 40

4.1    PATENT INFRINGEMENT GENERALLY - DIRECT
INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS .................. 40
4.1    DIRECT INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY
INSTRUCTIONS........................................................................ 41
4.2    PATENT INFRINGEMENT GENERALLY - INDIRECT
INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS .................. 42
4.2    PATENT INFRINGEMENT GENERALLY - INDIRECT
INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY
INSTRUCTIONS........................................................................ 43
4.3    INFRINGEMENT - OFFER FOR SALE - WITNESS SYSTEMS'
PROPOSED  INSTRUCTION ...................................................... 44
4.4    INDUCING PATENT INFRINGEMENT - NICE'S PROPOSED JURY
INSTRUCTIONS........................................................................ 45
4.5    INDUCING PATENT INFRINGEMENT -WITNESS SYSTEMS'
PROPOSED JURY INSTRUCTIONS ............................................ 46
4.6    CONTRIBUTORY INFRINGEMENT - NICE'S PROPOSED JURY
INSTRUCTIONS........................................................................ 47
4.7    CONTRIBUTORY INFRINGEMENT -WITNESS SYSTEMS'
PROPOSED JURY INSTRUCTIONS ............................................ 48
4.7    INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE
PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF
EQUIVALENTS - JOINTLY PROPOSED JURY INSTRUCTIONS................. 49
4.8    SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS
IS NOT PERMITTED - WITNESS SYSTEMS' PROPOSED JURY
INSTRUCTIONS........................................................................ 51
4.9    WILLFUL INFRINGEMENT - NICE'S PROPOSED JURY
INSTRUCTIONS........................................................................ 53
4.9    WILLFUL INFRINGEMENT - WITNESS SYSTEMS' PROPOSED
JURY INSTRUCTIONS............................................................ 54

5.0    INVALIDITY ................................................................................. 56

5.1    INVALIDITY - NICE'S PROPOSED JURY INSTRUCTIONS......................... 56
5.2    PRESUMPTION OF VALIDITY - NICE'S PROPOSED JURY
INSTRUCTIONS........................................................................ 57

5.2    PRESUMPTION OF VALIDITY - WITNESS SYSTEMS' PROPOSED
       JURY INSTRUCTIONS.................................................................................. 58
5.3    ANTICIPATION - NICE'S PROPOSED JURY INSTRUCTIONS.................... 59
5.3    ANTICIPATION - WITNESS SYSTEMS' PROPOSED JURY
       INSTRUCTIONS............................................................................................ 61
       5.3.1    ANTICIPATION OF MEANS-PLUS-FUNCTION CLAIMS- -
                NICE'S PROPOSED JURY INSTRUCTIONS ...................................... 62
       5.3.2    PRIOR PUBLIC USE ....................................................................... 65
       5.3.3    PRIOR PUBLICATION -NICE'S PROPOSED JURY
                INSTRUCTIONS.............................................................................. 66
       5.3.4    PRIOR "ON SALE" PRODUCTS-NICE'S PROPOSED JURY
                INSTRUCTIONS.............................................................................. 67
       5.3.4    PRIOR "ON SALE" PRODUCTS-WITNESS SYSTEMS'
                PROPOSED JURY INSTRUCTIONS .................................................. 68
       5.3.5    ON-SALE BAR-COMMERCIAL OFFER FOR SALE-WITNESS
                SYSTEMS' PROPOSED JURY INSTRUCTIONS ................................. 70
       5.3.6    PRIOR INVENTION - JOINTLY PROPOSED JURY
                INSTRUCTIONS.............................................................................. 71
       5.3.7    DILIGENCE - JOINTLY PROPOSED JURY INSTRUCTIONS ........... 72
       5.3.8    CORROBORATION - JOINTLY PROPOSED JURY
                INSTRUCTIONS.............................................................................. 73
       5.3.9    REDUCTION TO PRACTICE - NICE'S PROPOSED JURY
                INSTRUCTIONS.............................................................................. 74
5.4    OBVIOUSNESS - NICE'S PROPOSED JURY INSTRUCTIONS ................... 75
5.4    OBVIOUSNESS - WITNESS SYSTEMS' PROPOSED JURY
       INSTRUCTIONS............................................................................................ 76
       5.4.1    SCOPE AND CONTENT OF THE PRIOR ART - JOINTLY
                PROPOSED JURY INSTRUCTIONS .................................................. 78
       5.4.2    DIFFERENCES OVER THE PRIOR ART - JOINTLY
                PROPOSED JURY INSTRUCTIONS .................................................. 79
       5.4.3    LEVEL OF ORDINARY SKILL - NICE'S PROPOSED JURY
                INSTRUCTIONS.............................................................................. 80
       5.4.3    LEVEL OF ORDINARY SKILL - WITNESS SYSTEMS'
                PROPOSED JURY INSTRUCTIONS .................................................. 81
       5.4.4    HINDSIGHT - NICE'S PROPOSED JURY INSTRUCTIONS ............. 82
       5.4.5    REASON TO COMBINE - WITNESS SYSTEMS' PROPOSED
                JURY INSTRUCTION ...................................................................... 83
       5.4.6    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
                (SECONDARY CONSIDERATIONS) - JOINTLY PROPOSED
                JURY INSTRUCTIONS..................................................................... 85

6.0  ENFORCEABILITY ................................................................................................ 86

     6.1    LACHES - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS........ 86
     6.2    EQUITABLE ESTOPPEL - WITNESS SYSTEMS' PROPOSED JURY
            INSTRUCTIONS............................................................................................ 88

7.0   DAMAGES ........................................................................................... 90

    7.1   DAMAGES GENERALLY - JOINTLY PROPOSED JURY
          INSTRUCTIONS .......................................................................... 90

    7.2   COMPENSATORY PATENT DAMAGES IN GENERAL - NICE'S
          PROPOSED JURY INSTRUCTIONS ........................................... 91

    7.2   COMPENSATORY PATENT DAMAGES IN GENERAL -WITNESS
          SYSTEMS' PROPOSED JURY INSTRUCTIONS ........................ 92

        7.2.1   NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT
                CLAIMS - NICE'S PROPOSED JURY INSTRUCTIONS .................... 93

        7.2.1   DATE DAMAGES MAY BEGIN - WITNESS SYSTEMS'
                PROPOSED JURY INSTRUCTIONS ..................................... 94

    7.3   TWO TYPES OF DAMAGES -- LOST PROFITS & REASONABLE
          ROYALTY - NICE'S PROPOSED JURY INSTRUCTIONS ............. 95

    7.4   LOST PROFITS, TYPES AND BURDEN OF PROOF - NICE'S
          PROPOSED JURY INSTRUCTIONS ........................................... 96

    7.4   LOST PROFITS, TYPES AND BURDEN OF PROOF - WITNESS
          SYSTEMS' PROPOSED JURY INSTRUCTIONS ........................ 97

        7.4.1   LOST SALES - NICE'S PROPOSED JURY INSTRUCTIONS ........... 99

        7.4.2   MANUFACTURING AND MARKETING ABILITY - JOINTLY
                PROPOSED JURY INSTRUCTIONS ..................................... 100

        7.4.3   ABSENCE OF ACCEPTABLE NON-INFRINGING
                SUBSTITUTES - JOINTLY PROPOSED JURY
                INSTRUCTIONS ................................................................ 101

    7.5   AMOUNT OF LOST PROFITS - NICE'S PROPOSED JURY
          INSTRUCTIONS .......................................................................... 102

    7.6   REASONABLE ROYALTY - JOINTLY PROPOSED JURY
          INSTRUCTIONS .......................................................................... 103

        7.6.1   WHAT IS A REASONABLE ROYALTY? - NICE'S PROPOSED
                JURY INSTRUCTIONS ..................................................... 104

        7.6.1   WHAT IS A REASONABLE ROYALTY? - WITNESS
                SYSTEMS' PROPOSED JURY INSTRUCTIONS ............................. 106

    7.7   TOTAL DAMAGES - NICE'S PROPOSED JURY INSTRUCTIONS ............ 109

        7.7.1   COLLATERAL SALES- NICE'S PROPOSED JURY
                 INSTRUCTIONS ................................................................ 110

    7.8   INTEREST - WITNESS SYSTEMS' PROPOSED JURY
          INSTRUCTIONS .......................................................................... 111

8.0   DELIBERATION AND VERDICT ..................................................... 112

    8.1   INTRODUCTION - JOINTLY PROPOSED JURY INSTRUCTIONS ........... 112

    8.2   UNANIMOUS VERDICT - JOINTLY PROPOSED JURY
          INSTRUCTIONS .......................................................................... 113

    8.3   DUTY TO DELIBERATE - JOINTLY PROPOSED JURY
          INSTRUCTIONS .......................................................................... 114

    8.4   COURT HAS NO OPINION - JOINTLY PROPOSED JURY
          INSTRUCTIONS .......................................................................... 115

9.0    OBJECTIONS TO COURT'S TENTATIVE CLAIM CONSTRUCTION
       RULING ............................................................................................................ 116

    9.1    NICE'S OBJECTIONS TO COURT'S TENTATIVE CLAIM
           CONSTRUCTION RULING............................................................................ 116

DB02:6482568.1    065251.1001

## 1.0     GENERAL INSTRUCTIONS

### 1.1     INTRODUCTION - JOINTLY PROPOSED JURY INSTRUCTIONS

Members of the jury, now it is time for me to give additional instructions about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will also have a verdict form, which will list the questions that you must answer to decide this case.

Authorities:  D. Del. Uniform Instruction, 1.1: General Instructions, Introduction (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 1.2    DUTY OF THE JURY - JOINTLY PROPOSED JURY INSTRUCTIONS

It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts to the law as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

You are the judges of the facts. I will decide which rules of law apply to this case. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

## 1.3    BURDEN OF PROOF - JOINTLY PROPOSED JURY INSTRUCTIONS

This is a civil case in which NICE Systems, Inc. and NICE Systems, Ltd., which are collectively referred to as "NICE," are charging Witness Systems, Inc. with patent infringement. Witness Systems maintains that NICE's patents are invalid.

NICE has the burden of proving patent infringement and its claim of damages by what is called a preponderance of the evidence. That means NICE has to produce evidence which, when considered in light of all of the facts, leads you to believe that what NICE claims is more likely true than not. To put it differently, if you were to put NICE and Witness Systems' evidence on the opposite sides of a scale, the evidence supporting NICE's claims must make the scales tip somewhat on NICE's side.

As previously mentioned, Witness Systems maintains that NICE's patents are invalid. A patent, however, is presumed to be valid. Accordingly, Witness Systems has the burden to prove each asserted claim of each patent-in-suit are not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and does not play any part in this case. Therefore, you should not consider it at all in your deliberations.

## 1.4    EVIDENCE - NICE'S PROPOSED JURY INSTRUCTIONS

The evidence you will consider consists of the sworn testimony of witnesses, the exhibits admitted into evidence, and any facts the parties admit or agree to. Some of the witnesses may not appear personally but may have their testimony presented through a transcript or videotape of prior sworn testimony, called a deposition. Now, only the testimony of witnesses, the exhibits that are received, and any stipulated facts are evidence. Nothing besides those things is evidence. The lawyers' statements and arguments are not evidence; their questions and objections are not evidence. My comments or questions are not evidence. Rulings on evidentiary objections are not evidence. Nothing you see or hear outside the courtroom is evidence.

From time to time it may be the duty of the attorneys to make objections to evidence that should not be presented at this trial under the rules of evidence. It is my duty as the judge to rule on those objections and decide whether you can consider the evidence in question. My decisions about the admission of evidence are governed by rules of law. You must not be influenced by any objection or by my reasons for making an evidentiary ruling. If I sustain an objection or order evidence stricken from the trial record, do not speculate about what a witness might have said or what an exhibit might have shown. You must not consider that evidence.

Use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If you experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Make your decisions about the trial based only on the evidence, as I have defined it here, and nothing else.

