# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICE SYSTEMS, INC., and | ) | |
| NICE SYSTEMS, LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 06-311-JJF |
| v. | ) | |
| | ) | |
| WITNESS SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## WITNESS SYSTEMS, INC.'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS & OBJECTIONS TO INSTRUCTIONS NOT SUPPORTED BY THE TRIAL RECORD

FISH & RICHARDSON, P.C.
William J. Marsden, Jr. (No. 2247)
Kyle Wagner Compton (No. 4693)
919 North Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 778-8401
marsden@fr.com

Nagendra Setty
Daniel A. Kent
Noah Graubart
1180 Peachtree Street, N.E., 21st Floor
Atlanta, GA 30309
(404) 892-5005

*Attorneys for Defendant*
*Witness Systems, Inc.*

Dated: January 17, 2008

Defendant Witness Systems, Inc. respectfully submits the following supplemental proposed jury instructions and objections to Plaintiffs' instructions.  All modified instructions are followed by a redline showing the changes to the Joint Proposed Jury Instructions filed by the parties on January 8, 2008 (D.I. 299).  These changes are in response to issues raised during the course of trial.

## 2.3 WITNESS SYSTEMS' CONTENTIONS

Witness Systems contends that its products do not infringe the asserted claims of the patents in suit, either literally or under the doctrine of equivalents. Witness Systems further contends that the asserted claims of NICE's patents are invalid. Witness Systems finally contends that its infringement was not willful and that NICE is not entitled to the amount of damages it seeks as a royalty.

### 2.3     WITNESS SYSTEMS' CONTENTIONS

Witness Systems contends that its products do not infringe~~, either directly or indirectly, any of~~ the asserted claims of the patents in suit, either literally or under the doctrine of equivalents.

Witness Systems further contends that the asserted claims of NICE's patents ~~in suit~~ are not invalid. ~~for failure to satisfy the statutory requirement of patentability. In particular, Witness Systems charges that NICE's patents are invalid for anticipation and obviousness. I will explain the elements of these statutory requirements shortly.~~ Witness Systems finally contends that its infringement was not willful and that NICE is not entitled to the amount of damages it seeks as a royalty.

~~If Witness Systems is found to infringe and the patents in suit are found not invalid, Witness Systems contends that NICE cannot recover damages for infringement due to its failure to adequately mark its products as required by statute.~~

~~If Witness Systems is found to infringe and the patents in suit are found not invalid, Witness Systems contends that NICE is only entitled to a reasonable royalty on those accused products that NICE has proven Witness Systems made, used, sold, or offered for sale within the United States or imported into the United States.~~

~~If Witness Systems is found to infringe and the patents in suit are found not invalid, Witness Systems contends that such infringement was not willful because Witness Systems did not act with objective or subjective recklessness. In other words, Witness Systems did not act with an objectively high likelihood that its actions constituted infringement of a valid patent. And even if Witness Systems did act with an objectively high likelihood that its actions constituted infringement, it was not aware of this objectively defined risk.~~

Witness Systems contends that NICE cannot assert the patents in suit because NICE unreasonably delayed bringing suit for infringing them. By unreasonably delaying, Witness Systems contends that NICE should be barred from bringing suit by laches and equitable estoppel.

Witness Systems contends that NICE cannot assert the '371 patent because NICE committed inequitable conduct before the Patent and Trademark Office by withholding material information from the Patent Examiner.

**2.4    SUMMARY OF PATENT ISSUES - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

In this case, you must decide the issues according to the instructions I give you.  In general these issues are:

Whether NICE has proven by a preponderance of the evidence that Witness Systems has infringed any of the asserted claims of the patents in suit;

Whether Witness Systems has proven by clear and convincing evidence that any of NICE's patents are invalid;

If you find any of the asserted claims of the patents in suit are valid and infringed, whether NICE has proven by clear and convincing evidence that Witness Systems' infringement was willful;

If you find any of the asserted claims of the patents in suit are valid and infringed, the amount of damages that NICE has proven by a preponderance of the evidence is due to it.

### 2.4    SUMMARY OF PATENT ISSUES - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

Whether NICE has proven by a preponderance of the evidence that Witness Systems has infringed any of the asserted claims of the patents in suit.

Whether Witness Systems has proven by clear and convincing evidence that any of NICE's patents are invalid.

Whether NICE delayed an unreasonable amount of time before bringing the infringement action for the '371 patent.

Whether NICE committed inequitable conduct by its actions before the Patent and Trademark Office.

Whether NICE failed to adequately mark its patented products.

If you find any of the asserted claims of the patents in suit are infringed, not invalid, and enforceable, valid and infringed, whether NICE has proven by clear and convincing evidence that Witness Systems' infringement was willful.

