IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and NICE
SYSTEMS LTD,

       Plaintiffs,

    v.

WITNESS SYSTEMS, INC.

       Defendant.

Civil Action No. 06-311

## DEFENDANT WITNESS SYSTEMS, INC.'S SECOND SUPPLEMENTAL SUBMISSION RE JURY INSTRUCTIONS

On January 18, 2008, the Court instructed the parties to each prepare a list of up to five

disputed jury instructions. Defendant Witness Systems respectfully submits the following

disputed issues:

      **1.**      **Inducing Patent Infringement**

      **2.**      **Means Plus Function**

      **3.**      **Reasonable Royalty**

      **4.**      **Collateral Sales**

      **5.**      **Obviousness**

Each issue is introduced with a brief statement describing the dispute, along with any

relevant authorities, followed by the parties competing instructions.

1

## I.    INDUCING PATENT INFRINGEMENT

Should the Court allow NICE to present its theory of induced infringement to the jury,

Witness System respectfully requests that the Court enter an instruction consistent with the

recent Federal Circuit case of *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) and consistent with the Federal Circuit Bar Association model instruction.[1]

Previously, the Federal Circuit had two conflicting lines of precedent regarding

inducement to infringe, one requiring "specific intent to induce infringement," and the other

merely requiring intent to cause the acts that constitute infringement. In *DSU*, the Federal

Circuit went *en banc* to resolve this conflicting precedent. The Federal Circuit explained that

"knowledge of the acts alleged to constitute infringement" is not sufficient in order to prove

inducement. *Id.* at 1305. Rather, a "specific intent and action to induce infringement must be

proven." *Id.*

NICE's proposed instruction does not even mention intent. Witness Systems' instruction,

by contrast,  explains that one of the elements of inducing infringement is that "Witness Systems

had an intent to cause the infringement." The inclusion of an intent requirement is critical given

the holding of *DSU*. NICE also proposes that the jury be instructed that, "an accused inducer

may be liable for inducing infringement if it provided instructions or directions to perform the

infringing act through labels, advertising or other materials." While it is true that in some

circumstances labels, advertising or other materials may induce infringement, this is a highly

fact-specific statement that has no place in this particular jury instruction. It is also confusing

because the jury may believe that merely advertising products, without any intent to infringe, can

---

[1]    Witness Systems does not believe that NICE should be allowed to present its theories of indirect infringement to the jury.  These theories were not disclosed in NICE's expert reports, were not adequately disclosed during discovery, and were not supported by the evidence presented at trial.  Witness Systems reserves the right to challenge the inclusion of these theories during post trial briefing.

still induce infringement of a patent. NICE can present the evidence that it believes shows inducement during its closing; that evidence should not be recited in this jury instruction.

Finally, Witness Systems' proposed instruction is consistent with the Federal Circuit Bar Association Model Jury Instruction 3.2 ("Active Inducement"). The only substantive change that Witness Systems made was to clarify the fourth element of the five-part test in that instruction, to state "Witness Systems had an intent to cause the infringement." This change was necessary in light of *DSU*, and for this reason Witness Systems respectfully requests that the Court use its proposed instruction on inducing patent infringement when it instructs the jury.

**4.5    INDUCING    PATENT    INFRINGEMENT    -    WITNESS    SYSTEMS'
PROPOSED JURY INSTRUCTIONS**

NICE alleges that Witness Systems is liable for infringement by actively inducing someone else to directly infringe the patents in suit. You must determine whether there has been active inducement on a claim-by-claim basis.

Witness Systems is liable for active inducement of a claim only if:

(1)    Witness Systems took some action during the time the patent was in force which encouraged acts by someone else; and

(2)    the encouraged acts constituted infringement of that claim; and

(3)    Witness Systems was aware of the patent, and knew or should have known that the encouraged acts constituted infringement of that patent; and

(4)    Witness Systems had an intent to cause the infringement; and

(5)    the infringement was actually carried out by someone else.

In order to prove active inducement, NICE must prove that each of the above requirements are met by a preponderance of the evidence.

