# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON

ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN
EDMON L. MORTON
JOHN E. TRACEY

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302-571-6681
DIRECT FAX: 302-576-3333
msharp@ycst.com

JOSEPH M. BARRY
RYAN M. BARTLEY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
MICHELE SHERRETTA BUDICAK
JEFFREY T. CASTELLANO
DOUGLAS T. COATS (MD ONLY)
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
KERRIANNE MARIE FAY
IAN S. FREDERICKS
JAMES J. GALLAGHER
WILLIAM E. GAMGORT
SEAN T. GREECHER
NATHAN D. GROW
STEPHANIE L. HANSEN
JAMES L. HIGGINS
PATRICK A. JACKSON
DAWN M. JONES
KAREN E. KELLER

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
KAREN L. PASCALE
SETH J. REIDENBERG
PATRICIA A. WIDDOSS

JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
EVANGELOS KOSTOULAS
JOHN C. KUFFEL
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
ADRIA B. MARTINELLI
KATHALEEN MCCORMICK
MICHAEL W. MCDERMOTT
TAMMY L. MERCER
MARIBETH L. MINELLA
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
ROBERT F. POPPITI, JR.
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
RICHARD J. THOMAS
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

January 19, 2008

**BY E-FILE**

The Honorable Joseph J. Farnan, Jr.
United States District Court, District of Delaware
844 North King Street
Wilmington, DE 19801

     Re:    *NICE Systems, Inc. and NICE Systems, Ltd. v. Witness Systems, Inc.*
              C.A. No. 06-311 (JJF) - Jury Instructions

Dear Judge Farnan:

        I write on behalf of my clients, Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd. (collectively, "NICE"), at Your Honor's instruction, in connection with five of the disputed issues in the jury instructions. For each, NICE attaches its proposed instruction. Where Witness Systems submitted an alternative instruction, it is included for the convenience of the Court. NICE notes, however, that the attached jury instructions proposed by Witness are neither from the Federal Circuit Bar Association Model Jury Instructions nor the Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware.

        1. **Means-Plus-Function**: NICE requests that the jury be instructed, consistent with the evidence, on means-plus-function by its proposed instructions 3.4 and 5.3.1. Witness Systems has submitted no alternative proposal.

        2. **Direct Infringement**: NICE requests that the jury be instructed, consistent with the evidence, on direct infringement (and as an aid for inducement and contributory infringement) by Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 3.4 and 3.5 (in lieu of NICE's proposed instruction 4.1 as filed on January 7, 2008). Witness Systems has withdrawn its alternative proposal.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Joseph J. Farnan, Jr.
January 19, 2008
Page 2

    3. Hindsight: NICE requests that the jury be instructed on hindsight by its instruction 5.4.4 and opposes Witness Systems' proposed instructions because it is inconsistent with the model rules and is unnecessarily inflammatory.

    4. NICE opposes Witness Systems' newly revised proposed instruction on Obviousness because it does not correctly state the law and does not limit the instruction to those patents and claims Witness Systems contends are obvious. NICE submits instead its Obviousness instruction 5.4.

    5. NICE opposes Witness Systems' proposed instruction 4.8, addressing situations where resort to the doctrine of equivalents is not permitted, on the grounds that it is unsupported by the evidence, likely to confuse and mislead the jury, argumentative and, in all events, does not track the Federal Bar Association instruction.

    I apologize that this submission has been delayed. Counsel's meet and confer on the instructions and preparation of this letter were delayed by equipment and service problems. Obviously, counsel are available to answer any questions the Court may have and will as instructed fax the joint instructions on the evening of Monday, January 21, 2008.

    Respectfully,

    Melanie K. Sharp (No. 2501)

MKS
cc:  Clerk of the Court (by Hand Delivery)
     William J. Marsden Jr., Esquire (by Hand Delivery)

### 3.4    MEANS-PLUS-FUNCTION CLAIMS- NICE'S PROPOSED JURY INSTRUCTIONS

Part of claim 8 of the '371 patent is written in what is known as a "means plus function" format. The claim element is "means for locating data on said primary partition."

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop," *and equivalents to the structure described in the specification that perform the required function of "attaching the legs to the tabletop."*

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for claim 8, you must first determine whether Witness Systems' accused products perform the function of "locating data on said primary partition." If not, the claim containing that means-plus-function element is not infringed.

Second, if Witness Systems' accused products do perform the required function, you must identify the structure in Witness Systems' accused products that actually perform this function.

Third, you must determine whether those accused structures are the same as or equivalent to the following structure identified in the patent for performing the required function. The '371 patent generally describes the function of the "means for locating data on said primary partition" in Column 3, lines 12-35. The structure disclosed for "locating data on said primary partition" is

comprised of a record session table and index table. The record session table keeps track of the time that audio data is being recorded on the primary partition and the index table indicates the location of the audio data on the primary partition. If the structure of the accused devices are the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of claim 8 is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structures perform the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure of the accused products and the structure in the patent were interchangeable.

