IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICE SYSTEMS, INC., and<br>NICE SYSTEMS, LTD., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 06-311-JJF |
| v. | ) | |
| | ) | |
| WITNESS SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **FINAL JURY INSTRUCTIONS**

Dated:  January 21, 2007

## TABLE OF CONTENTS

Page No.

1.0 GENERAL INSTRUCTIONS ................................................... 1
    1.1    INTRODUCTION ...................................................... 1
    1.2    DUTY OF THE JURY ................................................. 2
    1.3    BURDEN OF PROOF .................................................. 3
    1.4    EVIDENCE DEFINED ................................................. 4
    1.5    CONSIDERATION OF EVIDENCE ....................................... 5
    1.6    USE OF NOTES ..................................................... 6
    1.7    DIRECT AND CIRCUMSTANTIAL EVIDENCE .............................. 7
    1.8    CREDIBILITY OF WITNESSES ........................................ 8
    1.9    NUMBER OF WITNESSES ............................................. 9
    1.10   EXPERT WITNESSES ............................................... 10
    1.11   DEPOSITION TESTIMONY ........................................... 11
    1.12   DEMONSTRATIVE EXHIBITS ......................................... 12

2.0 THE PARTIES AND THEIR CONTENTIONS ...................................... 13
    2.1    THE PARTIES .................................................... 13
    2.2    NICE'S CONTENTIONS ............................................. 14
    2.3    WITNESS SYSTEMS' CONTENTIONS ................................... 15
    2.4    SUMMARY OF PATENT ISSUES ....................................... 16

3.0 THE PATENT CLAIMS ...................................................... 17
    3.1    THE PATENT CLAIMS – GENERALLY .................................. 17
    3.2    CONSTRUCTION OF CLAIMS ......................................... 18
    3.3    DEPENDENT AND INDEPENDENT CLAIMS ............................... 25

4.0 INFRINGEMENT ........................................................... 26
    4.1    PATENT INFRINGEMENT GENERALLY -
           DIRECT INFRINGEMENT ............................................ 26
    4.2    INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE
           PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF
           EQUIVALENTS .................................................... 27
    4.3    PATENT INFRINGEMENT GENERALLY - INDIRECT
           INFRINGEMENT ................................................... 29
    4.4    INDUCING PATENT INFRINGEMENT ................................... 30
    4.5    CONTRIBUTORY INFRINGEMENT ...................................... 32
    4.6    SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS
           IS NOT PERMITTED ............................................... 33
    4.7    OPEN ENDED OR "COMPRISING" CLAIMS .............................. 34
    4.8    INFRINGEMENT DESPITE WITNESS SYSTEMS' IMPROVEMENTS ..... 35
    4.9    WILLFUL INFRINGEMENT ........................................... 36

**Page No.**

5.0  INVALIDITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    5.1    PRESUMPTION OF VALIDITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    5.2    ANTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
            5.2.1    PRIOR PUBLIC USE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
            5.2.2    PRIOR PUBLICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
            5.2.3    PRIOR "ON SALE" PRODUCTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
            5.2.4    PRIOR U.S. PATENT APPLICATION . . . . . . . . . . . . . . . . . . . . . . . . 43
    5.3    OBVIOUSNESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
            5.3.1    SCOPE AND CONTENT OF THE PRIOR ART . . . . . . . . . . . . . . . . 45
            5.3.2    DIFFERENCES OVER THE PRIOR ART . . . . . . . . . . . . . . . . . . . . . . 46
            5.3.3    LEVEL OF ORDINARY SKILL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
            5.3.4    HINDSIGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
            5.3.5    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
                     (SECONDARY CONSIDERATIONS) . . . . . . . . . . . . . . . . . . . . . . . . . 49

6.0  DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    6.1    DAMAGES GENERALLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    6.2    COMPENSATORY PATENT DAMAGES IN GENERAL . . . . . . . . . . . . . . . . 51
    6.3    WHAT IS A REASONABLE ROYALTY? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

7.0  DELIBERATION AND VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
    7.1    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
    7.2    UNANIMOUS VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    7.3    DUTY TO DELIBERATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
    7.4    COURT HAS NO OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## 1.0  GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to give additional instructions about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2    DUTY OF THE JURY

It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts to the law as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

You are the judges of the facts. I will decide which rules of law apply to this case. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

## 1.3   BURDEN OF PROOF

This is a civil case in which NICE Systems, Inc. and NICE Systems, Ltd., which are collectively referred to as "NICE," are charging Witness Systems, Inc. with patent infringement. Witness Systems maintains that NICE's patents are invalid.

