# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and
NICE SYSTEMS LTD,

    *Plaintiffs*,

    v.

WITNESS SYSTEMS, INC.

    *Defendant.*

Civil Action No. 06-311-JJF

**PUBLIC VERSION**
**Feb. 15, 2008**

---

## DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF DEFENDANT WITNESS SYSTEMS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LACHES

DATED: November 2, 2007

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, Delaware 19899-1114
Telephone: (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

I, Kyle Wagner Compton, declare as follows:

1.    I am an Associate with Fish & Richardson P.C., counsel for Defendant Witness Systems, Inc. ("Witness Systems").  I make the following statements based on personal knowledge.

2.    Attached hereto as Exhibit A is a true and correct copy of a

**REDACTED**

3.    Attached hereto as Exhibit B is a true and correct copy of a

**REDACTED**

4.    Attached hereto as Exhibit C is a true and correct copy of a

**REDACTED**

5.    Attached hereto as Exhibit D is a true and correct copy of a

**REDACTED**

6.    Attached hereto as Exhibit E is a true and correct copy of a

**REDACTED**

7.    Attached hereto as Exhibit F is a true and correct copy of a

**REDACTED**

8.    Attached hereto as Exhibit G is a true and correct copy of

**REDACTED**

9.      Attached hereto as Exhibit H is a true and correct copy of a [

**REDACTED**

10.      Attached hereto as Exhibit I is a true and correct excerpt from Witness Systems' Form 10-K as filed with the United States Securities and Exchange Commission on March 15, 2004 for the period ending December 31, 2003 (Commission file number 000-29335).

11.      Attached hereto as Exhibit J a true and correct excerpt from NICE Systems, Ltd.'s 20-F as filed with the United States Securities and Exchange Commission on May 17, 2006 for the period ending December 2005 (Commission file number 0-27466).

12.      Attached hereto as Exhibit K is a true and correct excerpt from Witness Systems' Form 10-K as filed with the United States Securities and Exchange Commission on April 2, 2007 for the period ending December 31, 2006 (Commission file number 000-29335).

13.      Attached hereto as Exhibit L is a true and correct excerpt of Witness Systems' Form 10-K405 as filed with the United States Securities and Exchange Commission on March 24, 2000 for the period ending December 31, 1999 (Commission file number 000-29335).

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Executed on November 2, 2007.

*/s/ Kyle Wagner Compton* _____
Kyle Wagner Compton (#4693)

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2007, I served the **DECLARATION OF KYLE WAGNER COMPTON IN SUPPORT OF DEFENDANT WITNESS SYSTEMS, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON LACHES** on the following counsel of record at the address and in the manner indicated.

**VIA EMAIL AND HAND DELIVERY**     *Attorneys for Plaintiffs*
Josy W. Ingersoll                                   *Nice Systems Ltd. and Nice Systems, Inc.*
Melanie K. Sharp
Karen E. Keller
Mary Dugan
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

**VIA EMAIL AND FIRST CLASS MAIL**     *Attorneys for Plaintiffs*
Scott G. Lindvall                                   *Nice Systems Ltd. and Nice Systems, Inc.*
Daniel DiNapoli
Joseph M. Drayton
Robert R. Laurenzi
Jason Frank
Steven Chin
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

*/s/Kyle Wagner Compton*
Kyle Wagner Compton

3

# EXHIBIT A

# REDACTED IN ITS ENTIRETY

# EXHIBIT B

# REDACTED IN ITS ENTIRETY

# EXHIBIT C

# REDACTED IN ITS ENTIRETY

# EXHIBIT D

# REDACTED IN ITS ENTIRETY

# EXHIBIT E

# REDACTED
# IN ITS
# ENTIRETY

# EXHIBIT F

# REDACTED IN ITS ENTIRETY

# EXHIBIT G

# REDACTED
# IN ITS
# ENTIRETY

# EXHIBIT H

# REDACTED IN ITS ENTIRETY

# EXHIBIT I



# FORM 10-K

## WITNESS SYSTEMS INC - WITS

Exhibit:

**Filed: March 15, 2004 (period: December 31, 2003)**

Annual report which provides a comprehensive overview of the company for the past year

performance and then, based on the results, deliver relevant learning to an organization's workforce to enhance performance.

