# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC. and<br>NICE SYSTEMS LTD.,<br><br>   *Plaintiffs*,<br><br> v.<br><br>WITNESS SYSTEMS, INC.<br><br>   *Defendant*. | Civil Action No. 06-311<br><br><br>**PUBLIC VERSION**<br>**Feb. 15, 2008** |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE TO PRECLUDE EVIDENCE RELIED UPON BY DEFENDANT'S EXPERTS

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070

Nagendra Setty (*pro hac vice*)
Daniel A. Kent (*pro hac vice*)
Noah C. Graubart (*pro hac vice*)
1180 Peachtree Street, N.E., 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

ATTORNEYS FOR DEFENDANT
WITNESS SYSTEMS, INC.

Dated: January 8, 2008

## I.    WITNESS SYSTEMS' RESPONSE TO NICE'S MOTION *IN LIMINE* TO PRECLUDE DOCUMENTS RELATED TO PRIOR ART INSTALLATIONS AT BLUE CROSS BLUE SHIELD OF GEORGIA

Witness Systems, Inc. ("Witness Systems") requests that the Court deny Plaintiffs NICE Systems, Inc. and NICE Systems Ltd.'s (collectively, "NICE") Motion *in Limine* seeking to exclude evidence related to the prior art installations at Blue Cross Blue Shield of Georgia.

### A.    Introduction

NICE asks this Court to exclude a number of relevant documents describing a prior art system, known as "eWare" and installed at Blue Cross Blue Shield of Georgia ("BCBS"), that invalidates many claims of NICE's asserted patents.  NICE claims that it is "surprised" by these documents, despite the facts that:

1. NICE knew about the BCBS prior art E-Ware installation at least as early as March of 2007;

2. Each and every document NICE seeks to exclude was produced by May of 2007, seven months before expert reports were due;

3. In response to a specific request from NICE's counsel regarding the BCBS E-Ware installation, Witness Systems identified specific dates, places and witnesses with knowledge of invalidating sales, offers to sell and public uses of E-Ware (Ex. A - August 3, 2007 letter from C. Green to R. Laurenzi); and

4. NICE had every opportunity and did conduct discovery on the BCBS installation, including multiple depositions of witnesses identified as having knowledge of E-Ware.

Moreover, NICE's own expert, Mr. John Henits, had access to an electronic, searchable database of these (and other) documents related to the BCBS prior art, and Mr. Henits served an expert report addressing the documents that NICE now seeks to exclude.  NICE's claims that it was "surprised" and will be "unfairly prejudiced" if the Court allows Witness Systems to use these documents simply can not withstand these facts.

NICE's motion *in limine* therefore amounts to little more than a desperate attempt to exclude relevant evidence that proves NICE's claims to be invalid. The Court should deny NICE's motion *in limine* and allow Witness Systems' experts to rely on the documents cited and timely disclosed in their expert reports.

**B.     Facts**

In the mid 1990's, a company called Eyretel sold a line of telephone recording products called "E-Ware" that customers used to record and play back telephone calls. Witness Systems alleges that a specific installation of an E-Ware system at Blue Cross Blue Shield of Georgia ("BCBS") in April of 1998 anticipates several asserted claims of the patents in suit. Witness Systems' experts on invalidity, Dr. Jeff Vitter and Dr. John Strawn, concluded that this installation invalidates certain of NICE's asserted patent claims under 35 U.S.C. § 102 and timely disclosed those opinions in their respective expert reports.

Witness Systems provided the documents and information underlying those opinions to NICE many months before it served the Vitter and Strawn reports. On December 19, 2006, NICE served an interrogatory asking for the factual and legal basis for Witness Systems' contention that the patents in suit are invalid. In its initial response on January 18, 2007, Witness Systems identified a number of prior art references and systems that it alleged invalidated the asserted patents, including the "E-Ware" system. (D.I. 292 - Decl. of Drayton in Supp. of Pls. Mots. In Lim. Ex. A.) In a supplemental response served on March 2, 2007, Witness Systems provided claim charts specifically identifying the BCBS E-Ware installation as anticipatory under §102, citing supporting documents evidencing the sale, offer to sell and prior use, and stating that "Witness Systems specifically reserves the right to supplement and/or amend its response in light of materials that it is currently seeking from Blue Cross Blue Shield." (D.I. 292 - Decl. of Drayton in Supp. of Pls. Mots. In Lim., Ex. B at 6-7 and U.S. Pat. No. 6,775,372

Invalidity Chart at 1.)  In further supplemental responses on April 30 and May 30, 2007, Witness

Systems expanded upon the claim charts for the BCBS E-Ware system, providing additional

documents and analysis to support its contention that the BCBS system anticipated the asserted

patents.  (D.I. 292 - Decl. of Drayton in Supp. of Pls. Mots. In Lim., Exs. C, D, and F.)

