IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICE SYSTEMS, INC., a Delaware Corporation, and NICE SYSTEMS, LTD., an Israeli Corporation,<br><br>                Plaintiffs,<br>    v.<br><br>WITNESS SYSTEMS, INC., a Delaware Corporation,<br><br>                Defendant. | **REDACTED VERSION**<br><br>Civil Action No. 06-311-JJF<br><br>CONFIDENTIAL<br>FILED UNDER SEAL |

**PLAINTIFFS' COUNTER-STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LACHES**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY 10022
(212)836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd.*

Dated: November 21, 2007

Pursuant to the Court's Standing Order on motions for summary judgment, plaintiffs NICE Systems, Ltd. and NICE Systems, Inc. ("NICE") respectfully certify that the following genuine issues of material facts exist with respect to each element of Witness's asserted defense of laches regarding U.S. Patent No. 5,396,371 ("the '371 patent") and U.S. Patent No. 5,819,005 ("the '005 patent"). Accordingly, Defendant Witness Systems, Inc.'s ("Witness") Motion for Partial Summary Judgment on Laches should be denied.

I. **Witness's Impact 360™ Call Recording Products That Infringe the '371 and '005 Patents Are Substantially Different From The Products Dictaphone Identified In Its 1999 Correspondence With Eyretel**

1. Witness's motion is based on correspondence **REDACTED**

**REDACTED** (Ex. A).[1] Witness asserts that the products NICE accuses in this litigation of infringing the '371 and '005 patents are "the very same Eyretel products [Dictaphone] accused in the 1999 Letters." (Witness Br. at 4).[2] Witness cites no factual support for this contention. Moreover, Witness is incorrect. At a minimum, the differences between the Eyretel E-1000, E-500 and Mediastore products that Dictaphone identified in its 1999 correspondence and the Witness products sold under the Impact 360™ brand that infringe the '371 and/or '005 patents present genuine issues of material fact that are in dispute with regard to whether these products are the same or substantially the same.

---

[1] The lettered exhibits referenced in this brief refer to the exhibits attached to the Declaration of Melanie K. Sharp in support of plaintiffs' Counter-Statement Of Genuine Issues of Material Fact In Dispute In Opposition to Defendant's Motion for Partial Summary Judgment on Laches filed concurrently.

[2] References to "Witness Br. at __" are made to Defendant Witness Systems, Inc.'s Brief in Support of its Motion For Partial Summary Judgment on Laches.

### A.   Witness Call Recording Products Before and After The Eyretel Acquisition

2.      Prior to its acquisition of Eyretel in April 2003, Witness manufactured and sold call recording products in the U.S. which infringed Dictaphone's '371 and/or '005 patents. These Witness products included Witness's eQuality Balance, which Witness began selling in the U.S. in 2000. (Ex. B at 39; Ex. C at 2-3).

3.      After Witness acquired Eyretel in April 2003, Witness continued to manufacture and sell in the U.S. its eQuality Balance product and products derived from eQuality Balance. (Ex. B at 39-41; Ex. D at 2-3).

4.      After Witness's acquisition of Eyretel, Witness adopted the brand name "ContactStore" in marketing the newly acquired Eyretel Mediastore product. (Ex. B at 34; 48-49). Witness then transformed its ContactStore product from propriety hardware embodied by "a large blue and yellow-fronted box," into new products, released by November 2005, that were entirely software-based recorders that operated on personal computers. (Ex. B at 50-51; Ex. E at 90-91; Ex. F). These new products were sold under the ContactStore brand, but, because they are entirely software-based, they are substantially different from the original Eyretel E-1000, E-500 and Mediastore hardware products identified in the 1999 Dictaphone correspondence.

5.      By 2005, Witness consolidated all of its products, including call recording products, under the Impact 360™ brand which is a comprehensive product suite that includes many products unrelated to Witness's call recording products.[3] (Ex. B at 40; Ex. H; Ex. I at 18-19). The call recording products sold under the Impact 360™ brand include: (1) ContactStore; (2) ContactStore for IP; (3) ContactStore for Communication Manager, (4) Quality for

---

[3] The additional products sold under the Impact 360 are: Workforce Management, Performance Management; E-Learning and Customer Feedback. (Ex. G at 4-5; Ex. H)

3

Communication Manager and (5) eQuality Balance. (Ex. J at ¶ 14; Ex. K at 86-88). These five distinct products are the result of Witness's rebranding of several earlier products. (Ex. K at 86). Specifically, ContactStore is a rebranded and integrated version of the following products: Eyretel's ContactStore (formerly Mediastore), Eyretel's Contact 7000, eQuality ContactStore, Witness ContactStore and ContactStore. ContactStore for IP was rebranded from eQuality ContactStore for IP. ContactStore for Communication Manager was rebranded from Witness ContactStore for Communication Manager and Quality for Communication Manager was rebranded from Witness Quality for Communication Manager.

