IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC., and )
NICE SYSTEMS, LTD., )
                       )
             Plaintiffs, )
          v. )       Civil Action No. 06-311-JJF
                       )
WITNESS SYSTEMS, INC., )     **REDACTED VERSION**
                       )
         Defendant. )

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT WITNESS SYSTEMS, INC.'S MOTIONS *IN LIMINE*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302) 571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd.*

Dated: December 28, 2007

Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd. (collectively, "NICE") file this Response in Opposition to Defendant Witness Systems Inc.'s ("Witness") Motions *In Limine* submitted in advance of the trial set to begin on January 14, 2008. For the reasons set forth in detail below, each of Witness' motions *in limine* should be denied.

## I.    RESPONSE TO WITNESS' MOTION *IN LIMINE* NO. 1:

Witness seeks to preclude NICE from calling NICE Systems, Ltd.'s current President and NICE Systems, Inc.'s former CEO, Mr. Shlomo Shamir, and NICE Systems, Ltd.'s Vice President of Finance, Mr. Eran Porat[1], as trial witnesses solely because NICE did not identify them in its FED. R. CIV. P. 26(a)(1)(A) initial disclosures. However, Witness has long been on notice of both Messrs. Shamir and Porat and that they possess information relevant to this litigation. Indeed, as demonstrated below, Witness' claims of prejudice and "unfair surprise" ring hollow given the various ways in which Messrs. Shamir and Porat have been made known to Witness, including through its depositions of these individuals in a related, co-pending litigation.

### A.    Witness' Argument that NICE Should Be Precluded from Calling Mr. Shamir as a Trial Witness is Without Merit

---

[1] Given the time constraints of the upcoming trial, NICE has decided that it will not call Mr. Porat as a witness, either live or through deposition testimony. However, NICE reserves the right for its damages expert, Mr. Thomas Britven, to rely on Mr. Porat's deposition testimony taken by Witness in a related litigation, *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS) ("*STS*"). Witness questioned Mr. Porat extensively about NICE's lost profits due to the sale of Witness' accused products, a topic clearly at issue in this litigation, but entirely irrelevant to the *STS* litigation in which NICE is only seeking an injunction. During Mr. Porat's deposition, counsel for Witness used 15 exhibits related to issues in this litigation. *See* Exh. A (Porat Dep. Tr., *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS) at 121:18-122:7 (Sept. 18, 2007)). As such, NICE reserves the right for its damages expert to consider Mr. Porat's deposition testimony.

Witness' argument that NICE should be precluded from calling Mr. Shamir as a trial witness is without merit. As demonstrated below, there has been no violation of FED. R. CIV. P. 26, and certainly none that would justify exclusion of evidence under FED. R. CIV. P. 37(c). While a party is obligated to provide the identity of a witness likely to have discoverable information under FED. R. CIV. P. 26(a)(1)(A), a party is not automatically precluded from calling at trial a witness it did not include in its initial disclosures. FED. R. CIV. P. 26(e)(1) requires a disclosing party to supplement its initial disclosures if the party acquires additional or corrective information after it has submitted its initial disclosures. However, the disclosing party is under a duty to supplement its disclosures only if the additional or corrective information *"has not otherwise been made known to the other parties during the discovery process or in writing."* FED. R. CIV. P. 26(e)(1) (emphasis added).

The identity of Mr. Shamir and his knowledge relevant to the issues in the present case have been made known to Witness during this litigation in a number of ways[2], satisfying the requirements of FED. R. CIV. P. 26(e)(1) and negating Witness' claim of prejudice.

Moreover, even the failure to explicitly identify a potential witness in a party's initial disclosures does not warrant the sanction Witness seeks. The Third Circuit has held in the *Meyers* case relied on by Witness that the sanction of excluding evidence imposed by FED. R. CIV. P. 37(c) is an "'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Homes Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). *See also ABB Air*

---

[2] Indeed, it is difficult to understand how Witness could argue that it was not aware of Mr. Shamir given that he is the current President of one of Witness' major commercial competitors, and the former CEO of that competitor's U.S. operations.

*Preheater, Inc. v. Regenerative Envtl. Equip. Co.,* 167 F.R.D. 668, 671 (D.N.J. 1996) (noting that the Third Circuit has "manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony").

Witness cites to *Meyers* for a set of factors to guide the Court in determining whether evidence should be excluded in situations where a party fails to timely disclose the identity of witnesses it intends to call at trial. The first and most important factor is the prejudice or surprise to the party against whom the evidence would be offered. *Meyers,* 559 F.2d at 905. Because Mr. Shamir and the knowledge he possesses have long been known to Witness, under *Meyers,* there is no prejudice and the exclusion of his testimony at trial is not warranted.

### 1.    Depositions of Other Witnesses

The Advisory Committee Notes to Subdivision (e) of FED. R. CIV. P. 26 make clear that the disclosure of information through discovery, particularly through another witness' deposition testimony, satisfies Rule 26(e)(1)'s duty to supplement initial disclosures. The Advisory Committee Notes state that there is no obligation to provide supplemental information that has otherwise been made known during the discovery process, "as when a witness not previously disclosed is identified during the taking of a deposition." FED. R. CIV. P. 26(e)(1) Advisory Committee 1993 Amendment Notes Subdivision (e). Courts have followed this principle in denying motions to preclude trial testimony where the witness became known during discovery. *See Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 ( N.D. Ind. 1998) (holding Rule 26(e) duty to supplement initial disclosures was satisfied when the other party learned of witnesses during another witness' deposition); *Weiland v. Linear Constr., Ltd.*, No. 00-C-6172, 2002 U.S. Dist. LEXIS 19557, at *6-7 (N.D. Ill. Oct. 10, 2002) (denying motion *in limine* when the identities of witnesses were disclosed during other witness depositions and through interrogatory answers).

