IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC., and ) 
NICE SYSTEMS, LTD., )
 )
                   Plaintiffs, )
 )          Civil Action No. 06-311-JJF
            v. )
 )        **REDACTED VERSION**
WITNESS SYSTEMS, INC., )
 )
            Defendant. )

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF THOMAS W. BRITVEN

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899
(302) 571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and NICE Systems, Ltd.*

Dated: January 11, 2008

## I.    INTRODUCTION

Witness Systems, Inc.'s ("Witness Systems") 12th hour attempt to exclude Thomas W. Britven's expert testimony relating to the measure of NICE's damages is without merit. As established by his expert report and reinforced at his deposition, Mr. Britven's testimony is the product of reliable principles and methods, based upon sufficient facts and data, and is the result of the application of these principles and methods reliably to the specific facts of this case. Mr. Britven's testimony satisfies the requirements of F.R.E. 702 because it is both reliable and will be helpful to the trier of fact. Witness Systems' disagreement with Mr. Britven's sound analysis can and should be dealt with at trial on cross-examination.

There is both legal precedent and abundant factual support for Mr. Britven's opinions under Scenarios I and I-A that the June 2005 is an appropriate hypothetical negotiation date in this case. Because NICE is the injured Plaintiff seeking a reasonable royalty, the outcome of the hypothetical negotiation *Georgia Pacific* intends to replicate must be assessed in the economic context of NICE's ownership of the patents. As a simple matter of fact, because NICE did not acquire the patents until 2005, not even a hypothetical negotiation could have occurred with NICE until that time. As a result, Mr. Britven's methodology for computing a reasonable royalty based on a hypothetical negotiation between Witness Systems and NICE once NICE acquired the patents in June 2005, is entirely consistent with applicable law. Indeed, Witness Systems' own damages expert does not even adopt the hypothetical negotiation timing Witness asks the Court to impose on Mr. Britven. In addition, not one of the cases on which Witness Systems relies concerning the timing of a hypothetical negotiation involves an acquisition, and each case is otherwise readily distinguishable.

Similarly, Mr. Britven's opinion

# REDACTED

# REDACTED

Thus, Witness Systems' belated attempt to exclude Mr. Britven's opinions

concerning Scenarios I and I-A because he "misapplies applicable law" or because his opinions

are "speculative" (Def. Op. Br. at 1) are insupportable and should, therefore, be denied.

## II.    ARGUMENT

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Federal Rules of Evidence 702 (2007).  While Rule 702 requires that the Court exercise a

gatekeeping function, it is not intended to be a mechanism to deprive a party of its right to trial

by jury because the opposition quibbles about the weight to be afforded to testimony.  *See Maiz*

*v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) ("A district court's gatekeeper role under Daubert

is not intended to supplant the adversary system or the role of the jury.") (internal quotations

omitted).  Determination of the weight to be afforded an expert's testimony is a function for the

jury.  *See, e.g., St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, No. 01-557-JJF

Mem. Order at 1-2 (D. Del. Feb. 13, 2003) (concluding that defendant's "objections regarding

[plaintiff's damages expert's] opinion go to the weight of the testimony, and therefore,

[defendant] is permitted to raise the matters cited during cross-examination"); *St. Clair*

*Intellectual Property Consultants, Inc. v. Canon, Inc.*, No. 03-241 JJF, 2004 U.S. Dist. LEXIS 19475, at *9 (D. Del. Sept. 28, 2004) (noting that the defendants "will have the opportunity to cross-examine [plaintiff's damages expert] at trial regarding the weight he gives to any subsequent events calculated into his calculations"). Mr. Britven's expert opinions are not even close to excludable. They are based upon abundant facts and data, are the product of reliable principles and methods, and result from the rigorous application of the principles and methods reliably to the facts of this case. Witness Systems' arguments to the contrary have no merit and its motion to exclude Mr. Britven's testimony should be denied.

### A. The Methodology Mr. Britven Uses for Computing Damages in Scenarios I and I-A Is Entirely Consistent with Established Legal Principles

A patentee is entitled to no less than a reasonable royalty on an infringer's sales for which the patentee has not established entitlement to lost profits. 35 U.S.C. § 284. A reasonable royalty, in turn, is based "upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983). "The methodology used to assess damages under 35 U.S.C. § 284 <u>rests within the discretion of the district court</u>." *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, No. 03-241 JJF, 2004 U.S. Dist. LEXIS 19475, at *7-8 (D. Del. Sept. 28, 2004) (emphasis added) citing *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 798 (Fed. Cir. 1988). While there is not a fixed and specific methodology for calculating a reasonable royalty, the fifteen factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.) provide guidance. *Id.* Those 15 factors are not, however, all necessary or necessarily present in a methodologically sound opinion. Depending on the facts of a case, some factors may have minimal or no relevance and others

"may have to be molded by the Court to fit the facts of the case at hand." *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 607 (D. Del. 1997).

A reasonable royalty is calculated not by today's standards, but by using the market conditions on the date the infringement began. *See Joy Techs. V. Flakt, Inc.*, 954 F. Supp 796, 806 (D. Del. 1996). For NICE, the plaintiff here, June 2005 is the first date Witness infringed *NICE's patents*. Accordingly, any hypothetical negotiation between the parties would have occurred by definition only between NICE (not Dictaphone) and Witness Systems and only at that time.

In addition, there is ample precedent that the timing of the hypothetical negotiation used in calculating reasonable royalties under *Georgia-Pacific* may, in appropriate circumstances, be a date other than the date infringement began. *See, e.g., Brunswick Corp. v. United States*, No. 97-5017, 1998 U.S. App. LEXIS 7198, at *28 (Fed. Cir. Mar. 31, 1998) (holding that "it was certainly permissible for the trial court to select a date prior to the first use of an infringing product as the hypothetical negotiation date"). In *Brunswick*, the Federal Circuit affirmed the trial court's belief that "although a hypothetical negotiation normally is conducted as of the first use of an infringing device, the date can be adjusted . . . ." *Id.* at *24.