<u>Authorities</u>:  D. Del. Uniform Instruction, 1.4: Evidence Defined, 1.5: Consideration of Evidence (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## 1.4    EVIDENCE DEFINED - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played or read to you), the exhibits that I allowed into evidence, and any stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Source: *Uniform Jury Instr. for Patent Cases in the D. Del. 1.3*

**1.5     CONSIDERATION OF EVIDENCE - JOINTLY PROPOSED JURY INSTRUCTIONS**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Authorities: D. Del. Uniform Instruction, 1.5: Consideration of Evidence (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**1.6    USE OF NOTES - JOINTLY PROPOSED JURY INSTRUCTIONS**

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

Authorities: Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 1.7    DIRECT AND CIRCUMSTANTIAL EVIDENCE - JOINTLY PROPOSED JURY INSTRUCTIONS

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Authorities: D. Del. Uniform Instruction, 1.6: Direct and Circumstantial Evidence (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**1.8    CREDIBILITY OF WITNESSES - JOINTLY PROPOSED JURY INSTRUCTIONS**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact and whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

Authorities:    D. Del. Uniform Instruction, 1.7: Credibility of Witnesses (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 1.9    NUMBER OF WITNESSES - JOINTLY PROPOSED JURY INSTRUCTIONS

One more point about the witnesses.    Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.    What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.    Concentrate on that, not the numbers.

Authorities:    D. Del. Uniform Instruction, 1.8: Number of Witnesses (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 1.10    EXPERT WITNESSES - JOINTLY PROPOSED JURY INSTRUCTIONS

When knowledge of technical subject matter may be helpful to the jury, a person who has special training, education, or experience in that technical field – a person called an expert witness – is permitted to state his opinion on those technical matters.

You are not required, however, to accept that opinion. As with any other witness, it is up to you to decide how much weight to give the opinion in light of all the evidence in the case.

You should take into account the expert's actual experience in the field, such as whether he has worked in the technology area to which he is testifying. Even though the person rendering the opinion may have been admitted as an expert, you may weigh his level of expertise in determining the reliability of his opinion.

Authorities: D. Del. Uniform Instruction, 1.9: Expert Witnesses (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**1.11    DEPOSITION TESTIMONY - JOINTLY PROPOSED JURY INSTRUCTIONS**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of videotaped excerpts from a deposition.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.

Authorities:  *Adapted from* KEVIN O'MALLEY ET AL., Federal Jury Prac. & Instr., Civil, § 101.40; "Evidence in the Case" (5th Ed. 2003); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**1.12    DEMONSTRATIVE EXHIBITS - JOINTLY PROPOSED JURY INSTRUCTIONS**

During trial, you have seen many exhibits. Some of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts, models and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called demonstrative exhibits, have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is evidence in this case.

Authorities: Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 2.0    THE PARTIES AND THEIR CONTENTIONS

## 2.1    THE PARTIES - JOINTLY PROPOSED JURY INSTRUCTIONS

The plaintiffs in this case are NICE Systems, Inc. and NICE Systems, Ltd.    The defendant is Witness Systems, Inc.  I will refer to plaintiffs as "NICE." I will refer to defendant as "Witness Systems."

Authorities:  Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 2.2    NICE'S CONTENTIONS - JOINTLY PROPOSED JURY INSTRUCTIONS

NICE contends that Witness Systems has been and is now willfully infringing either literally or by equivalence, each of the following patent claims:

U.S. Patent No. '371: claims 1 and 8;

U.S. Patent No. '570: claim 6;

U.S. Patent No. '372: claims 1, 15, and 33;

U.S. Patent No. '920: claims 1, 16, and 21;

U.S. Patent No. '109: claims 1 and 6

by making, using, selling, and offering to sell the following products: ContactStore, ContactStore for IP, ContactStore for Communication Manager, and Balance, which are sold under the brand names eQuality and Impact 360, or are sold through a partner or reseller. In addition, NICE contends that Witness has induced others to infringe and/or has contributorily infringed. These core products are also sold with optional add on features and other peripheral components such as end user viewing and archiving components. NICE contends that Witness Systems acted recklessly and that it knew that its actions constituted infringement and, therefore, Witness Systems' infringement is willful.

NICE contends that each of the asserted claims of the patents-in-suit is valid.

NICE contends that Witness had actual and constructive notice of NICE's patents.

NICE contends it is entitled to recover damages for Witness's infringement of the patents-in-suit.

NICE contends that if Witness Systems is found to infringe and the patents-in-suit are found not invalid, it is entitled to lost profits or a combination of lost profits and reasonable royalty or, at a minimum, reasonable royalty.

Authorities:   Federal Circuit Bar Ass'n Model Patent Jury Instructions, 3.1; D. Del. Uniform Instruction, 2.2: Plaintiff's Contentions (1993).

## WITNESS SYSTEMS' OBJECTION:

Witness Systems objects to NICE's contention "that Witness Systems has been and is now willfully infringing either literally or by equivalence, each of the following patent claims" on the grounds that NICE is and should be barred from asserting infringement under the doctrine of equivalents for any reason, including as a result of prosecution history estoppel.

Witness Systems objects NICE's contention of infringement related to Witness Systems' "making, using, selling, and offering to sell the following products: Nortel Contact Recorder . . ." on the ground that NICE has not accused the Nortel Contact Recorder of infringement in either its Complaint or in its infringement contentions, nor did NICE otherwise identify it as an accused product at any time during fact discovery in this case.

## 2.3    WITNESS SYSTEMS' CONTENTIONS - JOINTLY PROPOSED JURY INSTRUCTIONS

Witness Systems contends that its products do not infringe, either directly or indirectly, any of the asserted claims of the patents in suit.

Witness Systems contends that the asserted claims of NICE's patents in suit are not valid for failure to satisfy the statutory requirement of patentability.  In particular, Witness Systems charges that NICE's patents are invalid for anticipation and  obviousness.  I will explain the elements of these statutory requirements shortly.

If Witness Systems is found to infringe and the patents in suit are found not invalid, Witness Systems contends that NICE cannot recover damages for infringement due to its failure to adequately mark its products as required by statute.

If Witness Systems is found to infringe and the patents in suit are found not invalid, Witness Systems contends that NICE is only entitled to a reasonable royalty on those accused products that NICE has proven Witness Systems made, used, sold, or offered for sale within the United States or imported into the United States.

If Witness Systems is found to infringe and the patents in suit are found not invalid, Witness Systems contends that such infringement was not willful because Witness Systems did not act with objective or subjective recklessness.  In other words, Witness Systems did not act with an objectively high likelihood that its actions constituted infringement of a valid patent.  And even if Witness Systems did act with an objectively high likelihood that its actions constituted infringement, it was not aware of this objectively defined risk.

Witness Systems contends that NICE cannot assert the patents in suit because NICE unreasonably delayed bringing suit for infringing them.  By unreasonably delaying, Witness

Systems contends that NICE should be barred from bringing suit by laches and equitable estoppel.

Witness Systems contends that NICE cannot assert the '371 patent because NICE committed inequitable conduct before the Patent and Trademark Office by withholding material information from the Patent Examiner.

## NICE'S OBJECTION:

Witness Systems contends that NICE cannot assert the patents in suit because NICE unreasonably delayed bringing suit for infringing them. By unreasonably delaying, Witness Systems contends that NICE should be barred from bringing suit by laches and equitable estoppel.

NICE objects as these issues should not be submitted to the jury. NICE further objects as the presentation of facts related to these issues may unfairly prejudice the jury. If the Court decides to present these issues to the jury, NICE reserves its right to submit proposed jury instructions for the Court's consideration.

## 2.4    SUMMARY OF PATENT ISSUES - NICE'S PROPOSED JURY INSTRUCTIONS

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

Whether NICE has proven by a preponderance of the evidence that Witness Systems has infringed any of the asserted claims of the patents in suit.

Whether NICE has proven by clear and convincing evidence that Witness Systems' infringement of any of the asserted claims of the patents in suit was willful.

Whether Witness Systems has proven by clear and convincing evidence that any of NICE's patents are invalid.

Whether Witness Systems had adequate notice, either actual or constructive, of NICE's patents.

If you find any of the asserted claims of the patents in suit are infringed and not invalid, whether NICE has proven by clear and convincing evidence that Witness Systems' infringement was willful.

If you find any of the asserted claims of the patents in suite are infringed and not invalid, the amount of damages that NICE has proven by a preponderance of the evidence is due to it.

Authorities:  Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## 2.4    SUMMARY OF PATENT ISSUES - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

Whether NICE has proven by a preponderance of the evidence that Witness Systems has infringed any of the asserted claims of the patents in suit.

Whether Witness Systems has proven by clear and convincing evidence that any of NICE's patents are invalid.

Whether NICE delayed an unreasonable amount of time before bringing the infringement action for the '371 patent.

Whether NICE committed inequitable conduct by its actions before the Patent and Trademark Office.

Whether NICE failed to adequately mark its patented products.

If you find any of the asserted claims of the patents in suit are infringed, not invalid, and enforceable, whether NICE has proven by clear and convincing evidence that Witness Systems' infringement was willful.

If you find any of the asserted claims of the patents in suit are infringed, not invalid, and enforceable, the amount of damages that NICE has proven by a preponderance of the evidence is due to it.

## 3.0    THE PATENT CLAIMS

## 3.1    THE PATENT CLAIMS – GENERALLY - NICE'S PROPOSED JURY INSTRUCTIONS

Before you can decide whether the claims of NICE's patents are not invalid or whether Witness Systems infringed NICE's patents, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent.  The patent claims involved here are: Claim 6 of U.S. Patent No. 6,249,570;Claims 1, 15 and 33 of U.S. Patent No. 6,775,372; Claims 1and 6 of U.S. Patent No. 7,010,109;  Claims 1, 16 and 21 of U.S. Patent No. 6,870,920; Claims 1 and 8 of U.S. Patent No. 5,396,371.  I will refer to these patents collectively as the "patents in suit," or individually by the last three numbers of the patents.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.  Only the claims of the patent can be infringed. Each of the claims must be considered individually, and to show patent infringement by a given product, NICE need only establish that one claim has been infringed.

Authorities:    D. Del. Uniform Instruction, 3.1: Claim Infringement (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 3.1    THE PATENT CLAIMS - GENERALLY - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Before you can decide whether the claims of NICE's patent are not invalid or whether Witness Systems infringed NICE's patents, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent.  The patent claims involved here are:  Claim 6 of U.S. Patent No. 6,249,570;  Claims 1,  15 and 33 of U.S. Patent No. 6,775,372; Claims 1and 6 of U.S. Patent No. 7,010,109; Claims 1, 16 and 21 of U.S. Patent No. 6,870,920; Claims 1 and 8 of U.S. Patent No. 5,396,371.  I will refer to these patents collectively as the "patents in suit," or individually by the last three numbers of the patents.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.  Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually, and to show patent infringement by a given product, plaintiff need only establish that one claim has been infringed.

*D. Del. Uniform Instruction 3.1*

## 3.2    CONSTRUCTION OF CLAIMS - NICE'S PROPOSED JURY INSTRUCTIONS

It is the Court's duty under the Law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of the claims.