If you find any of the asserted claims of the patents in suit are infringed, not invalid, and enforceable valid and infringed, the amount of damages that NICE has proven by a preponderance of the evidence is due to it.

### 4.1     PATENT INFRINGEMENT GENERALLY - DIRECT INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has not presented any theory of direct infringement nor presented any evidence in support

thereof.

### 4.2     PATENT INFRINGEMENT GENERALLY - INDIRECT INFRINGEMENT – NICE'S PROPOSED JURY INSTRUCTIONS

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has not presented any theory of direct infringement nor presented any evidence in support

thereof.

### 4.5    INDUCING PATENT INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

NICE alleges that Witness Systems is liable for infringement by actively inducing someone else to directly infringe the patents in suit. You must determine whether there has been active inducement on a claim-by-claim basis.

Witness Systems is liable for active inducement of a claim only if:

(1)    Witness Systems took some action during the time the patent was in force which encouraged acts by someone else; and

(2)    the encouraged acts constituted infringement of that claim; and

(3)    Witness Systems was aware of the patent, and knew or should have known that the encouraged acts constituted infringement of that patent; and

(4)    Witness Systems had an intent to cause the infringement; and

(5)    the infringement was actually carried out by someone else.

In order to prove active inducement, NICE must prove that each of the above requirements are met by a preponderance of the evidence.

In order to establish active inducement of infringement, it is not sufficient that whoever is allegedly induced to infringe itself directly infringes the claim. Nor is it sufficient that Witness Systems was aware of the acts that allegedly constitute the direct infringement. Rather, you must find specifically that Witness Systems specifically intended to infringe the patents in suit, in order to find inducement of infringement. If you do not find that Witness Systems specifically intended to infringe, then you must find that Witness Systems has not actively induced the alleged infringement.

**SOURCE:** Fed. Cir. Bar Assoc. Model Jury Instructions 3.2 (2007); *DSU Med. Corp. v. JMS Co.*, 2006 U.S. App. LEXIS 30511 (Fed. Cir. December 13, 2006) (en banc).

**4.5    INDUCING PATENT INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

NICE alleges that Witness Systems is liable for infringement by actively inducing someone else to directly infringe the patents in suit. ~~As with direct infringement, you~~You must determine whether there has been active inducement on a claim-by-claim basis.

Witness Systems is liable for active inducement of a claim only if:

(1)    Witness Systems ~~takes~~took some action during the time the patent ~~is~~was in force which ~~encourages~~ encouraged acts by someone else; and

(2)    the encouraged acts constitute_d_ ~~direct~~ infringement of that claim; and

(3)    Witness Systems ~~is~~was aware of the patent, and ~~knows~~knew or should have known that the encouraged acts constitute_d_ infringement of that patent; and

(4)    Witness Systems ~~has~~had an intent to cause the ~~encouraged acts~~infringement; and

(5)    the ~~encouraged acts~~infringement ~~are~~was actually carried out by someone else.

In order to prove active inducement, NICE must prove that each of the above requirements are met ~~. Further, proof of each element must be~~ by a preponderance of the evidence~~, i.e., that it is more likely than not that each of the above requirements has been met~~.

In order to establish active inducement of infringement, it is not sufficient that whoever is allegedly induced to infringe itself directly infringes the claim. Nor is it sufficient that Witness Systems was aware of the act~~(s)~~ that allegedly constitute the direct infringement. Rather, you must find specifically that Witness Systems specifically intended to infringe the patents in suit, in order to find inducement of infringement. If you do not find that Witness Systems specifically intended to infringe, then you must find that Witness Systems has not actively induced the alleged infringement.

**SOURCE:** Fed. Cir. Bar Assoc. Model Jury Instructions 3.2 (2007); *DSU Med. Corp. v. JMS Co.*, 2006 U.S. App. LEXIS 30511 (Fed. Cir. December 13, 2006) (en banc).

**5.4    OBVIOUSNESS - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

Witness Systems contends that the patents in suit are invalid as being obvious.  In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.  If it would have been obvious for a skilled person who knew of the prior art to make the claimed invention, then the patent claims are invalid.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art.  In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.      Determine the scope and content of the prior art relied upon by Witness Systems;

2.      Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

3.      Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.      Consider objective factors of non-obviousness.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art, you should not apply any rigid test or formula.  Rather, you should use

your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results.

**SOURCE:** *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8; KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742-43 (Apr. 30, 2007); Obviousness instruction from *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394) (modified to fit this case).