In order to establish active inducement of infringement, it is not sufficient that whoever is allegedly induced to infringe itself directly infringes the claim. Nor is it sufficient that Witness Systems was aware of the acts that allegedly constitute the direct infringement. Rather, you must find specifically that Witness Systems specifically intended to infringe the patents in suit, in order to find inducement of infringement. If you do not find that Witness Systems specifically intended to infringe, then you must find that Witness Systems has not actively induced the alleged infringement.

**SOURCE:** Fed. Cir. Bar Assoc. Model Jury Instructions 3.2 (2007); *DSU Med. Corp. v. JMS Co.*, 2006 U.S. App. LEXIS 30511 (Fed. Cir. December 13, 2006) (en banc).

## 4.4    INDUCING PATENT INFRINGEMENT - NICE'S PROPOSED JURY INSTRUCTIONS

Inducement to infringe requires someone purposefully urging or encouraging another to infringe a patent - inducement to infringe cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur without any intent to infringe. To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes the asserted patent claims. Merely having knowledge of the underlying acts of direct infringement by itself is not enough to prove active inducement. For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that Witness Systems induced infringement of a patent, NICE must prove by a preponderance of the evidence the following three things:

1.    Witness Systems actively encouraged or instructed another person how to use a product in a way, you, the jury, finds infringes the patent claims;

2.    Witness Systems knew of the patents in suit; and

3.    The other person infringed an asserted claim of the patent in suit.

All three of these things must be proven by either direct or circumstantial evidence before you may find that Witness Systems induced patent infringement.

Authorities:  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## II.    MEANS PLUS FUNCTION

The Court should not instruct the jury on "means plus function" claim limitations because there are no such limitations in any of the asserted claims. Further, because NICE did not present this argument during claim construction briefing, the Court should reject NICE's effort to re-open claim construction now, at the eleventh-hour and on the weekend before closing statements.

First, NICE is substantively wrong: Claim 8 of the '371 patent does not include a means plus function claim limitation. Claim 8 states: "a random access storage device having a primary partition for storing audio data and **a secondary partition for storing means for locating data on said primary partition**…" While the word "means" is in the claim, which gives rise to a presumption that there is a means plus function limitation, the claim also recites sufficient structure to rebut that presumption. *See TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1135 (Fed. Cir. 2004) (holding that a claim for "pumping means … including a nozzle and a venturi tube…" recited sufficient structure to overcome presumption of means plus function).

Claim 8 is specifically directed to a "secondary partition," which is a portion of a computer hard drive. This is a structure. The claim goes on to state what that structure does using functional language ("a secondary partition **for storing means for locating data on said primary partition**"), but using functional claim language to describe what a structure does is a perfectly proper way to draft a claim. *See Collegenet, Inc. v. XAP Corp.*, 2006 U.S. Dist Lexis 49760 (D. Ore. July 17, 2006) ("A functional limitation is an attempt to define something by what it does, rather than by what it is…[T]here is nothing inherently wrong with defining some part of an invention in functional terms. Functional language does not, in and of itself, render a claim improper"); *Toshiba Corp. v. Juniper Networks, Inc.*, 2006 U.S. Dist. LEXIS 44348 (D.

Del. June 28, 2006) (Robinson, J.). Just because the claim term here defines the secondary partition in terms of what it does functionally does not mean that the claim is a means plus function claim limitation.

Second, NICE waived this argument by failing to present it during claim construction. The Court set a schedule for identifying terms to construe, and NICE never identified this limitation as an issue. If NICE wanted to raise a new claim construction issue it should have asked the Court to re-open claim construction briefing. Allowing NICE to present this theory now, during trial and without full briefing, is extremely prejudicial. At the very least if the Court is inclined to re-open claim construction now, it should do so with full briefing on the definition of this claim limitation.

Finally, if the Court agrees with Witness Systems that this claim recites sufficient structure and is therefore not means-plus-function, the Court may wish to consider a curative instruction, given that NICE made this argument repeatedly throughout trial without any claim construction from the Court. Witness Systems can propose a curative instruction should the Court be inclined to do so.