Authorities: Uniform Jury Instr. for Patent Cases in the D. Del. 3.3.6 (2004) (changes in italics); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

**WITNESS SYSTEMS' OBJECTION:**

NICE previously objected to any inclusion of instructions regarding "means plus function claims," 35 U.S.C. § 112 ¶ 6, claiming that the Court had not construed any claim language of the patents-in-suit as "means plus function."

In light of the NICE's withdrawal of multiple asserted claims and in light of the the Court's Memorandum on Tentative Claim Construction, Witness Systems agrees with NICE's previous position. Witness Systems objects to the inclusion of any jury instruction which relates to the issue of whether any claim language should be construed under 35 U.S.C. § 112 ¶ 6 as

38

"means plus function." At this time, the Court has not construed any claim language of the patents-in-suit as "means plus function." If the Court finds that any language of the claims which remain in the case should be construction as "mean plus function" under 35 U.S.C. § 112 ¶ 6, Witness Systems reserves its right to submit proposed jury instructions for the Court's consideration.

Moreover, Witness Systems objects to NICE's proposed Jury Instruction, "3.4 MEANS-PLUS-FUNCTION CLAIMS-NICE'S PROPOSED JURY INSTRUCTIONS," which misstates the applicable law.

### 5.3.1 ANTICIPATION OF MEANS-PLUS-FUNCTION CLAIMS--NICE'S PROPOSED JURY INSTRUCTIONS

Part of claim 8 of the '371 patent is written in what is known as a "means plus function" format. The claim element is "means for locating data on said primary partition."

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop," *and equivalents to the structures described in the specification that perform the required function of "attaching the legs to the tabletop."*

I will now explain the three special rules that apply to this type of claim language *and anticipation. First, the prior art reference must describe or disclose all of the elements of the claimed invention.* Specifically, for claim 8, you must first determine whether *the prior art describes or discloses* the function of "locating data on said primary partition." If not, the claim containing that means-plus-function element is not *anticipated.*

Second, if Witness Systems' *prior art reference does describe or disclose all of the elements of the claimed* function, you must identify the structure in Witness Systems' *prior art* that actually performs this function.

Third, you must determine whether *the structure described or disclosed in the prior art reference* is the same as or equivalent to the following structure identified in the patent for performing the required function. The '371 patent generally describes the function of the "means for locating data on said primary partition" in Column 3, lines 12-35. The structure disclosed for "locating data on said primary partition" is comprised of a record session table and index table. The record session table keeps track of the time that audio data is being recorded on

the primary partition and the index table indicates the location of the audio data on the primary partition. If the structure *described in the prior art reference* is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of claim 8 is *anticipated.*

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the *structure disclosed in the prior art reference* performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the art would have believed that the *structure disclosed in the prior art reference* and the structure in the patent were interchangeable.

Authorities: Uniform Jury Instr. for Patent Cases in the D. Del. 3.3.6 (2004) (changes in italics); Final Jury Instructions, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2006).

**WITNESS SYSTEMS' OBJECTION:**

NICE previously objected to any inclusion of instructions regarding "means plus function claims," 35 U.S.C. § 112 ¶ 6, claiming that the Court had not construed any claim language of the patents-in-suit as "means plus function."

In light of the NICE's withdrawal of multiple asserted claims and in light of the the Court's Memorandum on Tentative Claim Construction, Witness Systems agrees with NICE's previous position. Witness Systems objects to the inclusion of any jury instruction which relates to the issue of whether any claim language should be construed under 35 U.S.C. § 112 ¶ 6 as "mean plus function." At this time, the Court has not construed any claim language of the patents-in-suit as "means plus function." If the Court finds that any language of the claims which remain in the case should be construction as "mean plus function" under 35 U.S.C. § 112

¶ 6. Witness Systems reserves its right to submit proposed jury instructions for the Court's consideration.

### 3.4  Patent Infringement -- Generally

A patent owner may enforce his right to exclude others from making, using or selling the patented invention by filing a lawsuit for patent infringement. Here, plaintiff, the patent owner, has sued defendant, the accused infringer, and has alleged that defendant's product [apparatus or method] infringes one or more claims of plaintiff's U.S. Patent No. _____ .

Patent law provides that any person or business entity which makes, uses or sells, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

There are three ways to infringe a patent. One may: (1) directly infringe a patent; (2) induce others to infringe a patent, in which case the inducer is liable for infringement as well as the direct infringer; or (3) contribute to the infringement of a patent by another by supplying a component specially designed for the patented invention, in which case both the direct infringer and the contributory infringer would be liable for patent infringement. Next I will explain each type of infringement more completely. 35 U.S.C. §§ 281, 271.

### 3.5 Direct Infringement -- Knowledge of Patent or Intent to Infringe is Immaterial

Defendant would be liable for directly infringing Plaintiff's patent if you find that plaintiff has proven by a preponderance of the evidence that defendant has made, used or sold the invention defined in at least one claim of plaintiff's patent. 35 U.S.C. § 271(a).

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent. He may also infringe even though in good faith he believes that what he is doing is not an infringement of any patent. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478 (1974); *Filmways Pictures, Inc. v. Marks Polarized Corp.*, 552 F. Supp. 863, 868, 220 U.S.P.Q. 870 (S.D.N.Y. 1982).