NICE has the burden of proving patent infringement and its claim of damages by what is called a preponderance of the evidence. That means NICE has to produce evidence which, when considered in light of all of the facts, leads you to believe that what NICE claims is more likely true than not. To put it differently, if you were to put NICE and Witness Systems' evidence on the opposite sides of a scale, the evidence supporting NICE's claims must make the scales tip somewhat on NICE's side.

As previously mentioned, Witness Systems maintains that NICE's patents are invalid. A patent, however, is presumed to be valid. Accordingly, Witness Systems has the burden to prove each asserted claim of each patent-in-suit are not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and does not play any part in this case. Therefore, you should not consider it at all in your deliberations.

3

## 1.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. From time to time it may be the duty of the attorneys to make objections to evidence that should not be presented at this trial under the rules of evidence. It is my duty as the judge to rule on those objections and decide whether you can consider the evidence in question. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

4

## 1.5   CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6   USE OF NOTES

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

## 1.7    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.8   CREDIBILITY OF WITNESSES

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact and whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

8

## 1.10   EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training, education, or experience in that technical field – a person called an expert witness – is permitted to state his opinion on those technical matters.

You are not required, however, to accept that opinion. As with any other witness, it is up to you to decide how much weight to give the opinion in light of all the evidence in the case.

You should take into account the expert's actual experience in the field, such as whether he has worked in the technology area to which he is testifying. Even though the person rendering the opinion may have been admitted as an expert, you may weigh his level of expertise in determining the reliability of his opinion.

10

## 1.11   DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of videotaped excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.

## 1.12    DEMONSTRATIVE EXHIBITS

During trial, you have seen many exhibits. Some of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts, models and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called demonstrative exhibits, have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is evidence in this case.

## 2.0  THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

The plaintiffs in this case are NICE Systems, Inc. and NICE Systems, Ltd.  The defendant

is Witness Systems, Inc.  I will refer to plaintiffs as "NICE."  I will refer to defendant as "Witness

Systems."

## 2.2    NICE'S CONTENTIONS

NICE contends that Witness Systems has been and is now willfully infringing either literally or by equivalence, each of the following patent claims:

U.S. Patent No. '371:  claims 1 and 8;

U.S. Patent No. '570:  claim 6;

U.S. Patent No. '372:  claims 1, 15, and 33;

U.S. Patent No. '920:  claims 1, 16, and 21;

U.S. Patent No. '109:  claims 1 and 6

by making, using, selling, and offering to sell the following products:  ContactStore, ContactStore for IP, ContactStore for Communication Manager, and Balance, which are sold under the brand names eQuality and Impact 360, or are sold through a partner or reseller.  In addition, NICE contends that Witness has induced others to infringe and/or has contributorily infringed.  These core products are also sold with optional add on features and other peripheral components such as end user viewing and archiving components.  NICE contends that Witness Systems acted recklessly and that it knew that its actions constituted infringement and, therefore, Witness Systems' infringement is willful.

NICE contends that each of the asserted claims of the patents-in-suit is valid.

NICE contends that Witness had actual and constructive notice of NICE's patents.

NICE contends it is entitled to recover damages for Witness's infringement of the patents-in-suit.

NICE contends that if Witness Systems is found to infringe and the patents-in-suit are found not invalid, it is entitled to, at a minimum, a reasonable royalty.

14

## 2.3 **WITNESS SYSTEMS' CONTENTIONS**

Witness Systems contends that its products do not infringe the asserted claims of the patents in suit, either literally or under the doctrine of equivalents..

Witness Systems further contends that the asserted claims of NICE's patents are invalid. Witness Systems finally contends that its infringement was not willful and that NICE is not entitled to the amount of damages it seeks as a royalty.