We provide our solutions to an extensive base of large companies with multiple contact centers including Accor, American Airlines, AT&T, British Telecom, Cable & Wireless, Centrica, Compaq Computer, Continental Airlines, Federal Express, The Hartford Financial Services Group, Hertz, HSBC, Lloyds TSB, Pitney Bowes, Royal & SunAlliance, Starwood Hotels & Resorts Worldwide, Target, Telstra, Verizon, Visa, Volkswagen, Wells Fargo Bank and Xerox. In addition, our indirect sales channel is strategically focused on mid-sized companies with generally only one contact center. As of December 31, 2003, we had licensed our software to approximately 1,198 customers at approximately 2,341 sites.

*Eyretel Acquisition*

During the first quarter of 2003, we acquired a controlling interest in Eyretel plc ("Eyretel"), a United Kingdom-based provider of compliance and recording solutions for customer contact centers, and completed the acquisition during the second quarter of 2003. We paid 25 pence per share for a total purchase price of approximately £35.3 million, or $55.3 million. We acquired Eyretel with the intent to extend our presence in international markets and to expand our product line by adding a full-time compliance recording software solution. We commenced the consolidation of Eyretel's results on March 22, 2003, the date we assumed majority ownership of Eyretel. The acquisition was accounted for using the purchase method of accounting.

**Industry Background**

Developing and maintaining long-term customer relationships is critical to the success of a business operating in the competitive global marketplace. The rapid growth of the Internet and e-commerce has increased the importance companies place on their customer relationships. Because the Internet enables consumers to easily evaluate products and prices from a wide range of geographically dispersed vendors and quickly change vendors at relatively low cost, it is becoming more difficult for businesses to develop long-term relationships with their customers. As the use of the Internet expands as a business platform, the need for personal contact is essential to enabling a higher quality customer experience. The integration and optimization of customer contacts across all channels of communication is becoming both a strategic and tactical business requirement. In response to these trends, companies have adopted CRM initiatives to increase the longevity and profitability of their customer relationships, and have developed software applications to automate and evaluate key sales, marketing and customer service processes and improve the effectiveness of their customer interactions. According to AMR Research, the CRM market will grow by 10% in 2004, as companies focus on several initiatives including customer analytics.

The focus of CRM applications is to improve companies' internal sales, marketing and customer service processes and, as a result of increasing competitive pressures resulting from the emergence of the Internet and e-commerce, to improve their ability to identify and address their customers' needs. Companies have been deploying new solutions that recognize improving customer satisfaction and enhancing employee skills is an integral part of their goals to foster customer relationships and increase customer intimacy. We believe that companies, with a better understanding of the characteristics and preferences of their customers, will be able to customize their product and service offerings more effectively, which can result in increased customer retention. In addition, these companies will be able to better identify opportunities to sell complementary or higher-end products and to more accurately forecast customer demand.

To understand and improve customer relationships, a company must first improve its specific business processes that involve direct customer interaction. Frequently, a company's direct customer interactions occur through call centers. These call centers traditionally are staffed by CSRs, who

3

# EXHIBIT J



# FORM 20−F

## NICE SYSTEMS LTD − NICE

**Filed: May 17, 2006 (period: December 31, 2005)**

Registration of securities of foreign private issuers pursuant to section 12(b) or (g)