On May 25, 2007, Witness Systems produced documents related to the BCBS

installation, documents which bore a "BCBS" Bates label.  On May 31, 2007, NICE took the

deposition of Jan Carel Warfield, a Witness Systems employee who worked at Eyretel in the

mid-1990's who possesses personal knowledge of the E-Ware products.

**REDACTED**

On

May 31 and August 15, 2007, NICE deposed Jamie Williams, another former Eyretel employee

(and current Witness Systems employee),           **REDACTED**

NICE also

deposed Dr. Christopher Blair,

**REDACTED**

More importantly, NICE took the depositions of Dr. Blair and Mr.

Williams after Witness Systems provided the following information (at NICE's specific request

for clarification):

—————————————

**REDACTED**

3

The eWare application, together with a recorder and other applications, was sold, offered for sale, publicly known and/or used at least as early as October 6, 1997, because of Eyretel's sale of eWare to Blue Cross Blue Shield in Atlanta, Georgia. Specific individuals who were associated with these events include Carel Warfield, Jamie Williams, Chris Vincent, Gary Brown, Collin Prior, and Luis Camacho.

As noted in previous correspondence, Witness Systems previously produced this and other information concerning eWare.

(Ex. A - August 3, 2007 letter from C. Green to R. Laurenzi).[2]

On December 31, 2007, NICE's expert, Mr. John Henits, provided a rebuttal expert report on invalidity.


**REDACTED**


C.    **Argument**

NICE asks this Court to exclude documents that were timely produced and timely identified in expert reports because they were not explicitly identified in a contention interrogatory response. NICE appears to rely on Fed. R. Civ. P. 37(c)(1), which states that if a party fails to adequately disclose information during discovery, "the party is not allowed to use

---

[2] The Court should also know that this marks NICE's second attempt to preclude Witness Systems from relying on E-Ware as prior art. NICE's made its first attempt to preclude use of E-Ware art in the co-pending Northern District of Georgia case styled as *STS Software Systems, Ltd. and NICE Systems, Ltd. v. Witness Systems, Inc.* (Civ. Action No. 1:04-CV-2111-RWS). Judge Richard W. Story denied NICE's motion. (D.I. 285 - June 26, 2007 Order).

4

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." NICE's request is inappropriate here, where Witness Systems' contentions were disclosed, where supporting documents were timely produced and timely identified in expert reports, and where NICE had every opportunity and did pursue discovery on the BCBS system. Further, NICE cannot be prejudiced or harmed where, as here, its expert Mr. Henits had access to these documents long before serving his report and full opportunity to address them in his rebuttal report. NICE was always aware of Witness Systems' contention that the BCBS E-Ware system is anticipatory art, leaving it with no sustainable claim of "surprise" or "prejudice." The Court should deny NICE's motion *in limine* to exclude relevant evidence timely disclosed in expert reports.

>1.    Witness Systems' Contentions Were Clear, and the Documents NICE Seeks To Exclude Were Timely Produced and Identified

NICE has known from very early in this litigation Witness Systems' contention that the E-Ware system, and specifically the BCBS installation, anticipates several asserted claims of the patents-in-suit. Witness Systems' earliest discovery responses list the E-Ware system as an anticipatory prior public use. (*See* D.I. 292 - Decl. of Drayton in Supp. of Pls. Mots. In Lim. Ex. A). Witness Systems' subsequent discovery responses identify the BCBS installation, stating that "Witness Systems specifically reserves the right to supplement and/or amend its response in light of materials that it is currently seeking from Blue Cross Blue Shield." (D.I. 292 - Decl. of Drayton in Supp. of Pls. Mots. In Lim., Ex. B at 6-7 and U.S. Pat. No. 6,775,372 Invalidity Chart at 1). Witness Systems provided still further supplemental responses expanding upon the claim charts for the BCBS E-Ware system, providing additional documents and analysis to support Witness Systems' contention that the system anticipated the asserted patents. (D.I. 292 - Decl. of Drayton in Supp. of Pls. Mots. In Lim., Exs. C, D, and F). In sum, Witness Systems' intention to

rely on the BCBS installation of E-Ware was no mystery to NICE. NICE had every opportunity and every motivation to explore this system during the course of discovery, whether or not each and every document produced was cited in an interrogatory response.