    **B.**    **Witness Products At Issue In This Litigation**

6.    NICE asserts that all five call recording products under the Impact 360™ brand infringe the '371 patent. (Ex. L). NICE also asserts that the ContactStore product under the Impact 360™ brand infringes the '005 patent. (Ex. L).

7.    With the exception of Eyretel's MediaStore product (also known as the proprietary hardware version of Witness's ContactStore), which Witness phased out by early 2005 (Ex. B at 50) (Ex. I at 9), all products NICE accuses of infringement are substantially different from the Eyretel E-1000, E-500 and Mediastore products identified by Dictaphone in its 1999 correspondence with Eyretel.

8.    The ContactStore for Communication Manager, Quality for Communication Manager, ContactStore for IP products and eQuality Balance are distinct products from the Eyretel products identified in the 1999 Dictaphone correspondence.[4] These products are software

---

[4] Witness's ContactStore for Communication Manager and Quality for Communication Manager were products developed jointly by Witness and third party Avaya, Inc. ("Avaya") in 2002-2003 for use with Avaya's Communication Manager and bears no relation to any Eyretel product. (Ex. E at 10-11; Ex. O at 146-147).

products designed to run on standard personal computers and do not rely on any of the proprietary hardware contained in Eyretel's E-500, E-1000 and Mediastore products. (Ex. M at 6-7). Moreover, with the exception of eQuality Balance (the original Witness product developed prior to its acquisition of Eyretel) (Ex. N at 100) each was designed well after 1999 and are Voice Over IP packet based recorders which are different from the traditional digital recorders sold by Eyretel. (Ex. M at 6-7; Ex. O at 146-147; Ex. DD ).

9. Witness's Director of Strategic Analysis, Kevin Hegebarth, testified that the ContactStore for Communication Manager, Quality for Communication Manager and ContactStore for IP and eQuality Balance are all "distinct products." (Ex. J at ¶ 14).

10. Witness admits that the ContactStore product under the Impact 360™ was transformed from the Eyretel digital recorder into a software based recorder. (Ex. B at 50-51; Ex. E at 90-91; Ex. F). In its brief in support of its motion for summary judgment, Witness further admits that it introduced "*new* communications loggers into the market." (Witness Br. at 10) (emphasis added).

## II. There Has Been No Unreasonable or Inexcusable Delay

11. Witness asserts that NICE delayed over "seven years" in filing suit. (Witness Br. at 4). Witness is incorrect. At a minimum, events between the April 1999 initial date asserted by Witness and the May 2006 date when NICE filed this action present genuine issues of material fact in dispute as to whether there was any period of unreasonable or inexcusable delay.

12. During the period between April 1999 and August 1999 Dictaphone and Eyretel were involved in license discussions and negotiations. (Ex. A). This period of time cannot be considered in determining whether there was any period of unreasonable or inexcusable delay.

13. During the period April 1999 through April 2003, Eyretel was a relatively minor seller of call recording systems in the United States. (Ex. B at 139) (reflecting that Eyretel's overall U.S. sales accounted for approximately 15% of its revenue).

14. Eyretel's U.S. sales of call recording systems were significantly smaller than those of NICE, who was considered to be the market leader in the call center recording industry. (Ex. P at 5).

15. From 2000 to 2005, Dictaphone sued three competitors for infringement of the '371 patent. From 2000 to 2003, Dictaphone was involved in litigation against its major competitor, NICE. (Ex. Q). From 2004-2006, Dictaphone was involved in two litigations against competitors Mercom and VoicePrint. (Ex. R; Ex. S).

16. Witness was aware of Dictaphone's patent infringement litigations against other competitors. (Ex. B at 14-16, 47; Ex. T at 19). Witness had no basis for concluding that Dictaphone would not also sue it for patent infringement.

17. During the period 1999 to 2005, Dictaphone experienced significant business disruptions which severely impaired its ability to enforce its patent rights against multiple infringers. On November 29, 2000 Dictaphone filed for Chapter 11 bankruptcy from which it did not emerge until March, 2002. (Ex. T at 5; Ex. U). In addition, Dictaphone underwent several changes in management as a result of its acquisition by Lernout & Hauspie in 2000 (Ex. V) and the subsequent sale of its Communication Recording Systems business unit, including all related patents, to NICE in 2005. (Ex. W at 44).

### III. Witness Has Not Suffered Any Prejudice

#### A. Witness Has Not Suffered Any Evidentiary Prejudice

18. Witness asserts that it has suffered evidentiary prejudice as a result of NICE's alleged delay in bringing suit. (Witness Br. at 11). Witness cites no factual support for this contention.

Moreover, Witness is incorrect. At a minimum, there are genuine issues of material fact in dispute with regard to whether there has been any evidentiary prejudice.

19.   Witness has had ample opportunity to obtain deposition testimony of relevant witnesses. At least 10 former Eyretel employees have been deposed during the course of this litigation, many of whom were involved in the development of the Eyretel products at issue; none of whom failed to remember key facts that might support Witness's defenses. (Ex. X)[5] In addition, three of the four inventors listed on the '371 patent and five of the six inventors listed on the '005 patent have been deposed in this litigation. (Ex. Y). Witness has not identified any witnesses that were unavailable due to any alleged delay in filing suit.