4

Through depositions taken by Witness in related, co-pending litigations[3], Witness has known the following about Mr. Shamir:

- Mr. Shamir's current position as President of NICE Systems, Ltd. and former position as President and CEO of NICE Systems, Inc.[4];

- Mr. Shamir's knowledge of NICE's customers and the products these customers have purchased[5];

- Mr. Shamir's knowledge about NICE, Ltd.'s relationships with subsidiaries, affiliates, and other entities[6];

- Mr. Shamir's role in the preparation of NICE, Ltd.'s annual filings[7];

- Mr. Shamir's knowledge about NICE, Ltd's corporate structure.[8]

---

[3] As the Court is aware, NICE and Witness are involved in three other related, co-pending patent litigations, *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS), *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:04-CV-2531 (N.D. Ga.) (CAP), and *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:06-CV-0126 (TCB). Witness and NICE are represented by the same counsel in these litigations which include overlapping products, witnesses, and discoverable information. Pursuant to an agreement between the parties, all documents produced in these litigations are interchangeable. *See* Exh. B (Letter from D. Kent to J. Drayton dated Jan. 8, 2007).

[4] *See* Exh. C (Danon Dep. Tr., *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:04-CV-2531 (N.D. Ga.) (CAP), at 9:6-9; 194:13-16 (December 20, 2005)); Exh. D (Abiri Dep. Tr., *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:04-CV-2531 (N.D. Ga.) (CAP), at 10:16-18; 236:13-25; 242: 21-243:22; 244:14-16; 260:11-261:3 (January 28, 2005)).

[5] *See* Exh. D (Abiri Dep. Tr., at 294:12- 295:3).

[6] *See* Exh. C (Danon Dep. Tr., at 209:15-210:5; Exh. D, Abiri Dep. Tr., at 291:18-292:6).

[7] *See* Exh. D (Abiri Dep. Tr., at 269:8-270:6).

[8] *See* Exh. D (Abiri Dep. Tr., at 291:18-292:6).

These disclosures during discovery satisfy any duty Rule 26(e)(1) may have imposed on NICE to supplement its initial disclosures with respect to Mr. Shamir, and certainly placed Witness on notice that Mr. Shamir possessed relevant knowledge.

### 2.   Mr. Shamir's Deposition in the *STS* case

In view of Witness' deposition of Mr. Shamir in the related co-pending *STS* litigation, Witness can hardly claim that it was "unfairly surprised" when it learned that NICE intended to call Mr. Shamir to testify at the upcoming trial.

As Witness acknowledges, it took Mr. Shamir's deposition in the *STS* case.   While that deposition was supposed to be limited to a "license agreement between NICE and *STS*, and facts relating to Witness Systems' unclean hands defense in that case,"[9] Witness in fact extensively questioned Mr. Shamir about the products accused in this litigation and the relationship between NICE and Dictaphone Corporation, topics which are directly relevant to this action, but irrelevant to the *STS* litigation.  *See* Exh. E (Shamir Dep. Tr., *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS), at 32:24-34:3; 49:12-52:11 (Sept. 17, 2007)).  Witness also questioned Mr. Shamir about NICE's business in general, his responsibilities, his role in preparing Profit and Loss Statements for NICE Systems, Inc., and the performance indicators he used to measure the success of NICE Systems, Inc. from 2001 through 2005.  *See* Exh. E (Shamir Depo. Tr., at 10:17-27:21).

Witness' deposition of Mr. Shamir in the *STS* litigation demonstrates that Witness was well aware that Mr. Shamir had relevant knowledge and used that deposition to discover information relevant to this litigation.

---

[9] *See* Defendant Witness Systems Inc.'s Motions *in Limine,* at 4 (D.I. 283).

3.    **NICE's Responses to Witness' Discovery Requests**

NICE also identified Mr. Shamir in response to interrogatories served by Witness subsequent to NICE's initial disclosures in this case. In responding to Witness' Interrogatory No. 34, which asked NICE to identify the corporate officers and directors for NICE and Dictaphone from 1995 to the present, NICE identified Mr. Shamir as President of NICE Systems, Ltd. *See* Exh. F (NICE's Objections and Responses to Witness' Third Set of Interrogatories, p. 18-19, dated March 2, 2007).

In addition, Mr. Shamir's identity and his knowledge of relevant subject matter were made known to Witness through NICE's extensive production of documents. In this case alone, NICE produced over 1800 documents that contain Mr. Shamir's name and position, including emails which discuss issues relevant in this case, such as competition between NICE and Witness.[10] Witness has had a more than ample basis to confirm that Mr. Shamir possessed discoverable information relevant to this litigation.

As with deposition testimony, since the identity of Mr. Shamir was revealed through responses to discovery requests, NICE satisfied FED. R. CIV. P. 26(e)(1) and should not be precluded from calling him as a trial witness. *See Frederick v. Hanna*, No. 05-514, 2007 U.S. Dist. LEXIS 18626, at *15-16 (W.D. Pa. March 16, 2007) (witness testimony not excluded if "the identity of those persons or entities appeared on documents produced during discovery, or were revealed in response to interrogatories").

---

[10] *See e.g.*, Exh. G (NICE_DE_01376916-7); Exh. H (NICE_DE_01377054-5); Exh. I (NICE_DE_01441000-02); Exh. J (NICE_DE_01441283-85); Exh. K (NICE_DE_01441885-6).