Subsequent events may also be taken into account in a reasonable royalty calculation. For example, where, as here, multiple patents are involved, the timing of hypothetical negotiations may be handled differently. *Cf. Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994) (in "conducting the hypothetical negotiation [in the context of more than one patent], the Court looks at all of the patent rights infringed to attempt to find one reasonable royalty") (internal quotations omitted). In addition, in the context of a hypothetical negotiation, courts are permitted to look at events and facts that occurred after

the infringement began in order fairly to reflect the appropriate measure of damages. *See St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, No. 03-241 JJF, 2004 U.S. Dist. LEXIS 19475, at *7-8 (D. Del. Sept. 28, 2004) (denying alleged infringer's motion in limine to exclude the testimony of patentee's expert finding that "in conducting the hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the infringement began"). Thus, the date of the hypothetical negotiation may be a date other than the date that the infringement began, when application of reliable principles and methods to the economic realities of the case require an alternate date, which is the circumstance in this case.

The market conditions relevant to the reasonable royalty owed to NICE existed only when NICE acquired the patents. As a result, Mr. Britven's use of the June 2005 hypothetical negotiation is the product of reliable principles and methods. In that portion of his expert report quoted by defendants, Mr. Britven clearly sets forth the principled basis for his opinion that the market conditions relevant to the reasonable royalty calculation were those present in June 2005, the date of first infringement of NICE's patents, not an earlier date when NICE did not own the patents. NICE had a stronger bargaining position than Dictaphone and would have demanded and received higher compensation. (Britven Report ¶ 133; Exh. A).

Mr. Britven further explained his rationale and the bases for his opinion at his deposition, to the extent he was asked. (*See, e.g*, Britven Dep. 66-68, 24-25, Exh. B). Witness Systems' decision to ask at his deposition only the obvious – that NICE's lawyers were involved in retaining him and securing his report – and to ignore exploration of the obvious logical and extensive factual foundation was a deliberate election. It is susceptible to the interpretation that Witness determined to bring (and could have brought) the instant motion when it received his

report on December 17, 2007, but instead chose to hold it for three weeks, until after Mr.

Britven's deposition and on the eve of trial.

**B.      The Authority That Witness Systems Relies Upon is
         Distinguishable from the Facts and Issues in this Case.**

Furthermore, the authority that Witness Systems relies upon for the proposition

that the hypothetical negotiation used in calculating the reasonable royalty must occur at the date

infringement began is distinguishable from the facts in this case. First, and most important,

unlike this case, the cases cited by Witness Systems do not involve or address the hypothetical

negotiation date in the context of a subsequent change in ownership or what "the date

infringement began" means in that context. Second, the cases upon which Witness Systems

relies do not involve situations in which, as here, the market position and bargaining power of

the acquirer (NICE) far exceeds that of the company from which the patent was acquired.

In addition, none of the cases that Witness Systems cites in its brief involve a

hypothetical negotiation in the context of multiple patents, as is the case here. In *Applied Med.*

*Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356 (Fed. Cir. 2006), there was only one patent

being considered for purposes of the hypothetical negotiation. *Id.* at 1358. Again, in *Joy Techs.*

*V. Flakt, Inc.*, 954 F. Supp. 796, (D. Del. 1996), there was only one patent at issue. *Id.* at 798.

Here, however, there are five different patents at issue.

In fact, one case cited by Witness provides further supports for Mr. Britven's

analysis. In *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356 (Fed. Cir.

2006), the Federal Circuit held that: (1) a patentee can sue a defendant for patent infringement,

win and obtain a royalty rate and, (2) collateral estoppel does not preclude the same patentee

from suing the same defendant a second time over a redesign of the same product. More simply,

the Court ruled that the patentee is not limited to the date of infringement of the prior version of

the product where the product is redesigned. Here, Witness admits that NICE accuses it of infringing multiple versions of its various recording solutions. For example, Witness launched its Impact 360 brand in 2005 with a <u>redesigned</u> product line. More specifically, in or around June 2005, Witness released new versions of the products that NICE accuses of infringement. For example, Contactstore for Communication Manager version 7.3.2 was released in June 28, 2005; Contactstore for IP version 7.4.0 was released on August 1, 2005, Balance 5.2.9 was released on August 31, 2005; Witness Quality for Communication Manager version 5.4.1 was released on August 1, 2005; Impact 360 7.6.0 was released for the first time in November 2005. (Witness Supplementation of Answers to Interrogatories, Exh. D)  Thus, even if Dictaphone had sued Witness and obtained a royalty rate, under *Applied Medical Resources*, NICE would not be bound by any royalty rate, once Witness modified its product, providing further support for Mr. Britven's opinion to start his royalty payments on June 1, 2005. (Britven Report p. 66; Attachment VI and VII; Exh. A).

At bottom, Witness Systems cites no cases addressing the determination of a hypothetical negotiation date in the context of an acquisition. In his testimony, however, Mr. Britven clearly sets forth the justification and principles that support the use of the June 2005 hypothetical negotiation. (Britven Report ¶¶ 101, 133, Exh. A; Britven Dep. p. 58, Exh. B.) Witness Systems' expert does not even address this issue in either his report or his deposition testimony.

<p style="margin-left:2em;"><strong>C.    Witness Systems' Own Damages Expert Does Not Use<br>the Hypothetical Negotiation Timing that Witness<br><u>Systems Contends that Mr. Britven Should Have Used.</u></strong></p>

Witness Systems own damages expert, Brian W. Napper, uses a third quarter 2001 hypothetical negotiation date for the '371 Patent, despite infringing sales as early as 1998.