You must apply the meaning that I give in each patent claim to decide if the claim is invalid.  You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the patents are toward the end of each patent. You are advised that the following definitions for the following terms must be applied:

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|---|---|---|---|---|
| U.S. No. 5,396,371 | Claim 1 | storing audio data from the audio source in a buffer | buffer | device in communication with the digital audio tape and the random access storage device that temporarily stores data |
| U.S. No. 5, 396,371 | Claim 1 | writing the audio data from the buffer onto a digital audio tape and a random access storage device | digital audio tape | magnetic tape designed for storage of audio in digital form |
| | | | writing the audio from the buffer onto a digital audio tape and a random access storage device | transferring audio data from the buffer directly to both a digital audio tape and a random access storage device |
| | | | buffer | device in communication with the digital audio tape and the random access storage device that temporarily stores data |

| U.S. No. 5,396,371 | Claim 8 | a random access storage device having a primary partition for storing audio data and a secondary partition for storing means for locating data on said primary partition and a pair of pointers in communication with said random access memory, a first of said pointers being operated to transmit data to said random access storage device and the second of said pointers being operative to retrieve audio data from said random access storage device | pair of pointers | digital information used to read data from and write data to a storage component |
|---|---|---|---|---|
| | | | partition | a portion of a random access storage (RAS) device |
| U.S. No. 7,010,109 | Claim 1 | initiating the data session by said first communication device with second communication device | communication device | device used for transmitting and/or receiving audio and/or video information |
| U.S. No. 7,010,109 | Claim 1 | implementing the data session as a conference call through a conference controller such that said first and second communication devices are connected, respectively, as first and second | conference call | a multi-participant session even if only two participants are present, one of which is a recording device |
| | | | through a conference controller | the data packet transmissions of the IP data session pass through the conference controller |
| | | | conference controller | a component that initiates, enables, and/or establishes a conference call |

| | | | participant | a communication device or recording device which is present on a conference call |
|---|---|---|---|---|
| U.S. No. 7,010,109 | Claim 1 | using the conference controller, selectively entering the recording device to said conference call as an additional participant, wherein the recording device is distinct from the first and second communication devices yet receives as the additional participant at least the portion of the IP data session from each of the first and second participants | recording device | a device which records IP audio and/or video data |
| | | | IP data session | the plurality of data packet transmission between any two or more communication devices |
| | | | the portion of the IP data session | all the data packets transmitted between the first and second participants during the part of the IP data session being recorded |
| U.S. No. 6,775,372 | Claim 1 | a) a telecommunications ("telecom") stage receiving input from a plurality of communication channels; | a telecommunications ("telecom") stage | the stage that serves to capture and preprocess signals from two or more communication channels and interfaces with the recorder stage |
| U.S. No. 6,775,372 | Claim 1 | c) a distribution stage providing access to data logged in the recorder stage | distribution stage | the stage that serves for retrieval of recorded information and providing it in a human recognizable form, and, in some instances, archiving the recorded information to removable storage |
| U.S. No. 6,775,372 | Claim 33 | The data logging system of claim 32, wherein the network server is a Web server. | Web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| U.S. No. 6,870,920 | Claim 1 | A method for accessing information in at least one digital logger storing data | digital logger | a device, system or software for recording audio in digital form |

| | | | | |
|---|---|---|---|---|
| | | associated with input from a plurality of input channels, comprising: | | |
| U.S. No. 6,870,920 | Claim 1 | at a Web server having access to said at least one digital logger, receiving a request for retrieval of stored data from a client; | Web server | a component that provides access to information accessible from a computer connected to the Internet or intranet |
| | | | digital logger | a device, system or software for recording audio in digital form |
| | | | receiving a request for retrieval of stored data from a client | the Web server receives a request for retrieval of stored data |
| U.S. No. 6,870,920 | Claim 1 | retrieving stored data in accordance with the received request | retrieving stored data | the Web server retrieves stored data |
| U.S. No. 6,870,920 | Claim 1 | and transferring the retrieved data to the client | transferring the retrieved data | the Web server sends the retrieved data |
| U.S. No. 6,870,920 | Claim 16 | A method for accessing information stored by at least one digital logger storing data associated with input from a plurality of communication channels, comprising: | digital logger | a device, system or software for recording audio in digital form |
| U.S. No. 6,870,920 | Claim 16 | at a Web server having access to said information stored by at least one digital logger over a communications network, receiving a request for retrieval of stored data from a user | web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| | | | digital logger | a device, system or software for recording audio in digital form |
| | | | receiving a request for retrieval of stored data from a client | the Web server receives a request for retrieval of stored data |

| | | | | |
|---|---|---|---|---|
| U.S. No. 6,870,920 | Claim 16 | retrieving said stored data from said information in accordance with the received request | retrieving stored data | the Web server retrieves stored data |
| U.S. No. 6,870,920 | Claim 16 | and transferring the retrieved data to the client | transferring the retrieved data | the Web server sends the retrieved data |
| U.S. No. 6,870,920 | Claim 21 | The method of claim 16 wherein the step of retrieving stored data comprises accessing archived data at the web server corresponding to a record of a communication channel made by said at least one digital logger | retrieving stored data | the web server retrieves stored data |
| | | | web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| | | | record of communication channel | stored voice and/or call information received from a communication channel |
| | | | digital logger | a device, system or software for recording audio in digital form |
| U.S. No. 6,249,570 | Claim 6 | receiving audio data regarding one or more telephone call segments relating to one or more telephone calls, and data regarding telephony events associated with said telephone call segments; | telephone call segments | portions of a telephone call that are each bounded by telephony events |
| | | | telephone call | the entire conversation between a business entity and a caller to that entity, including transfers and conferences |
| | | | telephony event | actions or occurrences detected by a computer program and that related to what happens to a phone call (such as the initiation of the call, the addition or removal of callers, the transfer of the phone call, or the termination of the calls) |

| U.S. No. 6,249,570 | Claim 6 | constructing a data representation of a lifetime of the telephone call using data regarding telephony events associated with the telephone call segments of the telephone call, wherein said data representation comprises, for each segment of the call, the location of the stored audio data of that segment and the start time, end time, and duration of that segment | data representation | digital representation of data |
|---|---|---|---|---|
| | | | lifetime of a telephone call | an entire telephone call |
| | | | data representation of a lifetime of the telephone call | call-centric data record of the telephone call that includes a detailed cumulative start-to-finish history of a telephone call, including all telephony events and participants |
| | | | telephone call segments | portions of a telephone call that are each bounded by telephony events |

Authorities:   Federal Circuit Bar Ass'n Model Patent Jury Instructions, 7.1; Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007); Memorandum of Tentative Claim Construction [D.I. 279].

## 3.2    CONSTRUCTION OF CLAIMS -WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is valid or infringed.

It may be helpful to refer to the copy of the patents in suit that you have been gives as I discuss the claims at issue here. The claims of the patent are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied:

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|---|---|---|---|---|
| U.S. No. 5,396,371 | Claim 1 | storing audio data from the audio source in a buffer | buffer | a device in communication with the digital audio tape and the random access storage device that temporarily stores data |
| U.S. No. 5, 396,371 | Claim 1 | writing the audio data from the buffer onto a digital audio tape and a random access storage device | digital audio tape | magnetic tape designed for storage of audio in digital form |
|  |  |  | writing the audio from the buffer onto a digital audio tape and a random access storage device | transferring audio data from the buffer directly to both a digital audio tape and a random access storage device |
|  |  |  | buffer | device in communication with the digital audio tape and the random access storage device that temporarily stores data |

| U.S. No. 5,396,371 | Claim 8 | a random access storage device having a primary partition for storing audio data and a secondary partition for storing means for locating data on said primary partition and a pair of pointers in communication with said random access memory, a first of said pointers being operated to transmit data to said random access storage device and the second of said pointers being operative to retrieve audio data from said random access storage device | pair of pointers | digital information used to read data from and write data to a storage component |
|---|---|---|---|---|
| | | | partition | a portion of a random access storage (RAS) device |
| U.S. No. 7,010,109 | Claim 1 | initiating the data session by said first communication device with second communication device | communication device | a device used for transmitting and/or receiving audio and/or video information |
| U.S. No. 7,010,109 | Claim 1 | implementing the data session as a conference call through a conference controller such that said first and second communication devices are connected, respectively, as first and second | conference call | a multi-participant session even if only two participants are present, one of which is a recording device |
| | | | through a conference controller | the data packet transmissions of the IP data session pass through the conference controller |
| | | | conference controller | a component that initiates, enables, and/or establishes a conference call |

| | | participants | participant | a communication device or recording device which is present on a conference call |
|---|---|---|---|---|
| U.S. No. 7,010,109 | Claim 1 | using the conference controller, selectively entering the recording device to said conference call as an additional participant, wherein the recording device is distinct from the first and second communication devices yet receives as the additional participant at least the portion of the IP data session from each of the first and second participants | recording device | a device which records IP audio and/or video data |
| | | | IP data session | the plurality of data packet transmission between any two or more communication devices |
| | | | the portion of the IP data session | all the data packets transmitted between the first and second participants during the part of the IP data session being recorded |
| U.S. No. 6,775,372 | Claim 1 | a) a telecommunications ("telecom") stage receiving input from a plurality of communication channels; | a telecommunications ("telecom") stage | the stage that serves to capture and pre-process signals from two or more communication channels and interfaces with the recorder stage |
| U.S. No. 6,775,372 | Claim 1 | c) a distribution stage providing access to data logged in the recorder stage | distribution stage | the stage that serves for retrieval of recorded information and providing it in a human recognizable form, and, in some instances, archiving the recorded information to removable storage |
| U.S. No. 6,775,372 | Claim 33 | The data logging system of claim 32, wherein the network server is a Web server. | Web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| U.S. No. 6,870,920 | Claim 1 | A method for accessing information in at least one digital logger storing data | digital logger | a device, system or software for recording audio in digital form |

| | | | | |
|---|---|---|---|---|
| | | associated with input from a plurality of input channels, comprising: | | |
| U.S. No. 6,870,920 | Claim 1 | at a Web server having access to said at least one digital logger, receiving a request for retrieval of stored data from a client; | Web server | a component that provides access to information accessible from a computer connected to the Internet or intranet |
| | | | digital logger | a device, system or software for recording audio in digital form |
| | | | receiving a request for retrieval of stored data from a client | the Web server receives a request for retrieval of stored data |
| U.S. No. 6,870,920 | Claim 1 | retrieving stored data in accordance with the received request | retrieving stored data | the Web server retrieves stored data |
| U.S. No. 6,870,920 | Claim 1 | and transferring the retrieved data to the client | transferring the retrieved data | the Web server sends the retrieved data |
| U.S. No. 6,870,920 | Claim 16 | A method for accessing information stored by at least one digital logger storing data associated with input from a plurality of communication channels, comprising: | digital logger | a device, system or software for recording audio in digital form |
| U.S. No. 6,870,920 | Claim 16 | at a Web server having access to said information stored by at least one digital logger over a communications network, receiving a request for retrieval of stored data from a user | web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| | | | digital logger | a device, system or software for recording audio in digital form |
| | | | receiving a request for retrieval of stored data from a client | the Web server receives a request for retrieval of stored data |

| U.S. No. 6,870,920 | Claim 16 | retrieving said stored data from said information in accordance with the received request | retrieving stored data | the Web server retrieves stored data |
|---|---|---|---|---|
| U.S. No. 6,870,920 | Claim 16 | and transferring the retrieved data to the client | transferring the retrieved data | the Web server sends the retrieved data |
| U.S. No. 6,870,920 | Claim 21 | The method of claim 16 wherein the step of retrieving stored data comprises accessing archived data at the web server corresponding to a record of a communication channel made by said at least one digital logger | retrieving stored data | the Web server retrieves stored data |
| | | | web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| | | | record of communication channel | stored voice and/or call information received from a communication channel |
| | | | digital logger | a device, system or software for recording audio in digital form |
| U.S. No. 6,249,570 | Claim 6 | receiving audio data regarding one or more telephone call segments relating to one or more telephone calls, and data regarding telephony events associated with said telephone call segments; | telephone call segments | portions of a telephone call that are each bounded by telephony events |
| | | | telephone call | the entire conversation between a business entity and a caller to that entity, including transfers and conferences |
| | | | telephony event | actions or occurrences detected by a computer program and that related to what happens to a phone call (such as the initiation of the call, the addition or removal of callers, the transfer of the phone call, or the termination of the calls) |

| U.S. No. 6,249,570 | Claim 6 | constructing a data representation of a lifetime of the telephone call using data regarding telephony events associated with the telephone call segments of the telephone call, wherein said data representation comprises, for each segment of the call, the location of the stored audio data of that segment and the start time, end time, and duration of that segment | data representation | digital representation of data |
| | | | lifetime of the telephone call | an entire telephone call |
| | | | data representation of a lifetime of the telephone call | call-centric data record of the telephone call that includes a detailed cumulative start-to-finish history of a telephone call, including all telephony events and participants |
| | | | telephone call segments | portions of a telephone call that are each bounded by telephony events |

Authority: *Federal Circuit Bar Ass'n Model Instruction No. 7.1*, D.I. 279, Memorandum on Tentative Claim Construction

## 3.3    DEPENDENT AND INDEPENDENT CLAIMS -JOINTLY PROPOSED JURY INSTRUCTIONS

There are two different types of claims in a patent. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends on at least one other patent claim and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 16 of the '920 patent is an independent claim. You know this because this claim mentions no other claim. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 21 of the '920 patent, on the other hand, is a dependent claim. Accordingly, the words of Claims 16 and 21 must be read together in order to determine what the dependent claim covers.