**5.4   OBVIOUSNESS - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

Witness Systems contends that the patents in suit are invalid as being obvious.  In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.  If it would have been obvious for a skilled person who knew of the prior art to make the claimed invention, then the patent claims are invalid.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art.  In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.      Determine the scope and content of the prior art relied upon by Witness Systems;

2.      Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

3.      Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.      Consider objective factors of non-obviousness.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art, you should not apply any rigid test or formula.  Rather, you should use

your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patents in suit, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment.  Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious to a person of ordinary skill in the pertinent art.

**SOURCE:** *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8; KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742-43 (Apr. 30, 2007); Obviousness instruction from *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394) (modified to fit this case).

**5.4.5   HINDSIGHT – WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art.  Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

**SOURCE:** Obviousness instruction from *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394) (modified to fit this case).

### 5.4.5   REASON TO COMBINE - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTION

Among the factors you may consider in determining whether multiple prior art references render a patent obvious are whether there was some apparent reason to combine or modify the references and whether the combination would be reasonably likely to achieve the goal of the invention.

When making an obvious determination, you should not dispense with common knowledge or common sense, which teaches that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.  Additionally, the fact that a combination was "obvious to try" might show that a patent claim was obvious in the case where there is a problem to be solved for which: (1) there exists a finite number of identified, predictable solutions, (2) a person of ordinary skill has good reason to pursue the known options within his or her technical grasp to arrive, and (3) pursuing these known options leads to an anticipated success that is likely the product of ordinary skill and common sense and not innovation.

Besides common sense and common knowledge, any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed.   Also, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art.   Neither the particular motivation nor the alleged purpose of the patentee controls.   One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.

Source:  *KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742–43 (April 30, 2007).*

**7.3     TWO TYPES OF DAMAGES – LOST PROFITS & REASONABLE ROYALTY – NICE's PROPOSED INSTRUCTIONS**

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has withdrawn its claim for lost profits and not presented any evidence in support thereof.

**7.4     LOST PROFITS, TYPES AND BURDEN OF PROOF - NICE'S PROPOSED JURY INSTRUCTIONS**

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has withdrawn its claim for lost profits and not presented any evidence in support thereof.

**7.4.1     LOST SALES - NICE'S PROPOSED JURY INSTRUCTIONS**

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has withdrawn its claim for lost profits and not presented any evidence in support thereof.

**7.4.2     MANUFACTURING AND MARKETING ABILITY**

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has withdrawn its claim for lost profits and not presented any evidence in support thereof.

**7.4.3     ABSENCE OF ACCEPTABLE NON-INFRINGING SUBSTITUTES**

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has withdrawn its claim for lost profits and not presented any evidence in support thereof.

**7.5    AMOUNT OF LOST PROFITS – NICE'S PROPOSED JURY INSTRUCTIONS**

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has withdrawn its claim for lost profits and not presented any evidence in support thereof.

**7.6.1    WHAT IS A REASONABLE ROYALTY? – WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and Witness Systems would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and Witness Systems would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the patent was valid and infringed. In addition, you must assume that the patent holder and Witness Systems were willing to enter into an agreement. Your role is to determine what that agreement would have been. The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began. That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits Witness Systems made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits Witness Systems made.

In determining the reasonably royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    whether the patent holder had an established royalty for the invention; whether, in the absence of an established royalty, there is evidence that tends to prove an established royalty; whether, in the absence of such a licensing history, there are any royalty arrangements that were generally used and recognized in the particular industry at that time;

(2)    the nature of the commercial relationship between the patent holder and Witness Systems such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3)    the established profitability of the patented product, its commercial success and its popularity at the time;

(4)    whether the patent holder had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve its monopoly;

(5)    the size of the anticipated market for the invention at the time the infringement began;

(6)    the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7)    the rates paid by Witness Systems for the use of other patents comparable to the patent holder's patent;

(8)    whether Witness Systems' sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

(9)    the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10)    the extent to which Witness Systems used the invention and any evidence probative of the value of such use;

(11)    the portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions;

(12)    the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by Witness Systems;

(13)    the opinion and testimony of qualified experts and of the patent holder; and

(14)    any other factors which in your mind would have increased or decreased the royalty Witness Systems would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The final factor establishes the framework which you should use in determining a reasonable royalty, *i.e.,* the payment that would have resulted from a negotiation between the patent holder and Witness Systems taking place at the time when the infringing sales first began.

Source:  *See* Fed. Cir. Bar Assoc. Model Jury Instructions 6.7 (April 2007)

### 7.6.1    WHAT IS A REASONABLE ROYALTY? – WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

~~A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.~~A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.