## 3.4    MEANS-PLUS-FUNCTION CLAIMS- NICE'S PROPOSED JURY INSTRUCTIONS

Part of claim 8 of the '371 patent is written in what is known as a "means plus function" format. The claim element is "means for locating data on said primary partition."

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop," and equivalents to the structure described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for claim 8, you must first determine whether Witness Systems' accused products perform the function of "locating data on said primary partition." If not, the claim containing that means-plus-function element is not infringed.

Second, if Witness Systems' accused products do perform the required function, you must identify the structure in Witness Systems' accused products that actually perform this function.

Third, you must determine whether those accused structures are the same as or equivalent to the following structure identified in the patent for performing the required function. The '371 patent generally describes the function of the "means for locating data on said primary partition" in Column 3, lines 12-35. The structure disclosed for "locating data on said primary partition" is

8

comprised of a record session table and index table. The record session table keeps track of the time that audio data is being recorded on the primary partition and the index table indicates the location of the audio data on the primary partition. If the structure of the accused devices is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of claim 8 is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structures perform the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure of the accused products and the structure in the patent were interchangeable.

Authorities: Uniform Jury Instr. for Patent Cases in the D. Del. 3.3.6 (2004); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## WITNESS SYSTEMS' OBJECTION:

NICE previously objected to any inclusion of instructions regarding "means plus function claims," 35 U.S.C. § 112 ¶ 6, claiming that the Court had not construed any claim language of the patents-in-suit as "means plus function."

In light of the NICE's withdrawal of multiple asserted claims and in light of the the Court's Memorandum on Tentative Claim Construction, Witness Systems agrees with NICE's previous position. Witness Systems objects to the inclusion of any jury instruction which relates to the issue of whether any claim language should be construed under 35 U.S.C. § 112 ¶ 6 as

"means plus function." At this time, the Court has not construed any claim language of the patents-in-suit as "means plus function." If the Court finds that any language of the claims which remain in the case should be construction as "mean plus function" under 35 U.S.C. § 112 ¶ 6, Witness Systems reserves its right to submit proposed jury instructions for the Court's consideration.

Moreover, Witness Systems objects to NICE's proposed Jury Instruction, "3.4 MEANS-PLUS-FUNCTION CLAIMS-NICE'S PROPOSED JURY INSTRUCTIONS," which misstates the applicable law.

### 5.3.1   ANTICIPATION OF MEANS-PLUS-FUNCTION CLAIMS--NICE'S PROPOSED JURY INSTRUCTIONS

Part of claim 8 of the '371 patent is written in what is known as a "means plus function" format. The claim element is "means for locating data on said primary partition."

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop," and equivalents to the structures described in the specification that perform the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language and anticipation. First, the prior art reference must describe or disclose all of the elements of the claimed invention. Specifically, for claim 8, you must first determine whether the prior art describes or discloses the function of "locating data on said primary partition." If not, the claim containing that means-plus-function element is not anticipated.

Second, if Witness Systems' prior art reference does describe or disclose all of the elements of the claimed function, you must identify the structure in Witness Systems' prior art that actually performs this function.

Third, you must determine whether the structure described or disclosed in the prior art reference is the same as or equivalent to the following structure identified in the patent for performing the required function. The '371 patent generally describes the function of the "means for locating data on said primary partition" in Column 3, lines 12-35. The structure disclosed for "locating data on said primary partition" is comprised of a record session table and index table. The record session table keeps track of the time that audio data is being recorded on

the primary partition and the index table indicates the location of the audio data on the primary partition. If the structure described in the prior art reference is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of claim 8 is anticipated.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the structure disclosed in the prior art reference performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure disclosed in the prior art reference and the structure in the patent were interchangeable.

Authorities: Uniform Jury Instr. for Patent Cases in the D. Del. 3.3.6 (2004); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## WITNESS SYSTEMS' OBJECTION:

NICE previously objected to any inclusion of instructions regarding "means plus function claims," 35 U.S.C. § 112 ¶ 6, claiming that the Court had not construed any claim language of the patents-in-suit as "means plus function."