### 4.1 DIRECT INFRINGEMENT - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

A person or company is liable for direct literal infringement of a patent where that person or company makes, uses, or sells a product or process described by the words in a patent claim in the United States during the term of the patent and without the authority of the patent owner. Intent to infringe is not required to establish infringement. Thus, NICE must prove by a preponderance of the evidence each of the following:

1. That Witness Systems did not have the authority from NICE to make, use, sell, or offer to sell the apparatus or methods claimed under NICE's five asserted patents;

2. That an apparatus or method made, used, sold, or offered for sale by Witness Systems includes each element or step of at least one asserted claim of NICE's five asserted patents. If Witness Systems' product or use of its products omits any single component, step, or element recited in NICE's patent claim, Witness Systems does not literally infringe that claim.;

3. That Witness Systems has made, used, sold, or offered for sale the accused apparatus or methods within the United States, its Territories, or its Possessions.

You must consider these elements for each claim asserted by NICE. Remember, the question is whether Witness Systems products infringe any asserted claim of NICE's patent, and not whether Witness Systems' products are similar or not to products of NICE. Accordingly, you must be certain to compare Witness Systems' accused apparatus or method with each claim it is alleged to infringe and not with any apparatus made or method used by NICE or with a preferred embodiment presented in the patent disclosure.

### 5.4.4 HINDSIGHT - NICE'S PROPOSED JURY INSTRUCTIONS

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or modify these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.

Authorities:    D. Del. Uniform Instruction, 4.8.5: Obviousness - Hindsight (1993).

### 5.4.5 HINDSIGHT – WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art. Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

**SOURCE:** Obviousness instruction from *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394) (modified to fit this case).

## 5.4  OBVIOUSNESS - NICE'S PROPOSED JURY INSTRUCTIONS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of claim 6 of the '109 patent, you should take the following steps:

1. Determine the scope and content of the prior art;

2. Identify the differences, if any, between claim 6 of the '109 patent and the prior art;

3. Determine the level of ordinary skill in the pertinent art at the time the invention of the '109 patent was made;

4. Consider objective factors of non-obviousness.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the '109 patent, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment. Against this background, you will then decide whether the subject matter of claim 6 of the '109 patent would have been obvious or unobvious to a person of ordinary skill in the pertinent art.

Authorities: *See* Fed. Cir. Bar Ass'n Model Patent Jury Instructions, 4.3b; D.Del. Uniform Instruction, 4.8: Obviousness (1993); Final Jury Instructions-Validity Trial, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371 JJF (D. Del. 2007); *KSR Int'l Co. v. Teleflex Inc.; et al.*, 127 S. Ct. 1727 (2007).

### 5.4  OBVIOUSNESS - WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS

Witness Systems contends that the patents in suit are invalid as being obvious. In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made. If it would have been obvious for a skilled person who knew of the prior art to make the claimed invention, then the patent claims are invalid.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1. Determine the scope and content of the prior art relied upon by Witness Systems;

2. Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

3. Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4. Consider objective factors of non-obviousness.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art, you should not apply any rigid test or formula. Rather, you should use

your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results.

**SOURCE:** *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8; KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742-43 (Apr. 30, 2007); Obviousness instruction from *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del. December 13, 2007) (Robinson, J.) (D.I. 394) (modified to fit this case).

**4.8  SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED – WITNESS SYSTEMS' PROPOSED JURY INSTRUCTIONS**

There are four situations where resort to the doctrine of equivalents to find infringement is not permitted.

First, resort to the doctrine of equivalents to find infringement is not permitted if you find that Witness Systems is merely practicing what was in the art prior to the patented invention or that which would have been obvious in light of what was in the prior art. This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office.

Second, you may not find infringement under the doctrine of equivalents even if only one limitation of a claim or its equivalent is missing from the accused device. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Third, you may not find that a product infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature of that product was described somewhere in the patent and (2) that product is not covered literally by any of the claims of the patent.

Fourth, you may not find infringement under the doctrine of equivalents for the following claims: WITNESS SYSTEMS RESERVES THE RIGHT TO LIST THE CLAIMS WHERE JUDGE FARNAN HAS RULED THAT NICE GAVE UP DOCTRINE OF EQUIVALENTS GROUND THROUGH ITS ACTIONS BEFORE THE PTO.

Source: *Fed. Cir. Bar Assoc. Model Jury Instructions 3.1d (2007)*

**NICE'S OBJECTIONS:**

NICE object as these issues should not be presented to the jury and may confuse the jury. NICE further objects to the inclusion of this specific instruction as the Court has not decided if any limitation on the doctrine of equivalents is applicable to this case. NICE also objects to the inclusion of this specific jury instruction as it is duplicative of other instructions on infringement. If the Court finds that a limitation to the doctrine of equivalents is applicable to this case, NICE reserves its right to submit proposed jury instructions for the Court's consideration. In addition, NICE objects to this instruction because it is not Federal Circuit Bar Association Model Jury Instruction 3.1(d), as represented by Witness Systems.