15

## 2.4   SUMMARY OF PATENT ISSUES

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

Whether NICE has proven by a preponderance of the evidence that Witness Systems has infringed any of the asserted claims of the patents in suit;

Whether Witness Systems has proven by clear and convincing evidence that any of NICE's patents are invalid;

If you find any of the asserted claims of the patents in suit are valid and infringed, whether NICE has proven by clear and convincing evidence that Witness Systems' infringement was willful.

If you find any of the asserted claims of the patents in suite are valid and infringed, the amount of damages that NICE has proven by a preponderance of the evidence is due to it.

16

## 3.0  THE PATENT CLAIMS

### 3.1  THE PATENT CLAIMS – GENERALLY

Before you can decide the issues in this case, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent. The patent claims involved here are: Claim 6 of U.S. Patent No. 6,249,570;Claims 1, 15 and 33 of U.S. Patent No. 6,775,372; Claims 1 and 6 of U.S. Patent No. 7,010,109; Claims 1, 16 and 21 of U.S. Patent No. 6,870,920; Claims 1 and 8 of U.S. Patent No. 5,396,371. I will refer to these patents collectively as the "patents in suit," or individually by the last three numbers of the patents.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement by a given product, NICE need only establish that one claim has been infringed.

17

### 3.2    CONSTRUCTION OF CLAIMS

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use then when you decide whether or not the patent is valid or infringed.

It may be helpful to refer to the copy of the patents in suit that you have been given as I discuss the claims at issue here. The claims of the patent are toward the end of each patent. You are advised that the following definitions for the following terms must be applied:

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|---|---|---|---|---|
| U.S. No. 5,396,371 | Claim 1 | storing audio data from the audio source in a buffer | buffer | a device in communication with the digital audio tape and the random access storage device that temporarily stores data |
| U.S. No. 5,396,371 | Claim 1 | writing the audio data from the buffer onto a digital audio tape and a random access storage device | digital audio tape | magnetic tape designed for storage of audio in digital form |
| | | | writing the audio from the buffer onto a digital audio tape and a random access storage device | transferring audio data from the buffer directly to both a digital audio tape and a random access storage device |
| | | | buffer | device in communication with the digital audio tape and the random access storage device that temporarily stores data |

18

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|---|---|---|---|---|
| U.S. No. 5,396,371 | Claim 8 | a random access storage device having a primary partition for storing audio data and a secondary partition for storing means for locating data on said primary partition and a pair of pointers in communication with said random access memory, a first of said pointers being operated to transmit data to said random access storage device and the second of said pointers being operative to retrieve audio data from said random access storage device | pair of pointers | digital information used to read data from and write data to a storage component |
|  |  |  | partition | a portion of a random access storage (RAS) device |
| U.S. No. 7,010,109 | Claim 1 | initiating the data session by said first communication device with second communication device | communication device | a device used for transmitting and/or receiving audio and/or video information |

19

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|---|---|---|---|---|
| U.S. No. 7,010,109 | Claim 1 | implementing the data session as a conference call through a conference controller such that said first and second communication devices are connected, respectively, as first and second | conference call | a multi-participant session even if only two participants are present, one of which is a recording device |
| | | | through a conference controller | the data packet transmissions of the IP data session pass through the conference controller |
| | | | conference controller | a component that initiates, enables, and/or establishes a conference call |
| | | participants | participant | a communication device or recording device which is present on a conference call |
| U.S. No. 7,010,109 | Claim 1 | using the conference controller, selectively entering the recording device to said conference call as an additional participant, wherein the recording device is distinct from the first and second communication devices yet receives as the additional participant at least the portion of the IP data session from each of the first and second participants | recording device | a device which records IP audio and/or video data |
| | | | IP data session | the plurality of data packet transmission between any two or more communication devices |
| | | | the portion of the IP data session | all the data packets transmitted between the first and second participants during the part of the IP data session being recorded |
| U.S. No. 6,775,372 | Claim 1 | a) a telecommunications ("telecom") stage receiving input from a plurality of communication channels; | a telecommunications ("telecom") stage | the stage that serves to capture and pre-process signals from two or more communication channels and interfaces with the recorder stage |