The Research and Development Law imposes reporting requirements with respect to certain changes in the ownership of a grant recipient. The law requires the grant recipient and its controlling shareholders and interested parties to notify the OCS of any change in control of the recipient or a change in the holdings of the means of control of the recipient that results in a non–Israeli becoming an interested party directly in the recipient and requires the new interested party to undertake to the OCS to comply with the Research and Development Law. In addition, the rules of the OCS may require prior approval of the OCS or additional information or representations in respect of certain of such events. For this purpose, "control" is defined as the ability to direct the activities of a company other than any ability arising solely from serving as an officer or director of the company. A person is presumed to have control if such person holds 50% or more of the means of control of a company. "Means of control" refers to voting rights or the right to appoint directors or the chief executive officer. An "interested party" of a company includes a holder of 5% or more of its outstanding share capital or voting rights, its chief executive officer and directors, someone who has the right to appoint its chief executive officer or at least one director, and a company with respect to which any of the foregoing interested parties owns 25% or more of the outstanding share capital or voting rights or has the right to appoint 25% or more of the directors. Accordingly, any non–Israeli who acquires 5% or more of our ordinary shares or ADSs will be required to notify the OCS that it has become an interested party and to sign an undertaking to comply with the Research and Development Law.

The funds available for OCS grants out of the annual budget of the State of Israel were reduced in recent years, and the Israeli authorities have indicated in the past that the government may further reduce or abolish OCS grants in the future. Even if these grants are maintained, we cannot presently predict what would be the amounts of future grants, if any, that we might receive.

In January 2006, we were selected to participate in the Sixth Framework Programme (FP6). FP6 is the European Community Framework Programme for Research, Technological Development and Demonstration. FP6 funds and promotes research. We anticipate that our program will commence in May 2006 and will be in effect for a period of approximately 2.5 years. FP6 will give us funding of approximately EUR 325,000 during this period. There are no royalty obligations associated with receiving such funding.

37

Source: NICE SYSTEMS LTD, 20–F, May 17, 2006

# EXHIBIT K



# FORM 10-K

## WITNESS SYSTEMS INC - WITS

Exhibit:

**Filed: April 02, 2007 (period: December 31, 2006)**

Annual report which provides a comprehensive overview of the company for the past year

**WITNESS SYSTEMS, INC. AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF OPERATIONS**
**(In thousands, except per share data)**

| | Years Ended December 31, | | |
|---|---|---|---|
| | 2006 | 2005 | 2004 |
| Revenue: | | | |
| Product | $ 85,850 | $ 74,186 | $ 57,620 |
| Services | 135,933 | 111,142 | 83,715 |
| Total revenue | 221,783 | 185,328 | 141,335 |
| Cost of revenue: | | | |
| Product | 18,875 | 19,130 | 13,784 |
| Services | 52,662 | 42,361 | 32,645 |
| Total cost of revenue | 71,537 | 61,491 | 46,429 |
| Gross profit | 150,246 | 123,837 | 94,906 |
| Operating expenses: | | | |
| Selling, general and administrative | 114,951 | 85,995 | 65,808 |
| Research and development | 33,307 | 26,717 | 20,816 |
| Merger-related and integration costs | 2,702 | 4,532 | 498 |
| Acquired in-process research and development | 760 | 9,000 | — |
| Operating (loss) income | (1,474) | (2,407) | 7,784 |
| Interest and other income, net | 5,180 | 860 | 1,206 |
| Income (loss) before provision for income taxes | 3,706 | (1,547) | 8,990 |
| (Benefit) provision for income taxes | (3,752) | 3,024 | 312 |
| Net income (loss) | $ 7,458 | $ (4,571) | $ 8,678 |
| Net income (loss) per share: | | | |
| Basic | $ 0.22 | $ (0.17) | $ 0.37 |
| Diluted | $ 0.20 | $ (0.17) | $ 0.33 |
| Weighted-average common shares outstanding: | | | |
| Basic | 33,687 | 27,221 | 23,361 |
| Diluted | 36,533 | 27,221 | 26,084 |

See accompanying Notes to Consolidated Financial Statements.