Indeed, the parties did conduct extensive investigation of the BCBS installation, in both this and other co-pending litigations between Witness Systems and NICE, including discovery on some of the very documents NICE now seeks to exclude. As noted above, NICE examined each of Mr. Warfield, Mr. Williams, and Dr. Blair, all of whom possess knowledge regarding the E-Ware system at Eyretel during the relevant time period,

**REDACTED**

Still, regardless of which documents NICE chose from Witness Systems electronically searchable production to use as deposition exhibits, NICE had every opportunity (and every motivation) to explore the BCBS E-Ware installation during discovery, and NICE did so on several occasions.

NICE argues that it is unfairly surprised because of the identification of these specific documents "on the eve of trial." It was NICE, however, who sought to preserve the January trial date in this case, which required both parties to submit all expert reports only weeks before trial. Witness Systems' experts searched the discovery in this case to prepare those reports, just as NICE's experts did, and identified the documents that they believed best supported their opinions. The experts timely disclosed those documents in their expert reports in full compliance with the schedule NICE requested. There is no reason to exclude any portion of

6

these reports now, including their reliance on documents timely produced and identified in those reports.

     2.    <u>NICE Cannot be Prejudiced Because its Expert Analyzed and Responded to the Documents NICE Seeks to Exclude</u>

Even assuming that NICE was truly unaware of the specific documents that Witness Systems' experts identified from the production and incorporated in their expert reports, there is no harm or prejudice because NICE conducted extensive discovery on the BCBS system and had its own expert respond with his rebuttal report.

First, it is important to note that the documents NICE seeks to exclude are not themselves anticipatory references – it is the BCBS system itself that anticipates.  This contention has never been a mystery – it was articulated in Witness Systems' earliest interrogatory responses,

**REDACTED**

                    This is not a case where the anticipatory reference itself was completely unknown during discovery. Rather, Witness Systems only seeks to use supporting documents corroborating the status of E-Ware as §102 art that it timely produced and timely identified in expert reports.

All of the cases NICE relies upon are distinguishable.  In *Stairmaster Sports/Medical Prods. v. Groupe Procycle, Inc.*, 182 F.R.D. 117 (D. Del. 1998), for example, the defendant repeatedly refused to provide discovery responses concerning its invalidity defenses.  Here, Witness Systems provided numerous disclosures and discovery responses detailing its contention that the asserted patents are invalid based on the BCBS E-Ware system.  NICE also cites *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), where a district court excluded a witness who was not identified in a pretrial memorandum.  That is not the situation here, and indeed the *Myers* court overturned the district court's decision to exclude

the witnesses as an abuse of discretion.  *Id.*  Finally, *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534,

551 (Fed. Cir. 1998) and *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 470 (D. Del. 2006),

are both cases where a particular prior art reference was not even identified until after the close

of discovery.  Here, however, the BCBS system was clearly identified during discovery and

Witness Systems produced the relevant documents long before it served expert reports.  In short,

Witness Systems' never concealed any information about E-Ware nor hid its intention to use E-

Ware as prior art.  There is no reason to exclude these documents supporting that prior art now.

Finally, any argument of "prejudice" or "harm" lacks merit.  NICE's expert, Mr. Henits,

had opportunity to consider these documents and to specifically rebut them in his expert report.



**REDACTED**



Even assuming that NICE had given no

previous consideration to this evidence, NICE cannot show prejudice where, as here, it

conducted extensive  discovery on the E-Ware art and gave the E-Ware documents to its expert,

who subsequently provided opinions on those documents within the schedule set by the Court.

NICE has no basis for excluding any documents, and the Court should deny NICE's motion *in

limine*.