20.   Relevant documents have not been lost as a result of the passage of time. Witness itself points to the volume of documents exchanged in this litigation as "approaching ten million pages." (Witness Br. at 2). Witness further relies on a number of Eyretel documents in support of its invalidity and noninfringement positions. (Ex. Z). Moreover, counsel for Witness admits that electronic documents in Witness's possession are "from Witness Systems' UK (formerly Eyretel SourceSafe). As I understand it, these sources are all currently accessible within the company, contain other, extraneous information, and are used in connection with Witness Systems' ongoing business." (Ex. BB). Witness has not identified any documents that were unavailable due to any alleged delay in filing suit.

21.   Witness has benefited from the prior *Dictaphone v. NICE* litigation as evidenced by: (1) Witness's reliance on many of the same positions originally taken by NICE, including the

**REDACTED**

assertion that the '371 patent is unenforceable due to inequitable conduct; (2) Witness's use of prior inventor deposition testimony at the deposition of one of the inventors taken in this case (Ex. Z), and (3) Witness's reliance on many of the documents produced and depositions taken in that litigation in support of its defenses. (Ex. AA).[6]

22.   Witness has also benefited from the *Dictaphone v. Mercom* litigation as evidenced by its reliance on discovery produced during the course of that litigation to further supports its invalidity position in the present litigation. (Ex. CC at 4-5).[7]

### B.   Witness Has Not Suffered Any Economic Prejudice

23.   Witness asserts that it has invested substantially in the "research and development and increased revenues from products and services by tenfold." (Witness Br. at 4). Witness is incorrect. At a minimum, there are genuine issues of material fact in dispute with regard to whether there has been any economic prejudice.

24.   **REDACTED** **REDACTED** (Ex. B at 50).

25.   Witness asserts that it spent a total of $33.3 million in research and development in 2006. (Witness Br. at 10). This sum is not attributable to Witness's investment in the Eyretel products. Rather, this figure reflects Witness's company-wide investment in all of its products, i.e. the Impact 360™ comprehensive product suite. (Ex. G at 40). As a result, Witness fails to establish the specific amount invested in research and development on Eyretel products, and, at a

---

[6] Witness relies on at least the following discovery from the *Dictaphone v. NICE* litigation: (1) Deposition of Andrew Jackson dated June 21, 2002; (2) Expert report on invalidity of the '371 patent dated June 21, 2002; (3) Deposition of Chris Blair dated June 21, 2002; and. (4) NICE's Markman brief.

[7] Witness relies on at least the following discovery from the *Dictaphone v. Mercom* litigation: Analysis of Prior Art Which Anticipates or Renders Claims Obvious of U.S. Patent No. 5,396,371.

minimum this raises genuine issues of material fact with regard to Witness's actual investment, if any, in these products.

26.    The increase in Witness's stated product revenue in 2006 to $221.7 million is not attributable to the Eyretel Mediastore products. (Witness Br. at 10). Witness has admitted that this product revenue "is largely attributed to [Witness's] expanded product line, particularly Impact 360." (Ex. G at 32, 38).

27.    Witness's decision to buy Eyretel was not affected by any asserted delay in bringing this action. Witness acquired Eyretel in 2003 in order to increase its international presence and in order to offer "a complete recording solution." (Ex. B at 139-141; Ex. G at 7).

28.    The Federal Circuit has noted and the Eastern District of Wisconsin has held that where an infringer continues in its infringing conduct despite the filing of an infringement suit, the Court is permitted to "draw the inference that the infringer would have continued to sell the infringing product even if the patentee had brought suit earlier," thus negating any claim of economic prejudice. *James River Corp. of Va. v. Hallmark* Cards, 915 F.Supp. 968, 978 (E.D. Wis. 1996) citing *Meyers v. Brooks Shoe*, 912 F.2d 1459, 1463 (Fed. Cir. 1990). Witness has continued to make and sell infringing products despite the filing of this lawsuit, thus it is unlikely that Witness would have changed its infringing conduct even had suit been brought earlier. (Ex. G at 4-5, 32, 38, 40).

Dated: November 21, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*
Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302)571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY 10022
(212)836-8000

*Attorneys for Plaintiffs Nice Systems, Inc. and Nice Systems, Ltd.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on November 21, 2007, I caused to be electronically filed a true and correct copy of the foregoing document, Plaintiffs' Counter-Statement of Genuine Issues of Material Fact in Dispute in Opposition to Defendant's Motion for Partial Summary Judgment on Laches, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Kyle Wagner Compton, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE 19899-1114

I further certify that on November 21, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
> Noah C. Graubart (graubart@fr.com)
> Nagendra Setty (setty@fr.com)
> Daniel A. Kent (kent@fr.com)
> Christopher O. Green (green@fr.com)
> Fish & Richardson, P.C.
> 1180 Peachtree Street, NE
> 21st Floor
> Atlanta, GA 30309

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com