065251.1001

### 4.    Initial Disclosures and Document Discovery in Related Litigations

Mr. Shamir was identified in NICE's initial disclosures in the co-pending *STS* case and in

the supplemental initial disclosures in the *Witness Systems, Inc. v. NICE Systems, Inc. and NICE

Systems, Ltd., No. 1:04-CV-2531* (N.D. Ga.) (CAP) case, each of which was filed before initial

disclosures were served in this case.  *See* Exhs. L and M (STS Software's Initial Disclosures in

*STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS), dated

October 22, 2004 and Initial Disclosures of NICE Systems, Ltd. and Supplemental Disclosures

of NICE Systems, Inc. in *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*,

No. 1:04-CV-2531 (N.D. Ga.) (CAP), dated May 10, 2005).  NICE also produced documents

relating to Mr. Shamir to Witness as early as April 2005.[11]  Witness in fact utilized some of these

documents during various depositions, showing that Witness was aware of Mr. Shamir and his

knowledge of relevant information as reflected in those documents.[12]  Thus, Witness was made

aware of Mr. Shamir's identity and knowledge through the related litigations.

### 5.    Subpoenas and Notices of Deposition in Related Litigations

On July 27, 2006, Witness issued a deposition subpoena for Mr. Shamir in the United

States in *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:04-CV-2531

(N.D. Ga.) (CAP), and subsequently noticed Mr. Shamir's deposition in the *STS* case.  *See* Exhs.

---

[11] *See* Exh. N (Letter from A. McGuire to C. Green dated April 5, 2005).

[12] *See, e.g.*, Exh. O (Defendant's Dep. Exh. 68 in *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS)); Exh. P (Defendant's Dep. Exh. 74 in *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS)); Exh. SS (Defendant's Dep. Exh. 14 in *Nice Systems, Inc. and NICE Systems, Ltd. v. Witness Systems, Inc.*, No. 1:06-CV-0311 (D. Del.) (JJF)); Exh. Q (Plaintiff's Dep. Exh. 10 in *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:04-CV-2531 (N.D. Ga.) (CAP)); Exh. R (Plaintiff's Dep. Exh. 85 in *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:04-CV-2531 (N.D. Ga.) (CAP)).

S and T (Notice of Deposition of Shlomo Shamir in *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS) and Subpoena of Dr. Shlomo Shamir in *Witness Systems, Inc. v. NICE Systems, Inc. and NICE Systems, Ltd.*, No. 1:04-CV-2531 (N.D. Ga.) (CAP)). Certainly, long before the parties exchanged initial disclosures in this case on October 17, 2006[13], Witness was aware of the scope of Mr. Shamir's knowledge, as it determined that his testimony would be useful in a related litigation. Once again, Mr. Shamir's identity and knowledge were not a mystery to Witness, and, as such, Witness will not be prejudiced if NICE calls Mr. Shamir to testify.[14]

### B.    Conclusion

As demonstrated above, the identity of Mr. Shamir and his knowledge of the issues in the present case have been made known to Witness during the discovery process through interrogatory responses, deposition testimony, and document discovery in compliance with FED. R. CIV. P. 26(e)(1). In addition, NICE and Witness are parties to three other ongoing patent litigations with overlapping discoverable information and witnesses, including Mr. Shamir. Therefore, Witness will not be prejudiced if NICE calls Mr. Shamir as a trial witness. Witness

---

[13] *See* Exh. RR (Defendant's Initial Disclosures, *Nice Systems, Inc. and NICE Systems, Ltd. v. Witness Systems, Inc.*, No. 1:06-CV-0311 (D. Del.) (JJF), dated October 17, 2006); Exh. QQ (Plaintiff's Initial Disclosures, *Nice Systems, Inc. and NICE Systems, Ltd. v. Witness Systems, Inc.*, No. 1:06-CV-0311 (D. Del.) (JJF), dated October 17, 2006).

[14] Witness cites to *Baden Sports, Inc. v. Kabushiki Kaisha Molten*, No. C06-210MJP, 2007 WL 2285857 (W.D. Wash. Aug. 2, 2007) and *Sonnier v. Field*, No. 2:05-cv-14, 2007 WL 2155576 (W.D. Pa. July 25, 2007) to support its contention that Mr. Shamir's testimony at trial should be excluded. These cases, however, are readily distinguished. In *Baden Sports,* the court excluded testimony where the witness was not identified until three months after the close of fact discovery. Here, as demonstrated above, Witness was made aware of Mr. Shamir's identity and knowledge in multiple ways before the close of discovery on May 31, 2007. Similarly, in *Sonnier*, there is no indication that the identity of the witness was made known, as it was here, during discovery. As demonstrated above, Mr. Shamir's identity was made known to Witness during discovery, thus satisfying Rule 26(e)(1)'s duty to supplement.

065251.1001

had ample notice and opportunity to investigate any potential testimony Mr. Shamir could offer in this case, and NICE should not now be precluded from calling Mr. Shamir as a trial witness.

The Court should deny Witness Systems' Motion *in Limine* to preclude NICE from calling Mr. Shamir to testify at trial.

## II.    RESPONSE TO WITNESS' MOTION *IN LIMINE* NO. 2:

Witness contends that NICE should be precluded from presenting any evidence accusing Witness' products sold in partnership with Nortel, Inc. ("Nortel Products") or from calling Nortel employees Messrs. Thomas Moran and David Murray as trial witnesses. Witness claims NICE is conducting a "trial by surprise" because it has not accused the Nortel Products until it submitted its Proposed Pre-Trial Order.