(Napper's Report, tables at p. 7 and p. 26, Exh C.)  While Mr. Britven's use of 2005 is fully

explained and supported, and is consistent with economic reality and market conditions at the

date NICE's patents were infringed, the third quarter 2001 date used by Mr. Napper was neither

explained nor factually supported.  Thus, putting aside the redesign of the accused products

discussed above, Witness Systems' insistence that the hypothetical negotiation date must be the

"date that the infringement began" (Def. Op. Br. at 1) is ignored by its own damages expert, who

uses a hypothetical negotiation date that is three and a half years after the date the '371 patent

was first infringed with respect to its then-owner, Dictaphone.

> **D.**     **The June 2005 Hypothetical Negotiation is Consistent**
> **With the Economic Realities and NICE's Business Purpose.**

The goal of the *Georgia-Pacific* analysis is to align the royalty determination that

flows from a hypothetical negotiation with economic reality so that the patentee is fairly

compensated for its loss. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116,

1136 (S.D.N.Y. 1970) (considering "the relative bargaining positions of the parties and the

economic realities of [the] particular situation").  Thus, the date NICE acquired the patents from

Dictaphone – June 2005 – is the only date at which it makes economic sense to analyze NICE's

damages.  Therefore, Mr. Britven's use of the June 2005 hypothetical negotiation date is

reasonable and results from the application of sound damages principles and methods reliably to

the facts of this case.

NICE acquired a license to the patents-in-suit via a settlement agreement and

cross-license with Dictaphone in 2003.  Accordingly, when NICE acquired Dictaphone in 2005,

NICE did not do so in order to obtain rights to utilize the patents-in-suit, because NICE already

had those rights. Instead, NICE acquired the patents with the intentions of either enforcing its

right to exclude others from using the patents, or negotiating licenses with others.  If NICE were

limited to recovering royalties negotiated via Dictaphone, then the motivation for, and the value of, the acquisition are diminished from NICE's perspective. In the real world, if NICE were to negotiate a license with Witness, it would have only after NICE acquired control of the portfolio as of June 2005.

As Mr. Britven states in his report, June 2005 was "the first time NICE was in a position to assert the former Dictaphone patents against Witness." (Britven Report p. 50, Exh. A) Mr. Britven reiterates this position in his deposition testimony, noting that the June 2005 date NICE acquired Dictaphone's assets is "in essence the first date that NICE was able to do something." (Britven Dep. p. 58, Exh. B) As a result, only as of June 2005 would any hypothetical negotiation make sense to reflect NICE's damages, regardless of whether those damages are lost profits or reasonable royalties.

Mr. Britven's use of the June 2005 hypothetical negotiation date is the product of reliable principles and methods, is based upon sufficient facts and data, and is the result of Mr. Britven's application of these principles and methods reliably to the facts of this case. Witness Systems' claim to the contrary is without merit. Witness Systems' motion to exclude should, therefore, be denied.

E.    **REDACTED**

Mr. Britven's opinion that Witness would have paid **REDACTED** upfront royalty is supported by the record and is not speculative due to the following:

(1)    Mr. Britven's expert report devotes significant discussion to the factors supporting the upfront royalty;

(2)    The upfront royalty is supported by transaction data; and

(3)    The upfront royalty is corroborated by multiple calculations to test for reasonableness.

1.    **Mr. Britven's Report Devotes Significant
      Discussion to the Factors Supporting the
      Upfront Royalty.**

Mr. Britven's Expert Report devotes extensive analysis of information and data

pertinent to the call center market, the relationship between the parties, trends in the industry and

other economic parameters **REDACTED**

In the Case Background section of Mr. Britven's Expert Report (Section IV), he

recites numerous factors which support

# REDACTED

In addition, in the Assessment of *Panduit* Factors sections of the report (Sections

VII-IX), Mr. Britven performs detailed analyses of factors which support a claim of lost profits,

but which also provide insight into the framework for a hypothetical negotiation between

Witness and NICE in June 2005.

# REDACTED

discussion of the *Georgia-Pacific* factors and, in particular, *Georgia-Pacific* factor 15, the

construction of a hypothetical negotiation between NICE and Witness in June 2005.  (Britven

Report Sections XI-XIV, Exh. A) In these sections, Mr. Britven reviews license agreements in

the industry, which indicate that other parties in the industry have agreed to the use of an upfront royalty in combination with running royalties as compensation for a license. (Britven Report pp. 59-63, Exh. A) In addition, Mr. Britven analyzes information concerning convoyed sales and profitability in connection with the influence they have on licensing negotiations. (Britven Report pp. 64-65, Exh. A) Furthermore, he explains that competition between the parties is highly influential in determining bargaining positions of the parties at the negotiation, and he details the relative strengths and weaknesses of Dictaphone's bargaining position versus NICE's bargaining position in negotiations with Witness Systems. (Britven Report pp. 51; 56-58; 67, Exh. A)

At the end of his report, in Section XVI, Mr. Britven summarizes his prior analyses as they relate to the June 2005 hypothetical negotiation between NICE and Witness, presents additional information specific to the June 2005 hypothetical negotiation, and concludes that

# REDACTED

In light of the above, Mr. Britven's expert report contains considerable discussion and analysis of factors supporting the conclusion **REDACTED**

2.  **Mr. Britven Supports** **REDACTED**
    **REDACTED** Transaction Data.