Some claims of the patent in suit are broader than other claims. You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.

Authorities:  Federal Circuit Bar Ass'n Model Patent Jury Instructions, 7.2; D. Del. Uniform Instruction, 3.3 Dependant and Independent Claims (1993); *Final Jury Instructions, Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); *Final Jury Instructions - Validity Trial, Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**3.4    MEANS-PLUS-FUNCTION CLAIMS- NICE'S PROPOSED JURY INSTRUCTIONS**

Part of claim 8 of the '371 patent is written in what is known as a "means plus function" format. The claim element is "means for locating data on said primary partition."

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop," and equivalents to the structure described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for claim 8, you must first determine whether Witness Systems' accused products perform the function of "locating data on said primary partition." If not, the claim containing that means-plus-function element is not infringed.

Second, if Witness Systems' accused products do perform the required function, you must identify the structure in Witness Systems' accused products that actually perform this function.

Third, you must determine whether those accused structures are the same as or equivalent to the following structure identified in the patent for performing the required function. The '371 patent generally describes the function of the "means for locating data on said primary partition" in Column 3, lines 12-35. The structure disclosed for "locating data on said primary partition" is

comprised of a record session table and index table.  The record session table keeps track of the time that audio data is being recorded on the primary partition and the index table indicates the location of the audio data on the primary partition.  If the structure of the accused devices is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of claim 8 is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to determine this is to look at whether or not the accused structures perform the identical function in substantially the same way to achieve substantially the same result.  Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure of the accused products and the structure in the patent were interchangeable.

Authorities:_ Uniform Jury Instr. for Patent Cases in the D. Del. 3.3.6 (2004); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

**WITNESS SYSTEMS' OBJECTION:**

NICE previously objected to any inclusion of instructions regarding "means plus function claims," 35 U.S.C. § 112 ¶ 6, claiming that the Court had not construed any claim language of the patents-in-suit as "means plus function."

In light of the NICE's withdrawal of multiple asserted claims and in light of the the Court's Memorandum on Tentative Claim Construction, Witness Systems agrees with NICE's previous position.  Witness Systems objects to the inclusion of any jury instruction which relates to the issue of whether any claim language should be construed under 35 U.S.C. § 112 ¶ 6 as

"means plus function." At this time, the Court has not construed any claim language of the patents-in-suit as "means plus function." If the Court finds that any language of the claims which remain in the case should be construction as "mean plus function" under 35 U.S.C. § 112 ¶ 6, Witness Systems reserves its right to submit proposed jury instructions for the Court's consideration.

Moreover, Witness Systems objects to NICE's proposed Jury Instruction, "3.4 MEANS-PLUS-FUNCTION CLAIMS-NICE'S PROPOSED JURY INSTRUCTIONS," which misstates the applicable law.

### 4.0    INFRINGEMENT

### 4.1    PATENT INFRINGEMENT GENERALLY - DIRECT INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS

A patent owner has the right to stop others from making, using, selling, offering to sell with the United States or importing into the United States the patented invention by filing a lawsuit for patent infringement. Here, NICE, the owner of the '371, '570, '372, '920, and '109 patents, has sued Witness Systems, the accused infringer, and has alleged that Witness Systems' products infringe one or more of the claims of each of these patents.

Patent law provides that any person or business entity which makes, uses, sells, offers to sell, or imports, without a patent owner's permission, any product legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

There are at least two ways to infringe a patent. One may directly infringe a patent literally or under the doctrine of equivalents. Direct infringement does not require intent. Alternatively, one may indirectly infringe a patent by inducing others to infringe a patent, in which case both the inducer and the direct infringer are liable for infringement.

You must consider each claim individually and reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Authorities:  Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); D. Del. Uniform Instruction, 3.4: Patent Infringement Generally (1993).

## 4.1    DIRECT INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

A person or company is liable for direct literal infringement of a patent where that person or company makes, uses, or sells a product or process described by the words in a patent claim in the United States during the term of the patent and without the authority of the patent owner. Intent to infringe is not required to establish infringement. Thus, NICE must prove by a preponderance of the evidence each of the following:

1.    That Witness Systems did not have the authority from NICE to make, use, sell, or offer to sell the apparatus or methods claimed under NICE's five asserted patents;

2.    That an apparatus or method made, used, sold, or offered for sale by Witness Systems includes each element or step of at least one asserted claim of NICE's five asserted patents. If Witness Systems' product or use of its products omits any single component, step, or element recited in NICE's patent claim, Witness Systems does not literally infringe that claim.;

3.    That Witness Systems has made, used, sold, or offered for sale the accused apparatus or methods within the United States, its Territories, or its Possessions.

You must consider these elements for each claim asserted by NICE. Remember, the question is whether Witness Systems products infringe any asserted claim of NICE's patent, and not whether Witness Systems' products are similar or not to products of NICE. Accordingly, you must be certain to compare Witness Systems' accused apparatus or method with each claim it is alleged to infringe and not with any apparatus made or method used by NICE or with a preferred embodiment presented in the patent disclosure.

## 4.2    PATENT INFRINGEMENT GENERALLY - INDIRECT INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. There are two types of indirect infringement – inducing infringement and contributory infringement. The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with components used in the patented invention is called "contributory infringement." There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that Witness Systems is inducing another person to infringe or contributing to the infringement of another, NICE must prove that it is more probable than not that the other person is directly infringing at least one claim of the patent. In this case, NICE accuses Witness Systems of inducing or contributing to the infringement of claims of the patents by its customers. NICE must prove that it is more probable than not that Witness Systems has induced or contributed to the infringement of any of these claims.

Authorities:  Federal Circuit Bar Ass'n Model Instruction, 8.12.

## 4.2    PATENT INFRINGEMENT GENERALLY - INDIRECT INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers.  There are two types of indirect infringement -- inducing infringement and contributory infringement.  The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others is called "contributory infringement.  There can be no indirect infringement unless someone is directly infringing the patent.  Thus, in order to prove that Witness Systems is inducing another person to infringe or contributing to the infringement of another, NICE must prove that it is more probable than not that the other person is directly infringing at least one claim of the patent.  In this case, NICE accuses Witness Systems of inducing or contributing to the infringement of claims of the patents.  NICE must prove that it is more probable than not that Witness Systems has induced or contributed to the infringement of any of these claims.

*Federal Circuit Bar Ass'n Model Instruction No. 8.12*

## 4.3    INFRINGEMENT - OFFER FOR SALE - WITNESS SYSTEMS' PROPOSED INSTRUCTION

I just told you that one of the ways that a patent may be infringed is if a person offers to sell in the United States, without the patent owner's permission, a product, apparatus, or method legally protected by at least one claim of a patent, before the patent expires. However, an offer for sale should be distinguished from an offer to sell a service. Offering to sell a service is not enough to find Witness Systems liable for patent infringement.

Source: *PharmaStem v. Therapeutics, Inc. v. ViaCell Inc., 491 F.3d 1357-9 (Fed. Cir. 2007).*

## NICE'S OBJECTION:

NICE objects to the inclusion of this jury instruction as it does not relate to any issue in the litigation. NICE has not asserted that a service that Witness Systems offers for sale infringes any of the claims of the patents-in-suit.

## 4.4    INDUCING PATENT INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS

Inducement to infringe requires someone purposefully urging or encouraging another to infringe a patent - inducement to infringe cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur without any intent to infringe. To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes the asserted patent claims. Merely having knowledge of the underlying acts of direct infringement by itself is not enough to prove active inducement. For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that Witness Systems induced infringement of a patent, NICE must prove by a preponderance of the evidence the following three things:

1.    Witness Systems actively encouraged or instructed another person how to use a product in a way, you, the jury, finds infringes the patent claims;

2.    Witness Systems knew of the patents in suit; and

3.    The other person infringed an asserted claim of the patent in suit.

All three of these things must be proven by either direct or circumstantial evidence before you may find that Witness Systems induced patent infringement.

Authorities: *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## 4.5    INDUCING PATENT INFRINGEMENT -WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Nice alleges that Witness Systems is liable for infringement by actively inducing someone else to directly infringe the patents in suit. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Witness Systems is liable for active inducement of a claim only if:

(1)    Witness Systems takes some action during the time the patent is in force which encourages acts by someone else; and

(2)    the encouraged acts constitute direct infringement of that claim; and

(3)    Witness Systems is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of that patent; and

(4)    Witness Systems has an intent to cause the encouraged acts; and

(5)    the encouraged acts are actually carried out by someone else

In order to prove active inducement, NICE must prove that each of the above requirements are met. Further, proof of each element must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements has been met.

In order to establish active inducement of infringement, it is not sufficient that whoever is allegedly induced to infringe itself directly infringes the claim. Nor is it sufficient that Witness Systems was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find specifically that Witness Systems specifically intended to infringe the patents in suit, in order to find inducement of infringement. If you do not find that Witness Systems specifically intended to infringe, then you must find that Witness Systems has not actively induced the alleged infringement.

Source: Fed. Cir. Bar Assoc. Model Jury Instructions 3.2 (2007)

## 4.6    CONTRIBUTORY INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS

Another form of indirect infringement is contributory infringement. Contributory infringement occurs when someone sells a component that is used to carry out a patented method or is used in a patented product. There can be no contributory infringement unless there is direct infringement. The component must be a material part of the claimed method. That is, the patent holder must establish that a component was sold and used in carrying out a method described in a claim of the patent and that the seller knew the component was especially made for that purpose and not a staple article suitable for a substantial non-infringing use. Thus, to prove its claim that Witness Systems is liable for contributory infringement, NICE must prove by a preponderance of the evidence that Witness Systems knew of the patent, sold or supplied a component that is not capable of substantial non-infringing use, and that Witness Systems sold or supplied the component with knowledge that the component was especially made for use in a manner that would fall within an asserted claim of NICE's asserted patents; and that the component is actually used by another in a manner that directly infringes the claim.

Authorities: Federal Circuit Bar Ass'n Model Instruction, 8.12.2.

## 4.7    CONTRIBUTORY INFRINGEMENT -WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

NICE argues that Witness Systems is liable for contributory infringement by contributing to the direct infringement of the patents in suit patent by someone else.    As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

Witness Systems is liable for contributory infringement of a claim only if:

(1)    Witness Systems sells, offers to sell, or imports within the United States a component of a product or process during the time the patent is in force; and

(2)    the only substantial use for the component is in a product or process that is covered by the claim, either directly or under the doctrine of equivalents, namely, the product has no substantial, non-infringing use other than the alleged infringing use; and

(3)    Witness Systems is aware of the patent and is on notice that the products or processes for which the component has no other substantial use may be covered by a claim of the patent or may satisfy a claim of the patent under the doctrine of equivalents; and

(4)    the component has been used by someone else in a manner that directly infringes the claim.