~~A reasonable royalty is the royalty that it would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.~~

A reasonable royalty ~~in this case~~ is the amount of ~~money~~ royalty payment that a patent holder and Witness Systems would ~~be agreed~~have agreed to in a hypothetical ~~arm's length~~ negotiation ~~between NICE and Witness System~~taking place at the time when the infringing sales first began.   In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and ~~the infringer~~Witness Systems would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  You must also assume that both parties believed the patent was valid and infringed.  In addition, you must assume that the patent holder and Witness Systems were willing to enter into an agreement.  Your role is to determine what that agreement would have been.  The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began.  That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits Witness Systems made may aid you in determining the anticipated profits at

the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits Witness Systems made.

In determining the reasonably royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are: ~~In deciding what is a reasonable royalty, you may consider the factors that NICE and Witness Systems would consider in setting the amount Witness Systems should pay.  I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.~~

1.     whether the patent holder had an established royalty for the invention; whether, in the absence of an established royalty, there is evidence that tends to prove an established royalty; whether, in the absence of such a licensing history, there are any royalty arrangements that were generally used and recognized in the particular industry at that time;

2.     the nature of the commercial relationship between the patent holder and Witness Systems such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

3.     the established profitability of the patented product, its commercial success and its popularity at the time;

4.     whether the patent holder had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve its monopoly;

5.     the size of the anticipated market for the invention at the time the infringement began;

6.      the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

7.      the rates paid by Witness Systems for the use of other patents comparable to the patent holder's patent;

8.      whether Witness Systems' sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

9.      the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10.     the extent to which Witness Systems used the invention and any evidence probative of the value of such use;

11.     the portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions;

12.     the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by Witness Systems;

13.     the opinion and testimony of qualified experts and of the patent holder; and

14.     any other factors which in your mind would have increased or decreased the royalty Witness Systems would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The final factor establishes the framework which you should use in determining a reasonable royalty, i.e., the payment that would have

resulted from a negotiation between the patent holder and Witness Systems taking place at the time when the infringing sales first began. the royalties received by NICE for licensing others under the patents in suit;

2. the rates paid by Witness Systems for the use of other patents comparable to the patents in suit;

3. the nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold;

4. NICE's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5. the commercial relationship between NICE and Witness Systems, such as whether they are competitors in the same territory in the same line of business;

6. the duration of the patents and the corresponding terms of the hypothetical licenses;

7. the established profitability of the products made under the patents, their commercial success, and their current popularity;

8. the utility and advantages of the patented invention over old devices, if any, that had been used for achieving similar results;

9. the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by NICE, and the benefits to those who have used the invention;

10. the extent to which Witness Systems has made use of the invention, and any evidence that shows the value of that use;

11.    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

12.    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by Witness Systems;

13.    the opinion testimony of qualified experts; and

14.    any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**7.7.1   COLLATERAL SALES- NICE'S PROPOSED JURY INSTRUCTIONS**

Witness Systems objects to this instruction as inconsistent with the evidence presented.

NICE has withdrawn its claim for lost profits and not presented any evidence in support thereof.

Dated:  January 18, 2008                FISH & RICHARDSON P.C.


By:  */s/ William J. Marsden, Jr.*
    William J. Marsden, Jr. (#2247)
    Kyle Wagner Compton (#4693)
    FISH & RICHARDSON P.C.
    919 N. Market Street, Suite 1100
    P. O. Box 1114
    Wilmington, DE  19899-1114

    Nagendra Setty (pro hac vice)
    Daniel A. Kent (pro hac vice)
    Noah C. Graubart (pro hac vice)
    1180 Peachtree Street, N.E., 21st Floor
    Atlanta, GA 30309

Attorneys for Defendant
Witness Systems, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2008, I electronically filed with the Clerk of Court

**WITNESS SYSTEMS, INC.'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS &**

**OBJECTIONS TO INSTRUCTIONS NOT SUPPORTED BY THE TRIAL RECORD**

using CM/ECF which will send electronic notification of such filing(s) to the following

Delaware counsel.

| | |
|---|---|
| Scott G. Lindvall | Attorneys for Plaintiffs |
| Daniel P. DiNapoli | NICE Systems, Inc. and NICE Systems, |
| Joseph M. Drayton | LTD |
| Kaye Scholer LLP | |
| 425 Park Avenue | |
| New York, NY 10022-3598 | |

I also certify that on January 18, 2008, I have sent by electronic mail the document(s) to

the following non-registered participants:

| | |
|---|---|
| Josy W. Ingersoll | Attorneys for Plaintiffs |
| Melanie K. Sharp, Esq. | NICE Systems, Inc. and NICE Systems, |
| Karen E. Keller | LTD |
| Young Conaway Stargatt & Taylor, LLP | |
| The Brandywine Building, 17th Floor | |
| 1000 West Street | |
| P.O. Box 391 | |
| Wilmington, DE  19899-0391 | |

*/s/ William J. Marsden, Jr.*

William J. Marsden, Jr.