In light of the NICE's withdrawal of multiple asserted claims and in light of the the Court's Memorandum on Tentative Claim Construction, Witness Systems agrees with NICE's previous position. Witness Systems objects to the inclusion of any jury instruction which relates to the issue of whether any claim language should be construed under 35 U.S.C. § 112 ¶ 6 as "mean plus function." At this time, the Court has not construed any claim language of the patents-in-suit as "means plus function." If the Court finds that any language of the claims which remain in the case should be construction as "mean plus function" under 35 U.S.C. § 112

¶ 6, Witness Systems reserves its right to submit proposed jury instructions for the Court's consideration.

### III.    REASONABLE ROYALTY

It is well established under *Georgia-Pacific* and subsequent Federal Circuit case law that the hypothetical negotiation used in calculating reasonable royalties occurs at the date infringement began. *See Georgia-Pacfic Corp. v. U.S. Plywood Corp.*, 318 F.Supp 1116, 1120 (S.D.N.Y. 1970); *Applied Med. Res. Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) ("We are required to identify the infringement requiring compensation, and evaluate damages based on a hypothetical negotiation at the time that infringement began"); *Joy Techs. V. Flakt, Inc.*, 954 F.Supp. 796, 806 (D. Del. 1996) ("A reasonable royalty must be calculated using the market conditions on the date infringement began"). The Federal Circuit Bar Association model instruction states: "A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to **in a hypothetical negotiation taking place at the time when the infringing sales first began**." NICE's proposed instruction eliminates this requirement. Witness Systems respectfully asks that the Court give the Federal Circuit Bar Association model instruction.

### 7.6.1   WHAT IS A REASONABLE ROYALTY? – WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and Witness Systems would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and Witness Systems would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  You must also assume that both parties believed the patent was valid and infringed.  In addition, you must assume that the patent holder and Witness Systems were willing to enter into an agreement.  Your role is to determine what that agreement would have been.  The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began.  That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits Witness Systems made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits Witness Systems made.

In determining the reasonably royalty, you should consider all the facts known and

available to the parties at the time the infringement began. Some of the kinds of factors that you

may consider in making your determination are:

(1)     whether the patent holder had an established royalty for the invention; whether, in
        the absence of an established royalty, there is evidence that tends to prove an
        established royalty; whether, in the absence of such a licensing history, there are
        any royalty arrangements that were generally used and recognized in the
        particular industry at that time;

(2)     the nature of the commercial relationship between the patent holder and Witness
        Systems such as whether they were competitors or whether their relationship was
        that of an inventor and a promoter;

(3)     the established profitability of the patented product, its commercial success and its
        popularity at the time;

(4)     whether the patent holder had an established policy of granting licenses or
        retaining the patented invention as its exclusive right, or whether the patent holder
        had a policy of granting licenses under special conditions designed to preserve its
        monopoly;

(5)     the size of the anticipated market for the invention at the time the infringement
        began;

(6)     the duration of the patent and of the license, as well as the terms and scope of the
        license, such as whether it is exclusive or nonexclusive or subject to territorial
        restrictions;

(7)     the rates paid by Witness Systems for the use of other patents comparable to the
        patent holder's patent;

(8)     whether Witness Systems' sales of the patented invention promote sales of its
        other products and whether the invention generates sales to the inventor of his
        nonpatented items;

(9)     the utility and advantages of the patented property over the old modes or devices,
        if any, that had been used for working out similar results;

(10)    the extent to which Witness Systems used the invention and any evidence
        probative of the value of such use;

(11)    the portion of the profits in the particular business that is customarily attributable
        to the use of the invention or analogous inventions;

(12)    the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by Witness Systems;

(13)    the opinion and testimony of qualified experts and of the patent holder; and

(14)    any other factors which in your mind would have increased or decreased the royalty Witness Systems would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. The final factor establishes the framework which you should use in determining a reasonable royalty, *i.e.,* the payment that would have resulted from a negotiation between the patent holder and Witness Systems taking place at the time when the infringing sales first began.