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|---|---|---|---|---|
| U.S. No. 6,775,372 | Claim 1 | c) a distribution stage providing access to data logged in the recorder stage | distribution stage | the stage that serves for retrieval of recorded information and providing it in a human recognizable form, and, in some instances, archiving the recorded information to removable storage |
| U.S. No. 6,775,372 | Claim 33 | The data logging system of claim 32, wherein the network server is a Web server | Web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| U.S. No. 6,870,920 | Claim 1 | A method for accessing information in at least one digital logger storing data associated with input from a plurality of input channels, comprising: | digital logger | a device, system or software for recording audio in digital form |
| U.S. No. 6,870,920 | Claim 1 | at a Web server having access to said at least one digital logger, receiving a request for retrieval of stored data from a client; | Web server | a component that provides access to information accessible from a computer connected to the Internet or intranet |
| | | | digital logger | a device, system or software for recording audio in digital form |
| | | | receiving a request for retrieval of stored data from a client | the Web server receives a request for retrieval of stored data |
| U.S. No. 6,870,920 | Claim 1 | retrieving stored data in accordance with the received request | retrieving stored data | the Web server retrieves stored data |

21

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|--------|----------------|------------|------------|------------|
| U.S. No. 6,870,920 | Claim 1 | and transferring the retrieved data to the client | transferring the retrieved data | the Web server sends the retrieved data |
| U.S. No. 6,870,920 | Claim 16 | A method for accessing information stored by at least one digital logger storing data associated with input from a plurality of communication channels, comprising: | digital logger | a device, system or software for recording audio in digital form |
| U.S. No. 6,870,920 | Claim 16 | at a Web server having access to said information stored by at least one digital logger | web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| | | over a communications network, receiving a request for retrieval | digital logger | a device, system or software for recording audio in digital form |
| | | of stored data from a user | receiving a request for retrieval of stored data from a client | the Web server receives a request for retrieval of stored data |
| U.S. No. 6,870,920 | Claim 16 | retrieving said stored data from said information in accordance with the received request | retrieving stored data | the Web server retrieves stored data |
| U.S. No. 6,870,920 | Claim 16 | and transferring the retrieved data to the client | transferring the retrieved data | the Web server sends the retrieved data |

22

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|---|---|---|---|---|
| U.S. No. 6,870,920 | Claim 21 | The method of claim 16 wherein the step of retrieving stored data comprises accessing archived data at the web server corresponding to a record of a communication channel made by said at least one digital logger | retrieving stored data | the Web server retrieves stored data |
| | | | web server | a component that provides access to information accessible from a computer connected to the Internet or an intranet |
| | | | record of communication channel | stored voice and/or call information received from a communication channel |
| | | | digital logger | a device, system or software for recording audio in digital form |
| U.S. No. 6,249,570 | Claim 6 | receiving audio data regarding one or more telephone call segments relating to one or more telephone calls, and data regarding telephony events associated with said telephone call segments; | telephone call segments | portions of a telephone call that are each bounded by telephony events |
| | | | telephone call | the entire conversation between a business entity and a caller to that entity, including transfers and conferences |
| | | | telephony event | actions or occurrences detected by a computer program and that related to what happens to a phone call (such as the initiation of the call, the addition or removal of callers, the transfer of the phone call, or the termination of the calls) |

23

| PATENT | RELEVANT CLAIM | CLAIM TEXT | CLAIM TERM | DEFINITION |
|--------|----------------|------------|------------|------------|
| U.S. No. 6,249,570 | Claim 6 | constructing a data representation of a lifetime of the telephone call using data regarding telephony events associated with the telephone call segments of the telephone call, wherein said data representation comprises, for each segment of the call, the location of the stored audio data of that segment and the start time, end time, and duration of that segment | data representation | digital representation of data |
| | | | lifetime of the telephone call | an entire telephone call |
| | | | data representation of a lifetime of the telephone call | call-centric data record of the telephone call that includes a detailed cumulative start-to-finish history of a telephone call, including all telephony events and participants |
| | | | telephone call segments | portions of a telephone call that are each bounded by telephone events |

## 3.3    DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends on at least one other patent claim and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 16 of the '920 patent is an independent claim. You know this because this claim mentions no other claim. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 21 of the '920 patent, on the other hand, is a dependent claim. Accordingly, the words of Claims 16 and 21 must be read together in order to determine what the dependent claim covers.