F-8

Source: WITNESS SYSTEMS INC, 10-K, April 02, 2007

# EXHIBIT L

 10kWIZARD
SEC POWER SEARCH

# FORM 10-K405

## WITNESS SYSTEMS INC - WITS

Exhibit:

**Filed: March 24, 2000 (period: December 31, 1999)**

Annual report. The Regulation S-K Item 405 box on the cover page is checked

16

ITEM 6.  SELECTED FINANCIAL DATA

     Set forth below are certain selected historical financial data of the
Company on a consolidated basis. This information should be read in conjunction
with the consolidated financial statements and the related notes and the
information under "Management's Discussion and Analysis of Financial Condition
and Results of Operations."

| | YEAR ENDED DECEMBER 31, | | | | |
|---|---|---|---|---|---|
| | 1995 | 1996 | 1997 | 1998 | 1999 |
| | (IN THOUSANDS, EXCEPT PER SHARE DATA) | | | | |
| STATEMENT OF OPERATIONS DATA: | | | | | |
| Revenues: | | | | | |
| License.................................. | $  444 | $  764 | $ 3,775 | $ 8,682 | $16,706 |
| Services................................. | 161 | 425 | 1,138 | 2,444 | 6,221 |
| Hardware................................. | 357 | 632 | 1,271 | 2,171 | 46 |
| Total revenues................... | 962 | 1,821 | 6,184 | 13,297 | 22,973 |
| Cost of revenues: | | | | | |
| License.................................. | 10 | 30 | 164 | 310 | 327 |
| Services................................. | 130 | 622 | 1,204 | 2,526 | 3,920 |
| Hardware................................. | 315 | 920 | 1,574 | 2,482 | 46 |
| Total cost of revenues........... | 455 | 1,572 | 2,942 | 5,318 | 4,293 |
| Gross profit..................... | 507 | 249 | 3,242 | 7,979 | 18,680 |
| Operating expenses: | | | | | |
| Sales and marketing...................... | 93 | 291 | 2,016 | 6,147 | 11,578 |
| Research and development................. | 264 | 1,095 | 1,817 | 3,529 | 5,781 |
| General and administrative............... | 401 | 1,058 | 1,684 | 2,141 | 2,191 |
| Charge for termination of distribution agreement.......... | -- | -- | -- | 900 | -- |
| Acquired in-process research and development.............. | -- | -- | -- | -- | 3,506 |
| Other personnel costs.................... | 621 | -- | -- | -- | 678 |
| Operating loss................... | (872) | (2,195) | (2,275) | (4,738) | (6,640) |
| Interest income (expense), net........... | 9 | 4 | 62 | (31) | (364) |
| Loss before provision for income taxes........... | (863) | (2,191) | (2,213) | (4,769) | (7,004) |
| Provision for income taxes............... | -- | -- | -- | -- | -- |
| Net loss......................... | (863) | (2,191) | (2,213) | (4,769) | (7,004) |
| Preferred stock dividends and accretion.................. | -- | -- | (84) | (502) | (1,815) |
| Net loss applicable to common stockholders......... | $ (863) | $(2,191) | $(2,297) | $(5,271) | $(8,819) |
| Net loss per share -- basic and diluted.................. | $(0.10) | $ (0.21) | $ (0.32) | $ (0.76) | $ (1.37) |
| Shares used in computing net loss per share -- basic and diluted............................................... | 8,922 | 10,307 | 7,238 | 6,964 | 6,424 |
| Unaudited pro forma net loss per share -- basic and diluted(1)............................................. | | | | $ (0.36) | $ (0.44) |
| Shares used in computing unaudited pro forma net loss per share -- basic and diluted(1)............................ | | | | 13,399 | 15,755 |

---------------

(1) Pro forma assumes conversion of convertible preferred stock into common
    stock and the vesting of certain restricted shares as if such conversions
    occurred on January 1, 1998.

| | DECEMBER 31, | | | | |
|---|---|---|---|---|---|
| | 1995 | 1996 | 1997 | 1998 | 1999 |
| | (IN THOUSANDS) | | | | |

Source: WITNESS SYSTEMS INC, 10-K405, March 24, 2000