**D.      Conclusion**

This is not a case where Witness Systems failed to disclose anticipatory references until

the "eve of trial."  Witness Systems made timely assertions that the BCBS E-Ware system is

anticipatory art, and Witness Systems' experts properly and timely identified already-produced

documents to support that contention in their expert reports.  NICE and its expert were fully

aware of Witness Systems' contention, had all of the documents that Witness Systems relied on,

conducted extensive discovery on the BCBS system, and provided rebuttal opinions in an expert

report.  NICE has no colorable claim of surprise, harm or prejudice, and this Court should allow

Witness Systems' experts to rely on the documents timely disclosed in their expert reports.

## II.     RESPONSE TO PLAINTIFFS' MOTION IN LIMINE REGARDING THE TAN REFERENCE

In order to simplify its case for a five-day trial, Witness Systems will not be presenting

evidence relating to the Tan reference.  NICE's motion *in limine* is therefore moot.

## III.    RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* REGARDING THE DEPOSITION OF C.J. ELIAS-WEST

Witness Systems respectfully requests that the Court deny NICE's Motion *in Limine* that

seeks to exclude the deposition testimony of C.J. Elias-West.

### A.     Introduction

NICE is not surprised by Witness Systems' use of Ms. Elias-West's deposition testimony.

NICE has known about Ms. Elias-West's relevant knowledge for over six years, yet NICE never

disclosed to Witness Systems that Ms. Elias-West had knowledge relevant to this litigation.

NICE itself took the disputed deposition testimony of Ms. Elias-West in 2001, at the direction of

the same lead counsel representing NICE in this case.  NICE relied heavily on Ms. Elias-West's

deposition testimony to defend against Dictaphone's allegations of infringement of the '371

patent.  Ms. Elias-West even worked for NICE as recently as June 2007.   NICE produced the

transcript of her deposition to Witness Systems in the course of this litigation, and NICE has

known of Witness Systems' intent to rely on it since March 2, 2007.  Witness Systems' use of

Ms. Elias-West's deposition is fully supported by Witness Systems' invalidity contentions and

consistent with 35 U.S.C. § 282.  Moreover, Witness Systems disclosed its expert's opinions in compliance with the expert reporting schedule NICE demanded.

**B.    Background**

    1.    <u>Witness Systems disclosed Dr. Strawn's report according to the schedule NICE requested.</u>

NICE demanded the expert disclosure timing about which it now complains.  The Court's Scheduling Order required the entry of the Court's claim construction order before the parties were to exchange expert reports.  (D.I. 221 at ¶ 2(a).)  With the original trial date rapidly approaching and no claim construction ruling entered, Witness Systems contended that trial should be postponed to allow for the Court's entered schedule concerning claim construction and expert reports to be executed.  Although NICE argued that the case was ready for trial, NICE had not appropriately responded to Witness Systems' contention interrogatories by providing a product-by-product explanation of the alleged infringement.  (D.I. 261, Proposed Pretrial Order at 5.)  NICE responded that Witness Systems would learn all it needed to know about NICE's case from NICE's expert report on infringement, even though NICE would not provide those reports until less than thirty days before trial.  (*Id.*)  NICE's late disclosure of its infringement contentions hampered Witness Systems' ability to prepare for trial, but NICE adamantly sought to preserve the January trial date in this case, ultimately requiring both parties to submit all expert reports only weeks before trial.  (*See* D.I. 272 at 3 (letter from M. Sharp to Court seeking disclosure of Witness Systems' expert report on invalidity on December 21, 2007); D.I. 280 at 2 (Dec. 14, 2007 Order adopting NICE's proposed Schedule).)

NICE now complains that the evidence provided in Dr. John Strawn's expert report on invalidity—including Ms. Elias-West's deposition testimony—was provided too late, because it was served less than thirty days before trial.  A litigant should not be heard to complain about the

propriety of an order which it sought. *See Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992) (A party will not be heard to appeal the propriety of an order to which it agreed."); *Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 466 (S.D.N.Y. 1995) (A "party who agreed to such order will not be heard to complain that the order is unjustified.") (citations omitted).

Dr. Strawn timely disclosed his opinions and the evidence supporting them, in full compliance with the schedule NICE requested. NICE has been aware of the evidence for over six years, and all of the evidence is consistent with the invalidity contentions Witness Systems provided months ago. There is no reason to exclude any portion of Dr. Strawn's report.