As demonstrated below, NICE has not violated either the Court's Rule 16 Scheduling Order (D.I. 46) or FED. R. CIV. P. 26, and exclusion of evidence under FED. R. CIV. P. 37(c) is unwarranted. In fact, Witness has long known that the products it sells to Nortel for re-sale to end users are the same for all purposes material to infringement as the products Witness sold directly to end users. Moreover, whereas Witness has long known of the identity and knowledge of Nortel's employees, Messrs. Murray and Moran, NICE only became aware of these witnesses through discovery.

Contrary to Witness' assertion that NICE violated the Court's Rule 16 Scheduling Order by not identifying the Nortel Products in its infringement contentions, NICE has consistently accused four core Witness recording products of infringement since it filed its Complaint on May 10, 2006. (D.I. 1), (D.I. 261). *See* Exh. U (Exhibit A to NICE's Objections and Answers to Witness' Second Set of Interrogatories, dated December 27, 2006); Exh. V (Objections and Response to Interrogatory No. 13, Plaintiff's Supplemental Objections and Responses to

Defendant Witness Systems, Inc.'s Second Set of Interrogatories, dated April 6, 2007);  Exh. W

(Expert Report of John Henits on Infringement Issues, dated December 17, 2007).

**REDACTED**                              **REDACTED**

Pursuant to the

Court's Order dated December 14, 2007, NICE identified for trial the core recording products

that it accuses of infringement in this case (Balance, ContactStore, ContactStore for IP, and

ContactStore for Communication Manager) and further identified the versions of each of those

core recording products, which includes the Nortel Products.  (D.I. 281).

# REDACTED

Certainly Witness has

---

[15] *See* Exh. X (Murray Dep. Tr. in *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS), at 45:18- 47:6 (April 13, 2007)); Exh. Y (Project Picasso- Nortel Contact Recording and Quality Monitoring V. 6.0.2 Vision, p. 7 (September 10, 2006) (Plaintiff's Exhibit 129)); Exh. Z (Software Development Agreement between Software Hothouse Ltd. and Witness Systems, Ltd., (December 4, 2003) (Plaintiff's Exhibit 10)); Exh. AA (Nortel Contact Recording, Nortel Quality Monitoring Sales Engineering Technical Overview (February 2006) (WSDEPROD 0317200-249)); Exh. BB (Vision Document-Nortel Contact Recording & Quality Monitoring, v6.1 and v6.2 (March 7, 2006) (WSDEPROD 0309370-384)); Exh. CC ("Witness Systems Transforms Workforce Optimization Market with Launch of Impact 360 Solution", Witness Systems, Inc. Press Release dated September 27, 2005 found at http://www.witness.com/main.aspx.?pid=258 ("Impact 360's open systems recording platform is also being leveraged through partner solutions from leading companies like Nortel."))

always been aware that the products it sells to Nortel are subject to the same infringement claims as the same products Witness sells directly to end users.

Aside from the fact that NICE has been consistent throughout this case in its accusations of the core recording products, Witness' claim that it will be prejudiced by a purportedly belated accusation of the Nortel Products is baseless. In fact, Witness' claim is belied by deposition testimony of 12 Witness employees about the Nortel Products.[16] NICE questioned these individuals about the manufacture, operation, and sales of the Nortel Products.

# REDACTED

(3) that NICE extensively questioned Witness' employees about the Nortel Products, Witness' contention that it would be subjected to a "trial by surprise" is without merit.

Witness also argues that NICE did not identify Messrs. Moran and Murray in its initial disclosures as persons with discoverable information, thereby violating FED. R. CIV. P. 26(a)(1)(A) and prejudicing on Witness. Witness ignores that, pursuant to an OEM agreement with Nortel, it manufactures products for re-sale to Nortel's customers in exchange for a royalty fee. *See* Exh. X (Murray Dep. Tr., at 10:18-11:2). At the time Witness served its initial disclosures, Witness knew the full details of its OEM relationship with Nortel as well as the role

---

[16] *See, generally*, Exh. DD (Heap Dep. Tr. (Sept. 5, 2007)); Exh. EE (Wright Dep. Tr. (May 23, 2007)); Exh. FF (Calahan Dep. Tr. (June 28, 2007)); Exh. GG (Bourne Dep. Tr. (May 23, 2007)); Exh. HH (Blair Dep. Tr. (May 16, 2007)); Exh. II (Smith Dep. Tr. (May 21, 2007)); Exh. JJ (Spohrer Dep. Tr. (Aug. 3, 2007)); Exh. KK (Treaster Dep. Tr. (June 29, 2007)); Exh. LL (Dawes Dep. Tr. (May 25, 2007)); Exh. MM (Hannah Dep. Tr.(May 22, 2007)); Exh. NN (D. Williams Dep. Tr. (May 24, 2007)); and Exh. OO (Watson Dep. Tr. (Sept. 6, 2007)), all in *Nice Systems, Inc. and NICE Systems, Ltd. v. Witness Systems, Inc.*, No. 1:06-CV-0311 (D. Del.) (JJF).

that Messrs. Moran and Murray have in that partnership.[17]  NICE, in contrast, could not have

identified Messrs. Moran and Murray in its initial disclosures as it did not know of these

individuals or of the relationship between Witness and Nortel until April 2007, when it took the

Rule 30(b)(6) deposition of Nortel in the *STS* litigation.  Witness, on the other hand, obviously

knew about its relationship with Nortel, yet did not disclose Nortel, Inc. or Messrs. Murray and

Moran in its initial disclosures.  Thus, it is Witness, not NICE, who violated the disclosure

requirements of FED. R. CIV. P. 26(a)(1)(A).