Mr. Britven's report describes in detail the transaction data which was based on acquisitions in the market. (Britven Report Attachment V, Exh. A) In that analysis, he reviews seventeen acquisitions within the last 10 years and evaluates Witness Systems' payments to acquire other companies and their respective technologies. This is confirmed by the testimony of

Mr. Bourne, Senior Vice President of Global Product Management for Witness,

# REDACTED

Mr. Britven further explains why the 11 licensing agreements produced in this litigation do not assist in determining a royalty rate.  (Britven Report p. 62, Exh. A)

## REDACTED

Accordingly, Mr. Britven notes that "[n]one of the agreements are for a naked, non-exclusive patent license to a foundational technology with no acceptable alternatives, which is the type of license agreement ... NICE would enter into with Witness." (Britven Report p 62, Exh. A)

3. **Mr. Britven Corroborates** REDACTED **by Calculations to Test For Reasonableness**

Mr. Britven's opinion regarding **REDACTED** is further corroborated by multiple calculations.  These calculations include the following:

(1)

# REDACTED

(2)

(3)

# REDACTED

Mr. Britven's opinions regarding the **REDACTED** were further elucidated during the course of his seven hour deposition on January 4, 2008. Both the report and the deposition demonstrate that his opinions **REDACTED** are the product of reliable principles and methods, based upon abundant facts and data, and are the result of Mr. Britven's application of these principles and methods reliably to the facts of this case. Witness Systems' motion to exclude that opinion should also summarily be denied.

## III.   CONCLUSION

In sum, Witness Systems has no credible basis for its belated attack on Mr.

Britven's expert opinion in this case. Mr. Britven's testimony is the product of reliable principles

and methods, based upon sufficient facts and data, and the result of his application of these

principles and methods reliably to the facts of this case.   Mr. Britven's opinion fully satisfies the

requirements of F.R.E. 702.   To the extent that Witness disagrees, its disagreement goes only to

weight and not to admissibility of the opinion, which is well founded in fact and on solid

methodology, and thus are issues for the jury.

For the foregoing reasons, Witness Systems' motion to exclude Mr. Britven's

expert opinions must be denied.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE 19899
(302) 571-6681
msharp@ycst.com

KAYE SCHOLER LLP
Scott G. Lindvall
Joseph M. Drayton
425 Park Avenue
New York, NY  10022
(212) 836-8000

*Attorneys for Plaintiffs NICE Systems, Inc. and
NICE Systems, Ltd.*

Dated: January 11, 2008

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on January 11, 2008, I caused to be electronically filed a true and correct copy of the foregoing document, Plaintiffs' Opposition to Defendant's Motion to Exclude Testimony of Thomas W. Brivten, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> William J. Marsden, Jr., Esquire
> Kyle Wagner Compton, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE 19899-1114

I further certify that on January 11, 2008, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY E-MAIL**
> Noah C. Graubart (graubart@fr.com)
> Nagendra Setty (setty@fr.com)
> Daniel A. Kent (kent@fr.com)
> Christopher O. Green (cgreen@fr.com)
> Fish & Richardson, P.C.
> 1180 Peachtree Street, NE
> 21st Floor
> Atlanta, GA 30309

> Melanie K. Sharp (No. 2501)
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19801

> P.O. Box 391
> Wilmington, Delaware 19899-0391
> (302) 571-6681
> msharp@ycst.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICE SYSTEMS, INC. and           )
NICE SYSTEMS LTD,                )
                                 )
    *Plaintiffs*               )
                                 )        C.A.No. 1:06-CV-00311-JJF
    v.                          )
                                 )
WITNESS SYSTEMS, INC.            )
                                 )
    *Defendant.*               )

**EXPERT REPORT OF THOMAS W. BRITVEN**
**December 17, 2007**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**I.    EXPERT WITNESS DISCLOSURE AND STATEMENT OF BACKGROUND AND QUALIFICATIONS**

1.    I, Thomas W. Britven, have been asked to serve in an expert witness capacity by NICE Systems, Inc. and NICE Systems Ltd. (collectively, "NICE" or "Plaintiffs"). I hereby submit the following expert witness disclosure. As presently advised, I expect to testify as an expert witness on issues related to the amount of damages, if any, sustained by NICE as a result of the alleged patent infringement by Witness Systems, Inc. ("Witness" or "Defendant") based on certain assumptions, including the assumption that the patents-in-suit are found to be valid, enforceable and infringed. No opinions on liability are expressed herein, and, as required, I have assumed that the Defendant is liable for the asserted patent infringement claims. Although my study is based upon the current record, my study is ongoing, and expert discovery has not yet been completed. Accordingly, I respectfully reserve the right to revise or expand these opinions prior to trial.

2.    I am the President of the Lumin Expert Group ("Lumin"). Lumin is a business consulting firm that assists companies in resolving business problems and disputes, some of which involve litigation, and some of which may be considered general management and strategy consulting. My experience as a business advisor and consultant has included the study of damage claim issues in connection with hundreds of disputed matters, including matters involving patent, trade secret and trade dress issues. These matters have been in a variety of industries including the biotechnology, computer, energy, manufacturing, medical device, retail and transportation industries, among others. My resume and testimony experience for at least the past four years is attached to this report as **Attachment I**.

**II.    SCOPE OF WORK**

3.    My assignment in connection with this litigation is to determine the amount of compensatory damages sustained by NICE as a result of Defendant's alleged infringement of the following United States Patent Numbers:

- 5,396,371 ("the '371 patent");
- 6,249,570 ("the '570 patent");

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# REDACTED

## ATTACHMENT I
## THOMAS W. BRITVEN, CPA, CVA, CFE, ABV

Lumin Expert Group
1200 Smith Street, Suite 1600
Houston, TX  77002
Tel.: 713-651-1551
Fax: 713-353-4601
E-mail: TBritven@luminexpert.com

### EDUCATION AND CERTIFICATIONS

Accredited in Business Valuation – May 2006

Certified Valuation Analyst – February 2004

Certified Fraud Examiner – December 1992

Certified Public Accountant, Florida – January 1989

Certified Public Accountant, Texas – February 1984

Passed Certified Public Accountant Examination, Iowa – February 1982

B.B.A., Accounting, University of Iowa – May 1981

### PRESENT POSITION

LUMIN EXPERT GROUP, 2006 - Present
President                     Present
Managing Director             2006 - 2007