In order to prove contributory infringement, NICE must prove that each of the above requirements are met.    This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

## 4.7    INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS - JOINTLY PROPOSED JURY INSTRUCTIONS

In order to infringe a patent claim, a product or process must include every limitation of the claim. If Witness Systems' product or process omits a single structure or step recited in a claim, then you must find that Witness Systems has not infringed that claim. You must consider each of the patent claims separately.

A claim limitation may be present in an accused product or process in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product or process just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim limitation is present in an accused product or process under the doctrine of equivalents if the differences between them are insubstantial. One way to determine this is to look at whether or not the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. Another way is to consider whether or not people of ordinary skill in the art believe that the structure or step of the accused product or process and the structure or step recited in the patent claim limitation are interchangeable.

Equivalency is determined at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes. In addition, the question is whether the accused product or

process contains an equivalent for each element of the claim that is not literally present in the accused device. The question is not whether the accused product or process as a whole is equivalent to the claimed invention as a whole.

Authorities: *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Bayer AG v. Elan Pharm, Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (en banc); *Federal Circuit Bar Ass'n Model Patent Jury Instructions*, 8.3 (2007); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

**4.8    SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

There are four situations where resort to the doctrine of equivalents to find infringement is not permitted.

First, resort to the doctrine of equivalents to find infringement is not permitted if you find that Witness Systems is merely practicing what was in the art prior to the patented invention or that which would have been obvious in light of what was in the prior art. This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office.

Second, you may not find infringement under the doctrine of equivalents even if only one limitation of a claim or its equivalent is missing from the accused device. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Third, you may not find that a product infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature of that product was described somewhere in the patent and (2) that product is not covered literally by any of the claims of the patent.

Fourth, you may not find infringement under the doctrine of equivalents for the following claims: WITNESS SYSTEMS RESERVES THE RIGHT TO LIST THE CLAIMS WHERE JUDGE FARNAN HAS RULED THAT NICE GAVE UP DOCTRINE OF EQUIVALENTS GROUND THROUGH ITS ACTIONS BEFORE THE PTO.

Source: *Fed. Cir. Bar Assoc. Model Jury Instructions 3.1d (2007)*

**NICE'S OBJECTIONS:**

NICE object as these issues should not be presented to the jury and may confuse the jury. NICE further objects to the inclusion of this specific instruction as the Court has not decided if any limitation on the doctrine of equivalents is applicable to this case. NICE also objects to the inclusion of this specific jury instruction as it is duplicative of other instructions on infringement. If the Court finds that a limitation to the doctrine of equivalents is applicable to this case, NICE reserves its right to submit proposed jury instructions for the Court's consideration

**4.9    WILLFUL INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS**

If you find on the basis of the evidence and the law as I have explained it that Witness Systems' product infringes at least one of the claims of the five NICE patents in this case, you must further decide whether or not NICE has proven that Witness Systems' infringement was willful. While infringement is proven by a preponderance of the evidence, willful infringement must be proven by clear and convincing evidence.

To prove willful infringement, NICE must satisfy a two-part test.

The first part of the test is objective. NICE must persuade you by clear and convincing evidence that Witness Systems acted despite an objectively high likelihood that its actions constituted infringement of a valid claim of at least one of the five NICE patents in this case. The state of mind of Witness Systems is not relevant for this objective inquiry. You should focus on whether a reasonable person in the position of Witness Systems, after learning of each of NICE's patents, could have reasonably believed that it did not infringe each patent or reasonably believed that each patent was invalid. If and only if a reasonable person in the position of Witness Systems could not have held such a belief, then you would need to consider the second part of the test.

The second part of the test does depend on the state of mind of Witness Systems. NICE must persuade you by clear and convincing evidence that Witness Systems knew, or it was so obvious that Witness Systems should have known, that its actions constituted infringement of a valid claim of at least one of the five NICE patents in this case.

For each of the five NICE patents in the case, you should determine whether NICE has proven by clear and convincing evidence that Witness has willfully infringed that patent.

Authorities: *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007).

## 4.9    WILLFUL INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

If you find on the basis of the evidence and the law as I have explained it that Witness Systems' product infringes at least one of NICE's patent claims, you must further decide whether or not NICE has proven by clear and convincing evidence that Witness Systems' infringement was willful. To prove willful infringement, NICE must satisfy a two-part test.

The first part of the test is objective. NICE must persuade you by clear and convincing evidence that Witness Systems acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of Witness Systems is not relevant for this inquiry. You should focus on whether a reasonable business person in the position of Witness Systems, after learning of the patent, could have reasonably believed that it did not infringe or reasonably believed the patent was invalid or unenforceable. If and only if a reasonable business person in the position of Witness Systems could not have held such a belief, then you would need to consider the second part of the test.

The second part of the test does depend on the state of mind of Witness Systems. NICE must persuade you by clear and convincing evidence that Witness Systems actually knew, or it was so obvious that Witness Systems should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether NICE has proven willful infringement, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

(1)    Whether Witness Systems acted in a manner consistent with the standards of commerce for its industry;

(2)    whether Witness Systems intentionally copied a product of NICE covered by one of the patents in suit; and

(3)    whether Witness Systems tried to "design around" the patent by designing a product that Witness Systems believed did not infringe the patent claims.

Source: *In re Seagate Tech., LLC, 497. F.3d 1360 (Fed. Cir. 2007)*

## 5.0    INVALIDITY

### 5.1    INVALIDITY - NICE'S PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the claims of the patents-in-suit are invalid for failure to satisfy the legal requirements of patentability.  In particular, Witness Systems contends that the asserted claims are invalid for anticipation, obviousness, lack of enablement, inadequate written description, and/or indefiniteness.  I will now instruct you on each of these defenses.

<u>Authorities</u>:    Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**5.2    PRESUMPTION OF VALIDITY - NICE'S PROPOSED JURY INSTRUCTIONS**

The granting of a patent by the United States Patent Office carries with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

This presumption of validity puts the burden of proving invalidity on Witness Systems. While this presumption can be rebutted, the burden is on Witness Systems to do so. This burden requires that Witness Systems prove by clear and convincing evidence that in this case, each of the asserted claims is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable.

The burden of proving invalidity is heightened when the accused infringer attempts to rely on prior art that was before the examiner of the Patent and Trademark Office during prosecution of the patent at issue. When the prior art was already before the examiner during prosecution of the patent and the examiner granted the patent, part of the accused infringer's burden is to show the examiner was wrong in his/her decision to grant the patent.

Each of the asserted claims is presumed valid independently of the validity of each other claim.

<u>Authorities</u>:   Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007); *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984).

## 5.2    PRESUMPTION OF VALIDITY - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

The granting of a patent by the United States Patent Office carries with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

This presumption of validity puts the burden of proving invalidity on Witness Systems. While this presumption can be rebutted, the burden is on Witness Systems to do so. This burden requires that Witness Systems prove by clear and convincing evidence that in this case, each of the asserted claims is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable.

Each of the asserted claims is presumed valid independently of the validity of each other claim.

Authorities:    Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 5.3    ANTICIPATION - NICE'S PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the inventions covered by the asserted claims of the patents are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. If the invention is not new, we say that it was "anticipated" by prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made. Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. In order to prove that an invention is "anticipated," Witness Systems must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention. All the requirements of the claim must be in the single piece of prior art, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the art in the technology of the invention at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one reference would be able to make and use the claimed invention.

In addition, the prior art reference must be sufficiently detailed to enable those skilled in the art to practice the claimed invention of the patent. To meet this requirement, Witness Systems must prove that the prior art reference would allow a person of ordinary skill in the art to practice the claimed invention without undue experimentation.

Authorities:  Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007); Federal Circuit Bar Ass'n

Model Patent Jury Instructions, 4.3a1; Uniform Jury Instr. for Patent Cases in the D. Del. 3.3.6 (2004).

## 5.3    ANTICIPATION - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the inventions covered by certain claims of the patent-in-suit are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention or disclosed the claimed invention sufficiently that a person of ordinary skill in the art could take its teachings together with his own knowledge of the art and be in possession of the claimed invention. If the invention is not new, we say that it was "anticipated" by prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include things such as articles, other patents, products, and more. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. In order to prove that an invention is "anticipated," Witness Systems must prove that it is highly probable that a single piece of prior art describes or discloses all of the elements of the claimed invention. Essentially, an invention is anticipated if a person skilled in the field of the invention aware of the prior art would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. However, it is not necessary that an invention disclosed in the prior art have actually been made to satisfy this requirement.

Source: *Uniform Jury Instr. for Patent Cases in the D. Del. 4.5; In re Graves, 69 F.3d 1147, 1152 (Fed. Cir. 1995) (citing In re LeGrice, 301 F.2d 929 (CCPA 1962)); In re Donohue, 766 F.2d 531, 533 (Fed. Cir. 1985).*

### 5.3.1  ANTICIPATION OF MEANS-PLUS-FUNCTION CLAIMS- -NICE'S PROPOSED JURY INSTRUCTIONS

Part of claim 8 of the '371 patent is written in what is known as a "means plus function" format.  The claim element is "means for locating data on said primary partition."

A means-plus-function element is a claim element that claims a means for performing a specified function.  For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop.  The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop," and equivalents to the structures described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language and anticipation.  First, the prior art reference must describe or disclose all of the elements of the claimed invention.  Specifically, for claim 8, you must first determine whether the prior art describes or discloses the function of "locating data on said primary partition."  If not, the claim containing that means-plus-function element is not anticipated.

Second, if Witness Systems' prior art reference does describe or disclose all of the elements of the claimed function, you must identify the structure in Witness Systems' prior art that actually performs this function.

Third, you must determine whether the structure described or disclosed in the prior art reference is the same as or equivalent to the following structure identified in the patent for performing the required function.  The '371 patent generally describes the function of the "means for locating data on said primary partition" in Column 3, lines 12-35.  The structure disclosed for "locating data on said primary partition" is comprised of a record session table and index table.  The record session table keeps track of the time that audio data is being recorded on

the primary partition and the index table indicates the location of the audio data on the primary partition.  If the structure described in the prior art reference is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of claim 8 is anticipated.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to determine this is to look at whether or not the structure disclosed in the prior art reference performs the identical function in substantially the same way to achieve substantially the same result.  Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure disclosed in the prior art reference and the structure in the patent were interchangeable.

Authorities: Uniform Jury Instr. for Patent Cases in the D. Del. 3.3.6 (2004); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

**WITNESS SYSTEMS' OBJECTION:**

NICE previously objected to any inclusion of instructions regarding "means plus function claims," 35 U.S.C. § 112 ¶ 6, claiming that the Court had not construed any claim language of the patents-in-suit as "means plus function."

In light of the NICE's withdrawal of multiple asserted claims and in light of the the Court's Memorandum on Tentative Claim Construction, Witness Systems agrees with NICE's previous position.  Witness Systems objects to the inclusion of any jury instruction which relates to the issue of whether any claim language should be construed under 35 U.S.C. § 112 ¶ 6 as "mean plus function."  At this time, the Court has not construed any claim language of the patents-in-suit as "means plus function."  If the Court finds that any language of the claims which remain in the case should be construction as "mean plus function" under 35 U.S.C. § 112

¶ 6, Witness Systems reserves its right to submit proposed jury instructions for the Court's consideration.

**5.3.2   PRIOR PUBLIC USE -- JOINTLY PROPOSED JURY INSTRUCTIONS**

Witness Systems contends that claim ___ of the ___ patent was anticipated because the invention defined in that claim was publicly used one year prior to the filing date of the patent.

A prior public used by any person, including NICE or any NICE inventor, who is under no limitation, restriction or obligation of secrecy by the inventor, may invalidate the patents-in-suit if it occurred one year or more prior to the filing date of the patent.

An invention is publicly used by another when it is made accessible to any member of the public   other than the inventor or a person under an obligation of secrecy imposed by the inventor.