Source: *See* Fed. Cir. Bar Assoc. Model Jury Instructions 6.7 (April 2007)

### 7.6.1    WHAT IS A REASONABLE ROYALTY? - NICE'S PROPOSED JURY INSTRUCTIONS

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that it would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

For the relevant time period of infringement, you may assume that Witness Systems and NICE knew such things as what level of sales and profits Witness Systems would make using the invention.

In deciding what is a reasonable royalty, you may consider the factors that NICE and Witness Systems would consider in setting the amount Witness Systems should pay. I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.    Whether the patent owner had established a royalty for the patented invention, for example by granting other licenses at that royalty. You should remember, however, that an established royalty may have been set before the patent was held valid and infringed in court and, therefore, may not be as much as it would be if both the patent owner and the party wanting to use the patent know it is valid.

2.    Royalties paid for other patents comparable to NICE's patent.

3.    Whether or not NICE had a policy of licensing or not licensing the patent.

4.    Whether or not NICE and Witness Systems are competitors.

5.    Whether being able to use the patented invention helps in making sales of other products or services.

6.    The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

7.    The advantages and benefits of using the patented invention.

8.    The extent of Witness Systems' use of the patented invention and the value of that use to Witness Systems.

9.    Whether or not there is a portion of the profit or selling price that is a customary royalty in this field for use of patented inventions.

10.    The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Witness Systems.

11.    Expert opinions as to what would be a reasonable royalty.

12.    Finally, consider a negotiation between someone who wanted to use the invention and a patent owner who was willing to license the invention. What royalty rate would these willing participants to a negotiation agree to?

Authorities:  *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) *(en banc)*; *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Federal Circuit Bar Ass'n Model Patent Jury Instructions, 12.3.7; Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

## IV.   COLLATERAL SALES

In his expert report, NICE's damages expert, Thomas Britven, provided opinions regarding both a reasonable royalty and lost profits. At trial, however, Mr. Britven did not present any of his lost profits theories. NICE has stated that it will provide a list of the instructions regarding lost profits that it can agree to remove from the jury instructions.[2]  Witness Systems is concerned that NICE may want to retain "**Instruction 7.7.1 Collateral Sales.**" Witness Systems respectfully requests that the Court exclude this instruction as redundant. There is already an instruction that lists the factors for a reasonable royalty analysis. One of these factors is: "whether Witness Systems' sales of the patented invention **promote sales of its other products** and whether the invention generates sales to the inventor of his **nonpatented items**." A second instruction on "Collateral Sales" is unnecessary and redundant in light of NICE's decision not to present a lost profits case.

---

[2]   Witness Systems reserves the right to challenge any lost profits instructions that NICE does not agree to remove.

### 7.7.1  COLLATERAL SALES- NICE'S PROPOSED JURY INSTRUCTIONS

Under some circumstances, a patent owner may recover lost profit and reasonable royalty for lost sales of products that it would normally expect to sell with its patented product. In this case, NICE contends that the patented products are ordinarily sold along with add on features and other peripheral components. If you find that NICE lost sales of its patented products due to Witness Systems' infringement, you should then determine if the infringement also resulted in NICE's losing sales of its add on features and peripheral components.

To recover lost profits on sales of add on features and peripheral components, NICE must prove two things. First, NICE must show that it would probably have sold add on features and other peripheral components if it had made a sale of the patented products. Second, NICE must show that the add on features and other peripheral components functioned together with the patented products to produce a desired end product or result.

If you find that NICE has proven these two facts, then the profit that NICE would have made from those collateral sales should be a part of any damages awarded to NICE.

Authorities: Uniform Jury Instr. for Patent Cases in the D. Del. 5.9 (2004).

## V.    OBVIOUSNESS

This Court has previously dealt with the impact of the Supreme Court's decision in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (Apr. 30, 2007), which profoundly changed the standard for obviousness in patent cases. In *Power Integrations v. Fairchild*, this Court entered one of the earliest post-*KSR* obviousness jury instructions. Since the *Power Integrations* trial, at least one other case pending in this District has also entered a post-*KSR* obviousness instruction. *See Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394). Importantly, the *Callaway* case was an obviousness-only case – the issues of damages and willfulness were bifurcated, and infringement was stipulated.