Some claims of the patent in suit are broader than other claims. You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.

## 4.0 INFRINGEMENT

### 4.1 PATENT INFRINGEMENT GENERALLY - DIRECT INFRINGEMENT

A patent owner has the right to stop others from making, using, selling, offering to sell within the United States or importing into the United States the patented invention by filing a lawsuit for patent infringement. Here, NICE, the owner of the '371, '570, '372, '920, and '109 patents, has sued Witness Systems, the accused infringer, and has alleged that Witness Systems' products infringe one or more of the claims of each of these patents.

Patent law provides that any person or business entity which makes, uses, sells, offers to sell, or imports, without a patent owner's permission, any product legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

There are at least two ways to infringe a patent. One may directly infringe a patent literally or under the doctrine of equivalents. Direct infringement does not require intent. Alternatively, one may indirectly infringe a patent by inducing others to infringe a patent, in which case both the inducer and the direct infringer are liable for infringement.

You must consider each claim individually and reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

## 4.2    INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS

In order to infringe a patent claim, a product or process must include every limitation of the claim. If Witness Systems' product or process omits a single structure or step recited in a claim, then you must find that Witness Systems has not infringed that claim. You must consider each of the patent claims separately.

A claim limitation may be present in an accused product or process in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product or process just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim limitation is present in an accused product or process under the doctrine of equivalents if the differences between them are insubstantial. One way to determine this is to look at whether or not the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. Another way is to consider whether or not people of ordinary skill in the art believe that the structure or step of the accused product or process and the structure or step recited in the patent claim limitation are interchangeable.

Equivalency is determined at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes. The question is whether the accused product or process contains an equivalent

27

for each element of the claim that is not literally present in the accused device. The question is not whether the accused product or process as a whole is equivalent to the claimed invention as a whole.

## 4.3   PATENT INFRINGEMENT GENERALLY - INDIRECT INFRINGEMENT

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. There are two types of indirect infringement – inducing infringement and contributory infringement. The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with components used in the patented invention is called "contributory infringement."

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that Witness Systems is inducing another person to infringe or contributing to the infringement of another, NICE must prove that it is more probable than not that the other person is directly infringing at least one claim of the patent.

In this case, NICE accuses Witness Systems of inducing or contributing to the infringement of claims of the patents by its customers. NICE must prove that it is more probable than not that Witness Systems has induced or contributed to the infringement of any of these claims.

29

## 4.4    INDUCING PATENT INFRINGEMENT

Nice alleges that Witness Systems is liable for infringement by actively inducing someone else to directly infringe the patents in suit. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A person is liable for active inducement of a claim only if:

(1)    the person takes action during the time the patent is in force which encourages acts by someone else;

(2)    the encouraged acts constitute direct infringement of that claim;

(3)    the person is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of the patent;

(4)    the person has an intent to cause the encouraged acts; and

(5)    the encouraged acts are actually carried out by someone else

In order to prove active inducement, NICE must prove that each of the above requirements are met. Further, proof of each element must be by a preponderance of the evidence, *i.e.*, that it is more likely than not that each of the above requirements has been met.

In order to establish active inducement of infringement, it is not sufficient that the person that is allegedly induced to infringe itself directly infringes the claim. Nor is it sufficient that Witness Systems was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find specifically that Witness Systems specifically intended to infringe the patents in suit, in order to find inducement of infringement. If you do not find that Witness Systems specifically intended

30

to infringe, then you must find that Witness Systems has not actively induced the alleged infringement.

## 4.5   CONTRIBUTORY INFRINGEMENT

Another form of indirect infringement is contributory infringement. Contributory infringement can occur when someone supplies a part that is used yo infringe one of the patent claims. The necessary proof to show contributory infringement is focused on the intent of the person supplying the part and the nature of that part. Specifically, to prove contributory infringement by Witness Systems of the patents in suit, NICE must prove by a preponderance of the evidence the following three things:

(1)    The part supplied by Witness Systems is not simply a common part used for significant non-infringing uses, but rather, the part is especially made or adapted for a use that infringes the claimed invention.