        2.    <u>NICE has known about Ms. Elias-West's knowledge for at least six years, yet failed to identify her as a person with relevant knowledge.</u>

For many years, NICE has been thoroughly aware of Ms. Elias-West's relevant knowledge and of her deposition testimony. NICE took the deposition in question. NICE's predecessor-in-interest (Dictaphone) also questioned her at the deposition. NICE later employed Ms. Elias-West after NICE purchased her former employer in 2002, and Witness Systems understands she remains a NICE employee today (her name appears on NICE press releases as recently as June 2007). Importantly, NICE is even represented by the same counsel who represented NICE in *Dictaphone v. NICE*, Scott Lindvall.

NICE first learned of Ms. Elias-West's relevant knowledge at least as early as 2001. In 2000, Dictaphone Corporation sued NICE for infringement of two patents, including the '371 patent (which NICE asserts against Witness Systems in this case). NICE responded that the '371 patent was invalid and unenforceable. In support of those arguments, NICE pointed to several products sold by a company named Racal Recorders. According to NICE, one of Racal's products, the Racal Rapidax, anticipated the claims of the '371 patent, because it had been sold

in the United States at least one year prior to the filing date of the '371 patent.   To back up this

assertion, in 2001, NICE took the deposition of a Racal employee, C.J. Elias-West.

**REDACTED**

During the same deposition, the plaintiff, Dictaphone, also questioned Ms. Elias-West about the

Rapidax product.  (*Id.* at 50-89.)

Since that time, a series of corporate transactions have tightened NICE's relationship

with both Ms. Elias-West and her deposition testimony.  First, NICE acquired Racal in 2002.

(Ex. H - NICE 2003 20-F at 26 (listing Racal Recorders Ltd. as a NICE subsidiary).)

Afterwards, Ms. Elias-West became a NICE Systems, Inc. employee, a position she held as

recently as June 11, 2007.  (Ex. I - NICE Press Release dated June 11, 2007 (authored by Ms.

Elias-West).)

Second, NICE and Dictaphone are now one and the same.  After settling its patent

litigation with Dictaphone, NICE acquired Dictaphone's Communications Recording Systems

division and all of its assets, including its patent portfolio.  NICE also took control of all of

Dictaphone's relevant documents, including its litigation files from the *Dictaphone v. NICE* case.

Thus, NICE controlled both sides' litigation files from the *Dictaphone v. NICE* case, and NICE

produced the transcript of Ms. Elias-West's deposition to Witness Systems roughly one year ago

in response to Witness Systems request for production of documents.  (D.I. 291, NICE Mot. In

Limine at 11.)

Despite the fact that NICE (and its counsel) was aware of Ms. Elias-West's relevant

knowledge, NICE never identified Ms. Elias-West (one its employees) as having knowledge

relevant to this case.  Through Witness Systems' own efforts reviewing the millions of pages of

documents produced in this case, Witness Systems discovered Ms. Elias-West's testimony, and has openly relied upon that testimony since March 2007.

            3.      <u>Witness Systems Invalidity Contentions</u>

      Witness Systems disclosed its reliance on Ms. Elias-West's deposition in March 2007.  In response to NICE's contention interrogatories, Witness Systems provided detailed charts outlining its invalidity contentions.  (D.I. 292 - Decl. of Drayton in Supp. of Pls. Mots. In Lim., Ex. B at 6-7 and Invalidity Charts).  In those charts, Witness Systems detailed its allegation that the '371 patent is invalid, because its claims are anticipated by Racal's Rapidax product, and Witness Systems listed ten documents in support of that contention.  (*Id.* at 6-7 and U.S. Pat. No. 5,396,371 Invalidity Chart at 1.)  One of those documents (specifically identified both by title and production number) was the expert report of Kenneth C. Pohlmann in *Dictaphone v. NICE.* (*Id.*; Ex. J - Expert Report of Prof. Kenneth Pohlmann on the Invalidity of U.S. Patent No. 5,396,371.)