    Witness attended the Rule 30(b)(6) deposition of Nortel and had a full opportunity to

question Nortel's designees, Messrs. Moran and Murray.  Witness' argument that it would be

prejudiced by NICE's use of the deposition testimony of Messrs. Moran and Murray at trial is

without merit.[18]  By virtue of its business partnership with Nortel, Inc., Witness was well aware

of Messrs. Moran and Murray's identities and knowledge related to this litigation long before

NICE obtained this information during discovery.  The exclusion of Messrs. Moran and

Murray's testimony at trial under FED. R. CIV. P. 37(c)(1) is therefore unwarranted.

    The Court should deny Witness' Motion *in Limine* to preclude NICE from accusing the

Nortel Products of infringement and from using the deposition testimony of Messrs. Moran and

Murray at trial.

---

[17] *See* Exh. PP (Wright Depo. Tr., *STS Software Systems, Ltd. v. Witness Systems, Inc.*, No. 1:04-CV-2111 (N.D. Ga.) (RWS), at 153:1-153:22 (April 11, 2007)); Exh. EE (Wright Depo. Tr., at 14:23-15:10).

[18] In the *STS* case, NICE requested that Nortel make its 30(b)(6) witnesses available for deposition in the United States.  Nortel, however, refused to do so, requiring the parties' attorneys to travel to Ireland for the deposition.  Given that Messrs. Moran and Murray reside in Ireland, and refuse to travel to the United States to provide testimony, these witnesses are unavailable for trial.  As a result, NICE is limited to the use of their deposition testimony at trial.

DB02:6463118.1                                    065251.1001

### III.    RESPONSE TO WITNESS' MOTION *IN LIMINE* NO. 3:

Witness' Third Motion *In Limine* seeks to preclude NICE from asserting infringement of each of the patents in suit under the Doctrine of Equivalents, to varying degrees, arguing a variety of theories.  In reality, Witness' motion improperly seeks both to reargue the Court's claim construction and to obtain summary judgment on the issue of the doctrine of equivalents under the guise of a motion *in limine*.

A motion *in limine* is used to determine whether particular evidence may be introduced at trial, not to engage in further claim construction or to determine whether the doctrine of prosecution history estoppel applies as a matter of law.  Accordingly, this Court denies such improper motions.  *See Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 2006 U.S. Dist LEXIS 67562, at *3-4 (D. Del. Sept. 20, 2006) (Farnan, J.) (denying motion *in limine* because it "more closely resembles a second summary judgment motion . . . than a motion in *limine*"); *B. Lewis Productions, Inc. v. Vaughn Bean*, 2005 U.S. Dist. LEXIS 1549, at *1-2 (D. Del. Jan. 28, 2005) (Jordan, J.) ("[T]he Motion [*in limine*] is nothing less than a motion for partial summary judgment and, therefore, should have been raised by [plaintiff and third-party defendant] no later than the dispositive motion deadline set in the scheduling order.").  Claim construction is an issue of law already decided by the Court, and the deadline for the filing of summary judgment motions was November 2, 2007.  Moreover, not only has Witness missed the deadline for filing summary judgment motions, it has failed to satisfy any of the requirements for a summary judgment under FED. R. CIV. P. 56.

While Witness' Third Motion *In Limine* should be denied on procedural grounds alone, it is clear that Witness is also wrong on the merits.

14

**`345 and `570 patents**

For the `345 and `570 patents, Witness asks the Court to preclude NICE from arguing during trial that the accused products contain a "data record" under the doctrine of equivalence. With regard to certain of Witness' accused products, NICE's expert witness, Mr. John Henits, has opined in his expert report that one data record containing multiple pieces of data is equivalent to the storage of same data in different locations within the same storage area as long as each piece of data can be linked via a unique identifier. *See* Exh. W (Henits Expert Report, at 122-128). Witness' request is improper because the Court has already ruled on this issue on claim construction. During claim construction, Witness took the position that that arguments made to the patent examiner during prosecution constituted "a clear and unmistakable disavowal of claim scope."[19] Consistent with its position, Witness proposed that the term "constructing a data representation of a lifetime of the telephone call using data regarding telephony events associated with the telephone call segments of the telephone call " should specifically exclude "using an identifier or key to form the data representation." Memorandum on Tentative Claim Construction at 18-19 (D.I. 279). After considering the prosecution history cited by Witness, the Court rejected Witness' position that its proposed construction "tracks the precise definition that NICE used to disclaim prior art in its prosecution history." *Id.* Based on its consideration of the specification, relevant prosecution history and its construction of the claim term "data

---

[19] On claim construction, Witness argued that statements made during prosecution of the `345 patent disclaimed the use of an identifier to construct a data representation of a lifetime of a telephone call. Witness Opening Claim Construction Br. at 13-14 (D.I. 149). In response, NICE explained that no such disclaimer was made, but rather, the patentee distinguished its invention over the Peavey reference for several reasons, none of which disclaimed the use of an identifier to link data related the same call. NICE Responsive Claim Construction Br. at 4 (D.I. 168).

DB02:6463118.1

065251.1001

representation of a lifetime of a call," the Court concluded that the claim term "constructing a data representation . . ." did not require construction. *Id.*

Thus, in light of the Court's claim construction, Witness should not now be permitted to re-argue that the `345 and `570 patent claims were narrowed during prosecution, precluding NICE from asserting infringement under the doctrine of equivalents.

To the extent Witness is asserting NICE is precluded from asserting the doctrine of equivalents based on the doctrine of prosecution history estoppel, it has not presented the requisite facts to support such an assertion. In *Festo*, the Supreme Court set forth the requirements for prosecution history estoppel. The Court explained that where "the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S 722, 733-34 (2002).