### PROFESSIONAL EXPERIENCE

LECG, LLC, 2002 - 2006
Senior IP Practice Director          2006
Governing Board               2002 - 2006
Managing Director             2002 - 2006

NAVIGANT CONSULTING, INC. and its predecessor companies, 1983 - 2002
Director                          1999 - 2002
Vice President                    1991 - 1999
Executive Consultant              1986 - 1991
Senior Consultant                 1983 - 1986

AMSTED INDUSTRIES, INC., 1981 - 1983
Senior in Charge Auditor                 1983
Senior Auditor                    1982 - 1983
Staff Auditor                     1981 - 1982

## REPRESENTATIVE ENGAGEMENTS

*Intellectual Property/Asset Matters*

- Determined the amount of reasonable royalty damages due to infringement of a patent related to the chemical composition of a generic injectable pharmaceutical product for anesthesia. Analyzed defendant's lost profit, reasonable royalty and price erosion damages counter-claim.

- Determined damages sustained by an engineering consulting firm as a result of ex-employees' wrongful conduct including misappropriation of trade secrets and other confidential information. Damage analysis involved determination of lost profits on specific lost accounts, disgorgement of the defendants' revenues and assessment of overall business impact on the engineering consulting firm as a result of the defendants' actions.

- Assessed damages as a result of misappropriation of trade secrets related to education software platform in the K-12 market. Damage analysis involved determination of the avoided research and development costs, disgorgement of the respondents' revenues and assessment of the incremental value associated with the alleged trade secrets based on a cost-over-cost analysis and purchase price allocation of the programs incorporating the subject technology.

- Determined the amount of trade secret and patent damages as a result of misappropriation of trade secrets and patent infringement related to a foreign specialty water chemicals company. Determination of trade secret damages involved determination of profitability associated with the chemicals allegedly incorporating the trade secrets based in part on an understanding of inter-company transactions with the parent company.

- Assessed damages as a result of misappropriation of trade secrets related to sub sea oil and gas service company.

- Determined reasonable royalty damages for prepaid cellular telephone technology. Assisted client in preparation of product line profitability analysis and assessed reasonable royalty claims developed by multiple licensing and damage experts.

- Determined reasonable royalty damages related to methods for recording, storing and retrieving digital voice data transmitted over telephone or other communication lines. Also assessed plaintiff's lost profit and reasonable royalty claims.

- Determined the amount of reasonable royalties due to patent infringement involving multiple air-jet weaving machine patents and assessed reasonable royalty and lost profits claimed by plaintiff.

- Determined reasonable royalty damages resulting from the use of wired and wireless telecommunication vending technology.

- Determined reasonable royalty damages resulting from the use of switches and cables for computer peripheral connectivity technology. Also assessed plaintiff's lost profit and reasonable royalty claims.

- Determined damages involving computer backup storage technology.

- Determined reasonable royalty damages related to methods of capturing and recording screen data and performing synchronized playback of screen and voice data. Assessed plaintiff's lost profit and reasonable royalty claims.

- Determined lost profit and reasonable royalty base related to chemical encapsulant technology.

- Determined reasonable royalty damages related to spinal cord stimulation technology used in medical devices. Also assessed lost profit and reasonable royalty damages claimed by plaintiff.

- Determined unjust enrichment head start damages as a result of misappropriation of trade secrets and unfair business practices involving a cardiac rhythm management start-up business.

- Determined the amount of lost profits and reasonable royalty damages due to infringement of patent related to gas well drilling technology. Analyzed lost profit and reasonable royalty damages claimed by defendant.

- Assessed reasonable royalty and lost profits claims involving multiple cardiac rhythm management companies involved in multiple litigations based upon extensive study of industry practices and licensing agreements.

- Determined damages resulting from public release of trade secret and/or confidential information involving drilling fluids.

- Determined lost profits and reasonable royalty damages related to refinery additive injection technology. Also assessed defendants' lost profit and reasonable royalty claims.

- Determined damages resulting from public release of trade secret and/or confidential information involving deepwater drilling exploration equipment.

- Determined lost profits and reasonable royalty damages due to patent infringement of petroleum drill bit technology.

- Assessed the economic benefits and additional costs associated with drilling method technology for use in deepwater offshore drilling operations.

- Determined lost profit damages due to trade secret misappropriation and breach of contract involving juvenile furniture product.

- Determined royalty base and calculated incremental profits and reasonable royalties associated with patented lubricant technology. Also developed accounting system to determine incremental patented product costs and profits.

- Determined royalty base and associated reasonable royalty damages due to patent infringement of shaving technology.

- Determined copyright damages involving infant care product.

- Determined reasonable royalty involving children's confectionary products.

- Determined the amount of reasonable royalty damages due to patent infringement of pet snack products and assisted counsel in preparing for defendant's damages expert cross-examination at trial.

- Determined lost profit and reasonable royalty damages related to plastic-bag dispenser technology. Also assessed defendants' reasonable royalty claims.

- Determined lost profit and reasonable royalty damages related to the patent infringement of horticulture method patent.

- Determined reasonable royalty damages involving the use of pigmentation and stability technology in food and beverage products.

- Determined copyright damages associated with designer jeans.

- Determined up-front payment and running royalty damages due to patent infringement of a drug discovery screening technology.

- Performed royalty audit of specialty chemical products in accordance with license agreement terms.

*Commercial Litigation/Other Matters*

- Assessed damages claim in connection with NASD matter.

- Assessed damages in connection with claims of breach of contract, tradedress misappropriation and unfair competition pertaining to the distribution of caskets to funeral homes.

- Traced historical business transactions and asset title in connection with claims of breach of contract, fraud and misappropriation of trade secrets related to gas centrifuge technology. Reviewed representations made by multiple business entities pertaining to ownership and existence of the gas centrifuge technology and determined whether indicia of fraud were present in such representations.