Authorities:   Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

### 5.3.3   PRIOR PUBLICATION -NICE'S PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the patents-in-suit were anticipated because the invention defined in their claims was described in a prior publication, such as an article or another patent. The prior publication can include publications by the inventor or by NICE. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either (i) before the patentee made his invention; or (ii) more than one year before the effective filing date of the patentee's patent application.

For a printed publication to anticipate the claims of the patent, Witness Systems must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the patent claim. In addition, the disclosure in the printed publication must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at the time.

Authorities:   Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

### WITNESS SYSTEMS' OBJECTIONS:

Witness Systems objects to this instruction as unnecessary and redundant of other proposed instructions.

### 5.3.4    PRIOR "ON SALE" PRODUCTS-NICE'S PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the asserted claims are invalid because of a prior sale by a third party.

The on-sale bar applies when: (i) an embodiment of the patent is the subject of a commercial offer for sale more than one year before the patent application date; and (ii) the invention was ready for patenting at that time.    In this case, the critical date is _____. Therefore, the ____ patent may be invalid if you find that the invention claimed in the ____ patent was "on sale" before _____.

To establish a commercial offer for sale, Witness Systems must demonstrate that there was a definite sale or offer for sale in the United States before _____, and that the subject matter of the sale or offer for sale anticipated the claimed invention, or would have rendered the claimed invention obvious.

A commercial offer for sale occurs when an offer can be accepted in order to make a binding contract.    Determining if a commercial offer has been made requires looking closely at the language in the proposal itself and the interactions between the parties.

An invention is ready for patenting either through a reduction to practice or by proof that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

A single sale or even a single offer to sell primarily for profit, rather than for experimental purposes, is sufficient to trigger the on-sale bar, even if the offer is not accepted.

<u>Authorities</u>: Uniform Jury Instr. for Patent Cases in the D. Del. 4.7 (2004).

## 5.3.4    PRIOR "ON SALE" PRODUCTS-WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the asserted claims are invalid because of the on-sale bar. It is against public policy to allow an inventor to commercially exploit his invention by selling or offering it for sale more than one year before the effective filing date of the patent, because this would have the effect of extending the term of the patent as fixed by Congress.

The on-sale bar applies when: (i) an embodiment of the patent is the subject of a commercial offer for sale more than one year before the patent application date; and (ii) the invention was ready for patenting at that time.    In this case, the critical date is _____. Therefore, the ____ patent may be invalid if you find that the invention claimed in the ____ patent was "on sale" before _____.

If you find that such offers for sale were made, then the responsibility shifts to NICE to prove that the offers were for an experimental use or did not involve completely functional machines or processes.

Source:  Uniform Jury Instr. for Patent Cases in the D. Del. 4.7 (2004).

## NICE'S OBJECTION:

NICE objects to this instruction because it misstates the law.  Witness Systems' misstates NICE's burden with regards to offers for sale.  NICE must come forward with evidence that the use was experimental or did not involve completely functional machines or processes, but at all times the burden of proof remains with Witness Systems to show that the sale or offer for sale was for a commercial use. Therefore, NICE objects to this instruction as it will confuse the jury with respect to the applicable burden of proof.

<u>Authorities</u>: Uniform Jury Instr. for Patent Cases in the D. Del. 4.7.1 (2004); *City of Elizabeth v. Am. Nicholson Pavement Co.,* 97 U.S. 126 (1877); *Lough v. Brunswick Corp.*, 103 F.3d 1517 (Fed. Cir. 1997); *Pechiney Rhenau v. Alcoa, Inc.*, C.A. No. 99-301-SLR (Jan. 18, 2001).

### 5.3.5    ON-SALE BAR-COMMERCIAL OFFER FOR SALE-WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

In order for there to be an offer for sale, two requirements must be met: (i) the product must have been the subject of a commercial offer for sale; and (ii) the product must be "ready for patenting."

To establish a commercial offer for sale, Defendant must demonstrate that there was a definite sale or offer for sale in the United States before [the critical date], and that the subject matter of the sale or offer for sale anticipated the claimed invention by its addition to the prior art, or would have rendered the claimed invention obvious when the subject matter of the sale or offer for sale is added to what was known in the art.

An invention is ready for patenting either through a reduction to practice or by proof that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

A single sale or even a single offer to sell primarily for profit, rather than for experimental purposes, is sufficient to trigger the on-sale bar, even if the offer is not accepted.

Source: Uniform Jury Instr. for Patent Cases in the D. Del. 4.7.1 (2004).

## 5.3.6   PRIOR INVENTION - JOINTLY PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the patents in suit are invalid because the prior art shows others invented the invention before NICE did.

In the United States, a patent is awarded to the first inventor. A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed with an enabling disclosure or when the invention is actually made and is shown to work for its intended purpose. If another person reduces to practice an invention before the inventor on the patent, then the invention reduced to practice by the other person generally will be prior art.

There is, however, an important exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she exercised reasonable diligence in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has formed a definite and permanent idea of how to make and use each and every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort. An idea is defined and permanent when the inventor has a specific, settled idea or a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. Where a party seeks to show conception through oral testimony of an inventor, corroboration of this evidence is required.

Authorities: 35 U.S.C. § 102(g); *Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1578 (Fed. Cir. 1996)*; Federal Circuit Bar Ass'n Model Patent Jury Instructions, 10.6, 10.6.8; Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 5.3.7    DILIGENCE - JOINTLY PROPOSED JURY INSTRUCTIONS

I will now define for you the meaning of the term "diligence." As I just explained, priority of invention usually goes to the party who first reduces to practice an invention. However, there is an important exception to this rule. Where a party is first to conceive but second to reduce to practice, that party will be the first inventor if it can show reasonable diligence during the critical period.

The critical period starts on a date just prior to the other party's conception. Thus, lapses in diligence before the other party's conception (i.e., before the critical period) are irrelevant. Once diligence during the critical period begins, it must continue uninterrupted until the inventor either actually or constructively reduces to practice the invention.

The question of diligence must be considered in light of all the circumstances. The question is whether the inventor was pursuing his or her goal in a reasonable fashion. If the inventor was doing things reasonably necessary to reduce the invention to practice, then he or she was diligent even if he or she did not actually work on the invention every day. Inactivity can be justified by the reasonable everyday problems and limitations encountered by an inventor.

Authorities:    *Jury Instructions for Mycogen v. Monsanto*, C.A. No. 96-505-RRM, D. Del.; *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1316 (Fed. Cir. 2001); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996); Final Jury Instructions - *Validity Trial, Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**5.3.8    CORROBORATION - JOINTLY PROPOSED JURY INSTRUCTIONS**

Conception must be proved by corroborated evidence which shows that the inventor disclosed to others his complete thought expressed in such clear terms as to enable those skilled in the art to make the invention. However, there is no final single formula that must be followed in proving corroboration. Rather, the sufficiency of corroborative evidence is determined by the "rule of reason." Accordingly, you must make a reasonable analysis of all of the pertinent evidence to determine whether the inventor's testimony is credible. You must also bear in mind the purpose of corroboration, which is to prevent fraud, by providing independent confirmation of the inventor's testimony. Conception by an inventor, for the purpose of establishing priority, cannot be proved solely by an inventor's mere allegation nor by an inventor's unsupported testimony; it must be supported by evidence of disclosure to others, or an embodiment of the invention in some clearly perceptible form, such as drawings or models, with sufficient proof of identity in point of time.

Authorities: *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 1363 (Fed. Cir. 2001); Final Jury Instructions - *Validity Trial, Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**5.3.9    REDUCTION TO PRACTICE - NICE'S PROPOSED JURY INSTRUCTIONS**

To constitute prior invention, a reduction to practice must meet all the limitations of the patent claim. "Reduction to practice" may be established in two ways. Reduction to practice may be established by a "constructive" reduction to practice or an "actual" reduction to practice.

A constructive reduction to practice occurs when a patent application describing the claimed invention is filed with the United States Patent and Trademark Office.

An actual reduction to practice of a claimed invention occurs when the inventor or persons working at his/her direction construct a physical embodiment meeting each and every limitation of the claimed invention that is shown to work for its intended purpose.

Authorities:    Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**WITNESS SYSTEMS' OBJECTION:**

Witness Systems objects to the inclusion of any instruction regarding reduction to practice. On October 2, 2007, the Court entered a Joint Stipulated Order, which states, "NICE confirms that it does not contend and will not file any contentions that any of the claimed inventions were reduced to practice any earlier than the patent application filing date to which the relevant patent claims priority." Accordingly, NICE is barred from presenting any evidence regarding reduction to practice, and therefore this proposed instruction is unsupported by the evidence in this case.

5.4    **OBVIOUSNESS - NICE'S PROPOSED JURY INSTRUCTIONS**

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.    Determine the scope and content of the prior art;

2.    Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.    Consider objective factors of non-obviousness.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patent at issue, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment. Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or unobvious to a person of ordinary skill in the pertinent art.

<u>Authorities</u>:  Federal Circuit Bar Ass'n Model Patent Jury Instructions, 10.9; D. Del. Uniform Instruction, 4.8: Obviousness (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007); *KSR International Co. v. Teleflex Inc. et al.*, 127 S. Ct. 1727 (2007).

## 5.4    OBVIOUSNESS - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made. If it would have been obvious for a skilled person who knew of the prior art to make the claimed invention, then the patent claims are invalid.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.     Determine the scope and content of the prior art relied upon by Witness Systems;

2.     Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

3.     Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.     Consider objective factors of non-obviousness.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patents in suit, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment. Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious to a person of ordinary skill in the pertinent art.

Source: *Uniform Jury Instr. for Patent Cases in the D. Del. 4.8; KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742-43 (Apr. 30, 2007).*

**NICE'S OBJECTION**

NICE objects to this instruction because it appears to require a determination of the scope and content of prior art based only on the prior art relied upon by the Witness Systems, the defendant. This instruction improperly narrows and misstates the determination of the "scope and content of the prior art." *See Graham v. John Deere Co. of Kansas City,* 383 U.S. 1 (1965).

**5.4.1 SCOPE AND CONTENT OF THE PRIOR ART - JOINTLY PROPOSED JURY INSTRUCTIONS**

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. The prior art that Witness Systems contends render the patents-in-suit obvious includes the following:

1.     prior patents that issued before the critical date for a particular patent;

2.     prior publications having a publication date before the critical date for a particular patent;

3.     U.S. Patents that have a filing date prior to the critical date for a particular patent;

4.     anything in public use or on sale in the United States before the critical date for a particular patent;

5.     anything that was publicly known or used by others in this country before the date of invention of a patent-in-suit; and

6.     anything that was made or built or any process that was used in this country by another person before the date of invention of a patent-in-suit, where the thing made or built or the process used was not abandoned, suppressed or concealed.

Authorities: Federal Circuit Bar Ass'n Model Patent Jury Instructions, 10.9.1; D. Del. Uniform Instruction, 4.8.1: Scope and Content of the Prior Art (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**5.4.2  DIFFERENCES OVER THE PRIOR ART - JOINTLY PROPOSED JURY INSTRUCTIONS**

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences. The test is whether the claimed invention as a whole would have been obvious after considering all of the prior art. Each claim must be considered separately and in its entirety.

Authorities:  Federal Circuit Bar Ass'n Model Patent Jury Instructions, 10.9.2; D. Del. Uniform Instruction, 4.8.2: Differences Over the Prior Art (1993).

### 5.4.3    LEVEL OF ORDINARY SKILL - NICE'S PROPOSED JURY INSTRUCTIONS

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made. A person of ordinary skill is not the inventor, but rather a hypothetical person who is presumed to be aware of all the prior art at the time of the invention. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology and the education of others working in the field.

Authorities: Federal Circuit Bar Ass 'n Model Patent Jury Instructions, 10.9.3; D. Del. Uniform Instruction, 4.8.3: Level of Ordinary Skill (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**5.4.3    LEVEL OF ORDINARY SKILL - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made. A person of ordinary skill is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, the person of ordinary skill in the art is able to apply his experience and ability to the problem and look to any available prior art. Also, this person is a person of ordinary creativity, not an individual who acts in a mechanical fashion.

Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology, and the education of others working in the field.

Source: *Uniform Jury Instr. for Patent Cases in the D. Del. 4.8.3.*

### 5.4.4   HINDSIGHT - NICE'S PROPOSED JURY INSTRUCTIONS

The question of obviousness is simple to ask but difficult to answer.   A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.   If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or modify these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.   It is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.

Authorities:   D. Del. Uniform Instruction, 4.8.5: Obviousness - Hindsight (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

### WITNESS SYSTEMS' OBJECTION:

Witness Systems objects to this instruction and instead proposes Instruction 5.6.4 –

"REASON TO COMBINE."

### 5.4.5   REASON TO COMBINE - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTION

Among the factors you may consider in determining whether multiple prior art references render a patent obvious are whether there was some apparent reason to combine or modify the references and whether the combination would be reasonably likely to achieve the goal of the invention.

When making an obvious determination, you should not dispense with common knowledge or common sense, which teaches that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle. Additionally, the fact that a combination was "obvious to try" might show that a patent claim was obvious in the case where there is a problem to be solved for which: (1) there exists a finite number of identified, predictable solutions, (2) a person of ordinary skill has good reason to pursue the known options within his or her technical grasp to arrive, and (3) pursuing these known options leads to an anticipated success that is likely the product of ordinary skill and common sense and not innovation.

Besides common sense and common knowledge, any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. Also, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls. One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.

Source: *KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742–43 (April 30, 2007).*

**NICE'S OBJECTION:**

NICE objects to the inclusion of this jury instruction as it misinterprets the *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727,1742–43 (April 30, 2007).   NICE further objects to the complexity of the instruction as it may confuse the jury.   NICE's proposed instruction entitled "Hindsight" should sufficiently instruct the jury.

### 5.4.6   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS) - JOINTLY PROPOSED JURY INSTRUCTIONS

Lastly, in making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence which may tend to show non-obviousness of the patent claims at issue:

1.    Commercial success or lack of commercial success of products covered by the patents-in-suit;

2.    A long felt need in the art which was satisfied by the invention of the patent-in-suit;

3.    The failure of others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by the infringer or others in the field.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.   For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or features of the product other than those claimed in the patent-in-suit, then commercial success may have no relation to the issue of obviousness.

Authorities:   D. Del. Uniform Instruction, 4.8.4: Objective Criteria Concerning Obviousness (Secondary Considerations) (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 6.0    ENFORCEABILITY

### 6.1    LACHES - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Witness Systems has alleged a defense to NICE's claim of patent infringement called laches. The defense of laches, if proven by Witness Systems by a preponderance of the evidence, prevents NICE from recovering damages prior to the filing of the lawsuit. The defense applies to the patents in suit.

Witness Systems must prove two factors: first, that NICE delayed in bringing a lawsuit for an unreasonable and inexcusable length of time after it knew or should have known of the potential infringement; and second, that the delay results in material prejudice or injury to Witness Systems.

The delay that must be considered in this case is the period of time beginning when NICE first knew of, or reasonably should have known of, Witness Systems or Eyretel's allegedly infringing activities and ending when NICE filed this lawsuit.

Prejudice to Witness Systems can be either economic or evidentiary. Economic prejudice is harm that results from a change in Witness Systems' economic position during the period of delay. Another factor to consider is whether Witness Systems' losses as a result of its change in economic position could have been avoided if NICE had filed this lawsuit sooner.

Evidentiary prejudice is harm that results to Witness Systems from the passage of time such that Witness Systems' ability to present defenses to NICE's patents have been impaired. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.

If you find that NICE delayed filing this lawsuit for more than six years, then a presumption of laches is inferred. NICE can overcome this presumption only if it shows either that its delay in bringing suit was not unreasonable, or that Witness Systems was not prejudiced by NICE's delay.

There is no set list of acceptable or unacceptable justifications for an otherwise unreasonable delay in bringing a lawsuit. Any particular justification or excuse offered by NICE in this case must be evaluated in light of the facts and circumstances that existed during the period of delay in this case.

Source: *35 U.S.C. § 282; A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir.1992) (en banc); Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770 (Fed. Cir. 1995). Fed. Circuit Bar Assoc., Model Patent Jury Instructions (2007); Jury Instructions for St. Clair Intellectual Prop. Consultants, Inc. v. Fuji Photo Fil Co. Ltd., C.A. No. 03-241 JJF (2004).*

## NICE'S OBJECTION:

NICE objects to the inclusion of any jury instruction which relates to the issue of the enforceability of the NICE patents as that issue is for the Court to decide, not the jury. NICE further objects as the presentation of facts related to the issue of enforceability may unfairly prejudice the jury. If the Court decides to present the issue of the enforceability of the patents-in-suit to the jury, NICE reserves its right to submit proposed jury instructions for the Court's consideration.

## 6.2    EQUITABLE ESTOPPEL - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Witness Systems has alleged a defense to NICE's charge of patent infringement called equitable estoppel. To prove equitable estoppel, Witness Systems bears the burden of proving by a preponderance of evidence three factors: first, that NICE created, through words, conduct or silence, a misleading inference that it did not intend to press an infringement claim against Witness Systems; second, that Witness Systems substantially relied upon NICE's misleading conduct, and third, that Witness Systems will suffer material economic or evidentiary prejudice if NICE is permitted to proceed with its infringement claim. If you find that equitable estoppel is established, it would preclude recovery by NICE on the patents in suit.

Witness Systems contends that NICE misled Witness Systems about the patents in suit. Whether in fact NICE communicated with Witness Systems about the patents in suit prior to the filing of this lawsuit, and whether in fact that communication was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time and in the way that reasonably prudent businesspeople would have viewed them.

With respect to proving the second factor, Witness Systems must show that it in fact substantially relied on NICE's alleged misleading conduct in connection with taking some action. There must be a causal connection between NICE's lulling Witness Systems into a false sense of security and Witness Systems' action taken in reliance on NICE's communication or relationship with them.

Significant harm to Witness Systems can be economic or evidentiary in form. The same considerations that apply in the laches context apply here with equal force.

Source: *35 U.S.C. § 282; A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992) (en banc); Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770 (Fed. Cir.*

*1995). Fed. Circuit Bar Assoc. Model Jury Instructions (2007); Jury Instructions for St. Clair Intellectual Prop. Consultants, Inc. v. Fuji Photo Fil Co. Ltd., C.A. No. 03-241 JJF (2004).*

## NICE'S OBJECTION:

NICE objects to the inclusion of any jury instruction which relates to the issue of the enforceability of the NICE patents as that issue is for the Court to decide, not the jury.  NICE further objects as the presentation of facts related to the issue of enforceability may unfairly prejudice the jury.  If the Court decides to present the issue of the enforceability of the patents-in-suit to the jury, NICE reserves its right to submit proposed jury instructions for the Court's consideration.

## 7.0   DAMAGES

### 7.1   DAMAGES GENERALLY - JOINTLY PROPOSED JURY INSTRUCTIONS

I have now instructed you as to the law governing NICE's claims of patent infringement and Witness Systems' claims of invalidity. If you find that Witness Systems has infringed a valid claim of any patent, then you must determine what damages Witness Systems must pay to NICE for that infringement. If, on the other hand, you find that Witness Systems has not infringed a valid claim of any patent, then NICE is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that NICE is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that Witness Systems infringed a valid claim of any patent.

<u>Authorities</u>: Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.

## 7.2    COMPENSATORY PATENT DAMAGES IN GENERAL - NICE'S PROPOSED JURY INSTRUCTIONS

If you find that any claim of any patent is both valid and infringed, then the patent owner is entitled to damages adequate to compensate for the infringement. Your damages award, if you reach this issue, should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. I will give you more detailed instructions on the calculation of a reasonable royalty shortly. In determining damages, you must decide how much financial harm the patent owner has suffered by reason of the infringement. The question you must answer is: What would the patent owner have made had the infringer not infringed? Damages are only to compensate NICE, to put NICE into the position it would have been in if Witness Systems had not infringed. You may not add anything to the amount of damages to punish Witness Systems, or to set an example.

Authorities: 35 U.S.C. § 284 (2001); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.1; Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## 7.2     COMPENSATORY PATENT DAMAGES IN GENERAL -WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

If you find that any claim of any patent is valid, enforceable and infringed, then the patent owner is entitled to damages adequate to compensate for the infringement. Your damages award, if you reach this issue, should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. I will give you more detailed instructions on the calculation of a reasonable royalty shortly.

Damages are only to compensate NICE, to put NICE into the position it would have been in if Witness Systems had not infringed. You may not add anything to the amount of damages to punish Witness Systems, or to set an example.

## AUTHORITIES

35 U.S.C. § 284 (2001); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).

### 7.2.1   NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS - NICE'S PROPOSED JURY INSTRUCTIONS

NICE can recover damages for infringement that occurred only after NICE gave notice of its patent rights. It is NICE's burden to prove by the more probable than not standard that it gave notice.

NICE can give notice in two ways. The first way is to give notice to the public in general. NICE can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patented invention. This type of notice is effective from the date NICE began to mark substantially all of its products that use the patented invention with the patent number. If NICE did not mark substantially all of its products that use the patented invention with the patent number, then NICE did not provide notice in this way.

A second way NICE can provide notice of its patent is to tell Witness Systems that it is infringing the patent and to identify the product that was infringing. This type of notice is effective from the time it is given.

As I said, NICE may recover damages only from the time it gave notice of its patent, either by the marking of products or by telling Witness Systems of its infringement. If you find that NICE did not do either of these before beginning this lawsuit, then NICE can only recover damages for infringement that occurred after it sued Witness Systems on [date].

Authorities: Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.1.1.

### 7.2.1  DATE DAMAGES MAY BEGIN - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS[*]

In this case, there are no damages for acts of infringement prior to (**X**).

If you believe that Witness Systems' products infringe on NICE's patents, then NICE's damages are limited to acts occurring after NICE had given Witness Systems notice of infringement. The notice can be accomplished in one of two ways:

1.      NICE marked its products with the patent numbers.

2.      NICE provided Witness Systems with actual notice. Mere notice that the patents exist or that the NICE owned particular intellectual property is not sufficient. The actual notice requirement is satisfied if Witness Systems was informed of the identity of the patents and the activity that NICE believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise.

Source:  See Fed. Cir. Bar Assoc. Model Jury Instructions 6.8 (2007)

---

[*]      Witness Systems reserves the right to provide appropriate dates for each asserted patent and/or claim once Judge Farnan rules on its motions in limine.

### 7.3   TWO TYPES OF DAMAGES -- LOST PROFITS & REASONABLE ROYALTY - NICE'S PROPOSED JURY INSTRUCTIONS

There are two types of damages for patent infringement.

The first type of damages is lost profits.  Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.  I will discuss lost profits in more detail shortly.

The second type of patent damages is called a reasonable royalty.  I will also discuss reasonable royalty later in more detail.  Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover.

Authorities:  Federal Circuit Bar Ass 'n Model Patent Jury Instructions, 12.2.


### WITNESS SYSTEMS' OBJECTION:

Witness Systems objects to this instruction as unnecessary and redundant of other proposed instructions.

## 7.4    LOST PROFITS, TYPES AND BURDEN OF PROOF - NICE'S PROPOSED JURY INSTRUCTIONS

I will first instruct you about lost profit damages.  Simply stated, lost profit damages are the profits NICE lost because of the infringement.  They are not the profits Witness Systems made.

NICE says that it lost profits because Witness Systems' infringement took away sales that NICE would have made.  This is called lost profits due to lost sales.

NICE also says that it lost profits because it had to lower its prices to be able to compete with Witness Systems' infringement.  NICE says that because it had to reduce its prices, it made less profits on the sales it made than it would have had it not had to compete with Witness Systems.  This is called lost profits due to price erosion.