Witness Systems respectfully submits the instruction from *Callaway Golf*, which this Court may wish to incorporate in part or in full into the obviousness jury instructions for this case. Witness Systems believes that its instructions correctly reflect the holding of *KSR*. One difference to note is that in the *Callaway* instruction the Court decided to use one instruction for all of the relevant Graham-factors, including "Scope and Content of the Prior Art," "Differences Over the Art," and "Level of Ordinary Skill in the Art." As the parties in this case already have agreed-upon instructions for these factors, Witness Systems has omitted this portion of the Callaway Golf instruction. A copy of the Callaway Golf instruction, as well as all of the obviousness instructions proposed by the parties in this case, are attached in the following pages.

### 5.4    OBVIOUSNESS - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the patents in suit are invalid as being obvious. In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made. If it would have been obvious for a skilled person who knew of the prior art to make the claimed invention, then the patent claims are invalid.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.    Determine the scope and content of the prior art relied upon by Witness Systems;

2.    Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.    Consider objective factors of non-obviousness.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art, you should not apply any rigid test or formula. Rather, you should use

your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results.

**SOURCE:** *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8; KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742-43 (Apr. 30, 2007); Obviousness instruction from *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394) (modified to fit this case).

## 5.4    OBVIOUSNESS - NICE'S PROPOSED JURY INSTRUCTIONS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.    Determine the scope and content of the prior art;

2.    Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.    Consider objective factors of non-obviousness.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patent at issue, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment. Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or unobvious to a person of ordinary skill in the pertinent art.

Authorities: Federal Circuit Bar Ass'n Model Patent Jury Instructions, 10.9; D. Del. Uniform Instruction, 4.8: Obviousness (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007); *KSR International Co. v. Teleflex Inc. et al.*, 127 S. Ct. 1727 (2007).

## 5.4.1 . SCOPE AND CONTENT OF THE PRIOR ART - JOINTLY PROPOSED JURY INSTRUCTIONS

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. The prior art that Witness Systems contends render the patents-in-suit obvious includes the following:

1.    prior patents that issued before the critical date for a particular patent;

2.    prior publications having a publication date before the critical date for a particular patent;

3.    U.S. Patents that have a filing date prior to the critical date for a particular patent;

4.    anything in public use or on sale in the United States before the critical date for a particular patent;

5.    anything that was publicly known or used by others in this country before the date of invention of a patent-in-suit; and

6.    anything that was made or built or any process that was used in this country by another person before the date of invention of a patent-in-suit, where the thing made or built or the process used was not abandoned, suppressed or concealed.

Authorities: Federal Circuit Bar Ass'n Model Patent Jury Instructions, 10.9.1; D. Del. Uniform Instruction, 4.8.1: Scope and Content of the Prior Art (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

### 5.4.2   DIFFERENCES OVER THE PRIOR ART - JOINTLY PROPOSED JURY INSTRUCTIONS

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences. The test is whether the claimed invention as a whole would have been obvious after considering all of the prior art. Each claim must be considered separately and in its entirety.

Authorities: Federal Circuit Bar Ass'n Model Patent Jury Instructions, 10.9.2; D. Del. Uniform Instruction, 4.8.2: Differences Over the Prior Art (1993).

### 5.4.3   LEVEL OF ORDINARY SKILL - NICE'S PROPOSED JURY INSTRUCTIONS

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made. A person of ordinary skill is not the inventor, but rather a hypothetical person who is presumed to be aware of all the prior art at the time of the invention. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology and the education of others working in the field.

Authorities:  Federal Circuit Bar Ass 'n Model Patent Jury Instructions, 10.9.3; D. Del. Uniform Instruction, 4.8.3: Level of Ordinary Skill (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

### 5.4.3   LEVEL OF ORDINARY SKILL - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made. A person of ordinary skill is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, the person of ordinary skill in the art is able to apply his experience and ability to the problem and look to any available prior art. Also, this person is a person of ordinary creativity, not an individual who acts in a mechanical fashion.

Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology, and the education of others working in the field.

Source: *Uniform Jury Instr. for Patent Cases in the D. Del. 4.8.3.*

### 5.4.4   HINDSIGHT - NICE'S PROPOSED JURY INSTRUCTIONS

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or modify these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.

Authorities:  D. Del. Uniform Instruction, 4.8.5: Obviousness - Hindsight (1993); Final Jury Instructions - Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007).

### WITNESS SYSTEMS' OBJECTION:

Witness Systems objects to this instruction and instead proposes Instruction 5.6.4 –

"REASON TO COMBINE."

### 5.4.5   HINDSIGHT – WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art. Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

**SOURCE:** Obviousness instruction from *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394) (modified to fit this case).

**OBVIOUSNESS JURY INSTRUCTION FROM**
*Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007)
**(Robinson, J.) (D.I. 394)**

## OBVIOUSNESS

Acushnet contends that the asserted claims are invalid as being obvious. In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should first determine the scope and content of the prior art. This means that you should determine what prior art was reasonably pertinent to the particular problems the inventor faced. The prior art in this case includes the following, all of which were part of the art known prior to the 1995 effective dates of the Sullivan patents:

(1) U.S. Patent No. 4,431,193 to Nesbitt (the "Nesbitt '193" patent) (DX-9);

(2) U.S. Patent No. 4,674,751 to Molitor (the "Molitor '751" patent) (DX-11);

(3) U.S. Patent No. 4,274,637 to Molitor (the "Molitor '637" patent) (DX-12);

(4) U.S. Patent No. 5,314,187 to Proudfit (the "Proudfit '187" patent) (DX-10);

(5) U.S. Patent No. 5,334,673 to Wu (the "Wu '673" patent) (DX-13);

(6) The Wilson Ultra Tour Balata golf ball; and

(7) The Titleist Professional golf balls.

20

You must next consider the differences, if any, between the prior art and the claimed invention. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art. Each claim must be considered in its entirety, separate from other claims.

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include:

(1)     The educational level of the inventor and of others working in the field;

(2)     The types of problems encountered in the art at the time of the invention;

(3)     The prior art patents and publications;

(4)     The activities of others;

(5)     Prior art solutions to the problems encountered by the inventor; and

(6)     The sophistication of the technology.

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the claimed invention. If you find that the available prior art shows each of the elements of the asserted claims, you must determine whether it then would have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the asserted claims.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should not apply any rigid test or formula. Rather, you should use your common sense to determine whether

21

the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results.

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art. Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

Dated:  January 21, 2008          FISH & RICHARDSON P.C.


By:  /s/ William J. Marsden, Jr.
         William J. Marsden, Jr. (#2247)
         Kyle Wagner Compton (#4693)
         919 N. Market Street, Suite 1100
         P. O. Box 1114
         Wilmington, DE  19899-1114

         Nagendra Setty (pro hac vice)
         Daniel A. Kent (pro hac vice)
         Noah C. Graubart (pro hac vice)
         1180 Peachtree Street, N.E., 21st Floor
         Atlanta, GA 30309

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of January, 2008, I electronically filed with the Clerk of Court the DEFENDANT WITNESS SYSTEMS, INC.'S SECOND SUPPLEMENTAL SUBMISSION RE JURY INSTRUCTIONS using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel.  I further certify that on January 19, 2008, I sent by electronic mail the document(s) to Delaware counsel.

Josy W. Ingersoll                              Attorneys for Plaintiffs
Melanie K. Sharp                               Nice Systems Ltd. and Nice Systems, Inc.
Karen E. Keller
Mary Dugan
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

I also certify that on January 19, 2008, I sent by electronic mail, the document(s) to the following non-registered participants:

Scott G. Lindvall                              Attorneys for Plaintiffs
Daniel DiNapoli                                Nice Systems Ltd. and Nice Systems, Inc.
Joseph M. Drayton
Robert R. Laurenzi
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

/s/ William J. Marsden, Jr.
William J. Marsden, Jr. (#2247)