(2)    Witness Systems knew of the patents in the suit and sold the accused part knowing that the part was especially made for the use that infringes the invention.

(3)    Someone then bought the part and actually used it in a way that infringes each limitation of the asserted claims of the patents in suit.

All three of these things must be proven by either direct or circumstantial evidence before you may find that Witness Systems contributed to the patent infringement.

## 4.6   SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED

There are three situations where resort to the doctrine of equivalents to find infringement is not permitted.

First, the prior art may preclude a finding of infringement under the doctrine of equivalents. To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular product that is accused of infringing a particular claim, you must determine what products are in the "prior art" as well as what products from the "prior art"to a person having ordinary level of skill in the field of technology of patent at the time of the invention.

If the Witness Systems establishes that a product that: (1) meets the same claim requirements as the product accused of infringing and (2) has the same allegedly "equivalent 7, alternate feature (s) as the product that is accused of infringing is in the prior art or would have been obvious from the prior art to a person having ordinary skill in the filed of technology of the invention at the time of the invention, you must find that the claim has not been infringed.

Second, you may not find that a product infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative features of that product were described somewhere in the patent and (2) that product is not covered literally by any of the claims of the patent.

Third, you may not determine that an alternative aspect is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

## 4.7   OPEN ENDED OR "COMPRISING" CLAIMS

The preambles to the independent claims of the patents in suit use the transitional phrase "comprising." "Comprising" is interpreted that same as "including" or "containing." In patent claims, comprising means that the claims are open-ended. As such, the claims are not limited to only what is in the claims. Based on this explanation, if you find that Witness Systems' products or methods include all of the limitations in any of NICE's patent claims, the fact that they may also include an additional component or method step is irrelevant. The presence of additional components or method steps in the accused product or method does not mean that the product or method does not infringe a patent claim.

## 4.8    INFRINGEMENT DESPITE WITNESS SYSTEMS' IMPROVEMENTS

You may find that Witness Systems' accused products or methods represent an improvement over the inventions defined in NICE's patent claims. However, you are not to presume that these facts mean that Witness Systems cannot infringe NICE's patent claims. As long as a Witness Systems' accused product or method includes all of the elements of at least one of NICE's patent claims, or if a Witness Systems' accused product is found to be equivalent under the doctrine of equivalents, then NICE's patents claims are infringed by Witness Systems' product or method despite Witness Systems' improvements.

## 4.9   WILLFUL INFRINGEMENT

If you find on the basis of the evidence and the law as I have explained it that Witness Systems' product infringes at least one of the claims of the five NICE patents in this case, you must further decide whether or not NICE has proven that Witness Systems' infringement was willful. While infringement is proven by a preponderance of the evidence, willful infringement must be proven by clear and convincing evidence.

To prove willful infringement, NICE must satisfy a two-part test.

The first part of the test is objective. NICE must persuade you by clear and convincing evidence that Witness Systems acted despite an objectively high likelihood that its actions constituted infringement of a valid claim of at least one of the five NICE patents in this case. The state of mind of Witness Systems is not relevant for this objective inquiry. You should focus on whether a reasonable person in the position of Witness Systems, after learning of each of NICE's patents, could have reasonably believed that it did not infringe each patent or reasonably believed that each patent was invalid. If and only if a reasonable person in the position of Witness Systems could not have held such a belief, then you would need to consider the second part of the test.

The second part of the test does depend on the state of mind of Witness Systems. NICE must persuade you by clear and convincing evidence that Witness Systems knew, or it was so obvious that Witness Systems should have known, that its actions constituted infringement of a valid claim of at least one of each of the five NICE patents in this case.

For each of the five NICE patents in the case, you should determine whether NICE has proven by clear and convincing evidence that Witness has willfully infringed that patent.