**REDACTED**

      .                                                Of course, NICE knows that.  NICE paid Professor Pohlmann to write the report.  March 2007 may have been the first time NICE learned that Witness Systems was relying on the Pohlmann report, but for over six years NICE had known of the report's contents as well as the evidentiary support for Professor Pohlmann's opinions, including Ms. Elias-West's deposition testimony.

      **C.**      **Argument**

      Both 35 U.S.C. § 282 and *Meyers v. Pennypack Woods Home Ownership Asssociateion* support the use of Ms. Elias-West's deposition testimony.  559 F.2d 894, 905 (3d Cir. 1977).

13

1.    Section 282

Prior art references of which the plaintiff is aware may not be excluded for failure to provide a 35 U.S.C. § 282 notice, unless use of the art is an unfair and prejudicial surprise to the patent owner. *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879-880 (Fed. Cir. 1986). In *Eaton*, the Federal Circuit affirmed the admission of a prior art reference not explicitly identified in a section 282 notice, because section 282's notice requirement only precludes surprise or prejudice to the patent owner. *Id.* at 879 ("The objective of section 282's provision for advance notice is to prevent unfair and prejudicial surprise by the production of unexpected and unprepared-for prior art references at trial."). Contrary to NICE's suggestion, section 282 is not an "arbitrary or absolute rule barring introduction of relevant, material evidence," rather the statute requires the Court to determine, "in its sound discretion, whether a patentee has been deprived of an adequate opportunity to present its case, by providing that proof may be made 'on such terms as the court requires.'" *Id.* (quoting 35 U.S.C. § 282); *see also Price v. Code-Alarm, Inc.*, No. 91 C 699, 1992 WL 390895, at *5 (N.D. Ill. Dec. 16, 1992). Given NICE's long-standing prior notice of Ms. Elias-West's deposition testimony, NICE will not be deprived of any opportunity to present its case, and section 282 does not preclude the use of Ms. Elias-West's deposition testimony at trial.

2.    The *Meyers* Factors

Because Witness Systems breached none of its disclosure obligations, NICE's reliance on *Meyers* is misplaced. *Meyers* governs only where a party seeks to use evidence that was not timely disclosed during discovery. As Witness Systems long ago disclosed its reliance on the Racal reference, the Pohlmann report, and therefore Ms. Elias-West's deposition testimony, there is no untimely disclosure at issue here.

14

Assuming *arguendo* that Ms. Elias-West's testimony could be characterized as disclosed untimely, the *Meyers* factors do not favor excluding Ms. Elias-West's deposition testimony. Because of NICE's lengthy and detailed history with Ms. Elias-West and her deposition testimony, NICE will suffer absolutely no prejudice from Witness Systems presenting the deposition at trial.  Further, *Meyers* requires a demonstration of willfulness or bad faith by the party alleged to have withheld evidence.  Witness Systems timely provided its invalidity contentions in March 2007, and NICE's motion does not even attempt to identify any evidence of willful misconduct or bad faith.[3]

### D.     Conclusion

Because NICE has had knowledge of Ms. Elias-West's testimony for many years and had knowledge of Witness Systems' reliance on that evidence since March 2007, Witness Systems respectfully requests that the Court deny NICE's Motion *in Limine* seeking exclusion of Ms. Elias-West's deposition testimony.

---

[3] NICE also does not challenge the use of Ms. Elias-West's testimony under the Federal Rules of Evidence, and cannot do so.  Federal Rule of Evidence 804 grants an exception to the hearsay rule for former testimony where the "[t]estimony is . . . in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  FED. R. EVID. 804(b)(1).  NICE took Ms. Elias-West's deposition and had a motive to develop the same invalidity defense Witness Systems offers here.  If that were not enough, NICE's predecessor-in-interest (Dictaphone) questioned Ms. Elias-West with the same motive NICE has here—to argue validity of the patent.

Dated:  January 8, 2008                    FISH & RICHARDSON P.C.