Witness argues that *Festo* teaches that "[a] patentee's decision to narrow his claims through amendment is presumed to be a general disclaimer." Witness' Motions *In Limine*, at 14 (D.I. 283). Witness mischaracterizes the Supreme Court's teachings in *Festo*. There is no general presumption of disclaimer through claim amendments. Rather, the Supreme Court specifically limited the presumption "to the circumstance where 'no explanation is established'" for the amendment. *Festo*, 535 U.S. at 740. In any event, Witness' argument has no application to the scope of the `570 and `345 patents as it relates to amendment-based estoppel, not argument-based estoppel.

In this case, the patentee did not submit a narrowing amendment during the prosecution of the `345 patent to overcome the Peavey reference. Rather, only arguments were made to the

patent examiner regarding the Peavey reference. It is well settled that "[t]o invoke argument-based estoppel . . . 'the prosecution history must evince a clear and unmistakable surrender of subject matter.'" *Conoco, Inc. v. Energy & Envtl. Intl., L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006) (citation omitted); *accord Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002) (same). In *Conoco*, the Federal Circuit emphasized that a different and more lenient standard is applied for argument-based estoppel. *Conoco*, 460 F.3d at 1364 ("Unlike amendment-based estoppel, we do not presume a patentee's arguments to surrender an entire field of equivalents through simple arguments and explanations to the patent examiner.") Indeed, in *Eagle*, although the patentee had "repeatedly distinguished the prior art," the Federal Circuit still did "not find the required clear and unmistakable surrender of subject matter." *Eagle*, 305 F.3d at 1316; *see also AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382-83 (Fed. Cir. 2005) (patentee's statements distinguishing the prior art did not constitute clear and unmistakable surrender of subject matter). Similarly, in this case, during prosecution the patentee pointed out several differences between the invention and the Peavey reference, but the Court has agreed with NICE that those statements do not constitute a clear and unmistakable surrender of subject matter. Memorandum on Tentative Claim Construction at 14-15 and 18-19 (D.I. 279).

Witness also argues that "the Court found that NICE disclaimed claim scope through the specification of the patent." Witness' Motions *In Limine* at 15 (D.I. 283). In support of this argument, Witness does not cite to any language in the `570 and `345 patent specifications which demonstrate a clear disavowal of claim scope. Instead, it relies on a single statement from the Court's claim construction opinion which it "conclude[d] that the specification reveals a call-centric compilation of data to be an indispensable element of the invention, and not merely an

element of the preferred embodiment." Memorandum on Tentative Claim Construction at 17 (D.I. 279). In construing the claims-in-suit, the Court found that the specification revealed a distinction between "call-centric" and "event centric," and indeed, NICE's expert has not rendered any opinions in conflict with the Court's opinion on this issue. However, Witness now attempts to mischaracterize the Court's opinion -- the Court did not hold that the specification disavowed claim scope that would preclude NICE from asserting that the accused products contain a "data record" under the doctrine of equivalence where related data stored in different locations within the same storage area can be linked via a unique identifier.

In conclusion, the Court did not hold that there was disavowal of claim scope in the specification or the prosecution history, and has already decided that the arguments made to the patent examiner during the `345 prosecution were not a "clear and unmistakable disavowal of claim scope." In light of these facts, the Court should deny Witness' motion *in limine* to preclude NICE from submitting evidence at trial to prove the accused products contain the equivalents of "data record."

## `109 patent

For the `109 patent, in three brief paragraphs, Witness asks the Court to preclude NICE from arguing: 1) that a "conference controller" is a device that is integrated with a recorder; 2) that "through a conference controller" is equivalent to "flowing through" a conference controller, or equivalent to "implementing a data session so that audio is transmitted to the first and second participants and the recording device"; and 3) that "receives as the additional participant at least the portion of the IP data session from each of the first and second participants" is equivalent to "receiving the sum of a two way stream between the first and second participants." Witness Motions *In Limine* at 16-17 (D.I. 283).

18

Witness dashed off this motion on the `109 Patent, apparently in reaction to positions taken in NICE's expert report on infringement issues served December 17, 2007. Perhaps due to extreme haste, Witness presents no coherent or comprehensible basis for any of its positions. The vagueness and ambiguity of Witness' arguments should be sufficient ground for denying its motion on the `109 Patent. Although NICE must to a great extent guess at the arguments Witness was attempting to make, it will address each point in turn.

Witness' position seems to be that merely because NICE made arguments and claim amendments during prosecution of the `109 Patent, any recourse to the doctrine of equivalents is precluded as a matter of law. However, the law is to the contrary. As discussed above, arguments made during prosecution can only result in an estoppel if the prosecution history evinces "a clear and unmistakable surrender of subject matter." *Conoco*, 460 F.3d at 1364. In addition, the Supreme Court in *Festo* expressly rejected a "complete bar" approach to prosecution history estoppel and instead adopted a "flexible bar" approach which requires a determination of the reason for an amendment and "an examination of the subject matter surrendered by the narrowing amendment," before deciding what range of equivalents, if any, the patentee is estopped from asserting. *Festo*, 535 U.S. at 738.

Witness fails to establish any basis for prosecution history estoppel. Indeed, Witness fails to state which specific actions were taken during prosecution and how or why such actions create a prosecution history estoppel as a matter of law with respect to any range of equivalents, let alone the particular equivalents specified by Witness. In any event, it is plain that nothing in the prosecution history supports Witness' arguments.