- Determined damages resulting from a failed software implementation, maintenance and development program.

- Assessed decline in stock price and future earn-out damages associated with multiple claimed acts of misrepresentations in connection with acquisition of a line of consumer car-care products.

- Investigated allegations that executives of a large public waste company intentionally inflated its stock price by releasing unreasonable earnings estimates.
- Quantified damages resulting from the withholding of restricted securities in association with an acquisition of a Phase I/Phase II biotechnology firm.
- Calculated the amount of damages due to a breach of contract concerning a skin care product line and associated trademark. Analyzed historical sales trends, projected future sales and calculated future royalties.
- Determined the amount of lost profits and excess costs incurred by plaintiff as a result of defendant's early termination of multiple purchasing contracts.
- Analyzed subrogation of lost profits by an insurance company as a result of an explosion of a power-generating facility and the subsequent claimed business interruption loss of a steel-manufacturing facility, its suppliers and its customers.
- Determined business interruption, lost profits, restoration costs and mitigation adjustments due to a fire and an explosion at a large oil refinery and adjacent facilities.
- Determined business interruption and lost profits due to construction defects in airport runway causing shutdown of regional airport.
- Assessed asbestos removal, additional cost and delay claim submitted by contractor in connection with remediation project.
- Determined replacement power costs during delayed start up of coal-fired electric utility due to construction and design defects.
- Performed management audit involving large roadway construction project.
- Evaluated additional construction costs and delay claim submitted in connection with large outfall tunnel construction project.

*Energy Related Matters*

- Valued natural gas pipeline in connection with redistribution of ownership interest as a result of joint venture partners' decision to opt out of future capital expansion projects. Valuation was based on a complex discounted cash-flow model and an assessment of comparable transactions among other things.
- Evaluated $1 billion plus damage claim related to natural gas trading and marketing venture. Analyzed the nature, classification and value of trading transactions. Also performed accounting and business record fact finding relative to specific transactions in dispute and assessed disclosures contained in annual reports and SEC findings.
- Determined value of salt dome natural gas storage facility while serving as a "third-party appraiser." Valued facility as a stand-alone business enterprise after adjustment for shared facility and overhead expenses.
- Developed forward price curves used to value client's gas, power and oil derivative contracts (including commodity and basis swaps). Analysis of changes in the market-to-market value of positions was used to assist in the resolution of multiple claims between two major trading and marketing organizations.

- Calculated breach of contract damages associated with natural gas processing and purchase contracts. Determined well-connection costs, well deliverability, well capacity, and compression maximums. Also analyzed gains to producers from gaming nominations to pipelines.

- Audited subcontractor's pipeline construction costs in accordance with terms of pipeline construction contract. Determined contract balance owed to owner based on amounts incurred by subcontractor and subcontractor's unpaid amounts to third-party vendors.

- Audited natural gas contract to ensure appropriate accounting methodology and accuracy.

- Analysis of breach of contract claims related to volumetric production payments in exchange for mineral rights and interests in natural gas and natural gas liquids derived from multiple wells located in Nebraska. This analysis included a calculation of the residual value of the wells, based on monthly production rates and total recoverable gas reserves.

- Calculated the amount of lost profit damages due to a steel manufacturer as a result of its energy trading and marketing service provider's failure to execute contracts placed for the future purchase of natural gas. Verified amounts of natural gas delivered and paid as a result of prior transactions and determined the additional costs incurred as a result of the steel manufacturer's failure to mitigate.

- Development of project execution plan for pipeline construction companies. Project execution plan involved development of a system for project controls and procedures as well as an audit plan to test the project controls and procedures and ongoing project costs.

- Analyzed claims of fraudulent conveyance, breach of contract, preference actions and conversion of collateral. Determined the amounts, timing and circumstances surrounding natural gas received, and payments made, between an oil and gas forward contract merchant and multiple insolvent gas marketing entities during the ninety-day period prior to bankruptcy filing. Traced funds between various entities and bank accounts to establish whether third party letters of credit were satisfied from payments for alleged fraudulent conveyances of natural gas.

## TESTIMONY

*Ben Venue Laboratories, Inc. d/b/a Bedford Laboratories v. Hospira, Inc.,* Case No. 1:05 CV 1787, Deposition before the United States District Court for the Northern District of Ohio, Eastern Division, 2007.

*Witness Systems, Inc. v. Nice Systems, Inc.,* Civil Action No. 1:04-CV-2531-CAP, Deposition before the United States District Court for the Northern District of Georgia, Atlanta Division, 2007.

*Brazoria County Disposal Corporation v. Republic Waste Services of Texas, Ltd., Republic Services, Inc., Waste Management of Texas, Inc., Waste Management, Inc., and Brazoria County Recycling Center, Inc.,* Cause No. 16385*BH01, Deposition before the United States District Court for the 23rd Judicial District of Brazoria County, Texas, 2007.

*D2 Data Driven Software Corporation, formerly known as EdSoft Software Corporation v. Voyager Expanded Learning, Ltd., Voyager Expanded Learning, Inc., Emery Randolph Best, Jeri A. Nowakowski, Matthew Peter Hunter and Stephan Randal Black,* AAA No. 71 117 Y 00238 06, Depositions and Arbitration testimony before the American Arbitration Association, 2007.

*Shainin II, LLC, Shainin LLC, and Red X Holdings LLC v. John Allen and David Hartshorne,* Case No. 50 180 T 00149 06, Testimony in Arbitration before the American Arbitration Association Fresno, California Office (Western Case Management Center), 2007.

*MGM Well Services, Inc. v. Mega Lift Systems, LLC,* Civil Action No.: H-05-1634, Deposition and Trial before the United States District Court for the Southern District of Texas, Houston Division, 2007.