Finally, NICE says that its expenses increased because of Witness Systems' infringement, and this lowered its profits.

NICE has the burden to show by a preponderance of the evidence that it would have made additional profits if Witness Systems had not infringed.

Remember, if you find NICE did not prove infringement of a valid patent claim, there can be no damages of any kind.

Authorities:  *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996) *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Re. Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.

## 7.4   LOST PROFITS, TYPES AND BURDEN OF PROOF - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS[*]

I will first instruct you about lost profit damages.  NICE is claiming that it lost sales because of Witness Systems' infringement.  In order to recover lost profits damages for lost sales, NICE must show that "but for" Witness Systems' infringement, NICE would have made the sales or profits that it claims were lost.  NICE is only entitled to lost profits if it establishes each of the following, by a preponderance of the evidence:

(i)      that there was a demand for the patented product;

(ii)      that there were no non-infringing substitutes;

(iii)      that NICE had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which NICE seeks an award of lost profits; and

(iv)      the amount of the profit that NICE would have made if Witness Systems had not infringed.

Witness Systems is not liable for speculative profits.

NICE also contends that it lost profits because it had to lower its prices to be able to compete with Witness Systems' infringement.  NICE says that because it had to reduce its prices, it made less profits on the sales it made than it would have had it not had to compete with Witness Systems.  This is called lost profits due to price erosion.

Finally, NICE says that its expenses increased because of Witness Systems' infringement, and this lowered its profits.

NICE has the burden to show by a preponderance of the evidence that it would have made additional profits if Witness Systems had not infringed.

---

[*]      Witness Systems reserves the right to object to NICE's instructions if the bases for the instructions are not in the expert reports.

Remember, if you find NICE did not prove infringement of a valid and enforceable patent claim, there can be no damages of any kind.

Source: Fed. Cir. Bar Assoc. Model Jury Instructions 6.2 (2007)

## AUTHORITIES

*Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996) *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Re. Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

### 7.4.1  LOST SALES - NICE'S PROPOSED JURY INSTRUCTIONS

Lost sales are those sales the patent owner lost because of the infringement.

To prove that it lost sales, NICE must prove by a preponderance of the evidence that it would have made additional sales if Witness had not made the sales and carried out the activities you find to be an infringement.

Authorities:  *Grain Processing Corp. v. American Maize-Prods. Comp.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (*en banc*); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.1; Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

### WITNESS SYSTEMS' OBJECTION:

Witness Systems objects to this instruction as unnecessary as redundant of other proposed instructions.

### 7.4.2   MANUFACTURING AND MARKETING ABILITY - JOINTLY PROPOSED JURY INSTRUCTIONS

In deciding whether NICE lost sales, you should consider whether or not NICE has proven that it had the manufacturing and marketing capability to make the sales it says it lost.

NICE must prove by a preponderance of the evidence that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement.

NICE also must prove that it had the capability to market and sell the additional products.

Authorities: *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.2.

## 7.4.3    ABSENCE OF ACCEPTABLE NON-INFRINGING SUBSTITUTES - JOINTLY PROPOSED JURY INSTRUCTIONS

In determining whether NICE lost sales due to infringement, you must consider whether or not, if Witness Systems' infringing product or process were not available, some or all of the people who bought from Witness Systems would have bought a different, non-infringing product from Witness Systems or from somebody else, rather than buy from NICE.

In deciding whether or not people who bought from Witness Systems would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a non-infringing product.

Authorities:  *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, No. 99-1158, 2001 WL 220241 *11 (Fed. Cir. 2001); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American-Maize Prod.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1578-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (en banc); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.3).

7.5    **AMOUNT OF LOST PROFITS - NICE'S PROPOSED JURY INSTRUCTIONS**

If NICE has proved that it lost profits due to infringement by Witness Systems, then you are to find the amount of profits that NICE lost. NICE must prove the amount of its lost profits to a reasonable probability.

The amount of lost profits damages should not include amounts that are merely speculation. However, if the reason that NICE has difficulty proving the amount of its lost profits is because Witness Systems did not keep records or destroyed records, such as records of its sales, then you should resolve doubts as to the amount against Witness Systems.

Authorities: *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-32 (Fed. Cir. 1996); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.5.

**WITNESS SYSTEMS' OBJECTION:**

Witness Systems objects to this instruction as unnecessary as redundant of other proposed instructions.

**7.6    REASONABLE ROYALTY - JOINTLY PROPOSED JURY INSTRUCTIONS**

NICE is asking for damages in the amount of a reasonable royalty. If you find that NICE has proved lost profits for some or all of Witness Systems' infringing sales or activities, then the damages award to NICE should be those lost profits.

If you find that NICE has not proved that it should recover lost profits, or that it has only proved lost profits for some of Witness Systems' infringing sales or activities, then for those infringing sales or activities for which you do not award lost profits you should determine the amount NICE has proved to be a reasonable royalty.

Authorities: *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, No. 99-1158, 2001 WL 220241 *11 (Fed. Cir. 2001); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.6.

### 7.6.1   WHAT IS A REASONABLE ROYALTY? - NICE'S PROPOSED JURY INSTRUCTIONS

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that it would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

For the relevant time period of infringement, you may assume that Witness Systems and NICE knew such things as what level of sales and profits Witness Systems would make using the invention.

In deciding what is a reasonable royalty, you may consider the factors that NICE and Witness Systems would consider in setting the amount Witness Systems should pay. I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.   Whether the patent owner had established a royalty for the patented invention, for example by granting other licenses at that royalty. You should remember, however, that an established royalty may have been set before the patent was held valid and infringed in court and, therefore, may not be as much as it would be if both the patent owner and the party wanting to use the patent know it is valid.

2.   Royalties paid for other patents comparable to NICE's patent.

3.   Whether or not NICE had a policy of licensing or not licensing the patent.

4.   Whether or not NICE and Witness Systems are competitors.

5.   Whether being able to use the patented invention helps in making sales of other products or services.

6.    The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

7.    The advantages and benefits of using the patented invention.

8.    The extent of Witness Systems' use of the patented invention and the value of that use to Witness Systems.

9.    Whether or not there is a portion of the profit or selling price that is a customary royalty in this field for use of patented inventions.

10.   The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Witness Systems.

11.   Expert opinions as to what would be a reasonable royalty.

12.   Finally, consider a negotiation between someone who wanted to use the invention and a patent owner who was willing to license the invention. What royalty rate would these willing participants to a negotiation agree to?

Authorities:  *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.7; Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

### 7.6.1    WHAT IS A REASONABLE ROYALTY? - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that it would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between NICE and Witness Systems. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In deciding what is a reasonable royalty, you may consider the factors that NICE and Witness Systems would consider in setting the amount Witness Systems should pay. I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.    the royalties received by NICE for licensing others under the patents in suit;

2.    the rates paid by Witness Systems for the use of other patents comparable to the patents in suit;

3.    the nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold;

4.    NICE's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    the commercial relationship between NICE and Witness Systems, such as whether they are competitors in the same territory in the same line of business;

6.    the duration of the patents and the corresponding terms of the hypothetical licenses;

7.    the established profitability of the products made under the patents, their commercial success, and their current popularity;

8.    the utility and advantages of the patented invention over old devices, if any, that had been used for achieving similar results;

9.    the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by NICE, and the benefits to those who have used the invention;

10.    the extent to which Witness Systems has made use of the invention, and any evidence that shows the value of that use;

11.    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

12.    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by Witness Systems;

13.    the opinion testimony of qualified experts; and

14.    any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Source: *See Fed. Cir. Bar Assoc. Model Jury Instructions* 6.2 (2007)

## 7.7    TOTAL DAMAGES - NICE'S PROPOSED JURY INSTRUCTIONS

After making your findings concerning lost profits damages and reasonable royalty damages, you should arrive at a total damages amount to award to NICE.

This amount should include the amount of lost profits damages NICE has proved. It also should include the reasonable royalty damages for that portion of the infringement for which NICE did not prove lost profits damages.

Authorities:  Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.8.

## WITNESS SYSTEMS' OBJECTION:

Witness Systems objects to this instruction as unnecessary as redundant of other proposed instructions.

### 7.7.1   COLLATERAL SALES- NICE'S PROPOSED JURY INSTRUCTIONS

Under some circumstances, a patent owner may recover lost profit and reasonable royalty for lost sales of products that it would normally expect to sell with its patented product. In this case, NICE contends that the patented products are ordinarily sold along with add on features and other peripheral components. If you find that NICE lost sales of its patented products due to Witness Systems' infringement, you should then determine if the infringement also resulted in NICE's losing sales of its add on features and peripheral components.

To recover lost profits on sales of add on features and peripheral components, NICE must prove two things. First, NICE must show that it would probably have sold add on features and other peripheral components if it had made a sale of the patented products. Second, NICE must show that the add on features and other peripheral components functioned together with the patented products to produce a desired end product or result.

If you find that NICE has proven these two facts, then the profit that NICE would have made from those collateral sales should be a part of any damages awarded to NICE.

Authorities: Uniform Jury Instr. for Patent Cases in the D. Del. 5.9 (2004).

**7.8    INTEREST - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

**NICE'S OBJECTION:**

NICE objects to the inclusion of this jury instruction which relates to the issue of interest. NICE contends that the issue of interest will not be presented in any way during the trial and that the above jury instruction will only serve to confuse the jury.

## 8.0    DELIBERATION AND VERDICT

## 8.1    INTRODUCTION - JOINTLY PROPOSED JURY INSTRUCTIONS

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

Authorities: D. Del. Uniform Instruction, 7.1: Deliberation and Verdict Introduction (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**8.2    UNANIMOUS VERDICT - JOINTLY PROPOSED JURY INSTRUCTIONS**

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A special verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

Authorities:    D. Del. Uniform Instruction, 7.2: Unanimous Verdict (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - *Validity Trial, Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

## 8.3    DUTY TO DELIBERATE - JOINTLY PROPOSED JURY INSTRUCTIONS

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Authorities: D. Del. Uniform Instruction, 7.3: Duty to Deliberate (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

**8.4    COURT HAS NO OPINION - JOINTLY PROPOSED JURY INSTRUCTIONS**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Authorities:    D. Del. Uniform Instruction, 7.4: Court has no Opinion (1993); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

9.0     **OBJECTIONS TO COURT'S TENTATIVE CLAIM CONSTRUCTION RULING**

9.1     **NICE'S OBJECTIONS TO COURT'S TENTATIVE CLAIM CONSTRUCTION RULING**

For the reasons set forth in NICE's claim construction briefing [D.I. 151], [D.I. 168] and at the Markman Hearing held on June 26, 2007, NICE objects to the tentative claim constructions for the following terms:

**U.S. Patent No. 5,396,371**

- buffer

- digital audio tape

- writing from the buffer onto a digital audio tape and a random access storage device

**U.S. Patent No. 7,010,109**

- through a conference controller

- IP data session

- the portion of the IP data session

**U.S. Patent No. 6,870,920**

- digital logger

- retrieving stored data

- transferring stored data

**U.S. Patent No. 6,249,570**

- telephone call

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE  19899
(302) 571-6681
msharp@ycst.com

Scott G. Lindvall (*pro hac vice*)
Daniel DiNapoli (*pro hac vice*)
Joseph M. Drayton (*pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and
NICE Systems, Ltd.*

FISH & RICHARDSON, P.C.

*/s/ Kyle Wagner Compton*

William J. Marsden, Jr. (No. 2247)
Kyle Wagner Compton (No. 4693)
919 North Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
(302) 778-8401
marsden@fr.com

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
Noah Graubart (*pro hac vice*)
FISH & RICHARDSON, P.C.
1180 Peachtree Street, N.E., 21st Floor
Atlanta, GA  30309
(404) 892-5005

*Attorneys for Defendant Witness Systems, Inc.*