36

## 5.0  INVALIDITY

### 5.1    PRESUMPTION OF VALIDITY

The granting of a patent by the United States Patent Office carries with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

This presumption of validity puts the burden of proving invalidity on Witness Systems. While this presumption can be rebutted, the burden is on Witness Systems to do so. This burden requires that Witness Systems prove by clear and convincing evidence that in this case, each of the asserted claims is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence is a higher burden that proof by a preponderance of the evidence.

Each of the asserted claims is presumed valid independently of the validity of each other claim.

## 5.2   ANTICIPATION

Witness Systems contends that the inventions covered by the asserted claims of the patents are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. If the invention is not new, we say that it was "anticipated" by prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made. Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. In order to prove that an invention is "anticipated," Witness Systems must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention. All the requirements of the claim must be in the single piece of prior art, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the art in the technology of the invention at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one reference would be able to make and use the claimed invention.

In addition, the prior art reference must be sufficiently detailed to enable those skilled in the art to practice the claimed invention of the patent. To meet this requirement, Witness Systems must prove that the prior art reference would allow a person of ordinary skill in the art to practice the claimed invention without undue experimentation.

## 5.2.1  PRIOR PUBLIC USE

Witness Systems contends that claim the '570, '371, '372 and '920 patents were anticipated because the inventions defined in the claims of those patents were publicly used in United States at least one year prior to the filing date of the patents.

A prior public used in the United States by any person who is under no limitation, restriction or obligation of secrecy by the inventor, may invalidate the patents-in-suit if it occurred one year or more prior to the filing date of the patent.

An invention is publicly used by another when it is made accessible to any member of the public  other than the inventor or a person under an obligation of secrecy imposed by the inventor.

39

## 5.2.2  PRIOR PUBLICATION

Witness Systems contends that all of the patents in suit were anticipated because the invention defined in their claims were described in prior publications, such as an article or another patent. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either (i) before the patentee made his invention; or (ii) more than one year before the effective filing date of the patentee's patent application.

For a printed publication to anticipate the claims of the patent, Witness Systems must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the patent claim. In addition, the disclosure in the printed publication must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at the time.

### 5.2.3 PRIOR "ON SALE" PRODUCTS

Witness Systems contends that the '570, '371, '372 and '920 patents are invalid because of a prior sale in the United States by a third party.

The on-sale bar applies when: (i) an embodiment of the patent is the subject of a commercial offer for sale in the United States more than one year before the patent application date; and (ii) the invention was ready for patenting at that time. In this case, the critical dates for the '570, '371, '372 and '920 patents are as follows:

'570 Patent - - June 8, 1998

'372 Patent - - June 2, 1998

'371 Patent - - December 21, 1992

'920 Patent - - June 2, 1998

These patents may be invalid if you find that the invention claimed in them was "on sale" in the United States before these dates.

To establish a commercial offer for sale, Witness Systems must demonstrate that there was a definite sale or offer for sale in the United States before the critical date, and that the subject matter of the sale or offer for sale anticipated the claimed invention, or would have rendered the claimed invention obvious.

A commercial offer for sale occurs when an offer can be accepted in order to make a binding contract. Determining if a commercial offer has been made requires looking closely at the language in the proposal itself and the interactions between the parties.

41

An invention is ready for patenting either through a reduction to practice or by proof that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

A single sale or even a single offer to sell primarily for profit, rather than for experimental purposes, is sufficient to trigger the on-sale bar, even if the offer is not accepted.

42

### 5.2.4  PRIOR U.S. PATENT APPLICATION

Witness Systems contends that the '920, '372, '109 and '570 patents in suit were anticipated because the inventions defined in the claims of those patents were disclosed in a prior patent application. A patent may be found invalid if the claimed invention was described in a patent granted on an application as filed by another in the United States before the invention was made by the inventors in the United States.

In order for the asserted patents to be anticipated by a prior United States patent application, Witness Systems must prove the following:

1.   whether there is another patent that has inventors other than the named inventors of the asserted patents.

2.   whether the application for that other patent was filed in the United States before the invention of the asserted patents was made; and

3.   whether that other patent describes what the Plaintiff inventor claimed in the asserted patent.