                                    By:  /s/ *Kyle Wagner Compton*
                                         William J. Marsden, Jr. (#2247)
                                         Kyle Wagner Compton (#4693)
                                         919 N. Market Street, Suite 1100
                                         P. O. Box 1114
                                         Wilmington, DE  19899-1114
                                         Telephone:  (302) 652-5070

                                         Nagendra Setty (pro hac vice)
                                         Daniel A. Kent (pro hac vice)
                                         Noah C. Graubart (pro hac vice)
                                         1180 Peachtree Street, N.E., 21st Floor
                                         Atlanta, GA 30309
                                         Telephone:  (404) 892-5005

                                    ATTORNEYS FOR DEFENDANT
                                    WITNESS SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January, 2008, I electronically filed with the Clerk of Court **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE TO PRECLUDE EVIDENCE** using CM/ECF which will send electronic notification of such filing(s) to the below-listed Delaware counsel.  In addition, the filing will also be sent via hand delivery.

Josy W. Ingersoll                                       *Attorneys for Plaintiffs*
Melanie K. Sharp                                       *Nice Systems Ltd. and Nice Systems, Inc.*
Karen E. Keller
Mary Dugan
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

I also certify that on January 7, 2008, I have sent by electronic mail and U.S. First Class Mail, the document(s) to the following non-registered participants:

Scott G. Lindvall                                       *Attorneys for Plaintiffs*
Daniel DiNapoli                                         *Nice Systems Ltd. and Nice Systems, Inc.*
Joseph M. Drayton
Robert R. Laurenzi
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

                                                        */s/Kyle Wagner Compton*
                                                        Kyle Wagner Compton (#4693)

# EXHIBIT A

# FISH & RICHARDSON P.C.

1180 Peachtree Street
Atlanta, Georgia
30309

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
404 892-5005

**VIA ELECTRONIC MAIL**

Facsimile
404 892-5002

August 3, 2007

Web Site
www.fr.com

Robert R. Laurenzi
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

**Christopher O. Green**
404 724-2777

Email
cgreen@fr.com

Re:    *STS Software Sys., Ltd. v. Witness Sys., Inc.,*
       **Civil Action No. 1 :04-CV-02111-RWS (N.D. Ga.)**

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Rob:

I write in further response to your letter of July 31, 2007, concerning Witness
Systems' Patent L.R. 4.3 Invalidity Contentions and the references therein to eWare.

The eWare application, together with a recorder and other applications, was also
made in the United States at least as early as October 10, 1997, in connection with
Eyretel's sale of eWare to State Farm.  Specific individuals who were associated with
these events include Dick Briggs, Dale Stouver, Brent Zalewski, Doug Nelson, Tony
Charvet, Carel Warfield, Ralph Wasner, Chris Vincent and Christopher Blair.

The eWare application, together with a recorder and other applications, was also
made in the United States at least as early as October 20, 1997, in connection with
Eyretel's sale of eWare to Blue Cross Blue Shield in Atlanta, Georgia.  Specific
individuals who were associated with these events include Carel Warfield, Jamie
Williams, Chris Vincent, Gary Brown, Collin Prior, and Luis Camacho.

As noted in previous correspondence, Witness Systems previously produced this and
other information concerning eWare.

Best Regards,

Christopher O. Green

COG

12030161.doc

# EXHIBIT B

# REDACTED IN ITS ENTIREY

# EXHIBIT C

# REDACTED
# IN ITS
# ENTIREY

# EXHIBIT D

# REDACTED IN ITS ENTIREY

# EXHIBIT E

# REDACTED IN ITS ENTIREY

# EXHIBIT F

# REDACTED IN ITS ENTIREY

# EXHIBIT G

# REDACTED IN ITS ENTIREY

# EXHIBIT H



# Form 20-F

## NICE SYSTEMS LTD - NICE

Filed: April 28, 2004 (period: December 31, 2003)

Registration of securities of foreign private issuers pursuant to section 12(b) or (g)

**Competition**

The market for our Voice Platforms and Applications is highly competitive and includes numerous products offering a broad range of features and capacities. As the market is still developing, we anticipate that a number of our existing and potential competitors will be introducing new and enhanced products. Some of our competitors in the digital voice recording and quality management for contact center agent monitoring businesses include Dictaphone Corporation, Witness Systems,Inc., Teknekron Infoswitch Corporation (now called e-talk), and Verint Systems Inc. (formerly Comverse Infosys), a subsidiary of Comverse Technology Inc.

We believe that competition in the sale of our Voice Platforms and Applications is based on a number of factors, including system performance and reliability, the ability to integrate with a variety of other computer and communications systems, marketing and distribution capacity, price and service and support. We believe that the wide range of features provided by the NiceLog system and related applications, their wide connectivity and compatibility with telephone and computer networks and their ease of use create a competitive advantage to the NiceLog and such related applications compared to other similar systems currently being offered on the market.