19

a. **Witness' argument that "NICE surrendered the ability to argue that a 'conference controller' is a device that is integrated with a recorder."**

Witness points to no claim amendment or argument that remotely relates to the issue of whether a conference controller can be "integrated with a recorder," an issue that was never raised during prosecution. In the prosecution history cited by Witness, NICE argued that the prior art Rust reference did not have a conference controller ("Rust Lacks a Conference Controller"), and therefore was missing an element of the claimed invention. Ex. F of Witness Motions *In Limine*, October 6, 2005 Amendment at 26-27 (D.I. 284).

Rust disclosed a collaborative Web browsing session over a network, allowing a presenter on a first computer to direct the audio and visual components of a browser on one or more second computers. Witness' Motions *In Limine*, Ex. F, October 6, 2005 Amendment at 24-26 (D.I. 284). Rust relates to a one-way communication from the presenter computer to attendee computers where the attendee computers are under the control of the present computer and do not send audio or video information to any of the computers participating in the session. Witness' Motions *In Limine*, Ex. F, October 6, 2005 Amendment at 25 (D.I. 284). Additionally, the recorder in the Rust system only received data from the presenter computer and had no ability to receive data from an attendee computer, not even through the presenter computer. Witness' Motions *In Limine*, Ex. F, October 6, 2005 Amendment at 26 (D.I. 284). Based on these facts, NICE argued that the system disclosed in Rust did not and could not have a conference call controller because:

> None of [the operations of the Rust system] is akin to establishing a connection with a second communication device and then "implementing the data session as a conference call" in which a recording device distinct from the other participants to the conference call can receive "at least [a] portion of the data session from each of the first and second participants."

Such an argument can hardly be construed to be a clear and unmistakable disavowal of any particular relationship between the conference controller and recorder recited in the claim, including whether the two can be "integrated." The same is true for any claim amendment to which Witness may be referring. Indeed, the word "integrated" does not appear in the cited prosecution history. The lack of any foundation warrants rejection of Witness' motion.

> **b. Witness' argument that "NICE also surrendered the ability to argue that 'through a conference controller' is equivalent to 'flowing through' a conference controller, or equivalent to 'implementing a data session so that audio is transmitted to the first and second participants and the recording device.'"**

Witness' argument is virtually incomprehensible. First, as the Court acknowledged, Witness argued during claim construction that "through" a conference controller meant "flow through" a conference controller. Memorandum on Tentative Claim Construction at 35 (D.I. 279). The Court adopted Witness' claim construction in stating that "through a conference controller" means "the data packet transmissions of the IP data session pass through the conference controller." As both Witness and the Court understood "through" to *literally* mean "flow through" or "pass through," it makes no sense for Witness to now argue that NICE "flowing through" is outside the permissible range of equivalents when it is precisely within the literal scope of the language as construed by Court. Moreover, in the briefing on claim construction, NICE demonstrated that in the prosecution history on which Witness relies, NICE merely pointed out that "through a conference controller" has the same meaning as "by the conference controller." NICE Responsive Claim Construction Br. at 26 (D.I. 168). The Court agreed that Witness misread the prosecution history, which did not support Witness' construction. Memorandum On Tentative Claim Construction at 36 (D.I. 279).

Second, Witness does not explain how any event in the prosecution history precludes 'implementing a data session so that audio is transmitted to the first and second participants and

21

the recording device' from being equivalent to "through a conference controller." NICE is at a loss as to how Witness formulated this argument as the language 'implementing a data session so that audio is transmitted to the first and second participants and the recording device' does not appear in the prosecution history relied on by Witness, either in a claim amendment or argument. NICE can only note again that the Court found that "NICE demonstrated that Witness' reliance on the prosecution history was misplaced." Memorandum On Tentative Claim Construction at 36 (D.I. 279). Apparently, Witness' misreading of the prosecution history has also infected this motion. Certainly nothing in the cited prosecution history effects the estoppel Witness advocates. Accordingly, Witness' motion should be denied.

**c. Witness' argument that "NICE is also estopped from asserting that 'receives as the additional participant at least the portion of the IP data session from each of the first and second participants' is equivalent to 'receiving the sum of a two way stream between the first and second participants.'"**

Witness' sole support for this position is that "NICE surrendered any scope of equivalents when it amended this claim over the Rust reference." Witness' Motions *In Limine,* Ex. F, October 6, 2005 Amendment, p. 27 (D.I. 284). As explained above, during prosecution, NICE distinguished the Rust reference because it did not describe a conference controller. Witness provides no explanation of how any event in the prosecution (whether amendment or argument) relates to the language "receiving the sum of a two way stream between the first and second participants," a phrase which does not even appear in the prosecution history, either in a claim amendment or an argument. Indeed, NICE simply distinguished its invention over Rust by pointing out that the recorder of the `109 patent had the ability to receive data sent from all participants as opposed to just one participant as in the case of the Rust system. In doing so, NICE did not place any limitation on how the audio data received by the recorder from the participants in the conference call could be arranged (including as the sum of a two way

22

stream).[20]  Nothing in Rust or any other prior art reference could have required such an argument

to support patentability.  Therefore, Witness has no basis for its assertion that, as a matter of law,

NICE cannot prove that Witness' accused products satisfy, either literally or by the doctrine of

equivalents, the claim limitation "receives as the additional participant at least the portion of the

IP data session from each of the first and second participants."

Moreover, the Court did not even construe the literal meaning of the phrase "receives as

the additional participant at least the portion of the IP data session from each of the first and

second participants."  In effect, in the guise of a meritless prosecution history estoppel argument,

Witness is attempting to reopen claim construction to address a term that it did not seek to have

construed during the claim construction process.  Thus, it is not surprising that Witness offers no

basis for its bald assertion of estoppel, because there is none.  Witness' motion should be denied.