*ClearValue, Inc. and Richard Alan Haase v. Pearl River Polymers, Inc., Polychemie Inc., SNF Inc., Polydyne, Inc. and SNF Holding Company,* Civil Action No. 6:06 CV 197, Deposition and Trial before the United States District Court for the Eastern District of Texas, Tyler Division, 2007.

*Ivan G. Rice v. Honeywell International Inc., and Rolls-Royce, PLC v. Northrop Grumman Corp.,* Civil Action No. 6:05cv330-LED, Deposition, United States District Court for the Eastern District of Texas, Tyler Division, 2007.

*Newton Research Partners, LP v. Shell Exploration and Production Company v. Michael Bloom and Sonic Centrifuge Company,* Civil Action No. 3:05-cv-0091-PECF, Deposition, United States District Court for the Northern District of Texas, Dallas Division, 2006.

*Aerotel, Ltd. v. Verizon Communications, Inc., Cellco Partnership a/k/a and d/b/a Verizon Wireless, Verizon Select Services, Inc., and Codetel International Communications Incorporated,* Civil Action No. 05 CV 0120 (TPG), Deposition, United States District Court for the Southern District of New York, 2006.

*Union Oil Company of California vs. Acquiport Sugar Creek, Inc.,* Civil Action No. H-05-0318, Deposition, United States District Court Southern District of Texas, Houston Division, 2006.

*Hyperion Solutions Corporation v. OutlookSoft Corporation,* Civil Action No. 2:04-CV-436 (TJW), Deposition and Trial before the United States District Court for the Eastern District of Texas, Marshall Division, 2006.

*PowerOasis, Inc. and PowerOasis Networks, LLC v. T-Mobile U.S.A., Inc.,* Civil Action No. 05-CV-42-B, Deposition, United States District Court for the District of New Hampshire, 2006.

*Transocean Offshore Deepwater Drilling, Inc. vs. GlobalSantaFe Corporation; Global Marine, Inc.; GlobalSantaFe Drilling Company; Global Marine Drilling Company,* Case No.

H-03-2910, Deposition and Trial before the United States District Court for the Southern District of Texas, Houston Division, 2006.

*PowerOasis, Inc. and PowerOasis Networks, LLC v. Wayport, Inc.,* Civil Action No. 04-12023-RWZ, Deposition, United States District Court for the District of Massachusetts, 2006.

*Advanced Neuromodulation Systems, Inc. v. Advanced Bionics Corporation,* Civil Action No. 4:04cv131, Deposition, United States District Court for the Eastern District of Texas, Sherman Division, 2005.

*Latin American Courier, Inc. and Pegaso Express, S.A. de C.V. vs. Airborne, Inc., et al.* Cause Number 2004-CI-03951, Deposition and Trial before the United States District Court for the 285th Judicial District of Bexar County, Texas, 2005.

*Crown Poly, Inc. v. Unistar Plastics, LLC and Bunzl Distribution California, LLC,* Case Number SA CV 03-1678 DOC (ANx), Deposition, United States District Court for the Central District of California, Southern Division, 2005.

*Maritimes & Northeast Pipeline L.L.C, vs. Murphy Bros., Inc.,* Case Number 11 110 00868 04, Testified before Arbitration Panel in the matter filed with the American Arbitration Association, 2005.

*The Men's Wearhouse, Inc., and Renwick Technologies, Inc. vs. Retek Inc.,* Case Number AAA Reference No. 70 Y 117 660 03, Testified before Arbitration Panel in the matter filed with the American Arbitration Association, 2005.

*Mars, Inc. vs. H.J. Heinz Company, L.P., Heinz Management Company and Del Monte Corporation,* Case Number CV-01-10961 RGK (JTLx), Deposition and Trial before the United States District Court for the Central District of California, 2004 and 2005.

*GPR Holdings, L.L.C., et al. vs. Duke Energy Trading and Marketing, L.L.C., et al.* Case Number 01-36736-SAF-11 (Chapter 11), Testified before the United States Bankruptcy Court, Northern District of Texas, Dallas, 2005.

*East Tennessee Gas Company v. Murphy Bros., Inc.* CPR File No. G-04-04, Testified before Arbitration Panel in the matter filed with the CPR Institute for Dispute Resolution, 2004.

*Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.,* Case Number 00-CV-12234, Deposition, United States District Court, District of Massachusetts, 2003.

*Keraplast Technologies, Ltd. v. Southwest Research Institute and Mark E. Van Dyke,* Case Number 2002-CI-09879, Deposition, 285th Judicial District Court of Bexar County, Texas, 2003.

*Heritage Skin Care, Inc., et al. v. Dyno-Heritage Brands, Inc. et al.,* Arbitration Number 50 T 133 0012603, Testified before Arbitration Panel, Miami, Florida, 2003.

*Dictaphone Corporation v. Nice Systems Ltd. and Nice Systems, Inc.,* Docket Number 3:00-CV-1143, Deposition, United States District Court, District of Connecticut, 2002.

*Factory Mutual et al. v. Ford Motor Company*, Testimony before Arbitration Panel (Hon. William Webster, Kenneth R. Feinberg, and Ferd C. Meyer, Jr.), 2002.

*DukeSolutions, Inc., v. AK Steel Corporation,* Case Number C-1-01-259, Deposition, United States District Court, Southern District of Ohio, Western Division, 2002.

*Seitel, Inc; Seitel Solutions, Inc.; and Seitel Solutions Canada, Ltd., v. Winthrop Resources Corporation and Dale Olsen,* Cause Number 2002-34994, Deposition and Hearing before the United States District Court of Harris County, Texas, 2002.

*General Gas Company, L.P. v. Duke Energy Field Services, L.P.,* Docket Number 2:01-CV-351J, Deposition, United States District Court, Northern District of Texas, Amarillo Division, 2002.

*Tanox, Inc. v. Panresources International N.V., Andries De Nooij B.V., M. DeBoer, J.W. Larrick, J.S. Price, R.F. Balint, M.T. Den Hartog and L. Boon,* Deposition, United States District Court of Harris County, Texas, 2002.