43

## 5.3    OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

(1)    Determine the scope and content of the prior art;

(2)    Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

(3)    Determine the level of ordinary skill in the pertinent art at the time the invention of the patent in suit was made;

(4)    Consider objective factors of non-obviousness.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patent at issue, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment. Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or unobvious to a person of ordinary skill in the pertinent art.

44

## 5.3.1 SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. The prior art that Witness Systems contends render the patents-in-suit obvious includes the following:

(1)     prior patents that issued before the critical date for a particular patent;

(2)     prior publications having a publication date before the critical date for a particular patent;

(3)     U.S. Patents that have a filing date prior to the critical date for a particular patent;

(4)     anything in public use or on sale in the United States before the critical date for a particular patent;

(5)     anything that was publicly known or used by others in this country before the date of invention of a patent-in-suit; and

(6)     anything that was made or built or any process that was used in this country by another person before the date of invention of a patent-in-suit, where the thing made or built or the process used was not abandoned, suppressed or concealed.

45

## 5.3.2   DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences. The test is whether the claimed invention as a whole would have been obvious after considering all of the prior art. Each claim must be considered separately and in its entirety.

### 5.3.3  LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. The person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems and the sophistication of the technology in the field.

### 5.3.4 HINDSIGHT

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or modify these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.

## 5.3.5   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)

Lastly, in making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence which may tend to show non-obviousness of the patent claims at issue:

(1)   Commercial success or lack of commercial success of products covered by the patents-in-suit;

(2)   A long felt need in the art which was satisfied by the invention of the patent in suit;

(3)   The failure of others to make the invention;

(4)   Copying of the invention by others in the field;

(5)   Unexpected results achieved by the invention;

(6)   Praise of the invention by the infringer or others in the field;

(7)   The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

49

## 6.0 DAMAGES

## 6.1 DAMAGES GENERALLY

I have now instructed you as to the law governing NICE's claims of patent infringement and Witness Systems' claims of invalidity. If you find that Witness Systems has infringed a valid claim of any patent, then you must determine what damages Witness Systems must pay to NICE for that infringement. If, on the other hand, you find that Witness Systems has not infringed a valid claim of any patent, then NICE is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that NICE is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that Witness Systems infringed a valid claim of any patent.

## 6.2    COMPENSATORY PATENT DAMAGES IN GENERAL

If you find that any claim of any patent is both valid and infringed, then the patent owner is entitled to damages adequate to compensate for the infringement. Your damages award, if you reach this issue, should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. I will give you more detailed instructions on the calculation of a reasonable royalty shortly. Damages are only to compensate NICE, to put NICE into the position it would have been in if Witness Systems had not infringed. You may not add anything to the amount of damages to punish Witness Systems, or to set an example.

51

## 6.3    WHAT IS A REASONABLE ROYALTY?

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement. Your roll is to determine what that agreement would have been. The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began. That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of actual profits alleged infringer made may aid you in determining the anticipated profits the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits alleged infringer made. In determining reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     whether the patent holder had an established royalty for the invention; whether, in the absence of an established royalty, there is evidence that tends to prove an established royalty; whether, in the absence of such a licensing history, there are any royalty arrangements that were generally used and recognized in the particular industry at the time;

(2)     the nature of the commercial relationship between the patent holder and the licensee such as to whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3)     the established profitability of the patented product, its commercial success and its popularity at the time;

(4)     whether the patent holder had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve its monopoly;

(5)     the size of the anticipated market of the invention at the time the infringement began;

(6)     the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7)     the rates paid by the license for the use of other patents comparable to the plaintiff's patents;

(8)     whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his non-patented items;

(9)    the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10)    the extent to which the infringer used the invention and any evidence probative of the value of such use;

(11)    the portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions;

(12)    the portion of the profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)    the opinion and testimony of qualified experts and of the patent holder; and

(14)    and other factors which in your mind would have increased or decreased the royalty infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. The final factor establishes the framework which you should use in determining a reasonable royalty, *i.e.*, the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.

54

## 7.0  DELIBERATION AND VERDICT

### 7.1   INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

55

## 7.2   UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A special verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

## 7.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

## 7.4    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.