There are several small competitors who have products that compete with our Video Platform and Applications, however our main competitors in this market are Loronix Information Systems, Inc (a wholly owned subsidiary of Verint Systems Inc.), Lennel and Dallmeier.

In the public safety market, there are a number of competitors providing solutions, including Mercom Inc, CVDS Inc, Voiceprint Inc, Dictaphone Corporation and Witness Systems, Inc.

There are a number of competitors in the telecommunications monitoring market, having products competing with our NiceTrack™ system, the major ones being Verint Systems Inc., Ectel Ltd., and ETI. We believe that our solution offers innovations that provide the law enforcement agencies the tools and capabilities they require to meet the challenges of today's advanced telecommunications world, as well as being price competitive.

**Organizational Structure**

The following is a list of all of our significant subsidiaries, including the name, country of incorporation or residence, and the proportion of our ownership interest in each.

| Name of Subsidiary | Country of Incorporation or Residence | Percentage of Ownership Interest |
|---|---|---|
| NICE Systems, Inc. | United States | 100% |
| NICE Systems GmbH | Germany | 100% |
| NICE Systems Canada Ltd. | Canada | 100% |
| NICE CTI Systems UK Ltd. | United Kingdom | 100% |
| STS Software Systems (1993) Ltd.* | Israel | 100% |
| NICE APAC Ltd. | Hong Kong | 100% |
| NiceEye BV* | Netherlands | 100% |
| NiceEye Ltd.* | Israel | 100% |
| Nice Systems SARL | France | 100% |
| Racal Recorders Ltd | United Kingdom | 100% |
| Nice Interactive Solutions India Private Ltd. | India | 100% |

*
Inactive

26

# EXHIBIT I



> Home > News & Events > News Features

# News Features

BUSINESS NEWS

## NICE Introduces Mirra® IV Capture Solution for Small and Mid-sized First Responders, Mass Transit, and other Communication Centers

June 11, 2007

By CJ Elias-West, NICE Systems Inc.

NICE Systems announces the availability of Mirra® IV, an audio capture solution specifically designed for small and mid-sized operations in the first responder and mass transit communication center sectors, and also suitable for other uses where simple, cost effective recording is needed. Mirra IV combines advanced capture technology and robust features into a "single-box" solution.

Mirra IV is a compact, self-contained, single-box solution requiring no external servers or equipment to capture radio traffic, calls and data. Secure, browser-based access to Mirra IV is available from any Internet-connected PC, so users of the system can configure and manage Mirra IV, monitor and archive calls, and query and replay recordings, virtually anytime, anywhere. With Mirra IV, operations get flexibility and convenience in access – without the added deployment, installation and maintenance costs inherent in other solutions that require proprietary desktop software.

Mirra IV is designed with investment protection in mind. It incorporates NICE leading-edge technology with a robust and secure Linux operating system. This makes Mirra IV a reliable long-term investment.

Mirra IV can capture as few as 4 or as many as 48 channels of mixed analog, digital, telephony or radio communications. An unprecedented amount of recordings (50,000 hours or up to six years) can be captured online for fast access, significantly reducing off-line media maintenance. Mirra IV also enables archiving to single or dual DVDs. Up to 16 telephony and radio channels can be synchronously mixed on replay for authentic incident reconstruction.

Mirra IV's graphical user interface is highly intuitive and easy to use and learn, a hallmark of NICE solutions which boosts insight and efficiency while cutting training costs and time.

Mirra IV also offers high availability through its unique installation, service and support features, such as a wizard-based installation process that shortens installation time and automated support functionality that enables users to initiate and automate an email support request directly from within their Mirra IV system.

"We believe that Mirra IV will satisfy the needs of those small and mid-sized operations looking for a recording solution that offers best of breed technology," said Chris Wooten, President of NICE's Public Safety Global Business Unit. "We're looking forward to filling that gap with another high quality innovative solution from NICE."

For more information on Mirra IV visit
http://www.nice.com/products/multimedia/mirra_iv.php.

▲back to top

# EXHIBIT J

# REDACTED IN ITS ENTIREY