**`371 patent**

For the `371 patent, Witness asserts that "NICE disclaimed any coverage for analog

equivalents to a 'digital audio tape,' and NICE is estopped from accusing Witness Systems of

infringing the 'digital audio tape' limitation via those equivalents.  Witness' Motions *In Limine*

at 18 (D.I. 283).  Witness' motion is irrelevant to this litigation and is also legally and factually

unfounded.

Based on NICE's reading of Witness' expert report on noninfringement, whether analog

cassette tapes are covered under the doctrine of equivalents is not at issue in this litigation.

---

[20] The only place the language "receiving the sum of a two way stream between the first and
second participants" appears is in NICE's expert report on infringement.  In his report, Mr.
Henits stated that the recorder in the Witness accused products receives the data packets
transmitted between the first and second participants as a sum of the two way stream, which
meets the claim literally or, in the alternative, under the Doctrine of Equivalents. *See* Exh. W
(Henits Expert Report at 55-57).

There is no dispute that none of the Witness products accused of infringing the `371 Patent use analog cassette tape. *See* Exh. W (Henits Expert Report at 14-45). Moreover, Witness does not define what it means by the "analog equivalents" which it seeks to preclude NICE from arguing are equivalent to "digital audio tape."[21]

In sum, NICE does not intend to present evidence at trial that Witness Systems accused products infringe under the doctrine of equivalents because those products use analog cassette tapes for archive. Accordingly, this issue raised by Witness is moot, and therefore its motion *in limine* should be denied.

**`372 and `920 patents**

For the `372 and `920 patents, Witness asks the Court to preclude NICE from making any arguments with respect to infringement under the doctrine of equivalents because NICE's infringement expert did not offer an opinion on infringement by equivalents. Witness' Motion *In Limine* at 18 (D.I. 283). As a practical matter, Witness is asking the Court to limit the testimony of NICE's expert only to the opinions offered in his report as it relates to the `372 and `920

---

[21] Notwithstanding the irrelevance of Witness' motion to the litigation or the ambiguity of the relief it seeks, NICE's statements to the examiner during the prosecution of the `371 patent distinguishing the Leung reference has no impact on the proper scope of equivalents for the term "digital audio tape." In a Response filed during the prosecution of the `371 Patent, the applicants distinguished the Leung reference because it did not describe a number of aspects of the claimed invention. For example, in addition to the failure of the Leung reference to describe digital audio tape, the applicant asserted that audio is not retrieved from a random access storage device in the Leung reference, and that in the Leung reference, there is no communication from the logger to the recorder unit. Witness Motions *in Limine*, Ex. G, `371 Amendment dated June 23, 1994 at 2 (D.I. 284). An argument made during prosecution which simply points out what is lacking in a prior art reference is not a "clear and unmistakable surrender of subject matter" and cannot act as an estoppel. *See, e.g., Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) ("Every statement made by a patentee during prosecution to distinguish a prior art reference does not create a *separate* estoppel. . . . [Patentee] distinguished the Deister reference because of a wealth of differences. . . .[A]ny estoppel created by patentee's argument encompasses *all* of these *combined* distinctions of Deister and not an estoppel respecting *each* of the *individual* differences. . . .") (emphases in original).

patents. In accordance with FED. R. CIV. P. 26(a)(2)(B), the reports of all testifying experts must "contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Consistent with Rule 26, well established case law requires that an expert's testimony at trial be limited to only those opinions expressed in his or her report. *See e.g., Vujcevic v. Oglebay Norton Marine Services, Co. LLC,* No. 06-CV-14187, 2007 WL 4181555, at *2-3 (E.D. Mich. Nov. 27, 2007) (granting motion to strike supplemental expert report containing new opinions that could have been disclosed in initial report but were not); *Carter v. Finely Hosp.,* No. 01-C-50468, 2003 WL 22232844, at *2-3 (N.D. Ill. Sept. 22, 2003) (granting motion to strike supplemental expert reports which party attempted to use as a vehicle to disclose entirely new expert opinions). To the extent the Court grants Witness' motion as stated, it would yield an unfair result and apply the mandate of Rule 26 against NICE when Rule 26 already requires its mandate be enforced against all parties' experts at trial. Therefore, it is NICE's position that the testimony at trial of all of the parties' experts should be limited to the opinions expressed in their respective written report.

DB02:6463118.1

065251.1001

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Mary F. Dugan*

Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE 19899
(302) 571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY  10022
(212) 836-8000

Dated: December 28, 2007

*Attorneys for Plaintiffs NICE Systems, Inc. and
NICE Systems, Ltd.*

DB02:6463118.1                                                    065251.1001

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on December 28, 2007, I caused to be electronically filed a true and correct copy of the foregoing document, Plaintiffs' Response In Opposition to Defendant Witness Systems, Inc.'s Motions In Limine, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Kyle Wagner Compton, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE 19899-1114

I further certify that on December 28, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manned indicated:

> **BY EMAIL**
> Nagendra Setty, Esquire (setty@fr.com)
> Daniel A. Kent, Esquire (kent@fr.com)
> Christopher O. Green, Esquire (green@fr.com)
> Noah C. Graubart (graubart@fr.com)
> Fish & Richardson, P.C.
> 1180 Peachtree Street, N.E.
> 21st Floor
> Atlanta, GA 30309

> */s/ Mary F. Dugan*

> Mary F. Dugan  (No. 4704)
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE  19801

> P.O. Box 391
> Wilmington, Delaware  19899-0391
> (302) 571-5028
> mdugan@ycst.com

DB02:6463118.1                                                                065251.1001