*DETMI Management, Inc., Duke Energy Services Canada Ltd., and DTMSI Management Ltd. v. Mobil Natural Gas Inc., and Mobil Canada Products, Ltd.,* Docket Number 50-T198-00485-00, Deposition and Arbitration before the Arbitration Panel, 2001.

*Sulzer Textil A.G. and Sulzer Textile, Inc. v. Picanol N.V.,* Docket Number 6-00-CV-279, Testified before United States District Court Eastern District of Texas, Tyler Division, 2001.

*C. Cowles & Company v. The Bernard M. Packtor Company, ITT Industries, Inc.,* d/b/a McDonnell & Miller, and ITT Fluid Technology Corp, Docket Number 3-99-CV-01996-RNC, Deposition, United States District Court, District of Connecticut, 2001.

*Cardiac Pacemakers, Inc., Guidant Sales Corporation, and Eli Lilly and Company v. St. Jude Medical, Inc., Pacesetter, Inc. and Ventritex, Inc.,* Docket Number IP96-1718-C-H/G, Deposition and Trial before the United States District Court, Southern District of Indiana, Indianapolis Division, 2001.

*PGS Ocean Bottom Seismic, Inc. and PGS Tensor, Inc. v. Dan Loewenthal and Dan Loewenthal v. PGS Ocean Bottom Seismic, Inc. and PGS Tensor, Inc.,* Docket Number H-99-1886, Deposition, United States District Court, Southern District of Texas, Houston Division, 2000.

*JVM Innovation Design, LLC v. Spalding & Evenflo Companies, Inc., et al. and Evenflo Company, Inc. v. John V. Mariol, et al.,* Docket Numbers 1-97-528 and 1-98-233, Deposition, United States District Court, Southern District of Ohio, Western Division, 2000.

*Gregg Communications Systems, Inc. and Apropos Technology, Inc.,* Docket Number 51-181-00019-98, Deposition and Arbitration Hearings before Commercial Arbitration Tribunal, 2000.

*Williams Fire & Hazard Control, Inc. v. National Foam, Inc.,* Docket Number H-98-3179, Deposition, United States District Court, Southern District of Texas, Houston Division, 1999.

*Intermedics, Inc. v. Cardiac Pacemakers, Inc. and Cardiac Pacemakers, Inc. v. Intermedics, Inc.*, Docket Number 4-95-716, Deposition, United States District Court, District of Minnesota, Fourth Division, 1998.

*Angeion Corp. v. Cardiac Pacemakers, Inc.*, Docket Number 97-1681-JMR, Deposition, United States District Court, District of Minnesota, Fourth Division, 1997.

*The Lowell Dunn Company v. Metropolitan Dade County*, Docket Number 94-16374, Deposition and Trial before Circuit Court of the 10th Judicial Circuit, in and for Dade County, Florida, 1997.

*Roberts & Schaefer Company v. The Hardaway Company v. National Union Fire Insurance Company and The Hardaway Company v. Roberts and Schaefer*, Docket Number 95-590-CIV-T-17E, Trial before United States District Court, Middle District of Florida, Tampa Division, 1997.

## PROFESSIONAL AFFILIATIONS

Member National Association of Certified Valuation Analysts

Associate Member American Bar Association

Examiner to Federal Bankruptcy Court

Member Licensing Executive Society

Member American Institute of Certified Public Accountants

Member Houston Chapter of Texas Institute of Certified Public Accountants

Member Association of Certified Fraud Examiners

## PUBLICATIONS AND PRESENTATIONS

*"Approaches for Valuing Biotechnology/Pharmaceutical Inventions"*
Practicing Law Institute, Biotechnology Patents & Business Strategies in the New Millennium, San Diego, August 6-7, 2001.

*"Patent Valuation from a Business and Litigation Perspective"*
Licensing Executive Society (U.S.A. and Canada), Inc. 2002 Annual Meeting, Chicago, September 24, 2002.

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C

# FISH & RICHARDSON P.C.

1180 Peachtree Street
Atlanta, Georgia
30309

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
404 892-5005

Facsimile
404 892-5002

Web Site
www.fr.com

Daniel A. Kent
404 724-2828

Email
kent@fr.com

VIA EMAIL

May 4, 2007

Joseph M. Drayton, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

**FR**

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    *NICE Systems, Inc. & NICE Systems Ltd. v. Witness Systems, Inc.*
       U.S.D.C. (D. Del.) – Civil Action No. 1:06-CV-00311-JJF

Dear Joe:

Further to our discussions yesterday and today, Witness Systems provides the following additional information concerning its prior response to Interrogatory 14: Witness Systems became aware of the '738, '005, '570, '345, '372 and '370 patents in or around October 2004, in the context of discussions concerning Witness Systems' possible acquisition of Dictaphone. Persons involved in such communications included John Bourne, Eric Williams, John Henits, Ed Racinsky, John Richter, Nick Setty, Joe Watson and Kevin Hegebarth.

We are checking with our client concerning any additional information we might be able to provide related to Interrogatories 16 and 20, and logger schematics. I will get back to you as soon as possible about that.

Attached are two lists we prepared to help us track Witness Systems products, versions and, to the extent available, release dates. As discussed, we are producing this information to you, despite its work product nature, as an agreed compromise concerning NICE's discovery requests, and based on your explicit agreement that our producing this information will ***not*** be construed as any sort of waiver of attorney client privilege or work product immunity. Our providing this information is also conditioned on your agreement that it will be treated as "Confidential – Counsel Only" under the Protective Order in this case. Your receipt and continued possession of these attachments constitute your agreement to these terms, as previously discussed.

Very truly yours,

*Daniel A. Kent*
Daniel A. Kent

12020255.doc

# REDACTED

# EXHIBIT D

# REDACTED